Q. Scott Kaye (Bar No. 206916)
kaye@millercanfield.com
Joseph M. Infante (pro hac admission pending)
infante@millercanfield.com
Stephen M. Ragatzki (pro hac admission pending)
ragatzki@millercanfield.com
**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333 / Fax: (616) 776-6322

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
Angela Han (Bar No. 317137)
ahan@fennemorelaw.com
**FENNEMORE WENDEL**
1111 Broadway, 24th Floor
Oakland, California  94607
Tel: (510) 834-6600 / Fax: (510) 834-1928

Attorneys for Plaintiffs Hoopes Vineyard LLC,
Summit Lake Vineyard, and Cook's Flat Associates a
California Limited Partnership

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership, | Case No. 3:24-cv-6256 **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| COUNTY OF NAPA, | |
| Defendant. | |

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMES NOW the Plaintiffs, HOOPES VINEYARD LLC, SUMMIT LAKE VINEYARDS & WINERY LLC, and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP (collectively "Plaintiffs" or "Plaintiff Wineries"), by and through their attorneys, MILLER, CANFIELD, PADDOCK and STONE, P.L.C., and for their Complaint against Defendant, COUNTY OF NAPA, state as follows:

## INTRODUCTION

1.    Defendant County of Napa ("Napa County" or the "County") regulates wineries within the County not based on clear, understandable ordinances, but rather upon an ever-changing patchwork of undocumented "policies" and procedures. The few written ordinances Napa County does have are so vague that County wineries are unable to decipher what is and is not allowed and so vague as to allow Napa County officials to use their unfettered discretion to restrict winery operations as they see fit.

2.    If a winery within the County dares challenge the discretion of Napa County and the restrictions placed on these wineries, it is met with retribution and millions of dollars in costs just to "maintain" the limited operating permissions Napa County was "gracious" enough to allow in the first place.  In many cases, the winery is forced to bargain "down" their existing entitlements (at substantial expense) to avoid closure and/or enforcement action.

3.    Napa County's actions have violated numerous Constitutional rights of County wineries, including Plaintiffs, and it is time they end.

4.    Specifically, the relevant Napa County ordinances and policies violate Plaintiffs' First Amendment rights to free speech, are an impermissible prior restraint on speech, are a content-based restriction on speech, violate the Dormant Commerce Clause, are void for vagueness, arbitrarily interfere with a constitutionally protected business interest, violate the non-delegation doctrine, take property without just compensation, deny Plaintiffs equal protection of the law, and are preempted by California law.

## THE PARTIES

5.    HOOPES VINEYARD LLC ("Hoopes") is a California limited liability company which leases property located at 6204 Washington Street, Napa, California 94558 (the "Hoopes

Property"). Hoopes maintains a Type 02 Winegrower license issued by the State of California. The property was approved on March 6, 1984 by Napa County as a legal conforming "small winery use permit exemption."

6.      SUMMIT LAKE VINEYARDS & WINERY LLC ("Summit Lake") is a California limited liability company. It owns the real property located at 2000 Summit Lake Drive, Angwin, California 94508 (the "Summit Lake Property"). Summit Lake was approved as a legal conforming "small winery use permit exemption" on March 1, 1984 by Napa County. Summit Lake also maintains a Type 02 Winegrower license issued by the State of California.

7.      COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP dba Smith-Madrone ("Smith-Madrone"), is a California limited partnership. Smith-Madrone owns the real property located at 4022 Spring Mountain Road, Saint Helena, California 94574 (the "Smith-Madrone Property"). The Smith-Madrone property was approved to "build a winery" on October 24, 1973 by Napa County. Smith-Madrone maintains a Type 02 Winegrower license issued by the State of California.

8.      Defendant NAPA COUNTY is a general law county duly organized under the laws of the State of California.

### JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this case arises under the United States Constitution and 42 U.S.C. § 1983.

10.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy in this judicial district and derive from a common nucleus of operative facts.

11.      This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

12.      This Court has the authority to grant injunctive relief under Federal Rules of Civil Procedure 57 and 65.

FINNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

13.     Napa County is subject to the personal jurisdiction of this Court because it is located within this judicial district.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because (i) Napa County is located within this judicial district and (ii) the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

15.     Plaintiffs' claim for attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

**DIVISIONAL ASSIGNMENT**

16.     This action should be assigned to the San Francisco Division or Oakland Division because this action arose in Napa County.

**FACTUAL ALLEGATIONS**

**Hoopes**:

17.     The Hoopes Property is located in the Napa County Agricultural Preserve District and consists of a small vineyard and winery on approximately eight acres.

18.     In 1984, predecessors in interest to Hoopes obtained a small winery use permit exemption from Napa County and began operating a winery at the Hoopes Property. **Exhibit 1**.

19.     Historically, Napa County allowed the public to come to the Hoopes Property, consume wine and picnic on the Hoopes property, and allowed Hoopes to sell wine-related and other items.

20.     A 2012 version of the Napa County Public Winery Database, a database created and maintained by Napa County, demonstrates official recognition of now disputed accessory use entitlements at the Hoopes property (then named Hopper Creek). The publicly disseminated document shows Hoopes is allowed to host Tastings by Appointment without any restriction on the number of daily/weekly/yearly visitors and without any restriction on the number of marketing events or marketing event visitors.  (**Exhibit 2**: 2012 Database.)

21.     The 2015 version of the Winery Database also shows the same entitlements for Hoopes.  (**Exhibit 3**: 2015 Database.)

22.     In 2016, this Winery Database was changed and the entitlements for Hoopes were manipulated to state that Hoopes was not allowed to conduct Tastings by Appointment, have any

1   visitors whatsoever and was not allowed any marketing events or marketing event visitors.

2   (**Exhibit 4**: 2016 Database.)

3        23.    This change was done without notice to Hoopes' predecessor in interest.

4        24.    Hoopes is not the only winery to have its entitlements changed.  Napa County

5   changed the entitlements for approximately thirty Napa wineries between 2012 and 2016, though

6   it is unclear whether those wineries are aware that their entitlements were altered.

7        25.    On October 30, 2019, Hoopes obtained a Type 02 Winegrower license; a Type 17

8   Beer and Wine Wholesaler license; and a Type 20 Off Sale Beer and Wine license from the

9   California Department of Alcoholic Beverage Control for the Hoopes Property after a related

10  entity had purchase the real estate.

11       26.    At the time, Hoopes remodeled portions of the Hoopes Property and Napa County

12  approved all remodel-related building permits, confirmed adequacy of existing infrastructure, and

13  issued final approvals for all floodplain and building permits associated with the renovations

14  between February 2020 and October 2020.

15       27.    Regardless, Napa County issued Hoopes a "Notice of Apparent Violation" on

16  February 14, 2020, alleging Hoopes was not allowed to engage in "tours and tastings" or

17  "marketing" at the Hoopes Property.  No one from County Code Enforcement had been to the

18  property and no County personnel had personal knowledge of any "tours and tastings."

19       28.    Napa County does not contest that unlimited "retail operations" are allowed at all

20  Plaintiff Wineries.

21       29.    On October 20, 2022, Napa County filed a lawsuit against Hoopes, and its related

22  entities, alleging that Hoopes' operations were a public nuisance and that Hoopes had engaged in

23  unlawful business practices.

24       30.    No citations, citizen complaints, or nuisances had ever been reported or issued to

25  Hoopes or its predecessor.

26       31.    As of the date of this Complaint, that lawsuit is still pending.

27       32.    The winery at the Hoopes Property is older than other wineries in the

28  neighborhood. After it began operating in 1984, other wineries opened nearby. The Hoopes

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1   Property is now located 400 feet from Bell Wine Cellars and 750 feet from Mira Winery.

2      33.     Both Bell Wine Cellars and Mira Winery are much larger wineries and Napa

3   County allows these two wineries more expansive operating permissions than it does Hoopes.

4      34.     Hoopes routinely receives requests from customers, both formally and informally,

5   for tastings, wine by the glass, retail sales, tours, marketing events and other common services

6   provided by wineries.

7      35.     Hoopes has to decline these requests which has cost Hoopes millions of dollars in

8   profits.

9      36.     The Napa County ordinance and policies have also prevented Hoopes from

10  advertising and marketing its winery which has additionally caused Hoopes to suffer millions of

11  dollars in damages from lost sales.

12  **Summit Lake**:

13     37.     On March 1, 1984, the predecessors in interest to Summit Lake obtained a Small

14  Winery Use Permit Exemption from Napa County and began operating a winery. (**Exhibit 5**.)

15     38.     The Summit Lake Property is located in the Napa County Agricultural Watershed

16  District.

17     39.     Historically, Napa County allowed Summit Lake to have guests at its property to

18  consumer wine, picnic, and sample wine, and Summit Lake to sell wine at its property.

19     40.     These entitlements are contained within a 2012 version of the Napa County

20  Winery Database which states Summit Lake is allowed Tastings by Appointment and without any

21  limitation on the number of visitors per day/week/year.  (Exhibit 2.)

22     41.     The 2015 version of the Winery Database contains these same permissions for

23  Summit Lake. (Exhibit 3.)

24     42.     According to later versions of the Winery Database, at some point in time Napa

25  County, without notice to Summit Lake, took away these entitlements as these later databases

26  state Summit Lake is not allowed to do Tastings by Appointment, is not allowed any visitors

27  whatsoever and is not allowed any marketing events or marketing event visitors.  (*See* Exhibit 4:

28  2016 Winery Database; **Exhibit 6**: 2019 Winery Database.)

43.     Summit Lake only became aware of the new restrictions when Summit Lake sought other property improvements.

44.     In 2018, Summit Lake considered increasing wine production at the property and knew that a production increase at the property would potentially require a use permit application of some kind.

45.     In February 2019, Summit Lake received a form letter from the County advising that winery owners could voluntarily submit to an audit from the County to memorialize and/or clarify allowed uses.

46.     Summit Lake voluntarily submitted to the audit and sought a use permit modification for its planned wine production increase.

47.     In response, Napa County determined that Summit Lake Winery was not entitled to any "visitation" under the small winery exemption, despite nearly forty years of hosting same.

48.     In October 2019, Summit Lake was advised that if it wished to obtain its permit modification, it would need to agree to repave a substantial portion of the road leading to its winery at a cost of over $1 million.

49.     This road serves numerous other properties and businesses, some of which have completed more substantial winery upgrades but did not trigger similar improvement requirements, and the proportional impact of Summit Lakes' increase use of the road was negligible; indeed, it was not an actual "increase" in use.

50.     Summit Lake was unable to afford this upgrade or justify the expense relative to the requested wine production upgrade.

51.     On June 3, 2021, Summit Lake requested a reconsideration because it did not believe hosting visitors was a new "use," and that even if it were, there was no nexus between the cost and intensity of the upgrade. There was similarly no "intensification" as visitors had been coming to the property for four decades. Summit Lake advised the County the cost was prohibitive and reduced or eliminated "visitation" threatened viability of the business that had been in operation and reliant thereon for nearly forty years.

52.     On June 4, 2021, the County responded that its position would not change.

Fennemore Wendel
Attorneys at Law
Oakland

COMPLAINT                                          CASE NO: 3:24-CV-6256

53.     On January 11, 2022, Napa County threatened Summit Lake that if it did not agree to the road improvement then its permit modification application would be closed and going forward Summit Lake would not be allowed any visitors to its winery.

54.     Summit Lake is unable to afford the substantial road improvement cost without risking the viability of its winery.

55.     Summit Lake cannot viably operate without visitation at the winery.

56.     To date, Napa County continues to assert that any visitors consuming wine at Summit Lake is a violation of the small winery use permit exemption and that Summit Lake must cease sales/tasting operations or improve the roadway.

57.     The winery located at the Summit Lake Property is older than other wineries (and residences) on the same road. After it began operating in 1984, other wineries opened, including much larger operations nearby: Outpost Wines; Robert Craig Winery; Robert Foley Vineyards; and Black Sears. These are all located less than one mile from Summit Lake. Napa County allows all four neighbors more expansive winery operations than it does Summit Lake.

58.     Summit Lake routinely receives requests from customers, both formally and informally, for tastings, wine by the glass, retail sales, tours, marketing events and other common services provided by wineries.

59.     While Summit Lake has engaged in some limited on-premises sales, it has limited the amount of on-premises sales due to fear of County enforcement which has cost Summit Lake millions of dollars in damages in lost profits.

60.     The Napa County ordinance and policies have also prevented Summit Lake from advertising and marketing its winery which has additionally caused Summit Lake to suffer millions of dollars in damages from lost sales.

**Smith-Madrone**:

61.     On May 14, 1971, Smith-Madrone purchased the 200-acre Smith-Madrone Property located in the Napa County Agricultural Watershed District.

62.     On August 15, 1973, Smith-Madrone applied for a land use permit to open a winery and the only question on the application was the reason for the use permit.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

63.     On October 24, 1973, Smith-Madrone obtained a winery use permit.  (**Exhibit 7**.)

64.     One of the findings of the use permit was that the winery would not provide public tastings and that "private arrangements will be required to visit the winery." (*Id*. at Finding #6.)

65.     A condition of approval was that "[w]ine tastings be limited to a private, invitation only, basis." (*Id*. at Condition #7.)

66.     However, the use permit did not place any restrictions on the number of visitors Smith-Madrone could see on a daily, weekly, or yearly basis.

67.     The use permit did not place restrictions on the number or type of event Smith-Madrone could host on a daily, weekly, or yearly basis.

68.     The use permit did not limit the number of event visitors Smith-Madrone could host on a daily, weekly, or monthly basis.

69.     The use permit did not limit the number of employees Smith-Madrone could have.

70.     Smith-Madrone was one of the first winery use permits issued in Napa County.

71.     Smith-Madrone is older than most wineries (and residences) in the immediate area and in Napa County, generally. After it began operating, other wineries opened, including much larger operations nearby. Napa County allows nearby wineries more expansive winery operations than it allows Smith-Madrone.

72.     Historically, Smith-Madrone has allowed consumers to engage in "tours and tastings" by appointment and has hosted "marketing events" and has been so doing for over 50 years.

73.     Smith-Madrone has also allowed consumers to purchase wine on the premises and consume wine on the premises.

74.     Smith-Madrone is informed that Napa County now has a policy that some wineries are prohibited from private tours and tastings by appointment, are prohibited from marketing wine, and are prohibited from allowing the purchase and consumption of wine on their premises.

75.     The 2012 version of the Napa County Winery Database, consistent with Smith-Madrone's use permit, does not contain any limit on the number of visitors allowed to visit Smith-Madrone. (Exhibit 2.)

76.     However, thereafter, without explanation, notice, or a hearing, later versions of the Winery Database state that Smith-Madrone is limited to 10 visitors per week and 520 visitors per year.  (Exhibits 4, 6.)  Oddly, the same databases do not indicate that Smith-Madrone is allowed a specific number of visitors per day, which, upon information and belief, Plaintiffs believe Napa County interprets as meaning the winery is not allowed any daily visitors.

77.     Given the 520 visitors per year limitation, it would take Smith-Madrone 854.4 years to see the same number of visitors another Napa County winery is allowed to see in a single year.

78.     The 2012 database, consistent with Smith-Madrone's use permit, did not contain a limit on marketing events or marketing event visitors while later versions state that Smith-Madrone is not allowed any marketing events or marketing event visitors.

79.     These numbers and limits are not displayed anywhere in the use permit, conditions of approval, or findings for the use permit issued to Smith-Madrone.  (Exhibit 7.)

80.     Unlike other wineries in Napa County, Smith-Madrone did not receive correspondence regarding Napa County's "Use Permit Compliance Program" but was advised of the letter by other wineries.

81.     Smith-Madrone has not sought a status determination for fear, based upon information and belief, that Napa County engages in a policy and practice to deem longstanding winery entitlements "beyond the scope" of an issued use permit and mandate "compliance" by application for a conditional use permit that is materially more limited than the existing entitlements, and to trade down property uses at great expense.

82.     Smith-Madrone is informed and believes that many participants in the "use permit compliance program" and/or "status determination program" are still navigating the process more than six years after they filed, with consistently changing "goalposts" for "compliance" and at debilitating expense.

83.     Smith-Madrone is informed and believes that wineries that have sought determination and/or contested Napa County's determination of winery entitlements have resulted in reductions in their uses without explanation or legal authority.

84.     Smith-Madrone routinely receives requests from customers, both formally and informally, for tastings, wine by the glass, retail sales, tours, marketing events, and other common services provided by wineries.

85.     Because of the restrictions placed upon it by Napa County, Smith-Madrone is not able to freely grant these requests which has caused it to lose profits.

86.     The Napa County ordinance and policies have also prevented Smith-Madrone from advertising and marketing its winery which has additionally caused Smith-Madrone to suffer damages from lost sales.

**California State Laws and Regulations Allow More Winery Uses Than Napa County**:

87.     California Business and Professions Code ("BPC") Section 23358(a)(2) allows wineries with a Type 02 Winegrower license to sell wine and brandy to consumers for consumption off the winegrowers' premises.

88.     BPC Section 23358(a)(3) allows wineries with a Type 02 Winegrower license to sell bottles of wine to consumers for consumption on the winegrowers' premises.

89.     BPC Section 23358(a)(3) does not restrict how such wine is served, *e.g.*, by the sample, by a flight, by the glass or by the bottle. Indeed, the legislative history of the bill expressly confirms sale by the bottle, glass, or sample is expressly allowed.

90.     BPC Section 23358(a)(4) allows a winery to operate a bona fide eating place on the licensed premises and "[s]ell all beers, wines, and brandies, regardless of source, to consumers for consumption on the premises."

91.     BPC Section 23358(b) states that a "winegrower may also have upon the premises all beers, wines, and brandies, regardless of source, for sale or service only to guests during private events or private functions not open to the general public."

92.     BPC Section 23358(c) states that at least fifty percent of the wine a winegrower sells on its licensed premises must be produced by the winegrowers from the conversion of grapes, berries, or other fruit into wine.

93.     BPC Section 23358(c) does not dictate the source of the grapes, berries, or fruit a winegrower converts into wine.

- 11 -

FINNEMORE WENZEL
ATTORNEYS AT LAW
OAKLAND

94.    BPC Section 23358(c) does not dictate the location of production of the wine as long as produced by the winegrower.

95.    BPC Section 23358(e) provides that counties exercising land use regulatory authority can restrict, but not eliminate, the privileges afforded by section 23358.

96.    BPC Section 23358(e) is the only section of the BCP related to wineries where the California Legislature provided a local government with this limited authority.

97.    BPC Section 23356.1 authorizes a winegrower to "conduct winetastings of wine produced or bottled by, or produced and packaged for, the licensee, either on or off the winegrower's premises."

98.    That section also states that the "department may adopt the rules as it determines to be necessary for the administration of this section."  *Id*. at 23356.1(d).

99.    Unlike BPC Section 23358, BPC Section 23356.1 does not provide Napa County with authority to establish rules related to a winegrower conducting wine tastings.

100.    The State of California has issued the following rules related to wine tastings:

(a)    California law defines a "winetasting" as a "presentation of samples of one or more wines, representing one or more wineries or industry labels, to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine or wines tasted." Cal. Code Regs., Title 4, § 53.

(b)    California law allows a winegrower to "supply small amounts of bread, crackers, cheeses or nuts to clear the taste buds of the participants between successive samples of wine during a winetasting."  Cal. Code Regs., Title 4, § 53.

(c)    "Winetastings may be conducted without charge or for a fee for the public on a premises licensed with a winegrower's license."  Cal. Code Regs., Title 4, § 53(a)(1).

(d)    "Winegrowers…may conduct winetastings which are sponsored by a bona fide charitable, fraternal, political, religious, trade, service, or similar private organization" subject to limited conditions.  Cal. Code Regs., Title 4, § 53(b).

(e)    While Section 53 contains some restrictions, the rule is clear that "[n]othing in this rule shall prevent the holder of any license which permits the sale and

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT

CASE NO: 3:24-CV-6256

consumption of wine on the premises from holding a winetasting of wines legally acquired, provided the on-sale licensee shall charge for the wines presented in accordance with law."

101. BPC Section 23386(a) states that a winegrower's license "authorizes the giving away of samples of the alcoholic beverages that are authorized to be sold by the license under the rules that may be prescribed by the department."

102. BPC Section 23386(a) does not provide Napa County with authority to establish rules related to a winegrower giving away samples.

103. California courts have long recognized that, "[o]bviously, the use of samples is for the purpose of encouraging the sale of the product." *Tonkin Distributing Co. v. Collins*, 50 Cal. App. 2d 790, 795, 123 P.2d 938 (1942).

104. California rules allow winegrowers to "sponsor contests, races, tournaments, and other similar activities on or off licensed premises." Cal. Code Regs., Title 4, § 106(i)(2).

105. No California statute or rule allows Napa County to further restrict the provisions of Cal. Code Regs., Title 4, § 106(i)(2).

106. California Government Code section 65852 states that all zoning regulations "shall be uniform for each class or kind of...use of land throughout each zone...."

**The Napa County Code Related to Wineries**:

107. In 1955, Napa County adopted a comprehensive set of zoning ordinances recognizing that "agriculture is a major industry for the County" and for "protection of agriculture." (**Exhibit 8**: 1955 Ordinance at Sec. 1.02 (the "Napa County Code" or "NCC").)

108. In 1968, the Napa County Code was amended to add an Agricultural Preserve District which allowed, without the need for a use permit, "wineries", the "[s]ale of agricultural products grown, raised or produced on the premises" and "[a]ccessory and incidental uses compatible with and necessary to the operation of the above uses." (**Exhibit 9**: Ordinance 274, Sec. P.02.)

109. In 1976, the County established that all post-1976 winery developments may continue to operate in the Agricultural Preserve and Agricultural Watershed Districts as lawful uses but must first obtain a use permit.

110.    In 1980, the Napa County Code was amended to create a use permit exemption for "small wine[ies]," converting production facilities under 20,000 gallons to a use by right without the need to obtain a use permit, known as the Small Winery Use Permit Exemption or Certificate of Exemption. (**Exhibit 10**.)

111.    The 1980 Ordinance defined a "small winery" as "any existing winery or proposed new winery with a maximum annual production capacity of 20,000 gallons of wine" and that met certain criteria including that a "small winery does not conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." (*Id*. at Section 12048.)

112.    The 1980 Ordinance did not include a definition for the terms "retail," "public tours," "wine tastings," "wine-related items," or "social events of a public nature." (*Id*.)

113.    These terms were not defined elsewhere in the Napa County Code at the time, or in subsequent versions.

114.    While the 1980 Ordinance included a definition for a "small winery," it did not include operative ordinances which prohibited a small winery from producing more than 20,00 gallons of wine, conducting public tours, providing wine tastings, selling wine related items or from holding social events of a public nature.

115.    On January 23, 1990, Napa County passed Ordinance 947, the Winery Definition Ordinance. (**Exhibit 11**.)

116.    Ordinance 947 grandfathered in wineries established prior to its enactment, whether by use permit or exemption, and allowed those wineries to continue as legal conforming uses. (*Id*. Section 2 and Section 3.)

117.    The stated intent behind Ordinance 947 was to "protect agriculture and open space as the primary land use in Napa County." (*Id*. at Section 6.)

118.    Ordinance 947 expressly declared that small winery use permit exemptions and other existing small wineries entitled by use permit were critical economic contributors to the Napa Valley economy. (*Id*. at Section 2 and Section 3.)

119.    Ordinance 947 simplified and broadened the definition of winery and eliminated any distinction between "winery" and "small winery."

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

120.     Ordinance 947 defined a "Winery" to "mean an agricultural processing facility used for: (1) The fermenting and processing of grape juice into wine; or (2) The refermenting of still wine into sparkling wine."  (*Id*. at Section 8.)

121.     Ordinance 947 also added definitions which were not found in previous versions of the ordinances.  (*Id*. at Section 9.)

122.     Ordinance 947 did not include a definition of the terms "retail," "public tours," "wine tastings," "wine-related items," or "social events of a public nature."

123.     Like the Small Winery Use Permit Exemption, Ordinance 947 defined certain terms but it did not contain operative ordinance sections which affirmatively precluded certain activities.

124.     The Napa County Code was re-codified in 1994 and carried forward the revisions made by Ordinance 947 along with other revisions which have been made since 1994.

125.     The current Napa County Code defines the term "Agriculture" to include "[m]arketing, sales, and other accessory uses that are related, incidental and subordinate to the main agricultural processing use."  NCC Section 18.08.040.

126.     The current Napa County Code defines the term "Marketing of wine" to mean "any activity of a winery which is conducted at the winery on a prearranged basis for the education and development of customers and potential customers with respect to wine which can be sold at the winery on a retail basis pursuant to Chapters 18.16 and 18.20. Marketing of wine may include cultural and social events directly related to the education and development of customers and potential customers provided such events are clearly incidental, related and subordinate to the primary use of the winery. Marketing of wine may include food service, including food and wine pairings, where all such food service is provided without charge except to the extent of cost recovery. Business events are similar to cultural and social events, in that they will only be considered as 'marketing of wine' if they are directly related to the education and development of customers and potential customers of the winery and are part of a marketing plan approved as part of the winery's use permit. Marketing plans in their totality must remain 'clearly incidental, related and subordinate to the primary operation of the winery as a production

- 15 -

facility' (subsection (G)(5) of Sections 18.16.030 and subsection (I)(5) of 18.20.030). To be considered directly related to the education and development of customers or potential customers of the winery, business events must be conducted at no charge except to the extent of recovery of variable costs, and any business content unrelated to wine must be limited. Careful consideration shall be given to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan." NCC Section 18.08.370.

127.    The Napa County Code defines the terms "Tours and tastings" to mean "tours of the winery and/or tastings of wine, where such tours and tastings are limited to persons who have made unsolicited prior appointments for tours or tastings. Tours and tastings may include food and wine pairings, where all such food service is provided without charge except to the extent of cost recovery and is incidental to the tasting of wine. Food service may not involve menu options and meal service such that the winery functions as a café or restaurant." NCC Section 18.08.620.

128.    The Napa County Code defines the term "Winery" to mean "an agricultural processing facility used for: A. The fermenting and processing of grape juice into wine; or B. The refermenting of still wine into sparkling wine." NCC Section 18.08.640.

129.    The Napa County Code does not define the terms:

(a)     "Retail"

(b)     "Public tours"

(c)     "Private tours"

(d)     "Private tasting"

(e)     "Winetastings"

(f)     "Wine-related items"

(g)     "Social events of a public nature"

(h)     "Consumption"

(i)     "Marketing events"

(j)     "Unsolicited"

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

130.    The Napa County Code makes clear that any "[u]ses allowed without a use permit or uses permitted upon grant of a use permit shall include any accessory use." NCC Section 18.104.040.

131.    Significantly, all wineries entitled prior to Ordinance 947 (1990) were "grandfathered" as legal conforming uses, not legal nonconforming uses, by express decree.

132.    Thus, every winery with either a use permit or exemption may also engage in accessory uses by right.

133.    In defining the term "Agriculture," the Napa County Code recognizes that, for wineries who have obtained either a use permit or an exemption, "[a]griculture shall include…[p]roduction and processing of agricultural products, including agricultural processing facilities [and m]arketing, sales, and other accessory uses that are related, incidental and subordinate to the main agricultural processing use."  NCC Section 18.08.040.

134.    Thus, every winery which has either a use permit or an exemption has the ability to engage in "Marketing, sales, and other accessory uses that are related, incidental and subordinate to the main agricultural processing use."

135.    Thus, each Plaintiff winery may engage in "Marketing of Wine" as defined by NCC Section 18.08.370.

136.    As discussed above, Napa County prohibits Plaintiff Wineries, as well as other wineries, from freely engaging in marketing of wine.

137.    As discussed above, Plaintiff Wineries are unable to decipher what the County deems a "marketing event," which subjects Plaintiffs to uncertainty in their business operations due to the threat of costly enforcement should Plaintiffs err in their interpretation of a marketing event as opposed to Napa County's subjective interpretation of the same term.

138.    The Napa County Code also recognizes that some accessory uses at a winery include tours and tastings, as defined in NCC Section 18.08.620, and sale of wine related products.  *See* NCC Section 18.16.030 and NCC Section 18.20.030.

139.    Despite the Napa County Code allowing Plaintiff Wineries to engage in the above-described uses, Napa County prohibits Plaintiff Wineries from engaging in these uses and has

1    issued code violations to many wineries in Napa County on this issue.

2        140.    Plaintiff Wineries are aware of code enforcement actions against other wineries

3    over the years by Napa County and have responded by curtailing their activities to avoid

4    subjective enforcement by Napa County and putting their businesses at risk.

5        141.    Despite the Napa County Code allowing Plaintiff Wineries to engage in the above-

6    described uses, Napa County currently declares that small winery use permit exemptions, legally

7    conforming wineries by express decree, are prohibited from uses authorized other "small

8    wineries" or pre-WDO and post-WDO wineries entitled by "use permit" (as opposed to "use

9    permit exemption") such as "tastings by appointment" and "marketing of wine" without obtaining

10   a new winery entitlement.

11       142.    Despite the Napa County Code allowing Plaintiff Wineries to engage in the above-

12   described uses, Napa County prohibits small winery use permit exemptions from sale of wine,

13   items, or agricultural products not "produced" on the premises, but does not place a similar

14   prohibition to other wineries.

15       143.    The Napa County Code also requires that for all wineries established after the date

16   the ordinance was codified, "at least seventy-five percent of the grapes used to make the winery's

17   still wine, or the still wine used by the winery to make sparkling wine, shall be grown within the

18   county of Napa."  NCC Section 18.104.250(B).

19       144.    For wineries established prior to the codification of the ordinance, if they wish to

20   expand, seventy-five percent of the grapes used to make still or sparkling wine as a result of the

21   expansion must be grown in Napa County.  NCC Section 18.104.250(C).

22       145.    In 2022 Napa County created a new type of winery, a micro-winery, which

23   provided more uses, rights, and entitlements to micro-wineries than allowed to Plaintiff wineries

24   despite micro-wineries being much smaller in both production and infrastructure.  NCC Section

25   18.08.377.  For example, a micro-winery has the following restrictions and uses:

26           (a)    Product capacity of no more than 5,000 gallons of wine.

27           (b)    Maximum indoor space of 5,000 sq. ft.

28           (c)    Up to 20 daily trips for visitors, employees and deliveries.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                                CASE NO: 3:24-CV-6256

1    (d)    Tours and tastings between the hours of 9:00am and 6:00 pm.

2    **Napa County Has Admitted That Many Ordinance Terms Are Vague and Ambiguous**:

3    146.    Napa County maintains multiple active definitions of the term "small winery," that

4    are all distinct:

5    (a)    A "small winery" "does not conduct public tours, provide winetastings, sell

6    wine related items, or hold social events of a public nature." NCC Section 18.08.600(c).

7    (b)    "[S]mall wineries" are those "that produce a small quantity of wine using

8    grapes mostly grown on site and host a limited number of small marketing events each year."

9    (**Exhibit 12**: Napa County General Plan, Policy AG/LU 16.)

10    (c)    "Small wineries," for the purposes of determining whether a development

11    or use permit modification, has no environmental impact, and is thus exempt is defined to include

12    the following:

13    (i)    Less than 5,000 square feet excluding caves;

14    (ii)    Will involve either no cave excavations or excavation sufficient to

15    create no more than 5,000 additional square feet;

16    (iii)    Will produce 30,000 gallons or less per year;

17    (iv)    Will generate less than 40 vehicle trips per day and 5 peak hour

18    trips except on those days when marketing events are taking place;

19    (v)    Will hold no more than 10 marketing events per year, each with no

20    more than 30 attendees, except for one wine auction event with up to 100 persons in attendance.

21    (vi)    And will hold no temporary events.  (**Exhibit 13**: Class 3 CEQA

22    Exemption, Napa Local Exemption Classification, (2020).)

23    147.    In its General Plan, the County acknowledged that the following terms are vague

24    and required further definition: "small wineries," a "small quantity of wine," "small marketing

25    events," and "mostly grown on site." (Exhibit 12: General Plan, Action Item, AG/LU – 16.1.)

26    148.    Napa County concedes that the term "tasting" in the NCC is vague and ambiguous.

27    149.    In responding to Requests for Admissions in a California state court case related to

28    Plaintiff Hoopes, Napa County objected to requests using the term "tasting" because the term was

1  "vague and ambiguous." (**Exhibit 14**: March 9, 2023 Resp. to RFA at Requests 29, 32, 44, 45.)

2  150.  Specifically, Napa County objected to a request asking it to "[a]dmit that the Napa

3  County Code only prohibits 'tastings' without prior appointment" because the "Request is vague

4  and ambiguous, particularly based upon the quoted use of the word 'tastings.'" (*Id*. at Request

5  32.)

6  151.  Napa County officials have also admitted that the "Napa County Code includes no

7  definition of the term 'tasting.'" (**Exhibit 15**: August 8, 2023 RFA Responses at 16.)

8  152.  Napa County concedes that the term "retail" in the NCC is vague and ambiguous.

9  153.  In the same Hoopes lawsuit, Napa County objected to a request to "[a]dmit that the

10  Napa County Code does not define what 'retail' permissions at pre-WDO wineries means"

11  because the request was "incomprehensible, vague and ambiguous, particularly based upon the

12  quoted use of the word 'retail.'" (Exhibit 14: Request to Admit 31.)

13  154.  Napa County has admitted that the "small winery use permit exemption

14  application does not define 'retail sales.'" (Exhibit 15: Request to Admit 19.)

15  155.  Napa County has conceded that the term "consumption" is vague and ambiguous.

16  "Consumption" does not appear in the NCC, but the County takes the official position that any

17  form of "consumption" at a small winery use permit exemption is a "tour and tasting."

18  156.  In the same Hoopes lawsuit, Napa County objected to a request to "[a]dmit that the

19  picnic bill allows consumption on winery premises" because the request was "vague and

20  ambiguous, particularly based upon the quoted use of the word 'consumption.'" (Exhibit 14:

21  Request to Admit 31.)

22  157.  Napa County denied a request to "[a]dmit that onsite consumption is not a tour or

23  tasting." (*Id*. at Request to Admit 66.)

24  158.  "Consumption" is expressly allowed at all Plaintiff Wineries though the State O2

25  licenses.  Consumption is not defined at State Law as equivalent to a "tasting."

26  159.  Napa County concedes that the "wine related" in the NCC is vague and

27  ambiguous.

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

160.    In the same Hoopes lawsuit, Napa County objected to request to "[a]dmit there is no definition of 'wine related' items in the Napa County Code" because the request was "vague and ambiguous, particularly based upon the quoted phrase 'wine-related.'" (*Id.* at Request to Admit 85.)

161.    Napa County concedes that the term "visitors" in the NCC is vague and ambiguous.

162.    In the same Hoopes lawsuit, Napa County objected to a request to request to admit using the term "visitors" because Napa County believed the request was "vague and ambiguous because the word 'visitors' is not defined." (Exhibit 15: Request to Admit 2.)

163.    In a May 26, 2016, email, Napa County officials discussed that that term "visitors," at least as it relates to small winery use permit exemptions, "does not mean tours/tastings but rather business-related visitors (deliveries, sales people, etc.)" (**Exhibit 16**: May 26, 2016 Email.)

164.    Charlene Gallina, the Napa County Planning Supervisor, previously testified under oath that after "[r]eviewing the ordinance, reviewing regulation - - or, you know, reviewing the ordinances, the WDO, discussions with County counsel, interpretation, also interpretation by the manager, how we presented those documents to the Planning Commission," she interpreted the term "visitors" to mean people in the trade such as restaurant/store owners who might come to a winery to "purchase cases of wine so that they could have in their restaurant or at the liquor store or at the grocery store." (**Exhibit 17**: Gallina Deposition Testimony at 69-71.)

165.    Napa County does not maintain records related to an "[o]fficial County working definition of 'wine related' and 'non-wine related items.'" (**Exhibit 18**: August 28, 2023, letter.)

166.    Napa County does not maintain records related to an "[o]fficial definition or internal working definitions and documents reflecting the same of 'visitor' and/or 'visitation' at winery operations." (*Id.*)

167.    Napa County does not maintain records related to "definitions or working enforcement and permitting distinctions between 'small winery exemptions' and 'full blown winery.'" (*Id.*)

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                                    CASE NO: 3:24-CV-6256

168.    Napa County does not maintain a "[l]ist of wineries with permission to host picnics." (*Id*.)

169.    Napa County does not maintain a "[l]ist of all wineries with permission to sell items other than wine." (*Id*.)

170.    Napa County does not maintain a "[l]ist of all wineries with permission to sell wine-related items." (*Id*.)

171.    Napa County has admitted that "[w]e were terrible, I have to agree, we were terrible in notating exactly what entitlements were, and so we've had to go back to the application and look at the requests to see what they asked for because the final approval letter didn't identify what their visitation and marketing program was. They just said you get a 20,000 gallon winery and that's it, and then a building that's 5,000 or 10,000 square feet." (Exhibit 17: Gallina Deposition Testimony at 70-71.)

172.    In determining that some County wineries may not provide wine tasting, Napa County relies upon the definition contained within NCC 18.08.600. (**Exhibit 19**: March 9, 2023, Interrogatory Response 4.)

173.    In determining that Plaintiff Wineries are prohibited from "holding social events of a public nature," Napa County relies upon the definition contained within NCC 18.08.600. (*Id*. at Interrogatory Response 40.)

174.    Definitional sections of ordinances are not operative law. *See, e.g., Isaacson v. Brnovich*, 610 F. Supp 3d 1243, 1252 (D. Ariz. 2022) (definition in a statute "is not by itself operative law"); *Hamilton v. Brown*, 4 Vet. App. 528, 536 (U.S. Ct. Vet. App. 1993) ("[d]efinitions, whether statutory or regulatory, are not themselves operative provisions of law."); *Aguayo v. Jewell*, No. 13-CV-1435-BAS KSC, 2014 WL 6473111, at *16 (S.D. Cal. Nov. 18, 2014), aff'd, 827 F.3d 1213 (9th Cir. 2016); *see also Hawaii v. Off. of Hawaiian Affs*., 556 U.S. 163, 175 (2009) ("whereas" clauses and preamble language are not operative).

175.    According to Napa County, using social media for marketing purposes is a violation of the Napa County Code. (Exhibit 19: Interrogatory Response 11.)

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

176.   According to Napa County, if a Napa County winery "offers visitors access to the winery's interior and exterior," the winery has provided the visitor with a "public tour" which is in violation of the Napa County Code.  (*Id*. at Interrogatory Response 37.)

**Napa County Was Aware of Constitutional Issues With the Napa County Code**:

177.   On October 16, 1989, in relation to the proposed Winery Definition Ordinance, Napa County's Chief Deputy Legal Counsel wrote a memorandum to the Board of Supervisors regarding legal issues with the Winery Definition Ordinance.  (**Exhibit 20**.)  That memorandum outlined a number of federal and state constitutional issues as well as statutory issues:

(a)   Equal Protection: The memo discussed that a provision which would regulate retail sales based on the source of the grapes used in the wine sold would be subject to an Equal Protection claim because there was no rational relationship between the provision and "any legitimate state purpose."  (*Id*. at p. 1-2.)

(b)   Non-Uniform Zoning Ordinances:  The memorandum discussed the discrepancy between the right to engage in "public tours, public promotional activities, winery guest picnic areas, and display and sale of wine-related items" at existing wineries and newly established wineries because "state law does not permit local agencies to adopt discriminatory rules for the same type of future uses (wineries) on essentially similar properties within the same zoning districts."  (*Id*. at 2.)

(c)   Commerce Clause:  The memorandum discussed the legality of the Winery Definition Ordinance's requirement that a winery utilize at least 75% grapes grown in Napa County.  *Id*. at p. 3-4.  On this issue, Napa's counsel determined the restriction would likely be legal based on the appellation regulations and a legal opinion received from the law firm of Townsend and Townsend.  (*Id*. at 4.)

178.   In an October 26, 2009, Memorandum (**Exhibit 21**), Napa County again recognized that the Napa County Code and interpretations thereof were problematic and potentially violated the Constitutional rights of wineries:

(a)   Napa County recognized that "events are protected under the First Amendment of the US Constitution." *Id*. at 3.

1        (b)     Napa County recognized that "it has not always been clear whether

2 business meetings and similar events qualify as marketing events…. [For example,] business

3 meetings have a marketing objective (e.g. a wine tasting or education event scheduled for a group

4 of bankers as a part of a corporation retreat), have often been considered marketing events…."

5 *Id*. at 2.

6        (c)     "[P]lanning staff understands that the prohibition on cultural and social

7 events and the issues surrounding business meetings…are themselves based on interpretations of

8 code language. In the case of cultural and social events, County staff and policy makers have

9 routinely interpreted birthday parties, weddings, etc. to be cultural and social events that are

10 'unrelated to...education and development' of the persons and groups called out in the definition

11 of 'marketing.'" *Id*. at 3.

12        (d)     "In the case of business meetings, County staff and policy makers have

13 interpreted some business meetings as falling within the definition of 'marketing,' while

14 acknowledging that the practice of hosting other business meetings can be considered a

15 commercial activity outside the definition of 'marketing.' Careful consideration should be given

16 to legal issues and potentially preferable alternatives before using an administrative interpretation

17 to clarify when business meetings are acceptable. While there is no phrase in the code expressly

18 describing these meetings as not falling within the definition of marketing (as there is for social

19 and cultural events), there is still the disadvantage that an administrative interpretation can be

20 reversed … whenever the composition of the Commission or the Board changes." *Id*.

21 **Disparity of Rights for Napa Wineries**:

22        179.    Wineries in Napa County have varied permissions from the County with respect to

23 the services they are allowed to offer and the number of visitors allowed at each winery.

24        180.    Napa County prohibits some, but not all, wineries within the County from offering

25 public tastings at their winery.

26        181.    Napa County prohibits some, but not all, wineries within the County from offering

27 private tastings at their winery.

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                    CASE NO: 3:24-CV-6256

1    182.    Napa County prohibits some, but not all, wineries within the County from offering

2    tastings by appointment at their winery.

3    183.    Napa County prohibits some, but not all, wineries within the County from selling

4    wine for on-premises consumption at their winery.

5    184.    Napa County prohibits some, but not all, wineries within the County from playing

6    music at their winery.

7    185.    Napa County prohibits some, but not all, wineries within the County from hosting

8    private social events at their winery.

9    186.    Napa County prohibits some, but not all, wineries within the County from hosting

10   public social events at their winery.

11   187.    Napa County prohibits some, but not all, wineries within the County from hosting

12   private business events at their winery.

13   188.    Napa County prohibits some, but not all, wineries within the County from hosting

14   public business events at their winery.

15   189.    Napa County prohibits some, but not all, wineries within the County from hosting

16   private marketing events at their winery.

17   190.    Napa County prohibits some, but not all, wineries within the County from hosting

18   public marketing events at their winery.

19   191.    Napa County prohibits some, but not all, wineries within the County from hosting

20   private cultural events at their winery.

21   192.    Napa County prohibits some, but not all, wineries within the County from hosting

22   public cultural events at their winery.

23   193.    Napa County prohibits some, but not all, wineries within the County from hosting

24   meetings at their winery.

25   194.    Napa County prohibits some, but not all, wineries within the County from having

26   customers come to their winery.

27   195.    Napa County prohibits some, but not all, wineries from hosting weddings at their

28   winery.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                      CASE NO: 3:24-CV-6256

196.   Napa County prohibits some, but not all, wineries from hosting weddings receptions at their winery.

197.   Napa County prohibits some, but not all, wineries from selling wine at their winery that was produced at other licensed facilities operated by the same winegrower.

198.   Napa County prohibits some, but not all, wineries from selling retail items at their winery.

199.   Napa County prohibits some, but not all, wineries from selling anything "not produced on site" at their winery.

200.   Napa County prohibits some, but not all, wineries from selling wine-related items at their winery.

201.   Napa County prohibits some, but not all, wineries from selling non-wine related items at their winery.

202.   Napa County dictates the number of customers who may come to a winery each day, week, and year.

203.   Napa County dictates the number of employees a winery may employ.

204.   Napa County determines whether an event is allowed at a winery based on the content of the event.

205.   A 2019 Napa County Winery Database (Exhibit 6), shows the disparity in permissions for wineries in Napa County.  At the time, there were 491 wineries in Napa County and the tasting room visitors each were allowed varied greatly:

(a)   99 wineries are not allowed to have any visitors.

(b)   46 wineries are allowed to have between 1 and 10 visitors per week.

(c)   85 wineries are allowed to have between 11 and 50 visitors per week.

(d)   68 wineries are allowed to have between 51 and 100 visitors per week.

(e)   134 wineries are allowed to have between 101 and 500 visitors per week.

(f)   24 wineries are allowed to have between 501 and 1,000 visitors per week.

(g)   31 wineries are allowed to have between 1,001 and 8,544 visitors per week.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

206.     According to the Winery Database, the average number of weekly visitors across all wineries is 281 visitors per week.

207.     The 2019 Napa County Database shows that the ability to have marketing events varies greatly:

         (a)     151 wineries are not allowed any marketing events per year.

         (b)     56 wineries are allowed between 1 and 5 marketing events per years.

         (c)     72 wineries are allowed between 6 and 10 marketing events per year.

         (d)     130 wineries are allowed between 11 and 50 marketing events per year.

         (e)     53 wineries are allowed between 51 and 175 marketing events per week.

         (f)     13 wineries are allowed between 176 and 400 marketing events per year.

         (g)     9 wineries are allowed between 401 and 832 marketing events per year.

         (h)     2 wineries are allowed between 1,130 and 1,673 marketing events per year.

         (i)     1 winery is allowed 4,612 marketing events per year.

         (j)     This last winery could have 12.6 marketing events per day which is more events in one day than 159 wineries are allowed to have in a year.

208.     The 2019 Napa County Winery Database shows that the ability to have marketing event visitors also varies greatly:

         (a)     148 wineries are not allowed any marketing event visitors.

         (b)     27 wineries are allowed between 1 and 100 marketing event visitors per year.

         (c)     61 wineries are allowed between 101 and 250 marketing event visitors per year.

         (d)     76 wineries are allowed between 251 and 500 marketing event visitors per year.

         (e)     45 wineries are allowed between 501 and 1,000 marketing event visitors per year.

         (f)     95 wineries are allowed between 1,001 and 5,000 marketing event visitors per year.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

(g)     20 wineries are allowed between 5001 and 10,000 marketing event visitors per year.

(h)     18 wineries area allowed between 10,001 and 50,000 marketing event visitors per year.

(i)     1 winery is allowed up to 95,400 marketing event visitors per year.

(j)     This last winery is allowed more marketing event visitors per year than 378 Napa wineries combined.

209.    For total visitors allowed at wineries, the disparity is massive:

(a)     81 wineries are not allowed to have any visitors at their tasting room or marketing events.

(b)     4 wineries are allowed to have up to 100 visitors per year at their tasting room or marketing events.

(c)     64 wineries are allowed to have between 101 and 1,000 visitors per year at their tasting room or marketing events.

(d)     122 wineries are allowed to have between 1,001 and 5,000 visitors per year at their tasting room or marketing events.

(e)     83 wineries are allowed to have 5,001 and 10,000 visitors per year at their tasting room or marketing events.

(f)     61 wineries are allowed to have between 10,001 and 25,000 visitors per year at their tasting room or marketing events.

(g)     36 wineries are allowed to have between 25,001 and 50,000 visitors per year at their tasting room or marketing events.

(h)     17 wineries are allowed to have between 50,001 and 100,000 visitors per year at their tasting room or marketing events.

(i)     22 wineries are allowed to have between 100,001 and 539,688 visitors per year at their tasting room or marketing events.

(j)     One winery is allowed more visitors in one year than 170 wineries combined.

210.    The distinction between the number of tasting room visitors, marketing event visitors, and marketing events allowed is not based upon objective criteria such as acreage, building size, or parking spaces as the 2019 Napa County Winery Database shows that wineries with similar building sizes, and parking spaces have drastically different allowances for visitors.

211.    For example, one winery with 75 parking spaces and a 96,200 sq. ft. building is allowed 6,280 visitors per year while another winery with 75 parking spaces and a 56,215 sq. ft building is allowed 118,700 visitors per year. These two wineries were approved approximately one year apart.  Another winery has 22 parking spaces and is allowed 146,000 visitors per year.

212.    As discussed above, sometime between 2012 and 2016, Napa County revised its Winery Database to change the permissions for county wineries without notice to those wineries and in many instances removing permissions for wineries.

213.    On August 11, 2015, David Morrison, Director of PBES, communicated to the Board of Supervisors that PBES conducted a "multi-month" audit of the winery database, but has refused to disclose the details, audit trial, directive for the "audit," who had access to the database, who completed the audit, what standards were used, or what changes were made to the public or to property owners. In response to Public Records Requests, the Department declared in general terms that these documents were not maintained or did not exist.

214.    For example, between 2012 and 2016, the Napa County changed the permissions for the following wineries from "tastings by appointment" to no tastings allowed: Alta Vineyard Cellar, Amizetta Vineyards, Baldacci Family Vineyards, Cain Cellars, Combs Brothers Cellars, David Busby Winery, Domaine Montreaux, El Molino, Winery, Frisinger Vineyards, Hakanson Winery, Hopper Creek Winery, Kates Vineyard, Kongsgaard Winery, La Vallette Winery, Mt. Veeder Winery, Obrien Family Vineyard, Sears Winery, Simone Winery, Stags Leap Winery (Doumani 1), Stags Leap Winery (Doumani 5), Summit Lake Vineyards, Villa Helena, Villa Ragazzi and Volker Eisele Family Estate. (Exhibits 2-4, 6.)

**Napa County Enforces Its Unconstitutional Ordinances and Policies**:

215.    On August 22, 2017, Napa County adopted a policy wherein it vested authority, in its "sole discretion," with the County Director of Planning to oversee a program to determine the

- 29 -

"extent of existing entitlements" for existing wineries.

216.   Napa County has utilized this policy to strip wineries, like Plaintiffs, of uses, rights, and entitlements without due process.

217.   Napa County has also made the process of modifying a use permit so expensive that wineries in Napa County cannot go through the process without risking the financial viability of their business.

218.   This process is also incredibly time consuming with permit modifications often taking more than five years to complete.

219.   In a 2016 Board Agenda Letter, Napa County's Director of Planning conceded that Napa County is unsure of the vested rights at each winery in the County.  (**Exhibit 22**.)

220.   During the Hoopes state court lawsuit, the Planning Supervisor admitted that entitlements for wineries entitled by right, prior to any use permit requirements, were never recorded or interpreted, other than as reflected in application documents. (Exhibit 17.)

221.   While Napa County now views application documents as dictating winery permissions, in a 1989 Memo Napa County determined that these documents were irrelevant and not even necessary.  (**Exhibit 23**.)

222.   Despite being unsure of the uses, rights, and entitlements for each winery in the County, Napa County has enforced varied and vague restrictions on County wineries, including Plaintiffs.

223.   County officials actively monitor the social media accounts of County wineries, including Plaintiffs, looking to find alleged violations. (See, e.g., **Exhibit 24**, Declaration of Akenya Robinson-Webb, Napa County's Code Compliance Supervisor.)

224.   County officials have conducted undercover operations, wherein they pretend to be regular customers, and seek to induce County wineries into offering services which the County believes are in violation of the service these wineries, including Plaintiffs, are allowed to offer. (Id.)

225.   Napa County's enforcement actions against Hoopes and other wineries are well-known amongst County wineries, including Plaintiffs, and have had a chilling effect on their

1    actions, to avoid the ire of Napa County.

2         226.    Plaintiff Wineries have actively engaged with the County to find a workable

3    solution, provided all requested documents, and expended substantial funds in furtherance of a

4    solution and to avoid litigation.

5         227.    The County induced good faith reliance that the County would provide a path to

6    resolution through the voluntary "compliance" and/or timely responses but the County has instead

7    used the program to demand unsupportable, unlawful, and unworkable demands to continue

8    existing operations and/or abandonment of existing entitlements.

9         228.    Plaintiff Wineries relied on these promises in continuing to make adjustments, and

10   artificially abate lawful behavior to appease County officials, even absent legal authority

11   requiring the same, to find a resolution.

12        229.    The County was not motivated to "gain compliance," but rather force unlawful

13   upgrades for existing entitlements the County knew or should have known the Plaintiff Wineries

14   could not or did not need to undertake.

15        230.    As part of this process and the process for any new wineries, Napa County defers

16   to the subjective interest of neighboring landowners and special interest groups to dictate the

17   permissions allowed to wineries like Plaintiffs.

18        231.    In other instances, Napa County has advised applicant wineries or vineyards that

19   they must first negotiate with third parties, including special interest groups, before Napa County

20   will review and approve an application.

21        232.    In some instances, Napa County includes third parties in enforcement efforts

22   against wineries by sharing investigative materials and internal enforcement communications

23   therewith.

24        233.    Napa County has advised applicants that they "should" agree to dedicate land for

25   conversations and easements, pay money to public projects and/or voluntarily agree to reduce the

26   number of visitors or size of facilities to appease third-party interests and those of the County.

27   / / /

28   / / /

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                                        CASE NO: 3:24-CV-6256

**FIRST CLAIM FOR RELIEF**
**FACIAL CHALLENGE TO VIOLATION OF FREEDOM OF SPEECH UNDER THE**
**FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983)**

234.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

235.   The First Amendment to the United States Constitution prohibits the abridgement of the freedom of speech.

236.   The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgement of the freedom of speech and freedom of expression by state and local governments.

237.   Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

238.   Napa County has violated Plaintiffs' freedom of speech by restricting both expressive and commercial speech.

239.   For a regulation of commercial speech to be constitutional, courts apply a four-part test: 1) if the speech concerns lawful activity and is not misleading; 2) the asserted governmental interest must be substantial; 3) the regulation must directly advance the governmental interest asserted; and 4) the regulation must not be more extensive than is necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

240.   Plaintiffs wish to invite guests to their businesses and/or maintain their businesses as generally open to the public for the express purpose of advertising and promoting the products Plaintiffs have for sale with the intent of completing a sale of their products to consumers who visit their businesses.

241.   Plaintiffs are afraid to exercise entitlements and rights they believe are already entitled to the property, and authorized pursuant to state licenses, for fear of retribution and unauthorized law enforcement. This has chilled exercise of lawful entitlements and rights.

242.   Plaintiffs wish to invite guests to their businesses and/or maintain their businesses as generally open to the public for the express purpose engaging in product demonstrations to

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                          CASE NO: 3:24-CV-6256

allow customers to taste Plaintiffs' products with the primary intent that these customers will purchase Plaintiffs products at that time and/or sign up for Plaintiffs' wine clubs so that Plaintiffs may sell additional products to these customers throughout the year.

243.    Activities which seek to "have prospects enter their stores and purchase Plaintiffs' products . . . [are] commercial speech." *FF Cosmetics FL Inc. v. City of Miami Beach, Florida*, 129 F. Supp. 3d 1316, 1321 (S.D. Fla. 2015).

244.    Product demonstrations are commercial speech because they are "essentially an advertisement" of products and the motivation for engaging in the speech is purely economic. *Am. Future Sys., Inc. v. Pennsylvania State Univ.*, 752 F.2d 854, 857 (3d Cir. 1984); *Bd. of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989).

245.    Napa County's ordinances and policies violate Plaintiffs' First Amendment free speech rights by prohibiting and/or restricting political, cultural, charitable, and other forms of events and gatherings.

246.    Napa County concedes that activities which bring potential customers to a winery are for the purpose of "marketing of wine."

247.    Napa County's ordinances and policies violate Plaintiffs' First Amendment free speech rights by, among other restrictions, prohibiting and/or restricting Plaintiffs' ability to engage in commercial speech which is no more than speech proposing a commercial transaction.

248.    Napa County further requires that permit applicants "shall submit to the county a fully executed indemnification agreement agreeing to defend, indemnify, release and hold harmless the county from any claim, action, or proceeding brought against the county to attack, set aside, void or annul the approval based on the county's failure to comply with the requirements of any federal, state, or local law, including but not limited to general plan and zoning requirements, or both. The indemnification shall include damages awarded against the county, if any, costs of suit, attorneys' fees and other expenses incurred in connection with such action."  NCC Section 1.30.030(A).

249.    But under Section 1988, even if Napa County were determined to be the prevailing party in a Section 1983 lawsuit, it is only entitled to recover its costs and attorneys' fees if the

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

litigation was "unreasonable, frivolous, meritless, or vexatious." By attempting to make the payment of attorneys' fees and costs mandatory, Napa County violates Plaintiffs' First Amendment right to petition the courts by attempting to chill meritorious litigation under the threat of costs and attorneys' fees. *See S. Bay Rod & Gun Club, Inc. v. Bonta*, 646 F. Supp. 3d 1232, 1241–44 (S.D. Cal. 2022).

250.    Plaintiff Wineries are in, or have threatened, litigation with Napa County for which they have experienced retaliation from Napa County.

251.    This has violated Plaintiffs' First Amendment Right to petition the courts.

252.    These First Amendment violations have caused Plaintiffs damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

(b)    Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**AS-APPLIED CHALLENGE TO VIOLATION OF PLAINTIFFS' FREEDOM OF SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983)**

253.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

254.    The First Amendment to the United States Constitution prohibits the abridgement of the freedom of speech.

255.    The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgement of the freedom of speech and freedom of expression by state and local governments.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                                  CASE NO: 3:24-CV-6256

256.     Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

257.     Plaintiffs wish to invite guests to their businesses and/or maintain their businesses as generally open to the public for the express purpose of advertising and promoting the products Plaintiffs have for same with the intent of completing a sale of their products to consumers who visit their businesses.

258.     Plaintiffs wish to invite guests to their businesses and/or maintain their businesses as generally open to the public for the express purpose engaging in product demonstrations to allow customers to taste Plaintiffs' products with the intent that these customers will purchase Plaintiffs products at that time and/or sign up for Plaintiffs' wine clubs such the Plaintiffs may sell additional products to these customers throughout the year.

259.     Napa County's ordinances and policies, as applied to each Plaintiff, violate Plaintiffs' First Amendment free speech rights by, among other restrictions, prohibiting and/or restricting Plaintiffs' ability to engage in commercial speech which is no more than speech proposing a commercial transaction.

260.     Napa County's ordinances and policies, as applied to each Plaintiff, violate Plaintiffs' First Amendment free speech rights by prohibiting and/or restricting political, cultural, charitable, and other forms of events and gatherings.

261.     Plaintiff Wineries are in, or have threatened, litigation with Napa County for which they have experienced retaliation from Napa County.

262.     This has violated Plaintiffs' First Amendment Right to petition the courts.

263.     These First Amendment violations have caused Plaintiffs damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)      Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

(b)      Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)     Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**PRIOR RESTRAINT OF SPEECH**
**(42 U.S.C. § 1983)**

264.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

265.    "The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted).  There is a "heavy presumption" against the constitutional validity of prior restraints. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). If a licensing statute places "unbridled discretion in the hands of a government official or agency, [it] constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

266.    The relevant Napa County ordinances and policies unconstitutionally require Plaintiffs to obtain governmental approval before speaking.

267.    Approval is at the unbridled discretion of Napa County and is not a matter of routine.

268.    For example, to have a cultural, business, or social event at a winery, Plaintiffs are required to obtain approval from Napa County regarding the purpose and intent of the event, by way of submission of a "marketing plan," before "marketing events" can take place.

269.    The requirement to get governmental pre-approval is an unlawful prior restraint and has caused Plaintiffs damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)     Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

- 36 -

(b)      Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)      Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)      Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)      Grant such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
## CONTENT-BASED SPEECH RESTRICTIONS
### (42 U.S.C. § 1983)

270.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

271.    It is a fundamental precept of the First Amendment that the government cannot favor one private speaker over another.  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

272.    Accordingly, content-based restrictions are "presumptively invalid." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009).

273.    An especially "egregious" form of content-based discrimination is that which excludes a viewpoint from the marketplace of ideas. *Rosenberger*, 515 U.S. at 829.

274.    "One reliable way to tell if a law restricting speech is content based is to ask whether enforcement authorities must 'examine the content of the message that is conveyed' to know whether the law has been violated." *Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 862 (11th Cir. 2020) (quoting *McCullen v. Coakley*, 573 U.S. 464, 479 (2014)).

275.    The Napa County Code recognizes that "Marketing of Wine" includes activities and events intended to educate consumers about wine that is offered.  NCC Section 18.08.370.

276.    The Napa County Code allows business events for the marketing of wine but in determining whether to approve a business event at a winery, the ordinances state that "[c]areful consideration shall be given to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan." *Id*.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

277.    Napa County has issued interpretative guidance as how it determines what is an allowed social, cultural, and business event. (**Exhibit 25**.)

278.    That interpretive guidance explicitly states that this determination is made based on the content of the advertising and message at the event: "Since the adoption of the Winery Definition Ordinance in 1990, Napa County Code has allowed activities for the education and development of customers and potential customers at wineries under the definition of 'marketing of wine.' Cultural and social events that are unrelated to education and development are explicitly not permitted, while cultural and social events that are directly related to education and development have always been allowed. Business events are similar to cultural and social events, in that they are only permitted as part of 'marketing of wine' if they are directly related to the education and development of customers and potential customers of the winery and are part of an approved marketing plan that in its totality is 'clearly incidental, related and subordinate to the primary operation of the winery as a production facility'"  NCC Section 18.16.030(G)(5) and NCC Section 18.20.030 (I)(5).

279.    Napa County's Planning Supervisor testified in the Hoopes State Court lawsuit that Napa County uses the interpretive guidance to determine whether an event at a winery is allowed.  (**Exhibit 26**: Transcript at 511.)

280.    The guidance then gives "some examples of marketing events, including cultural and social events that the County considers directly related to education and development of consumers. These events fall within the definition of 'marketing of wine.' In each case, the example describes the intent of the event, the wine-related content, and the non-wine related content."  (Exhibit 25.)

281.    The guidance also gives "some examples of business events that the County considers directly related to education and development of consumers, and therefore fall within the definition of 'marketing of wine.' In each case, the example describes the intent of the event, the wine-related content. and the non-wine related content."

282.    Napa County is clear that whether an event is allowed to occur at a winery is entirely dependent on the "intent of the event" as well as the wine and non-wine "content."

283.     Thus, Napa County determines whether an event is allowed based on the content of the marketing at the event which violates the Plaintiffs' First Amendment rights.

284.     Napa County takes the position that small wineries are prohibited from any and all "marketing events" *and* "temporary events," including "events" [seemingly, any gathering of any size] with political, philanthropic, commercial, and/or religious object.

285.     Plaintiffs have suffered damages from these content-based speech restrictions.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)     Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

(b)     Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)     Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT**
**(42 U.S.C. § 1983)**

286.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

287.     The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that no state may "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

288.     The Fourteenth Amendment has been construed to provide rights to both substantive and procedural due process.

289.     "Where a [business] permit has been properly obtained and in reliance thereon the permittee has incurred material expense, he acquires a vested property right to the protection of which he is entitled." *O'Hagen v. Bd. of Zoning Adjustment*, 19 Cal. App. 3d 151, 158 (1971).

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

290.     "When a municipal ordinance regulates a useful business enterprise, it is subject to scrutiny by the courts with a view to determining whether the ordinance is a lawful exercise of the police power, or whether it amounts to unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property." *Safeway Inc. v. City and County of San Francisco*, 797 F. Supp. 2d 964, 969 (N.D. Cal. 2011) (citing *Dobbins v. Los Angeles*, 195 U.S. 223, 235–36 (1904) and *Lawton v. Steele*, 152 U.S. 133, 137 (1894)).

291.     Napa County enforces arbitrary and vague laws against Plaintiffs which interfere with their constitutional rights to carry on a lawful business.

292.     Further, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

293.     The vagueness doctrine reflects two related requirements. First, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. Second, the vagueness doctrine demands that laws "provide explicit standards for those who apply them" to avoid "arbitrary and discriminatory enforcement." *Id*.

294.     As discussed above, the Napa County Code related to wineries are vague on their face and Napa County has admitted the ordinances are vague.

295.     Definitional sections of ordinances are not operative law.

296.     As discussed above, Napa County enforces definitional ordinances as if they are operative law which violates the Plaintiffs' due process rights.

297.     As discussed above, Plaintiff Wineries cannot identify what conduct is permitted or prohibited conduct due to lack of operative or even definitional guidance.

298.     Plaintiff Wineries cannot identify what conduct is permitted due to inconsistent enforcement for the same conduct and as to similarly situated properties.

299.     The Napa County Code fails to provide explicit standards for those who apply them which then allows Napa County official to engage in arbitrary and discriminatory enforcement.

- 40 -

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

300.     Additionally, as discussed above, sometime between 2012 and 2016, Napa County revised its Winery Database and removed permissions for Plaintiffs without providing Plaintiffs of notice of the change or the opportunity to challenge the change in permissions.

301.     During this time, Napa County did not establish standards, policies, procedures, or training to guide this mid-2010's interpretation of existing property entitlements and/or ensure uniform interpretation of decades old entitlements.

302.     While Napa County has advised Plaintiffs that they could "voluntarily" seek a review of the "uses" and "rights" each are entitled to, Napa County engages in this "review" in an arbitrary and discriminatory way seeking to punish wineries like Plaintiffs.

303.     Napa County has made this review process so expensive that wineries are not financially able to complete the process.

304.     Additionally, Napa County intentionally makes the process time consuming, often taking several years to complete, to further deter wineries from attempting to gain additional permissions or even defend existing entitlements.

305.     Additionally, Napa County applies its Road and Street Standards in an arbitrary and capricious manner specifically designed to violate the Due Process rights of wineries in Napa County.

306.     The Napa County Code defines agriculture to include wineries and the sale of wine products.  NCC Section 18.08.040.

307.     Specifically, for those wineries like Plaintiffs who have been granted a use permit or a small winery exemption, agriculture includes "Production and processing of agricultural products, including agricultural processing facilities" and "Marketing, sales, and other accessory uses that are related, incidental and subordinate to the main agricultural processing use."  NCC Section 18.08.040(H).

308.     Yet in the Road and Street Standards, Napa County defines an agricultural road to include all types of agricultural uses except a winery.  (**Exhibit 27**: Section 14(i).)

309.     Under those standards, an agricultural road must contain a ten-foot-wide drivable surface and four feet of shoulder. (*Id*. at Section 15.)

- 41 -

1    310.   At the time "small wineries" were entitled in the 1980s they were expressly

2  recognized as exempt from road standards applying to other winery developments.

3    311.   Presumably, Napa County in its Road and Street Standard implicitly redefines a

4  winery as a commercial use in order to hold it to the higher road standard.

5    312.   However, this determination is not contained within the standard.

6    313.   Such a determination would also conflict with the definition of commercial use in

7  the Napa County Ordinances which specifically excludes the growing, processing, and ultimate

8  sale of agricultural products and all necessary accessory uses from the definition of a commercial

9  use.  NCC Section 18.08.170.

10    314.   Thus, the Road and Street Standards should not apply to wineries.

11    315.   Napa County is aware that it has incorrectly applied its Road and Street Standard

12  against wineries and agricultural roads.  Napa County officials recognized in a June 8, 2022,

13  email that "[b]ased on our local definition [of agriculture], all wineries would be exempt from the

14  State Minimum Fire Safe Regulations [and thus the Road and Street Standards]. This is a

15  loophole I have been aware of and have conveyed to many of you." (**Exhibit 28**.)

16    316.   Despite this recognition, Napa County has applied the Road and Street Standards

17  against numerous wineries, including Plaintiffs, and has incorrectly forced these wineries to

18  spend tens of millions of dollars in costs.

19    317.   Napa County also applies its Road and Street Standards related to installation of

20  left turn lanes in an arbitrary and capricious manner.  (Exhibit 27: Road and Street Standards

21  Section 17.)

22    318.   For example, Napa County has demanded wineries pay for and install left turn

23  lanes on public roads to increase its daily allowed visitors by just a few visitors.

24    319.   However, Napa County does not apply its Road and Street Standard uniformly

25  and, upon information and belief, only applies its standards to some but not all wineries and also

26  not to other types of property.

27    320.   County wineries have inquired of Napa County why Napa County does not apply

28  the standards uniformly and Napa has replied that it does not apply the standards uniformly

COMPLAINT                                                                    CASE NO: 3:24-CV-6256

because it believes it does not have to apply the standards to all types of properties and to all wineries and that it has the discretion to pick and choose when and if the standards are applied.

321.    Thus, Napa County applies its standards arbitrarily.

322.    Napa County's vague and arbitrary enforcement of its ordinances, standards, and policies has a chilling effect because Plaintiff Wineries face the prospect of their businesses being shut down if Napa County determines that Plaintiff Wineries are operating as a nuisance.  See NCC 18.144.040.

323.    Plaintiffs have suffered damages from Napa County's vague and arbitrary enforcement of its ordinances and policies.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

(b)    Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief as this Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**DUE PROCESS – NON-DELEGATION DOCTRINE**
**(42 U.S.C. § 1983)**

324.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

325.    In those rare instances where Napa County is amendable to granting or modifying a use permit, as a conditions to receiving that permit, Napa County requires the consent of third parties including special interest groups.

326.    For example, Plaintiffs are aware of at least two recent instances where Napa County has conditioned the issuance of a use permit on the approval of third parties.

327.    Such conduct violates the non-delegation doctrine which the Supreme Court has applied to protect private property owners from an unfair and standardless process that empowered other private property owners, "solely for their own interest, or even capriciously," to determine the kind of use to which the former could put their property. *See Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912); *Young v. City of Simi Valley*, 216 F.3d 807 (9th Cir. 2000); *Rice v. Village of Johnstown, Ohio*, 30 F. 4th 584 (6th Cir. 2022).

328.    This policy and practice of Napa County is unconstitutional both facially and as applied to Plaintiffs as Plaintiffs either have been subject to such delegation or have refrained from applying for permits or modifications due to the delegation of authority to third parties.

329.    Plaintiffs have suffered damages from Napa County's unlawful delegation.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that, on its face and as applied, the Napa County policy of third-party approval of use permits violates the United States Constitution;

(b)    Enjoin Napa County, its employees, officers, and agents, from enforcing the policy permanently and preliminarily while this litigation is pending;

(c)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief as this Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**DORMANT COMMERCE CLAUSE**
**(Discrimination Against Interstate Commerce)**
**(42 U.S.C. § 1983)**

330.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

331.    The dormant Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994); *New Energy*

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1    *Co. v. Limbach*, 486 U.S. 269, 273 (1988).

2         332.      Laws which require wineries to use a minimum percentage of local grapes are per

3 se invalid unless the restriction passes strict scrutiny. *Alexis Bailly Vineyard, Inc. v. Harrington*,

4 482 F. Supp. 3d 820, 824 (D. Minn. 2020) (state law requiring use of majority Minnesota grapes

5 per se invalid); *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Twp.*, No. 1:20-cv-

6 1008, 2022 WL 2155097, at *7-9 (W.D. Mich. June 3, 2002) (ordinance requiring use of 85% in-

7 Township grapes *per se* invalid.)

8         333.      The Napa County Code requires that for all wineries established after the date the

9 ordinance was codified, "at least seventy-five percent of the grapes used to make the winery's

10 still wine, or the still wine used by the winery to make sparkling wine, shall be grown within the

11 county of Napa." NCC Section 18.104.250(B).

12         334.      For wineries established prior to the codification of the ordinance, if they wish to

13 expand, seventy-five percent of the grapes used to make still or sparkling wine as a result of the

14 expansion must be grown in Napa County. NCC Section 18.104.250(C).

15         335.      In 2022 Napa County created a new type of winery, a micro-winery, which also

16 requires the use of at least seventy-five percent Napa County grapes.

17         336.      Napa County also has a policy prohibiting sale of wine and other agricultural

18 products "not produced on site," even though many Napa wineries operate state licensed wineries

19 in other locations outside of Napa County and are legally allowed to transfer that product to other

20 licensed locations. Similarly, many wineries have relationships with agricultural growers outside

21 of Napa County and seek to purchase agricultural products from those growers rather than just

22 Napa County growers.

23         337.      The Napa County Code discriminates against interstate commerce in violation of

24 the Commerce Clause, Article I, § 8, Clause 3, of the United States Constitution, by favoring, and

25 mandating in-County products and persons over out-of-County products and persons.

26         338.      Plaintiffs wish to expand their operations but do not wish to be subject to the

27 unconstitutional grape source requirements in NCC Section 18.104.250(B) and NCC Section

28 18.104.250(C).

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                             CASE NO: 3:24-CV-6256

339.    Plaintiffs therefore are entitled to a declaratory judgment that the Napa County Code discriminates against out-of-County products and persons are unconstitutional under the dormant Commerce Clause.

340.    Plaintiffs will suffer irreparable harm if Napa County is allowed to enforce the unconstitutional ordinances.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that, on its face and as applied, the Napa County ordinances and policies violate the United States Constitution;

(b)    Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief as this Court deems just and proper.

**COUNT VIII**
**DORMANT COMMERCE CLAUSE**
**(Excessive Burden on Interstate Commerce)**
**(42 U.S.C. § 1983)**

341.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

342.    The Dormant Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994); *New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988)

343.    Laws which require wineries to use a minimum percentage of local grapes are per se invalid unless the restriction passes strict scrutiny. *Alexis Bailly Vineyard, Inc. v. Harrington*, 482 F. Supp. 3d 820, 824 (D. Minn. 2020) (state law requiring use of majority Minnesota grapes *per se* invalid); *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Twp.*, No. 1:20-cv-

FENWICK WENDEL
ATTORNEYS AT LAW
OAKLAND

1008, 2022 WL 2155097, at *7-9 (W.D. Mich. June 3, 2002) (ordinance requiring use of 85% in-Township grapes *per se* invalid.)

344.     The Napa County Code requires that for all wineries established after the date the ordinance was codified, "at least seventy-five percent of the grapes used to make the winery's still wine, or the still wine used by the winery to make sparkling wine, shall be grown within the county of Napa." NCC Section 18.104.250(B).

345.     For wineries established prior to the codification of the ordinance, if they wish to expand, seventy-five percent of the grapes used to make still or sparkling wine as a result of the expansion must be grown in Napa County.  NCC Section 18.104.250(C).

346.     In 2022 Napa County created a new type of winery, a micro-winery, which also requires the use of at least seventy-five percent Napa County grapes.

347.     Napa County also has a policy prohibiting sale of wine and other agricultural products "not produced on site," even though many Napa wineries operate state licensed wineries in other locations outside of Napa County and are legally allowed to transfer that product to other licensed locations.  Similarly, many wineries have relationships with agricultural growers outside of Napa County and seek to purchase agricultural products from those growers rather than just Napa County growers.

348.     The Napa County Code places an excessive burden on interstate commerce in excess of the putative benefit to Napa County in violation of the Commerce Clause, Article I, § 8, Clause 3, of the United States Constitution, by favoring, and mandating in-County products and persons over out-of-County products and persons.

349.     Plaintiffs wish to expand their operations but do not wish to be subject to the unconstitutional grape source requirements in NCC Section 18.104.250(B) and NCC Section 18.104.250(C).

350.     Plaintiffs therefore are entitled to a declaratory judgment that the ordinances discriminate against out-of-County products and persons are unconstitutional under the Commerce Clause.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                              CASE NO: 3:24-CV-6256

351.     Plaintiffs will suffer irreparable harm if Napa County is allowed to enforce the unconstitutional ordinances.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)     Enter a judgment declaring that, on its face and as applied, the Napa County ordinances and policies violate the United States Constitution;

(b)     Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)     Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief as this Court deems just and proper.

### NINTH CLAIM FOR RELIEF
### *NOLLAN* AND *DOLAN* TAKING
### (42 U.S.C. § 1983)

352.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

353.     The Fifth Amendment's Takings Clause provides: "nor shall private property be taken for public use, without just compensation."

354.     The Takings Clause applies to state and local governments.  *See, e.g., Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 189 (2019).

355.     When the government physically appropriates property or interferes with an owner's right to exclude others from it without paying just compensation, a *per se* taking has occurred.

356.     With regard to government permits, the United States Supreme Court has established a two-part test modeled on the Unconstitutional Conditions Doctrine:  First, the permit condition must have an "essential nexus" to the government's land-use interest.  *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987).  Second, permit conditions must have rough proportionality to the development's impact on the land-use interest.  *Dolan v. City of*

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1   *Tigard*, 512 U.S. 374, 391 (1994).

2   357.   This test applies regardless of whether the condition requires the landowner to

3   relinquish property or requires the landowner to pay a monetary exaction.  *Koontz v. St. Johns*

4   *River Water Mgmt. Dist.*, 570 U.S. 595, 612-615 (2013).

5   358.   Napa County applies both a formal and informal policy to take property from

6   winery use permit applicants in violation of their constitutional rights.

7   359.   Napa County requires wineries to submit to at least three unlawful conditions

8   before it will consider issuing or amending winery permits.

9   360.   First, NCC Section 18.104.250 requires all wineries formed after 1990 or any

10   winery that wishes to "expand beyond their winery development area" to source at least 75% of

11   their grapes from within Napa County.  As explained in Counts VII and VIII, this requirement

12   violates the Dormant Commerce Clause.

13   361.   Second, NCC Section 1.30 requires all wineries submitting new applications to

14   indemnify Napa County from legal challenges to a potential permit issuance:

15   (a)   Applicants "shall submit to the county a fully executed indemnification

16   agreement agreeing to defend, indemnify, release and hold harmless the county from any claim,

17   action, or proceeding brought against the county to attack, set aside, void or annul the approval

18   based on the county's failure to comply with the requirements of any federal, state, or local law,

19   including but not limited to general plan and zoning requirements, or both. The indemnification

20   shall include damages awarded against the county, if any, costs of suit, attorneys' fees and other

21   expenses incurred in connection with such action."  NCC Section 1.30.030(A).

22   (b)   Even if an applicant winery chooses not to sign the indemnification

23   agreement, the ordinance forces the applicant to indemnify the County anyway.  *See* NCC Section

24   1.30.040.

25   362.   Third, Napa County forces applicants to pay exorbitant costs to improve roadways

26   in a disproportionate manner to the applicant's proposed use.

27   363.   These exactions also include the imposition of impermissible impact fees.  *See*

28   *Sheetz v. County of El Dorado, California*, 601 U.S. 267 (2024).

- 49 -

364.    These requirements are applied to all wineries for any modification, inclusive of sale of wine-related products in addition to wine, regardless of its relationship to the above requirements.

365.    For example, Plaintiff Summit Lake applied for a winery use permit from Napa County.  As a condition to approval of that use permit application, Napa County demanded that Plaintiff Summit Lake pay for the improvement of a one mile stretch of road at a cost of approximately $1 million.

366.    Hoopes was advised that to sell wine glasses, sell t-shirts, sell non-wine agricultural products from its farm, or to charge any type of fee to enter the property, even though Hoopes is already entitled with unlimited retail wine sales, it would have to install a new septic system. This is despite approval of the septic system for continued use as production and retail winery facility.

367.    Smith-Madrone wishes to expand its operations but the exaction requirements of Napa County, such as road improvements and grape requirements, make these operations expansions not viable.

368.    Upon information and belief, Napa County has placed similar extraction demands on other Napa County wineries.

369.    Upon information and belief, Napa County's extractions are so prolific as to be an official policy of Napa County.

370.    Napa County's exaction practices have caused Plaintiff Wineries to refrain from seeking use permits or amendments from Napa County.

371.    Napa County's required exactions are not proportional to the alleged impact of the expanded permissions for each winery.

372.    Similar requirements were struck down as an unconstitutional exaction in *Alliance for Responsible Planning v. Taylor*, 63 Cal. App. 5th 1072, 1085 (2021).

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that Napa County's extractions are a taking in violation the United States Constitution;

- 50 -

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1          (b)     Enjoin Napa County, its employees, officers, and agents, from enforcing

2   the exaction policy on any Wineries in Napa County;

3          (c)     Award Plaintiffs actual, compensatory, punitive, nominal, and special

4   damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

5          (d)     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred

6   in bringing this action pursuant to 42 U.S.C. § 1988; and

7          (e)     Grant such other and further relief as this Court deems just and proper.

**TENTH CLAIM FOR RELIEF**
**REGULATORY TAKING**
**(Fifth and Fourteenth Amendments)**
**(42 U.S.C. § 1983)**

11      373.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated

12  herein.

13      374.    As discussed above, Napa County has enacted a series of ordinances which

14  deprive Plaintiffs of the full use of their property.

15      375.    These ordinances are "not reasonably necessary to the effectuation of a substantial

16  public purpose." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 127 (1978).

17      376.    As discussed above, the stated purposes for the ordinances are themselves

18  violations of Plaintiffs' First Amendment rights and the Commerce Clause.

19      377.    The Plaintiffs have a property right in the uses entitled by right, established over

20  the years at their wineries, as well as uses allowed by California law.

21      378.    As discussed above, sometime between 2012 and 2015, Napa County revised its

22  Winery Database to take property rights from the Plaintiff Wineries without just compensation.

23      379.    Further, each Plaintiff possess a Winegrowers licensed issued by the State of

24  California which is a valuable property right.  *See Dash, Inc. v. Alcoholic Beverage Control*

25  *Appeals Bd.*, 683 F.2d 1229, 1233 (9th Cir. 1981) ("Under California law, a liquor license issued

26  pursuant to the Alcoholic Beverage Control act is a valuable property right.").

27      380.    As discussed above, Napa County, through its ordinances and policies, interferes

28  with this property right by limiting how Plaintiffs may utilize their property.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

381.    Plaintiffs will suffer irreparable harm if Napa County is allowed to enforce the unconstitutional ordinances and policies.

382.    Plaintiffs have suffered damages from Napa County's unlawful deprivation of the full use of Plaintiffs' property rights.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that, on its face and as applied, the ordinances and policies violate the United States Constitution;

(b)    Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

(c)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief as this Court deems just and proper.

**ELEVENTH CLAIM FOR RELIEF**
**EQUAL PROTECTION**
**(42 U.S.C. § 1983)**

383.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

384.    The U.S. Constitution, Article XIV, clause 2, states that no "state shall ... deny any person within its jurisdiction the equal protection of the laws." Due to the Supremacy Clause, noncompliance with the Government Tort Claims Act is not a procedural bar. *See Williams v. Horvath* (1976) 16 Cal. 3d 834, 842.

385.    Government Code section 65852, states that all zoning regulations "shall be uniform for each class or kind of...use of land throughout each zone...."

386.    Because all wineries in Napa County are consolidated into a single use, all wineries within the same zoning district must be subject to the same zoning regulations and allowed all uses and accessory uses derivative of the primary use as a winery. *See, e.g., Neighbors*

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

*in Support of Appropriate Land Use v. County of Tuolume*, 157 Cal. App. 4th 997, 1009-10 (2007).

387. Napa County violates the equal protection provisions of the federal constitution when it proscribes different "uses" and "accessory uses" to land zoned as a "winery" within the same zone.

388. Uniformity in zoning requires all uses and accessory uses that remain lawful uses at wineries be allowed at all wineries, including any winery prior to enactment of the Winery Definition Ordinance.

389. Napa County Code Section 18.08.600(C), on its face and as applied, violates the Equal Protection clause of the U.S. Constitution. US Const. Amend. XIV.

390. Napa County Code Section 18.08.600(C), on its face and as applied, creates at least two classes of licensed wineries: small wineries and other wineries, although the class of "winery" is one-class post-Winery Definition Ordinance.

391. Napa County Code Section 18.08.600(C), on its face and as applied, disadvantages small wineries, declared important businesses in the County, by prohibiting them from engaging in tours, offering wine tastings, selling wine-related items, and hosting of public events, which are designated by statute as critical economic functions of all wineries.

392. Napa County Code Section 18.20.020(H), on its face and as applied, violates the Equal Protection clause of the U.S. Constitution. U.S. Const. Amend. XIV.

393. Napa County Code Section 18.20.020(H), on its face and as applied, creates at least two classes of licensed small wineries: small wineries with use permits and wineries with small winery use permit exemptions although the class of "winery" is one-class post-rezoning by way of Winery Definition Ordinance.

394. Napa County Code Section 18.20.020(H), on its face and as applied, disadvantages wineries with small winery use permit exemptions.

395. Napa County arbitrarily recognizes tasting and marketing rights at some pre-Winery Definition Ordinance wineries, but not others.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

396.     Napa County Code Section 18.20.030(G), on its face and as applied, violates the Equal Protection clause of the U.S. Constitutions. U.S. Const. Amend. XIV.

397.     Napa County Code Section 18.20.030(G) allows wineries with a use permit to engage in "marketing of wine" as the term is defined in Napa County Code Section 18.08.3704, but does not state whether wineries with exemptions may market wine (or how).

398.     Napa County Code Section 18.20.030(G), on its face and as applied, creates at least two classes of licensed small wineries: wineries with use permits and wineries with small winery use permit exemptions that conflicts with the unitary class of winery enacted pursuant to the Winery Definition Ordinance.

399.     Napa County Code Section 18.20.030(G), on its face and as applied, disadvantages wineries with small winery use permit exemptions.

400.     By ordering some wineries, like Plaintiffs, not to "market" their licensed wine business, or conduct "tours and tastings" short of application for a "new" permit for the primary use as winery, Napa County singles out, penalizes and treats these wineries differently from other similarly situated wineries.

401.     Napa County has no rational basis for singling out some wineries for lawful uses of their properly licensed winery when it allows other similarly situated wineries to engage in these same uses.

402.     Napa County's actions are not reasonably necessary to achieve a legitimate government purpose.

403.     Plaintiffs have suffered damages from Napa County's unequal treatment of wineries within Napa County.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)     Enter a judgment declaring that, on its face and as applied, the Napa County ordinances and policies violate the United States Constitution;

(b)     Enjoin Napa County, its employees, officers, and agents, from enforcing the ordinances and policies permanently and preliminarily while this litigation is pending;

COMPLAINT                                                    CASE NO: 3:24-CV-6256

(c)     Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(d)     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief as this Court deems just and proper.

## TWELFTH CLAIM FOR RELIEF
## STATE LAW PREEMPTION

404.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

405.    In California, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, § 7.

406.    When a county ordinance conflicts with a general state law, the county ordinance is void. *See, e.g., O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007).

407.    California law gives licensed winegrowers the privilege to "[s]ell wine and brandy to consumers for consumption off the premises where sold." BPC § 23358(a)(2).

408.    California law gives licensed winegrowers the privilege to "[s]ell wine to consumers for consumption on the premises." BPC § 23358(a)(3).

409.    BPC Section 23358(a)(3) does not restrict how such wine is served, e.g., by the sample, by a flight, by the glass or by the bottle. Indeed, the legislative history of the bill expressly confirms sale by the bottle, glass, or sample is expressly allowed.

410.    BPC Section 23358(a)(4) allows a winery to operate a bona fide eating place on the licensed premises and "[s]ell all beers, wines, and brandies, regardless of source, to consumers for consumption on the premises."

411.    BPC Section 23358(b) states that a "winegrower may also have upon the premises all beers, wines, and brandies, regardless of source, for sale or service only to guests during private events or private functions not open to the general public."

412.    BPC Section 23358(c) states that at least fifty percent of the wine a winegrower sells on its licensed premises must be produced by the winegrowers from the conversion of grapes, berries, or other fruit into wine.

413.    BPC Section 23358(c) does not dictate the source of the grapes, berries, or fruit a winegrower converts into wine.

414.    BPC Section 23358(c) does not dictate the location of production of the wine as long as produced by the winegrower.

415.    BPC Section 23358(e) provides that counties exercising land use regulatory authority can restrict, but not eliminate, the privileges afforded by section 23358.

416.    BPC Section 23358(e) is the only section of the BCP related to wineries where the California Legislature provided a local government with this limited authority.

417.    BPC Section 23356.1 authorizes a winegrower to "conduct winetastings of wine produced or bottled by, or produced and packaged for, the licensee, either on or off the winegrower's premises."

418.    That section also states that the "department may adopt the rules as it determines to be necessary for the administration of this section." *Id*. at 23356.1(d).

419.    The State of California has issued the following rules related to wine tastings:

420.    California law defines a "winetasting" as a "presentation of samples of one or more wines, representing one or more wineries or industry labels, to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine or wines tasted." Cal. Code Regs., Title 4, § 53.

421.    California law allows a winegrower to "supply small amounts of bread, crackers, cheeses or nuts to clear the taste buds of the participants between successive samples of wine during a winetasting."  Cal. Code Regs., Title 4, § 53.

422.    "Winetastings may be conducted without charge or for a fee for the public on a premises licensed with a winegrower's license."  Cal. Code Regs., Title 4, § 53(a)(1).

423.    "Winegrowers…may conduct winetastings which are sponsored by a bona fide charitable, fraternal, political, religious, trade, service, or similar private organization" subject to

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1   limited conditions.  Cal. Code Regs., Title 4, § 53(b).

2   424.   While Section 53 contains some restrictions, the rule is clear that "[n]othing in this

3   rule shall prevent the holder of any license which permits the sale and consumption of wine on

4   the premises from holding a winetasting of wines legally acquired, provided the on-sale licensee

5   shall charge for the wines presented in accordance with law."

6   425.   BPC Section 23386(a) states that a winegrower's license "authorizes the giving

7   away of samples of the alcoholic beverages that are authorized to be sold by the license under the

8   rules that may be prescribed by the department."

9   426.   BPC Section 23386(a) does not provide Napa County with authority to establish

10  rules related to a winegrower giving away samples.

11  427.   California rules allow winegrowers to "sponsor contests, races, tournaments, and

12  other similar activities on or off licensed premises."  Cal. Code Regs., Title 4, § 106(i)(2).

13  428.   Tours and wine tastings are a means for wineries to sell wine to consumers for

14  consumption on and off premises.

15  429.   Napa County Code Section 18.08.600 conflicts with California law because Napa

16  County Code Section 18.08.600 does not allow for licensed winegrowers to sell wine for on- and

17  off-premises consumption while BPC § 23358(a) specifically allows for licensed winegrowers to

18  sell wine for on- and off-premises consumption.

19  430.   Napa County Code Section 18.08.600 cannot be reconciled with BPC § 23358(a).

20  431.   Napa County Code Section 18.08.600 is preempted by BPC § 23358(a).

21  432.   BPC §§ 23358(a)(4) and 23038 allow California wineries to operate a bona fide

22  eating place to serve food, wine, and beer to guests for compensation.

23  433.   These sections do not require guests to have made an appointment.

24  434.   Napa County Code Section 18.08.620 is preempted by BPC § 23358(a) and 23038

25  in that it requires that any food provided by provided without charge and prohibits food service

26  which "involve menu options and meal service such that the winery functions as a café or

27  restaurant."

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COMPLAINT                                          CASE NO: 3:24-CV-6256

435.     Other ordinance and formal and informal policies of Napa County, such as NCC Sections 18.08.370, 18.16.030, 18.20.020 and 18.20.030, also are preempted by California law such as restrictions on marketing, advertising, events, contests races, and other similar activities as well as restrictions on where wine must be manufactured.

436.     California courts have recognized that "impos[ition] of unique requirements on individual establishments licensed to sell alcoholic beverages would contravene the goal of uniform administration and enforcement of the state's liquor laws." *See Tryon v. DBS Enterprises, Inc.*, No. D045656, 2006 WL 234728, * 8 (Cal. Ct. App. Feb. 1, 2006) (unpublished).

437.     Napa County utilizes a policy which places unique requirements and restrictions on wineries in Napa County with regard to the sale of alcoholic beverages.

438.     Such a policy conflicts with and contravenes the goal of uniform administration and enforcement of the state's liquor laws.

439.     The California Legislature declared a statewide interest in uniform building codes and enacted legislation expressing an intent to generally preempt the field of building standards. *California Apartment Assoc. v. City of Fremont*, 97 Cal. App. 4th 693, 697 (2002).

440.     The California Building Code expressly states that it applies to all businesses in the state and that a local government may only modify its standards by making an express finding that the modification is necessary due to "climatic, topographical or geological conditions" with those findings being filed with the California Building Standard Commission.  *See* Cal. Build. Code § 1.1.8 et seq.

441.     The California Business Code was explicitly adopted by Napa County and incorporated into its ordinances.  See Napa County Code Section 15.12.010.

442.     The only modifications referenced in the Napa County Code to the California Building Code related to wineries applies to construction and occupancy of wine caves which is not relevant to this case.

443.     Generally, per the California Building Code, the occupancy load for a winery tasting room is one person per fifteen square feet.  *See* Cal. Build. Code § 1004.1.

444.    Thus, Napa County's unilateral restriction of Winery occupancy (visitors) is preempted by California law.

445.    Plaintiffs have suffered damages from Napa County's violations of California law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    Enter a judgment declaring that Napa County Code Sections 18.08.370, 18.08.600, 18.08.620, 18.16.030, 18.20.020 and 18.20.030 are preempted by California law;

(b)    Enjoin Napa County's enforcement of Napa County Code Sections 18.08.370, 18.08.600, 18.08.620, 18.16.030, 18.20.020 and 18.20.030;

(c)    Enter a judgment declaring that Napa County's restriction on the number of visitors at each winery is preempted by the California Building Code;

(d)    Enjoin Napa County from enforcing a limit on winery visitation/occupancy which is different than the occupancy calculations set forth in the California Building Code;

(e)    Award Plaintiffs actual, compensatory, punitive, nominal, and special damages in an amount to be proven at trial, plus prejudgment interest on those amounts;

(f)    Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

(g)    Grant such other and further relief as this Court deems just and proper.

**THIRTEENTH CLAIM FOR RELIEF**
**INJUNCTIVE RELIEF**

446.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

447.    Plaintiffs are likely to succeed on the merits of their lawsuit.

448.    Plaintiffs will be irreparably harmed if an injunction does not issue preventing Napa County from continuing to enforce the ordinances.

449.    Napa County will not be harmed if it is prohibited from enforcing its illegal ordinances, policies, and restrictions on Plaintiffs.

450.    Issuance of a preliminary injunction preventing Napa County from continuing to enforce its illegal ordinances will serve the public interest.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

451.   Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)   Enjoin Napa County, its employees, officers, and agents, from enforcing the Napa County Code Sections 18.08.370, 18.08.600, 18.08.620, 18.16.030, 18.20.020 and 18.20.030 as well as its formal policies, informal policies and other illegal restrictions placed on Plaintiffs as described above permanently and preliminarily while this litigation is pending;

(b)   Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

(c)   Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 5, 2024

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.

By: */s/ Q. Scott Kaye*
Q. Scott Kaye,
Attorneys for Plaintiffs

Dated: September 5, 2024

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante,
Attorneys for Plaintiffs

Dated: September 5, 2024

FENNEMORE WENDEL

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs