SHERYL L. BRATTON, County Counsel (SBN 144209)
SHERRI S. KAISER, Chief Deputy (SBN 197986)
sherri.kaiser@countyofnapa.org
JASON M. DOOLEY, Deputy (SBN 258570)
jason.dooley@countyofnapa.org
NAPA COUNTY COUNSEL'S OFFICE
1195 Third Street, Suite 301
Napa, California 94559
Telephone: (707) 253-4521
Facsimile: (707) 259-8220

ARTHUR A. HARTINGER (SBN 121521)
ahartinger@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

Attorneys for Defendant
COUNTY OF NAPA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NAPA,<br><br>Defendant. | Case No. 3:24-cv-06256-CRB<br><br>**NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR ABSTENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:          Hon. Charles R. Breyer<br>Hearing Date:   February 14, 2025<br>Hearing Time:   10:00 a.m.<br>Location:       Courtroom F, 15th Floor<br>                455 Golden Gate Avenue<br>                San Francisco, CA 94102<br><br>Action Filed:  September 5, 2024 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
    ABSTENTION ................................................................................................... xi

ISSUES TO BE DECIDED ........................................................................................... xii

SUMMARY OF THE ARGUMENT ............................................................................. xiii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

    A.    NAPA COUNTY'S AGRICULTURAL DISTRICTS AND LAND USE
          REGULATIONS RELATED TO WINERIES ................................. 2

    B.    NAPA COUNTY'S ENFORCEMENT ACTION AGAINST HOOPES WINERY........... 3

    C.    ALLEGATIONS IN THE COMPLAINT .................................... 4

III.   LEGAL STANDARD........................................................................................ 5

IV.   ARGUMENT .................................................................................................... 5

    A.    PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE NOT JUSTICIABLE ................. 5

    B.    MOST OF PLAINTIFFS' CLAIMS ARE TIME-BARRED ............................. 7

    C.    PLAINTIFFS' TAKINGS CLAIMS FAIL AS A MATTER OF LAW.......................... 8

        1.    PLAINTIFFS FAIL TO STATE A VIABLE *NOLLAN/DOLAN* TAKINGS
            CLAIM........................................................................... 8

        2.    PLAINTIFFS FAIL TO STATE A VIABLE REGULATORY TAKINGS
            CLAIM........................................................................... 9

    D.    PLAINTIFFS' DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.................. 12

        1.    PROCEDURAL DUE PROCESS ......................................... 12

            A.    PLAINTIFFS HAVE NO PROTECTED RIGHT TO EXISTING
                OR ANTICIPATED ZONING .................................. 12

            B.    THE COUNTY CODE PROVISIONS REGULATING WINERIES
                ARE NOT VAGUE ............................................... 12

        2.    SUBSTANTIVE DUE PROCESS........................................... 14

        3.    PLAINTIFFS' NON-DELEGATION DOCTRINE CLAIM FAILS AS A
            MATTER OF LAW ......................................................... 15

-i-

RENNE PUBLIC LAW GROUP
Attorneys at Law

E.     PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW ...................................................................................................15

F.     PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIMS FAIL AS A MATTER OF LAW...........................................................................16

     1.     THE COUNTY'S REGULATIONS DO NOT DIRECTLY DISCRIMINATE AGAINST COMMERCE ..........................................17

     2.     THE COUNTY'S REGULATIONS DO NOT UNCONSTITUTIONALLY BURDEN COMMERCE ..........................................17

G.     PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW .......18

     1.     THE LAND USE REGULATIONS AT ISSUE DO NOT DIRECTLY OR INEVITABLY SINGLE OUT EXPRESSIVE ACTIVITY ................................18

     2.     THE COUNTY'S ORDINANCES PASS MUSTER UNDER *CENTRAL HUDSON* ...................................................................................................19

     3.     PLAINTIFFS' FACIAL PRIOR RESTRAINT CLAIM FAILS AS A MATTER OF LAW...........................................................................21

          A.     THE COUNTY CODE PROVISIONS AT ISSUE ARE LAWS OF GENERAL APPLICATION NOT AIMED AT EXPRESSIVE CONDUCT ..........................................21

          B.     THE COUNTY'S PERMITTING SCHEME IS NOT AN UNLAWFUL PRIOR RESTRAINT ...........................................21

     4.     THE COUNTY CODE PROVISIONS AND NUISANCE ABATEMENT ACTION DO NOT INFRINGE PLAINTIFFS' RIGHT TO PETITION.............22

H.     PLAINTIFFS' STATE LAW PREEMPTION CLAIM FAILS AS A MATTER OF LAW ...................................................................................................23

I.     THIS COURT SHOULD ABSTAIN FROM ADJUDICATING PLAINTIFFS' SURVIVING CLAIMS ...................................................................................24

V.     CONCLUSION.......................................................................................................25

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,
509 F.3d 1020 (9th Cir. 2007) ..................................................................................7

*Ajetunmobi v. Calrion Mortg. Capital, Inc.*,
595 F. App'x 680 (9th Cir. 2014) ............................................................................7

*Akshar Glob. Invs. Corp. v. City of Los Angeles*,
817 F. App'x 301 ..................................................................................................15

*Alki Partners, LP v. DB Fund Services, LLC*,
4 Cal.App.5th 574 (2016) ......................................................................................23

*Arlington Heights v. Metropolitan Housing Dev. Corp.*,
429 U.S. 252 (1977) ..............................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................5, 14

*Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*,
17 Cal. 3d 785 (1976) ......................................................................................10, 12

*B&L Productions, Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024) ..........................................................................18, 19

*Ballinger v. City of Oakland*,
24 F.4th 1287 (9th Cir. 2022) ................................................................................9

*Barancik v. Cnty. of Marin*,
872 F.2d 834 (9th Cir. 1988) ................................................................................14

*Big Creek Lumber Co. v. County of Santa Cruz*,
38 Cal. 4th 1139 (2006) ........................................................................................23

*Bridge Aina Le'a, LLC v. Land Use Comm'n*,
950 F.3d 610 (9th Cir. 2020) ................................................................................11

*Cal. Assoc. for Preservation of Gamefowl v. Stanislaus Cnty.*,
2023 WL 1869010 (E.D. Cal. Feb. 9, 2023) ..........................................................7

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*California Bldg. Indus. Assn. v. City of San Jose*,
   61 Cal. 4th 435 (2015) ..............................................................................................1, 8

*Central Hudson v. Public Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) .......................................................................................19, 20, 21

*Chinatown Neighborhood Ass'n v. Harris*,
   794 F.3d 1136 (9th Cir. 2015) ........................................................................................17

*Ching v. Mayorkas*,
   725 F.3d 1149 (9th Cir. 2013) ........................................................................................12

*Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*,
   896 F.2d 1221 (9th Cir. 1990) .................................................................................16, 18

*City of Los Altos v. Barnes*,
   3 Cal.App.4th 1193 (1992) ............................................................................................13

*Colony Cove Props., LLC v. City of Carson*,
   888 F.3d 445 (9th Cir. 2018) .........................................................................................11

*People ex rel. Deukmejian v. County of Mendocino*,
   36 Cal. 3d 476 (1984) ....................................................................................................24

*Diamond S.J. Enterprise v. City of San Jose*,
   100 F.4th 1059 (9th Cir. 2024) ..................................................................................5, 22

*Dolan v. City of Tigard*,
   512 U.S. 374 (1994) .........................................................................................................8

*Garcia v. County of Napa*,
   No. 21-cv-03519-HSG, 2022 WL 110650 (N.D. Cal. Jan 12, 2022) ..............................9

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) .........................................................................................5

*Gospel Missions of America*,
   419 F.3d 1042 (9th Cir. 2005) .......................................................................................13

*Granholm v. Heald*,
   544 U.S. 460 (2005) .......................................................................................................17

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989) .......................................................................................................17

*Heller v. Doe by Doe*,
   509 U.S. 312 (1993) .......................................................................................................15

-iv-

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Herrera v. City of Palmdale*,
918 F.3d 1037 (9th Cir. 2019) ...................................................................................25

*Hicks v. Miranda*,
422 U.S. 332 (1975)...................................................................................................25

*Hoehne v. County of San Benito*,
870 F.2d 529 (9th Cir. 1989) .......................................................................................6

*HomeAway.com v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ...............................................................................19, 20

*Horn v. County of Ventura*,
24 Cal.3d 605 (1979) .................................................................................................15

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) .....................................................................................18

*Knick v. Township of Scott*,
588 U.S. 180 (2019)......................................................................................................6

*Knox v. Davis*,
260 F.3d 1009 (9th Cir. 2001) .....................................................................................8

*Konarski v. City of Tucson*,
716 F. App'x 609 (9th Cir. 2017) ..............................................................................16

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013)......................................................................................................8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......................................................................................5

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993) .......................................................................................7

*Lopez v. Candaele*,
630 F.3d 757 (9th Cir. 2010) .......................................................................................6

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)...................................................................................................24

*Mobilize the Message, LLC v. Bonta*,
50 F.4th 928 (9th Cir. 2022) ......................................................................................21

*Montana Environmental Information Center v. Stone-Manning*,
766 F.3d 1184 (9th Cir. 2014) .....................................................................................5

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

*Napa County v. Hoopes Family Winery Partners, L.P., et al.,*
  Case No. 22CV001262 (Napa County Sup. Ct.) ................................................................3

*Nelson v. City of Selma,*
  881 F.2d 836 (9th Cir. 1989) .........................................................................................14

*Nollan v. Cal. Coastal Comm'n,*
  483 U.S. 825 (1987) .........................................................................................................8

*Pearl v. City & Cnty. of San Francisco,*
  774 F.2d 1460 (9th Cir. 1985) .......................................................................................25

*Penn Central Transportation Co. v. City of New York,*
  438 U.S. 104 (1978) ................................................................................................passim

*Phillip Morris USA, Inc. v. City and County of San Francisco,*
  345 F. App'x 276 (9th Cir. 2009) ...................................................................................19

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970) ........................................................................................................17

*R.R. Comm'n of Tex. v. Pullman Co.,*
  312 U.S. 496 (1941) ........................................................................................................25

*Ralston v. Cnty. of San Mateo,*
  No. 21-CV-01880-EMC, 2021 WL 3810269 (N.D. Cal. Aug. 26, 2021) ..........................6

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,*
  754 F.3d 754 (9th Cir. 2014) ....................................................................................24, 25

*Retail Digital Network, LLC v. Prieto,*
  861 F.3d 839 (9th Cir. 2017) ....................................................................................20, 21

*Rosenblatt v. City of Santa Monica,*
  940 F.3d 439 (9th Cir. 2019) ....................................................................................16, 18

*Ruckelshaus v. Monsanto Co.,*
  467 U.S. 986 (1984) ........................................................................................................12

*Sacramentans for Fair Plan. v. City of Sacramento,*
  37 Cal. App. 5th 698 (2019) ...........................................................................................15

*Schneider v. California Dep't of Corr.,*
  151 F.3d 1194 (9th Cir. 1998) ..........................................................................................9

*Schulz v. Milne,*
  849 F. Supp. 708 (N.D. Cal. 1994) .................................................................................15

RENNE PUBLIC LAW GROUP
Attorneys at Law

-vi-

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO        Case No. 3:24-cv-06256-CRB
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Sessions v. Dimaya*,
  584 U.S. 148 (2018).................................................................................................12

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
  882 F.2d 1398 (9th Cir. 1989),................................................................................14

*Sinclair Oil Corp. v. Cnty. of Santa Barbara*,
  96 F.3d 401 (9th Cir. 1996) .....................................................................................25

*Spirit of Aloha v. Cnty. of Maui*,
  49 F.4th 1180 (9th Cir. 2022) ..................................................................................21

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...................................................................................15

*Talk of the Town v. Department of Finance and Business Services ex rel. City of Las
  Vegas*,
  343 F.3d 1063 (9th Cir. 2003) ...........................................................................19, 21

*Temple of 1001 Buddhas v. City of Freemont*,
  588 F. Supp. 3d 1010 (N.D. Cal. 2022) ............................................................*passim*

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ...................................................................................5

*Tobe v. City of Santa Ana*,
  9 Cal. 4th 1069 (1995) .............................................................................................14

*Travis v. Cnty. of Santa Cruz*,
  33 Cal. 4th 757 (2004) ...............................................................................................8

*Tyson v. City of Sunnyvale*,
  920 F. Supp. 1054 (N.D. Cal. 1996) .........................................................................12

*Vanguard Outdoor, LLC v. City of Los Angeles*,
  648 F.3d 737 (9th Cir. 2011) ...................................................................................20

*Village of Hoffman Estates v. Flipside*,
  455 U.S. 489 (1982)..................................................................................................20

*Warth v. Seldin*,
  422 U.S. 490 (1975)....................................................................................................7

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*,
  473 U.S. 172 (1985)....................................................................................................6

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Young v. Cnty. of San Mateo,*
    No. C 03-05801 CRB, 2005 WL 3454106 (N.D. Cal. Dec. 16, 2005) ................................................13

*Younger v. Harris,*
    401 U.S. 37 (1971)................................................................................................................24, 25

**Statutes**

Alcoholic Beverage Control Act................................................................................................10, 23

California Business and Professions Code
    § 23358(e) ..............................................................................................................................10, 24
    § 23790....................................................................................................................................10, 24

California Code of Civil Procedure
    § 1094.5..........................................................................................................................................22

California Code of Regulations
    tit. 24, § 1.1.2 ................................................................................................................................24
    tit. 24, § 1.18 ................................................................................................................................24
    tit. 24, § 1004.1 ............................................................................................................................24

California Government Code
    § 65852..........................................................................................................................................15
    § 65905............................................................................................................................................3

California Public Resources Code
    § 21000............................................................................................................................................3

Napa County Code
    § 1.30.030(A) ......................................................................................................................9, 22, 23
    § 2.88.010......................................................................................................................................22
    § 18.08.020..........................................................................................................................2, 12, 20
    § 18.08.040(E) ................................................................................................................................2
    § 18.08.170......................................................................................................................................2
    § 18.08.370....................................................................................................................................21
    § 18.08.600..................................................................................................................................8, 23
    § 18.08.620......................................................................................................................................2
    § 18.08.640..................................................................................................................................2, 14

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

Napa County Code (continued)

§ 18.12.080(C)....................................................................................................2
§ 18.16.010..............................................................................................*passim*
§ 18.16.020....................................................................................................3
§ 18.16.020(A)..................................................................................................2
§ 18.16.020(G)..................................................................................................3
§ 18.16.020(H)..............................................................................................3, 13
§ 18.16.020(I)....................................................................................................3
§ 18.16.030.................................................................................................2, 3
§ 18.16.030(F)....................................................................................................2
§ 18.16.030(G)....................................................................................................2
§ 18.16.030(G)(5)(b)..........................................................................................20
§ 18.16.030(H)....................................................................................................2
§ 18.16.030(H)(1)........................................................................................20, 24
§ 18.16.030(H)(4)........................................................................................20, 24
§ 18.20 et seq. ....................................................................................................2
§ 18.20.010................................................................................................2, 14
§ 18.20.020........................................................................................2, 3, 11, 14
§ 18.20.020(A)....................................................................................................2
§ 18.20.020(H)....................................................................................................3
§ 18.20.020(I)..................................................................................................13
§ 18.20.020(J)....................................................................................................3
§ 18.20.030........................................................................................2, 3, 11, 14
§ 18.20.030(H)....................................................................................................2
§ 18.20.030(J)....................................................................................................2
§ 18.104.250....................................................................................................9
§ 18.104.250(B)..............................................................................................17
§ 18.104.250(C)................................................................................................7
§ 18.124............................................................................................................7
§ 18.124.040....................................................................................................3
§ 18.124.060....................................................................................................3
§ 18.124.060(A)........................................................................................22, 24
§ 18.124.060(C)..............................................................................................22
§ 18.124.070..............................................................................................3, 22
§ 18.124.120(C)..............................................................................................22
§ 18.124.120(E)..............................................................................................22

Napa County Ordinances

No. 629 (1980)....................................................................................................3
No. 947 (1990)........................................................................................2, 17, 18

United States Code

42 U.S.C. § 1983............................................................................................4, 7

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

1

**TABLE OF AUTHORITIES (CONTINUED)**

2
**Page(s)**

3
**Other Authorities**

4
U.S. Constitution

5
First Amendment ...........................................................................................................*passim*
Fifth Amendment ...........................................................................................................*passim*

6
Fourteenth Amendment .................................................................................................*passim*

7
Federal Rules of Civil Procedure

8
Rule 12(b)(1)............................................................................................................................5
Rule 12(b)(6)............................................................................................................................5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION
Case No. 3:24-cv-06256-CRB

**NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR ABSTENTION**

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 14, 2025, at 10:00 a.m., in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Napa County (the "County" or "Defendant") will and hereby does move to dismiss Plaintiffs' Complaint or, in the alternative, for abstention, in this action.

The motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7-1 on the grounds that Plaintiffs fail to satisfy Article III's case or controversy requirement, assert claims that are time-barred, and fail to state a cause of action.

In the alternative, abstention is warranted under *Younger v. Harris*, 401 U.S. 37 (1971), and *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), because of a pending state court action between the County and Plaintiff Hoopes Vineyard LLC.

This motion is based on this notice of motion and motion, on the accompanying memorandum of points and authorities in support of the motion, the request for judicial notice, Defendant's anticipated reply brief, and on any oral argument entertained by the Court in connection with this motion.  This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection.

Dated:  November 15, 2024                  RENNE PUBLIC LAW GROUP


By: /s/ *Ryan P. McGinley-Stempel*
    Ryan P. McGinley-Stempel

Attorneys for Defendant
NAPA COUNTY

RENNE PUBLIC LAW GROUP
Attorneys at Law

-xi-
NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION                    Case No. 3:24-cv-06256-CRB

**ISSUES TO BE DECIDED**

1.    Whether Plaintiffs' First through Eleventh Claims are justiciable.

2.    Whether Plaintiffs' Fifth through Twelfth Claims are time-barred.

3.    Whether Plaintiffs state a takings claim under the Fifth Amendment.

4.    Whether Plaintiffs state a due process claim under the Fourteenth Amendment.

5.    Whether Plaintiffs state an equal protection claim under the Fourteenth Amendment.

6.    Whether Plaintiffs state a Dormant Commerce Clause claim.

7.    Whether Plaintiffs state a First Amendment claim.

8.    Whether Plaintiffs state a state law preemption claim.

9.    Whether abstention is appropriate given Napa County's ongoing state court enforcement proceeding against Plaintiff Hoopes Vineyard LLC alleging nuisance and unlawful business practices.

NAPA COUNTY'S ISSUES TO BE DECIDED ON MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

**SUMMARY OF THE ARGUMENT**

2       *Justiciability.*  Plaintiffs' First through Eleventh Claims are not justiciable because Plaintiffs have

3   not alleged a definite and concrete injury.

4       Plaintiffs have not alleged a concrete injury to support their First through Fourth (First

5   Amendment) Claims because they have not alleged that they plan to apply for a permit in the future, *see*

6   *Diamond S.J. Enterprise v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024), and Summit Lake and

7   Smith-Madrone have not alleged facts showing a "concrete intent to violate the challenged laws" or "a

8   credible threat of enforcement."  *Lopez v. Candaele*, 630 F.3d 757, 787, 791–93 (9th Cir. 2010).

9       Plaintiffs' Fifth (Due Process), Sixth (Due Process Non-Delegation), Ninth (*Nollan/Dolan*

10  Takings), Tenth (Regulatory Takings), and Eleventh (Equal Protection) Claims, to the extent they assert

11  as-applied challenges, are not ripe and Plaintiffs do not have standing because they do not allege that

12  they have completed the application process and obtained a final decision from the County regarding

13  their properties.  *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985),

14  *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019); *Hoehne v. County of*

15  *San Benito*, 870 F.2d 529, 532 (9th Cir. 1989).

16      Plaintiffs do not have standing to bring their Seventh (Dormant Commerce Clause:

17  Discrimination Against Interstate Commerce) and Eighth (Dormant Commerce Clause: Excessive

18  Burden on Interstate Commerce) Claims because they are not subject to the grape-sourcing requirement

19  unless they seek a use permit for expanded production.  *See* Napa County Code ("NCC")

20  § 18.104.250(C); *see also* §§ 18.16.030, 18.20.030.  Although Plaintiffs allege that they "wish" to expand

21  their operations, "vague allegation[s] that [they] intend[] to apply for permits in the future [are] too

22  speculative to meet the standing requirements."  *Diamond S.J. Enterprise*, 100 F.4th at 1066.

23      Plaintiffs' Thirteenth (Injunctive Relief) Claim is not justiciable because "[d]eclaratory and

24  injunctive relief are remedies, not causes of action."  *Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F.

25  App'x 680, 684 (9th Cir. 2014).

26      *Timeliness.*  To the extent they assert facial challenges, Plaintiffs' Fifth (Due Process), Sixth

27  (Due Process Non-Delegation), Ninth (*Nollan/Dolan* Takings), Tenth (Regulatory Takings), and

28  Eleventh (Equal Protection) Claims are time-barred because they accrued on the enactment date of the

RENNE PUBLIC LAW GROUP
Attorneys at Law

challenged statutes, which were enacted many years before September 5, 2022.  *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) (two-year limitations period for actions under 42 U.S.C. § 1983 in California); *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (takings); *Action Apartment*, 509 F.3d at 1026–27 (due process); *Cal. Assoc. for Preservation of Gamefowl v. Stanislaus Cnty.*, 2023 WL 1869010, *9 & n.9 (E.D. Cal. Feb. 9, 2023) (equal protection).  Plaintiffs' as-applied claims, if they were ripe, would also be time-barred because they do not allege any County conduct altering Plaintiffs' property rights within the limitations period. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

Plaintiffs' Twelfth (State Law Preemption) Claim is also time-barred because the state laws at issue here were enacted before September 5, 2021.  *See Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004) (claims that local ordinances are preempted by later enacted state statutes are subject to a three-year limitations period).

*     *     *

In addition to the above procedural deficiencies, Plaintiffs' claims also fail on the merits.  The County addresses Plaintiffs' claims in a different order from the Complaint to better illustrate how their First Amendment Claims are premised on unprotected misleading and unlawful activity.

***Takings (Nollan/Dolan).***  Plaintiffs' Ninth Claim, which asserts a taking under *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), fails because the Complaint does not allege that the County unconstitutionally conditioned a use permit on the conveyance of a property right.  Under *Nollan/Dolan*, the government cannot condition the use of one's property on agreeing to an exaction or dedicating the private property for public use unless there is a "nexus" and "rough proportionality" between the property that the government demands and the social costs of the applicant's proposal.  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 605–06 (2013).  Where, as here, Plaintiffs have not identified a property interest that is being conveyed, there cannot be a taking.  *California Bldg. Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 460 (2015). Further, Plaintiffs' conclusory allegations of "impermissible impact fees," "exorbitant costs," and an "exaction policy" do not state any actual facts that could support a reasonable inference that the County is liable for a taking.  *See Temple of 1001 Buddhas v. City of Freemont*, 588 F. Supp. 3d 1010, 1024–25

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    (N.D. Cal. 2022) (conclusory allegations do not establish official policy under *Monell*); *Garcia v. County*

2    *of Napa*, No. 21-cv-03519-HSG, 2022 WL 110650, at *4 (N.D. Cal. Jan 12, 2022) (same).

3        ***Takings (Regulatory).***  Plaintiffs' Tenth Claim must be analyzed under *Penn Central*

4    *Transportation Co. v. City of New York*, 438 U.S. 104 (1978), because they do not allege a physical

5    invasion or complete deprivation of economic benefits.  However, Plaintiffs' claim fails before even

6    reaching *Penn Central*'s factors because Plaintiffs do not have a property right to any particular or

7    anticipated zoning.  *See Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 796 (1976).  But

8    even if Plaintiffs had a cognizable property interest, their claim fails under *Penn Central* because the

9    regulations that Plaintiffs are challenging have been in effect for decades, Plaintiffs do not allege any

10    County conduct that impacted the value of Plaintiffs' properties, or that Plaintiffs had *reasonable*

11    investment-backed expectations to uses beyond what the County Code and their permits or permit

12    exemptions dictate.  *See Penn Cent.*, 438 U.S. at 124; s*ee also Colony Cove Props., LLC v. City of*

13    *Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

14        ***Procedural and Substantive Due Process.***  The procedural due process component of Plaintiffs'

15    Fifth Claim fails for several reasons.  First, to the extent this claim rests on whether Plaintiffs were able

16    to obtain discretionary use permits, it fails as a matter of law because Plaintiffs do not have a vested right

17    to a particular zoning designation.  *See Avco.*, 17 Cal. 3d at 796; *Tyson v. City of Sunnyvale*, 920 F. Supp.

18    1054, 1061 (N.D. Cal. 1996).  Second, Plaintiffs' assertion that certain terms in the County Code

19    applicable to wineries are not defined or are vague is without merit.  The County Code offers extensive

20    operative and definitional guidance, and the terms and their application are clear "when the purpose

21    clause of the ordinance is considered and the terms are read in that context as they should be."  *Tobe v.*

22    *City of Santa Ana*, 9 Cal. 4th 1069, 1107 (1995); *Gospel Missions of America*, 419 F.3d 1042, 1047 (9th

23    Cir. 2005).

24        The substantive due process component of Plaintiffs' Fifth Claim fares no better because their

25    allegations do not demonstrate that the County's conduct is "clearly arbitrary and unreasonable."  *Sinaloa*

26    *Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989), *overruled on other*

27    *grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).  Furthermore, the County's land use

28    and zoning laws on their face are substantially related to the public health, safety, morals, and general

-xv-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    welfare.  *See* NCC §§ 18.16.010, 18.20.020.

2        ***Non-Delegation.***  Plaintiffs' Sixth Claim (Due Process – Non Delegation) fails because Plaintiffs

3    fail to identify the ordinance or policy under which the County allegedly delegates authority to third

4    parties over the issuance or conditions of use permits, the third parties involved, the applicants for the

5    permits, or the timing of final decisions.  Instead, Plaintiffs vaguely suggest public involvement in the

6    use permit process, which is required by state law and the due process rights of neighboring property

7    owners.  *See Horn v. County of Ventura*, 24 Cal.3d 605, 614–16 (1979); *Temple of 1001 Buddhas*, 588 F.

8    Supp. 3d at 1024–25 (conclusory allegations do not establish official policy under *Monell*).

9        ***Equal Protection.***  Plaintiffs' conclusory allegations in their Eleventh (Equal Protection) Claim

10    that the County has "no rational basis for distinguishing between large and small wineries" does not state

11    a plausible claim.  The County's zoning ordinances establish uniform class-based requirements for

12    wineries of varying scales, which is rationally related to the County's legitimate interest in protecting its

13    rural character and limiting the impact of non-agricultural activity in the Agricultural Districts.  *See*

14    *Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990),

15    *superseded on other grounds by* 42 U.S.C. § 2000e.  Preserving the welfare and character of its

16    neighborhoods has long since been established as a legitimate interest of local government.  *See id.*

17        ***Dormant Commerce Clause.***  Plaintiffs' Seventh and Eighth Claims, asserting Dormant

18    Commerce Clause challenges, fail.  The ordinance at issue, NCC § 18.104.250(B), requires that at least

19    75% of the grapes used by wineries in the Agricultural District be grown within the County.  Its structure

20    and purpose is rooted in preserving the agricultural character of the Agricultural District, where wineries

21    may process the produce they grow on their own agriculturally zoned land as a matter of right, but may

22    not operate primarily as processing facilities. Section 18.104.250 permits wineries to also process grapes

23    they did not grow on their own farmland, but it ensures that such wineries maintain the overall

24    agricultural character of agriculturally zoned districts by continuing to use a significant percentage of

25    grapes grown within them.  Without such a limitation, wineries' ancillary use of their agricultural

26    property to process grapes could overwhelm the primary agricultural use of growing crops.  This is a

27    legitimate land use concern, not economic protectionism, and does not directly regulate or discriminate

28    against interstate commerce.  Plaintiffs fail to sufficiently allege that Section 18.104.250 has any impact

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    on interstate commerce at all, or that it benefits in-state commercial interests at the expense of out-of-

2    state interests.  *See Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019).

3         ***First Amendment.***  Plaintiffs' First through Fourth Claims assert that the County's laws regarding

4    the nature and intensity of physical land uses at wineries violate the First Amendment on their face and

5    as applied to Plaintiffs.  These claims fail to state a claim because the land use regulations at issue do not

6    directly or inevitably single out expressive activity.  *See B&L Productions, Inc. v. Newsom*, 104 F.4th

7    108, 112, 114 n.11 (9th Cir. 2024).  Nothing in the County Code precludes small wineries from

8    marketing or advertising their products within the scope of their allowed physical uses (and thus in ways

9    that will avoid adverse impacts) or freely in print, social, or other media.

10        Plaintiffs' First through Fourth Claims fail to state a claim under *Central Hudson v. Public Serv.*

11   *Comm'n of N.Y.*, 447 U.S. 557 (1980), because the speech at issue is "misleading" and does not "concern

12   lawful activity."  *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017).  Plaintiffs

13   cannot contend that the County's restrictions impinge on protected commercial speech since their

14   purported speech seeks to promote unlawful activity (unpermitted tours and tastings that exceed their use

15   authorization) and misleadingly suggests it is lawful.  Furthermore, the County has a substantial interest

16   in protecting the agricultural character of its districts, and its use permit restrictions are appropriately

17   tailored to achieve that interest.  Plaintiffs also assert that the County's regulations of marketing events at

18   wineries are content- and viewpoint-based.  But that is unsupported by the language of the Code, and

19   even so, does not alter the *Central Hudson* analysis, *see Retail Digital Network, LLC*, 861 F.3d at 847–50

20   & n.9, or change the fact that the County's land use laws "regulate[] economic activity rather than

21   speech," *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quotation omitted).

22        Plaintiffs' Third Claim, which asserts a disfavored facial challenge to an alleged prior restraint,

23   cannot proceed against laws of general application not aimed at conduct commonly associated with

24   expression, such as NCC § 18.08.370.  Plaintiffs' facial prior restraint challenge also fails because the

25   County's use permit requirements do not confer unbridled discretion on County officials.  *See Diamond*,

26   100 F.4th at 1066.  The County's use permit system requires written findings and a public hearing before

27   issuance, and permit conditions are based on a variety of factors delineated in the Code.  Once issued,

28   standards for revoking or modifying permits are narrow, objective, and definite, and any revocation is

-xvii-

appealable and subject to judicial review.

Nor does the County Code provision requiring permit applicants to indemnify the County infringe on Plaintiffs' right to petition because that code section only applies when an action has been brought by a third party "against the county to attack, set aside, void or annul the approval" of an applicant's own permit. *See also* NCC § 1.30.010. And Plaintiffs' allegations that they have been retaliated against by the County for exercising their right to petition are entirely conclusory. *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024-1025 ("Without significantly more to connect West's enforcement action to Lee's protected activity, Lee does not plausibly allege" retaliation).

***State Law Preemption.*** Plaintiffs' Twelfth Claim alleges that NCC §§ 18.08.600 et seq. conflicts with the Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code §§ 23200 et seq.) and the California Building Code's uniform occupancy load requirements (Cal. Code Regs. tit. 24, § 1004.1). Plaintiffs' preemption claim fails because both the Alcoholic Beverage Control Act and the California Building Code contain provisions that explicitly permit more restrictive local regulation. *See* Cal. Bus. & Prof. Code §§ 23358(e), 23790; Cal. Code Regs. tit. 24, § 1.18. Furthermore, there is no conflict between NCC §§ 18.08.600 et seq. and the Building Code's occupancy load requirements because building occupancy limits set a maximum threshold to ensure safe egress from the structure in emergencies. *See* Cal. Code Regs. tit. 24, §§ 1.1.2, 1004.1. In contrast, the County's land use regulations restrict the volume of visitors to the property overall, addressing impacts from the intensity of the use of the land, as well as access in case of fire or catastrophe. See NCC §§ 18.16.010, 18.124.060(A).

***Abstention.*** Principles of abstention counsel in favor of declining jurisdiction over any surviving claims. On October 20, 2022, nearly two years before Plaintiffs filed their federal Complaint, the County initiated an enforcement action against Hoopes in Napa County Superior Court for unlawfully operating its winery in direct contravention of the Code and its small winery permit exemption. Although the Superior Court recently found in favor of the County on Phase I of that enforcement action, the case is ongoing and set to move to Phase II to adjudicate Hoopes' cross-claims.

Hoopes has brought this action as a collateral attack on the state proceeding. Plaintiffs Summit Lake and Smith-Madrone, who also operate wineries that do not have certain entitlements, join Hoopes in this challenge after being denied intervention in the Superior Court action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Under these circumstances, the longstanding public policy against federal court interference with state court proceedings favors abstention. *See Younger v. Harris*, 401 U.S. 37 (1971); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019) ("Civil actions brought by a government entity to enforce nuisance laws have been held to justify *Younger* abstention." (quotation omitted)).  The County has an important interest in eliminating public nuisances and enforcing local and state law, and the Superior Court provides an adequate opportunity to raise constitutional challenges, which Hoopes has availed itself of, raising many of the same constitutional claims it advances here.  If Plaintiffs succeed here, the practical effect would be to enjoin the state proceedings.  *See Herrera*, 918 F.3d at 1048.  Moreover, if Summit Lake's or Smith-Madrone's challenges are allowed to proceed, the potential for federal interference in the state court's proceedings is the same.  *See id.*; *Hicks v. Miranda*, 422 U.S. 332, 337–38 (1975) (overruled on other grounds).

In addition, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), provides further grounds to abstain because the ultimate resolution of Hoopes' preemption claim in the state enforcement action could narrow or completely avoid the Constitutional claims asserted in Plaintiffs' Complaint.

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S SUMMARY OF ARGUMENT ISO MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' claims are a misguided attempt to avoid compliance with longstanding and quintessentially local land use regulations that protect the agricultural character of Napa County and the health, safety, and welfare of its residents.  For years, Plaintiff Hoopes Vineyard LLC ("Hoopes") has operated its agricultural property in direct contravention of its small winery permit exemption ("SWE")—which allows it to process grapes and sell bottled wine without a use permit—by offering tours, tastings, food service, and wine-related merchandise sales without first obtaining a use permit. Despite knowing that its SWE did not authorize these expanded hospitality activities, Hoopes made no effort to secure the required permits, choosing instead to flout the law in pursuit of illegitimate gain.  In 2022, the County brought a nuisance abatement action against Hoopes and its affiliates.  On November 13, 2024, the Superior Court found, after an 11-day bench trial, that Hoopes unlawfully expanded its business beyond the uses entitled by its SWE, that the County's regulations and enforcement action did not violate Hoopes' constitutional rights, and that state law did not preempt the County's regulations.

Hoopes has filed this action as a collateral attack on the ongoing state court proceeding, challenging decades-old local land use ordinances with a grab-bag of constitutional claims (many of which she has asserted in the state court proceeding) premised on shaky legal and factual foundations. Plaintiffs Summit Lake Vineyards & Winery LLC ("Summit Lake") and Cook's Flat Associates dba Smith-Madrone ("Smith-Madrone"), who also operate wineries with limited entitlement to hospitality uses and unsuccessfully moved to intervene in the state court proceeding, join Hoopes in this challenge to the well-established principle that "so long as a land use restriction or regulation bears a reasonable relationship to the public welfare, the restriction or regulation is constitutionally permissible." *California Bldg. Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 455 (2015) (citing state and federal cases).

Plaintiffs' laundry list of claims not only suffers from a variety of procedural flaws—including non-justiciability and untimeliness—but also lacks legal merit, failing to state a cognizable legal theory or allege sufficient facts to support any plausible claim for relief.  And regardless, given that the relief they seek here would have the practical effect of enjoining the state court action, principles of abstention

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    counsel against permitting their claims to proceed.

2    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

3        **A.    Napa County's Agricultural Districts and Land Use Regulations Related to Wineries**

4        Plaintiffs' properties are located in either the County's Agricultural Preserve ("AP") or the

5    Agricultural Watershed ("AW") zoning districts (collectively, the "Agricultural Districts").  *See* Napa

6    County Code ("NCC" or the "Code") §§ 18.16 et seq. (AP District); *id*. §§ 18.20 et seq. (AW District).

7    These zoning districts were created to encourage agriculture as the highest and best land use in the fertile

8    areas of the Napa Valley and protect its watershed.  *See id*. §§ 18.16.010, 18.20.010.  Napa Valley has

9    become one of the world's premier wine-making regions since the creation of the Agricultural Districts.

10        The Code allows a limited number of enumerated uses of land in the Agricultural Districts.  *See*

11    NCC §§ 18.16.010–030, 18.20.010–030.  Some allowed uses do not require a use permit; others do.

12    Under the County's permissive zoning code, any use of the land that is not specifically allowed is

13    prohibited.  *See id*. § 18.12.080(C).  Prohibited uses, without a permit, include any "use that involves the

14    exchange of cash, goods or services, barter, forgiveness of indebtedness or any other remuneration in

15    exchange for goods, services, lodging, meals, entertainment in any form, or the right to occupy space

16    over a period of time."  *Id*. § 18.08.170.  However, the sale of agricultural products grown, raised, or

17    produced on-site is an agricultural use permitted in the Agricultural Districts without a permit.  *Id*.

18    §§ 18.16.020(A), 18.20.020(A), 18.08.040(E).

19        In 1990, the County overhauled its winery regulations by enacting the Winery Definition

20    Ordinance ("WDO").  Dkt. 1-11, Ord. No. 947 (1990).  The WDO prospectively redefined and clarified

21    the uses allowed in association with all wineries operating in the Agricultural Districts.  *See id*. §§ 9–14.

22    Wineries are an allowed use in the Agricultural Districts, "but only upon grant of a use permit."  NCC

23    §§ 18.16.030(F), 18.20.030(H).  A "winery" is defined as an "agricultural processing facility" used to

24    produce wine, and it may sell the wine it produces at the winery on-site without a use permit.  *Id*.

25    § 18.08.640.  The Code allows certain limited uses "in connection with" and "accessory" to permitted

26    wineries, including offering tours and tastings.  *Id*. §§ 18.16.030(G)–(H), 18.20.030(H)–(J); *see also id*.

27    § 18.08.620 ("Tours and tastings").  The only allowed accessory uses for a winery are those enumerated

28    in the zoning regulations, which all require a use permit.  *Id*. § 18.08.020.

1     When a use permit is sought, California law and local ordinances require a public hearing and

2     extensive administrative consideration of the impacts of the proposed use before the permit may be

3     issued, *see* Cal. Gov. Code § 65905; NCC §§ 18.124.040 & 060–070, which also includes the

4     environmental review required under the California Environmental Quality Act ("CEQA").  *See* Cal.

5     Pub. Res. Code §§ 21000 et seq.  The purpose of such review is to ensure that the property is an

6     appropriate place for a proposed use that could possibly have substantial impacts on the health, safety,

7     and welfare of the community.  NCC § 18.124.070(C).

8         However, the WDO allowed existing small wineries that operate under a historically issued Small

9     Winery Certificate of Exemption ("SWE") and certain other historically approved wineries to continue

10    operating without further approval, but only as to their previously authorized, legally established uses.

11    Dkt. 1-11, § 10, 13; NCC §§ 18.16.020(G)–(I), 18.20.020(H)–(J).  Under the Code, a "small winery" has

12    a maximum production capacity of 20,000 gallons per year and "does not conduct public tours, provide

13    wine tastings, sell wine-related items or hold social events of a public nature."  NCC § 18.08.600; *see*

14    *also* Dkt. 1-10, Ord. No. 629, §§ 1–2 (1980).  To continue their operations after the WDO, small wineries

15    must operate "in conformance with the applicable certificate of exemption" for that winery.  NCC

16    §§ 18.16.020(H), 18.20.020(H).  Public tours, wine tastings, sale of items that are not agricultural

17    products grown, raised, or produced on the premises, and public events are all prohibited accessory uses

18    for small wineries operating solely with a certificate of exemption, although they are allowable with a use

19    permit.  *See id*. §§ 18.16.020–030, 18.20.020–030.

20    **B.     Napa County's Enforcement Action Against Hoopes Winery**

21        Hoopes is located in the AP District and operates pursuant to a SWE obtained in 1984.  Compl.

22    ¶¶ 17–18; *see* Dkt. 1-1.  On October 20, 2022, Napa County filed a state enforcement action against

23    Hoopes and its related entities.  *Napa County v. Hoopes Family Winery Partners, L.P., et al.*, Case No.

24    22CV001262 (Napa County Sup. Ct.).  As reflected in the operative Second Amended Complaint filed

25    on December 22, 2023 ("SAC"), the County alleged two causes of action: (1) public nuisance per se and

26    (2) unfair business practices.  *See* Napa County's Request for Judicial Notice ("RJN"), Ex. A.  Instead of

27    a small wine production facility, as contemplated by its SWE, Hoopes had transformed its property into a

28    hospitality operation offering tours, tastings, food service, and wine-related merchandise sales without

RENNE PUBLIC LAW GROUP
Attorneys at Law

-3-

the necessary permits. *See* RJN, Ex. A. The SAC alleges that Hoopes's operations are unlawful and a nuisance because they exceed the uses granted by its SWE. *See* RJN, Ex. A. Hoopes cross-complained against the County, alleging various state and federal claims pursuant to 42 U.S.C. § 1983, including violations of the First and Fourteenth Amendments. RJN, Ex. B, Second Amended Cross-Complaint filed May 15, 2023 ("SACC"). In September 2023, both Summit Lake and Smith-Madrone filed motions to intervene, which the Court denied. RJN, Ex. C.

The Superior Court bifurcated the trial, such that the County's equitable issues would be tried in "Phase I," deferring adjudication of Hoopes' cross-claims to a "Phase II." The Superior Court held an 11-day bench trial on Phase I in January 2024, with additional briefing submitted through July 23, 2024. On November 13, 2024, the Superior Court rendered a 19-page statement of decision (the "Decision"). RJN, Ex. D. The Decision rules in the County's favor on both its public nuisance and unlawful business practice claims, rejecting Hoopes' defenses. The case is ongoing and is set to move into Phase II.

### C. Allegations in the Complaint

Like Hoopes, Summit Lake operates pursuant to a SWE obtained in 1984. Compl. ¶¶ 18, 37, *see* Dkt. 1-1 and Dkt. 1-5. Smith-Madrone operates pursuant to a winery use permit obtained in 1973. Compl. ¶ 63, *see* Dkt. 1-7. None of the Plaintiffs have completed the application and review process necessary to expand their uses beyond what is authorized by their permits or permit exemptions.

Plaintiffs allege thirteen claims against the County. Plaintiffs' First through Fourth Claims ("First Amendment Claims") assert facial and as-applied challenges alleging the County's land use regulations prohibit and restrict expressive and commercial speech, including their ability to host events, in violation of the First Amendment. Compl. ¶¶ 238, 241, 245–48, 253–69, 270–85. The Fifth and Sixth Claims ("Due Process Claims") assert facial and as-applied due process challenges alleging the County Code is vague, arbitrarily enforced, and that the process for modifying use permits is excessively expensive, time-consuming, and violates the non-delegation doctrine. *Id*. ¶¶ 291, 297, 303, 324–29. The Seventh and Eighth Claims ("Dormant Commerce Clause Claims") allege that the County's requirement that wineries in the Agricultural Districts produce wine using at least 75% grapes grown within the County violates the Dormant Commerce Clause ("DCC"). *Id*. ¶¶ 330–52. The Ninth and Tenth Claims ("Takings Claims") assert regulatory takings claims under *Nollan*/*Dolan* and *Penn Central*. The

RENNE PUBLIC LAW GROUP
Attorneys at Law

Eleventh Claim alleges the County's zoning regulations violate equal protection by differentiating between a "winery," "small winery," and "micro-winery." *Id.* ¶¶ 383–403. The Twelfth Claim asserts that the County Code is preempted by state law. *Id.* ¶¶ 404–45. Finally, the Thirteenth Claim lays out Plaintiffs' case for injunctive relief but does not allege any additional causes of action or facts.

## III.    LEGAL STANDARD

*Rule 12(b)(1).* To establish Article III standing, "[a] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Montana Environmental Information Center v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014). (quotations omitted). "A dispute is ripe in the constitutional sense if it presents concrete legal issues, presented in actual cases, not abstractions." *Id.* at 1188–89 (quotations omitted).

*Rule 12(b)(6).* A complaint may be dismissed under Rule 12(b)(6) when it lacks a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A court may consider documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested, and as well as matters of public record that are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    Plaintiffs' Constitutional Claims Are Not Justiciable

"Whether the question is viewed as one of standing or ripeness," a case must present issues that are "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000). Claims One through Eleven and Thirteen fall short.

First, to the extent Plaintiffs' First Amendment Claims hinge on the County's permitting decisions, they have not alleged that they intend to apply for use permits. *See Diamond S.J. Enterprise v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024) (no standing to challenge licensing law under First

-5-

Amendment because "vague allegation[s] that [they] intend[] to apply for permits in the future [are] too speculative to meet the standing requirements"). To the extent that Plaintiffs' First Amendment Claims are premised on an assertion that they do not need use permits to exceed their authorized uses, Summit Lake and Smith-Madrone lack standing to bring their First Amendment Claims in a pre-enforcement challenge because they have not alleged facts showing a "concrete intent to violate the challenged laws" or "a credible threat of enforcement." *Lopez v. Candaele*, 630 F.3d 757, 787, 791–93 (9th Cir. 2010).

Plaintiffs' as-applied Takings, Due Process, and Equal Protection Claims likewise fail for the simple reason that none of them has taken a single step to obtain a use permit within the limitations period. An as-applied challenge related to the regulation of land use is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019). The "finality" requirement is applicable to claims under the Takings Clause, the Due Process Clause, and the Equal Protection Clause. *See Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989). Without a final decision, there is no concrete injury, precluding standing and ripeness.

Hoopes and Summit Lake allege they were "advised" that they would have to make certain improvements to their properties if they wanted to expand their operations, but they do not allege that Hoopes ever actually applied for a permit or that the County reached a final decision regarding Summit Lake's 2019 application. Compl. ¶¶ 45–48, 52, 365, 366. Smith-Madrone alleges it operates under a 1973 use permit that it has never sought to modify. *Id.* ¶¶ 63, 81, 367. Without a final County decision regarding these hypothetical permit applications, adjudicating their constitutional claims would require impermissibly speculating whether the County would approve or deny the applications, how any particular regulation would be applied, how long it would take, and with what conditions a permit might issue. Accordingly, Plaintiffs' as-applied claims do not allege an injury and are not ripe. *See Ralston v. Cnty. of San Mateo*, No. 21-CV-01880-EMC, 2021 WL 3810269, at *8–9 (N.D. Cal. Aug. 26, 2021) (as-applied takings claim unripe because the county had not issued a final decision).

Similarly, Plaintiffs cannot allege an injury supporting their Dormant Commerce Clause Claims because wineries that existed before the County enacted the WDO's grape sourcing requirement in 1990,

RENNE PUBLIC LAW GROUP
Attorneys at Law

such as Plaintiffs' wineries, are not subject to the 75% rule unless they expand their "winery development areas." NCC § 18.104.250(C). Plaintiffs do not have standing and their claims are not ripe without a permit subject to the challenged statute. *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (plaintiff "must allege specific, concrete facts demonstrating that the challenged practices harm him"). Although Plaintiffs "wish" to expand their operations (Compl. ¶¶ 338, 349), more than a wish is required for their hypothetical expansions to become a concrete reality. Significantly, to expand their operations beyond the levels currently allowed by their permits or permit exemptions, Plaintiffs must complete the County's permit application and review process. NCC §§ 18.124 et seq. There is no certainty that Plaintiffs' "wish[es]" to expand their operations will be granted, denied, or conditioned on some basis, making any prospective injury entirely hypothetical and uncertain.

Additionally, Plaintiffs' Thirteenth claim for injunctive relief (Compl. ¶¶ 446-451) is not a "case" or "controversy" because "[d]eclaratory and injunctive relief are remedies, not causes of action." *Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014).

### B.    Most of Plaintiffs' Claims Are Time-Barred

Claims Five through Eleven are also time-barred, because any claims that might exist accrued more than two years ago—before September 5, 2022. "It is well established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, and, in California, that limitations period is two years." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) (citation omitted). This two-year limitations period "applies to all § 1983 claims, regardless of the civil right asserted." *Id.* A limitations period begins to run when the claim accrues. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993).

Facial takings, substantive due process, and equal protection challenges to statutes accrue at the time the challenged statute is adopted. A facial takings challenge "is a single harm, measurable and compensable when the statute is passed. Thus, it is not inconsistent to say that different rules adhere in the facial takings context and other contexts." *Levald*, 998 F.2d at 688. "[T]he logic for the accrual rules in the takings context applies with equal force in the substantive due process context," *Action Apartment*, 509 F.3d at 1026–27, as well as in the context of equal protection, *Cal. Assoc. for Preservation of Gamefowl v. Stanislaus Cnty.*, 2023 WL 1869010, *9 & n.9 (E.D. Cal. Feb. 9, 2023).

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

Here, the laws that allegedly "deprive Plaintiffs of the full use of their property," "interfere" with their alleged property rights, and "create[] at least two classes of licensed wineries" (Compl. ¶¶ 374, 380, 390–99) were all enacted many years (even decades) before September 5, 2022.  *See* Dkt. 1-9, 1-10, 1-11, 1-25.  Plaintiffs' facial Takings, Due Process, and Equal Protection Claims are thus time-barred.

Furthermore, Plaintiffs' as-applied claims, even if they were ripe (*see supra*, Section IV(A)), would also be time-barred because the Complaint does not allege any County conduct altering Plaintiffs' property rights within the limitations period.  *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (§ 1983 claim accrued when plaintiff's privilege was removed and continuing impacts were not continuing harm).

Plaintiffs' Twelfth Claim alleging that NCC § 18.08.600 et seq. is preempted is also time-barred.  Claims that local ordinances are preempted by later enacted state statutes are subject to a three-year limitations period.  *Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004).  Here, the state laws at issue (*see* Compl. ¶¶ 407-443) were enacted before September 5, 2021, making this claim untimely.

**C.     Plaintiffs' Takings Claims Fail as a Matter of Law[1]**

**1.     Plaintiffs Fail to State a Viable *Nollan/Dolan* Takings Claim**

Plaintiffs' Ninth Claim asserts a takings claim under *Nollan* and *Dolan*, which prohibit conditioning the use of one's property on agreeing to an exaction, or the dedication of private property for public use unless "there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 605–06 (2013) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994), and *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987)).  Compl. ¶¶ 352–72.  "It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play."  *California Bldg. Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 460 (2015).  Even if timely and ripe, this claim would still fail as a matter of law because the Complaint does not allege that the County unconstitutionally conditioned a use permit on the conveyance of a property right.

First, Plaintiffs allege that the County unconstitutionally conditions the granting of winery use

---

[1] The County addresses Plaintiffs' claims in a different order from the Complaint to better illustrate how their First Amendment Claims are premised on unprotected misleading and unlawful activity.

permits by requiring them to submit to allegedly unlawful ordinances, specifically NCC §§ 18.104.250 and 1.30.030(A).  Compl. ¶¶ 359–61.  These generally applicable County ordinances do not require Plaintiffs to convey any property rights.  Thus, the takings principles of *Nollan*/*Dolan* are not applicable.  *See Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022) ("Because the relocation fee here was not a taking, it cannot have been an unconstitutional exaction").

Plaintiffs further allege that the County forces winery use permit applicants to pay "impermissible impact fees" and "exorbitant costs" to improve roadways in a disproportionate manner to the applicant's proposed use.  Compl. ¶¶ 362–63.  These conclusory allegations of an "exaction policy" (*id.* ¶¶ 358, 369, 372) do not state any actual facts that could support a reasonable inference that the County is liable for a taking.  *See Temple of 1001 Buddhas v. City of Freemont*, 588 F. Supp. 3d 1010, 1024–25 (N.D. Cal. 2022) (conclusory allegations do not establish official policy under *Monell*); *Garcia v. County of Napa*, No. 21-cv-03519-HSG, 2022 WL 110650, at *4 (N.D. Cal. Jan 12, 2022) (same).  The only allegation that comes close to stating a specific exaction is Summit Lake's allegation that "it would need to agree to repave a substantial portion of the road leading to its winery at a cost of over $1 million" for a permit modification.  Compl. ¶ 48.  As detailed above, this claim is not ripe (*supra*, Section IV(A)) and, if it were, is outside the statute of limitations (*supra*, Section IV(B)).  Even so, this allegation alone does not establish that the requirement is not reasonable or roughly proportional to Plaintiffs' proposed use.  Plaintiffs thus fail to state a *Nollan/Dolan* claim.

## 2.    Plaintiffs Fail to State a Viable Regulatory Takings Claim

Outside the "relatively narrow categories" of actions that physically invade property or that completely deprive an owner of all economically beneficial use, regulatory takings challenges are governed by the standards set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).  Plaintiffs do not allege a permanent physical invasion or a complete deprivation of all economic benefits.  Accordingly, Plaintiffs' Tenth Claim is governed by *Penn Central*.

However, before reaching the *Penn Central* factors, "a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected.... Only if he does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking.'"  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  Here, Plaintiffs allege that "Napa County has enacted a series of ordinances which deprive [them]

2  of the full use of their property," such as tastings, food service, and wine-related merchandise sales.

3  Compl. ¶ 34, 58, 84, 374, 380.  Plaintiffs also allege the County's regulations "interfere[]" with their

4  State Winegrowers licenses and that sometime between 2012 and 2015, Napa County revised its "Winery

5  Database" to take their property rights without just compensation.  *Id.* ¶ 374, 378–80.

6  First, regarding Plaintiffs' State Winegrowers licenses, the County's regulations do not conflict or

7  interfere with the rights conferred by the licenses because the Alcoholic Beverage Control Act explicitly

8  allows counties to "exercise[e] land use regulatory authority by law to the extent the authority may

9  restrict, but not eliminate, privileges afforded [by the Act]."  Cal. Bus. & Prof. Code §§ 23358(e), 23790.

10  Plaintiffs' other allegations appear to invoke a property interest in certain hospitality uses, such as

11  tastings and food service.  But all zoning laws, by definition and without running afoul of the Takings

12  Clause, deprive every property owner of the "full use" of their property, including potentially lucrative

13  uses.  The facts alleged establish that Plaintiffs have never obtained the required use permits for those

14  uses.  Under California law, there is no right to any particular or anticipated zoning.  *See Avco Cmty.*

15  *Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 796 (1976) ("It is beyond question that a landowner

16  has no vested right in existing or anticipated zoning").

17  In *Avco*, the court found that even though the petitioner had reasonable expectations it would be

18  able to construct the buildings and had already started building, it failed to secure "a vested right to build

19  structures" which the county did not approve.  *Id.* at 793, 797.  Here, although the issue is permitted land

20  use within a zoning district rather than permitted construction, the principles are the same.  Plaintiffs

21  have not pled a vested interest in a permit or permit modification because, as the Complaint makes clear,

22  they have not sought such a permit or permit modification.  Comp. ¶¶ 45–48, 52, 63, 81, 365–367.

23  Furthermore, the Complaint's allegations that the public has historically consumed wine on their

24  properties clearly exceeds the uses allowed pursuant to their current entitlements.  Dkt. 1-1, 1-5, 1-7.

25  Uses that do not comply with the law cannot form the basis for a vested right.  *Avco*, 17 Cal. 3d at 793.

26  Even if Plaintiffs had a cognizable property interest, their claim still fails under *Penn Central*'s

27  factors:  (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the

28  regulation has interfered with distinct investment-backed expectations," and (3) "the character of the

-10-

governmental action." *Penn Cent.*, 438 U.S. at 124. "The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2020).

Under the first factor, courts "compare the value that has been taken from the property with the value that remains in the property." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Put differently, the "economic impact" of a government action "is determined by comparing the total value of the affected property before and after the government action." *Id.* at 451.

Here, it is unclear which "government action" Plaintiffs believe affected their property value. Plaintiffs do not allege any government action within the limitations period that could have affected the value of their properties. *See supra*, Section IV(B). Plaintiffs assert the prohibition of certain hospitality uses reduces the value of their properties, but those uses have been clearly prohibited without a permit for decades. *See supra*, Section II(A). Plaintiffs may attempt to base their claims on the allegation that the County amended the Winery Database, but the database, which notes that "[t]here may be omissions or errors within this document" (Dkt. 1-3), does not have the force of law and any changes to that document had no effect on Plaintiffs' land use entitlements.

These facts also cut against the second *Penn Central* factor. Plaintiffs cannot plausibly allege any "objectively reasonable" investment-backed expectations because using their properties for hospitality operations beyond what is permitted in the County Code and their permits/permit exemptions have been prohibited for decades. *See Colony Cove Props., LLC*, 888 F.3d at 452. In the case of Hoopes and Summit Lake, the Complaint admits that they purchased the subject properties well after the County established the applicable land use regulations. *See* Compl. ¶¶ 18, 37.

The final *Penn Central* factor "instructs that [a] taking may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Colony Cove Props., LLC*, 888 F.3d at 454 (quotations and citation omitted). Plaintiffs do not allege a physical invasion. Instead, the alleged takings stem from the County's zoning and land use regulations enacted to protect critical "economic and aesthetic attributes and assets," its "agriculture, watersheds and floodplain tributaries from fire, pollution and erosion," and its "general health, safety and welfare." NCC §§ 18.16.010, 18.20.020.

The Court has upheld "land-use regulations that destroyed or adversely affected recognized real property interests" when, as here, the relevant government entity "reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land." *Penn Cent.*, 438 U.S. at 125. All three factors cut strongly in favor of the County here, especially where the Complaint fails to identify or allege a cognizable property interest that is infringed.

### D.    Plaintiffs' Due Process Claims Fail as a Matter of Law

Plaintiffs' Fifth and Sixth Claims allege the County enforces arbitrary and vague laws that interfere with their rights to carry on a lawful business. Compl. ¶¶ 291, 294, 299-305. Not so.

#### 1.    Procedural Due Process

##### a.    Plaintiffs Have No Protected Right to Existing or Anticipated Zoning

A threshold requirement for a procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013). Such property interests are defined by state law. *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1001 (1984). Under California law, there is no right to any particular or anticipated zoning. *See Avco.*, 17 Cal. 3d at 796. To the extent Plaintiffs' procedural due process claims rest on whether they were able to obtain discretionary use permits, they fail as a matter of law because Plaintiffs do not have a vested right to a particular zoning designation. *See Tyson v. City of Sunnyvale*, 920 F. Supp. 1054, 1061 (N.D. Cal. 1996).

##### b.    The County Code Provisions Regulating Wineries Are Not Vague

"The void-for-vagueness doctrine … guarantees that ordinary people have fair notice of the conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (quotations omitted). Plaintiffs complain that certain terms in the County Code applicable to wineries are not defined or are vague, leaving them unable to "identify what conduct is permitted or prohibited conduct due to lack of operative or even definitional guidance." Compl. ¶ 129, 146–166, 297.

Contrary to Plaintiffs' assertions, the County Code offers extensive operative and definitional guidance. *See* NCC §§ 18.08.020 ("accessory use"), 18.08.040 ("agriculture"), 18.08.370 ("marketing wine"), 18.08.600 ("small winery"), 18.08.640 ("winery"), 18.20.030(I) (list of uses in connection with a winery permitted upon grant of a permit), 18.20.030(J) (list of uses accessory to a winery permitted upon

RENNE PUBLIC LAW GROUP
Attorneys at Law

grant of a permit). The Code articulates sufficiently clear definitions to provide notice of permitted uses without defining every word. "The law does not require a municipal ordinance to include definitions. The question is whether those terms, as used in [the ordinance], are sufficiently clear that a person of ordinary intelligence would know what is prohibited." *Young v. Cnty. of San Mateo*, No. C 03-05801 CRB, 2005 WL 3454106, at *5 (N.D. Cal. Dec. 16, 2005).

Plaintiffs understand that under the County's permissive zoning code, any use of the land that is not specifically allowed is prohibited. They simply want to expand their uses beyond what their current permits or permit exemptions allow without having to undergo the permit application or modification process. Hoopes and Summit Lake operate pursuant to SWEs and are considered "small wineries" under the County Code, which cannot "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." NCC § 18.08.600. The uses allowed on their properties are those "in conformance with the applicable certificate of exemption." *Id.*, §§ 18.16.020(H), 18.20.020(I). Accordingly, the specific uses permitted on their properties are defined by their status as a "small winery" and the parameters of their SWE; other uses allowed in the Code upon grant of a use permit are not applicable to Hoopes and Summit Lake. Similarly, Smith-Madrone operates pursuant to a winery use permit obtained in 1973 that includes limits on hospitality uses, including allowing private, invitation-only tastings, which is a permitted use under NCC § 18.20.030. Any expansion beyond the permitted uses would require a modification to the use permit. *See id.* § 18.20.020(J).

The permitted or prohibited uses are especially clear when viewed in the context of the entire regulatory scheme and legislative purpose behind establishing the Agricultural Districts. *See Gospel Missions of America*, 419 F.3d 1042, 1047 (9th Cir. 2005) (context may provide guidance on undefined terms); *City of Los Altos v. Barnes*, 3 Cal.App.4th 1193, 1202 (1992) (in interpreting zoning ordinances, courts should refer to, among other things, legislative history or purpose). Section 18.16.010 provides:

> The AP district classification is intended to be applied in the fertile valley and foothill areas of Napa County in which agriculture is and should continue to be the predominant land use, where uses incompatible to agriculture should be precluded and where the development of urban-type uses would be detrimental to the continuance of agriculture and the maintenance of open space which are economic and aesthetic attributes and assets of the county.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-13-

1    Section 18.20.010 provides:

2            The AW district classification is intended to be applied in those areas of the
       county where the predominant use is agriculturally oriented, where
3       watershed areas, reservoirs and floodplain tributaries are located, where
       development would adversely impact on all such uses, and where the
4       protection of agriculture, watersheds and floodplain tributaries from fire,
       pollution and erosion is essential to the general health, safety and welfare.

5

6    The terms and their application are clear "when the purpose clause of the ordinance is considered and the

7    terms are read in that context as they should be." *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1107

8    (1995). Plaintiffs may engage in "agricultural" activity as defined in NCC § 18.08.040 and operate their

9    wineries, which are defined by NCC § 18.08.640 as "an agricultural processing facility used for: [t]he

10   fermenting and processing of grape juice into wine; or [t]he refermenting of still wine into sparkling

11   wine." If Plaintiffs obtained appropriate use permits, they could also engage in the identified accessory

12   uses, such as tours, tasting, and on-site consumption. The County Code is not vague.

13                    **2.    Substantive Due Process**

14           "In zoning dispute cases, the principle of substantive due process assures property owners of the

15   right to be free from arbitrary or irrational zoning actions." *Arlington Heights v. Metropolitan Housing*

16   *Dev. Corp.*, 429 U.S. 252, 267 (1977). Plaintiffs must prove that the defendants' actions were "clearly

17   arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general

18   welfare." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989),

19   *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).

20           The Complaint's conclusory allegations that the County enforces arbitrary and vague laws against

21   Plaintiffs (Compl. ¶ 291) are insufficient to state a claim. *Iqbal*, 556 U.S. at 663. Plaintiffs do not allege

22   any facts demonstrating the County's conduct is "clearly arbitrary and unreasonable." Furthermore, the

23   County's land use and zoning laws on their face are substantially related to the public health, safety,

24   morals, or general welfare. *See* NCC §§ 18.16.010, 18.20.020. Courts recognize that these zoning

25   objectives are rational. *See Barancik v. Cnty. of Marin*, 872 F.2d 834, 837 (9th Cir. 1988) (County

26   zoning plan for an agricultural corridor was not irrational); *Nelson v. City of Selma*, 881 F.2d 836, 839

27   (9th Cir. 1989) (preservation of neighborhood character and integrity are legitimate purposes).

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

### 3.    Plaintiffs' Non-Delegation Doctrine Claim Fails as a Matter of Law

Under the Due Process Clause, "the state may not constitutionally abdicate or surrender its power to regulate land-use to private individuals without supplying standards to govern the use of private discretion." *Schulz v. Milne*, 849 F. Supp. 708, 712 (N.D. Cal. 1994) (quotations omitted).

Here, Napa County does not, by rule or practice, condition the issuance of a use permit on the approval of third parties. The Court must take as true allegations of fact but does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs do not identify under what ordinance or policy the County allegedly delegates its authority to third parties, who the third parties are, who the parties applying for the permits were, or when the final decisions were made. *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024–25. Instead, Plaintiffs hint at the inclusion of members of the public in the use permit process, which is required by state law and by the due process rights of neighboring property owners. *See Horn v. County of Ventura*, 24 Cal.3d 605, 614–16 (1979). These vague and conclusory allegations are insufficient to state a claim. Additionally, Plaintiffs contradictorily admit that they have not applied for use permits. Compl. ¶¶ 46, 52–53, 63, 365–67. Accordingly, their allegations do not support a reasonable inference that the County has a policy and practice of conditioning issuance of use permits on third-party approval.

### E.    Plaintiffs' Equal Protection Claim Fails as a Matter of Law

Plaintiffs' Eleventh Claim alleges the County violates equal protection by proscribing different uses to the different categories of "winery," "small winery," and "micro-winery" in the County Code. Compl. ¶ 387–401. A classification not involving fundamental rights or historically discriminated against groups only violates equal protection if it is not rationally related to the furtherance of a legitimate governmental interest. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

First, the uniformity requirement of Government Code § 65852 is not constitutionally required. *See Sacramentans for Fair Plan. v. City of Sacramento*, 37 Cal. App. 5th 698, 708 (2019). Still, the County ordinances satisfy the requirements of Section 65852 because they set uniformly applicable requirements for each class of winery operating in the AP district. Second, Plaintiffs' conclusory allegation that the County has "no rational basis for distinguishing between large and small wineries"

RENNE PUBLIC LAW GROUP
Attorneys at Law

-15-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    does not state a plausible claim.  *See Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301.

2    304–05 (9th Cir. 2020) (affirming the dismissal of an equal protection claim because the property

3    owner's allegations were wholly conclusory and did not sufficiently show differential treatment);

4    *Konarski v. City of Tucson*, 716 F. App'x 609, 613 (9th Cir. 2017) (same).

5         The County's zoning ordinances establish uniform class-based requirements for wineries of

6    varying scales, and are rationally related to the County's legitimate interest in protecting its rural

7    character, and limiting the impact of non-agricultural activity in the Agricultural Districts.  *See Christian*

8    *Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990) (rejecting

9    equal protection claim because city had legitimate interest in preserving welfare and character of its

10   neighborhoods).  Regarding the SWEs specifically, the County recognized that smaller wineries posed a

11   reduced impact and reasonably exempted them from the more extensive review required for larger

12   operations.  When a winery with a SWE seeks to expand its operations, it is appropriately subjected to

13   the more rigorous permitting process that all wineries of a comparable size undergo.

14   **F.    Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law**

15        Plaintiffs' Dormant Commerce Clause Claims challenge NCC § 18.104.250(B), which requires

16   "at least seventy-five percent of the grapes used to make the winery's still wine, or the still wine used by

17   the winery to make sparkling wine, shall be grown within the county of Napa."  *See* Compl. ¶¶ 337, 348.

18        The Ninth Circuit follows a two-tiered approach when reviewing challenges under the DCC:

19            [1] When a state statute directly regulates or discriminates against interstate
             commerce, or when its effect is to favor in-state economic interests over
20           out-of-state interests, we have generally struck down the statute without
             further inquiry. [2] When, however, a statute has only indirect effects on
21           interstate commerce and regulates evenhandedly, we have examined
             whether the State's interest is legitimate and whether the burden on
22           interstate commerce clearly exceeds the local benefits.

23   *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019).  To succeed on a facial challenge

24   under the DCC, Plaintiffs "must establish that no set of circumstances exists under which the [Ordinance]

25   would be valid.  The fact that [the Ordinance] might operate unconstitutionally under some conceivable

26   set of circumstances is insufficient to render it wholly invalid.  [Citation].  Because of this high burden,

27   we construe the Ordinance narrowly and resolve any ambiguities in favor of the interpretation that most

28   clearly supports constitutionality."  *Id.* at 444 (quotation omitted).

-16-

### 1.    The County's Regulations Do Not Directly Discriminate Against Commerce

Section 18.104.250's structure and purpose are rooted in the preservation of agricultural land without an intent to harm or exclude out-of-state economic interests.  Section 18.104.250 only applies to wineries within the County and does not regulate any extraterritorial activity.  *See* NCC § 18.104.250(B). Laws that only regulate in-state conduct generally are not per se invalid.  *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) ("[E]ven when state law has significant extraterritorial effects, it passes Commerce Clause muster when, as here, those effects result from the regulation of in-state conduct.").  Generally, statutes struck down for directly discriminating against interstate commerce regulate commercial activity such as pricing, sales, or the shipment of retail goods. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 (1989) (price affirmation); *Granholm v. Heald*, 544 U.S. 460, 473–74 (2005) (direct shipment).  In contrast, Section 18.104.250 regulates the use of land, tying the overall production of wine to the amount of agricultural produce "grown" in the County.  It does not place any restrictions on the sale or shipment of grapes or wine.

Additionally, Section 18.104.250 does not benefit in-state commercial interests at the expense of out-of-state interests.  Its legislative findings provide that "the County areas suitable for quality vineyards are limited and irreplaceable…The interspersing of non-agricultural structures and activities through agricultural areas in excess of what already exists will result in a significant increase in the problems and costs of maintaining vineyards and discourage the continued use of the land for agricultural purposes." *See* Dkt. 1-11, Ord. No. 947 § 1.  Section 18.104.250 preserves the Agricultural Districts by ensuring wineries in the districts do not operate primarily as processing facilities.  Without such a limitation, wineries' ancillary use of their agricultural property to process grapes could overwhelm the primary agricultural use of growing crops.  This is a legitimate land use concern, not economic protectionism, and does not directly regulate or discriminate against interstate commerce.

### 2.    The County's Regulations Do Not Unconstitutionally Burden Commerce

Under *Pike*, courts will uphold an ordinance if it "effectuate[s] a legitimate local public interest" "unless the burden imposed on [interstate] commerce is *clearly excessive* in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (emphasis added).  "[C]onclusory allegations of disparate impact are not sufficient; to survive [Defendant's] motion to dismiss, the

RENNE PUBLIC LAW GROUP
Attorneys at Law

-17-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  plaintiffs needed to plead specific facts to support a plausible claim that the ordinance has a

2  discriminatory effect on interstate commerce." *Rosenblatt*, 940 F.3d at 452 (quotation omitted).

3       Here, Plaintiffs have pled a single conclusory allegation that the "County Code places an

4  excessive burden on interstate commerce in excess of the putative benefit to Napa County . . . by

5  favoring, and mandating in-County products and persons over out-of-County products and persons."

6  Compl. ¶ 348.  This is woefully insufficient to state a claim.

7       Section 18.104.250 was enacted "to protect agriculture and open space as the primary land use in

8  Napa County." Dkt. 1-11, Ord. No. 947, § 6(b).  Courts recognize that counties have a legitimate interest

9  in preserving the welfare and character of their neighborhoods.  *See Christian Gospel Church*, 896 F.2d

10  at 1225.  Preserving the County's vineyards not only sustains the local economy through tourism and

11  wine production but also protects its rich agricultural heritage and scenic landscapes.  Vineyard

12  preservation promotes biodiversity, conserves water resources, and supports local jobs, making it both an

13  economic and environmental asset.  Section 18.104.250 ensures Napa's valuable land is preserved for

14  grape cultivation, a benefit that clearly outweighs any incidental burden on interstate commerce.

15      **G.**    **Plaintiffs' First Amendment Claims Fail as a Matter of Law**

16       Plaintiffs' First through Fourth claims assert that the County's laws regarding the nature and

17  intensity of physical agricultural land uses at wineries violate the First Amendment on their face and as

18  applied to Plaintiffs.  *See* Compl. ¶¶ 234-285.  Because Plaintiffs seek damages (see Compl. ¶¶ 252(c),

19  263(c), 269(c), 285(c)), they "must base their claims on a restriction of their own constitutionally

20  protected conduct" and "must prove a violation of their own rights, regardless of the precise

21  characterization of their claims." *Hunt v. City of Los Angeles*, 638 F.3d 703, 710 & n.2 (9th Cir. 2011).

22      **1.**    **The Land Use Regulations at Issue Do Not Directly or Inevitably Single Out**
23               **Expressive Activity**

24       Plaintiffs "bear[] the burden to demonstrate that the First Amendment even applies" to their

25  "commercial speech" by showing that "conduct with a significant expressive element drew the legal

26  remedy or the [ordinance] has the inevitable effect of singling out those engaged in expressive activity."

27  *B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 112, 114 n.11 (9th Cir. 2024) (quotations omitted).

28       Here, because Plaintiffs cannot demonstrate that the ordinances at issue "directly or inevitably

-18-

restrict any expressive activity, they do not implicate the First Amendment." *B&L Productions*, 104 F.4th at 113. The County Code provisions cited in the Complaint are traditional land use regulations addressing the nature and intensity of the physical land uses at wineries in rural agricultural areas to limit them to approved uses and address their potentially adverse environmental effects (e.g., on traffic, noise, pollution, fire risks, sensitive receptors). The act of hosting the public for wine tasting or tours or selling wine-related items without authorization draws the legal remedy. These acts are not "conduct with a significant expressive element" because "consummating a business transaction is nonexpressive conduct unprotected by the First Amendment." *Id.* at 114 (statutes prohibiting "contracting for the sale of any firearm or ammunition" on state property did not trigger First Amendment scrutiny); *Talk of the Town v. Department of Finance and Business Services ex rel. City of Las Vegas*, 343 F.3d 1063, 1069–70 (9th Cir. 2003) ("[T]he section of the Las Vegas Municipal Code that bars the consumption of alcohol in establishments that lack valid liquor licenses … in no way can be said to regulate conduct containing an element of protected expression."); *Phillip Morris USA, Inc. v. City and County of San Francisco*, 345 F. App'x 276 (9th Cir. 2009) ("Selling cigarettes isn't [protected expressive activity], because it doesn't involve conduct with a 'significant expressive element.'").

Nor do the County Code provisions have the inevitable effect of singling out those engaged in expressive activity. *See Talk of the Town*, 343 F.3d at 1069–70 ("Nor can it be said that the City's requirement that businesses obtain a valid liquor license before they are permitted to serve alcohol on their premises places a disproportionate burden on those engaged in expressive conduct."). "The mere fact that a regulation may have economic implications for the feasibility of certain speech does not meet that standard." *B&L Productions*, 104 F.4th at 115; *see also HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 680, 685 (9th Cir. 2019) (ordinance restricting short-term rentals was "plainly a housing and rental regulation" whose "inevitable effect" was to "regulate nonexpressive conduct—namely, booking transactions—not speech"). Indeed, nothing in the County Code precludes small wineries from marketing or advertising their products within the scope of their allowed physical uses (and thus in ways that will avoid adverse impacts) or freely in print, social, or other media.

### 2.    The County's Ordinances Pass Muster Under *Central Hudson*

Regardless, Plaintiffs fail to state a claim under *Central Hudson v. Public Serv. Comm'n of N.Y.*,

RENNE PUBLIC LAW GROUP
Attorneys at Law

447 U.S. 557 (1980), because the speech at issue is "misleading" and does not "concern lawful activity." *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017). "[S]peech proposing an illegal transaction … may [be] regulate[d] or ban[ned] entirely." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 496 (1982); *see also Homeaway.com*, 918 F.3d at 686 ("[T]o the extent that the speech chilled advertises unlawful rentals, [a]ny First Amendment interest … is altogether absent." (quotation omitted)).

Here, Plaintiffs assert that the County restricts their commercial speech by prohibiting them from "invit[ing] guests to their businesses and/or maintain[ing] their business as generally open to the public" for "the express purpose[s] of advertising and promoting the products Plaintiffs have for sale with the intent of completing a sale" and "engaging in product demonstrations." (Compl. ¶¶ 241-42.) But these "accessory uses"—"marketing of wine," "tours and tastings," and "sale of wine related products" (Compl. ¶¶ 133-139)—are permitted in the Agricultural Districts "*only upon grant of a use permit pursuant to Section 18.124.010.*" NCC §§ 18.16.030(G)(5)(b) & (H)(1), (H)(4) (AP District), 18.20.030(I)(5) & (J)(1), (J)(4) (AW District) (emphasis added); *see also id.* § 18.08.020.

Plaintiffs Hoopes and Summit Lake concede that they do not have a use permit. *See* Compl. ¶¶ 18, 37, 46. Further, their applications for the SWE—which they attach to their complaint—do not entitle them to host public tours or provide wine tastings, do not entitle Hoopes to any daily or weekly visitors, and do not entitle Summit Lake to more than 2 weekly visitors. *See* Dkt. 1-1 at 2 (Hoopes); Dkt. 1-5 at 2 (Summit Lake). And while Smith-Madrone has a use permit, it was granted on the condition that "[w]ine tasting be limited to a private, invitational only, basis" and with the finding that "[t]he winery will not provide public tasting facilities." Dkt. 1-7 at 3-4. Smith-Madrone has not sought an amendment to its use permit. Accordingly, they cannot contend that the County's restrictions impinge on protected commercial speech since their purported speech seeks to promote unlawful activity (i.e., tours and tastings at their wineries that exceed their use authorization) and misleadingly suggests it is lawful.

In any event, Plaintiffs cannot overcome *Central Hudson* because the County has a substantial interest in protecting the agricultural character of its districts and its use permit restrictions are appropriately tailored to achieve that interest. *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 745 (9th Cir. 2011) ("The City is certainly entitled to treat signs permitted before the offsite and supergraphic sign bans differently than other signs both because preserving legally nonconforming

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    billboards still furthers the City's significant interest in reducing blight and increasing traffic safety").[2]

2    ### 3.    Plaintiffs' Facial Prior Restraint Claim Fails as a Matter of Law

3    #### a.    The County Code Provisions at Issue Are Laws of General Application Not Aimed at Expressive Conduct

4

5    Facial prior restraint challenges are "disallowed against laws of general application not aimed at

6    conduct commonly associated with expression." *Spirit of Aloha v. Cnty. of Maui*, 49 F.4th 1180, 1188

7    (9th Cir. 2022); *Talk of the Town*, 343 F.3d at 1072 ("burdening of expressive conduct here is merely the

8    incidental result of the City's clear authority to enforce its generally applicable liquor license

9    requirement").

10   Without identifying any specific laws, Plaintiffs assert that "to have a cultural, business, or social

11   event at a winery, Plaintiffs are required to obtain approval from Napa County regarding the purpose and

12   intent of the event, by way of submission of a 'marketing plan,' before 'marketing events' can take

13   place." Compl. ¶ 268.  This misreads the County Code, which defines "marketing of wine" in non-

14   expressive terms:  "any activity of a winery which is conducted at the winery on a prearranged basis for

15   the education and development of customers and potential customers with respect to wine which can be

16   sold at the winery on a retail basis pursuant to Chapters 18.16 and 18.20."  NCC § 18.08.370.

17   Moreover, section 18.08.370 is not a use permitting scheme where governmental approval is

18   required to engage in temporary events commonly associated with expressive activities.  *Cf.* NCC

19   § 5.36.010 et seq.  Rather, section 18.08.370 defines "marketing of wine" in a way that prohibits business

20   events unless "they are directly related to the education and development of customers and potential

21   customers of the winery and are part of a marketing plan *approved as part of the winery's use permit*."

22   *Id.* § 18.08.370 (emphasis added).  Because this type of agricultural land use regulation does not

23   implicate expressive activity, Plaintiffs' facial prior restraint challenge may not proceed.

24   #### b.    The County's Permitting Scheme Is Not an Unlawful Prior Restraint

25   Even if Plaintiffs could proceed with their "disfavored" facial prior restraint challenge, they

---

[2] Plaintiffs also assert that the County's regulations of marketing events at wineries are content- and viewpoint-based. *See* Compl. ¶¶ 276–78, 282.  But that does not alter the *Central Hudson* analysis, *see Retail Digital Network, LLC*, 861 F.3d at 847–50 & n.9, or change the fact that the County's land use laws "regulate[] economic activity rather than speech," *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quotation omitted).

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    would have to show that the County's permitting scheme fails to "provide 'narrowly drawn, reasonable

2    and definite standards' for granting, revoking, or suspending a license" and "place[s] unbridled discretion

3    in the hands of" the County. *Diamond*, 100 F.4th at 1066 (quotations omitted). In *Diamond*, the Ninth

4    Circuit rejected a prior restraint challenge to laws "preclud[ing] public entertainment businesses from

5    operating in a way that causes a public nuisance." *Id.* at 1065. The court concluded that these nuisance

6    provisions did "not confer unbridled discretion on the City's Chief of Police" because the phrase "public

7    nuisance" was adequately defined and "the challenged provisions require the Chief of Police to state all

8    grounds upon which a denial, suspension, or revocation is based and provide for an administrative

9    hearing and both administrative and judicial review." *Id.* at 1067–68.

10        Here, just like the licensing scheme in *Diamond*, the County's use permit scheme (which

11   regulates agricultural land use, not expressive activity) does not confer unbridled discretion on County

12   officials. Use permits may be conditioned on a variety of enumerated factors, including "[i]ngress and

13   egress to the property and proposed structures thereon with particular reference to automobile and

14   pedestrian safety and convenience, traffic flow and control and access in case of fire or catastrophe" and

15   "[m]itigation of adverse environmental effects if any, such as, adverse effects on groundwater resources,

16   noise, glare, dust, smoke, odor or other effects of the proposed use in relation to adjoining property and

17   property generally in the vicinity." NCC § 18.124.060(A), (C). A use permit cannot issue unless the

18   planning commission or board of supervisors makes "written findings" (*id.* § 18.124.070), and a public

19   hearing must be held before a use permit is issued or denied (*id.* § 18.124.040). Once a use permit is

20   issued, the standards for revoking (*id.* § 18.124.120(C)) or modifying (*id.* § 18.124.130(C)) the permit

21   are "narrow, objective, and definite," *Diamond*, 100 F.4th at 1068, and any revocation is appealable and

22   subject to judicial review. *See* NCC §§ 18.124.120(E), 2.88.010 et seq.; Cal. Code Civ. Proc. § 1094.5.

### 4.    The County Code Provisions and Nuisance Abatement Action Do Not Infringe Plaintiffs' Right to Petition

25        Plaintiffs assert that NCC § 1.30.030(A), which requires permit applicants to indemnify the

26   "county from any claim, action, or proceeding brought against the county to attack, set aside, void or

27   annul the approval based on the county's failure to comply with the requirements of any federal state or

28   local law," "violates Plaintiffs' First Amendment right to petition the courts by attempting to chill

-22-

1    meritorious litigation under threat of costs and attorney's fees." Compl. ¶¶ 248-249. Not so.

2    By its own plain terms, section 1.30.030(A) only applies when an action has been brought by a

3    third party "against the county to attack, set aside, void or annul the approval" of an applicant's own

4    permit. *See also* NCC § 1.30.010(B) (purpose and findings). That is not remotely the case where (as

5    here) a would-be permit applicant seeks to avoid the permit application process altogether and ignores

6    the important public policy behind the ordinance. The ordinance—which mirrors those used by countless

7    other jurisdictions—protects the public from incurring costs to defend a private party's project or

8    property rights. Plaintiffs also overlook basic principles of indemnification, which generally "allows one

9    party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action

10    between the parties." *Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal.App.5th 574, 600 (2016).

11    Plaintiffs also allege without specificity that they "are in, or have threatened, litigation with Napa

12    County for which they have experienced retaliation." (Comp. ¶ 250.) This conclusory allegation—

13    which is contradicted by their allegations and judicially noticeable materials showing that Hoopes

14    brazenly exceeded its use entitlements—is insufficient to state a claim. *See Temple of 1001 Buddhas*,

15    588 F. Supp. 3d at 1024–25 ("Without significantly more to connect West's enforcement action to Lee's

16    protected activity, Lee does not plausibly allege" retaliation).

17    **H.    Plaintiffs' State Law Preemption Claim Fails as a Matter of Law**

18    Plaintiffs' Twelfth Claim alleges that NCC §§ 18.08.600 et seq. conflicts with provisions of the

19    Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code §§ 23200 et seq.) allowing licensed

20    winegrowers to serve food, wine, and beer for on-premises consumption without appointments. Compl.

21    ¶¶ 429, 432. They also assert that the California Building Code uniform occupancy load requirements

22    preempt the County's restrictions on the number of visitors a winery may host. Compl. ¶¶ 439–44.

23    "[W]hen local government regulates in an area over which it traditionally has exercised control,

24    such as the location of particular land uses, California courts will presume, *absent a clear indication of*

25    *preemptive intent from the Legislature*, that such regulation is not preempted." *Big Creek Lumber Co. v.*

26    *County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006) (as modified Aug. 20, 2006) (emphasis added).

27    Here, the Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code § 23358(e)) provides:

28    Nothing in this section or in Section 23390 is intended to alter, diminish,
replace, or eliminate the authority of a county, city, or city and county from

-23-

exercising land use regulatory authority by law to the extent the authority
may restrict, but not eliminate, privileges afforded by these sections.

This provision expresses the Legislature's intent to permit local regulation. *See People ex rel. Deukmejian v. County of Mendocino*, 36 Cal. 3d 476, 485 (1984) (holding that preemption "may not be found when the Legislature has expressed its intent to permit local regulations"); *see also* Cal. Bus. & Prof. Code § 23790 ("No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city."). Although NCC § 18.08.600(C) provides that a small winery cannot "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature," Plaintiffs are not prohibited from applying for a use permit to conduct those activities or opening a restaurant to provide those services outside of the County's Agricultural Districts. *See* NCC § 18.16.030(H)(1) and (4). This is a permissible land use restriction allowed by Business and Professions Code § 23358(e) and § 23790, not an elimination of a privilege in conflict with the statute.

Similarly, conditioning use permits with limits on the volume of visitors does not conflict with the Building Code, which permits local governments "to establish more restrictive and reasonably necessary differences." Cal. Code Regs. tit. 24, § 1.1.8. Building occupancy limits set a maximum threshold to ensure safe egress from the structure in emergencies. *See id.* §§ 1.1.2, 1004.1. In contrast, the County's land use regulations restrict the volume of visitors to the property overall, addressing various impacts resulting from the intensity of the use. *See* NCC §§ 18.16.010, 18.124.060(A).

## I.    This Court Should Abstain from Adjudicating Plaintiffs' Surviving Claims

### 1.    *Younger* Abstention

A federal court may abstain under *Younger v. Harris*, 401 U.S. 37 (1971), in three types of cases: (1) pending state criminal cases, (2) state civil cases akin to criminal prosecutions, and (3) state civil cases that implicate enforcement of state court orders and judgments. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). The state action must be (1) "ongoing," (2) "implicate important state interests," and (3) provide "an adequate opportunity ... to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). If these conditions are met, a federal court may abstain if "the federal action would have the practical effect

RENNE PUBLIC LAW GROUP
Attorneys at Law

of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759.

*Younger* abstention squarely applies here. *See supra* Section II(B); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1045 (9th Cir. 2019) ("Civil actions brought by a government entity to enforce nuisance laws have been held to justify *Younger* abstention." (quotation omitted)). The County has an important interest in eliminating public nuisances and enforcing local and state law and the Superior Court provides an adequate opportunity to raise constitutional challenges, which Hoopes has availed itself of, raising many of the same constitutional claims it advances here. *See* RJN, Ex. B, SACC. If Plaintiffs succeed here, the practical effect would be to enjoin the state proceedings. *See Herrera*, 918 F.3d at 1048.

Although Summit Lake and Smith-Madrone are not parties to the state proceedings, courts "have recognized that there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Herrera*, 918 F.3d at 1046 (quotation omitted). Here, if Summit Lake's or Smith-Madrone's challenges are allowed to proceed, the potential for federal interference in the state court's proceedings is the same. This warrants abstention as to all Plaintiffs because they raise the "same comity considerations." *See Hicks v. Miranda*, 422 U.S. 332, 337–38 (1975) (overruled on other grounds).

### 2. *Pullman* Abstention

Under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), abstention is appropriate where (1) the case touches sensitive state social policy; (2) a ruling by the state court could narrow or avoid the Constitutional claims, and (3) the possibly determinative issue of state law is uncertain. All three are present here because "land use planning is a sensitive area of social policy that meets the first requirement," *Sinclair Oil Corp. v. Cnty. of Santa Barbara*, 96 F.3d 401 (9th Cir. 1996) (quotation omitted); the ultimate resolution of Hoopes' preemption claim in the state action could narrow or avoid Plaintiffs' constitutional challenges (*e.g.*, Compl. ¶ 241); and whether state law preempts the County Code is a novel issue. *See Pearl v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985).

## V.    CONCLUSION

For the reasons discussed above, the County requests that the Court grant this motion to dismiss the Complaint in its entirety without leave to amend, or in the alternative, dismiss Plaintiffs' claims for injunctive and declaratory relief and stay Plaintiffs' claims for damages under principles of abstention.

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Dated:  November 15, 2024                    RENNE PUBLIC LAW GROUP

2

3                                                By:  /s/Ryan P. McGinley-Stempel

4                                                        Ryan P. McGinley-Stempel

5                                                Attorneys for Defendant

6                                                NAPA COUNTY

RENNE PUBLIC LAW GROUP
Attorneys at Law