1  SHERYL L. BRATTON, County Counsel (SBN 144209)
   JASON M. DOOLEY, Chief Deputy (SBN 258570)
2  jason.dooley@countyofnapa.org
   NAPA COUNTY COUNSEL'S OFFICE
3  1195 Third Street, Suite 301
   Napa, California 94559
4  Telephone: (707) 253-4521
   Facsimile: (707) 259-8220
5
   ARTHUR A. HARTINGER (SBN 121521)
6  ahartinger@publiclawgroup.com
   RYAN P. McGINLEY-STEMPEL (SBN 296182)
7  rmcginleystempel@publiclawgroup.com
   JAKE FREITAS (SBN 341837)
8  jfreitas@publiclawgroup.com
   RENNE PUBLIC LAW GROUP
9  350 Sansome Street, Suite 300
   San Francisco, California 94104
10 Telephone: (415) 848-7200
   Facsimile: (415) 848-7230
11
   Attorneys for Defendant
12 COUNTY OF NAPA

13              IN THE UNITED STATES DISTRICT COURT

14           FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16
   HOOPES VINEYARD LLC, a California limited      Case No. 3:24-cv-06256-CRB
17 liability company; SUMMIT LAKE VINEYARDS
   & WINERY LLC, a California limited liability
18 company; and COOK'S FLAT ASSOCIATES A          **NAPA COUNTY'S NOTICE OF MOTION**
   CALIFORNIA LIMITED PARTNERSHIP, a             **AND MOTION TO DISMISS FIRST**
19 California limited partnership,                **AMENDED COMPLAINT, OR IN THE**
                                                  **ALTERNATIVE, FOR ABSTENTION;**
20              Plaintiffs,                        **MEMORANDUM OF POINTS AND**
                                                  **AUTHORITIES IN SUPPORT THEREOF**
21
   v.                                             Judge:         Hon. Charles R. Breyer
22                                                Hearing Date:  February 21, 2025
   COUNTY OF NAPA,                                Hearing Time:  10:00 a.m.
23                                                Location:      Courtroom F, 15th Floor
                                                                 455 Golden Gate Avenue
24              Defendant.                                        San Francisco, CA 94102

25
                                                  Action Filed:  September 5, 2024
26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iv

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
ABSTENTION ............................................................................................................ xiii

ISSUES TO BE DECIDED ................................................................................................ xiv

SUMMARY OF THE ARGUMENT ................................................................................... xv

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.................................................2

        A.      Napa County's Agricultural Districts and Land Use Regulations Related to
                Wineries ......................................................................................................2

        B.      Plaintiffs' Authorizing Land Use Documents and Associated Entitlements .......3

                1.      Hoopes .............................................................................................3

                2.      Summit Lake .....................................................................................4

                3.      Smith-Madrone .................................................................................4

        C.      Napa County's Enforcement Action Against Hoopes Winery .........................5

        D.      Allegations in the FAC ...................................................................................6

III.    LEGAL STANDARD ...............................................................................................7

IV.     ARGUMENT ...........................................................................................................7

        A.      Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law...........7

                1.      Plaintiffs' State-Law Preemption Claim Is Untimely ............................7

                2.      Plaintiffs Fail to State a Preemption Claim Under State or Federal Law ......8

        B.      This Court Should Abstain from Adjudicating Plaintiffs' Claims Until the Ongoing
                State Court Enforcement Action Between the County and Hoopes Is Final ...........9

                1.      *Younger* Abstention ..........................................................................9

                        a.      Hoopes .................................................................................9

                        b.      Summit Lake and Smith-Madrone.........................................10

                2.      *Pullman* Abstention ........................................................................11

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

**TABLE OF CONTENTS (CONTINUED)**

2

**Page**

3      3.    *Colorado River* Abstention ..................................................................12

4   C.   Plaintiffs Cannot Premise *Monell* Liability on "Interpretations" by County
         Employees Who Are Not Policymakers ..............................................................13

5

6   D.   Plaintiffs' First Amendment Claims Fail as a Matter of Law ............................14

7      1.    Plaintiffs Lack Standing to Assert Their First Amendment Claims ......14

8      2.    The Land Use Regulations at Issue Do Not Directly or Inevitably Single
              out Expressive Activity.......................................................................14

9      3.    The County's Ordinances Pass Muster Under *Central Hudson* ...........15

10     4.    Plaintiffs' Facial Prior Restraint Claim Fails as a Matter of Law........17

11           a.    The County Code Provisions at Issue Are Laws of General
                   Application Not Aimed at Expressive Conduct..........................17

12

13           b.    The County's Permitting Scheme Is Not an Unlawful Prior
                   Restraint ...................................................................................18

14     5.    The County Code Does Not Infringe Plaintiffs' Right to Petition ........19

15     6.    Plaintiffs Fail to State a First Amendment Retaliation Claim. ............19

16   E.   Plaintiffs' Due Process Claim Fails as a Matter of Law....................................21

17     1.    Plaintiffs' Due Process Claims Are Time-Barred.................................21

18     2.    Plaintiffs As-Applied Due Process Claims Are Unripe.........................22

19     3.    The County Code Provisions Regulating Wineries Are Not Vague.......22

20     4.    The County's Regulations Are Neither Arbitrary Nor Arbitrarily Enforced.........24

21     5.    The County Has Not Altered Plaintiffs' Property Rights ......................25

22   F.   Plaintiffs' Non-Delegation Doctrine Claim Fails as a Matter of Law ...............26

23   G.   Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law ...........27

24     1.    Subject-Matter Jurisdiction...................................................................27

25     2.    The County's Regulations Do Not Violate the Dormant Commerce Clause ........27

26           a.    The County's Regulations Do Not Discriminate Against Commerce .......28

27           b.    The County Does Not Unconstitutionally Burden Commerce .................28

28   H.   Plaintiffs' Takings Claims Fail as a Matter of Law...........................................29

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ii-

**TABLE OF CONTENTS (CONTINUED)**

Page

1.   Plaintiffs' Facial Takings Claims Are Time-Barred ................................. 29

2.   Plaintiffs As-Applied Takings Claims Are Not Ripe ................................ 30

3.   Plaintiffs Fail to State a Viable *Nollan/Dolan* Takings Claim ................ 30

4.   Plaintiffs Fail to State a Viable Regulatory Takings Claim ..................... 32

I.   Plaintiffs' Equal Protection Claim Fails as a Matter of Law ........................ 34

1.   Plaintiffs' Facial Equal Protection Claim Is Time-Barred ....................... 34

2.   Plaintiffs' As-Applied Equal Protection Claim Is Unripe ........................ 34

3.   Plaintiffs Fail to State an Equal Protection Claim .................................. 34

J.   Plaintiffs Fourteenth Claim for Injunctive Relief Does Not State a Claim ........... 35

V.   CONCLUSION ................................................................................................ 35

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iii-

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.,*
   509 F.3d 1020 (9th Cir. 2007) ...........................................................................7, 21, 30, 34

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.,*
   744 F.3d 595 (9th Cir. 2014) .............................................................................................22

*Ajetunmobi v. Calrion Mortg. Capital, Inc.,*
   595 F. App'x 680 (9th Cir. 2014) ......................................................................................35

*Akshar Glob. Invs. Corp. v. City of Los Angeles,*
   817 F. App'x 301 ..............................................................................................................35

*Alki Partners, LP v. DB Fund Services, LLC,*
   4 Cal.App.5th 574 (2016) ..................................................................................................19

*Almodovar v. Reiner,*
   832 F.2d 1138 (9th Cir. 1987) ...........................................................................................11

*Arlington Heights v. Metropolitan Housing Dev. Corp.,*
   429 U.S. 252 (1977)..........................................................................................................24

*Armendariz v. Penman,*
   75 F.3d 1311 (9th Cir. 1996) .............................................................................................25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................................7, 25

*Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.,*
   17 Cal. 3d 785 (1976) ..................................................................................................24, 32

*B&L Productions, Inc. v. Newsom,*
   104 F.4th 108 (9th Cir. 2024) ......................................................................................14, 15

*Ballinger v. City of Oakland,*
   24 F.4th 1287 (9th Cir. 2022) ............................................................................................31

*Barancik v. Cnty. of Marin,*
   872 F.2d 834 (9th Cir. 1988) .............................................................................................25

*Benavidez v. Cnty. of San Diego,*
   993 F.3d 1134 (9th Cir. 2021) ...........................................................................................13

*Big Creek Lumber Co. v. County of Santa Cruz,*
   38 Cal. 4th 1139 (2006) ......................................................................................................8

-iv-

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Bridge Aina Le'a, LLC v. Land Use Comm'n,*
    950 F.3d 610 (9th Cir. 2020) ..................................................................................33

*Bronco Wine Co. v. Jolly,*
    129 Cal.App.4th 988 (2005) ..................................................................2, 16, 28, 29

*C-Y Development Co. v. City of Redlands,*
    703 F.2d 375 (9th Cir. 1983) ..................................................................................11

*Cal. Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.,*
    No. 120CV01294ADASAB, 2023 WL 1869010 (E.D. Cal. Feb. 9, 2023)...................34

*California Bldg. Indus. Assn. v. City of San Jose,*
    61 Cal. 4th 435 (2015) ........................................................................................1, 31

*Central Hudson v. Public Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980)..........................................................................................15, 17

*Chinatown Neighborhood Ass'n v. Harris,*
    794 F.3d 1136 (9th Cir. 2015) ................................................................................28

*Christian Gospel Church, Inc. v. City & Cnty. of San Francisco,*
    896 F.2d 1221 (9th Cir. 1990) ..........................................................................29, 35

*Citizens for Free Speech, LLC v. County of Alameda,*
    953 F.3d 655 (9th Cir. 2020) ..................................................................................9

*City of Los Altos v. Barnes,*
    3 Cal.App.4th 1193 (1992) ....................................................................................23

*Colony Cove Props., LLC v. City of Carson,*
    888 F.3d 445 (9th Cir. 2018) ..................................................................................33

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)................................................................................................12

*Columbia Basin Apartment Ass'n v. City of Pasco,*
    268 F.3d 791 (9th Cir. 2001) ............................................................................11, 12

*Courthouse News Service v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ..................................................................................11

*People ex rel. Deukmejian v. County of Mendocino,*
    36 Cal. 3d 476 (1984) ..............................................................................................8

RENNE PUBLIC LAW GROUP
Attorneys at Law

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Diamond S.J. Enterprise v. City of San Jose,*
 100 F.4th 1059 (9th Cir. 2024) ........................................................................14, 18, 19

*Dolan v. City of Tigard,*
 512 U.S. 374 (1994)..........................................................................................30, 31

*Garcia v. County of Napa,*
 No. 21-cv-03519-HSG, 2022 WL 110650 (N.D. Cal. Jan 12, 2022) ...........................31, 32

*Gearing v. City of Half Moon Bay,*
 No. 21-cv-01802-EMC, 2021 WL 4148663 (N.D. Cal. Sept. 13, 2021)......................11, 12

*Gilbertson v. Albright,*
 381 F.3d 965 (9th Cir. 2004) ....................................................................................10

*Godecke v. Kinetic Concepts, Inc.,*
 937 F.3d 1201 (9th Cir. 2019) ....................................................................................7

*Granholm v. Heald,*
 544 U.S. 460 (2005)................................................................................................28

*Healy v. Beer Inst., Inc.,*
 491 U.S. 324 (1989)................................................................................................28

*Helicopters for Agriculture v. County of Napa,*
 384 F. Supp. 3d 1035 (N.D. Cal. 2019) .......................................................................9

*Heller v. Doe by Doe,*
 509 U.S. 312 (1993)................................................................................................35

*Herrera v. City of Palmdale,*
 918 F.3d 1037 (9th Cir. 2019) ...............................................................................9, 10

*Hoehne v. County of San Benito,*
 870 F.2d 529 (9th Cir. 1989) .................................................................................22, 34

*Hoffman Bros. v. County of San Joaquin*, No. 2:20-cv-00660-TLN-AC, 2021 WL
 4429465 (E.D. Cal. Sept. 27, 2021)............................................................................22

*HomeAway.com v. City of Santa Monica,*
 918 F.3d 676 (9th Cir. 2019) ....................................................................................15

*Horn v. County of Ventura,*
 24 Cal.3d 605 (1979) ..............................................................................................26

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION          Case No. 3:24-cv-06256-CRB

1

## TABLE OF AUTHORITIES (CONTINUED)

2

**Page(s)**

3

*Huffman v. Pursue, Ltd.*,

4
    420 U.S. 592 (1975)...................................................................................................9

5
*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011) ...............................................................................14

6

*Kinzli v. City of Santa Cruz*,

7
    818 F.2d 1449 (9th Cir.), *amended*, 830 F.2d 968 (9th Cir. 1987)................................22, 34

8
*Knick v. Township of Scott*,

9
    588 U.S. 180 (2019)................................................................................22, 30

10
*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001) ..............................................................................21

11

12
*Kolstad v. County of Amador*,
    No. CIV 2:13-01279 WBS EFB, 2013 WL 6065315 (E.D. Cal. Nov. 14, 2013).............................20

13
*Konarski v. City of Tucson*,

14
    716 F. App'x 609 (9th Cir. 2017) .............................................................................35

15
*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013)....................................................................................31

16

17
*Korean American Legal Advocacy Foundation v. City of Los Angeles*,
    23 Cal.App.4th 376 (1994) ..................................................................................8

18
*Levald v. City of Palm Desert*,
    998 F.2d 680 (9th Cir. 1993) ...............................................................................30

19

20
*Lomma v. Connors*,
    539 F. Supp. 3d 1094 (D. Haw. 2021) .......................................................................11

21
*Lopez v. Candaele*,

22
    630 F.3d 757 (9th Cir. 2010) ...............................................................................14

23
*Mendocino Railway v. Ainsworth*,

24
    113 F.4th 1181 (9th Cir. 2024) .........................................................................12, 13

25
*Mobilize the Message, LLC v. Bonta*,
    50 F.4th 928 (9th Cir. 2022) ...............................................................................17

26
*Montana Environmental Information Center v. Stone-Manning*,

27
    766 F.3d 1184 (9th Cir. 2014) ................................................................................7

28

-vii-

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Morales v. City and County of San Francisco,*
603 F. Supp. 3d 841 (N.D. Cal. 2022) ...................................................................21

*Napa County v. Hoopes Family Winery Partners, L.P., et al.,*
Case No. 22CV001262 (Napa County Sup. Ct.) ......................................................5

*Nelson v. City of Selma,*
881 F.2d 836 (9th Cir. 1989) ................................................................................25

*Nollan v. Cal. Coastal Comm'n,*
483 U.S. 825 (1987)........................................................................................30, 31

*Norco Const., Inc. v. King Cnty.,*
801 F.2d 1143 (9th Cir. 1986) ..............................................................................34

*Pakdel v. City & Cnty. of San Francisco,*
594 U.S. 474 (2021) .............................................................................................30

*Palm v. Los Angeles Dep't of Water & Power,*
889 F.3d 1081 (9th Cir. 2018) ..............................................................................24

*Pearl Inv. Co. v. City & Cnty. of San Francisco,*
774 F.2d 1460 (9th Cir. 1985) ..............................................................................11

*Penn Central Transportation Co. v. City of New York,*
438 U.S. 104 (1978)..........................................................................6, 32, 33, 34

*Phillip Morris USA, Inc. v. City and County of San Francisco,*
345 F. App'x 276 (9th Cir. 2009) .........................................................................15

*Pike v. Bruce Church, Inc.,*
397 U.S. 137 (1970)........................................................................................28, 29

*R.R. Comm'n of Tex. v. Pullman Co.,*
312 U.S. 496 (1941) .............................................................................................11

*Retail Digital Network, LLC v. Prieto,*
861 F.3d 839 (9th Cir. 2017) ..........................................................................15, 17

*Rosenblatt v. City of Santa Monica,*
940 F.3d 439 (9th Cir. 2019) .......................................................................27, 28, 29

*Sacramentans for Fair Plan. v. City of Sacramento,*
37 Cal.App.5th 698 (2019) ...................................................................................35

RENNE PUBLIC LAW GROUP
Attorneys at Law

-viii-

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*San Remo Hotel v. City & Cnty. of S.F.,*
    145 F.3d 1095 (9th Cir. 1998) ....................................................................................11, 12

*Scheer v. Kelly,*
    817 F.3d 1183 (9th Cir. 2016) ....................................................................................21, 34

*Schmid v. County of Sonoma,*
    2024 WL 743774 (9th Cir. Feb. 23, 2024) ........................................................................13

*Schneider v. California Dep't of Corr.,*
    151 F.3d 1194 (9th Cir. 1998) ...........................................................................................32

*Schulz v. Milne,*
    849 F. Supp. 708 (N.D. Cal. 1994) ...................................................................................26

*Sessions v. Dimaya,*
    584 U.S. 148 (2018)...........................................................................................................23

*Sinaloa Lake Owners Ass'n v. City of Simi Valley,*
    882 F.2d 1398 (9th Cir. 1989) ...........................................................................................25

*Smelt v. County of Orange,*
    447 F.3d 673 (9th Cir. 2006) .............................................................................................11

*Smith v. County of Santa Cruz,*
    No. 20-cv-00647-BLF, 2020 WL 6318705 (N.D. Cal. Oct. 28, 2020)....................19, 20, 21

*Spargo v. N.Y. State Comm'n on Judicial Conduct,*
    351 F.3d 65 (2d Cir. 2003).................................................................................................10

*Spirit of Aloha v. Cnty. of Maui,*
    49 F.4th 1180 (9th Cir. 2022) ............................................................................................17

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) .............................................................................................26

*Talk of the Town v. Department of Finance and Business Services ex rel. City of Las Vegas,*
    343 F.3d 1063 (9th Cir. 2003) ....................................................................................15, 17

*Temple of 1001 Buddhas v. City of Fremont,*
    588 F. Supp. 3d 1010 (N.D. Cal. 2022) ..................................................................13, 26, 31

*Tichinin v. City of Morgan Hill,*
    177 Cal.App.4th 1049 (2009) ............................................................................................20

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ix-

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Tobe v. City of Santa Ana*,
9 Cal. 4th 1069 (1995) .................................................................................................24

*Travis v. Cnty. of Santa Cruz*,
33 Cal. 4th 757 (2004) ...................................................................................................8

*Tyson v. City of Sunnyvale*,
920 F. Supp. 1054 (N.D. Cal. 1996) ...........................................................................24

*Vanguard Outdoor, LLC v. City of Los Angeles*,
648 F.3d 737 (9th Cir. 2011) .......................................................................................17

*Village of Hoffman Estates v. Flipside*,
455 U.S. 489 (1982) .....................................................................................................15

*Warth v. Seldin*,
422 U.S. 490 (1975) .....................................................................................................27

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) ...............................................................................................22, 30

*Young v. Cnty. of San Mateo*,
No. C 03-05801 CRB, 2005 WL 3454106 (N.D. Cal. Dec. 16, 2005) ........................23

*Younger v. Harris*,
401 U.S. 37 (1971) .............................................................................................9, 10, 11

**Statutes**

California Business & Professions Code
§ 23200 et seq ................................................................................................................7
§ 23358(e) ......................................................................................................................8
§ 23790 ...........................................................................................................................8

California Code of Civil Procedure
§ 1094.5 ........................................................................................................................19

California Code of Regulations
tit. 24, § 1.1.8 .................................................................................................................8

California Government Code
§ 12800 .........................................................................................................................16
§ 65852 .........................................................................................................................35
§ 65905 ...........................................................................................................................3

California Environmental Quality Act ("CEQA") ...............................................................3

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

## TABLE OF AUTHORITIES (CONTINUED)

2

**Page(s)**

3

California Public Resources Code

4
    § 21000............................................................................................................................3

5

Napa County Code

6
    § 1.30.030(A) ..........................................................................................................19, 31

    § 8.20.030(H)-(J) ......................................................................................................2

7
    § 18.08.020 ..................................................................................................2, 16, 23, 26

    § 18.08.040(E) ...........................................................................................................2, 16

8
    § 18.08.170 ................................................................................................................2

    § 18.08.620 ................................................................................................................2

9
    § 18.08.640 ................................................................................................................2, 24

    § 18.12.080(C) .........................................................................................................2

10
    § 18.16.010 ...............................................................................................................2, 23

    § 18.16.010-030 .......................................................................................................2

11
    § 18.16.020-030 .......................................................................................................3

    § 18.16.020(A) .........................................................................................................2

12
    § 18.16.020(G)-(I) ...................................................................................................3

13
    § 18.16.020(H) .........................................................................................................3, 4

    § 18.16.030(F) .........................................................................................................2

14
    § 18.16.030(G)-(H) .................................................................................................2, 25

    § 18.20 et seq. ..........................................................................................................2

15
    § 18.20.010 ...............................................................................................................2, 24

16
    § 18.20.010-030 .......................................................................................................2

    § 18.20.020-030 .......................................................................................................3

17
    § 18.20.020(A) .........................................................................................................2

    § 18.20.020(H) .........................................................................................................3

18
    § 18.20.020(H)-(J) ...................................................................................................3

    § 18.20.030 ...............................................................................................................25

19
    § 18.20.030(H) .........................................................................................................2

20
    § 18.20.030(I–J) .......................................................................................................25

    § 18.104.250 .................................................................................................27, 28, 29, 31

21
    § 18.104.250(B) .......................................................................................................27, 28

    § 18.104.250(C) .......................................................................................................27

22
    § 18.124.010 ................................................................................................16, 17, 25, 32

23

Napa County Ordinances

24
    No. 511 § 1, 1976 ...................................................................................................16

    No. 629, §§ 1–2 (1980) ..........................................................................................3, 4, 16

25
    No. 947 (1990) ........................................................................................................2

    No. 947 § 1..............................................................................................................28

26
    No. 947, § 6(b) ........................................................................................................29

27

United States Code

28
    42 U.S.C. § 1983 ..........................................................................................5, 9, 13, 21

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO
DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Winery Definition Ordinance (WDO) ......................................................................2, 3, 4, 10, 23

**Other Authorities**

California Constitution
    First Amendment ...................................................................................................*passim*
    Fourteenth Amendment ...................................................................................................5

Federal Rule of Civil Procedure
    Rule 12(b)(1)...................................................................................................................7
    Rule 12(b)(6)...................................................................................................................7

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

**NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR ABSTENTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 21, 2025, at 10:00 a.m., in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Napa County (the "County" or "Defendant") will and hereby does move to dismiss Plaintiffs' First Amended Complaint ("FAC") or, in the alternative, for abstention, in this action.

The motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7-1 on the grounds that Plaintiffs fail to satisfy Article III's case or controversy requirement, assert claims that are time-barred, and fail to state a cause of action.

In the alternative, abstention is warranted under *Younger v. Harris*, 401 U.S. 37 (1971), *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because of a pending state court action between the County and Plaintiff Hoopes Vineyard LLC that squarely implicates the state law preemption issue as well as several constitutional issues.

This motion is based on this notice of motion and motion, on the accompanying memorandum of points and authorities in support of the motion, the request for judicial notice, Defendant's anticipated reply brief, and on any oral argument entertained by the Court in connection with this motion. This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection.

Dated: January 10, 2025                    RENNE PUBLIC LAW GROUP

By: /s/ *Ryan P. McGinley-Stempel*
Ryan P. McGinley-Stempel

Attorneys for Defendant
NAPA COUNTY

### ISSUES TO BE DECIDED

1. Whether Plaintiffs' claims are justiciable.

2. Whether Plaintiffs' claims are time-barred.

3. Whether Plaintiffs state a preemption claim under state or federal law.

4. Whether abstention is appropriate under *Younger v. Harris*, 401 U.S. 37 (1971), *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and/or *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), given Napa County's ongoing state court enforcement proceeding against Plaintiff Hoopes Vineyard LLC alleging nuisance and unlawful business practices in which Hoopes Vineyard LLC has (a) invoked various defenses under state and federal law and (b) cross-complained against the County and its employees for constitutional violations under 42 U.S.C. § 1983.

5. Whether Plaintiffs have adequately pleaded harm within the limitations period by a final policymaker giving rise to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6. Whether Plaintiffs state a First Amendment claim.

7. Whether Plaintiffs state a due process claim under the Fourteenth Amendment.

8. Whether Plaintiffs state a non-delegation claim under the Fourteenth Amendment.

9. Whether Plaintiffs state a Dormant Commerce Clause claim.

10. Whether Plaintiffs state a takings claim under the Fifth Amendment.

11. Whether Plaintiffs state an equal protection claim under the Fourteenth Amendment.

12. Whether Plaintiffs state a derivative claim for injunctive relief.

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S ISSUES TO BE DECIDED ON MOTION
TO DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

## SUMMARY OF THE ARGUMENT

None of Plaintiffs' claims challenging the County's land use and zoning regulations is viable.  At the outset, Plaintiffs' claims suffer from a variety of procedural flaws, and principles of abstention counsel in favor of declining jurisdiction over their claims.  What's more, the plain language of the Napa County Code ("NCC" or the "Code") and Plaintiffs' authorizing documents clearly establishes that they are not permitted to offer tours, tastings, or any other commercial services or products to the public beyond bottled wine produced on their premises.

***State and Federal Preemption.***[1]  Plaintiffs' state law preemption claim is untimely under the applicable three-year statute of limitations, as the state laws in question were enacted before September 5, 2021.  *See Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004).  In any event, Plaintiffs' state preemption claim fails on the merits because both the Alcoholic Beverage Control Act and the California Building Code contain provisions that explicitly permit more restrictive local regulation.  *See* Cal. Bus. & Prof. Code §§ 23358(e), 23790; Cal. Code Regs. tit. 24, § 1.18.  Furthermore, there is no conflict between NCC §§ 18.08.600 et seq. and the Building Code because building occupancy limits ensure safe emergency egress, while the County's land use regulations manage overall visitor volume to address land use intensity and emergency access.  Plaintiffs' vague allegations regarding "federal law" are not sufficient to state a preemption claim of a "traditional land use regulation."  *See Helicopters for Agriculture v. County of Napa*, 384 F. Supp. 3d 1035, 1040-43 (N.D. Cal. 2019).

***Abstention***.  Principles of abstention counsel in favor of dismissing Plaintiffs' claims.  Under *Younger v. Harris*, 401 U.S. 37 (1971), abstention is warranted if such an enforcement action is (1) ongoing, (2) implicates important state interests, (3) provides an adequate opportunity to raise constitutional challenges, and (4) "the federal action would have the practical effect of enjoining the state proceedings."  *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019).  Here, the County's state enforcement action against Hoopes is ongoing, involves important state interests in nuisance

---

[1] The County addresses Plaintiffs' preemption claim first because many (if not all) of their remaining claims are premised on their misapprehension of state law (*see, e.g.*, FAC ¶¶ 443–57), further illustrating why abstention is appropriate.

RENNE PUBLIC LAW GROUP
Attorneys at Law

abatement and land-use enforcement, provides an adequate opportunity for Hoopes to raise constitutional claims (evidenced by its defenses and cross-complaint in state court), and Plaintiffs' requested relief in this federal action would effectively enjoin the state court proceedings.  Although Summit Lake and Smith-Madrone are not parties to the state case, their interests are closely aligned with Hoopes, and their federal claims would similarly interfere with the state action.  Thus, abstention is warranted under *Younger*.  *See Herrera*, 918 F.3d at 1046–47; *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) (en banc); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 85 (2d Cir. 2003).

*Pullman* abstention also applies here.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  This case involves sensitive state social policy—land-use regulation—and unresolved state law issues, particularly whether the County's regulations are preempted by state law.  Given that Plaintiffs' federal claims largely turn on their state law preemption theory (*see, e.g.*, FAC ¶¶ 443–57), resolving these issues in state court could narrow or avoid Plaintiffs' constitutional claims, making federal intervention improper under *Pullman*.  *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001); *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983).

Finally, abstention is warranted under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because this federal action is duplicative of the state action, which is already well underway and will resolve the same issues.  *See Mendocino Railway v. Ainsworth*, 113 F.4th 1181, 1185– 88 (9th Cir. 2024).  Allowing this federal case to proceed would encourage forum shopping, create piecemeal litigation, and waste judicial resources.  *See id.* at 1189–92.  For these reasons, the County respectfully requests that the Court dismiss or stay this case and allow the state proceedings to conclude.

*Monell.*  The County may only be held liable under 42 U.S.C. § 1983 for constitutional violations resulting from official county policy or custom.  *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  Plaintiffs cannot establish *Monell* liability based on alleged "interpretations" made by various county employees who do not have final policymaking authority.  Courts have consistently rejected similar claims, emphasizing that actions by non-policymaking employees cannot form the basis for *Monell* liability.  *See Schmid v. County of Sonoma*, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024) (rejecting *Monell* liability based on actions of County's Director of Permit and Resource Management Department because he did not have policy-making authority).

RENNE PUBLIC LAW GROUP
Attorneys at Law

*First Amendment*.  Plaintiffs Summit Lake and Smith-Madrone lack standing to bring their First Amendment Claims as a pre-enforcement challenge because they have not alleged facts showing a "concrete intent to violate the challenged laws" or "a credible threat of enforcement."  *See Lopez v. Candaele*, 630 F.3d 757, 787, 791–93 (9th Cir. 2010).  Additionally, none of the Plaintiffs has standing to challenge the County's permitting decisions under the First Amendment because they have not alleged that they intend to apply for use permits.  *See Diamond S.J. Enterprise v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024) (no standing to challenge licensing law under First Amendment because "vague allegation[s] that [they] intend[] to apply for permits in the future [are] too speculative to meet the standing requirements").

On the merits, Plaintiffs' First Amendment Claims challenging the County's laws regarding the nature and intensity of physical land uses at wineries fail for several reasons.  First, the land use regulations at issue do not directly or inevitably single out expressive activity.  *See B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 112, 114 n.11 (9th Cir. 2024).  Nothing in the County Code precludes small wineries from marketing or advertising their products within the scope of their allowed physical uses (and thus in ways that will avoid adverse impacts) or freely in print, social, or other media.

Plaintiffs' First through Fourth Claims also fail to state a claim under *Central Hudson v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), because the speech at issue is "misleading" and does not "concern lawful activity."  *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017); *Bronco Wine Co. v. Jolly*, 129 Cal.App.4th 988, 1004–13 (2005).  Plaintiffs cannot contend that the County's restrictions impinge on protected commercial speech since their purported speech seeks to promote unlawful activity (unpermitted tours and tastings that exceed their use authorization) and misleadingly suggests it is lawful.  Furthermore, the County has a substantial interest in protecting the agricultural character of its districts, and its use permit restrictions are appropriately tailored to achieve that interest.  Plaintiffs also assert that the County's regulations of marketing events at wineries are content- and viewpoint-based.  But that is unsupported by the language of the Code, and even so, does not alter the *Central Hudson* analysis, *see Retail Digital Network, LLC*, 861 F.3d at 847–50 & n.9, or change the fact that the County's land use laws "regulate[] economic activity rather than speech," *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quotation omitted).

Plaintiffs' Third Claim, which asserts a disfavored facial challenge to an alleged prior restraint, cannot proceed against laws of general application not aimed at conduct commonly associated with expression.  Plaintiffs' facial prior restraint challenge also fails because the County's use permit requirements do not confer unbridled discretion on County officials.  *See Diamond*, 100 F.4th at 1066. The County's use permit process requires written findings and a public hearing before issuance, and permit conditions are based on a variety of factors delineated in the Code.  Once issued, standards for revoking or modifying permits are narrow, objective, and definite, and any revocation is appealable and subject to judicial review.

Nor does the County Code provision requiring permit applicants to indemnify the County infringe on Plaintiffs' right to petition because that code section only applies when an action has been brought by a third party "against the county to attack, set aside, void or annul the approval" (NCC § 1.30.030(A)) of an applicant's own permit.  *See also* NCC § 1.30.010 (articulating purpose behind this provision).

Finally, Plaintiffs' conclusory allegations that they have been retaliated against by the County for exercising their right to petition (Thirteenth Claim) are not only entirely baseless but also fail to state a claim.  As one Court has explained, "the County code enforcement team cannot be expected to forego enforcing the County Code as to [Plaintiffs] simply because [one of them] was involved in a prior code enforcement administrative hearing."  *Smith v. County of Santa Cruz*, No. 20-cv-00647-BLF, 2020 WL 6318705, *at 11 (N.D. Cal. Oct. 28, 2020).  Even "threats and harsh words … do not support a retaliation claim."  *Kolstad v. County of Amador*, No. CIV 2:13-01279 WBS EFB, 2013 WL 6065315, at *5 (E.D. Cal. Nov. 14, 2013) (quotation omitted) ("[T]he County's correspondence … notifies plaintiffs only that the County would not sign plaintiffs' letter, details plaintiffs' alleged code violations and how to remedy the violations, and warns of action by the County Code Enforcement department if the violations are not rectified.").

***Due Process***.  Plaintiffs' Fifth Due Process cause of action involves three theories: (1) that the County's zoning regulations for wineries are unconstitutionally vague, (2) the land use regulations are arbitrary or arbitrarily enforced, and (3) the County has interfered with Plaintiffs' property rights in violation of due process.  Each fails for the following reasons:

To the extent this claim asserts an as-applied challenge to the County's land use regulations, it is

RENNE PUBLIC LAW GROUP
Attorneys at Law

not ripe because Plaintiffs have not obtained final decisions from the County regarding their properties. *See Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989) ("This court has held that the final decision requirement is applicable to substantive due process and equal protection claims brought to challenge the application of land use regulations"), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th Cir.), *amended*, 830 F.2d 968 (9th Cir. 1987) (plaintiffs must first obtain final decisions regarding the application of the regulations to their property and the availability of variances before their due process claim is ripe).

If Plaintiffs' as-applied Due Process claim is ripe, then it is time-barred because the alleged injury to their property rights would have occurred well outside the statute of limitations period. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026–27 (9th Cir. 2007) ("Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury"). To the extent Plaintiffs assert a facial due process challenge, that claim is also time-barred. *See id.* at 1026–27 (rejecting facial substantive due process claim involving real property as untimely); *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016) (explaining that "[a]fter a law is enacted, the price of the property is affected, and downstream purchasers of the property will pay less for the property because of the alleged taking" and recognizing that "this logic from the takings context 'applies with equal force' to the claimed deprivation of a property right in violation of substantive due process" (quoting *Action Apartment*, 509 F.3d at 1027)).

Putting aside the procedural hurdles for this claim, it fails on the merits. The County Code provides sufficient definitions and guidance for permitted uses, including definitions for the terms "small winery," "tours and tastings," "agriculture," and "accessory use." *See Young v. Cnty. of San Mateo*, No. C 03-05801 CRB, 2005 WL 3454106, at *5 (N.D. Cal. Dec. 16, 2005) ("The law does not require a municipal ordinance to include definitions. The question is whether those terms, as used in [the ordinance], are sufficiently clear that a person of ordinary intelligence would know what is prohibited"). The County's regulations are especially clear when considered in the broader context of the Agricultural Districts' legislative purpose, ensuring agricultural preservation and restricting incompatible uses. *See Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1107-08 (1995).

Plaintiffs' claim that the regulations are arbitrary fails because they lack a vested property interest

RENNE PUBLIC LAW GROUP
Attorneys at Law

in specific zoning designations.  *See Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 796

(1976); *Tyson v. City of Sunnyvale*, 920 F. Supp. 1054, 1061 (N.D. Cal. 1996).  Furthermore, the

County's regulations and enforcement actions are rationally related to public health, safety, and welfare,

aiming to preserve agriculture, open space, and neighborhood character.  *See Barancik v. Cnty. of Marin*,

872 F.2d 834, 837 (9th Cir. 1988) (County zoning plan for an agricultural corridor was not irrational);

*Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989) (preservation of neighborhood character and

integrity are legitimate purposes).  Plaintiffs do not allege any facts demonstrating that the County's

actions are clearly arbitrary or unreasonable.

   Plaintiffs misinterpret the County Code by claiming entitlement to certain uses without permits.

The Code explicitly requires permits for expanded uses, such as tastings, tours, or events, and limits

accessory uses to those subordinate to primary agricultural use.  *See* NCC §§ 18.08.040(H)(1);

18.08.600(C); 18.16.020; 18.16.030; 18.20.020; 18.20.030.  Plaintiffs' land use rights remain unchanged

since their establishment decades ago.  Revisions to the County's Winery Database, which is simply a

reference tool that does not have the force of law, did not alter their land use entitlements.

   ***Non-Delegation.***  Plaintiffs' Sixth Claim alleging unconstitutional delegation fails because

Plaintiffs fail to identify the ordinance or policy under which the County allegedly delegates authority to

third parties.  Instead, Plaintiffs vaguely suggest public involvement in the use permit process, which is

required by state law and the due process rights of neighboring property owners, amounts to delegation in

some way.  *See Horn v. County of Ventura*, 24 Cal.3d 605, 614–16 (1979); *Temple of 1001 Buddhas v.

City of Freemont*, 588 F. Supp. 3d 1010, 1024–25 (N.D. Cal. 2022) (conclusory allegations do not

establish official policy under *Monell*).

   ***Dormant Commerce Clause***.  Plaintiffs' do not have standing to bring their Dormant Commerce

Clause claims because they are not subject to the requirements of County Code section 18.104.250,

which they allege violates the Dormant Commerce Clause.  *See Warth v. Seldin*, 422 U.S. 490, 504

(1975) (finding petitioners lacked standing to assert Dormant Commerce Clause claim where not subject

to the challenged ordinance and failed to allege an injury).  The requirements of County Code

section 18.104.250 would only apply to Plaintiffs' pre-WDO wineries if they increase their wine

production as a result of an "expan[sion] beyond their winery development areas," which Plaintiffs have

-xx-

NAPA COUNTY'S SUMMARY OF ARGUMENT ISO MOTION TO
DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION                    Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

not done and cannot do without obtaining the appropriate permits.  *See* NCC § 18.104.250(C).

Regardless, Plaintiffs' Dormant Commerce Clause claims fail on the merits because County Code section 18.104.250, which requires post-WDO wineries to use at least 75% Napa-grown grapes in their wine production, does not directly discriminate against interstate commerce, as it applies only to in-county wineries and regulates land use rather than commercial activities like pricing or shipment of goods.  *See Bronco Wine Co.*, 129 Cal.App.4th at 1022.  The regulation's purpose is to preserve Napa's agricultural land and prevent wineries from becoming primarily processing facilities rather than vineyards, which is a legitimate land use concern, not economic protectionism.

Additionally, the regulation does not impose an unconstitutional burden on interstate commerce under *Pike*.  Plaintiffs' claims of excessive burdens are conclusory and unsupported by specific facts.  *See Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019).  The 75% rule ensures that Napa's wineries remain tied to local agricultural preservation, protecting the County's agricultural character and preventing processing from overtaking grape cultivation.  This supports the County's legitimate interest in protecting its rural economy, scenic landscapes, and agricultural heritage.  The local benefits of vineyard preservation, including environmental conservation and economic sustainability, outweigh any incidental burden on interstate commerce.  *See Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990), *superseded on other grounds by* 42 U.S.C. § 2000e; *Bronco Wine Co.*, 129 Cal.App.4th at 1022–28.

***Takings***.  As an initial matter, just as with their Due Process claim, to the extent Plaintiffs' takings claims assert as-applied challenges to the County's land use regulations, they are unripe because Plaintiffs have not obtained final decisions from the County regarding their properties.  *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019).  To the extent that that Plaintiffs assert facial takings challenges, those claims are also time-barred.  *See Levald v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993); *Action Apartment*, 509 F.3d at 1026–27; *Scheer*, 817 F.3d at 1187.

With respect to the merits, Plaintiffs fail to state viable *Nollan/Dolan* or regulatory takings claims.  Under *Nollan/Dolan*, a taking occurs only when a government unconstitutionally conditions a use permit on the conveyance of property rights, which Plaintiffs fail to allege.  *See California Bldg.*

*Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 460 (2015).  Plaintiffs' general allegations of "exorbitant costs" and an "exaction policy" fail to state a claim under *Monell* because they are conclusory and lack factual support.  *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024-1025. Additionally, Plaintiffs' allegations regarding Summit Lake's road improvement are unripe, time-barred, and fail to demonstrate disproportionality.

Plaintiffs' regulatory takings claim under *Penn Central* also fails because Plaintiffs have no vested property interest in the alleged uses, such as tours or tastings, as these activities exceed their existing permits.  *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).  The County's regulations, enacted for public welfare and environmental protection, have not removed any value from Plaintiffs' properties within the statute of limitations period.  *See Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).  Plaintiffs' allegations regarding changes to the County's Winery Database are irrelevant because the database is simply a reference tool that does not have the force of law and has no effect on Plaintiffs' property rights.

**Equal Protection**.  For the same reason as their takings and due process claims, Plaintiffs' Equal Protection Claim is unripe (to the extent it is as-applied) or time-barred (to the extent it is a facial challenge).  *See Kinzli*, 818 F.2d at 1455 ("The Kinzlis' equal protection claim therefore is not ripe, just as their taking claim is not ripe."); *Cal. Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *9 & n.8 (E.D. Cal. Feb. 9, 2023) (explaining that when the "same principle concerning the single harm underlying a takings claim extends to" other constitutional claims "involving property," it is "appropriate to apply the enactment accrual rule" (citing *Scheer*, 817 F.3d at 1187 and *Action Apartment*, 509 F.3d at 1026)).

On the merits, this claim fails because their allegation that the County lacks a rational basis for distinguishing between large and small wineries is conclusory and unsupported.  The County's zoning ordinances uniformly regulate wineries, serving the legitimate interest of preserving the rural character and limiting non-agricultural impacts in the Agricultural Districts.  *See Christian Gospel Church, Inc.*, 896 F.2d at 1225.

**Injunctive Relief**.  Plaintiffs' Fourteenth Claim for injunctive relief is not a "case" or "controversy" because "[d]eclaratory and injunctive relief are remedies, not causes of action."

1    *Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S SUMMARY OF ARGUMENT ISO MOTION TO
DISMISS FAC OR, IN THE ALTERNATIVE, FOR ABSTENTION          Case No. 3:24-cv-06256-CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       Plaintiffs' effort to replead their claims remains a misguided attempt to avoid compliance with

4   longstanding and quintessentially local land use regulations that protect the agricultural character of Napa

5   County and the health, safety, and welfare of its residents.  For years, Plaintiff Hoopes Vineyard LLC

6   ("Hoopes") has operated its agricultural property in direct contravention of its Small Winery Certificate

7   of Exemption ("SWE")—which allows it to process grapes and sell bottled wine without a use permit—

8   by offering tours, tastings, food service, and wine-related merchandise sales without first obtaining a use

9   permit.  Despite knowing that its SWE did not authorize these hospitality activities, Hoopes made no

10  effort to secure the required permits, choosing instead to flout the law in pursuit of illegitimate gain.  In

11  2022, the County brought a nuisance abatement action against Hoopes and its affiliates.  On

12  November 13, 2024, the Superior Court found, after an 11-day bench trial, that Hoopes unlawfully

13  expanded its business beyond the uses entitled by its SWE, that the County's regulations and

14  enforcement action did not violate Hoopes' constitutional rights, and that state law did not preempt the

15  County's regulations.

16      Hoopes has filed this action as a collateral attack on the ongoing state court proceeding.  Plaintiffs

17  Summit Lake Vineyards & Winery LLC ("Summit Lake") and Cook's Flat Associates dba Smith-

18  Madrone ("Smith-Madrone"), who also operate wineries with limited entitlement to hospitality uses and

19  unsuccessfully moved to intervene in the state court proceeding, join Hoopes in this challenge to the

20  well-established principle that "so long as a land use restriction or regulation bears a reasonable

21  relationship to the public welfare, the restriction or regulation is constitutionally permissible." *California

22  Bldg. Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 455 (2015) (citing state and federal cases).

23      Plaintiffs' laundry list of claims not only suffers from a variety of procedural flaws—including

24  non-justiciability and untimeliness—but also lacks legal merit, failing to state a cognizable legal theory

25  or allege sufficient facts to support any plausible claim for relief.  And regardless, given that the relief

26  they seek here turns in large part on an issue of state law and would have the practical effect of enjoining

27  the state court action, principles of abstention counsel against permitting their claims to proceed.

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Napa County's Agricultural Districts and Land Use Regulations Related to Wineries

Plaintiffs' properties are located in either the County's Agricultural Preserve ("AP") or the Agricultural Watershed ("AW") zoning districts (collectively, the "Agricultural Districts"). *See* Napa County Code ("NCC" or the "Code") §§ 18.16 et seq. (AP District); *id*. §§ 18.20 et seq. (AW District). These zoning districts were created to encourage agriculture as the highest and best land use in the fertile areas of the Napa Valley and to protect its watershed. *See id.* §§ 18.16.010, 18.20.010. Napa Valley has become one of the world's premier wine-making regions since the creation of the Agricultural Districts. *See Bronco Wine Co. v. Jolly*, 129 Cal.App.4th 988, 1008 & n.12 (2005).

The Code allows specific uses in the Agricultural Districts, some requiring a use permit, others not. *See* NCC §§ 18.16.010–030, 18.20.010–030. Under the County's permissive zoning code, any use of the land that is not specifically allowed is prohibited. *See id.* § 18.12.080(C). Prohibited uses, without a permit, include any "use that involves the exchange of cash, goods or services, barter, forgiveness of indebtedness or any other remuneration in exchange for goods, services, lodging, meals, entertainment in any form, or the right to occupy space over a period of time." *Id.* § 18.08.170. However, the sale of agricultural products grown, raised, or produced on-site is an agricultural use permitted in the Agricultural Districts without a permit. *Id.* §§ 18.16.020(A), 18.20.020(A), 18.08.040(E).

In 1990, the County overhauled its winery regulations by enacting the Winery Definition Ordinance ("WDO"). Dkt. 43-26, Ord. No. 947 (1990). The WDO prospectively redefined and clarified the uses allowed in association with all wineries operating in the Agricultural Districts. *See id.* §§ 9–14. Wineries are an allowed use in the Agricultural Districts, "but only upon grant of a use permit." NCC §§ 18.16.030(F), 18.20.030(H). A "winery" is defined as an "agricultural processing facility" used to produce wine, and it may sell the wine it produces at the winery on-site. *Id.* § 18.08.640. The Code allows certain limited uses "in connection with" and "accessory" to permitted wineries, including offering tours and tastings. *Id.* §§ 18.16.030(G)–(H), 18.20.030(H)–(J); *see also id.* § 18.08.620 ("Tours and tastings"). The only allowed accessory uses for a winery are those enumerated in the zoning regulations, which all require a use permit. *Id.* § 18.08.020.

When a use permit is sought, California law and local ordinances require a public hearing and

-2-

1   extensive administrative consideration of the impacts of the proposed use, including review under the

2   California Environmental Quality Act ("CEQA").  *See* Cal. Pub. Res. Code §§ 21000 et seq.  This is to

3   ensure that the property is an appropriate place for a proposed use that could possibly have substantial

4   impacts on the health, safety, and welfare of the community.  *See* Cal. Gov. Code § 65905; NCC

5   §§ 18.124.040 & 060–070.

6           However, the WDO allowed existing small wineries operating under an historically issued SWE

7   and certain other historically approved wineries to continue operating without further approval, but only

8   as to their previously authorized, legally established uses.  Dkt. 43-26, § 10, 13; NCC §§ 18.16.020(G)–

9   (I), 18.20.020(H)–(J).  Under the Code, a "small winery" has a maximum production capacity of 20,000

10  gallons per year and "does not conduct public tours, provide wine tastings, sell wine-related items or hold

11  social events of a public nature."  NCC § 18.08.600; *see also* Dkt. 43-24, Ord. No. 629, §§ 1–2 (1980).

12  To continue their operations after the WDO, small wineries must operate "in conformance with the

13  applicable certificate of exemption" for that winery.  NCC §§ 18.16.020(H), 18.20.020(H).  Public tours,

14  wine tastings, sale of items that are not agricultural products grown, raised, or produced on the premises,

15  and public events are all prohibited uses for small wineries operating solely with a certificate of

16  exemption, although they are allowable with a use permit.  *See id*. §§ 18.16.020–030, 18.20.020–030.

17  **B.     Plaintiffs' Authorizing Land Use Documents and Associated Entitlements**

18          Throughout the FAC, Plaintiffs refer to "existing entitlements" that are contradictory to the

19  entitlements established by their authorizing land use documents attached and incorporated into the FAC.

20  Below is a description of each plaintiff's authorizing document and its associated entitlements.

21          **1.     Hoopes**

22          Hoopes is located in the AP District and operates a winery pursuant to a SWE obtained in 1984

23  by its predecessor in interest, C.B. Coleman.  FAC ¶¶ 30–31; *see* Dkt. 43-1 at 2.[2]  Hoopes, like all small

24  wineries since the enactment of the authorizing ordinance in 1980, is not permitted to "conduct public

25  tours, provide wine tastings, sell wine-related items or hold social events of a public nature."  *See* Ord.

26  No. 629, §§ 1–2 (1980); NCC § 18.08.600.  Hoopes's SWE indicates that the predecessor in interest

27

28  _____

[2] Unless otherwise noted, all page citations correspond to the blue ECF stamp in the top right corner.

RENNE PUBLIC LAW GROUP
Attorneys at Law

anticipated no daily or weekly visitors. *See* Dkt. 43-1 at 2. Pursuant to this SWE's list of "Operating Features," Hoopes is permitted to operate a small winery, which includes the "crushing," "fermentation," "storage/aging," "bottling/packaging," and "shipping" of grapes and wine. *Id*. Hoopes may sell the wine it produces on the premises. NCC §§ 18.16.020(A), 18.08.040(E). The sale of any other products or services on the property, including tastings and tours, is not "in conformance with the applicable certificate of exemption." *See id*. § 18.16.020(H); Dkt. 43-24.

### 2.    Summit Lake

Summit Lake is located in the AW District and operates a winery pursuant to a SWE obtained in 1984 by its predecessor in interest, Robert J. Brakesman. FAC ¶¶ 80–81; *see* Dkt. 43-12 at 2. Similar to Hoopes, Summit Lake is not permitted, and has never been permitted, to "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." *See* Ord. No. 629, §§ 1–2 (1980); NCC § 18.08.600. Summit Lake's SWE indicates that the predecessor in interest anticipated two visitors per week. *See* Dkt. 43-24 at 2. Summit Lake's SWE application includes a letter from the predecessor in interest, dated February 23, 1984, which states, "The winery will not conduct public tours, and will not attract the public by offering wine tasting etc." *Id*. at 9. Pursuant to this SWE's list of "Operating Features," Summit Lake is permitted to operate a small winery, which includes the "crushing," "fermentation," "storage/aging," "bottling/packaging," and "shipping" of grapes and wine. *Id*. at 2. Summit Lake may sell the wine it produces on the premises. NCC §§ 18.20.020(A), 18.08.040(E). The sale of any other products or services on the property, including tastings and tours, is not "in conformance with the applicable certificate of exemption." *See id*. § 18.20.020(I).

### 3.    Smith-Madrone

Smith-Madrone is located in the AW District and operates a winery pursuant to a use permit issued by the County on October 24, 1973. FAC ¶¶ 130–132; *see* Dkt. 43-19. Unlike Hoopes and Summit Lake, Smith-Madrone does not operate pursuant to a SWE and is permitted to operate a winery and related accessory uses "provided, that no expansion of uses or structures beyond those which were authorized by a use permit or modification of a use permit issued prior to the effective date of [the WDO (01/23/1990)]." *See* NCC § 18.20.020(J). Smith-Madrone's use permit provides, "The winery will not provide public tasting facilities. Private arrangements will be required to visit the winery." Dkt. 43-19 at

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   3, ¶ 6.  The permit also lists as a condition of approval: "Wine tasting be limited to a private, invitational

2   only, basis.  Any consideration of public tasting facilities shall require submission of a written request for

3   modification of this condition."  *Id.* at 4, ¶ 7.  Smith-Madrone may sell the wine it produces on the

4   premises and offer wine tasting on a private, invitation only basis.  NCC §§ 18.20.020(A), (J),

5   18.08.040(E); Dkt. 43-19 at 3–4.  The sale of any other products or services, including public tastings

6   and tours that do not require "private arrangements" are not uses "which were authorized by a use permit

7   or modification of a use permit issued prior to the effective date of the ordinance."  NCC § 18.20.020(J).

8   **C.    Napa County's Enforcement Action Against Hoopes Winery**

9       On October 20, 2022, Napa County filed a state enforcement action against Hoopes and its related

10  entities.  *Napa County v. Hoopes Family Winery Partners, L.P., et al.*, Case No. 22CV001262 (Napa

11  County Sup. Ct.).  As reflected in the operative Second Amended Complaint filed on December 22, 2023

12  ("SAC"), the County alleged two causes of action: (1) public nuisance per se and (2) unfair business

13  practices.  *See* Dkt. 43-27.  Instead of a small wine production facility, as contemplated by its SWE,

14  Hoopes had transformed its property into a hospitality operation offering tours, tastings, food service, and

15  wine-related merchandise sales without the necessary permits.  *See* Dkt. 43-27.  The SAC alleges that

16  Hoopes's operations are unlawful and a nuisance because they exceed the uses granted by its SWE.  *See*

17  Dkt. 43-27.  Hoopes invoked defenses under the federal constitution and state law preemption in its

18  answer and cross-complained against the County, alleging various state and federal claims pursuant to 42

19  U.S.C. § 1983, including violations of the First and Fourteenth Amendments.  *See* Napa County's

20  Request for Judicial Notice ("RJN"), Ex. A, Answer to SAC filed March 22, 2024; Ex. B, Second

21  Amended Cross-Complaint filed May 15, 2023 ("SACC").  In September 2023, both Summit Lake and

22  Smith-Madrone filed motions to intervene, which the Court denied.  Dkt. 43-17.

23      The Superior Court bifurcated the trial, such that the County's equitable claims would be tried in

24  "Phase I," deferring adjudication of Hoopes' cross-claims to a "Phase II."  The Superior Court held an

25  11-day bench trial on Phase I in January 2024, with additional briefing submitted through July 23, 2024.

26  On November 13, 2024, the Superior Court rendered a 19-page statement of decision (the "Decision").

27  RJN, Ex. C.  The Decision rules in the County's favor on both its public nuisance and unlawful business

28  practice claims.  In its decision, the Superior Court specifically addressed and rejected Hoopes's Due

RENNE PUBLIC LAW GROUP
Attorneys at Law

Process, Equal Protection, and Preemption defenses.  RJN, Ex. C at 14–17.  The Superior Court "found that Hoopes violated its SWE by expanding its uses outside its entitlements and NCC, sections 15.12.010 (building permits), 16.04.560 (floodplain permits), and 18.08.600 (tours, tastings, wine-related sales, social events)" and found "that the County has proven its first cause of action for Public Nuisance against all defendants."  *Id.* at 18.  The Superior Court also found "Hoopes unlawfully expanded its business without approval through the County's permit process."  In light of the Superior Court's findings and conclusions, it directed the County to submit supplemental briefing that addressed "(1) the scope of the injunction requested; (2) the damages requested; and (3) its request for attorneys' fee and costs."  *Id.* at 19.  Pursuant to the court's order the County submitted its supplemental briefing on December 13, 2024. The case is ongoing and is set to move into Phase II, if the Superior Court decides that there is anything left of Hoopes's claims to adjudicate.

### D.    Allegations in the FAC

Plaintiffs' First through Fourth and Thirteenth Claims ("First Amendment Claims") assert facial and as-applied challenges alleging the County's land use regulations prohibit and restrict expressive and commercial speech, including their ability to host events, in violation of the First Amendment.  FAC ¶¶ 442, 459, 463–71, 481–501, 502–19.  In addition, the Plaintiffs' Thirteenth Claim alleges that the County has issued citations and engaged in "undercover entrapment operations" in retaliation to the Plaintiffs' litigation against the County.  *Id.* ¶¶ 755–91.  The Fifth and Sixth Claims ("Due Process Claims") assert facial and as-applied due process challenges alleging the County Code is vague, arbitrarily enforced, and that the process for modifying use permits is excessively expensive, time-consuming, and violates the non-delegation doctrine.  *Id.* ¶¶ 525, 533, 552, 580–88.  The Seventh and Eighth Claims ("Dormant Commerce Clause Claims") allege that the County's requirement that wineries in the Agricultural Districts produce wine using at least 75% grapes grown within the County violates the Dormant Commerce Clause ("DCC").  *Id.* ¶¶ 589–627.  The Ninth and Tenth Claims ("Takings Claims") assert regulatory takings claims under *Nollan*/*Dolan* and *Penn Central*.  *Id.* ¶¶ 628–72.  The Eleventh Claim alleges the County's zoning regulations violate equal protection by differentiating between a "winery," "small winery," and "micro-winery."  *Id.* ¶¶ 673–95.  The Twelfth Claim asserts that the County Code is preempted by state and federal law.  *Id.* ¶¶ 696–754.  Finally, the Fourteenth Claim lays

RENNE PUBLIC LAW GROUP
Attorneys at Law

-6-

1   out Plaintiffs' case for injunctive relief without alleging additional causes of action or facts.  *Id.* ¶ 792.

2   **III.   LEGAL STANDARD**

3      ***Rule 12(b)(1).***  To establish Article III standing, "[a] plaintiff must show (1) it has suffered an

4   'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

5   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

6   likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

7   *Montana Environmental Information Center v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014).

8   (quotations omitted).  "A dispute is ripe in the constitutional sense if it presents concrete legal issues,

9   presented in actual cases, not abstractions."  *Id.* at 1188–89 (quotations omitted).

10     ***Rule 12(b)(6).***  A complaint may be dismissed under Rule 12(b)(6) when it lacks a "cognizable

11  legal theory" or "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.*, 937

12  F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on

13  whether it pleads enough facts to "allow[] the court to draw the reasonable inference that the defendant is

14  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

15  **IV.   ARGUMENT**

16     **A.   Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law[3]**

17     Plaintiffs' Twelfth Claim alleges that NCC §§ 18.08.600 et seq. conflicts with provisions of the

18  Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code §§ 23200 et seq.) allowing licensed

19  winegrowers to serve food, wine, and beer for on-premises consumption without appointments.  FAC

20  ¶¶ 722, 725.  Plaintiffs assert that the California Building Code uniform occupancy load requirements

21  preempt the County's restrictions on the number of visitors a winery may host.  *Id*. ¶¶ 737–42.

22  Additionally, Plaintiffs allege that "[f]ederal law" preempts Napa County regulations without identifying

23  any federal statutes or conflicting County regulations.  *See id*. ¶¶ 743–44.  Each of these claims fails.

24     **1.   Plaintiffs' State-Law Preemption Claim Is Untimely**

25     Claims that local ordinances are preempted by later enacted state statutes are subject to a three-

26

27  [3] The County addresses the preemption claim first because many (if not all) of Plaintiffs' remaining
    claims are premised on their misapprehension of state law, which also underscores why abstention is
28  appropriate.

RENNE PUBLIC LAW GROUP
Attorneys at Law

NAPA COUNTY'S MEM. ISO MOTION TO DISMISS FAC
OR, IN THE ALTERNATIVE, FOR ABSTENTION                    Case No. 3:24-cv-06256-CRB

year limitations period. *Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004). Here, the state laws at issue (*see* FAC ¶¶ 699-741) were enacted before September 5, 2021, making this claim untimely.

**2.     Plaintiffs Fail to State a Preemption Claim Under State or Federal Law**

"[W]hen local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, California courts will presume, *absent a clear indication of preemptive intent from the Legislature*, that such regulation is not preempted." *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006) (as modified Aug. 20, 2006) (emphasis added).

Here, the Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code § 23358(e)) provides:

> Nothing in this section or in Section 23390 is intended to alter, diminish, replace, or eliminate the authority of a county, city, or city and county from exercising land use regulatory authority by law to the extent the authority may restrict, but not eliminate, privileges afforded by these sections.

This provision expresses the Legislature's intent to permit local regulation. *See People ex rel. Deukmejian v. County of Mendocino*, 36 Cal. 3d 476, 485 (1984) (preemption "may not be found when the Legislature has expressed its intent to permit local regulations"). Although NCC § 18.08.600(C) provides that a small winery cannot "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature," Plaintiffs are not prohibited from applying for a use permit to conduct those activities or opening a restaurant to provide those services outside of the Agricultural Districts. *See id.* § 18.16.030(H)(1) and (4). This is a permissible land use restriction allowed by Bus. & Prof. Code § 23358(e) and § 23790, not an elimination of a privilege in conflict with the statute.

Additionally, section 23790 of the Alcoholic Beverage Control Act provides that "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city." The Act's plain language shows that the Legislature did not intend to preempt local zoning ordinances. *See also Korean American Legal Advocacy Foundation v. City of Los Angeles*, 23 Cal.App.4th 376, 393 (1994) ("it is clear the Legislature did not intend for [the Act] to preempt local zoning regulations").

Similarly, conditioning use permits with limits on the volume of visitors does not conflict with the Building Code, which permits local governments "to establish more restrictive and reasonably necessary differences." Cal. Code Regs. tit. 24, § 1.1.8. Building occupancy limits set a maximum

-8-

threshold to ensure safe egress from the structure in emergencies.  *See id.* §§ 1.1.2, 1004.1.  In contrast, the County's land use regulations restrict the volume of visitors to the property overall, addressing various impacts resulting from the intensity of the use.  *See* NCC §§ 18.16.010, 18.124.060(A).

Finally, Plaintiffs' vague allegations regarding "federal law" are not sufficient to state a preemption claim of a "traditional land use regulation."  *See Helicopters for Agriculture v. County of Napa*, 384 F. Supp. 3d 1035, 1040-43 (N.D. Cal. 2019).

**B.      This Court Should Abstain from Adjudicating Plaintiffs' Claims Until the Ongoing State Court Enforcement Action Between the County and Hoopes Is Final**

**1.      *Younger* Abstention**

A "state nuisance enforcement action brought by [a] City against [landowners] is a civil enforcement proceeding within the scope of the *Younger* doctrine," *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043–44 (9th Cir. 2019), which is grounded in a "longstanding public policy against federal court interference with state court proceedings," *Younger v. Harris*, 401 U.S. 37, 43 (1971).  *See also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).  Abstention is warranted if such an enforcement action is (1) ongoing, (2) implicates important state interests, (3) provides an adequate opportunity to raise constitutional challenges, and (4) "the federal action would have the practical effect of enjoining the state proceedings."  *Herrera*, 918 F.3d at 1044.  All four elements are present here.

**a.      Hoopes**

The County's abatement action against Hoopes is (1) ongoing and (2) implicates an important state interest in "nuisance abatement," *Herrera*, 918 F.3d at 1045, and "the County's strong interest in its land-use ordinances," *Citizens for Free Speech, LLC v. County of Alameda*, 953 F.3d 655, 658 (9th Cir. 2020) (quotations omitted).  The state court action also (3) "allowed [Hoopes] adequate opportunity to raise its federal challenges," *id.* at 657, as evidenced by the fact that Hoopes raised several constitutional claims in defense to the County's operative pleading and in its own cross-complaint against the County under 42 U.S.C. § 1983.  *See* RJN, Exs. A & B (answer and cross-complaint), Ex. C at 2, 14, 16–17 (discussing cross-complaint and analyzing preemption, equal protection, and due process defenses); *see also Herrera*, 918 F.3d at 1046 ("the Herreras have pointed to no other reason why the state action defendants could not raise their federal constitutional claims in the enforcement proceeding").

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    As to the fourth element, (4) Plaintiffs have asked this Court to declare that many of the same

2    laws the County is seeking to enforce in the ongoing state court action are unlawful, award damages

3    based on those determinations, and "[e]njoin Napa County, its employees, officers, and agents, from

4    enforcing" those laws.  *Compare* FAC ¶¶ 480, 492, 501, 519, 579, 588, 618, 627, 660, 672, 695, 754,

5    797, *with* Dkt. 43-27, ¶ 3 & at 19 (SAC Prayer), *and* RJN, Ex. C at 12, 14–15, 18 (statement of decision).

6    If this Court were to enjoin the County from enforcing the same laws at issue in the state court action,

7    declare that such laws are void—either on their face or as applied to Hoopes—and/or award damages

8    based on any such determinations, then it would have the practical effect of enjoining the state action.

9    *See Herrera*, 918 F.3d at 1046; *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) (en banc).

### b.    Summit Lake and Smith-Madrone

11    Although Summit Lake and Smith-Madrone are not parties to the County's abatement action, the

12    Ninth Circuit has recognized that "parties with a sufficiently close relationship *or sufficiently intertwined*

13    *interests* may be treated similarly for purposes of *Younger* abstention."  *Herrera*, 918 F.3d at 1047

14    (quotations omitted) (emphasis added) (citing cases, including *Spargo v. N.Y. State Comm'n on Judicial*

15    *Conduct*, 351 F.3d 65 (2d Cir. 2003)).  Here, using the same counsel as Hoopes in the state court action

16    (Katharine Falace of Buchalter), Summit Lake and Smith-Madrone sought to intervene in the state court

17    action.  Dkt. 43-17, ¶ 6.  The state court denied intervention because even if Hoopes, Summit Lake, and

18    Smith-Madrone shared the same "Determination Interest"—that is, the "interest for a determination that

19    small wineries, established and in operation prior to enactment of the WDO, are allowed to conduct

20    tastings, sales, and marketing events without limitation by the WDO or subsequent legislation because

21    those activities were lawful when their respective permitting documents were established and have not

22    been abandoned"—"that interest is adequately represented by Hoopes."  Dkt. 43-17 at 4–5, 10; *see*

23    *Spargo*, 351 F.3d at 85 (applying abstention to third parties where there was "no suggestion that [the

24    party] would fail to adequately represent [their] interests in the state disciplinary proceeding").  And just

25    as in *Herrera*, "[t]he federal claims of [Summit Lake and Smith Madrone] present the same risk of

26    interference in the state proceeding as do the federal claims of [Hoopes]—indeed all the federal plaintiffs

27    seek the same relief from the state court proceedings."  *Herrera*, 918 F.3d at 1047.

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

-10-

## 2.    *Pullman* Abstention

Under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), abstention is appropriate where (1) the case touches sensitive state social policy; (2) a ruling by the state court could narrow or avoid the Constitutional claims, and (3) the possibly determinative issue of state law is uncertain. *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983).  Each element is present here.

*First*, the Ninth Circuit has consistently "held that land-use planning questions touch a sensitive area of social policy into which the federal courts should not lightly intrude." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (quotations omitted); *San Remo Hotel v. City & Cnty. of S.F.*, 145 F.3d 1095, 1105 (9th Cir. 1998) (same).[4]

*Second*, the state court's resolution of Hoopes' preemption claim could narrow or avoid Plaintiffs' constitutional challenges here since their constitutional claims are largely premised on their state preemption claim.  *See, e.g.*, FAC ¶¶ 443–57.  Courts have explained that "it is enough that the state court determination may obviate, in whole *or in part*, or *alter the nature of* the federal constitutional questions."  *C-Y Development Co.*, 703 F.2d at 379; *Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1464 (9th Cir. 1985) ("Pearl's complaint does not raise independent state law claims; the due process claims, however, are framed in terms of violations of state law"); *Gearing v. City of Half Moon Bay*, No. 21-cv-01802-EMC, 2021 WL 4148663 at *7 (N.D. Cal. Sept. 13, 2021) ("The narrowing of the federal constitutional claim satisfies the second *Pullman* factor.").

*Third*, the state law issues are uncertain because the County's regulations have not previously

---

[4] To be sure, the Ninth Circuit has explained that "*Pullman* abstention is generally inappropriate when First Amendment rights are at stake."  *Courthouse News Service v. Planet*, 750 F.3d 776, 784 (9th Cir. 2014).  But Plaintiffs' First Amendment claims are premised on their state preemption theory.  *See* FAC ¶¶ 443–57.  What's more, "there is no absolute rule against abstention in first amendment cases," *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987), and as one court has explained, "[w]hether an abstention- related delay may chill First Amendment rights turns on the existence and/or stage of state court proceedings and, at least in part, on the procedural posture of the federal court proceedings." *Lomma v. Connors*, 539 F. Supp. 3d 1094, 1100 (D. Haw. 2021); *see also Smelt v. County of Orange*, 447 F.3d 673, 681 & n.22 (9th Cir. 2006) (explaining that "state litigation on the issues is already well underway" where "a California Superior Court has already found the state statutes to be unconstitutional" and "review of that decision is now pending in a California Court of Appeal").  And regardless, in the context of *Younger* abstention, "the existence of a 'chilling effect,' even in the area of First Amendment rights," is not "a sufficient basis, in and of itself, for prohibiting state action."  *Younger*, 401 U.S. at 51.

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    been interpreted by a state appellate court and whether state law preempts those regulations is a novel

2    issue.  *See Columbia Basin Apartment Ass'n*, 268 F.3d at 802 ("under the third criterion, the validity of

3    the Pasco Ordinance under the Washington Constitution is uncertain"); *San Remo Hotel*, 145 F.3d at

4    1105 (similar); *Gearing*, 2021 WL 4148663, at *8 (similar).

### 3.    *Colorado River* Abstention

6        Under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), federal

7    courts may "refrain from exercising jurisdiction where there are parallel state court proceedings."

8    *Mendocino Railway v. Ainsworth*, 113 F.4th 1181, 1185 (9th Cir. 2024).  When there "are concurrent

9    state and federal court proceedings involving the same matter (as there are here), [courts] use an eight-

10   factor balancing test to determine if a *Colorado River* stay or dismissal is appropriate":

> (1) which court first assumed jurisdiction over any property at stake; (2) the
> inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation;
> (4) the order in which the forums obtained jurisdiction; (5) whether federal law
> or state law provides the rule of decision on the merits; (6) whether the state
> court proceedings can adequately protect the rights of the federal litigants;
> (7) the desire to avoid forum shopping; and (8) whether the state court
> proceedings will resolve all issues before the federal court.

15   *Id.* at 1188.  In *Mendocino Railway*, the Ninth Circuit affirmed a *Colorado River* dismissal of a railway's

16   federal action against the City of Fort Bragg and the California Coastal Commission that was filed in

17   response to the City's state court action against the railway.  Notably, the Ninth Circuit concluded that

18   the first factor was inapplicable, the second was neutral, the fourth did not weigh as strongly in favor of

19   dismissal as the district court believed since "[a]t the time the Railway filed the Federal Action, there had

20   not been any discovery, and no trial date had been set" in the state action, and the fifth weighed against

21   dismissal.  *Id.* at 1188–89, 1192–93.  Yet the Ninth Circuit concluded that the remaining factors

22   supported dismissal because both actions "squarely raise the ICCTA preemption issue" (factor three –

23   piecemeal litigation); the "Railway's federal preemption claim can be adjudicated by the state court"

24   (factor six – adequate forum); the "Railway filed its Federal Action after the state court overruled its

25   demurrer, an unfavorable outcome" (factor seven – forum shopping); and there did "not appear to be a

26   realistic probability that a federal controversy will remain after the state proceedings are complete"

27   (factor eight – resolving all issues).  *See id.* at 1189–92.

28       Here, the case for dismissal under *Colorado River* is similarly strong (if not stronger).  Unlike in

-12-

*Mendocino Railway*, the first and fifth factors weigh in favor of dismissal because both actions pertain to Hoopes' property and Plaintiffs' claims are premised on their state law preemption theory.  Also unlike in *Mendocino Railway*, the third factor weighs more strongly in favor of dismissal because Plaintiffs did not file this federal action until after the first phase of the state court action was tried and submitted.  And like in *Mendocino Railway*, both actions squarely raise the state preemption issue (as well as several other issues), Plaintiffs filed the federal action (and amended their complaint to emphasize their state law preemption theory) after unfavorable rulings in the state action, and there is not substantial doubt that the state court action will resolve the issues in the federal court action.

### C.    Plaintiffs Cannot Premise *Monell* Liability on "Interpretations" by County Employees Who Are Not Policymakers

The County may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom.  *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  In an apparent effort to resurrect their untimely claims, Plaintiffs have alleged that they were not aware of the limitations of their land use entitlements under the County Code until learning in the course of the state court litigation of "interpretations" made by various county employees, including its supervising code enforcement officer (Akenya Robinson-Webb), a County Planner with a code enforcement role (Kelli Cahill), and "[o]ther code enforcement officers."  Dkt. 43-55, ¶¶ 1-3, 6, 79, 87, 127, 155, 261-62, 352, 480, 492, 515, 541-545, 749, 754.  Putting aside the fact that these allegations contradict Plaintiffs' own applications and allegations (*infra* Section IV(E)(1)), Plaintiffs cannot premise *Monell* liability on these employees' alleged "ever-changing interpretations" of the County Code because they fail to show that these employees are final policymakers or have been delegated final policymaking authority under state law.  *See Schmid v. County of Sonoma*, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024) (rejecting *Monell* liability based on actions of County's Director of Permit and Resource Management Department because "[t]he amended complaint does not point to any state law that vests Wick with final policymaking authority over Sonoma County's land use policies (to give one example, Wick cannot change or repeal the amended complaint's cited sections of the County Code that create setback requirements)"); *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1026 n.11 (N.D. Cal. 2022) (plaintiff failed to establish that city code enforcement officer was final policymaker).

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

**D.      Plaintiffs' First Amendment Claims Fail as a Matter of Law**

2

**1.      Plaintiffs Lack Standing to Assert Their First Amendment Claims**

3

Plaintiffs' First through Fourth claims assert that the County's laws regarding the nature and

4

intensity of physical agricultural land uses at wineries violate the First Amendment on their face and as

5

applied to Plaintiffs.  *See* FAC ¶¶ 438-519.  Because Plaintiffs seek damages (*see* FAC ¶¶ 480(c), 492(c),

6

501(c), 519(c)), they "must base their claims on a restriction of their own constitutionally protected

7

conduct" and "must prove a violation of their own rights, regardless of the precise characterization of

8

their claims." *Hunt v. City of Los Angeles*, 638 F.3d 703, 710 & n.2 (9th Cir. 2011).

9

To the extent Plaintiffs' First Amendment Claims hinge on the County's permitting decisions,

10

they have not alleged that they intend to apply for use permits.  *See Diamond S.J. Enterprise v. City of*

11

*San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024) (no standing to challenge licensing law under First

12

Amendment because "vague allegation[s] that [they] intend[] to apply for permits in the future [are] too

13

speculative to meet the standing requirements").  To the extent that Plaintiffs' First Amendment Claims

14

are premised on an assertion that they do not need use permits to exceed their authorized uses, Summit

15

Lake and Smith-Madrone lack standing to bring their First Amendment Claims in a pre-enforcement

16

challenge because they have not alleged facts showing a "concrete intent to violate the challenged laws"

17

or "a credible threat of enforcement." *Lopez v. Candaele*, 630 F.3d 757, 787, 791–93 (9th Cir. 2010).

18

**2.      The Land Use Regulations at Issue Do Not Directly or Inevitably Single out**
       **Expressive Activity**

19

20

Plaintiffs "bear[] the burden to demonstrate that the First Amendment even applies" to their

21

"commercial speech" by showing that "conduct with a significant expressive element drew the legal

22

remedy or the [ordinance] has the inevitable effect of singling out those engaged in expressive activity."

23

*B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 112, 114 n.11 (9th Cir. 2024) (quotations omitted).

24

Here, because Plaintiffs cannot demonstrate that the ordinances at issue "directly or inevitably

25

restrict any expressive activity, they do not implicate the First Amendment." *B&L Productions*, 104

26

F.4th at 113.  The County Code provisions cited in the FAC are traditional land use regulations

27

addressing the nature and intensity of the physical land uses at wineries in rural agricultural areas to limit

28

them to approved uses and address their potentially adverse environmental effects (e.g., on traffic, noise,

-14-

RENNE PUBLIC LAW GROUP
Attorneys at Law

pollution, fire risks, sensitive receptors).  The act of hosting the public for wine tasting or tours or selling wine-related items without authorization draws the legal remedy.  These acts are not "conduct with a significant expressive element" because "consummating a business transaction is nonexpressive conduct unprotected by the First Amendment."  *Id.* at 114 (statutes prohibiting "contracting for the sale of any firearm or ammunition" on state property did not trigger First Amendment scrutiny); *Talk of the Town v. Department of Finance and Business Services ex rel. City of Las Vegas*, 343 F.3d 1063, 1069–70 (9th Cir. 2003) ("[T]he section of the Las Vegas Municipal Code that bars the consumption of alcohol in establishments that lack valid liquor licenses … in no way can be said to regulate conduct containing an element of protected expression."); *Phillip Morris USA, Inc. v. City and County of San Francisco*, 345 F. App'x 276 (9th Cir. 2009) ("Selling cigarettes isn't [protected expressive activity], because it doesn't involve conduct with a 'significant expressive element.'").

Nor do the County Code provisions have the inevitable effect of singling out those engaged in expressive activity.  *See Talk of the Town*, 343 F.3d at 1069–70 ("Nor can it be said that the City's requirement that businesses obtain a valid liquor license before they are permitted to serve alcohol on their premises places a disproportionate burden on those engaged in expressive conduct.").  "The mere fact that a regulation may have economic implications for the feasibility of certain speech does not meet that standard."  *B&L Productions*, 104 F.4th at 115; *see also HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 680, 685 (9th Cir. 2019) (ordinance restricting short-term rentals was "plainly a housing and rental regulation" whose "inevitable effect" was to "regulate nonexpressive conduct—namely, booking transactions—not speech").  Indeed, nothing in the County Code precludes small wineries from marketing or advertising their products within the scope of their allowed physical uses (and thus in ways that will avoid adverse impacts) or freely in print, social, or other media.

### 3.    The County's Ordinances Pass Muster Under *Central Hudson*

Regardless, Plaintiffs fail to state a claim under *Central Hudson v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), because the speech at issue is "misleading" and does not "concern lawful activity." *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017).  "[S]peech proposing an illegal transaction … may [be] regulate[d] or ban[ned] entirely."  *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 496 (1982); *see also Homeaway.com*, 918 F.3d at 686 ("[T]o the extent that the speech chilled

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  advertises unlawful rentals, [a]ny First Amendment interest … is altogether absent." (quotation

2  omitted)); *Bronco Wine Co.*, 129 Cal.App.4th at 1004–13 ("inherently misleading" wine labels).

3   Plaintiffs make the incorrect legal assertion that the County Code allows them to engage in tours,

4  tasting, and the sale of wine related products.  FAC ¶¶ 250-51.  Plaintiffs also incorrectly assert that

5  "each Plaintiff winery may engage in 'Marketing of Wine' as defined by NCC Section 18.08.370."  *Id*.

6  ¶ 245.  Neither of these assertions is accurate.  Tours, tastings, the sale of wine related products, and

7  "Marketing of Wine" as defined by NCC Section 18.08.370 (which includes cultural and social events),

8  are uses permitted in the Agricultural Districts "*only upon grant of a use permit* pursuant to Section

9  18.124.010."  NCC §§ 18.16.030(G)(5)(b) & (H)(1), (H)(4) (AP District), 18.20.030(I)(5) & (J)(1), (J)(4)

10  (AW District) (emphasis added); *see also id*. § 18.08.020.

11   Plaintiffs concede that they have not been granted use permits pursuant to County Code section

12  18.124.010.  *See* FAC ¶¶ 31, 80, 132.  Hoopes and Summit Lake operate wineries pursuant to SWEs and

13  are explicitly not permitted to "conduct public tours, provide wine tastings, sell wine-related items or

14  hold social events of a public nature."  *See* Ord. No. 629, §§ 1–2 (1980); NCC § 18.08.600.  Smith-

15  Madrone operates a winery pursuant to a use permit issued by the County on October 24, 1973, prior to

16  the enactment of section 18.124.010 (Ord. 511 § 1, 1976: prior code § 12800).  *See* FAC ¶¶ 130–32; Dkt.

17  43-19.  Smith-Madrone's 1973 use permit includes a condition that "[w]ine tasting be limited to a

18  private, invitational only, basis.  Any consideration of public tasting facilities shall require submission of

19  a written request for modification of this condition."  Dkt. 43-19 at 4, ¶ 7.  Plaintiffs may sell the wine

20  they produce on the premises.  NCC §§ 18.08.040(E).  Smith-Madrone may also offer wine tasting on a

21  private, invitation-only basis.  *Id.* §§ 18.20.020(A), (J), 18.08.040(E); Dkt. 43-19 at 3–4.  The sale of any

22  other products or services is not allowed unless authorized by a subsequent use permit.  *See* NCC

23  §§ 18.16.020(H), (I), (J).

24   Here, Plaintiffs assert that the County restricts their commercial speech by prohibiting them from

25  "invit[ing] guests to their businesses and/or maintain[ing] their business as generally open to the public"

26  for "the express purpose[s] of advertising and promoting the products Plaintiffs have for sale with the

27  intent of completing a sale" and "engaging in product demonstrations."  FAC ¶¶ 459–60.  However, the

28  services Plaintiffs are offering to the public—tours, tastings, social events, etc.—are unpermitted and

-16-

illegal.  To be sure, Plaintiffs may market and sell their wines (*see* NCC § 18.08.040(H)(2)), but that does not include, as Plaintiffs assert, the uses specifically allowed for wineries that have been granted a permit pursuant to County Code section 18.124.010 and undergone the application review process. Accordingly, Plaintiffs cannot contend that the County's restrictions impinge on protected commercial speech since their purported speech seeks to promote unlawful activity (i.e., tours and tastings at their wineries that exceed their use authorization) and misleadingly suggests it is lawful.

In any event, Plaintiffs cannot overcome *Central Hudson* because the County has a substantial interest in protecting the agricultural character of its districts and its use permit restrictions are appropriately tailored to achieve that interest.  *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 745 (9th Cir. 2011) ("The City is certainly entitled to treat signs permitted before the offsite and supergraphic sign bans differently than other signs both because preserving legally nonconforming billboards still furthers the City's significant interest in reducing blight and increasing traffic safety").[5]

### 4.    Plaintiffs' Facial Prior Restraint Claim Fails as a Matter of Law

#### a.    The County Code Provisions at Issue Are Laws of General Application Not Aimed at Expressive Conduct

Facial prior restraint challenges are "disallowed against laws of general application not aimed at conduct commonly associated with expression."  *Spirit of Aloha v. Cnty. of Maui*, 49 F.4th 1180, 1188 (9th Cir. 2022); *Talk of the Town*, 343 F.3d at 1072 ("burdening of expressive conduct" was "incidental result of the City's clear authority to enforce generally applicable liquor license requirement").

Without identifying any specific laws, Plaintiffs assert that "to have a cultural, business, or social event at a winery, Plaintiffs are required to obtain approval from Napa County regarding the purpose and intent of the event, by way of submission of a 'marketing plan,' before 'marketing events' can take place."  FAC ¶ 497.  This misreads the County Code, which defines "marketing of wine" in non-expressive terms:  "any activity of a winery which is conducted at the winery on a prearranged basis for

---

[5] Plaintiffs also assert that the County's regulations of marketing events at wineries are content- and viewpoint-based.  *See* FAC ¶¶ 508–10, 515.  But that does not alter the *Central Hudson* analysis, *see Retail Digital Network, LLC*, 861 F.3d at 847–50 & n.9, or change the fact that the County's land use laws "regulate[] economic activity rather than speech," *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quotation omitted).

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    the education and development of customers and potential customers with respect to wine which can be

2    sold at the winery on a retail basis pursuant to Chapters 18.16 and 18.20."  NCC § 18.08.370.

3        Moreover, section 18.08.370 is not a use permitting scheme where governmental approval is

4    required to engage in temporary events commonly associated with expressive activities.  *Cf.* NCC

5    § 5.36.010 et seq.  Rather, section 18.08.370 defines "marketing of wine" in a way that prohibits business

6    events unless "they are directly related to the education and development of customers and potential

7    customers of the winery and are part of a marketing plan *approved as part of the winery's use permit*."

8    *Id.* § 18.08.370 (emphasis added).  Because this type of agricultural land use regulation does not

9    implicate expressive activity, Plaintiffs' facial prior restraint challenge may not proceed.

10                **b.    The County's Permitting Scheme Is Not an Unlawful Prior Restraint**

11        Even if Plaintiffs could proceed with their "disfavored" facial prior restraint challenge, they

12    would have to show that the County's permitting scheme fails to "provide 'narrowly drawn, reasonable

13    and definite standards' for granting, revoking, or suspending a license" and "place[s] unbridled discretion

14    in the hands of" the County.  *Diamond*, 100 F.4th at 1066 (quotations omitted).  In *Diamond*, the Ninth

15    Circuit rejected a prior restraint challenge to laws "preclud[ing] public entertainment businesses from

16    operating in a way that causes a public nuisance."  *Id.* at 1065.  The court concluded that these nuisance

17    provisions did "not confer unbridled discretion on the City's Chief of Police" because the phrase "public

18    nuisance" was adequately defined and "the challenged provisions require the Chief of Police to state all

19    grounds upon which a denial, suspension, or revocation is based and provide for an administrative

20    hearing and both administrative and judicial review."  *Id.* at 1067–68.

21        Here, just like the licensing scheme in *Diamond*, the County's use permit scheme (which

22    regulates agricultural land use, not expressive activity) does not confer unbridled discretion on County

23    officials.  Use permits may be conditioned on a variety of enumerated factors, including "[i]ngress and

24    egress to the property and proposed structures thereon with particular reference to automobile and

25    pedestrian safety and convenience, traffic flow and control and access in case of fire or catastrophe" and

26    "[m]itigation of adverse environmental effects if any, such as, adverse effects on groundwater resources,

27    noise, glare, dust, smoke, odor or other effects of the proposed use in relation to adjoining property and

28    property generally in the vicinity."  NCC § 18.124.060(A), (C).  A use permit cannot issue unless the

RENNE PUBLIC LAW GROUP
Attorneys at Law

planning commission or board of supervisors makes "written findings" (*id.* § 18.124.070), and a public hearing must be held before a use permit is issued or denied (*id.* § 18.124.040).  Once a use permit is issued, the standards for revoking (*id.* § 18.124.120(C)) or modifying (*id.* § 18.124.130(C)) the permit are "narrow, objective, and definite," *Diamond*, 100 F.4th at 1068, and any revocation is appealable and subject to judicial review.  *See* NCC §§ 18.124.120(E), 2.88.010 et seq.; Cal. Code Civ. Proc. § 1094.5.

### 5.    The County Code Does Not Infringe Plaintiffs' Right to Petition

Plaintiffs assert that NCC § 1.30.030(A), which requires permit applicants to indemnify the "county from any claim, action, or proceeding brought against the county to attack, set aside, void or annul the approval based on the county's failure to comply with the requirements of any federal state or local law," "violates Plaintiffs' First Amendment right to petition the courts by attempting to chill meritorious litigation under threat of costs and attorney's fees."  FAC ¶¶ 471–72.  Not so.

By its own plain terms, section 1.30.030(A) only applies when an action has been brought by a third party "against the county to attack, set aside, void or annul the approval" of an applicant's own permit.  *See also* NCC § 1.30.010(B) (purpose and findings).  That is not remotely the case where (as here) a would-be permit applicant seeks to avoid the permit application process altogether and ignores the important public policy behind the ordinance.  The ordinance—which mirrors those used by countless other jurisdictions—protects the public from incurring costs to defend a private party's project or property rights.  Plaintiffs also overlook basic principles of indemnification, which generally "allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties."  *Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal.App.5th 574, 600 (2016).

### 6.    Plaintiffs Fail to State a First Amendment Retaliation Claim.

Plaintiffs assert that the County retaliated against them for filing a cross-complaint (Hoopes) and seeking to intervene (Summit Lake and Smith-Madrone).  FAC ¶¶ 755-91; *see also id.* ¶ 473.  Putting aside the fact that this claim rests on entirely baseless allegations, it fails for several reasons.

First, Hoopes "has not alleged any animus on the part of the County [] that served as but-for causation leading [the County] to target" Lindsay Hoopes with an inspection request for possible code violations.  *See Smith v. County of Santa Cruz*, No. 20-cv-00647-BLF, 2020 WL 6318705, *at 11 (N.D. Cal. Oct. 28, 2020) (rejecting causal allegations based on the issuance of a "Red Tag" on plaintiff's

parcel "a mere 18 days" after the hearing on another Red Tag issued on another of his parcels). As one

court has explained, "the County code enforcement team cannot be expected to forego enforcing the

County Code as to [the plaintiff] simply because [he] was involved in a prior code enforcement

administrative hearing." *Id.* Moreover, Hoopes has not plausibly alleged that the County's inspection

request amounts to an "adverse action that would chill a person from continuing to engage in the

protected activity" since even "threats and harsh words … do not support a retaliation claim." *Kolstad v.

County of Amador*, No. CIV 2:13-01279 WBS EFB, 2013 WL 6065315, at *5 (E.D. Cal. Nov. 14, 2013)

(quotation omitted) ("[T]he County's correspondence … notifies plaintiffs only that the County would

not sign plaintiffs' letter, details plaintiffs' alleged code violations and how to remedy the violations, and

warns of action by the County Code Enforcement department if the violations are not rectified.").

Second, Summit Lake's and Smith-Madrone's conclusory allegations that "[u]ndercover agents

for Napa County" sought to entrap them (FAC ¶¶ 778-81) are far too vague and unsupported to support a

plausible claim for relief. Even if these baseless allegations were true, they would suffer from the same

flaws identified in *Smith*, 2020 WL 6318705, would not "rise to the level of a campaign of harassment,"

*Kolstad*, 2013 WL 6065315, at *5 (quotations and alteration omitted), and any investigation would be

protected by the First Amendment. *See Tichinin v. City of Morgan Hill*, 177 Cal.App.4th 1049, 1069

(2009) ("prelitigation investigation of a potential claim is no less incidental or related to possible

litigation than prelitigation demand letters and threats to sue, which are entitled to protection.").

Finally, Summit Lake's allegations that the County concluded that it had to comply with the

County Road and Street Standards in response to its motion to intervene (FAC ¶¶ 787–90) are

demonstrably false. The letter from Deputy County Counsel Jason Dooley (*see* Dkt. 43-18) makes clear

that the County previously "informed [Summit Lake] that *there was a potential for the exemption to

apply* to [Summit Lake's] application, but that the exemption depended on the presence of specific

conditions of approval imposed on the tentative parcel map." Dkt. 43-18 at 2 (emphasis added).

Because County employees had not yet located the parcel map, it was unclear whether this potential

exemption—which "only applied if the parcel map approvals contained conditions relating to standard

for road or driveway development, defensible space, or fire-resistant construction"—was available. Dkt.

43-18 at 3. Once the parcel map was located, however, "staff determined that the standard conditions

RENNE PUBLIC LAW GROUP
Attorneys at Law

that typically supported the exemption were not included in the parcel map for the creation of the Summit Lake property." Dkt. 43-18 at 3. The County "cannot be expected to forego enforcing" these land use regulations simply because Summit Lake had sought to intervene. *See Smith*, 2020 WL 6318705, at *11.

### E.    Plaintiffs' Due Process Claim Fails as a Matter of Law

Plaintiffs' Fifth Claim (Due Process) is actually three different claims that: (1) the County's zoning regulations applicable to wineries are unconstitutionally vague (FAC ¶¶ 527–42); (2) the County land use regulations are arbitrary or arbitrarily enforced (*id*. ¶¶ 551–58, 559–77); and (3) the County has interfered with Plaintiffs' property rights (*id*. ¶¶ 549–57). For various reasons, these claims fail.

#### 1.    Plaintiffs' Due Process Claims Are Time-Barred

Claims brought under section 1983 are subject to California's two-year statute of limitations. *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). The limitations period for "facial substantive due process claims" involving real property accrues on the date the challenged law is enacted. *Id*. at 1026–27 ("it stands to reason that any facial injury to any right should be apparent upon passage and enactment of a statute"); *accord Scheer v. Kelly*, 817 F.3d 1183, 1186–87 (9th Cir. 2016) ("*Action Apartment* … applies only in the context of injury to property.").

Plaintiffs allege that the County's zoning regulations infringe on their property rights and rights to carry on a lawful business. FAC ¶¶ 525, 532, 662. The County Code provisions implicated by those allegations were enacted outside the statute of limitations period. *See* Dkt. 43-23, 43-24, 43-26. Thus, Plaintiffs' facial challenges to County laws enacted before September 5, 2022, are time-barred.

Furthermore, Plaintiffs' as-applied claims, even if ripe (*see infra*, Section IV(E)(2)), would also be time-barred because any alleged injury would have occurred well outside the statute of limitation period. *See Action Apartment*, 509 F.3d at 1026-27; *see also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (continuing impacts from removal of privilege were not continuing harm). To avoid issues of timeliness, Plaintiffs have alleged they were unaware of certain County positions until the enforcement action against Hoopes. *See* FAC ¶¶ 109, 129, 157, 352, 615. But these allegations contradict other allegations in the FAC. *See id*. ¶ 53 (County issued "Notice of Apparent Violation" in February 2020); 89–93 (Summit Lake submitted to audit clarifying allowed uses in 2019); *Morales v. City and County of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022) ("'[A] party cannot amend pleadings to

RENNE PUBLIC LAW GROUP
Attorneys at Law

-21-

1  'directly contradict an earlier assertion made in the same proceeding.'" (quoting *Airs Aromatics, LLC v.*

2  *Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)).  And the County's

3  alleged "positions" have been codified in the County Code for decades.  *See* NCC §§ 18.08.600(C),

4  18.16.020(H-I), 18.16.030, 18.20.020(I-J), 18.20.030. 18.124 et seq.  Plaintiffs' claims are untimely.

5  **2.    Plaintiffs As-Applied Due Process Claims Are Unripe**

6  An as-applied due process claim is not ripe "until the government entity charged with

7  implementing the regulations has reached a final decision regarding the application of the regulations to

8  the property at issue."  *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473

9  U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019);

10  *see Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989) (explaining that this "final

11  decision requirement is applicable to substantive due process and equal protection claims brought to

12  challenge the application of land use regulations"); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th

13  Cir.), *amended*, 830 F.2d 968 (9th Cir. 1987) (plaintiffs must first obtain final decisions regarding the

14  application of the regulations to their property and the availability of variances before their due process

15  claim is ripe).

16  The FAC contains general and conclusory allegations regarding the County's application process

17  and process for determining a winery's authorized entitlements. S*ee* FAC ¶¶ 551–58.  However, the

18  FAC contains very few allegations specific to Plaintiffs.  In fact, Plaintiffs conceded in the FAC that

19  Hoopes and Smith-Madrone have never applied for additional uses beyond their historical entitlements.

20  FAC ¶¶ 648–54.  Adjudicating Plaintiffs' claims before they even apply for permits would require

21  impermissible speculation as to how the County would apply its regulations to Plaintiffs.[6]  Accordingly,

22  these as-applied due process claims are unripe.  *See Hoffman Bros. v. County of San Joaquin*, No. 2:20-

23  cv-00660-TLN-AC, 2021 WL 4429465 at *6 (E.D. Cal. Sept. 27, 2021) (due process claims were unripe

24  where plaintiffs did not allege they requested and were denied an exemption or variance).

25  **3.    The County Code Provisions Regulating Wineries Are Not Vague**

26  "The void-for-vagueness doctrine … guarantees that ordinary people have fair notice of the

27

28  [6] Plaintiffs allege that Summit Lake voluntarily participated in the County's audit program and applied for a use permit in 2019 (FAC ¶¶ 89–101)—well outside the two-year limitations period.

RENNE PUBLIC LAW GROUP Attorneys at Law

conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (quotations omitted). Plaintiffs complain that certain terms in the County Code applicable to wineries are not defined or are vague, leaving them unable to "identify what conduct is permitted or prohibited conduct due to lack of operative or even definitional guidance." FAC ¶¶ 237, 261–92, 529, 533–34, 542.

Contrary to Plaintiffs' assertions, the County Code offers extensive operative and definitional guidance. *See* NCC §§ 18.08.020 ("accessory use"), 18.08.040 ("agriculture"), 18.08.370 ("marketing wine"), 18.08.600 ("small winery"), 18.08.640 ("winery"), 18.20.030(I) (list of uses in connection with a winery permitted upon grant of a permit), 18.20.030(J) (list of uses accessory to a winery permitted upon grant of a permit). The Code articulates sufficiently clear regulations to provide notice of permitted uses without defining every word. "The law does not require a municipal ordinance to include definitions. The question is whether those terms, as used in [the ordinance], are sufficiently clear that a person of ordinary intelligence would know what is prohibited." *Young v. Cnty. of San Mateo*, No. C 03-05801 CRB, 2005 WL 3454106, at \*5 (N.D. Cal. Dec. 16, 2005).

The County's regulations are sufficiently detailed to provide fair notice of what uses are permitted and prohibited. Hoopes and Summit Lake operate pursuant to SWEs as "small wineries," and are allowed to continue operating "in conformance with the applicable certificate of exemption" without additional permits. NCC §§ 18.16.020(H), 18.20.020(I). Accordingly, the specific uses permitted on their properties are defined by their status as a "small winery" and the parameters of their SWE (*see supra*, Section II(B)); other uses allowed in the Code upon grant of a use permit (*see* NCC §§ 18.16.03, 18.20.030) are not applicable to Hoopes and Summit Lake. Similarly, Smith-Madrone operates under a 1973 use permit that allows it to continue operating without additional permits "provided, that no expansion of uses or structures beyond those which were authorized by a use permit or modification of a use permit issued prior to the effective date of the [WDO]." *See id*. § 18.20.020(J).

What uses are permitted or prohibited are especially clear when viewed in the context of the entire regulatory scheme and legislative purpose behind establishing the Agricultural Districts. *See Gospel Missions of America*, 419 F.3d 1042, 1047 (9th Cir. 2005) (context may provide guidance on undefined terms); *City of Los Altos v. Barnes*, 3 Cal.App.4th 1193, 1202 (1992) (in interpreting zoning ordinances, courts should refer to legislative history or purpose). Section 18.16.010 provides:

RENNE PUBLIC LAW GROUP
Attorneys at Law

> The AP district classification is intended to be applied in the fertile valley and foothill areas of Napa County in which agriculture is and should continue to be the predominant land use, where uses incompatible to agriculture should be precluded and where the development of urban-type uses would be detrimental to the continuance of agriculture and the maintenance of open space which are economic and aesthetic attributes and assets of the county.

Section 18.20.010 provides:

> The AW district classification is intended to be applied in those areas of the county where the predominant use is agriculturally oriented, where watershed areas, reservoirs and floodplain tributaries are located, where development would adversely impact on all such uses, and where the protection of agriculture, watersheds and floodplain tributaries from fire, pollution and erosion is essential to the general health, safety and welfare.

The terms and their application are clear "when the purpose clause of the ordinance is considered and the terms are read in that context as they should be." *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1107 (1995). Plaintiffs may engage in "agricultural" activity as defined in NCC § 18.08.040 and operate their wineries, which are defined by NCC § 18.08.640 as "an agricultural processing facility used for: [t]he fermenting and processing of grape juice into wine; or [t]he refermenting of still wine into sparkling wine." If Plaintiffs obtained appropriate use permits, they could also engage in additional uses, such as tours and tastings. The County Code is not vague.

### 4.    The County's Regulations Are Neither Arbitrary Nor Arbitrarily Enforced

Plaintiffs' claims that the County's regulations are arbitrary or arbitrarily enforced fail because they do not have vested rights in discretionary zoning designations, and the alleged conduct is not clearly arbitrary and without any substantial relation to the public health, safety, morals, or general welfare.

A threshold showing for a procedural due process claim is a liberty or property interest protected by the Constitution. *Palm v. Los Angeles Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018). Such property interests are defined by state law. *Id.* Under California law, there is no right to any particular or anticipated zoning. *Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 796 (1976). To the extent Plaintiffs' procedural due process claims rest on whether they were able to obtain discretionary use permits, they fail as a matter of law because Plaintiffs do not have a vested right to a particular zoning designation. *See Tyson v. City of Sunnyvale*, 920 F. Supp. 1054, 1061 (N.D. Cal. 1996).

"In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions." *Arlington Heights v. Metropolitan Housing*

*Dev. Corp.*, 429 U.S. 252, 267 (1977).  To state a claim Plaintiffs must prove that the defendants' actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).

The FAC's conclusory allegations that the County has arbitrarily enforced its laws against Plaintiffs are insufficient to state a claim.  *Iqbal*, 556 U.S. at 663.  Plaintiffs do not allege any facts demonstrating the County's conduct is "clearly arbitrary and unreasonable."  Furthermore, the County's land use and zoning laws on their face are substantially related to the public health, safety, morals, or general welfare.  *See* NCC §§ 18.16.010, 18.20.020.  Courts recognize that these zoning objectives are rational.  *See Barancik v. Cnty. of Marin*, 872 F.2d 834, 837 (9th Cir. 1988) (County zoning plan for an agricultural corridor was not irrational); *Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989) (preservation of neighborhood character and integrity are legitimate purposes).

### 5. The County Has Not Altered Plaintiffs' Property Rights

Plaintiffs assert that the County Code entitles them to the uses identified in County Code sections 18.16.030(G–H) and 18.20.030(I–J) without a permit.  FAC ¶¶ 229–31, 244–54.  Not so.  County Code sections 18.16.030 and 18.20.030 identify permitted uses "only upon grant of a use permit pursuant to Section 18.124.010."  It is clear both from this plain language and the structure of the County Code, which separates uses allowed with and without a permit into different code sections, that these uses are not applicable to Plaintiffs who have not been granted use permits pursuant to Section 18.124.010.

Still, Plaintiffs argue that they are entitled to expanded uses without a permit because the County Code designates "agriculture" as an authorized use without a permit in the Agricultural Districts (*see* NCC §§ 18.16.020(A), 18.20.020(A)) and defines it to include "[m]arketing, sales, and other accessory uses."  *See id.* § 18.08.040(H)(1).  This is a misinterpretation of Section 18.08.040(H)(1) and ignores that the definition limits "other accessory uses" to uses "that are related, incidental and subordinate to the main agricultural processing use."  *Id.*  In the case of Plaintiffs Hoopes and Summit Lake, who operate "small wineries," those agricultural processing uses do not include "public tours, provide wine tastings, sell wine-related items or hold social events of a public nature."  *Id.* § 18.08.600(C).  Furthermore, the County Code defines "accessory use" as "subordinate to the main use" and "reasonably compatible with

RENNE PUBLIC LAW GROUP
Attorneys at Law

-25-

the other principal uses in the zoning district and with the intent of the zoning district, and cannot change the character of the main use." *Id*. § 18.08.020. It is an unreasonable interpretation to claim that uses explicitly prohibited by the County Code and Plaintiffs' authorizing land use documents are "subordinate to the main use" and "reasonably compatible" with the intent of the zoning district.

Plaintiffs also allege that the County took rights away from Plaintiffs when it revised its "Winery Database." FAC ¶¶ 549–50. This allegation has no merit because the Winery Database is simply a reference document that does not have the force of law. Plaintiffs' land use entitlements are determined through their authorizing land use documents and the County Code. Changes to the Database, which is only intended to reflect the rights established by those authorizing documents, have no effect on Plaintiffs' legal land use entitlements. The land use entitlements attached to Plaintiffs' properties have not changed since 1984 or before. Accordingly, Plaintiffs' claim that the County's "ever-changing interpretations" of the Code have infringed on rights, which have not changed in decades, is meritless.

### F. Plaintiffs' Non-Delegation Doctrine Claim Fails as a Matter of Law

Under the Due Process Clause, "the state may not constitutionally abdicate or surrender its power to regulate land-use to private individuals without supplying standards to govern the use of private discretion." *Schulz v. Milne*, 849 F. Supp. 708, 712 (N.D. Cal. 1994) (quotations omitted).

Here, Napa County does not, by rule or practice, condition the issuance of a use permit on the approval of third parties. The Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs do not identify under what ordinance or policy the County allegedly delegates its authority to third parties, who the third parties are, who the parties applying for the permits were, or when the final decisions were made. *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024–25. Instead, Plaintiffs hint at the inclusion of members of the public in the use permit process, which is required by state law and by the due process rights of neighboring property owners. *See Horn v. County of Ventura*, 24 Cal.3d 605, 614–16 (1979). Additionally, Plaintiffs contradictorily concede that they have not applied for use permits. FAC ¶¶ 648–54. These vague and conclusory allegations are insufficient to establish standing or ripeness under Article III or to support a reasonable inference that the County has a policy and practice of conditioning issuance of use permits on third-party approval.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-26-

G.    **Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law**

1.    **Subject-Matter Jurisdiction**

Plaintiffs' do not have standing to bring their Dormant Commerce Clause Claims because they are not subject to the regulation that they challenge.  *See Warth v. Seldin*, 422 U.S. 490, 504 (1975) (finding petitioners lacked standing where not subject to the challenged ordinance).  Plaintiffs' wineries all predate the enactment of NCC § 18.104.250 and are not currently subject to the 75 percent requirement.  NCC § 18.104.250(B).  The requirements of Section 18.104.250 only apply to pre-WDO wineries if they increase their wine production as a result of an "expan[sion] beyond their winery development areas," which Plaintiffs have not done and cannot do without obtaining the appropriate permits.  *See* NCC § 18.104.250(C).  Although Plaintiffs allege that they "wish" to expand their operations (FAC ¶¶ 616, 625), more than a "desire[]" is required for their hypothetical expansions to become a concrete harm.  *See Warth*, 422 U.S. at 503–508 (plaintiffs' alleged "desires" to reside in a municipality did not give them standing to challenge its zoning laws to which they were not subject).  Whatever hypothetical expansion the Plaintiffs intend to propose, it is entirely speculative that such an expansion would be approved and require an expansion of their "development areas," triggering the requirements of County Code section 18.104.250(C).  This hypothetical injury is too speculative to satisfy Article III.

2.    **The County's Regulations Do Not Violate the Dormant Commerce Clause**

Plaintiffs' Dormant Commerce Clause Claims challenge NCC § 18.104.250(B–C), which requires "at least seventy-five percent of the grapes used to make the winery's still wine, or the still wine used by the winery to make sparkling wine, shall be grown within the county of Napa."  *See* FAC ¶¶ 595–97.

The Ninth Circuit follows a two-tiered approach when reviewing challenges under the DCC:

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019).  To succeed on a facial challenge, Plaintiffs must "establish that no set of circumstances exists under which the [Ordinance] would be valid.

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   … Because of this high burden, we construe the Ordinance narrowly and resolve any ambiguities in

2   favor of the interpretation that most clearly supports constitutionality." *Id.* (quotation omitted).

3                    **a.    The County's Regulations Do Not Discriminate Against Commerce**

4                    Section 18.104.250's structure and purpose are rooted in the preservation of agricultural land

5   without an intent to harm or exclude out-of-state economic interests.  Section 18.104.250 only applies to

6   wineries within the County and does not regulate any extraterritorial activity.  *See* NCC § 18.104.250(B).

7   Laws that only regulate in-state conduct generally are not per se invalid.  *See Chinatown Neighborhood*

8   *Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) ("[E]ven when state law has significant

9   extraterritorial effects, it passes Commerce Clause muster when, as here, those effects result from the

10  regulation of in-state conduct.").  Additionally, statutes struck down for directly discriminating against

11  interstate commerce generally regulate commercial activity such as pricing, sales, or the shipment of

12  retail goods.  *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 (1989) (price affirmation); *Granholm v.*

13  *Heald*, 544 U.S. 460, 473–74 (2005) (direct shipment).  In contrast, Section 18.104.250 regulates the use

14  of land, tying the overall production of wine to the amount of agricultural produce "grown" in the

15  County.  It does not place any restrictions on the "sale and shipment" of grapes or wine.  *See Bronco*

16  *Wine Co.*, 129 Cal.App.4th at 1022.

17                    Additionally, Section 18.104.250 does not benefit in-state commercial interests at the expense of

18  out-of-state interests.  Its legislative findings provide that "the County areas suitable for quality vineyards

19  are limited and irreplaceable… The interspersing of non-agricultural structures and activities through

20  agricultural areas in excess of what already exists will result in a significant increase in the problems and

21  costs of maintaining vineyards and discourage the continued use of the land for agricultural purposes."

22  *See* Dkt. 43-26, Ord. No. 947 § 1.  Section 18.104.250 preserves the Agricultural Districts by ensuring

23  wineries in the districts do not operate primarily as processing facilities.  Without such a limitation,

24  wineries' ancillary use of their agricultural property to process grapes could overwhelm the primary

25  agricultural use of growing crops.  This is a legitimate land use concern, not economic protectionism, and

26  does not directly regulate or discriminate against interstate commerce.

27                    **b.    The County Does Not Unconstitutionally Burden Commerce**

28                    Under *Pike*, courts will uphold an ordinance if it "effectuate[s] a legitimate local public interest"

RENNE PUBLIC LAW GROUP
Attorneys at Law

-28-

1  "unless the burden imposed on [interstate] commerce is *clearly excessive* in relation to the putative local

2  benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (emphasis added).  "[C]onclusory

3  allegations of disparate impact are not sufficient; to survive [a] motion to dismiss, the plaintiffs needed to

4  plead specific facts to support a plausible claim that the ordinance has a discriminatory effect on

5  interstate commerce."  *Rosenblatt*, 940 F.3d at 452 (quotation omitted).

6      Here, Plaintiffs allege in conclusory fashion that the County Code "places an excessive burden on

7  interstate commerce in excess of the putative benefit to Napa County . . . by favoring, and mandating in-

8  County products and persons over out-of-County products and persons."  FAC ¶ 620.  This is woefully

9  insufficient to state a claim.  Additionally, Plaintiffs allege that "[t]he production capacity of Napa

10  Wineries far exceeds Napa grape production" and limiting Napa wineries to the local agricultural supply

11  "burdens small wineries like Plaintiffs."  FAC ¶¶ 622–23.

12      Plaintiffs' allegation demonstrates the necessity of the 75 percent rule.  Section 18.104.250 was

13  enacted "to protect agriculture and open space as the primary land use in Napa County."  Dkt. 43-26,

14  Ord. No. 947, § 6(b).  The processing of wine is allowed as a subordinate and ancillary use to the primary

15  agricultural use of growing grapes.  If the production capacity of Napa wineries were not tied to the local

16  agricultural supply, wineries' ancillary use of processing grapes could overwhelm the primary

17  agricultural use of growing crops.  Courts recognize that counties have a legitimate interest in preserving

18  the welfare and character of their neighborhoods.  *See Christian Gospel Church*, 896 F.2d at 1225.

19  Preserving the County's vineyards not only sustains the local economy through tourism and wine

20  production but also protects its rich agricultural heritage and scenic landscapes.  Vineyard preservation

21  promotes biodiversity, conserves water resources, and supports local jobs, making it both an economic

22  and environmental asset.  Section 18.104.250 ensures Napa's valuable land is preserved for grape

23  cultivation, a benefit that clearly outweighs any incidental burden on interstate commerce.  *See Bronco*

24  *Wine Co.*, 129 Cal.App.4th at 1022–28.

25      **H.    Plaintiffs' Takings Claims Fail as a Matter of Law**

26          **1.    Plaintiffs' Facial Takings Claims Are Time-Barred**

27      In the takings context, "[a] facial challenge involves a claim that the mere enactment of a statute

28  constitutes a taking, while an as-applied challenge involves a claim that the particular impact of a

RENNE PUBLIC LAW GROUP
Attorneys at Law

-29-

1    government action on a specific piece of property requires the payment of just compensation." *Levald v.*

2    *City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993).  A facial takings challenge is therefore "a single

3    harm, measurable and compensable when the statute is passed." *Id.* at 688.  Here, the laws that allegedly

4    "deprive Plaintiffs of the full use of their property," "interfere" with their alleged property rights, and

5    "create[] at least two classes of licensed wineries" (FAC ¶¶ 662, 668, 682–91) were all enacted many

6    years (even decades) before they filed suit.  *See* Dkt. 43-23, 43-24, 43-26.  Plaintiffs' facial takings

7    claims are thus time-barred.  *See Action Apartment*, 509 F.3d at 1026 (two-year statute of limitations).

**2.    Plaintiffs As-Applied Takings Claims Are Not Ripe**

9        The Ninth Circuit recognizes "an important distinction" between facial and as-applied takings

10    claims as each type of claim "raises different ripeness and statute of limitations issues." *Levald*, 998 F.2d

11    at 686.  An as-applied challenge is not ripe "until the government entity charged with implementing the

12    regulations has reached a final decision regarding the application of the regulations to the property at

13    issue." *Williamson Cnty.*, 473 U.S. at 186; *see also Pakdel v. City & Cnty. of San Francisco*, 594 U.S.

14    474, 478 (2021) (clarifying that the "finality" requirement was not overturned by *Knick*).

15        Here, Plaintiffs generally allege the County requires "impermissible impact fees" and "exorbitant

16    costs" to acquire winery use permits but do not allege they have taken any action within the statute of

17    limitations period towards obtaining such permits.  Hoopes and Summit Lake allege they were "advised"

18    that they would have to make certain improvements to their properties if they wanted to expand their

19    operations, but they do not allege that Hoopes ever actually applied for a permit or that the County

20    reached a final decision regarding Summit Lake's 2019 application.  FAC ¶¶ 89–96, 650.  Smith-

21    Madrone alleges it operates under a 1973 use permit that it has never sought to modify.  *Id.* ¶¶ 150, 654.

22    Without a final County decision regarding Plaintiffs' hypothetical permit applications, adjudicating

23    Plaintiffs' claims would require impermissible speculation as to whether—and under what conditions, if

24    any—a permit might issue.  Accordingly, Plaintiffs' as-applied takings claims are not ripe.

**3.    Plaintiffs Fail to State a Viable *Nollan/Dolan* Takings Claim**

26        Plaintiffs' Ninth Claim asserts a takings claim under *Nollan* and *Dolan*, which prohibit

27    conditioning the use of one's property on agreeing to an exaction, or the dedication of private property

28    for public use unless "there is a 'nexus' and 'rough proportionality' between the property that the

RENNE PUBLIC LAW GROUP
Attorneys at Law

government demands and the social costs of the applicant's proposal." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 605–06 (2013) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994), and *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987)).  FAC ¶¶ 628-72.  "It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." *California Bldg. Indus. Assn. v. City of San Jose*, 61 Cal. 4th 435, 460 (2015).  Even if timely and ripe, this claim would still fail as a matter of law because the FAC does not allege that the County unconstitutionally conditioned a use permit on the conveyance of a property right.

First, Plaintiffs allege that the County unconstitutionally conditions the granting of winery use permits by requiring them to submit to allegedly unlawful ordinances, specifically NCC §§ 18.104.250 and 1.30.030(A).  FAC ¶¶ 641–43.  These generally applicable County ordinances do not require Plaintiffs to convey any property rights.  Thus, the takings principles of *Nollan*/*Dolan* are not applicable. *See Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022) ("Because the relocation fee here was not a taking, it cannot have been an unconstitutional exaction").

Plaintiffs further allege that the County forces winery use permit applicants to pay "impermissible impact fees" and "exorbitant costs" to improve roadways in a disproportionate manner to the proposed use.  FAC ¶¶ 644, 646.  These conclusory allegations of an "exaction policy" (*id.* ¶¶ 634, 656) do not state facts that could support a reasonable inference that the County is liable for a taking under *Monell*. *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024–25 (conclusory allegations do not establish official policy); *Garcia v. County of Napa*, No. 21-cv-03519-HSG, 2022 WL 110650, at *4 (N.D. Cal. Jan 12, 2022) (same).  The only allegation that comes close to stating a specific exaction is Summit Lake's allegation that "it would need to agree to repave a substantial portion of the road leading to its winery at a cost of over $1 million" for a permit modification.  FAC ¶ 95.  As detailed above, this claim is not ripe (*supra*, Section IV(H)(2)) and, if it were, is untimely.  Even so, this allegation alone does not establish that the requirement is not reasonable or roughly proportional to Plaintiffs' proposed use.

Additionally, Plaintiffs allege that the County requires small wineries to "give up all winery entitlements and submit to a new discretionary use permit" before it will consider issuing or amending any winery entitlements.  FAC ¶ 645.  Plaintiffs allege this "interpretation of the code is not codified and

-31-

is effective of unknown date." *Id*.  This conclusory allegation does not accurately reflect the County

Code.  A small winery is not required to "give up" anything before applying for a use permit pursuant to

section 18.124.010.  However, small wineries operating pursuant to a SWE must operate in conformity

with the applicable certificate of exemption.  *See* NCC §§ 18.16.020(H), 18.20.020(I).  Plaintiffs may

incorrectly believe that they have entitlements that are not reflected in their permits, permit exemptions,

or the County Code.  Requiring them to conform to their authorized uses and adhere to the County's

zoning regulations does not require Plaintiffs to "give up" anything and is not an unconstitutional

condition.  Plaintiffs have not stated any facts that could form the basis of a viable *Nollan/Dolan* claim.

### 4.    Plaintiffs Fail to State a Viable Regulatory Takings Claim

Outside the "relatively narrow categories" of actions that physically invade property or that

completely deprive an owner of all economically beneficial use, regulatory takings challenges are

governed by the standards set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S.

104 (1978).  Plaintiffs do not allege a permanent physical invasion or a complete deprivation of all

economic benefits.  Accordingly, Plaintiffs' Tenth Claim is governed by *Penn Central*.   Plaintiffs'

claims fail under *Penn Central* because there has been no change to their property rights.

Before reaching the *Penn Central* factors, "a plaintiff must first demonstrate that he possesses a

'property interest' that is constitutionally protected.... Only if he does indeed possess such an interest will

a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking.'"

*Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).  Plaintiffs' allegations

invoke a property interest in certain uses, such as tastings and food service.  The facts alleged establish

that Plaintiffs have never even applied for the required use permits for those uses.  Under California law,

it is "beyond question that a landowner has no vested right in existing or anticipated zoning."  *Avco*, 17

Cal. 3d at 796.  Furthermore, Plaintiffs' allegations that the public has historically consumed wine on

their properties reference activities that clearly exceed the uses allowed pursuant to their current

entitlements.  Uses that do not comply with the law cannot form the basis for a vested right.  *Id.* at 793.

Even if Plaintiffs had a cognizable property interest, their claim still fails under *Penn Central*'s

factors:  (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the

regulation has interfered with distinct investment-backed expectations," and (3) "the character of the

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    governmental action." *Penn Cent.*, 438 U.S. at 124. "The first and second *Penn Central* factors are the

2    primary factors." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2020).

3    Under the first factor, courts "compare the value that has been taken from the property with the value that

4    remains in the property." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

5    Put differently, the "economic impact" of a government action "is determined by comparing the total

6    value of the affected property before and after the government action." *Id.* at 451.

7        Plaintiffs' regulatory takings claim fails because their entitlements have never changed. Thus, no

8    value has been taken from the property. Plaintiffs' regulatory takings claim relies on the false legal

9    assertion that they are or were at some point permitted to offer tours and tastings as a commercial service

10   to the public on their properties. Plaintiffs allege that the County, "through its ordinances, policies and

11   ever-changing ordinance interpretations, interferes with this property right by limiting how Plaintiffs may

12   utilize their property." FAC ¶ 668. However, the plain language of the County Code and Plaintiffs'

13   permit or permit exemptions referenced and incorporated in the FAC plainly demonstrate that Plaintiffs

14   never had a legal right to the alleged uses. *See supra*, Sections II(B), IV(E)(4).

15       Plaintiffs also allege that the County took their rights away when it revised its "Winery

16   Database." FAC ¶¶ 666. As discussed above, however, this allegation has no merit because the

17   Database is simply a reference document and Plaintiffs' land use entitlements are determined through

18   their authorizing land use documents and the County Code. *See supra* at Section IV(E)(5). Plaintiffs

19   cannot plausibly allege any "objectively reasonable" investment-backed expectations or loss of property

20   value because their land use entitlements have not changed. *See Colony Cove Props.*, 888 F.3d at 452.

21       The final *Penn Central* factor "instructs that [a] taking may more readily be found when the

22   interference with property can be characterized as a physical invasion by government than when

23   interference arises from some public program adjusting the benefits and burdens of economic life to

24   promote the common good." *Colony Cove Props., LLC*, 888 F.3d at 454 (quotations and citation

25   omitted). Plaintiffs do not allege a physical invasion. Instead, the alleged takings stem from the

26   County's zoning and land use regulations enacted to protect critical "economic and aesthetic attributes

27   and assets," its "agriculture, watersheds and floodplain tributaries from fire, pollution and erosion," and

28   its "general health, safety and welfare." NCC §§ 18.16.010, 18.20.020.

-33-

The Court has upheld "land-use regulations that destroyed or adversely affected recognized real property interests" when, as here, the relevant government entity "reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land." *Penn Cent.*, 438 U.S. at 125. All three factors cut strongly in favor of the County here, especially where the Complaint fails to identify or allege a cognizable property interest that is infringed.

## I.    Plaintiffs' Equal Protection Claim Fails as a Matter of Law

### 1.    Plaintiffs' Facial Equal Protection Claim Is Time-Barred

Where the "same principle concerning the single harm underlying a takings claim extends to" other constitutional claims "involving property," it is "appropriate to apply the enactment accrual rule." *See Cal. Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *9 & n.8 (E.D. Cal. Feb. 9, 2023) (citing *Scheer*, 817 F.3d at 1187 and *Action Apartment*, 509 F.3d at 1026). Here, Plaintiffs allege that various County Code provisions violate the Equal Protection Clause "on its face and as applied." FAC ¶¶ 679–88. This challenge to the County's zoning laws is premised on the same harm as Plaintiffs' due process and takings claims. Namely, under the County Code, wineries with the appropriate permits may conduct tastings, tours, and other expanded uses, while "small wineries" may not. Accordingly, Plaintiffs' facial equal protection claim challenging regulations that were enacted outside the two-year limitations period is time-barred.

### 2.    Plaintiffs' As-Applied Equal Protection Claim Is Unripe

Plaintiffs' as-applied equal protection claim is unripe for the same reason as their takings and due process claims. *Hoehne*, 870 F.2d at 532 ("This court has held that the final decision requirement is applicable to … equal protection claims."). Equal protection claims in the land-use context are "not ripe for consideration by the district court 'until planning authorities make a final determination on the status of the property.'" *Kinzli*, 818 F.2d at 1455 (quoting *Norco Const., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986)). Plaintiffs have not alleged that they obtained a final decision regarding any permit application. *See* FAC ¶¶ 648–54. Accordingly, their equal protection claim is not ripe.

### 3.    Plaintiffs Fail to State an Equal Protection Claim

Plaintiffs' Eleventh Claim alleges the County violates equal protection by proscribing different uses to the different categories of "winery" and "small winery" in the County Code. FAC ¶¶ 677–93. A

-34-

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

classification not involving fundamental rights or historically discriminated against groups only violates equal protection if it is not rationally related to the furtherance of a legitimate governmental interest. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

First, the uniformity requirement of Government Code § 65852 is not constitutionally required. *See Sacramentans for Fair Plan. v. City of Sacramento*, 37 Cal.App.5th 698, 708 (2019).  Still, County ordinances set uniform requirements for each class of winery in compliance with section 65852.  Second, Plaintiffs' conclusory allegation that the County has "no rational basis" for distinguishing between large and small wineries does not state a plausible claim.  *See Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301. 304–05 (9th Cir. 2020) (affirming the dismissal of an equal protection claim because the property owner's allegations were wholly conclusory and did not sufficiently show differential treatment); *Konarski v. City of Tucson*, 716 F. App'x 609, 613 (9th Cir. 2017) (same).

The County's zoning ordinances establish uniform class-based requirements for wineries of varying scales, which is rationally related to the County's legitimate interest in protecting its rural character and limiting the impact of non-agricultural activity in the Agricultural Districts.  *See Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990) (rejecting equal protection claim because city had legitimate interest in preserving welfare and character of its neighborhoods).  Regarding the SWEs specifically, the County recognized that smaller wineries posed a reduced impact and reasonably exempted them from the more extensive review required for larger operations.  When a winery with a SWE seeks to expand its operations, it is appropriately subjected to the more rigorous permitting process that all wineries with comparable entitlements undergo.

**J.     Plaintiffs Fourteenth Claim for Injunctive Relief Does Not State a Claim**

Plaintiffs' Fourteenth Claim for injunctive relief (FAC ¶¶ 792-97) is not a "case" or "controversy" because "[d]eclaratory and injunctive relief are remedies, not causes of action." *Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014).

**V.     CONCLUSION**

For the reasons discussed above, the County requests that the Court grant this motion to dismiss the FAC in its entirety without leave to amend, or in the alternative, dismiss Plaintiffs' claims for injunctive and declaratory relief and stay Plaintiffs' claims for damages under principles of abstention.

-35-

1    Dated:  January 10, 2025                    RENNE PUBLIC LAW GROUP

2

3                                                By: /S/*Ryan P. McGinley-Stempel*

4                                                     Ryan P. McGinley-Stempel

5                                                Attorneys for Defendant
                                                 NAPA COUNTY
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law