SHERYL L. BRATTON, County Counsel (SBN 144209)
JASON M. DOOLEY, Chief Deputy (SBN 258570)
jason.dooley@countyofnapa.org
NAPA COUNTY COUNSEL'S OFFICE
1195 Third Street, Suite 301
Napa, California 94559
Telephone: (707) 253-4521
Facsimile: (707) 259-8220

ARTHUR A. HARTINGER (SBN 121521)
ahartinger@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

Attorneys for Defendant
COUNTY OF NAPA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NAPA,<br><br>Defendant. | Case No. 3:24-cv-06256-CRB<br><br>**NAPA COUNTY'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR ABSTENTION**<br><br>Judge:            Hon. Charles R. Breyer<br>Hearing Date:   February 21, 2025<br>Hearing Time:   10:00 a.m.<br>Location:        Courtroom F, 15th Floor<br>                 455 Golden Gate Avenue<br>                 San Francisco, CA 94102<br><br>Action Filed:  September 5, 2024 |

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

SUMMARY OF THE ARGUMENT ...................................................................................... x

NAPA COUNTY'S REPLY IN SUPPORT OF MOTION TO DISMISS.................................. 1

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 1

      A.    Plaintiffs' Facial Due Process, Takings, and Equal Protection Claims Are
            Untimely .......................................................................................................... 1

      B.    Plaintiffs' As-Applied Due Process, Takings, and Equal Protection Claims Are
            Unripe .............................................................................................................. 2

      C.    Plaintiffs' As-Applied Due Process, Takings, Equal Protection, and Preemption
            Claims Are Untimely ....................................................................................... 3

      D.    Abstention Is Warranted Under *Younger*, *Pullman*, and *Colorado River* ......... 4

            1.    *Younger* Abstention ............................................................................... 4

                  a.    Hoopes fails to show it did not have an adequate opportunity to
                        raise its federal claims in the state enforcement action................... 5

                  b.    The relief Hoopes seeks in this action would have the practical
                        effect of enjoining the ongoing state enforcement action ............... 6

                  c.    None of the narrow exceptions to *Younger* applies here ............... 6

                  d.    *Younger* applies to third parties (like Summit Lake and Smith-
                        Madrone) with sufficiently intertwined interests with state court
                        parties (like Hoopes) that adequately represent those interests ....... 7

                  e.    The County is not estopped from arguing abstention as to Summit
                        Lake and Smith-Madrone ............................................................... 8

            2.    *Pullman* Abstention .............................................................................. 9

            3.    *Colorado River* Abstention ................................................................. 10

      E.    Plaintiffs Cannot Recover Damages Under *Monell* Because They Fail to Identify
            Any Policies, Customs, or Actions by Final Policymakers in the Limitations
            Period ............................................................................................................ 10

      F.    Plaintiffs Fail to State a First Amendment Claim ......................................... 10

            1.    Plaintiffs Lack Standing to Challenge the County's Initial Permitting
                  Scheme ................................................................................................. 10

NAPA COUNTY'S REPLY ISO MOTION TO DISMISS FAC                          Case No. 3:24-cv-06256-CRB
OR, IN THE ALTERNATIVE, FOR ABSTENTION

**TABLE OF CONTENTS (CONTINUED)**

**Page**

2.    The County's Land-Use Regulations Implicate Conduct, Not Speech.................11

3.    Plaintiffs Fail to State a Claim Under *Central Hudson* ........................................12

4.    The County's Use Permit Scheme Is Not a Prior Restraint ...................................13

5.    Plaintiffs Fail to Plausibly Allege Retaliation ......................................................14

G.    Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law........................15

H.    Plaintiffs Fail to State a Constitutional Vagueness Claim ................................................16

I.    The County Has Not Altered Plaintiffs' Property Rights ...................................................16

J.    Plaintiffs Fail to State a Non-Delegation Claim ................................................................17

K.    Plaintiffs Fail to State a Takings Claim .............................................................................17

L.    Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law ...........................18

M.    Plaintiffs Fail to State an Equal Protection Claim ............................................................20

III.    CONCLUSION............................................................................................................20

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996) ............................................................................................12, 13

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,
    509 F.3d 1020 (9th Cir. 2007) ...............................................................................1, 2

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ...................................................................................1

*Alexis Bailly Vineyard, Inc. v. Harrington*,
    482 F. Supp. 3d 820 (D. Minn. 2020) ......................................................................19

*American Future Systems, Inc. v. Pennsylvania State Univ.*,
    752 F.2d 854 (3d Cir. 1984) .....................................................................................12

*Applied Underwriters, Inc. v. Lara*,
    37 F.4th 579 (9th Cir. 2022) ......................................................................................7

*B&L Productions, Inc. v. Newsom*,
    104 F.4th 108 (9th Cir. 2024) ...................................................................................12

*Ben's Bar, Inc. v. Village of Somerset*,
    316 F.3d 702 (7th Cir. 2003) .....................................................................................11

*Board of Trustees of State University of New York v. Fox*,
    492 U.S. 469 (1989) .................................................................................................12

*Borges v. Cnty. of Mendocino*,
    598 F. Supp. 3d 846 (N.D. Cal. 2022) ....................................................................20

*Bradbury v. Superior Court*,
    49 Cal. App. 4th 1108 (1996) ...................................................................................15

*Bronco Wine Co. v. Jolly*,
    129 Cal. App. 4th 988 (2005) ..................................................................................20

*Bronco Wine Co. v. Jolly*,
    33 Cal. 4th 943 (2004) .............................................................................................16

*California Pub. Int. Rsch. Grp. v. Shell Oil Co.*,
    840 F. Supp. 712 (N.D. Cal. 1993) .........................................................................17

*Calvary Chapel San Jose v. Cody*,
    No. No. 20-cv-03794-BLF, 2023 WL 2638318 (N.D. Cal. Mar. 10, 2023) ..............6

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iii-

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Canatella v. California*,
404 F.3d 1106 (9th Cir. 2005) .................................................................................7, 8

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ....................................................................................20

*Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*,
896 F.2d 1221 (9th Cir. 1990) ....................................................................................20

*City of Lakewood v. Plain Dealer*,
486 U.S. 750 (1988) ............................................................................................11, 14

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ..........................................................................................1, 4, 10

*Columbia Basin Apartment Ass'n v. City of Pasco*,
268 F.3d 791 (9th Cir. 2001) ..................................................................................6, 9

*Commc'ns Telesystems Int'l v. CPUC*,
196 F.3d 1011 (9th Cir. 1999) ......................................................................................5

*Dash, Inc. v. ABC Appeals Bd.*,
683 F.2d 1229 (9th Cir. 1982) ....................................................................................18

*Dean Milk Co. v. City of Madison*,
340 U.S. 349 (1951) ...................................................................................................19

*Diamond v. City of San Jose*,
100 F.4th 1059 (9th Cir. 2024) ............................................................................11, 14

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) .....................................................................................................8

*Dubinka v. Judges of Superior Court*,
23 F.3d 218 (9th Cir. 1994) ..........................................................................................7

*Edenfield v. Fane*,
507 U.S. 761 (1993) ...................................................................................................12

*Etchart v. Pyles*,
106 Cal. App. 2d 549 (1951) ......................................................................................18

*FF Cosmetics FL Inc. v. City of Miami Beach, Florida*,
129 F. Supp.3d 1316 (S.D. Fla. 2015) ........................................................................12

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iv-

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

*Floresta, Inc. v. City Council of San Leandro,*
    190 Cal. App. 2d 599 (1961) ........................................................................................15

*Gearing v. City of Half Moon Bay,*
    54 F.4th 1144 (9th Cir. 2022) ....................................................................................10

*General Steel v. Suthers,*
    2007 WL 704477 (E.D. Cal. Mar. 2, 2007) ................................................................7

*Get Outdoors II, LLC v. City of San Diego,*
    506 F.3d 886 (9th Cir. 2007) ....................................................................................11

*Golden Gate Water Ski Club v. Cnty. of Contra Costa,*
    165 Cal. App. 4th 249 (2008) ...................................................................................17

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) ......................................................................................9

*Helicopters for Agriculture v. County of Napa,*
    384 F. Supp. 3d 1035 (N.D. Cal. 2019) ...................................................................16

*Herrera v. City of Palmdale,*
    918 F.3d 1037 (9th Cir. 2019) ........................................................................4, 5, 6, 8

*Homeaway.com v. City of Santa Monica,*
    918 F.3d 676 (9th Cir. 2019) .........................................................................11, 12, 13

*Hunt v. City of Los Angeles,*
    638 F.3d 703 (9th Cir. 2011) ....................................................................................13

*Jon-Mar Co. v. City of Anaheim,*
    201 Cal. App. 2d 832 (1962) ....................................................................................15

*Knick v. Township of Scott,*
    588 U.S. 180 (2019) ....................................................................................................2

*Knox v. Davis,*
    260 F.3d 1009 (9th Cir. 2001) ....................................................................................2

*Kolstad v. County of Amador,*
    2013 WL 6065315 (E.D. Cal. Nov. 14, 2013) ..........................................................14

*Lebbos v. Judges of Superior Court, Santa Clara Cty.,*
    883 F.2d 810 (9th Cir. 1989) ......................................................................................5

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

*Levald, Inc. v. City of Palm Desert,*
  998 F.2d 680 (9th Cir. 1993) ..........................................................................................2

*Little Woods Mobile Villa LLC v. City of Petaluma,*
  No. 3:23-CV-05177-CRB-1, 2024 WL 2852140 (N.D. Cal. June 4, 2024) ........................3

*Lukovsky v. City & County of San Francisco,*
  535 F.3d 1044 (9th Cir. 2008) ..........................................................................................3

*Maldonado v. Harris,*
  370 F.3d 945 (9th Cir. 2004) ..........................................................................................6

*Mendocino Railway v. Ainsworth,*
  113 F.4th 1181 (9th Cir. 2024) ........................................................................................10

*Montanore Minerals Corp. v. Bakie,*
  867 F.3d 1160 (9th Cir. 2017) ........................................................................................10

*Morales v. City and County of San Francisco,*
  603 F. Supp. 3d 841 (N.D. Cal. 2022) ..............................................................................4

*National Ass'n of Tobacco Outlets, Inc. v. City of Providence, R.I.,*
  731 F.3d 71 (1st Cir. 2013) ............................................................................................13

*Nicopure Labs, LLC v. Food & Drug Administration,*
  266 F. Supp. 3d 360 (D.D.C. 2017) ................................................................................12

*Pakdel v. City & County of San Francisco,*
  594 U.S. 474 (2021) ..................................................................................................2, 3

*Philco Investments, Ltd. v. Martin,*
  No. C 10-02785 CRB, 2011 WL 4595247 (N.D. Cal. Oct. 4, 2011) ................................14

*Porter v. Jones,*
  319 F.3d 483 (9th Cir. 2003) ............................................................................................9

*R.R. Comm'n of Tex. v. Pullman Co.,*
  312 U.S. 496 (1941) ................................................................................................1, 4, 9

*Rice v. Village of Johnstown,*
  30 F.4th 584 (6th Cir. 2022) ..........................................................................................17

*Roehm v. County of Orange,*
  32 Cal. 2d 280 (1948) ......................................................................................................18

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) ..................................................................................................13

*Sacramentans for Fair Plan. v. City of Sacramento*,
37 Cal. App. 5th 698 (2019) ......................................................................................20

*Scheer v. Kelly*,
817 F.3d 1183 (9th Cir. 2016) .....................................................................................2

*Sessions v. Dimaya*,
584 U.S. 148 (2018) ..................................................................................................16

*Sherwin-Williams v. City & County of San Francisco*,
857 F. Supp. 1355 (N.D. Cal. 1994) ..........................................................................11

*Smith v. County of Santa Cruz*,
2020 WL 6318705 (N.D. Cal. Oct. 28, 2020) ............................................................14

*SP Star Enters. v. City of Los Angeles*,
173 Cal. App. 4th 459 ................................................................................................11

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
351 F.3d 65 (2d Cir. 2003) ...........................................................................................8

*Spirit of Aloha Temple v. County of Maui*,
49 F.4th 1180 (9th Cir. 2022) ....................................................................................14

*Stein v. Harris*,
No. C 12–00985 CRB, 2012 WL 3202959 (N.D. Cal. Aug. 3, 2012) ...........................7

*Talk of the Town v. Dep't of Finance*,
343 F.3d 1063 (9th Cir. 2003) ...................................................................................11

*Thomas v. Cnty. of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) .....................................................................................2

*Thornton v. City of St. Helens*,
425 F.3d 1158 (9th Cir. 2005) ...................................................................................20

*Tonkin Distributing Co. v. Collins*,
50 Cal. App. 2d 790 (1942) .......................................................................................12

*Tyson v. City of Sunnyvale*,
920 F. Supp. 1054 (N.D. Cal. 1996) ..........................................................................20

RENNE PUBLIC LAW GROUP
Attorneys at Law

-vii-

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

*U.S. v. 87.30 Acres of Land*,
   430 F.2d 1130 (9th Cir. 1970) ...................................................................................18

*Unified Data Servs., LLC v. FTC*,
   39 F.4th 1200 (9th Cir. 2022) ...................................................................................11

*Webb v. Trader Joe's Co.*,
   999 F.3d 1196 (9th Cir. 2021) ...................................................................................17

*Wineries of the Old Mission Peninsula Association v. Peninsula Township*,
   2022 WL 2155097 (W.D. Mich. June 3, 2022) .........................................................19

*World Wide Rush v. City of Los Angeles*,
   606 F.3d 676 (9th Cir. 2010) ....................................................................................13

*Yelp, Inc. v. Paxton*,
   No. 23-cv-04977-TLT, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ..........................7

*Younger v. Harris*,
   401 U.S. 37 (1971).............................................................................................*passim*

*Yu v. Alcoholic Bev. etc. Appeals Bd.*,
   3 Cal. App. 4th 286 (1992) .......................................................................................18

**Statutes**

Alcoholic Beverage Control Act (ABC)...............................................................................9, 15

California Business & Professions Code
   § 23356.1 ..................................................................................................................12
   § 23358(e) ................................................................................................................15
   § 23386.....................................................................................................................12
   § 23790.....................................................................................................................15
   § 23791.....................................................................................................................15
   § 25241.....................................................................................................................19

California Code of Civil Procedure
   § 426.10(c) .................................................................................................................6
   § 426.30.......................................................................................................................6
   § 428.10.......................................................................................................................5

California Code of Regulations
   tit. 4, § 53 .................................................................................................................12
   tit. 24, § 1.1.2 ...........................................................................................................15
   tit. 24, § 1.1.8 ...........................................................................................................15
   tit. 24, § 1004.1 ........................................................................................................15

NAPA COUNTY'S REPLY ISO MOTION TO DISMISS FAC
OR, IN THE ALTERNATIVE, FOR ABSTENTION
      Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

**Page(s)**

California Code of Federal Regulations
 27 C.F.R. § 4.25 ............................................................................................................19

California Government Code
 § 65852 ...........................................................................................................................20

Napa County Code
 § 1.30.010 .......................................................................................................................18
 § 18.08.040(E) ...............................................................................................................19
 § 18.08.370 ...............................................................................................................10, 13
 § 18.08.600(C) ...............................................................................................................16
 § 18.16.010 .....................................................................................................................15
 § 18.104.210 ...................................................................................................................19
 § 18.104.250 ...................................................................................................................19
 § 18.104.250(C) .............................................................................................................19
 § 18.124.060(A) .............................................................................................................15

United States Code
 42 U.S.C. § 1983 .........................................................................................................1, 6

**Other Authorities**

United States Constitution
 Dormant Commerce Clause ....................................................................................7, 9, 18
 First Amendment ........................................................................................................*passim*
 Fourth Amendment ...........................................................................................................6
 Fifth Amendment ..............................................................................................................6
 Fourteenth Amendment ....................................................................................................6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ix-

RENNE PUBLIC LAW GROUP
Attorneys at Law

## SUMMARY OF THE ARGUMENT

Plaintiffs' Opposition fails to overcome the myriad flaws in their First Amended Complaint ("FAC") and proposes no curative amendments. On the procedural front, Plaintiffs cannot avoid the timeliness and justiciability pitfalls of their claims or escape abstention by distorting the nature of their own case or the applicable law. As to substance, Plaintiffs' claims—which rely heavily on conclusory legal allegations—fail as a matter of law under the governing standards.

***Timeliness/justiciability.*** Plaintiffs' facial takings, due process, and equal protection claims are governed by the enactment accrual rule in *Action Apartment Association Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2007), because they involve injuries to real property that occurred when the challenged statutes were enacted. *Id.* at 1022, 1027. Contrary to Plaintiffs' assertions (*see* Dkt. 57 at 46:5-19[1]), accrual is not governed by *Scheer v. Kelly*, 817 F.3d 1183 (9th Cir. 2016), because the injuries in that case were not to real property. *See id.* at 1186–87.

By contrast, Plaintiffs' as-applied takings, due process, and equal protection claims are unripe because they did not first apply for and obtain a final decision from the County on any applications for a use permit or permit modification. Despite Plaintiffs' assertions, *Knick v. Township of Scott*, 588 U.S. 180, 188 (2019), did not abrogate the final decision requirement, and even though it is "relatively modest," *Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478 (2021), Plaintiffs fail to meet even that low bar here. *See Little Woods Mobile Villa LLC v. City of Petaluma*, No. 3:23-CV-05177-CRB-1, 2024 WL 2852140, at *5 (N.D. Cal. June 4, 2024).

Even if these as-applied claims were ripe, they would be untimely because Plaintiffs knew or had reason to know of the limits on their land-use entitlements long before the 2-year limitations period. *See Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). They have always had access to their authorizing documents and the County Code is publicly available. What's more, Plaintiff Hoopes Winery LLC ("Hoopes") acknowledges it received its first notice of violation in February 2020 providing that it was "exceeding the allowed uses under the approved Small Winery Exemption (approved in 1984 and amended in 1987) by allowing tours, tastings and marketing events without the benefit of a

---

[1] Unless otherwise noted, all page citations correspond to the blue ECF stamp in the top right corner.

NAPA COUNTY'S REPLY ISO MOTION TO DISMISS FAC
OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Winery Use Permit." *See* FAC ¶ 53; Dkt. 43-27 at 47.  And in 2019, Summit Lake voluntarily

2    participated in a County audit to determine the status of its entitlements, at which point the County

3    informed Summit Lake that it was in violation of its SWE.  *See* FAC ¶¶ 89–91.  Their reliance on "ever-

4    changing ordinance interpretations" is belied by these allegations.  *See Morales v. City and County of San*

5    *Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022) ("[A] party cannot amend pleadings to 'directly

6    contradict an earlier assertion made in the same proceeding.'").

7        **Abstention.**  Abstention is warranted under *Younger v. Harris*, 401 U.S. 37 (1971), *R.R. Comm'n*

8    *of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and *Colorado River Water Conservation Dist. v. United*

9    *States*, 424 U.S. 800 (1976).

10        Plaintiffs remarkably claim that the County's ongoing state enforcement action against Hoopes is

11    unrelated to this action, even though Hoopes filed a cross-complaint under 42 U.S.C. § 1983 against the

12    County in the state action, has raised many of the same constitutional arguments in that case, and Plaintiffs

13    here are seeking to enjoin the County from enforcing the very same laws the state court has found Hoopes

14    violated.  Hoopes' claims in both cases rest on the premise that its activities are allowed under local and/or

15    state law, and even if they weren't, the Constitution prevents the County from enforcing its laws against

16    Hoopes.  Accordingly, granting Hoopes the relief it seeks here would have the practical effect of enjoining

17    the state enforcement action.  *See Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019).  The

18    same is true of Summit Lake and Smith-Madrone.  They seek the same relief as Hoopes here and although

19    they were denied intervention in the state court action, the court found that Hoopes adequately represents

20    their interest in determining whether they "'are allowed to conduct tastings, sales, and marketing events

21    without limitation.'"  Dkt. 53 at 34.  Because their interests are sufficiently intertwined with Hoopes and

22    the relief they seek would have the practical effect of enjoining the state action, abstention is warranted

23    under *Younger*.  *See Herrera*, 918 F.3d at 1044; *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351

24    F.3d 65, 85 (2d Cir. 2003).

25        In addition, abstention is warranted under *Pullman* because the resolution of the state law issue of

26    the scope of Plaintiffs' entitlements under the County Code and the Alcoholic Beverage Control Act could

27    resolve most (if not all) of the remaining issues in the case.  *See Gearing v. City of Half Moon Bay*, 54

28    F.4th 1144, 1151 (9th Cir. 2022); *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801–

02 (9th Cir. 2001).  Although Plaintiffs correctly note that courts generally do not apply *Pullman* in the First Amendment context, this is an atypical case given the late stage of the state court proceedings, the procedural posture of the federal action, and that Plaintiffs' commercial speech claims challenging land-use laws regulating non-expressive conduct are premised on interpretations of state and local law that presumes their desired land-uses are lawful.  *See* Dkt. 53 at 35 n.4; *cf. Porter v. Jones*, 319 F.3d 483, 486, 492 n.10 (9th Cir. 2003) (distinguishing case applying *Pullman* to "commercial speech question").

Finally, abstention is warranted under *Colorado River*.  *See Mendocino Railway v. Ainsworth*, 113 F.4th 1181 (9th Cir. 2024).  Rather than address *Mendocino Railway*, the eight factors set forth in that decision, or any other Ninth Circuit precedent, Plaintiffs argue that the state and federal actions are not "parallel" proceedings since they do not involve identical claims, parties, or requested relief.  Dkt. 57 at 33.  But "[e]xact parallelism … is not required.  It is enough if the two proceedings are substantially similar."  *Mendocino*, 113 F.4th at 1191–92.  That is the case here, particularly since any surviving claims would suffer from timeliness or justiciability problems.

**Monell.**  Plaintiffs cannot maintain a claim for damages against the County under *Monell* for actions outside the limitations period.  Rather than argue that the County employees identified in the amended complaint are final policymakers, Plaintiffs point to cases that pre-date *Twombly*/*Iqbal*.  But they fail to identify any policies, customs, or actions by final policymakers in the limitations period that could plausibly support a *Monell* claim.

**First Amendment**.  Plaintiffs' standing argument rests on a misreading of the County Code.  The County Code's limitations on the number of marketing events a winery may conduct depend on the "marketing plan approved as part of the winery's use permit."  NCC § 18.08.370.  Since Plaintiffs have not alleged that they "plan[] to apply" for a use permit or modification (which would include the approval or denial of a marketing plan), they do not have standing to challenge the County's "initial licensing" scheme.  *See Diamond v. City of San Jose*, 100 F.4th 1059, 1065 (9th Cir. 2024).  For their part, Summit Lake and Smith-Madrone have not "outlined a concrete plan to engage in proscribed conduct" and "'self-censorship alone is insufficient to show injury.'"  *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1211 (9th Cir. 2022).

In any event, the land use ordinances at issue "regulate[] nonexpressive conduct … not speech."

RENNE PUBLIC LAW GROUP
Attorneys at Law

-xii-

1   *See Homeaway.com v. City of Santa Monica*, 918 F.3d 676, 685–86 (9th Cir. 2019); Dkt. 53 at 38–39, 41.

2   The act of pouring wine for visitors (or the visitors' act of consuming such wine) is not speech or even

3   expressive conduct. *See Talk of the Town*, 343 F.3d at 1069 (ordinance "bar[ring] the consumption of

4   alcohol … in no way can be said to regulate conduct containing an element of protected expression"); *SP*

5   *Star Enters. v. City of Los Angeles*, 173 Cal. App. 4th 459, 472 ("The authority cited by Star uniformly

6   involves speech, not on-site sale and consumption of alcohol."); *cf. City of Lakewood v. Plain Dealer*, 486

7   U.S. 750, 761 (1988) ("Newspapers are in the business of expression, while soda vendors are in the

8   business of selling soft drinks.  Even if the soda vendor engages in speech, that speech is not related to the

9   soda.").  Plaintiffs' commercial speech cases either concern laws that restricted actual speech or did not

10  ask whether the laws in question restricted expressive conduct.

11      Plaintiffs assert that they are promoting "lawful" activity under *Central Hudson* because "the sale

12  of wine and wine-related products is lawful."  Dkt. 57 at 38.  But the Ninth Circuit has made clear that the

13  lawfulness inquiry does not operate at such a high level of generality.  *See Homeaway.com*, 918 F.3d at

14  686 (speech promoting unlawful short-term rentals); *see also National Ass'n of Tobacco Outlets, Inc. v.*

15  *City of Providence, R.I.*, 731 F.3d 71, 78 (1st Cir. 2013) (speech promoting unlawful sales of tobacco

16  products by way of coupons and multi-pack discounts).  Because the County Code prohibits wineries from

17  hosting tours and tastings that exceed their use authorization, any purported "speech" promoting these

18  activities is not protected under *Central Hudson*.  Plaintiffs argue that the County ignores *Central*

19  *Hudson*'s third and fourth prongs as well as their content-based claim (*see* Dkt. 57 at 39, 41–42), but that

20  is simply untrue.  The County addressed the content-based claim (*see* Dkt. 53 at 41 n.5) and repeatedly

21  discussed the interests advanced by its ordinances, which are focused on non-expressive conduct and

22  narrowly tailored to achieve those interests.  *See* Dkt. 53 at 22, 23, 41, 49, 53, 58–59; *Hunt v. City of Los*

23  *Angeles*, 638 F.3d 703, 707, 717–18 (9th Cir. 2011) (ordinance restricting vending had "reasonable fit"

24  with purposes of "ensur[ing] that pathways and spaces will be open for both pedestrians and emergency

25  personnel and prevents unregulated vending").

26      Similar to their standing argument, Plaintiffs' prior restraint argument conflates the County's use

27  permitting and temporary event schemes.  The use permitting scheme is what determines a winery's

28  "marketing plan approved as part of the winery's use permit."  *See* NCC § 18.08.370; Dkt. 53 at 42–43.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-xiii-

RENNE PUBLIC LAW GROUP
Attorneys at Law

That law and its interpretive guidance (which the Board of Supervisors itself approved, *see* Dkt. 43-48) does not vest unbridled discretion in anyone, particularly with respect to wineries that cannot have any marketing events. *See World Wide Rush v. City of Los Angeles*, 606 F.3d 676, 680 (9th Cir. 2010) ("the prior restraint doctrine does not require the City to restrict 'the general discretion a legislative body has to enact … laws'"). By contrast, the temporary event permitting scheme requires governmental approval to engage in temporary events commonly associated with expressive activities. Plaintiffs do not even appear to challenge those procedures, which provide narrowly drawn and definite standards for granting, revoking, or suspending a license as well as clear timelines. *See* NCC § 5.36.010 *et seq.*; *Diamond*, 100 F.4th at 1068. Plaintiffs rely heavily on *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022). But the examples they identify from that case are distinguishable (*see* Dkt. 57 at 40–41) and its most salient discussion strongly supports the County. *See Spirit of Aloha*, 49 F.4th at 1188–89 ("laws requiring building permits" or allowing a mayor to "'decide which soda vendors may place their machines on public property'" "'[e]ven if the soda vendor engages in speech'" do not have a close enough nexus to expression (quoting *City of Lakewood*, 486 U.S. at 761)).

Finally, Plaintiffs' retaliation claim is not viable because it relies on allegations that "are contradicted by exhibits attached to the [Amended] Complaint," *see Philco Investments, Ltd. v. Martin*, No. C 10-02785 CRB, 2011 WL 4595247, at *7 n.9 (N.D. Cal. Oct. 4, 2011), and "'bad motive does not amount to a constitutional tort if that action would have been taken anyway,'" *Smith v. County of Santa Cruz*, 2020 WL 6318705, *10 (N.D. Cal. Oct. 28, 2020). Moreover, "'[m]ere threats and harsh words,'" such as "detail[ing] plaintiffs' alleged code violations and how to remedy the violations, and warn[ing] of action by the County Code Enforcement department if the violations are not rectified," are "'insufficient' to support a retaliation claim." *Kolstad v. County of Amador*, 2013 WL 6065315, at *5 (E.D. Cal. Nov. 14, 2013).

**Preemption**. Plaintiffs' state preemption claim is foreclosed by the plain language of the ABC and the Building Code, which explicitly allow for more restrictive local zoning regulations. *See* Cal. Bus. & Prof. Code §§ 23358(e), 23790, 23791; *see Floresta, Inc. v. City Council of San Leandro*, 190 Cal. App. 2d 599, 604–07 (1961) (zoning regulations are simply a "geographic restriction … not an invasion of the state's general regulation and limitation of the consumption of liquors as such"). Nor does the County's

1   failure to object to Hoopes's Type 02 license limit the County's regulatory authority. *See Jon-Mar Co. v.*

2   *City of Anaheim*, 201 Cal. App. 2d 832, 837–38 (1962).

3          Plaintiffs' federal preemption claim rests on even shakier ground—the unpleaded assertion that the

4   County regulates the depiction of animals on Hoopes' wine labels in conflict with federal law. Dkt. 57 at

5   55. But Plaintiffs fail to identify any ordinance that purports to regulate wine labeling, let alone meet the

6   high bar for establishing that there is "'no set of circumstances'" where the ordinance could be valid. *See*

7   *Helicopters for Agriculture v. County of Napa*, 384 F. Supp. 3d 1035, 1040-43 (N.D. Cal. 2019); *Bronco*

8   *Wine Co. v. Jolly*, 33 Cal. 4th 943, 989 (2004) (federal law does not preempt state wine labeling laws).

9          ***Due Process.*** The County Code is not unconstitutionally vague. The County Code provides

10  extensive definitions and clear regulatory guidance, ensuring fair notice of permitted and prohibited uses,

11  especially when read in context with the broader regulatory scheme and stated legislative purpose. Dkt.

12  53 at 47:5–48:15. Plaintiffs cite a selective group of documents from the state enforcement action in

13  support of this claim, but the Superior Court, considering all the evidence (not just what Plaintiffs chose to

14  attach to the FAC), rejected Hoopes's argument that the regulations are unconstitutionally vague and

15  "found that Hoopes violated its SWE by expanding its uses outside its entitlements." Dkt. 54 at 113–15.

16         Plaintiffs' land use entitlements are determined through their authorizing land use documents and

17  the County Code. *See* Dkt. 53 at 27–29. Contrary to Plaintiffs' assertions, alterations to the Winery

18  Database do not require notice or any process under the Due Process Clause because the Database does

19  not have the force of law. It is simply a reference tool designed to aggregate data for the Planning

20  Commission, not to determine the entitlements of individual wineries. Additionally, the Database must

21  reflect different types of permits, and the accuracy of the information is sometimes compromised in order

22  to draw comparisons. The Database is a useful tool, but it is not, and was never represented to be, a one-

23  to-one reflection of a property's legal entitlements. If the County decided to delete the database

24  altogether, there is no credible argument that Plaintiffs' entitlements were also deleted. Plaintiffs'

25  arguments simply cannot overcome the rule that "equitable estoppel will not be applied to allow a

26  landowner to circumvent land use restrictions even when the landowner relies on the public entity's

27  express representation that the landowner's plans comply with the entity's land use requirements and

28  certainly not when the public entity simply fails to take early action to warn the landowner the plans

RENNE PUBLIC LAW GROUP
Attorneys at Law

-xv-

violate the land use requirements." *See Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal. App. 4th 249, 262 (2008).

***Non-Delegation***.  Plaintiffs have not identified any permit conditioned on the consent of a third party, who the third party was, who was applying for the permit, or when the final decisions were made. They argue that they have standing based on an out-of-circuit case where the plaintiffs (unlike here) submitted a zoning application.  And while they argue discovery is necessary to support this claim, the Ninth Circuit does not "'condone the use of discovery to engage in 'fishing expedition[s]' ' where, like here, it is obvious that [plaintiff] has no basis other than gross speculation" to support their claim. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021)

***Takings.***  Plaintiffs fail to plead sufficient non-conclusory factual details to support a plausible claim of an unconstitutional exaction under *Nollan/Dolan*.  Specifically, their conclusory allegations do not plausibly allege a lack of "essential nexus" and "rough proportionality" to the County's land use interests.  Plaintiffs' argument that permits including an indemnity provision is an unconstitutional "monetary exaction" also fails because an indemnity provision that only applies to third-party actions attacking an applicant's *own* permit is plainly not a "monetary exaction," and easily satisfies nexus and proportionality.

Plaintiffs' regulatory takings claim under *Penn Central* rests on the faulty premise that they have been deprived of a property right that their authorizing documents, the County Code, and the Alcoholic Beverage Control Act does not convey.  "While a license to practice a trade is generally considered a vested property right, a license to sell liquor is a privilege that can be granted or withheld by the state." *Yu v. Alcoholic Bev. etc. Appeals Bd.*, 3 Cal. App. 4th 286, 297 (1992).  Nor may "evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses … be considered." *U.S. v. 87.30 Acres of Land*, 430 F.2d 1130, 1132 (9th Cir. 1970).  Plaintiffs' argument that they have reasonable investment-backed expectations (Dkt. 57 at 49:6-10) fares no better because the allegation that Plaintiffs have historically offered tours and tastings in obvious violation of their permit exemptions cannot form the basis of "'objectively reasonable'" investment-backed expectations.  Dkt. 53 at 57.

***Dormant Commerce Clause.***  Plaintiffs do not have standing to challenge the County's grape-sourcing law under the Dormant Commerce Clause despite their faulty and misleading reading of the

County's allegations in the state enforcement action and their "wish[] to expand their wineries. *See* Dkt. 53 at 51 (mere "desire[]" to move to a zoning district is not sufficient to satisfy Article III). They also ignore Ninth Circuit precedent on what constitutes per se discrimination and rely on inapposite cases involving regulations that (unlike here) directly regulated the sale, distribution, or shipment of goods. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015).

  ***Equal Protection***.  Plaintiffs rely heavily on a state statute regarding zoning uniformity (Cal. Gov. Code § 65852), but courts have explained that "[n]either the federal Constitution nor the state Constitution imposes a zoning uniformity doctrine." *Sacramentans for Fair Plan. v. City of Sacramento*, 37 Cal. App. 5th 698, 716 (2019).  In any event, they have failed to establish that the various wineries in the County that have different land use entitlements are similarly situated wineries operating pursuant to Small Winery Exemptions, or even with use permits that allow similar uses, or have similar histories. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167–68 (9th Cir. 2005) (different land uses, or even an identical use in a different zone, do not qualify as similarly situated).

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

RENNE PUBLIC LAW GROUP
Attorneys at Law

**NAPA COUNTY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

### I.    INTRODUCTION

Plaintiffs' Opposition, like their First Amended Complaint ("FAC"), mischaracterizes the nature of their own case, the applicable legal standards, and the plain meaning of the operative facts. Plaintiffs remarkably claim that the County's state enforcement action against Plaintiff Hoopes Winery LLC ("Hoopes") is unrelated to this action, even though Hoopes filed a cross-complaint under 42 U.S.C. § 1983 against the County in the state action, has raised many of the same constitutional arguments in that case, and Plaintiffs here are seeking to enjoin the County from enforcing the very same laws the state court has found Hoopes violated. Contrary to Plaintiffs' assertion that "this case is about constitutional rights, not land use" (Dkt. 57 at 24), the state and federal cases are two sides of the same coin. Hoopes' claims in both cases rest on the premise that its activities are allowed under local and/or state law, and even if they weren't, the Constitution prevents the County from enforcing its laws against Hoopes. The state court rejected these arguments in Phase I after finding that Hoopes adequately represents Summit Lake's and Smith-Madrone's interest in determining whether wineries like Plaintiffs "are allowed to conduct tastings, sales, and marketing events without limitation.'" Dkt. 53 at 34. But the case is still ongoing. Abstention is therefore warranted under *Younger*, *Pullman*, and *Colorado River*.

In any event, Plaintiffs' claims are hopelessly flawed. Many of their claims are untimely or unripe. Others fail to articulate a cognizable injury. Plaintiffs assert that their allegations about "the rights they have … must be accepted as true at this stage." *See* Dkt. 57 at 51. But "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). And what's more, even Plaintiffs' conclusory allegations do not support a claim under the governing substantive law. Because Plaintiffs do not offer curative amendments, the Court should grant the County's motion and either abstain or dismiss with prejudice.

### II.    ARGUMENT

#### A.    Plaintiffs' Facial Due Process, Takings, and Equal Protection Claims Are Untimely

Plaintiffs wrongly contend that the enactment accrual rule from *Action Apartment Association Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2007), is limited to physical takings affecting the price of real property. *See* Dkt. 57 at 46:4. First, Plaintiffs have claimed that abiding by the

-1-

County's laws will impose "a significant property devaluation."  *See* Dkt. 43-20 ¶ 12 (Smith-Madrone).

Second, their narrow reading of *Action Apartment* directly contradicts its holding, which addressed

regulatory takings related to a rent control ordinance, not a physical taking, and saw "no reason to

distinguish between facial takings claims and facial substantive due process claims."  *See* 509 F.3d at

1022, 1027.  Plaintiffs' facial substantive due process, takings, and equal protection claims concern the

"continuing impact of" a prior harm involving property, namely the alleged denial of their entitlements to

offer tours, tastings, and other commercial services to the public.  *See Knox v. Davis*, 260 F.3d 1009, 1013

(9th Cir. 2001).  Those claims accrued when the County enacted the challenged regulations.

Contrary to Plaintiffs' assertions (*see* Dkt. 57 at 46:5-19), accrual is not governed by *Scheer v.

Kelly*, 817 F.3d 1183 (9th Cir. 2016), because the injuries in that case were not to real property.[2]  *Id*. at

1186–87.  Additionally, Plaintiffs' concerns that wineries that were not in existence within two years of

the regulation's enactment could not bring a claim are inapt because those wineries could bring an as-

applied claim.  *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993).  Plaintiffs also

argue that a "death by a thousand cuts" takings claim is timely as long as one of the "cuts" occurs within

the limitations period.  *See* Dkt. 57 at 46:13-19.  But that is not the case for any of the challenged laws.

## B. Plaintiffs' As-Applied Due Process, Takings, and Equal Protection Claims Are Unripe

Plaintiffs incorrectly assert that the County's ripeness argument relies on the "since-disavowed"

rule that plaintiffs must seek compensation through state procedures.  *See* Dkt. 57 at 44:25-45:3.  Not so.

The County's ripeness argument relies on the finality rule, which is a separate requirement that has never

been abrogated.  *See* Dkt. 53 at 46, 54; *Knick v. Township of Scott*, 588 U.S. 180, 188 (2019) ("Knick does

not question the validity of this finality requirement, which is not at issue here").

Plaintiffs are correct that "[t]he finality requirement is relatively modest."  Dkt. 57 at 45:4 (citing

*Pakdel v. City & County of San Francisco*, 594 U.S. 474 (2021)).  But they fail to meet even that low bar.

They allege that the County's permitting process violates their constitutional rights and that the County

has required excessive exactions to obtain a permit, yet none of them have completed the permitting

---

[2] The Ninth Circuit recently reaffirmed that not all facial challenges accrue at the time of enactment.  *See Thomas v. Cnty. of Humboldt*, 124 F.4th 1179 (9th Cir. 2024).  But the injuries giving rise to excessive fines claims flowed from "the County's imposition of penalties," not a statute's enactment.  *Id.* at 1191.

NAPA COUNTY'S REPLY ISO MOTION TO DISMISS FAC
OR, IN THE ALTERNATIVE, FOR ABSTENTION

Case No. 3:24-cv-06256-CRB

RENNE PUBLIC LAW GROUP
Attorneys at Law

process.  Hoopes and Smith-Madrone have never even applied for additional uses beyond their historical entitlements.  *See* FAC ¶¶ 150, 648–54.  "[N]o cases—*Pakdel* included—support Plaintiffs' view that the ripeness requirement can be satisfied where a plaintiff takes no action at all, and instead merely alleges that all of the available processes would be futile and expensive." *Little Woods Mobile Villa LLC v. City of Petaluma*, No. 3:23-CV-05177-CRB-1, 2024 WL 2852140, at *5 (N.D. Cal. June 4, 2024).

Without a final decision regarding Plaintiffs' hypothetical permit applications, adjudicating their as-applied due process, takings, and equal protection claims would require impermissible speculation as to how the application process would proceed and under what conditions, if any, a permit might be issued. *See Pakdel*, 594 U.S. at 475.  These as-applied claims are not ripe.

## C. Plaintiffs' As-Applied Due Process, Takings, Equal Protection, and Preemption Claims Are Untimely

Even if ripe, Plaintiffs' as-applied claims would be untimely because the alleged injuries would have occurred well outside the limitations period.  In their initial complaint (Dkt. 1) Plaintiffs did not allege any County conduct within the limitations period.  Following the County's motion to dismiss, they added to the FAC allegations that the County's "ever-changing ordinance interpretations" caused Plaintiffs' injuries and that they were allegedly unaware of these "interpretations" until the County's 2022 enforcement action against Hoopes.  *See* Dkt. 43-55, ¶¶ 1, 73, 188, 262, 265, 308, 309, 323, 328, 352, 380, 398, 533, 541, 664, 668, 671, 672.  Based on these allegations, Plaintiffs argue that their claims accrued within two years of the FAC.  *See* Dkt. 57 at 46:27-28.  But the County's determination regarding Plaintiffs' entitlements is based on the County Code and Plaintiffs' authorizing land use documents, which have always been public and have not changed in decades.  *See* Dkt. 43-1; Dkt. 43-12; Dkt. 43-19. Plaintiffs thus "kn[e]w or ha[d] reason to know of the[ir] injury" long before filing suit.  *See Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).

Furthermore, Plaintiffs' allegation that they were unaware of the alleged injuries until the 2022 enforcement action against Hoopes is contradicted by their own allegations.  Plaintiffs allege that Hoopes received its first notice of violation from the County on February 14, 2020.  *See* FAC ¶ 53; Dkt. 43-27 at 47.  The notice of violation provided that Hoopes was "exceeding the allowed uses under the approved Small Winery Exemption (approved in 1984 and amended in 1987) by allowing tours, tastings and

RENNE PUBLIC LAW GROUP
Attorneys at Law

marketing events without the benefit of a Winery Use Permit."[3]  Plaintiffs allege that in 2019, Summit Lake voluntarily participated in a County audit to determine the status of its entitlements, at which point the County informed Summit Lake that it was in violation of its SWE.  *See* FAC ¶¶ 89–91.  Hoopes and Summit Lakes' as-applied due process, takings, equal protection, and preemption claims began to accrue at the latest when they received notice from the County that they were in violation of their SWEs.[4]  *See Morales v. City and County of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022) ("[A] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'").

Plaintiffs argue that the statute of limitations for their preemption claim should be equitably tolled.  *See* Dkt. 57 at 57–58.  This contradicts their allegations that both Hoopes and Summit Lake received notice directly from the County that they were operating in violation of their SWEs in 2019 and 2020.  *See* FAC ¶¶ 53, 89–91.  Plaintiffs assert that they had no reason to bring a claim because a 2010 informational brochure distributed by the County provided that "'no Modification would be necessary' where on-site consumption is proposed to occur entirely within existing tasting room space.'"  *See* Dkt. 57 at 58:11-20; Dkt. 43-53.  However, they omit the very first line of the cited section of the brochure that provides, "In most circumstances, the addition of retail wine sales for on-site consumption to an existing winery Use Permit will require a Use Permit Modification."  Dkt. 43-53.  Nor does this 2010 document contradict the County's later direct notice to Plaintiffs in 2019 and 2020 that they were not permitted to provide tastings and tours.  Plaintiffs' argument for equitable tolling is wholly unsupported.

### D. Abstention Is Warranted Under *Younger*, *Pullman*, and *Colorado River*

#### 1. *Younger* Abstention

Plaintiffs do not dispute that the state enforcement action is ongoing.  Nor could they dispute that the state action implicates an important state interest since a "state nuisance enforcement action brought by [a] City against [landowners] is a civil enforcement proceeding within the scope of the *Younger* doctrine."  *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043–44 (9th Cir. 2019).  Instead, they

---

[3] The Superior Court found after an 11-day bench trial that Hoopes was aware in 2017, before purchasing the property at issue, that the predecessor in interest was not allowed to host tastings.  *See* Dkt. 54 at 104; *see also* Dkt. 43-27 at 39-41 (June 2017, Notice of Violation to Hopper Creek Winery).

[4] Plaintiffs allege that Smith-Madrone has never applied to modify its winery use permit or clarify its entitlements.  FAC ¶ 150.  For this reason, Smith-Madrone's claims are not ripe.  *See* § II.B.  Still, Smith-Madrone had constructive notice of its own winery use permit and the County Code.

RENNE PUBLIC LAW GROUP
Attorneys at Law

mischaracterize the inextricable overlap between the state and federal action, invoke extraordinarily narrow exceptions that have no purchase here, and ignore the state court's finding that Hoopes would adequately represent Summit Lake's and Smith-Madrone's interest in determining whether they "are allowed to conduct tastings, sales, and marketing events without limitation.'" Dkt. 53 at 34.

### a. Hoopes fails to show it did not have an adequate opportunity to raise its federal claims in the state enforcement action

Hoopes argues that the issues in this federal action are "'wholly unrelated'" to the claims and defenses in the state enforcement action against it and points to "dozens of issues not present in the state court case." *See* Dkt. 57 at 16, 28–30 (citing *Lebbos v. Judges of Superior Court, Santa Clara Cty.*, 883 F.2d 810, 817 (9th Cir. 1989)).[5]  This assertion strains credulity given the significant overlap in issues, Plaintiffs' allegations, their requested relief, and Hoopes' recent briefing in the state court action. *See* Dkt. 53 at 34 (citing FAC, SAC, and Statement of Decision); County's Supplemental Request for Judicial Notice ("SRJN"), Ex. A at 33–35, 40–43; Dkt. 57 at 37 (asserting that the County's First Amendment argument was foreclosed by California law); *id.* at 48 (relying on state law liquor license to show a deprivation of their property rights); *id.* at 54–55 (articulating state preemption theory).

In any event, "[a] federal court's exercise of *Younger* abstention does not turn on whether the federal plaintiff actually avails himself of the opportunity to present federal constitutional claims in the state proceeding, but rather whether such an opportunity exists." *Herrera*, 918 F.3d at 1046.  Importantly, the *Lebbos* court "could find no authority … that would lead [the court] to believe that claims for damages arising from alleged constitutional torts … may also be raised in such an [unlawful detainer] action." 883 F.2d at 817.  By contrast, in *Herrera*, the Ninth Circuit rejected the "argument that the federal action is 'irrelevant' to the state action" since the state nuisance enforcement "proceeding is a civil action in Los Angeles County Superior Court over which the state court has general jurisdiction" and California's permissive cross-complaint statute (Cal. Code Civ. Proc. § 428.10) gave the plaintiffs an adequate "opportunity to raise federal constitutional claims in the state action." 918 F.3d at 1046.

Hoopes resists this conclusion based on the common law preclusion principles discussed in

---

[5] Plaintiffs assert that "Napa bears the burden on this issue" of abstention. Dkt. 57 at 25.  But that is incorrect.  *See Commc'ns Telesystems Int'l v. CPUC*, 196 F.3d 1011, 1020 (9th Cir. 1999).

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004). *See* Dkt. 57 at 30. That case did not address

2   abstention. What's more, Hoopes completely ignores *Maldonado*'s discussion of preclusion principles

3   under California's compulsory cross-complaint statute (*see* Cal. Code Civ. Proc. §§ 426.30 & 426.10(c)),

4   which did not apply in that case because "[s]tate agencies (such as Caltrans) are not 'persons within the

5   meaning of § 1983 and are therefore not amenable to suit under that statute." 370 F.3d at 951. Here, by

6   contrast, Hoopes could have—and did—file a cross-complaint against the County (as well as County

7   employees) in response to the state nuisance action. Dkt. 54, Exhibit B.

8              **b.    The relief Hoopes seeks in this action would have the practical effect of**
9                      **enjoining the ongoing state enforcement action**

10         Plaintiffs next contend that abstention requires a claim-by-claim analysis. *See* Dkt. 57 at 28–29.

11   True enough. But that does not help them here. In *Herrera*, the Ninth Circuit held that abstention applied

12   to the plaintiffs' federal claims for damages under § 1983 for alleged violations of the First, Fifth, and

13   Fourteenth Amendments, the Contract Clause, and under the Fair Housing Act. *See* 918 F.3d at 1048–49.

14   The only claim that was not covered by *Younger* was a Fourth Amendment claim that "would presumably

15   not invalidate the basis for the code-violation enforcement proceedings." *Id.* at 1049.

16         Here, Hoopes has asked this Court to declare that many of the same laws the County is seeking to

17   enforce in the state court action are unlawful, award damages based on those determinations, and enjoin

18   the County from enforcing those laws. *See supra* § II.D.1.a; Dkt. 53 at 34. Hoopes has also opposed

19   injunctive relief in the state action by raising the same federal arguments it presents here—completely

20   undermining its improper declaration. *See* SRJN, Ex. A at 33–35, 40–43; County's Obj. to Infante Decl.;

21   *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801–02 (9th Cir. 2001) (city brought

22   state proceeding to enjoin landowners from renting residential units without a valid business license and

23   federal plaintiff sought to declare that license fees imposed by ordinance were illegal and to restrain the

24   city from enforcing ordinance); *Calvary Chapel San Jose v. Cody*, No. No. 20-cv-03794-BLF, 2023 WL

25   2638318, at *9 (N.D. Cal. Mar. 10, 2023) ("a determination in this Court on the constitutionality of the

26   public health orders would preclude the state court from making such a determination").

27             **c.    None of the narrow exceptions to *Younger* applies here**

28         Hoopes fails to meet the "heavy" burden of establishing that one of the "'narrow'" exceptions to

-6-

*Younger* applies.  *See Yelp, Inc. v. Paxton*, No. 23-cv-04977-TLT, 2024 WL 413464, at *4 (N.D. Cal. Feb. 1, 2024).  "[W]here the state officials have sought and received judicial authorization for their conduct, the necessity of bad faith allegations against the Superior Court itself cannot be understated…. Without specific allegations that the Superior Court is itself acting in bad faith, this federal tribunal must respect the competency of the parallel state court system to correct any mistakes of law that are made in that system."  *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 597 n.11 (9th Cir. 2022); *see also Stein v. Harris*, No. C 12–00985 CRB, 2012 WL 3202959, at *8 (N.D. Cal. Aug. 3, 2012) ("there are no plausible allegations of bad faith here" given that state court entered preliminary injunction in the government's favor); *General Steel v. Suthers*, 2007 WL 704477, at *12 (E.D. Cal. Mar. 2, 2007) ("the court in the Colorado AG action has already found that General Steel was liable for violating state consumer protection law in 'Phase I'").  Here, Plaintiffs assert that the County retaliated against Hoopes for exercising its First Amendment rights (*see* Dkt. 57 at 30), but they do not allege that the County initiated the state nuisance enforcement action in retaliation or that the Superior Court acted in bad faith.

The "flagrantly and patently violative" exception is similarly unavailing.  *See Dubinka v. Judges of Superior Court*, 23 F.3d 218, 225 (9th Cir. 1994) (exception did not apply where "[a]ppellants' claims require the interpretation of case law dealing with criminal procedure and due process, a complex area of law in which many decisions turn on the specific facts of the case").  "The refusal to apply the exception in the *Younger* case, itself, illustrates the narrowness of this exception" since "the statute under which [the plaintiff] was indicted … had been effectively invalidated the previous year."  *Id.*  Plaintiffs point to *Central Hudson* and the dormant Commerce Clause, but as discussed below, they fail to show that the County's ordinances are unlawful, let alone that they are "flagrantly and patently" so in every clause, sentence, paragraph, and in each and every application.  *See infra* §§ II.F.2–4, II.L.

### d.   *Younger* applies to third parties (like Summit Lake and Smith-Madrone) with sufficiently intertwined interests with state court parties (like Hoopes) that adequately represent those interests

Plaintiffs argue that Summit Lake and Smith-Madrone "'must be treated independently for purposes of *Younger* abstention'" because they "are not parties to the ongoing *Hoopes* lawsuit" and "are also different from Hoopes in terms of ownership, control, and management."  Dkt. 57 at 27 (quoting *Canatella v. California*, 404 F.3d 1106, 1116 (9th Cir. 2005)).  But *Canatella* recognized that *Younger* can

RENNE PUBLIC LAW GROUP
Attorneys at Law

apply to third parties with *either* "a sufficiently close relationship *or* sufficiently intertwined interests"

with "'the state court party that direct interference with the state court proceeding is inevitable.'" 404

F.3d at 1116 (emphasis added). The Ninth Circuit recently confirmed this understanding after pointing to

decisions from "[s]everal of [its] sister circuits." *Herrera*, 918 F.3d at 1047 (citing *Spargo v. N.Y. State*

*Comm'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003)); *see* Dkt. 53 at 34. This makes Plaintiffs'

accusations of the County's "misleading" citation to *Herrera* (*see* Dkt. 57 at 27) all the more perplexing.

The third parties in *Herrera* met the close relationship prong based on their familial ties, but that does not

mean that such ties are necessary to meet the intertwined interests prong, particularly when interference

with the state proceeding is inevitable. *Spargo* makes clear they aren't.

In *Spargo*, "the legal analysis of the plaintiffs' claims [were] unavoidably intertwined and

inseparable" where political supporters of a state court judge sought to enjoin the defendants from

"enforcing the challenged judicial conduct rules" that formed the basis of a state disciplinary proceeding

against the judge. 351 F.3d at 84–85. Critically, there was "no suggestion that [the judge] would fail to

adequately represent plaintiffs' interests in the state disciplinary proceeding." *Id.* at 85 & n.21.

Rather than address *Spargo*, Summit Lake and Smith-Madrone assert that *Doran v. Salem Inn,*

*Inc.*, 422 U.S. 922 (1975) "foreclose[s]" abstention based on their lack of common "ownership, control,

and management." Dkt. 57 at 16, 26. But as *Spargo* explained, "[w]hile both *Hicks* and *Doran* arguably

focus on the fact of joint ownership and control, neither decision limits the application of *Younger* to

cases where the parties are financially related or linked by mutual management." 351 F.3d at 82.

Moreover, unlike here, the third-party bars in *Doran* did not try to intervene, there was no finding that

their interest in the legality of the ordinances at issue would be adequately represented, and "the state

prosecution was commenced the day following the filing of the federal complaint." 422 U.S. at 929.

### e.    The County is not estopped from arguing abstention as to Summit Lake and Smith-Madrone

Notably, Plaintiffs fail to address the state court's finding that Hoopes can adequately represent

Summit Lake's and Smith-Madrone's "Determination Interest." *See* Dkt. 53 at 34; *Spargo*, 351 F.3d at 85

& n.21. Instead, they argue that the County's *Younger* argument is "disingenuous after it fought state

court intervention" and foreclosed by principles of judicial estoppel. Dkt. 57 at 27 & n.1. But the Ninth

RENNE PUBLIC LAW GROUP
Attorneys at Law

Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). And here, even though the County contested Summit Lake's and Smith-Madrone's identity of interests with Hoopes in opposing intervention (Dkt. 43-15 at 5–6 & Dkt. 43-21 at 5–6), the state court declined to adopt that argument as to the Determination Interest. *See* Dkt. 43-17 at 4–5, 10. Instead, the state court adopted the County's argument—which it continues to assert here—that Hoopes would adequately represent Summit Lake and Smith-Madrone's Determination Interest. *See* Dkt. 43-17 at 4–5, 10; Dkt. 43-15 at 6–7 (arguing that Summit Lake "fails to establish that its interests are not adequately protected by Hoopes"); Dkt. 43-21 at 7 (same argument regarding Smith-Madrone). More fundamentally, the County is not taking inconsistent positions since it is seeking a stay of Summit Lake's and Smith-Madrone's damages actions. Once the state court action is finally resolved, they are free to litigate whatever remains of their claims—just not alongside Hoopes.

### 2.    *Pullman* Abstention

Plaintiffs oppose *Pullman* abstention because "'First Amendment rights are at stake.'" Dkt. 57 at 31. But this is the atypical case given the late stage of the state court proceedings, the procedural posture of the federal action, and that Plaintiffs' commercial speech claims challenging land-use laws regulating non-expressive conduct are premised on interpretations of state and local law that presumes their desired land-uses are lawful. *See* Dkt. 53 at 35 n.4; *cf. Porter v. Jones*, 319 F.3d 483, 486, 492 n.10 (9th Cir. 2003) (distinguishing case applying *Pullman* to "commercial speech question").

As to the remaining factors, Plaintiffs fail to address *Columbia Basin Apartment Ass'n*, 268 F.3d at 805–06. They contend their First Amendment claims "do not rise and fall with the preemption claim" (Dkt. 57 at 31). But these claims turn on the assertion that their desired land-uses are in fact lawful under the County Code, the California Alcoholic Beverage Control Act, and the California Building Code. *See* FAC ¶¶ 444–57; Dkt. 57 at 37 ("Napa's 'conduct' argument is also foreclosed by California law."); *infra* § II.G. Plaintiffs also point to their equal protection, due process, takings, and dormant Commerce Clause claims. But these claims likewise rest on the scope of their entitlements under local and state law (*see* Dkt. 57 at 48–51; FAC ¶¶ 560–62, 598–601, 677–92) and, regardless, "a district court adjudicating [Plaintiffs'] federal claims will almost certainly need to ascertain the proper interpretation of [local and

-9-

state law] and how they interact as applied to the [Plaintiffs'] properties." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1151 (9th Cir. 2022). Finally, Plaintiffs quibble with the County's recitation of the "uncertainty" standard, but the Ninth Circuit "generally require[s] only a minimal showing of uncertainty in land-use cases." *Id.* at 1151. That minimal showing is easily satisfied here.

### 3. *Colorado River* Abstention

In responding to the County's *Colorado River* argument, Plaintiffs do not address *Mendocino Railway v. Ainsworth*, 113 F.4th 1181 (9th Cir. 2024), the eight factors set forth in that decision, or any other Ninth Circuit precedent. Dkt. 53 at 36. Instead, they argue that the state enforcement action and this federal action are not "parallel" proceedings since they do not involve identical "'claims, parties, or requested relief.'" Dkt. 57 at 33. But "[e]xact parallelism … is not required. It is enough if the two proceedings are substantially similar." *Mendocino*, 113 F.4th at 1191–92 (rejecting argument that "the Federal Action contains claims that are broader than those in the State Action" in part because some claims "not mooted or otherwise addressed by the State Action … would be unripe"); *accord Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017); *see supra* § II.D.1.a–b.

### E. Plaintiffs Cannot Recover Damages Under *Monell* Because They Fail to Identify Any Policies, Customs, or Actions by Final Policymakers in the Limitations Period

Plaintiffs concede that the County employees they refer to in their amended complaint are not final policymakers. Instead, they contend that a "'bare allegation that the actions of individual employees conformed to official policy suffices to withstand a motion to dismiss.'" Dkt. 57 at 34. But the cases they rely on pre-date *Twombly/Iqbal*. Plaintiffs fail to articulate an official policy within the limitations period with sufficient detail to plausibly state a claim under *Monell*. *See* Dkt. 53 at 37.

### F. Plaintiffs Fail to State a First Amendment Claim

#### 1. Plaintiffs Lack Standing to Challenge the County's Initial Permitting Scheme

Plaintiffs' misreading of the County's standing argument (*see* Dkt. 53 at 38) flows from their misreading of the County Code. They focus heavily on the restriction on the number of "marketing events" they may host. *See* Dkt. 57 at 18, 36, 38, 41. But the County Code's limitations on the number of marketing events a winery may conduct depend on the "marketing plan approved as part of the winery's use permit." NCC § 18.08.370. Since Plaintiffs have not alleged that they "plan[] to apply" for a use

RENNE PUBLIC LAW GROUP
Attorneys at Law

permit or modification (which would include the approval or denial of a marketing plan), they do not have standing to challenge the County's "initial licensing" scheme.  *See Diamond v. City of San Jose*, 100 F.4th 1059, 1065 (9th Cir. 2024); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) (plaintiff lacked standing to challenge permitting process where it did not "evince[] any intent to file permit applications that comply with" the city's constitutionally valid requirements).[6]

### 2.  The County's Land-Use Regulations Implicate Conduct, Not Speech

The fact remains that the land use ordinances at issue regulate conduct, not speech.  Dkt. 53 at 38–39, 41.  Plaintiffs ignore *Homeaway.com v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), which upheld an ordinance restricting "short-term home rentals" because it "regulate[d] nonexpressive conduct—namely booking transactions—not speech."  *Id.* at 685–86.  Plaintiffs distinguish *Talk of the Town v. Dep't of Finance*, 343 F.3d 1063 (9th Cir. 2003), on the ground that it involved a law that applied to all businesses.  But this was important because otherwise the law—which banned the purchase, sale, or consumption of alcohol in erotic dancing establishments without a valid liquor license—might be read to single out the "expressive conduct" of "erotic dancing."  *Id.* at 1068 n.11.

By contrast, the act of pouring wine for visitors (or the visitors' act of consuming such wine) is not speech or even expressive conduct.  *See Talk of the Town*, 343 F.3d at 1069 (ordinance "bar[ring] the consumption of alcohol … in no way can be said to regulate conduct containing an element of protected expression"); *SP Star Enters. v. City of Los Angeles*, 173 Cal. App. 4th 459, 472 ("The authority cited by Star uniformly involves speech, not on-site sale and consumption of alcohol."); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 726 (7th Cir. 2003) ("This is not a restriction on erotic expression, but a prohibition of nonexpressive conduct (i.e., serving and consuming alcohol during the presentation of expressive conduct)."); *cf. City of Lakewood v. Plain Dealer*, 486 U.S. 750, 761 (1988) ("Newspapers are in the business of expression, while soda vendors are in the business of selling soft drinks.  Even if the soda vendor engages in speech, that speech is not related to the soda."); *Sherwin-Williams v. City & County of San Francisco*, 857 F. Supp. 1355, 1372 (N.D. Cal. 1994) ("commercial display and sale of

---

[6] For their part, Summit Lake and Smith-Madrone have not "outlined a concrete plan to engage in proscribed conduct" and "'self-censorship alone is insufficient to show injury.'"  *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1211 (9th Cir. 2022).  Nor can they rely on the "general rule" regarding standing with multiple plaintiffs or "'past enforcement against parties similarly situated'" (*see* Dkt. 57 at 35–36) to align themselves with Hoopes while disclaiming *Younger*'s applicability.

-11-

spray paint and markers … does not implicate speech or expressive conduct”).

Plaintiffs argue that California law defines winetasting to include expression.  *See* Dkt. 57 at 37. But the statutes (Cal. Bus. & Prof. Code §§ 23356.1 & 23386) and regulations (4 C.C.R. § 53) they cite pertain to samples, not expression.  And the lone California case they cite regarding samples undermines their argument because it holds they are taxable “transactions.” *See Tonkin Distributing Co. v. Collins*, 50 Cal. App. 2d 790, 795 (1942); *B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 114 (9th Cir. 2024) (“consummating a business transaction is nonexpressive conduct unprotected by the First Amendment”); *Homeaway.com, Inc.*, 918 F.3d at 658 (“completing booking transactions for unlawful rentals—consists only of nonspeech, nonexpressive conduct”); *cf. Nicopure Labs, LLC v. Food & Drug Administration*, 266 F. Supp. 3d 360, 413 (D.D.C. 2017) (upholding ban on free samples of on e-cigarettes because “handing the merchandise out for free does not change the analysis”).

Plaintiffs’ commercial speech cases either concern laws that restricted actual speech or did not ask whether the laws in question restricted expressive conduct.  *See FF Cosmetics FL Inc. v. City of Miami Beach, Florida*, 129 F. Supp.3d 1316, 1323 (S.D. Fla. 2015) (law restricting “‘[s]peech on or directed to those on the public right-of-way’”); *Edenfield v. Fane*, 507 U.S. 761, 764, 766–67 (1993) (law prohibiting CPAs from engaging in “‘communication which directly or implicitly requests an immediate oral response from the recipient’”); *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 489 (1989) (“the parties agree[] that the speech here … is … entitled to First Amendment protection”); *American Future Systems, Inc. v. Pennsylvania State Univ.*, 752 F.2d 854, 858 (3d Cir. 1984) (policy forbidding “group solicitations of sales in the common areas of residence halls” and “group demonstrations in an individual student’s dormitory room”); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 (1996) (“statutory prohibition against advertisements that provide the public with accurate information about retail prices of alcoholic beverages”).[7]

### 3.    Plaintiffs Fail to State a Claim Under *Central Hudson*

Plaintiffs assert that they are promoting “lawful” activity under *Central Hudson* because “the sale

---

[7] Plaintiffs argue that the County fails to address its “prohibition ‘on political, cultural, charitable and other forms of events and gatherings.’” Dkt. 57 at 37.  But this restriction does not apply if “the event qualifies as a ‘temporary event’ and has required permits.” Dkt. 43-38 at 2–3; NCC § 5.36.010 *et seq.*

RENNE PUBLIC LAW GROUP
Attorneys at Law

of wine and wine-related products is lawful." Dkt. 57 at 38. But the Ninth Circuit has made clear that the lawfulness inquiry does not operate at such a high level of generality. In *Homeaway.com*, 918 F.3d 676, the court upheld a local ordinance restricting bookings of short-term rentals. In doing so, the court explained that "to the extent that the speech chilled advertises unlawful rentals, any First Amendment interest is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." *Id.* at 686 (quotations and alterations omitted); *see also National Ass'n of Tobacco Outlets, Inc. v. City of Providence, R.I.*, 731 F.3d 71, 78 (1st Cir. 2013) ("Here, the 'offers' and other forms of allegedly commercial speech restricted by the Price Ordinance are offers to engage in unlawful activity; that is, sales of tobacco products by way of coupons and multi-pack discounts, which are banned by the Price Ordinance itself."). Because the County Code prohibits wineries from hosting tours and tastings that exceed their use authorization, any purported "speech" promoting these activities is not protected under *Central Hudson*.[8]

Nor does the County "ignore[] the last two prongs of *Central Hudson*." Dkt. 57 at 39. The County's briefing repeatedly discusses the interests advanced by its ordinances, which are focused on non-expressive conduct and narrowly tailored to achieve those interests. *See* Dkt. 53 at 22, 23, 41, 49, 53, 58–59; *Hunt v. City of Los Angeles*, 638 F.3d 703, 707, 717–18 (9th Cir. 2011) (ordinance restricting vending had "reasonable fit" with purposes of "ensur[ing] that pathways and spaces will be open for both pedestrians and emergency personnel and prevents unregulated vending").

Finally, Plaintiffs argue that the County makes no argument regarding their content-based claim (Dkt. 57 at 41–42), but that is also false. *See* Dkt. 53 at 41 n.5.

### 4.    The County's Use Permit Scheme Is Not a Prior Restraint

Plaintiffs' prior restraint argument conflates the County's use permitting and temporary event schemes. The use permitting scheme is what determines a winery's "marketing plan approved as part of the winery's use permit." *See* NCC § 18.08.370; Dkt. 53 at 42–43. That law and its interpretive guidance (which the Board of Supervisors itself approved, *see* Dkt. 43-48) does not vest unbridled discretion in anyone, particularly with respect to wineries that cannot have any marketing events. *See World Wide*

---

[8] Contrary to Plaintiffs' assertions, *Central Hudson*'s lawfulness prong was not at issue in either *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 483 (1995), or *44 Liquormart, Inc.*, 517 U.S. at 504, 509.

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Rush v. City of Los Angeles*, 606 F.3d 676, 680 (9th Cir. 2010) ("the prior restraint doctrine does not require the City to restrict 'the general discretion a legislative body has to enact … laws'").

By contrast, the temporary event permitting scheme requires governmental approval to engage in temporary events commonly associated with expressive activities.  Plaintiffs do not even appear to challenge those procedures.  For good reason.  Just as with the County's use-permitting scheme, *see* Dkt. 53 at 42–43, its temporary event licensing scheme provides narrowly drawn and definite standards for granting, revoking, or suspending a license as well as clear timelines.  *See* NCC § 5.36.010 *et seq.*

Plaintiffs rely heavily on *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022).  But the examples they identify from that case are distinguishable (*see* Dkt. 57 at 40–41) and its most salient discussion strongly supports the County.  *See Spirit of Aloha*, 49 F.4th at 1188–89 ("laws requiring building permits" or allowing a mayor to "'decide which soda vendors may place their machines on public property'" "'[e]ven if the soda vendor engages in speech'" do not have a close enough nexus to expression (quoting *City of Lakewood*, 486 U.S. at 761)); *Diamond*, 100 F.4th at 1068.

### 5.    Plaintiffs Fail to Plausibly Allege Retaliation

Plaintiffs assert their retaliation claim is viable because the County's actions were "substantially motivated" by their protected activity.  Dkt. 57 at 42–43; FAC ¶¶ 782, 787.  "A court 'need not accept as true allegations in the Complaint that are contradicted by exhibits attached to the Complaint.'"  *Philco Investments, Ltd. v. Martin*, No. C 10-02785 CRB, 2011 WL 4595247, at *7 n.9 (N.D. Cal. Oct. 4, 2011); *see* Dkt. 43-45, ¶13 ("None of my actions have been based upon spite, malice, ill will or any personal feelings"); Dkt. 43-18 (letter from Jason Dooley contradicting allegations).  Even accepting these baseless assertions as true, "'bad motive does not amount to a constitutional tort if that action would have been taken anyway,'" *Smith v. County of Santa Cruz*, 2020 WL 6318705, *10 (N.D. Cal. Oct. 28, 2020).  What's more, "'[m]ere threats and harsh words,'" such as "detail[ing] plaintiffs' alleged code violations and how to remedy the violations, and warn[ing] of action by the County Code Enforcement department if the violations are not rectified," are "'insufficient' to support a retaliation claim." *Kolstad v. County of Amador*, 2013 WL 6065315, at *5 (E.D. Cal. Nov. 14, 2013) (rejecting claim based on correspondence).  Finally, they ignore cases holding that the public entities can assert the First Amendment as a defense.

1   *See Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1114 n.3 & 1116 (1996).[9]

2   **G.     Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law**

3   Plaintiffs contend that the County's zoning regulations requiring a specific use permit to engage in

4   tours, tastings, food service, and event services are preempted by the Alcoholic Beverage Control Act

5   ("ABC"). These arguments are foreclosed by the plain language of the ABC, which explicitly allows for

6   more restrictive local zoning regulations. *See* Cal. Bus. & Prof. Code §§ 23358(e), 23790, 23791.

7   First, Plaintiffs' claim that the County's regulations eliminate privileges and conflict with the ABC

8   (Dkt. 57 at 56:16–23) "confuses the function of zoning with that of the control of the sale of liquor." *See*

9   *Floresta, Inc. v. City Council of San Leandro*, 190 Cal. App. 2d 599, 604–07 (1961) (zoning regulations

10  are simply a "geographic restriction … not an invasion of the state's general regulation and limitation of

11  the consumption of liquors as such"). Here, the County's zoning regulations are similar geographic

12  restrictions that do not eliminate privileges afforded by Type 02 licenses.

13  Second, Plaintiffs' argument that the failure to object to Hoopes's Type 02 license limits the

14  County's regulatory authority (*see* Dkt. 57 at 56:24-28) was rejected in *Jon-Mar Co. v. City of Anaheim*,

15  201 Cal. App. 2d 832 (1962). There, the court held that a city's failure to object to the issuance of a state

16  liquor license did not preclude it from enforcing its zoning ordinance, which prohibited certain uses

17  without a permit. *Id*. at 837–38. In both *Floresta* and *Jon-Mar*, the court affirmed the principle that local

18  zoning ordinances may impose restrictions or conditions on the exercise of privileges granted under the

19  ABC. The County's winery regulations fall squarely within this framework. In contrast, Plaintiffs have

20  not cited any case law holding that the ABC preempts local zoning laws. *See* Dkt. 57 at 53–56.

21  Plaintiffs' claims that other state and federal laws preempt the County's zoning regulations are

22  equally unavailing. Occupancy limits restricting the number of individuals allowed inside a building (*see*

23  Cal. Code Regs. tit. 24, §§ 1.1.2, 1004.1) do not conflict with County land use regulations restricting the

24  volume of visitors to the property overall. *See* NCC §§ 18.16.010, 18.124.060(A). Even if they did, the

25  state Building Code allows local governments "to establish more restrictive and reasonably necessary

26  differences." Cal. Code Regs. tit. 24, § 1.1.8. Additionally, Plaintiffs fail to identify any ordinance that

27

28  _____
[9] Plaintiffs all but acknowledge that the County's indemnification ordinance—which does not provide for fee-shifting (*see* Dkt. 53 at 43)—cannot infringe upon their right to petition. *See* Dkt. 57 at 41–42.

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  purports to regulate wine labeling, let alone meet the high bar for establishing that there is "'no set of

2  circumstances'" where the ordinance could be valid. *See Helicopters for Agriculture v. County of Napa*,

3  384 F. Supp. 3d 1035, 1040-43 (N.D. Cal. 2019); *Bronco Wine Co. v. Jolly*, 33 Cal. 4th 943, 989 (2004)

4  (federal law does not preempt state wine labeling laws). They fail to plead a viable preemption claim.

5  ### H.    Plaintiffs Fail to State a Constitutional Vagueness Claim

6        Plaintiffs mischaracterize County documents and records from the state court enforcement action

7  to cast doubt on the clear restriction that small wineries are not permitted to offer tours, tastings, and other

8  commercial services in the Agricultural Districts. *See* Dkt. 57 at 50:20-28; FAC ¶¶ 261–97. However, the

9  County Code could not be clearer, especially as applied to Plaintiffs SWEs. "A small winery does not

10 conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public

11 nature." NCC § 18.08.600(C). Plaintiffs do not allege a plausible vagueness claim.

12       First, the constitutional standard for vagueness is specific to the context of due process. "The

13 void-for-vagueness doctrine … guarantees that ordinary people have fair notice of the conduct a statute

14 proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (quotations omitted). General statements

15 that a term is vague outside the due process context, such as a discovery objection, do not establish that

16 the regulation fails to provide fair notice. The County Code provides extensive definitions and clear

17 regulatory guidance, ensuring fair notice of permitted and prohibited uses, especially when read in

18 context with the broader regulatory scheme and stated legislative purpose. Dkt. 53 at 47:5–48:15.

19       Regarding the documents that Plaintiffs cite from the state action, the Superior Court, considering

20 all the evidence (not just what Plaintiffs chose to attach to the FAC), rejected Hoopes's argument that the

21 regulations are unconstitutionally vague and "found that Hoopes violated its SWE by expanding its uses

22 outside its entitlements." Dkt. 54 at 113–15. Additionally, the County's General Plan, by setting an

23 action item to "consider amendments" to the Zoning Ordinance definitions, is not a County admission that

24 the terms are vague. *See* Dkt. 43-28 at 3. The County's regulations, read in context, sufficiently inform

25 winery owners of their rights and obligations and are not susceptible to arbitrary enforcement.

26 ### I.    The County Has Not Altered Plaintiffs' Property Rights

27       Pointing to changes to the Winery Database, Plaintiffs argue the County altered its property rights.

28 *See* Dkt. 57 at 51:20-28. Alterations to the Database do not require notice or any process under the Due

RENNE PUBLIC LAW GROUP
Attorneys at Law

Process Clause because the Database does not have the force of law. It is simply a reference tool designed to aggregate data for the Planning Commission, not to determine the entitlements of individual wineries. Additionally, the Database must reflect different types of permits, and the accuracy of the information is sometimes compromised in order to draw comparisons. The Database is a useful tool, but it is not, and was never represented to be, a one-to-one reflection of a property's legal entitlements. If the County decided to delete the database altogether, there is no credible argument that Plaintiffs' entitlements were also deleted. Plaintiffs' land use entitlements are determined through their authorizing land use documents and the County Code. *See* Dkt. 53 at 27–29. The interpretation of a permit is a "'question of law'" for a court to decide. *See California Pub. Int. Rsch. Grp. v. Shell Oil Co.*, 840 F. Supp. 712, 716 (N.D. Cal. 1993). And "estoppel will not be applied to allow a landowner to circumvent land use restrictions" even based on a "public entity's express representation[s]." *See Golden Gate Water Ski Club v. Cnty. of Contra Costa*, 165 Cal. App. 4th 249, 262 (2008).

## J.    Plaintiffs Fail to State a Non-Delegation Claim

Plaintiffs rest on their conclusory allegations of third-party consent as a condition precedent to granting or modifying a use permit. *See* Dkt. 57 at 52. But they have not identified any permit conditioned on the consent of third party, who the third party was, who was applying for the permit, or when the final decisions were made. Citing *Rice v. Village of Johnstown*, 30 F.4th 584 (6th Cir. 2022), they assert that standing requirements are "relaxed" for non-delegation claims. Unlike here, however, the plaintiffs in *Rice* submitted a zoning application. *Id.* at 593. And while Plaintiffs argue discovery is necessary to support this claim, the Ninth Circuit does not "'condone the use of discovery to engage in 'fishing expedition[s]' ' where, like here, it is obvious that [plaintiff] has no basis other than gross speculation" to support their claim. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021).

## K.    Plaintiffs Fail to State a Takings Claim

Plaintiffs argue that they have "pled detailed allegations outlining the specific exactions imposed by Napa" to make out a plausible *Nollan/Dolan* claim and cite paragraphs 634 and 636-459 [*sic*] in the FAC. *See* Dkt. 57 at 47:17-20. However, aside from Summit Lake's unripe and untimely allegations that it was "advised" in 2019 that it must repave its roadway to increase production (*see* Dkt. 53 at 55) the cited paragraphs vaguely reference unidentified "infrastructure improvements" and "exactions" (FAC

RENNE PUBLIC LAW GROUP
Attorneys at Law

¶ 636), generally applicable County ordinances that do not require Plaintiffs to convey any property rights (*id*. ¶¶ 641–43), "impermissible impact fees" without identifying the amount of the fees or what the fees are for (*id*. ¶ 646), and that Hoopes was "*advised* that it would have to install a new septic system" without identifying who provided that advice (*id*. ¶ 650 (emphasis added)).  These allegations do not plausibly allege a lack of "essential nexus" and "rough proportionality" to the County's land use interests.  Plaintiffs also argue that requiring permits to include an indemnity provision is an unconstitutional "monetary exaction." *See* Dkt. 57 at 42.  An indemnity provision is plainly not a "monetary exaction," and the indemnity provision requirement easily satisfies nexus and proportionality because it only applies to third-party actions attacking an applicant's own permit.  *See* NCC § 1.30.010.

Plaintiffs' regulatory takings claim under *Penn Central* also fails because they have not identified a constitutionally protected property interest or shown interference with reasonable investment-backed expectations.  *See* Dkt. 53 at 56.  Repackaging their unsuccessful state law preemption claim, they allege that they have a protected property interest in their state-issued Type 02 licenses and the goodwill of their businesses.  *See* Dkt. 57 at 48.  But "[w]hile a license to practice a trade is generally considered a vested property right, a license to sell liquor is a privilege that can be granted or withheld by the state." *Yu v. Alcoholic Bev. etc. Appeals Bd.*, 3 Cal. App. 4th 286, 297 (1992).[10]  Nor may "evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses … be considered." *U.S. v. 87.30 Acres of Land*, 430 F.2d 1130, 1132 (9th Cir. 1970).  Plaintiffs' argument that they have reasonable investment-backed expectations (Dkt. 57 at 49:6-10) fares no better because the allegation that Plaintiffs have historically offered tours and tastings in obvious violation of their permit exemptions cannot form the basis of "'objectively reasonable'" investment-backed expectations.  Dkt. 53 at 57.

### L.    Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law

Plaintiffs do not have standing under the Dormant Commerce Clause because they are not subject to the County's grape-sourcing law.  *See* Dkt. 53 at 51.  They assert that the County has pled in the state court action that they are subject to the 75% rule.  Dkt. 57 at 43:23–26.  This is not true and is another

---

[10] Plaintiffs invoke *Dash, Inc. v. ABC Appeals Bd.*, 683 F.2d 1229 (9th Cir. 1982), but that case did not involve the takings clause and relied on a state court of appeal decision that in turn embraced a dissenting opinion from the California Supreme Court.  *See Etchart v. Pyles*, 106 Cal. App. 2d 549, 551 (1951) (quoting *Roehm v. County of Orange*, 32 Cal. 2d 280, 291 (1948) (Shenk, J., dissenting)).

RENNE PUBLIC LAW GROUP
Attorneys at Law

example of Plaintiffs misrepresenting exhibits to the FAC.  The County alleged that under NCC § 18.08.040(E), Hoopes is only allowed to sell on its property agricultural products that it produces on-site, and that using non-Napa grapes "*potentially* violates a number of controlling statutes, regulations and/or ordinances," which is all true.  Dkt. 43-27 at 7, ¶ 22–23, 45; *see* Cal. Bus. & Prof. Code § 25241 (wine labeled with a Napa Valley appellation must be made from at least 85% Napa-grown grapes); *see also* 27 C.F.R. § 4.25.  The County did not allege that Plaintiffs are subject to NCC § 18.104.250.

Plaintiffs allege they "wish" to expand their operations and are deterred by the possibility of complying with the 75% rule.  *See* FAC ¶¶ 616, 625; Dkt. 57 at 43:26-27.  But more than a "'desire[]'" is required to establish standing.  *See* Dkt. 53 at 51.  The requirements of Section 18.104.250 only apply to Plaintiffs' pre-WDO wineries if they "expand beyond their winery development area," which they have not done and cannot do without obtaining appropriate permits.  *See* NCC § 18.104.250(C); *id.* § 18.104.210 ("Wineries—Development Area").  This hypothetical injury is too speculative.

Even if Plaintiffs did have standing, these claims fail on the merits.  *See* Dkt. 53 at 52.  They attempt to analogize this case to *Dean Milk Co. v. City of Madison*, 340 U.S. 349 (1951), but *Dean Milk* involved a direct restriction on commerce—the ability to sell milk—rather than a land use regulation governing agricultural land use.  Plaintiffs also cite two district court cases from other circuits involving wine, but both are distinguishable and neither meaningfully helps them under Ninth Circuit law.  *See* Dkt. 57 at 44:10-22.  In *Alexis Bailly Vineyard, Inc. v. Harrington*, 482 F. Supp. 3d 820 (D. Minn. 2020), Minnesota's statutory scheme directly regulated the distribution and sale of wine by allowing a licensed "farm winery" to sell its products directly to retailers and consumers if the farm winery produced wine "with a majority of the ingredients grown or produced in Minnesota."  *Id.* at 824.  Similarly, in *Wineries of the Old Mission Peninsula Association v. Peninsula Township*, 2022 WL 2155097 (W.D. Mich. June 3, 2022), the court invalidated laws "plac[ing] regulations on produce and wine sold at certain wineries, according to how much of the produce and the grapes/wine were produced at the winery."  *Id.* at *7.

In contrast, the County's ordinance does not regulate the sale, distribution, or shipment of wine; it simply ties the production of wine to local agricultural land use, ensuring that wineries within the County's Agricultural Districts remain secondary to grape cultivation.  The Ninth Circuit has recognized a distinction between the "sui generis effect" of unconstitutional statutes that regulate the price or

-19-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    distribution of goods in commerce and constitutional regulations that are not directed at commerce even

2    though they have "significant extraterritorial effects."  *See Chinatown Neighborhood Ass'n v. Harris*, 794

3    F.3d 1136, 1145-47 (9th Cir. 2015); *see also Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988, 1022

4    (2005) (upholding law requiring "Napa" branded wine to source at least 75% of grapes from Napa

5    County).  The County's ordinance does not directly regulate or discriminate against interstate commerce.

6          **M.    Plaintiffs Fail to State an Equal Protection Claim**

7          To state an equal protection claim, Plaintiffs must allege that the County's conduct is not

8    "rationally related to a legitimate state interest," because municipal decisions are "presumptively

9    constitutional."  *Tyson v. City of Sunnyvale*, 920 F. Supp. 1054, 1065 (N.D. Cal. 1996).  Courts recognize

10   (and Plaintiffs do not dispute) the County's legitimate interest in "preserving [the] welfare and character

11   of [their] neighborhoods."  *Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d

12   1221, 1225 (9th Cir. 1990), *superseded on other grounds*.  Instead, Plaintiffs argue that the County has

13   violated the uniformity requirement of California Government Code § 65852.  *See* Dkt. 57 at 59:1-25.  But

14   they did not assert (let alone present) a claim under that law, and courts have rejected the argument that

15   "this law of zoning uniformity is derived from the equal protection and due process clauses" since "[t]he

16   guarantees of equal protection and due process do not mandate such a high standard of uniformity in

17   zoning."  *Sacramentans for Fair Plan. v. City of Sacramento*, 37 Cal. App. 5th 698, 716 (2019).

18         Furthermore, Plaintiffs' various allegations that different wineries in the County have different

19   land use entitlements (*see* Dkt. 57 at 53:13-19) do not establish that they are similarly situated wineries

20   operating pursuant to SWEs, or even with use permits that allow similar uses, or have similar histories.

21   "[I]t is plaintiffs' burden to show that there are similarly situated applicants who were treated differently."

22   *Borges v. Cnty. of Mendocino*, 598 F. Supp. 3d 846, 860–61 (N.D. Cal. 2022).  Different land uses, or

23   even an identical use in a different zone, do not qualify as similarly situated.  *See Thornton v. City of St.*

24   *Helens*, 425 F.3d 1158, 1167–68 (9th Cir. 2005).

25   **III.    CONCLUSION**

26         For the reasons discussed above and in its motion, the County requests that the Court dismiss the

27   FAC without leave to amend or, in the alternative, abstain from hearing Plaintiffs' claims.

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Dated:  January 31, 2025                    RENNE PUBLIC LAW GROUP

2

3                                              By: /s/*Ryan P. McGinley-Stempel*
4                                                    Ryan P. McGinley-Stempel

5                                              Attorneys for Defendant NAPA
6                                              COUNTY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NAPA COUNTY'S REPLY ISO MOTION TO DISMISS FAC
OR, IN THE ALTERNATIVE, FOR ABSTENTION                    Case No. 3:24-cv-06256-CRB