1  SHERYL L. BRATTON, County Counsel (SBN 144209)
   JASON M. DOOLEY, Chief Deputy County Counsel (SBN 258570)
2  jason.dooley@countyofnapa.org
   NAPA COUNTY COUNSEL'S OFFICE
3  1195 Third Street, Suite 301
   Napa, California 94559
4  Telephone: (707) 253-4521
   Facsimile: (707) 259-8220

5
   ARTHUR A. HARTINGER (SBN 121521)
6  ahartinger@publiclawgroup.com
   RYAN P. McGINLEY-STEMPEL (SBN 296182)
7  rmcginleystempel@publiclawgroup.com
   JAKE FREITAS (SBN 341837)
8  jfreitas@publiclawgroup.com
   RENNE PUBLIC LAW GROUP
9  350 Sansome Street, Suite 300
   San Francisco, California 94104
10 Telephone: (415) 848-7200
   Facsimile:  (415) 848-7230

11
   Attorneys for Defendant
12 COUNTY OF NAPA

13
                    IN THE UNITED STATES DISTRICT COURT
14
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
15

16
   HOOPES VINEYARD LLC, a California limited      Case No. 3:24-cv-06256-CRB
17 liability company; SUMMIT LAKE VINEYARDS
   & WINERY LLC, a California limited liability
18 company; and COOK'S FLAT ASSOCIATES A
   CALIFORNIA LIMITED PARTNERSHIP, a             **DEFENDANT NAPA COUNTY'S**
19 California limited partnership,               **SUPPLEMENTAL REQUEST FOR JUDICIAL**
                                                 **NOTICE IN SUPPORT OF MOTION TO**
20                Plaintiffs,                    **DISMISS FIRST AMENDED COMPLAINT**
                                                 **OR, IN THE ALTERNATIVE, FOR**
21                                               **ABSTENTION**
   v.
22                                               Judge:        Hon. Charles R. Breyer
   COUNTY OF NAPA,                               Hearing Date: February 21, 2025
23                                               Hearing Time: 10:00 a.m.
                  Defendant.                     Location:     Courtroom F, 15th Floor
24                                                             455 Golden Gate Avenue
                                                               San Francisco, CA 94102
25

26

27                                               Action Filed:  September 5, 2024

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

Pursuant to Federal Rule of Evidence 201, Defendant Napa County respectfully requests that the Court take judicial notice of the following document, a true and correct copy of which is attached hereto:

**Exhibit A**: Opposition To Plaintiffs' Requested Equitable Relief filed on January 24, 2025, by Hoopes Vineyard LLC in *Napa County v. Hoopes Family Winery Partners, L.P., et al.*, Case No. 22CV001262 (Napa County Sup. Ct.)

Exhibit A is a pleading from the state enforcement action brought by Napa County against Plaintiff Hoopes Vineyard LLC. This document is subject to judicial notice as a matter of public record and is not reasonably subject to dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ("[U]nder Fed.R.Evid. 201, a court may take judicial notice of 'matters of public record.'" (quotation omitted)); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

Exhibit A is a pleading from the related state enforcement action. The pleading was filed on January 24, 2025, after Defendant filed its motion to dismiss and initial request for judicial notice. As the filing occurred subsequent to Defendant's original submission, this supplemental request for judicial notice is necessary to ensure the court has up-to-date and relevant information to consider in relation to the pending motion.

Dated: January 31, 2025

RENNE PUBLIC LAW GROUP

By: _____
Jake D. Freitas

Attorneys for Defendant
NAPA COUNTY



# EXHIBIT A

BUCHALTER
A Professional Corporation
KATHARINE H. FALACE (SBN: 222744)
1230 Pine Street
St. Helena, CA 94574-1106
Telephone: 707.967.9656
Fax: 707.963.0771
Email: kfalace@buchalter.com

LINDSAY BLAIR HOOPES (SBN: 271060)
P. O. Box 3600
Yountville, CA 94599
Telephone: (415) 249-2644
Email: lindsayhoopes@comcast.net

Attorneys for Defendants and Cross-Complainants
HOOPES FAMILY WINERY PARTNERS, LP,
HOOPES VINEYARD, LLC and LINDSAY BLAIR HOOPES

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF NAPA

| | |
|---|---|
| NAPA COUNTY and THE PEOPLE OF THE STATE OF CALIFORNIA ex. rel. THOMAS ZELENY, as Interim Napa County Counsel,<br><br>      Plaintiffs,<br><br>vs.<br><br>HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC, LINDSAY BLAIR HOOPES, and DOES 1 through 10 inclusive,<br><br>      Defendants.<br><br>HOOPES FAMILY WINERY PARTNERS, LP, a California limited partnership and HOOPES VINEYARD, LLC, a California limited liability company,<br><br>      Cross-Complainants,<br><br>vs.<br><br>NAPA COUNTY, and ROES 1 through 10 inclusive,<br><br>      Cross-Defendants. | CASE NO. 22CV001262<br><br>**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**<br><br>Date:     February 7, 2025<br>Time:    8:30 a.m.<br>Dept:    1<br>Judge:   Hon. Mark Boessenecker<br><br>TRIAL DATES:  January 29, 30, 31, February 1, 2, 5, 6, 7, 8, 9, 14, 2024 |

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BN 86778388v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 11

II.   STATEMENT OF FACTS .............................................................................. 11

III.  FACTUAL BACKGROUND .......................................................................... 14

  A.   The Injunction Motion Seeks Remedies Not Previously Requested, and As to
       Conduct Not Mentioned in the Complaint. ............................................... 14

  B.   The Property is a Lawful Winery, on a Parcel Zoned for Winery Use, and
       Licensed to Operate as a Winery by the State.......................................... 15

  C.   The County has Already Statutorily Declared That Wineries Similar to
       Hoopes are Not Nuisances and Do not Have Environmental Impacts................. 15

  D.   There is no Nexus Between the Speculative "Harm" from Infrastructure and
       the Proposed Injunctions. .................................................................. 16

  E.   The County Frustrated Hoopes' Attempt to Obtain a Flood Plain Permit. ........... 17

IV.   LEGAL ARGUMENT ................................................................................... 18

  A.   Procedural Issues.................................................................................. 19

       i.    Defendant's Object to Plaintiff's Classification of the Terms
             Prohibitory v. Mandatory ........................................................... 19

       ii.   The County has Waived Injunctive Relief under the UCL. ..................... 19

       iii.  An Injunction May Not Enter Related to Building Violations Without
             Issuance of a "Notice to Abate" and Failure to Comply........................ 19

       iv.   The Court Cannot Issue the "Obey the Law" Injunction as a Matter
             Law.......................................................................................... 20

       v.    NCC Section 1.20.155(A) Does not Apply Because the County Failed
             to Comply with Government Code Section 25845. ................................ 20

       vi.   Civil Code section 731 authorizes injunctions, but only for Conduct
             Specifically Declared a Public Nuisance. ....................................... 22

       vii.  The Scope of the County's Proposed Injunctions is Excessive. .............. 23

             a.   The Court Cannot Issue an Injunction for Activity it Did Not
                  Declare a Public Nuisance. ................................................. 24

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

1. Permissive Zoning Does Not Authorize Injunctions by Judicial Fiat. ................................................................ 26

2. Land Use Cannot License Winery Businesses so the Injunctions are Far Beyond the Scope of Permissible Land Use Regulation. ..................................................... 30

3. The County's Proposed Terms Raise Substantial Notice Issues. ................................................................. 30

viii. Much of What Napa County Seeks to Enjoin are Lawful Activities. ....... 31

1. Private Tours, Tastings and Consumption: ...................... 32

2. Wine Produced by the Winegrower at a Different Facility May be Sold at the Property. ............................. 33

3. The Animal Sanctuary Is Lawful ................................... 33

b. The Injunction Would Have Far Reaching Ramifications. ........... 34

1. A Ban of Marketing Animals in Connection with Wine Would Effectively Evict Hoopes Vineyard from the Property. ...................................................... 34

2. This Injunction will Enjoin Other Wineries in Substantial and Common Operations; thus, the Court must Give Other Wineries an Opportunity to Object Prior to Imposing an Injunction. ...................................... 35

B. Notice Issues ................................................................ 36

i. Defendants Did not Have an Opportunity to Show that the County has Never Defined "Public" Tasting Consistent with the Court's Order. ....... 36

ii. The Terms are Overbroad and Vague. ..................................... 38

C. The Proposed Injunction is Unconstitutional. ..................................... 40

i. First Amendment and State Right to Free Speech. ................................. 40

ii. The Right to Operate A Business. ............................................. 42

V. CONCLUSION ................................................................ 43

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

3

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ainsworth v. Bryant*
(1949) 34 Cal.2d 465 ........................................................................................... 30

*Alexis Bailly Vineyard, Inc. v. Harrington*
(D. Minn. 2020) 482 F.Supp.3d 820 ................................................................. 33

*Alexis Bailly Vineyard, Inc. v. Harrington*
(D. Minn. 2020) 483 F.Supp.3d 820 ................................................................. 42

*Am. Future Sys., Inc. v. Pennsylvania State Univ.*
(3d Cir. 1984) 752 F.2d 854 ............................................................................. 41

*Bd. of Trustees of State University of New York v. Fox*
(1989) 492 U.S. 469 ......................................................................................... 41

*Beck Development Co. v. Southern Pacific Transportation Co.*
(1996) 44 Cal.App.4th 1160 ............................................................................. 26

*Byington v. Superior Court*
(1939) 14 Cal.2d 68 ......................................................................................... 19

*People ex rel. Camil v. Buena Vista Cinema*
(1976) 57 Cal.App.3d 497 ........................................................................... 24, 26

*People ex rel. Camil v. Buena Vista Cinema*
(1976) 57 Cal.App3d 497 ........................................................................... 22, 27

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*
(1980) 447 U.S. 557 ..................................................................................... 41, 42

*Central Valley General Hospital v. Smith*
(2008) 162 Cal.App.4th 501 ............................................................................. 25

*Chalmers v. City of Los Angeles*
(9th Cir. 1985) 762 F.2d 753 ............................................................................. 43

*City of Claremont v. Kruse*
(2009) 177 Cal.App.4th 1153 ....................................................................... 25, 27

*City of Dana Point v. California Coastal Com.*
(2013) 217 Cal.App.4th 170 ............................................................................. 24

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BN 86778388v1

*City of Watseka v. Illinois Pub. Action Counsel*
(7th Cir. 1986) 796 F.2d 1547, aff'd, 479 U.S. 1048, 107 S. Ct. 919, 93 L. Ed.
2d 972 (1987) .................................................................................................... 33

*City of Redlands v. _____*
(2002) 96 Cal.App.4th 398 .................................................................................. 20

*Committee of Seven Thousand v. Superior Court*
(1988) 45 Cal.3d 491 ........................................................................................... 21

*Daly v. Board of Supervisors*
(2021) 11 Cal.5th 1030 ........................................................................................ 19

*Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*
(9th Cir. 1981) 683 F.2d 1229 ............................................................................. 19

*Davis v. Farmers Ins. Exchange*
(2016) 245 Cal.App.4th 1302 .............................................................................. 19

*DVD Copy Control Assn., Inc. v. Bunner*
(2003) 31 Cal.4th 864 .......................................................................................... 40

*Edenfield v. Fane*
(1993) 507 U.S. 761 ............................................................................................. 13

*Feminist Women's Health Center v. Blythe*
(1995) 32 Cal.App.4th 1641 .......................................................................... 23, 25

*FF Cosmetics FL Inc. v. City of Miami Beach, Florida*
(S.D. Fla. 2015) 129 F. Supp. 3d 1316 ............................................................... 41

*Flahive v. City of Dana Point*
(1999) 72 Cal.App.4th 241 ...................................................................... 22, 24, 25

*People ex rel. Gallo v. Acuna*
(1997) 14 Cal.4th 1090 ......................................................... 23, 24, 25, 30, 35

*Goat Hill Tavern v. City of Costa Mesa*
(1992) 6 Cal.App.4th 1519 .................................................................................. 30

*Korean American Federation v. City of Los Angeles*
(1994) 23 Cal.App.4th 376 .................................................................................. 30

*Leppo v. City of Petaluma*
(1971) 20 Cal.App.3d 711 .................................................................................... 25

*Lew v. Superior Court*
(1993) 20 Cal.App.4th 866 .................................................................................. 21

*Madsen v. Women's Health Center*
(1994) 512 U.S 753 ................................................................................................ 40

*Miller v. California*
(1973) 413 U.S. 15 ................................................................................................. 29

*Ohio Citizen Action v. City of Englewood*
(6th Cir. 2012)671 F.3d 564 (6th Cir. 2012).......................................................... 33

*People v. Englebrecht*
(2001) 88 Cal.App.4th 1236 ................................................................................... 23

*People v. Lim*
(1941) 18 Cal.2d 872 .......................................................................... 22, 24, 25, 26

*People v. Padilla-Martel*
(2022) 78 Cal. App.5th 139 ............................................. 22, 23, 25, 27, 31, 40

*People v. Ramirez*
(1994) 25 Cal.App.4th Supp. 1 ............................................................................... 30

*People v. Seccombe*
(1930) 103 Cal.App. 306........................................................................... 24, 26

*People v. Venice Suites, LLC*
(2021) 71 Cal.App.5th 715 ......................................... 24, 25, 26, 27, 28, 29

*Planned Parenthood Shasta–Diablo, Inc. v. Williams*
(1995) 10 Cal.4th 1009 .......................................................................................... 40

*Protecting Our Water & Environmental Resources v. County of Stanislaus*
(2020) 10 Cal.5th 479 ..................................................................................... 28, 29

*Rubin v. Coors Brewing Co.*
(1995) 514 U.S. 476 ............................................................................................... 41

*San Diego County v. California Water and Tel. Co.*
(1947) 30 Cal.2d 817 .............................................................................................. 21

*Sanderson v. Village of Greenhills*
(6th Cir. 1984) 726 F.2d 284 ................................................................................. 43

*Small v. United States*
(3d Cir. 1964) 333 F.2d 702.................................................................................... 43

*Tonkin Distributing Co. v. Collins*
(1942) 50 Cal.App.2d 790................................................................................. 41, 42

*U.S. Mission Corp. v. City of Mercer Island*
(W.D. Wash. Feb. 10, 2015) 2015 WL 540182 (W.D. Wash. Feb. 10, 2015)....................... 33

OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

*United States v. Tropiano*
  (2d Cir. 1969) 418 F.2d 1069 ................................................................................................ 43

*Vinny's Landscaping, Inc. v. United Auto Credit Corp.*
  (E.D. Mich. 2016) 207 F. Supp. 3d 746 ............................................................................... 41

*Ysursa v. Pocatello Educ. Ass'n*
  (2009) 555 U.S. 353 ............................................................................................................. 40

*Zack's, Inc. v. City of Sausalito*
  (2008) 165 Cal.App.4th 1163 ............................................................................................... 32

**Statutes**

Bus. & Prof. Code, § 23356.1 ......................................................................................... 12, 33

Bus. & Prof. Code, § 23358 .................................................................................................. 12

Bus. & Prof. Code, § 23358(a) ............................................................................................. 33

Bus. & Prof. Code, § 23358(a)(3) ........................................................................................ 32

Bus. & Prof. Code, § 23386(a) ............................................................................................. 12

Bus. & Prof. Code, § 23558(c) ............................................................................................. 32

CACI 2020 ..................................................................................................................... 22, 31

Cal. Code Regs., tit. 4, § 53 .................................................................................................. 32

Cal. Code Regs., tit. 4, § 53, subd. (1)(a) ............................................................................ 12

Cal. Code Regs. tit. 14, § 15061, subd. (b) .......................................................................... 15

Cal. Code Regs., tit. 24, Part 9 ............................................................................................. 39

Cal. Pub. Res. Code, § 21080, subd. (b)(1) .......................................................................... 15

Civ. Code, § 731 ............................................................................................... 21, 22, 23, 27

Civ. Code, § 3479 .......................................................................................................... 22, 31

Civ. Code, § 3480 .......................................................................................................... 22, 31

Civ. Code, § 3482 ........................................................................... 18, 23, 30, 31, 32

Code Civ. Proc., § 632 .......................................................................................................... 25

Gov't Code, § 25845 .................................................................................................. 20, 21, 22

Gov't Code, § 25845(a) ........................................................................................................ 20

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

Gov't Code, § 38773 ................................................................................................. 21

Gov't Code, § 38773.1 .............................................................................................. 21

Gov't Code, § 38773.5 .............................................................................................. 21

Gov't Code, § 53069.4 .............................................................................................. 21

Gov't Code, § 65852 ................................................................................................. 35

Health & Safety Code, § 11570 ............................................................................... 21

Health & Safety Code, § 11572 ............................................................................... 21

Health & Safety Code, § 17980, subd. (a) .............................................................. 20

Napa County Code, § 1.20 ................................................................................. 20, 21

Napa County Code, § 1.20.010(A)(1) ...................................................................... 20

Napa County Code, § 1.20.010(a)(1) ....................................................................... 21

Napa County Code, § 1.20.025 ................................................................................. 21

Napa County Code, § 1.20.155(A) ..................................................................... 20, 21

Napa County Code, § 1.20.155(B) ........................................................................... 21

Napa County Code, § 1.24 ........................................................................................ 21

Napa County Code, § 1.28 ........................................................................................ 21

Napa County Code, § 2.94 ........................................................................................ 33

Napa County Code, § 15.12.010 .............................................................................. 39

Napa County Code, § 15.12.180 .............................................................................. 39

Napa County Code, § 15.12.190 .............................................................................. 39

Napa County Code, § 18.08.040 .............................................................................. 11

Napa County Code, § 18.08.040(H)(2) ........................................................ 14, 19, 29

Napa County Code, § 18.08.340 .............................................................................. 38

Napa County Code, § 18.08.370 .................................................................. 11, 20, 34

Napa County Code, § 18.08.600 .................................................................. 14, 29, 35, 37

Napa County Code, § 18.08.600(C) ......................................................................... 32

Napa County Code, § 18.08.620 .................................................................... 37

Napa County Code, § 18.16 ......................................................................... 14

Napa County Code, § 18.16.020(a) .............................................................. 11

Napa County Code, § 18.16.020(A) .............................................................. 33

Napa County Code, § 18.16.020(H) .......................................................... 12, 20

Napa County Code, § 18.16.030 .................................................................. 11

Napa County Code, § 18.16.030(G)(5)(c) ..................................................... 33

Napa County Code, § 18.16.030(H) .............................................................. 12

Napa County Code, § 18.104.040 ................................................................. 29

Napa County Code, § 18.104.250 ................................................................. 29

Napa County Code, § 18.140.030 ................................................................. 39

Napa County Code, § 12419 ........................................................................ 29

Napa County Ord., 186 ............................................................................... 14

Napa County Ord., 274 ............................................................................... 14

Napa County Ord., 511 ............................................................................... 12

Napa County Ord., 511, § 12405 ................................................................. 14

Napa County Ord., 511 § 12405 .................................................................. 14

Napa County Ord., 629 ............................................................................... 16

Napa County Ord., 947 § 4 ........................................................ 12, 15, 16, 42

Napa County Ord., 947, §§ 4, 10 ........................................................... 12, 14

Napa County Ord., 947 § 10 (12201(a)) ....................................................... 12

Napa County Ord., 947 § 10 (12201(h)) ....................................................... 12

Napa County Ord., 947 § 18.16.030 ............................................................ 14

Penal Code, § 836.5 .................................................................................. 21

Prob. Code, § 17203 .................................................................................. 14

OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

**Other Authorities**

27 C.F.R., § 24.280 ................................................................................................ 33

Fifth and Fourteenth Amendments........................................................................ 43

Cal. Const. art. 1, § 7 ............................................................................................ 21

Cal. Const. art. XX ................................................................................................ 38

Resolution 90-10, § 3.11 ....................................................................................... 33

www.hoopesvineyard.com ..................................................................................... 34

I.    **INTRODUCTION**

Defendants HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC and LINDSAY BLAIR HOOPES (collectively "Hoopes") submit the following Opposition to Plaintiffs COUNTY OF NAPA and THE PEOPLE OF THE STATE OF CALIFORNIA'S ("County") Request for Equitable Relief ("Injunction").

II.    **STATEMENT OF FACTS**

Hoopes defended this litigation in good faith to resolve an entitlement dispute. This is hardly surprising: the County's own winery databases are inconsistent. Defendants requested an administrative hearing. The County refused.[1] The County wanted to prohibit tastings of any kind and prohibit the "petting zoo" as an unauthorized use. (SAC ¶¶ 54, 67.) This Court recognized Hoopes had tastings "of some sort." (SOD at p. 15.) The Court did not find the animal sanctuary was a prohibited use. (SAC ¶ 67.)

The Court's holding was quite limited: the Court found on three instances Defendants engaged in public tastings. It is an argument the County itself never advanced.[2]  The Court found "marketing wine with animals" violated the Napa County Code at section 18.08.370. (SOD at pp. 11, 12; Exhibit C.)[3] The County did not allege this, either.[4]

Now, the County seeks an oppressive injunction with clear purpose to render Hoopes' lawful winery commercially useless. On its face, the terms are excessive: they target innocuous conduct others engage in without dispute (like selling wine openers and possessing animals they do not intend to eat). The terms do not reasonably address any harm, let alone conduct within the definition of "public nuisance." And, even though the Court declined to find Hoopes was prohibited "all tastings," the County nevertheless seeks to rid Defendants of these rights anyway. The County cannot regulate "animals," so it pivots to attempting to enjoin "marketing,

[1] Exhibit F [TE 1230 [email exchange requesting written determination], 1235 (email exchange requesting hearing and appeal)]; TE 1240 [May 17, 2021 email to Kelli Cahill]; Exhibit G2 [TT 773-774].
[2] Due to lack of notice, Defendants did not present a defense as to "public tastings" as the County never advanced this theory of liability at any time in the FAC, SAC, or at trial.
[3] Exhibit C is a compendium of local Napa Ordinances.
[4] The County alleged that a "petting zoo" was a prohibited use in the Agricultural Preserve ("AP") pursuant to NCC § 18.16.030, and Defendants consistently argued it fell within the broad definition of agriculture, allowed by right, at the property. NCC § 18.16.020(a); NCC 18.08.040.) The parties agree that agriculture is allowed in the AP.

1   advertising, and enticing customers" with animals. This is an end run around due process.

2       Intent aside, the injunctions exceed the Court's Statement of Decision ("SOD").  If

3   injunctions do enter, they must be limited to address the wrongs in the SOD, or would exceed

4   judicial jurisdiction. This Court must also keep in mind that Defendants may host private tastings

5   of "some sort." Further, it is uncontested: a) the property is lawfully zoned for winery use[5], b) has

6   been entitled for *four decades* as a legally conforming "small winery"[6], c) is entitled for unlimited

7   "retail" wine sales[7], and d) Defendants operate pursuant to licenses issued by the California

8   Department of Alcohol and Beverage Control ("ABC").[8]  These licenses <u>expressly authorize</u>

9   nearly all the activities the County seeks to enjoin. (See, e.g., Bus. & Prof Code §§ 23358,

10  23356.1; 23386(a); Cal. Code Regs., Title 4, § 53(1)(a).) The County certified the operating

11  licenses <u>without conditions</u> in 2019. (Exh. A [Trial Exhibit ("TE") 1183].)

12      The County's issue is not that Defendants *have* customers on the Property, but how

13  Hoopes sells and markets wine. These injunctions seek to restrict speech and are not in fact to

14  advance a legitimate environmental concern. The County wants to prohibit acts that "induce

15  …purchase." (SAC ¶¶ 40, 41.) It is not to regulate "intensity": *unlimited customers are already*

16  *allowed*.[9] Infinity plus one is still infinity.

17      None of acts underlying the proposed injunction are prohibited by the NCC; as such, the

18  County is asking the Court to legislate from the bench. What they have not been able to enact

19  through the legislative process, the County now seeks to declare a nuisance by judicial fiat. At

20  every turn the County, and its requested injunctions, walk into a constitutional problem. They

21  seek to prohibit any and all commercial speech on site and on the internet. This runs headlong

22  into a free speech problem. While the government can sometimes limit commercial speech, it is

23  the County's burden to establish a legitimate purpose. The County did not propose a purpose, and

24  ─────────────────

25  [5] Exhibit D [TE 1004, Napa County Ordinance No. 511, Trial Exhibit ("TE") 1004]; Exhibit E [TE 1047, Napa County Ordinance No. 947, §§ 4, 10]; Exhibit C [Napa County Code § 18.16.030(H)[uses allowed without a use permit in the AP].).]

26  [6] TE 1; Exhibit E ([TE 1047](Napa County Ord. 947 § 4; § 10 (12201(a), (h), enacted January 27, 1991]; Exhibit C [NCC § 18.16.020(H).])

27  [7] Exh. B1 [TT pp. 501]; SAC ¶ 14.

    [8] Exh. A [TE 1183]; Exh. B1 [TT pp. 501-505].

28  [9] Exhibit B1 [TT pp. 501-505]

1    the Court did not find one. The restrictions on protected speech cannot be enjoined.

2         The timing of the County's request bears consideration as **it is uncontested code**

3    **enforcement openly admitted the compliance case did not raise public safety issues**. (Exhibit

4    G [Cahill, TT at pp. 751-752.]) The strawman arguments about septic and well are unsupported

5    by the evidentiary record, but most importantly are not linked to any of the activities to be

6    enjoined. How does the sale of a wine opener impact the septic if sold to a customer on site

7    buying wine? How does prohibiting animals unfit to consume impact the septic? How does

8    "consumption" increase "intensity" when unlimited retail is already allowed? Speculation as to

9    impact is not enough; the County bore a burden of actual proof, and failed to present competent

10   evidence. For example, where the County burdens speech, they must show "demonstrate …the

11   harms it recites are real and [the] restriction will in fact alleviate them to a material degree."

12   (*Edenfield v. Fane* (1993) 507 U.S. 761, 770-771.)

13        Finally, in deciding whether to issue an injunction, this Court must bear in mind that the

14   injunction will have far reaching impacts on other wineries (although the County promised it

15   would not in opposition to intervention).  In finding Defendants engaged in unfair competition,

16   this Court found it is unfair to operate under a different "set of rules" than other wineries.  But

17   what is good for the goose is good for the gander: it would likewise be unfair for other wineries to

18   operate under a different set of rules than Hoopes. The Court did not find that Hoopes is distinct

19   from other wineries such that it can be subject to different standards. Indeed, the Court interpreted

20   a statute that cannot be unique to one.  So, other wineries are now subject to the SOD's

21   interpretation on 1) how "public" tastings are distinguished from "private" tastings (a marked

22   shift from the historic understanding) as well as the 2) prohibition on advertising with animals.  If

23   the County avers these interpretations are limited to Hoopes, then the County admits the Cross-

24   Complaint's Equal Protection claim that the County views Hoopes (inexplicably) as a class of

25   one.  There are also many wineries operating with "accessory uses" that do not have a use permit,

26   because were entitled by right; as such, these accessory uses are heretofore prohibited at all the

27

28

oldest wineries unless and until they obtain a "use permit."[10] Napa County cannot have it all ways.

### III.    FACTUAL BACKGROUND

#### A.    The Injunction Motion Seeks Remedies Not Previously Requested, and As to Conduct Not Mentioned in the Complaint.

One month before trial, on December 22, 2023, the County requested leave to file a Second Amended Complaint ["SAC"]. The Court granted the County's SAC. Discovery was closed. Neither the FAC nor SAC averred Defendants' conduct was "public." The County's main theory of liability was that the property was not entitled for any form of "tours and tastings," hospitality, or "marketing." (SAC ¶ 54.) The SAC listed numerous allegations never discussed at trial, for example, brandy (SAC ¶ 46) and production. (SAC ¶¶ 21, 22.)

The SAC does not discuss "consumption" or "samples." The SAC did not aver "marketing" with "animals" violated NCC section 18.08.600; rather, the SAC indicated a "petting zoo" was an unauthorized use in the AP under NCC section 18.16. (SAC ¶ 67.) The SAC did not allege a violation of "solid waste," "compost," "Tuff Sheds," "another animal shed," "goat shelter," or "shade structure(s)." The County did not request declaratory relief. The SAC Prayer did not seek injunctive remedies under Section 17203, or request specific factual or legal findings. The SAC did not itemize the acts to be enjoined. In regards to injunction, the Prayer requests: 1) "[t]hat the continued existence of the public nuisance conditions on and uses of the Property be preliminarily and permanently enjoined…" and 2) "that Defendants be preliminarily and permanently enjoined from causing or allowing any public nuisance in violation of the NCC to occur … again in the future." (SAC at Prayer, pp. 18-19.)

After the Court issued a tentative SOD, both parties requested a statement of decision,

---

[10] All wineries operating prior to 1990 were entitled accessory uses upon entitlement in the primary use, winery. (Exhibit D [TE 1004][Ord. 511, § 12405, enacted July 27, 1976].). Prior to 1968, wineries were not required to obtain a use permit anywhere in Napa. After 1973, wineries in the AW were required to obtain a use permit, but not the AP. Prior to 1976, the AP did not have a use permit requirement as to any winery. Prior to 1990, accessory winery uses were not defined or specified. (*Compare* Exhibit D [Ord. 511 § 12405]; Exhibit E [Ord. 947 § 18.16.030]; Exhibit C [NCC § 18.08.040(H)(2); see also (not attached) County Ordinance 186, 274.] All wineries that pre-date the conditional use permit requirements are legally conforming, not non-conforming. (Exhibit E (Ord. 947, §§ 4, 10.) Further, NCC § 18.08.040(H)(2) expressly authorizes accessory uses without a use permit at SWE. This provision was enacted in 2017; thus, it is active and applies to SWE.

1    objections and/or requests for clarification. The Court declined, and the SOD issued.

2    **B.    The Property is a Lawful Winery, on a Parcel Zoned for Winery Use, and Licensed to Operate as a Winery by the State.**

3

4    The subject property is a legally conforming "small winery use permit exemption"

5    ("SWE") in the Agricultural Preserve ("AP").[11] The parties agree 1) wineries are allowed in the

6    AP, 2) the property is zoned for winery use, and 3) an SWE is a winery. (Exh. B3 [TT pp. 371-

7    372].) The County agrees Defendants are allowed to engage in agriculture, produce wine, and sell

8    wine from the premises. (SAC ¶ 14.) The parties agree Hoopes operates pursuant to state ABC

9    licenses and the County does not have authority to license wineries, production, wine sales, or

10   "where" wineries can conduct "tastings." (Exhs. A, B1.) In 2019, the ABC noticed Napa County

11   that Defendants sought to license the premises at 6204 Washington for winery operations. (Exh.

12   A.) The County confirmed to the ABC that Defendants had a winery "use permit" and advised the

13   ABC that the 02 winegrowers license could issue without limitations. (Exh. A.) The County

14   concedes unlimited "retail" rights and customers "who physically come to the property." (SAC ¶

15   14.) Director Morrison admits he said Hoopes "could offer free samples to customers coming on

16   to the property." (Exhibit I [Morrison, TT p. 891].) The use-related conduct the County seeks to

17   enjoin is not expressly prohibited by any known statutes.

18   **C.    The County has Already Statutorily Declared That Wineries Similar to Hoopes are Not Nuisances and Do not Have Environmental Impacts.**

19

20   In 2020, the County filed a CEQA exemption for "small wineries." In so doing, the

21   County officially declared any "small winery" below the baseline has no "identifiable

22   environmental impact" and is exempt from environmental review. (Exh. H; Cal. Code Regs. Tit.

23   14, § 15061 subd. (b); Cal.Pub. Res. Code §§ 21080 subd. (b)(1); 21082.) Defendants' property

24   "intensity" is below the baseline. CEQA evaluates the only equivalent of "visitation" discernable

25   from the criterion in terms of traffic "trips," not number of people.[12]  The County disclaimed

---

[11] Exhibit E (Ordinance 947, § 4.)

[12] Exhibit H. Significantly, the "small winery" CEQA exemption frames "visitation" impacts by way of traffic, not in terms of number of people. Rather, it is in terms of average daily trips, or ADTs. Thus, for the purposes of environmental review, at least insofar as they have represented to the state, the County is not concerned "number of people" vis a vis environmental impact, but production wastewater and traffic to/from the property. The number of

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

knowledge of the CEQA classifications in the relevant time period, but the County had a CEQA

exemption in 1979 for 1) wineries without "public" tastings and 2) industrial facilities with fewer

than 15 employees. (Exh. J [Res 79-146, Amending EIR Guidelines, Nov. 9, 1979, Appendices I,

J].)[13] The property owners in did not opt for a lesser procedure without environmental review:

rather, the property was exempt from environmental review by law as the property was both

CEQA and a use permit exempt land entitlement. (Exh. J; Exh. K [Ord. 629]; Exh. L.)

Nevertheless, the County conducted an environmental review in 1984/1985 and tendered a

negative declaration. (Exh. J, Res 79-146, Appendix I, J; Exh. L [TE 1016].) The negative

declaration indicated Categorical Exemption Class 3. (Exh. L [TE 1016].)

Before and at trial, code enforcement officer Kelli Cahill admitted the enforcement targets

of tours, tastings, marketing and floodplain violations did not involve life/safety violations

(Exhibit G.) The enforcement action was designated a low priority [level 2]. (Exh. G1; Exh. N;

Exh. M; TE 31, 41.) The County defines Level 2 violations as "minor" and without any life/safety

violations. (Exh. N [TE 1057].)

### D.    There is no Nexus Between the Speculative "Harm" from Infrastructure and the Proposed Injunctions.

The County did not produce evidence at trial that infrastructure at the property was

impacted, in poor condition, or that "harm" was likely to result from the conduct the County

seeks to enjoin. The County did not produce evidence that a specific harm to infrastructure was

the stated cause for prohibiting the conduct, the stated purpose of a specific regulation, or that the

injunction would materially avoid that harm and how.

While the Court determined wastewater <u>might</u> be a "potential" issue, this was as far as the

Court could go.  Three witnesses testified on "septic," but none of the witnesses inspected or

evaluated Hoopes' system. (Exhibit P1, P2 [TT 845, 846, 860, 862]; Exh. Q [TT 985].) In 2019,

_____

people is irrelevant to CEQA exemption, per this baseline. This admission to the State conflicts with the County's trial statements. (*Id.*)

[13] Napa withheld this Government record, filed with the Napa Clerk, from discovery. It is a public record, filed with the State, to create CEQA exemptions for locally specific developments. Now these documents are kept with the State and the local Clerk, but at the time, they were exclusively maintained by the County Clerks. It was only located post-trial from the Napa Public Library after requests from the Napa County Clerk were not responsive and the State Clearinghouse confirmed the State Library did not have it, but the local clerk and library must.

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

environmental health supervisor Kim Withrow approved the system. Ms. Withrow relied on reports from two licensed septic inspectors as Ms. Withrow is not licensed to inspect septic systems. (Exh. O1, O [TT at pp. 913-914; 950].) The third-party reports concluded the system was "in compliance" and "good working condition." (Exh. O [TT at pp. 950-51; 958-60].) Ms. Withrow did not believe the septic "dangerous, unsafe or unsanitary." (Exh. O [TT at pp. 942-943].)

Between 2018 and 2020, Defendants obtained two building permits and two floodplain permits. (Exh. S-13 [TE 46].) One building permit involved an extensive renovation and floodplain permit for all structures on top of the pad. (Exh. S-13 [TE 46], Exh. S10-S12.) To final the permits, all departments, including environmental health, planning, and engineering all approved the infrastructure on the property for winery use. (*Id.*)

As stated at trial, the County sent Defendants a letter demanding a septic inspection. Defendants requested additional information, but the County did not reply. The County does not exercise jurisdiction over winery wastewater discharge (septic). (Exhibit O3 [Withrow, TT at p. 959].) In November 2023, a third-party inspector conducted an inspection and confirmed the system was operating and compliant. (Exh. R.) An engineer from Adobe Engineers reviewed the report, and confirmed same. (Exh. R.) The Court did not make a finding linking any violation to the property "infrastructure" or the "harm that might result therefrom." An increase in "visitation" is illusory: 6204 Washington Street is allowed unlimited customers. (SAC ¶ 14.)

There was no testimony linking infrastructure to the conduct to be enjoined: for example, how offering merchandise for sale intensifies septic. The evidence of harm was hypothetical, and included merely generalized discussions about why one might want to upgrade a system or regulate one. There was no actual harm. Most of the conduct – marketing animals, sale of olive oil or merchandise, wine not "produced on site," or limiting animals based on intent to use their products – have no apparent connection to infrastructure. Even "public" and "consumption" were not linked to septic with explanation of how that conduct intensifies use.

**E.    The County Frustrated Hoopes' Attempt to Obtain a Flood Plain Permit.**

The only structures noticed in the apparent violations and prior to trial, despite an

1    inspection prior to SAC amendment, were the chicken coops. (TE 31, 41.) Originally, Defendants

2    were advised they did not have to obtain any permits for the chicken coops. (Exh. S [TT 204].)

3    Later, faced with inconsistent direction, Defendants immediately applied for floodplain permits,

4    twice, in 2020. (Exh. S1-13.) In April 2020, Defendants were advised the changes to the

5    structures were satisfactory. (Exh. S1-4.) In February 2022, County Counsel advised floodplain

6    permits would not be required if the structures were separated. (Exh. S1-S13.) This was after

7    Defendants finaled two other floodplain permits and two other building permits at the same time.

8    (Exh. S1-13.) Defendants sent multiple letters to the County stating the flood plain issues were

9    resolved: specifically, in February 2022 (Exhibit S-6), in April 2022, (Exhibit S-7) and June

10   2022. (Exh. S1-13.) Defendants received no response. At the start of trial, the County knew the

11   buildings had been separated, but continued to aver they were connected. Judge Smith denied the

12   preliminary injunction in part because the chicken coops had been corrected. (Exhibit V [Judge

13   Smith Order, November 17, 2022].) At trial, Patrick Ryan did not know what structures required

14   flood plain permits, or what materials were flood plain resistant.

15       Mr. Hoopes retained engineers to assist with the chicken coops. The engineers found

16   Napa's floodplain ordinance inconsistent with FEMA and other local jurisdictions. (Exh. R.) The

17   engineers requested further clarification. Defendant's advised Mr. Ryan, but he refused to

18   respond or "take any effort." Documents located post-trial reveal the County knew abnormalities

19   exist between the County floodplain ordinance and FEMA, but the extent is unknown; the

20   document was inexplicably withheld in discovery, so could not be explored at trial. (Exhibit T.)

21   The other "structures" are not discussed in the SAC, or noticed until midtrial, during Mr. Ryan's

22   trial testimony. The SAC was not amended to conform to proof.

23   **IV.    LEGAL ARGUMENT**

24       The County's proposed injunctions are excessive, disproportionate, and <u>exceed</u>

25   <u>jurisdiction</u>, so cannot lawfully be imposed. First, the conduct is statutorily immune. (Civ. Code §

26   3482.) The County seeks to enjoin expressly authorized activities, necessary winery activities,

27   and knowingly required for winery survival. (Exh. X [County 1983 Gen. Plan, 1991 Amendment,

28   3.11].) Second, the proposed terms are not justified by the Statement of Decision ("SOD"). If the

SOD did not specifically declare the acts proposed for injunction a "public nuisance," the acts cannot be enjoined. Third, the terms are unconstitutional. Fourth, the terms prohibit Defendants from activities that are critical and lawful winery functions. This violates public policy, or improperly seeks to punish Defendants though injunction. Lastly, the injunctions will substantially alter the rights of other wineries that had no opportunity to be heard. The injunctions are unlawful.

## A.    Procedural Issues

### i.    Defendant's Object to Plaintiff's Classification of the Terms Prohibitory v. Mandatory

The County's classification of terms as prohibitory or mandatory is inaccurate. An injunction relating to a privilege vested by state law is mandatory because would require a "surrender" of vested property rights. (*See Daly v. Board of Supervisors* (2021) 11 Cal.5th 1030 at pp. 1039-1042, citing to *Byington v. Superior Court* (1939) 14 Cal.2d 68, 72; see also *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.* (9th Cir. 1981) 683 F.2d 1229, 1233 ("An ABC liquor license is a valuable property right.").) The 2019 licenses vested with rights to tastings and consumption. The County advised the State Defendants had a "use permit." (Exh. A.) NCC section 18.08.040(H)(2) statutorily recognizes the property "shall" have "accessory uses, marketing, and sales" without a use permit. This is an issue of law, reviewed de novo.

### ii.    The County has Waived Injunctive Relief under the UCL.

"For a party to pursue [] injunctive relief, the grounds [] must be specifically pleaded in the complaint." (*Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1325.) A request for injunctive relief under one cause of action does not satisfy the pleading requirement for injunctive relief in a separate cause of action. (*Id.*) The County did not plead injunctive relief under the UCL; thus, the County cannot now be granted a remedy it did not plead.

### iii.    An Injunction May Not Enter Related to Building Violations Without Issuance of a "Notice to Abate" and Failure to Comply.

Prior to enjoining a violation of the building code, the law requires a <u>notice to abate</u> prior

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

to an <u>injunction to abate</u>.[14] Specifically, Health and Safety Code section 17980, subdivision (a) provides:

> If a building is constructed, altered, converted, or maintained in violation of any provision of, or in violation of any order or notice ...the building standards published in the California Building Standards Code, or other rules and regulations adopted pursuant to this part, … the enforcement agency shall, ***after 30 days' notice to abate the nuisance or violation***… institute appropriate action or proceeding to prevent, restrain, correct, or abate the violation or nuisance.

A notice specifically declaring what to abate must enter prior to an injunction as to any alleged "building" violations. This is especially true where, as here, many issues were never noticed in the "apparent violations" *or* the SAC. Defendants must be entitled at least thirty days to abate with specific notice as to: 1) each specific condition declared a nuisance, 2) the specific code provision, and 3) how to comply with removal to avoid injunction.

### iv.    The Court Cannot Issue the "Obey the Law" Injunction as a Matter Law.

A court "may not issue a broad injunction to simply obey the law." (*City of Redlands* (2002) 96 Cal.App.4th 398, 416.) The County's requests stating: (a) "cease all [] activities that do not comply with [NCC] sections 18.16.020(H) and 18.08.600"; (b) "cease all commercial activity [..] which is not authorized in the zoning district []"; (a)(iv) "all 'marketing of wine, as defined by [NCC] section 18.08.370, including all events of a public nature" ; and/or (a)(vi) all "occupancy and assembly … not [,,,]permitted for occupancy or assembly," and (c) "cease occupancy and use … unless and until Defendants obtain all required building permits" are all invalid "obey the law" injunctions. Thus, requests (a), (a)(iv) and (a)(vi). (b) and (c) cannot issue as a matter of law.

### v.    NCC Section 1.20.155(A) Does not Apply Because the County Failed to Comply with Government Code Section 25845.

The County is not entitled to any remedies under NCC Chapter 1.20. Per NCC section 1.20.010(A)(1), Chapter 1.20 in its entirety was enacted pursuant to Government Code section 25845. Section 25845(a) grants a county authority to "establish a procedure" for the

---

[14] Defendants believe that all building violations were improperly noticed, and do not concede that point. If a notice is required before trial, surely one would be required before injunction.

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

1    "administrative abatement of public nuisances." It states any local procedure enacted pursuant to

2    <u>this</u> authority must comply with the following procedural conditions prior to enjoining a nuisance:

3    1) <u>notice</u> *and* a 2) <u>hearing before the Board of Supervisors</u>. (NCC § 1.20.010((a)(1).)

4    The conditions are mandatory, not discretionary. If the California legislature specifies the

5    manner to enact ordinances and/or imposes procedural restrictions on the exercise of that power,

6    it is exclusive, mandatory, and a condition to the requested relief. (See, e.g., *San Diego County v.*

7    *California Water and Tel. Co.* (1947) 30 Cal.2d 817, 823-824; *Committee of Seven Thousand v.*

8    *Superior Court* (1988) 45 Cal.3d 491, 511.)

9    The State allows local nuisance regulation under various grants of authority, all with

10    distinct procedures and remedies.[15] Other nuisance provisions of the NCC derive authority from

11    alternative sources: Chapter 1.24 from Penal Code section 836.5, and Chapter 1.28, from the

12    general police power (Article 1, section 7 of the California Constitution) and Government Code

13    section 53069.4.[16] (Exhibit C.) The parallel provisions are alternative enforcement options.

14    The County admits it did not follow the administrative procedure mandated by

15    Government Code section 25845. Defendants agree the County can select a procedure for

16    enforcement; but the County cannot pick the benefits from one enforcement option, and proceed

17    by way of process for another. For example, Civil Code section 731 allows for direct civil action,

18    but does not authorize fees. The County is foreclosed from remedies authorized by section 25845

19    because it did not comply with the procedure mandated thereby**.** This includes any remedies

20    codified by the subdivisions of Chapter 1.20, including sections 1.20.155(A), (B) and 1.20.025.

21    / / /

22    / / /

23    / / /

---

[15] There are many other specific grants of nuisance authority. See, e.g., *Lew v. Superior Court* (1993) 20 Cal.App.4th 866, 871 (*Lew*); Health & Saf. Code §§ 11570, 11572. Only four are codified here (two under NCC Chapter 1.28).
[16] The state grants Cities additional nuisance abatement authority pursuant to Government Code sections 38773, 38773.1, 38773.5.

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BN 86778388v1

### NAPA NUISANCE PROVISIONS

| CHAPTER 1.20 | CHAPTER 1.24 | NAPA CHAPTER 1.28 |
|---|---|---|
| • Legal Authority: Gov't Code § 25845<br><br>• NCC § 1.20.010 (a)(!): "Pursuant to Government Code Section 25845, the board of supervisors **establishes the following procedures** for the purpose of abating public nuisances."<br><br>• **Gov't Code § 25845 (a)** Reads: The board of supervisors, by ordinance, may establish a procedure for the abatement of a nuisance. The ordinance shall, at a minimum, provide that the owner of the parcel, …be given notice of the abatement proceeding and an opportunity to appear before the board of supervisors and be heard prior to the abatement of the nuisance by the county. | • Legal Authority: Pen. Code § 836.5<br><br>• **NCC § 1.24.010(A)(1): This chapter is enacted pursuant to the provisions of Section 836.5** of the California Penal Code and shall apply to all ordinances heretofore and hereafter enacted by the county, and to statutes which expressly provide that violations of same are punishable as misdemeanors or infractions.<br><br>• **Cal. Penal Code section 836.5(d)** The governing body of a local agency, by ordinance, may authorize its officers and employees who have the duty to enforce a statute or ordinance to arrest persons for violations of the statute or ordinance as provided in subdivision (a). | • Legal Authority: Art. 1 § 7 Cal. Const (general police Power) and Gov't Code § 53069.4<br><br>• **NCC § 1.28.010(A)(1): This chapter is enacted pursuant to Article I Section 7 of the California Constitution and Section 53069.4 of the California Government Code.**<br><br>• **Gov't Code § 53069.4 (a) (1):** The legislative body of a local agency, as the term "local agency" is defined in Section 54951, may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty. The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties. Where the violation would otherwise be an infraction, the administrative fine or penalty shall not exceed the maximum fine or penalty for infractions set forth in Section 25132 and subdivision (b) of Section 36900. |

### vi.   Civil Code section 731 authorizes injunctions, but only for Conduct Specifically Declared a Public Nuisance.

The County does not cite Civil Code section 731 as the basis for injunctive relief, or the action. Nevertheless, Defendants agree an injunction may be a lawful remedy for abatement of "public nuisances" pursuant to Civil Code sections 731, 3479 and 3480 and a County can bring an action in the name of the People under this section as a direct civil action.

"Abatement" under general nuisance statutes means the judicial "termination or removal of a nuisance by way of the injunctive process…." (*People v. Padilla-Martel* (2022) 78 Cal.App.5th 139, 151; accord, *Flahive v. City of Dana Point* (1999) 72 Cal.App.4th 241, 244, fn. 4.) An injunction under 731 may only issue as to "objectionable activity" that "can be brought within [] the statutory definition of public nuisance."[17] (*People ex rel. Camil v. Buena Vista Cinema* (1976) 57 Cal.App3d 497, 502-503; *People v Lim* (1941) 18 Cal.2d 872, 879.) Arguably, the action in its entirety lacks notice. At a minimum, the County's election to forego the administrative procedure of section 25845 prohibits remedies under that section, so an injunction

---

[17] A factfinder must find that the act to be enjoined was, "harmful to health," "indecent or offensive to the senses," an "obstruction to the free use of property," or was a "fire hazard." (CACI 2020.) The County must also show: 1) the specific condition affected a substantial number of people, 2) that an ordinary person would be reasonably annoyed or disturbed by the condition, 3) that the seriousness of the harm outweighs the social utility of the conduct, and 4) the County did not consent to the conduct. (CACI 2020.)

1    could only issue as to section 731, if at all.

2            **vii.    The Scope of the County's Proposed Injunctions is Excessive.**

3            A restraint of lawful activity is extraordinary relief and requires clear and convincing

4    evidence "firmly establish[ing]" the restrictions are "absolutely necessary."  (*People v.*

5    *Englebrecht* (2001) 88 Cal.App.4th 1236, 1255.) Injunctive relief for "public nuisance" is <u>limited</u>:

6    the Court must, as a threshold inquiry, find the activity "reasonably falls within the statutory

7    definition of a public nuisance." (*Padilla-Martel, supra,* 78 CalApp.5th at p. 151; *People ex rel.*

8    *Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1107.)[18] Where it does not, the activity may not be

9    enjoined. (*Gallo,* 14 Cal.4th at p. 1107.) "<u>The courts lack power to extend the definition of the</u>

10   <u>wrong</u>." (*Id.*) Next, relief must be specific and narrowly tailored: a court may only restrain "the

11   wrongful act [] to be prevented." (*Padilla-Martel, supra*, 78 CalApp.5th at p. 151.) This is

12   especially true where, as here, the act occurs in the operation of a legitimate business: where that

13   is the case, an injunction a) "should not restrict on lawful business activities," b) "must be the

14   least disruptive remedy available," and c) "can never go beyond the necessities of the case." (*Id.*)

15   Injunctions must also comply with the state and federal constitutions. (*Id.* at p. 155.)

16           "Injunctive power is not used as punishment for past acts" and may only enter "if there is

17   evidence [the objectional act] will probably recur...'" (*Feminist Women's Health Center v. Blythe*

18   (1995) 32 Cal.App.4th 1641, 1658.) The County must prove that it is reasonably probable that

19   each and every act this Court found unlawful will recur on the property prior to entering an

20   injunction as to that act. (*Id.*) The County has not made this showing. A record cannot support

21   "reoccurrence" where the Court made no finding of nuisance as to a specific act in the first

22   instance.

23           The County seeks a <u>permanent property restriction</u> that would apply to all successors in

24   interest and other wineries. This is an extraordinary remedy. None of the acts were declared

25   "public nuisances" by any competent authority; so, an injunction cannot enter. Further, the

26   injunctions seek to enjoin express statutory permissions, which the Court cannot enjoin. (Civ.

27   Code § 3482.)

28   _____
     [18] This is true for the UCL as well, as indicated in *Padilla-Martel, supra*, 78 Cal.App5th 139.

1

          **a.**      **The Court Cannot Issue an Injunction for Activity it Did Not Declare a Public Nuisance.**

2

3       A winery is a lawful business. Hoopes is a lawful winery. The Court did not declare

4 Hoopes a public nuisance. The Court cannot lawfully impose permanent land use restrictions on a

5 property that is not a nuisance, or as to lawful acts that have never been declared a public

6 nuisance at that business. First, injunctive relief is limited to findings in the SOD. This is not

7 distinct to nuisance. Second, injunctive relief for nuisance is limited to what the Court expressly

8 found is a "public nuisance" in that decision. This guardrail prevents the government use of

9 injunction to enforce standardless' notions of nuisance. (*Gallo, supra*, 14 Cal.4th at p. 1107;

10 *Flahive, supra*, 72 Cal.App.4th at p. 244.) The Court cannot declare a nuisance per se in the first

11 instance, and certainly cannot do so in the first instance at the post-trial injunctive stage. (*People*

12 *v. Lim* (1941) 18 Cal.2d 872, 879.) Conditions to support an injunction of public nuisance cannot

13 be implied and property conditions cannot be implied. (*People v. Venice Suites, LLC* (2021) 71

14 Cal.App.5th 715, 733.) In sum, the findings in the SOD provide the entire scope of appropriate

15 injunctive relief. Imposing any act not declared a public nuisance in that decision would exceed

16 the Court's jurisdiction. (*Id.*) All other injunctions else must be denied. Operation outside the

17 SOD exceeds the Court exceeds jurisdiction.[19] (*Id.*; *Lim, supra*, 18 Cal.2d at p. 879.)

18       Whether an act or condition constitutes a nuisance per se is a question of law. (*City of*

19 *Dana Point v.  California Coastal Com.* (2013) 217 Cal.App.4th 170, 187.) Absent a legal

20 determination of public nuisance, an act is not a public nuisance. (*Flahive, supra*, 72 Cal.App.4th

21 at p. 244; *Gallo*, *supra*, 14 Cal.App.4th at p. 1105.) Generally, the authority to declare a "nuisance"

22 rests exclusively with the legislature. (*Gallo, supra,* 14 Cal.4th at p. 1107; see also *People v.*

23 *Seccombe* (1930) 103 Cal.App. 306, 310.) Where legislation does not exist, a judicial decree of

24 public nuisance is required.[20] (*People ex rel. Camil v. Buena Vista Cinema* (1976) 57 Cal.App.3d

25

26 [19] A court cannot declare a public nuisance *per se* in the first instance, so Defendants do not concede or waive argument that the Court holding as to public tastings and marketing wine with animals was lawful. *People v. Lim*
27 (1941) 18 Cal.2d 872, 877-878.) Defendants merely argue that if lawful, that would be the outer scope of appropriate injunctive remedy, if at all.
28 [20] This decree, of course, would be a nuisance in fact, not a nuisance per se. No court has found it appropriate to enter a decree as to nuisance per se absent legislation prohibiting the act.

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

497, 502-503 [the "first and foremost" requirement prior to abatement is a judicial decree]; *Flahive*, *supra*, 72 Cal.App.4th at p. 244; *Gallo*, *supra*, 14 Cal.4th at p. 1105; *Venice Suites, supra*, 71 Cal.App.5th at p. 733.) A court cannot "create" a public nuisance, or imply one. (*Id.*) A municipality may not designate one by "mere declaration." (*Flahive*, *supra*, 72 Cal.App.4th at p. 244, fn. 4; *Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, 718.)

The SOD is the factual and legal basis as to each controverted issue at trial. (Code Civ. Pro. § 632.) An ultimate fact is not implied if parties request clarification and the Court declines. (See, e.g., *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 527-529.) Because the property and business are *not* nuisances, the controverted issue(s) at trial was whether specific act(s) are nuisances *at* the property.[21] That is because the acts are not, by themselves, nuisances or unlawful. Here, the SOD only made findings of "nuisance" in connection with "public tastings" and "marketing wine with animals." (SOD at pp. 11, 12, 15.) The Court found that in three specific instances, Defendants engaged in public tastings. The Court did not find that "advertising, tastings, and sales of merchandise" individually violate a statute; rather, this conduct converts a tasting to "public" under the "totality of the circumstances," and as a "combination of advertising, tastings and sale of merchandise." (SOD at p. 11, 12, 15.)[22] As to "marketing," this Court indicated that "marketing animals in connection with wine" violates the NCC.

The Court did not find any other acts were nuisances, so, they cannot be enjoined; a declaration of public nuisance is the threshold to injunction. (*Padilla-Martel, supra,* 78 CalApp.5th at p. 151.) The SOD limits the scope of injunctive relief in a given case. This ends the inquiry. Regardless, none of the acts have been declared a nuisance by the legislature, any other

---

[21] This is unlike *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153 where the business, itself, was the nuisance. Here, the County proceeded on a nuisance per se basis, which Defendants maintain cannot support liability *or* injunctions in this case as to any act raised in the SAC and now at the injunction stage. A court cannot declare a public nuisance per se, and no law prohibits public tastings or marketing wine with animals. (*People v. Lim* (1941) 18 Cal.2d 872, 877-878.) An act cannot be a nuisance per se at one property if the act is allowed everywhere else under similar circumstances. Defendants did not defend against or address whether the tastings were properly classified as public tastings because that was never advanced by the County.

[22] Given that the Court determined this was a fact intensive inquiry, and not a perpetual condition, as it were, it would be impossible for the County to show a likelihood of reoccurrence and an injunction would not be permitted. (*Feminist Women's Health Center*, supra, 32 Cal.App.4th 1641

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

court, and cannot be implied. (See, e.g., *People v. Venice Suites, LLC* (2021) 71 Cal.App.5th 715, 733; *Buena Vista Cinema, supra*, 57 Cal.App.3d at pp. 502-503.) The only injunctions consistent with the SOD are as to public tastings and marketing with animals. The others are unlawful.

A general nuisance statute does not "create" nuisances. (*Id.*) Absent a judicial declaration, the County needs to identify and prove a predicate act *already prohibited at law*. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206-1207; *Venice Suites, LLC, supra*, 71 Cal.App.5th at pp. 730-733.) Unless a statute 1) specifically prohibits the conduct <u>under all circumstances</u> *and* 2) some law identifies the conduct as a nuisance, it is not a nuisance per se. (*Id.*; see also *Venice Suites, LLC, supra*, at pp. 730-735.) A violation of law does not ipso facto create a nuisance. (*People v. Seccombe, supra*, at p. 313.) A County may decide what constitutes a nuisance, but it must do so through the legislature and with specificity. (*Beck, supra*, at pp.1206-1207; see generally *People v. Lim* (1941) 18 Cal.2d 872, 877-878 [a legislature may declare an act a public nuisance, and vest injunction in the courts, but the court lacks this jurisdiction.) Permissive zoning does not just "make it so." (*See*, e.g., *Venice Suites, LLC, supra*, at pp. 724-733.) A court may not declare a nuisance per se not previously determined a public nuisance. (*Lim, supra*, at pp. 18 Cal.2d at pp. 877-879.)

Although the County could have requested declaratory relief or findings underlying the requested terms of injunction at trial, it did not.  In requesting injunctions beyond the scope of the SOD, the County asks the court to legislate restrictions on the property that do not exist. The separation of powers prohibits this. This problem is particularly acute where, as here, the Court did not adopt the County's claim that all tastings were prohibited, and the County seeks a permanent injunction as to "all tastings" anyway. Here, the Court would also be imposing these restrictions "under all circumstances" as to all wineries; if a nuisance per se as to one, it is a nuisance per se as to all others. This is legislating new use conditions as to all wineries.

### 1. Permissive Zoning Does Not Authorize Injunctions by Judicial Fiat.

The County will recite the weary refrain that an accessory use must be contained within an

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

entitlement lest it is prohibited.[23] Here, the County will take this argument further: if something is not expressly allowed, it can be enjoined. This is wrong. First, Civil Code section 731 requires an express judicial finding of "public nuisance" prior to injunction. (*Buena Vista Cinema, supra,* at pp. 502-503; *Padilla-Martel, supra*, at p. 151.) Land use is no exception. Second, land use conditions cannot be implied at law. (*Venice Suites, LLC*, *supra*, at p. 733.) For good reason. Based on the County's reasoning, the County could enjoin absolutely any act not included in 18.08.600. That would encompass anything and everything.[24] This is obviously not the law.

First, there is no permissive zoning "exception" to a legislative or court finding of nuisance prior to injunction. The law makes clear that absent a finding of a nuisance, an injunction may not lie. The Court cannot imply public nuisance where the SOD and legislature are silent on the issue. It does not matter if the County is a permissive zone or not. The inquiry can stop there. (*Padilla-Martel, supra*, at p. 151.) An express finding is a condition precedent and if it does not exist, an injunction cannot exist. There is no express finding of nuisance other than those above.

Second, the County has never distinguished *Venice Suites* because they cannot. Where the primary use is allowed, and express conditions do not exist to limit the primary use as to other activities, those conditions do not exist. (*Venice Suites, LLC*, *supra*, at p. 733.) If the conditions do not exist, surely, they cannot be imposed by permanent injunction. This has been decided.

The cases relied upon by the County in the SAC drive home this point. In *Kruse* the entire business operation (marijuana dispensary) was expressly prohibited in every zoning district. The primary use – in all aspects – was a public nuisance. That is not the case here. Wineries *are* legal. (*Venice Suites, LLC, supra*, at pp. 730-733 [explaining the distinction between *Naulls* and prohibition by implication].) Conditions occur at the time of entitlement; here, if they exist, are governed by statute.[25] Permissive zoning does not authorize conditions by silent indirection. (*Id.*)

---

[23] The County takes a position so broad on accessory uses (i.e., specifying marketing by content, or prohibiting specific acts, like yoga) that really the County enforces the term, as evidenced by this case, to include anything someone does on a property.

[24] The argument of permissive zoning is particularly odd as to this statute, which is largely written in the negative.

[25] The County does not dispute small winery use permit exemptions are ministerial, and were created by statute. While at times the County inferred the "certificate documents" might create specific permissions (or restrictions), the Court did not make this finding, and the County did not directly argue that position *at trial*. The County had before,

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

Although *Venice Suites* already dispensed with the issue, the argument is more problematic here. To start, a "permissive zoning" argument as to "any conduct on site" is nonsensical: no one reasonably believes an entitlement could specify all the "acts" or "things" one can do on a property. While a zoning district may define the "uses," and accessory uses, it never identifies all acts allowed "within" those uses. Permits do not say a homeowner can wash his hands or sleep in his home. This suggestion is absurd. Even the strictest zoning laws allow businesses to make reasonable decisions about what is necessary to support the business. The County does not tell Costco what products to sell, for example. Wineries are not distinct from other businesses such that this could legally differ (even if in practice, they do.)

Further, the County will say they are just regulating accessory uses, but that is form over substance. First, accessory uses are not equivalent to primary uses. You cannot have a "use permit" for marketing, cell phone use, t-shirts, hats, or olive oil. Every time the County argues Defendants can go get a "use permit," they mean a "use permit" for a winery, not the corkscrew.[26] But, Defendants are already entitled as a winery. Why would anyone re-entitle as a winery to sell wine openers? Or upgrade production wastewater to sell olive oil? This is the problem: there is no nexus. It makes no sense. If the Court engages in this fallacy, code enforcement devolves into a proverbial whack-a-mole of arbitrary and unpredictable directives.

As the injunctions make clear, dictating exactly "what" you can (or cannot) sell, down to wine openers and stemware, is not consistent with how other businesses are treated, nor is this level of government interference justified. Certainly not by injunction. But it is obviously not regulating "uses"; they are regulating what they want, when they want. Selling branded t-shirts is not a "use." In Defendants' view, this is conduct consistent with (or at least, not in conflict with)

---

but changed course. The County's position on this point was at best confusing at trial, sometimes referencing the certificate in argument, and sometimes the NCC. Ministerial permits cannot differ from the other as a matter of law, so the certificate paperwork is at best circumstantial evidence of the statute's intent in conditioning the entitlements. (see, e.g., *Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 493 [describing the distinction between discretionary and ministerial permits].)

[26] Today, since conditional use permits are discretionary, there is also no such "thing" or "product" as a use permit. The County often positions this "requirement" as equivalent to a "license," which is misleading. A use permit today is no one size fits all "product," which underscores the absurdity of why the County cannot establish a nexus between forcing a property owner to get a *winery* use permit to sell a corkscrew, particularly if the landowner already has the "winery."

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

1  running a winery business. It promotes the business, a winery, which is the business of wine. The

2  *subject* of enforcement of legal acts cannot support a nuisance per se, even if it could in fact.

3      Lastly, Napa was <u>not</u> a permissive zoning district when the subject property was entitled.

4  At the time, landowners did not have to specify accessory uses, or the intensity thereof. The

5  "small winery" definition under NCC section 18.08.600 does not purport to capture what was

6  allowed; it says nothing about most "things" a winery does to produce and sell wine and instead

7  focuses on what a small winery "*does not*" do. In 1984, when *this* property was entitled, winery

8  uses were not specified and flowed from entitlement in the primary use (they still do the latter).

9  (Exh. D [Ord. 511, former NCC § 12405]; Exh. C [NCC §§ 18.104.040; 18.08.040(H)(2); Exh.

10 E].) This is the same for every winery before 1990, not just Hoopes. As to SWE, the only

11 expansion triggering a new "use permit" was an increase in "production." (Exh. D [Ord. 511,

12 former NCC § 12419]; NCC §§ 18.104.250.) That is still the only express reference in any statute

13 to intensification of that "use." All other "accessory uses," marketing, and sales were entitled by

14 right without a use permit. (NCC § 18.08.040(H)(2).) So, even if the County were correct as to

15 winery developments after 1990, this logic does not permit implication on entitlements that

16 vested before the restrictions to be imposed were even contemplated. (*See, e.g., Venice Suites,*

17 *LLC*, *supra*, at pp. 730-733.)[27]

18     The "we know it when we see"[28] test the County adopts does not guide a property owner

19 how to avoid the severe consequences of prosecution, or worse, injunction. It would be

20 impossible to know "what" the County will prohibit next and that they intend to go after Hoopes

21 is clear. Defendants do not know how they would comply with the proposed injunctions; they

22 would just have to close all operations.

23

24 _____

25 [27] Hoopes is a legally conforming winery, not a non-conforming use, so is treated like all others under the law. Even
   if that were not true as to discretionary use permit holders, the entitlement at Hoopes was conveyed by right and as a
26 ministerial permit, so there are no legal distinctions between the properties. (See, e.g., *Protecting Our Water &
   Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 493.) There are *no* discretionary terms to
27 ministerial permits by law. (*Id.*) Thus, it is not true that one permit can have different requirements than others in this
   "classification."
28 [28] Justice Stewart's famous test for obscenity, "I know it when I see it", was disavowed by later decisions of the
   Supreme Court to a less arbitrary reasonable person standard. (*See Miller v. California*, (1973) 413 U.S. 15.

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

**2.     Land Use Cannot License Winery Businesses so the Injunctions are Far Beyond the Scope of Permissible Land Use Regulation.**

The County's overreach is vast because the purported land use injunctions are actually intended to directly regulate winery business *operations*, a business the County cannot license and operations it cannot directly regulate. The County uses these injunctions to directly enter an area of plenary state and/or federal jurisdiction. They are accordingly in excess of jurisdiction on this related, but independent basis.

The County admits it cannot license winery *operations* because these are within the plenary jurisdiction of the ABC. (Exh. B.) If the purpose and effect is to <u>directly regulate</u> the "sale, purchase, [or] possession" of alcohol, it is preempted. (See, e.g., *Korean American Federation v. City of Los Angeles* (1994) 23 Cal.App.4th 376, 387 ["if the purpose and effect … are to regulate the manufacture, sale, purchase, possession or transportation of alcohol, we would have to agree the state has expressly preempted the local regulation"]; *Ainsworth v. Bryant* (1949) 34 Cal.2d 465, 473; *People v. Ramirez* (1994) 25 Cal.App.4th Supp. 1.) Unlike the entertainment facility distinguished in *Ramirez,* the County cannot license a winery at all. The County can zone *where* a winery can operate, but not license *what it does*. An expressly authorized act cannot be a public nuisance. (Civ. Code § 3482.)  If it cannot be a public nuisance, it cannot be enjoined. (*Gallo, supra*, at pp. 1105.)

These privileges were already granted to Defendants: the 02-license vested 6204 Washington Street with the permissions of consumption, tasting, and sampling, with express knowledge and approval by the County, and *without conditions* in 2019. (Exhibit A [TE 1183].). In this case, preemption is actually of no legal moment: they did not condition these rights prior to vesting so cannot enjoin them now. (*Id*.; see also generally *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519.)

**3.     The County's Proposed Terms Raise Substantial Notice Issues.**

Because the SOD is not based on a nuisance in fact, and rather a nuisance per se, this

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

injunction would enjoin all wineries by operation of law; in other words, the County's zeal to punish Defendants by whatever means poses the very real risk of taking down the entirety of the Napa wine industry.  The problem is acute.

The Court cannot enjoin Defendants on a nuisance per se theory without *also* enjoining all other wineries as to that same conduct. The County cannot declare a specific act a nuisance per se based on the *subject* of enforcement; it is by definition not a nuisance per se if not a nuisance under all circumstances. Where liability is premised on nuisance per se, it is a nuisance <u>by its existence and as to all</u>. That is *why* the marijuana dispensary cases are different, and why an act must be itself illegal to be a nuisance per se.[29] Acts in support of a business that is *itself* is a nuisance is distinct from nuisance acts within a lawful business, as in this case. The acts do not convert this property into a nuisance, like was the issue in the gang cases. (*See, e.g., generally Gallo, supra*, at pp. 1105-1109; see also *Padilla-Martel, supra*.) Even assuming that could happen, the Court did not make that finding, because the County refused to acknowledge their case was truly a nuisance in fact case, not a per se case. A nuisance in fact requires a substantial showing, and is not supported by the record here. (See, e.g., Civ. Code §§ 3479, 3480, CACI 2020).

Lawful conduct itself cannot ever *be* the nuisance. (Civ. Code § 3482.) Lawful conduct can *contribute* to a public nuisance. The "public nuisance" is the totality of those circumstances, but never the acts independently. But an injunction may only extend to enjoin *the* nuisance, not lawful acts the County wants to regulate. In seeking to ban something only as to Defendants, this is a nuisance *in fact*, but not *per se*. Surely the County does not want to ban tastings at all wineries, but that would be the impact. To only enjoin the acts at Defendants property, the Court would have to make a finding as to 1) why the statute only applies to Hoopes, or 2) make a finding under the nuisance in fact statutes, which did not occur. (CACI 2020.)

### viii.    Much of What Napa County Seeks to Enjoin are Lawful Activities.

Statutory immunity for nuisance arises "where the acts complained of are authorized by the express terms of the statute . . . or by the plainest and most necessary implication from the

---

[29] (Hence the problem with liability even here).

1    powers expressly conferred, so that it can be fairly stated that the Legislature contemplated the

2    doing of the very act which occasions the injury." (*Zack's, Inc. v. City of Sausalito* (2008) 165

3    Cal.App.4th 1163, 1179; Civil Code § 3482.) The below acts are expressly authorized by statute

4    *or* state licenses. Because these acts are expressly allowed by statute, and are already vested on

5    the property, they cannot be enjoined.

6                                    **1.       Private Tours, Tastings and Consumption:**

7                An injunction on "all tastings" includes lawful activity. The Court found that "public"

8    activity is distinct from, and does not encompass, "private" activity. (SOD, pp. 12, 15.) The Court

9    would not resolve "whether Hoopes' SWE or the NCC allow 'private tastings' of some sort."

10   (SOD p. 15.) Thus, "some" tastings cannot be enjoined.[30] As to tours, NCC section 18.08.600(C)

11   only prohibits "*public* tours…"  There is nothing preventing Hoopes from conducting *private*

12   tours. Private tours cannot be enjoined. The SAC and SOD did not mention consumption. The

13   SOD did not find "consumption of retail purchases" was a public nuisance or that "consumption"

14   is a "public tasting." This is beyond the scope of the SOD and SAC. Consumption cannot be

15   enjoined.

16              On the other hand, tastings, wine samples, retail, and consumption are distinct privileges

17   conferred by State Law and already licensed at the property by way of a preexisting 02 license.

18   Terri Abraham of County Planning signed off on the ABC 02 license in 2019 without conditions.

19   (Exh. A, TE 1183; Bus. & Prof. Code §§ 23358(a)(3) [consumption of retail purchases on the

20   premises], 23356.1[winegrowers license "authorizes … wine tastings of wine produced or bottled

21   by, or produced and packaged for, the licensee, either on or off the winegrower's premise"]; Cal.

22   Code Regs., tit. 4, § 53 [wine tastings may be conducted without charge or for a fee … on a

23   premises licensed with a winegrower's license…"]; Exh. B, Gallina, TT pp. 501-505.)

24   Consumption of retail purchases is expressly allowed by State licenses vested at the property.

25   (Bus. & Prof. Code § 23558(c).) Vested and lawful activities are statutorily immune from

26   injunction.

27   _____

28   [30] This request is particularly troublesome: although the Court declined to find in the County's favor, the County seeks to enjoin the conduct anyway.

In the event the County argues they can require local approval before the privileges issue, this is untrue. Here, County approval took place. But, the County requests Defendants to exchange their existing entitlements for a new discretionary permit the County can deny. That is an exaction, not approval. Second, a permitting scheme cannot condition a state license or serve as a prior restraint on protected commercial speech. (See *U.S. Mission Corp. v. City of Mercer Island* (W.D. Wash. Feb. 10, 2015) 2015 WL 540182, at * 7 (W.D. Wash. Feb. 10, 2015) (collecting cases regarding curfews); *Ohio Citizen Action v. City of Englewood* (6th Cir. 2012)671 F.3d 564, 574 (6th Cir. 2012); *City of Watseka v. Illinois Pub. Action Counsel* (7th Cir. 1986) 796 F.2d 1547, 1555-56, aff'd, 479 U.S. 1048, 107 S. Ct. 919, 93 L. Ed. 2d 972 (1987).). A court cannot condition privileges only the state can convey. The County's requested injunction paragraphs (a)(i), (a)(ii), and (a)(iii) cannot issue.

### 2.    Wine Produced by the Winegrower at a Different Facility May be Sold at the Property.

The NCC states "retail sale" of wine includes "wine fermented or refermented and bottled at the winery **or** "wine produced by or for the winery from grapes grown in Napa Valley." (NCC § 18.16.030(G)(5)(c); Resolution 90-10, § 3.11 [1991 General Plan Amendment].)  Agriculture, independently, includes wine made "by or for" the winery. State law, by way of underline existing licenses, allow sale of "wine produced or bottled by, or produced and packaged for, the licensees, either on or off the winegrower's premises." (Bus. & Prof. Code §§ 23356.1; 23358(a).) 27 CFR § 24.280 states that "[w]ine may be removed for transfer in bond, from one bonded wine premises to another bonded wine premises or to a distilled spirits plant." Any injunction would also violate the dormant commerce clause. (*See e.g.*, *Alexis Bailly Vineyard, Inc. v. Harrington* (D. Minn. 2020) 482 F.Supp.3d 820, 824.) Request for injunction (a)(vii) cannot issue because this would encompass lawful activity expressly allowed (and would be unconstitutional).

### 3.    The Animal Sanctuary Is Lawful

Agriculture is a lawful commercial use allowed without a use permit in the AP. (NCC 18.16.020(A); NCC § 2.94.) Agriculture has *always* been allowed by right as the "highest and best use of the land." (*See*, Ord. No. 274, Ord. No. 511, Ord. No. 947.) Agriculture includes all

animals, inclusive of for "raising," without limitation, except as to roosters. (Exh. C [NCC § 18.08.040(c)].) Limiting the "keeping" of "animals" to those intended for food production is untenable. By its terms, it is okay to keep an animal to eat, but not pleasure. This would yield absurd results as to <u>all</u> in the zone. Residents would have to eliminate their dogs, cats and horses, and farmers would have to evict animals not destined for food even if they have an independent agricultural purpose, for example, fire abatement, tilling soil, grazing or composting. In contrast, there is no identifiable government purpose: what is the nuisance in an agricultural zone associated with farm animals that are destined for food production as opposed to those that are not? Request for injunction (b)(ii) covers lawful activity that is statutorily immune as a right to farm in the AP zone.

By way of this injunction, the County exposes it intends to creates a new "definition" of agriculture (and perhaps more) through injunction and is not allowed.

### b.  The Injunction Would Have Far Reaching Ramifications.

Before entering the proposed injunction, this Court must weigh the effect the injunction will have on both Hoopes *and* other Napa County wineries.

### 1.  A Ban of Marketing Animals in Connection with Wine Would Effectively Evict Hoopes Vineyard from the Property.

An injunction to prohibit "any use of animals as an attraction, enticement, or marketing activity related to a lawful winery use" (County Brief at pgs. 3, 23) eradicates the commercial utility of the property for the Hoopes Vineyard brand. Hoopes cannot avoid "marketing," "advertising" or "enticing" consumer behavior in connection with "animals." By their existence, Hoopes Vineyard – labeled with a dog – violates this injunction. There is little if any use of the property for a brand centered around, and co-extensive with, the founder's dog. [31] While Defendants respectfully disagree with the Court's findings that marketing wine with animals is a nuisance per se, the only injunction consistent is to prohibit use animals in "marketing."  (SOD p. 12.) NCC section 18.08.370 includes "any activity." If "marketing" with animals is prohibited,

---

[31] See, e.g,. www.hoopesvineyard.com.

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

Hoopes Vineyard cannot operate in connection with the property.

This is a clear regulatory taking. This is a content-based restriction on commercial speech, so presumptively invalid under the First Amendment. It also does not have an impact solely on Hoopes Vineyard: many other wineries would be impacted, such as Stag's Leap, Hall Winery (large bunny art installation), Frog's Leap, and Nickel and Nickel (horses at the winery – eat or evict). Restriction (b)(iii) should not issue as overbroad, unconstitutional, vague and as a taking.

### 2. This Injunction will Enjoin Other Wineries in Substantial and Common Operations; thus, the Court must Give Other Wineries an Opportunity to Object Prior to Imposing an Injunction.

The injunction is impermissibly overbroad because the terms impact others who are subject to the injunction's reach, but not before the Court. (*People ex rel Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1113.) Unless the Court intends to declare Hoopes as a class of one, this injunction will apply to almost every winery in Napa County.

The SOD creates a new definition of "public tasting." All post-1990 wineries are all prohibited "public" tastings, so these findings will also enjoin them. The County has never defined or enforced "public" as anything more than "lacking an appointment." (*See*, e.g., Exh. B [TT 497-500]) Accordingly, the Court's findings beyond "appointment" have regulatory impacts on all wineries.

All terms will also impact all "small wineries" because the Court did not limit the findings to the subject property, but rather the court's interpretation of NCC section 18.08.600. The Court held the County can treat small wineries differently than wineries, but could not justify same as to small wineries. (Gov't Code § 65852.) The Court did not find that the definition of "small wineries" was exclusive to SWE, or describe how it could be: if the statute survived the WDO to govern "small wineries," the statute would have to reconcile with all definitions of small winery, an in particular, as defined in the General Plan (or CEQA, or both). By Hoopes' count, approximately 350 Napa County wineries will have these new rules imposed upon them:

- Under the Napa County Code, the following activities are now public tastings and not private tastings, per the SOD:

OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

BN 86778388v1

1          o    When a customer makes "an appointment" through a winery's website.

2          o    When a customer makes an appointment using Open Table.

3          o    When a customer makes a "reservation for a wine tasting."

4          o    When a winery charges a "minimum tasting fee."

5          o    When a server explains the "different characteristics" of the wines offered.

6    •    Under the Napa County Code, the following activities are "public tours" per the SOD:

7          o    A customer "walking the grounds" of a winery.

8          o    Inviting customers to "walk around the Property."

9    •    Marketing a wine, including on a wine label, by using animals is prohibited.

10          These new rules still leave the unanswered question: What is the difference between a

11   public and a private tasting?  The Court declined to resolve the distinction between "private" and

12   "public," and the NCC has never provided one. As of today, Defendants and the public cannot

13   know how to comply with an order prohibiting "public" tasting without a definition. At

14   minimum, this will have a chilling effect as to a large population.

15          There is now a realistic danger that the injunction will significantly compromise those not

16   before this Court. Even if disinclined to notice other wineries impacted, and provide an

17   opportunity to be heard, at minimum injunctive terms must clarify: 1) what are public tastings, 2)

18   a definition of "public" to guide both tastings and tours, and 3) what facts supported the Court's

19   conclusion that the conduct was a "public tasting." Without this clarification, there is no question

20   the lack of clarify will chill substantial conduct and speech and endanger well intentioned

21   business owners of being in violation of the Court's order, including Defendants.

22          Unless the Court creates a class of one, this problem impacts all wineries.

23   **B.    Notice Issues**

24          **i.    Defendants Did not Have an Opportunity to Show that the County has**
                 **Never Defined "Public" Tasting Consistent with the Court's Order.**
25

26          The Court decided the case on a theory of liability the County did not advance. The

27   County argued SWE were prohibited any form of tastings, not that these tastings were prohibited

28   because they were "public." The SAC is clear: "most concerning is that Hoopes is improperly

operating as a full winery <u>with tastings</u>." (SAC ¶ 53.)[32] These are substantially distinct theories of liability. Accordingly, Defendants did not have adequate notice to create a sufficient record. It is also true that because the County did not advance this theory, there is no definition to support this finding. All County documents *and* witnesses confirmed that the distinction between public and private was <u>the fact of "appointment" and nothing more</u>. But now this Court has eliminated that distinction so it is unclear what is left.

Post-trial, the County confirmed <u>the limited theory of the case</u>. During the September 06, 2024, Motion to Dismiss, the following colloquy ensued:

> THE COURT: So how do you -- how do you, if you can, reconcile that argument about the significance of the database and this 2012 database with some of the other evidence, for example, the 2007 letter to the Hopper Creek Winery saying that they're in violation by conducting tastings?
>
> MS HOOPES: "...But both notices of apparent violation [to the predecessor in interest] **focus on public tastings and not tastings by appointment**. And that was a very clear distinction that nobody disputed at trial. Ms. Gallina admitted that they're different. The databases show that the two entitlements are different. Whether or not that [distinction] is legally defensible really isn't the issue, **because there's no evidence that Defendants ever conducted public tastings** […] even the lawyer that they hired to come, even law enforcement, made appointments to come to the property. So everything was by appointment."
>
> […]
>
> THE COURT: "So, and just to be clear … is it the County's position, just so I'm not misunderstanding anything, that because of 18.08.600, a winery with a small winery exemption cannot conduct tastings of any type, public or private? Is that the County's position?"
>
> MR. SPELLBERG: Yes, Your Honor, that's correct.

The entire trial revolved around Defendants' belief they had "some sort" of tasting; this is why Defendants sought declaratory relief. NCC section 18.08.600 does not, in fact, prohibit "all" tastings. The NCC does not prohibit tastings, either. The NCC merely defines "tasting" as "tours of the winery and/or tastings of wine, where such tours and tastings are limited to persons who have made unsolicited prior appointments." (Exh. C [NCC § 18.08.620].) The NCC does not have a definition or distinction of "public" or "private" tastings (and never did). This activity cannot be

---

[32] The only alternative theory the County argued in some hearings (although, not at trial) was that Hoopes was bound uniquely by the terms of *its* application materials (as they did in *Bremer*). This was not advanced at trial, however, because Judge Wood had already rejected this argument and County materials exist that outright conflict with this position. (Exh. 1032.) They were not introduced because this was never the argument at trial.

1  enjoined as it would violate due process for lack of notice.

2              **ii.      The Terms are Overbroad and Vague.**

3          Unless and until certain terms in the proposed injunction are defined, the proposed

4  injunction will suffer severe due process problems.  The following terms are especially suspect.

5          **"All Tastings"** – The term "public tastings" is not defined in the NCC.  In discovery,

6  Napa County objected to discovery because it believed the term "tastings" was vague, and refused

7  to comply with discovery on that basis. Yet now it seeks to impose an injunction using an

8  admittedly vague term.  At the state level, a distinction is made between samples, tastings,

9  consumption, and sale. Thus, in the injunction, tastings cannot mean all of these things.  The term

10 is vague.

11         "**All Consumption**": First, assuming that at "tasting" encompasses some amount of

12 consumption and private tastings are allowed, prohibiting all consumption would be overbroad.

13 The term is also vague. The County admitted during discovery that the term "consumption" was

14 vague, and refused to comply with discovery on that basis.

15         "**All Food Service" –** The NCC states that food service is allowed to the extent of "cost

16 recovery"; it is not prohibited or defined. The right to food service is authorized by the General

17 Plan as a component of the right to tastings. Since not all tastings are prohibited, food service

18 cannot be outright prohibited, either. The term is also vague.

19         **Prohibit** "**all marketing of wine**" including "**social events of a public nature**" but "**not**

20 **including advertisement or marketing of lawful activity"** – The definition of marketing in

21 18.08.370 is vague, as is the term "social event of a public nature." The definition (which does

22 not actually prohibit activity) applies to "**any activity** of a winery[33] … for the education and

23 development of customers and potential customers." How can a business reliant on selling wine

24 operate while simultaneously avoiding "any activity" with a purpose of "educating and

---

[33] As to this point it is worth reiterating that the operations of a winery cannot be licensed or regulated by the
municipality. A winery does not have the same definition under the ABC as it does at local law; in other words, a
winery can exist without a physical location. (See, generally, Cal. Const. art. XX; compare NCC § 18.08.340.) As
such, a winery can exist virtually, or in multiple locations, under State law. How can local state zoning laws possibly
be interpreted to regulate winery *operations* if those are extensively regulated by the state, where no land-use related
"purpose" has been proposed to justify the restriction?

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

develop[ing] customers"? There is also no definition of a social event of a public nature. Finally, marketing is a very broad term, involving pricing, branding, packaging, to name a few. If an injunction includes *any* activity to induce consumer sale, without limitation, it will include anything a winery business does. The proposed injunction is indefinite, and seeks to create a new definition, which is improper.

**"Any use of animals as an attraction, enticement, or marketing activity related to a lawful winery use."** – This term is overbroad and inherently vague. It is not narrowly tailored, either.

**"All shade Structures"** – only one item was identified as a "shade structure," and Mr. Ryan testified he did not know what a structure was for the purposes of a flood plain permit. The term does not appear in the building code or NCC. It is thus vague.

**"Occupancy and Assembly"** – in addition to being an impermissible "obey the law" injunction, the injunction is vague. Which "occupancy" or "assembly standards" does it refer to: the law maintains various, and they are all different. (*See*, e.g., 2021 IBC, 3.1 [occupancy] incorporated by reference in NCC § 15.12.010; compare Cal. Code Regs., tit. 24, Part 9 [fire occupancy].) 2021 IBC guidelines have multiple designations for "storage." Which storage occupancy is it? Various storage designations allow for public occupancy and assembly, for example, low-hazard storage space, group S-2, is the designation for public parking garage. If members of the public are allowed, what is the safety concern? Accessory storage spaces, pursuant to IBC 3.11.1.1, indicates that "a room or space used for storage … accessory to room with another occupancy shall be classified as part of that occupancy." The County did not identify that any room had ever been occupied improperly because the "baseline" permissions were never identified. As to "tasting room turned mercantile," the County admitted they cannot designate where tastings took place. (Exh. B [TT 503:14-28].) Although the County *could* adopt their own occupancy definitions, they have not done so other than with respect to caves. (*See*, e.g., NCC §§ 15.12.180, 15.12.190.) The County cannot attempt to legislate one now through injunction. If the County *had* approved a site plan by "occupancy type," the director "shall supply the applicant of the uses that can be accommodated by the building." (NCC § 18.140.030.) A list was not

1    presented at trial. This injunction is indefinite and uncertain.

2        **C.    The Proposed Injunction is Unconstitutional.**

3        Even if an injunction is authorized by a nuisance statute, it is unlawful if it is

4    unconstitutional. (*Padilla-Martel*, *supra*, at p. 155, citing *People ex Rel Busch v. Projection Room*

5    *Theater* (1976) 17 Cal.3d 42, 53.)

6                **i.    First Amendment and State Right to Free Speech.**

7        An injunction is void if it violates the First Amendment. (*DVD Copy Control Assn., Inc. v.*

8    *Bunner* (2003) 31 Cal.4th 864, 875.) Injunctions "carry greater risks of censorship and

9    discriminatory application than do general ordinances"; as such, they require a "more stringent

10   application of general First Amendment principles." (*Madsen v. Women's Health Center* (1994)

11   512 U.S 753, 764.)  "Permanent injunctions—i.e., court orders that actually forbid speech

12   activities—are classic examples of prior restraints."  (*Bunner, supra*, at p. 886.) Accordingly, an

13   injunction must be "content neutral" and burden no more speech than necessary to serve a

14   legitimate government interest. (*Id.* at p. 765; *Planned Parenthood Shasta–Diablo, Inc. v.*

15   *Williams* (1995) 10 Cal.4th 1009, 1019–1024.) Further, the state right to free speech is broader

16   than the federal right protected by the First Amendment.

17       It is obvious that the proposed injunctive terms are unconstitutional. In some instances,

18   they are content based (marketing wine with animals) and others, overbroad (all advertising,

19   marketing – which is defined as "any activity" – to educate a consumer or entice purchase.).

20       For example, a restriction on "all marketing of wine" and "social events of a public

21   nature" is unconstitutional on its face: it restricts speech based on content. (Exh. B [TT p. 511].)

22   The County admits this. Thus, it is presumptively impermissible. (*Ysursa v. Pocatello Educ.*

23   *Ass'n* (2009) 555 U.S. 353, 358.) The County did not advance a legitimate government purpose

24   nor nexus for the restriction. This is an affirmative burden. It cannot reasonably be argued this

25   restriction is narrowly tailored: it seeks to <u>permanently</u> enjoin <u>all marketing, advertising, social</u>

26   <u>events, and enticing customers</u>. This restriction is unconstitutional on its face.

27       Insofar as the injunctions ban making wine available to "try," "taste" or "sample" any

28   quantity of wine to induce purchase by enjoining a "tasting," "consumption," "sampling,"

advertising, marketing, or otherwise promoting a sale, the injunction terms prohibit constitutionally protected commercial speech and are unconstitutional. By proposing to enjoin all tastings and consumption "by any name," the County intentionally bans how Defendants speak to the consumer. The County admits they seek to prohibit how Defendants "induce … purchase," because unlimited customers are allowed. In other words, the concern what is said to sell wine, not that they are there. (SAC ¶ 14.)

"The First Amendment ... protects commercial speech from unwarranted governmental regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York* (1980) 447 U.S. 557, 561. Commercial speech encompasses "expression related solely to the economic interests of the speaker and its audience" and "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.* (1995) 514 U.S. 476, 493. Thus, the proposed injunctions, "threaten[ ] societal interests in broad access to complete and accurate commercial information" that "First Amendment coverage of commercial speech is designed to safeguard." *Id.* "[T]he general rule is that the speaker and the audience, not the government, assess the value of the information presented[ ]" in the commercial marketplace. *Id.* at 767.

Insofar as the County argues that "tastings" are conduct, not speech, similar arguments are rejected. Commercial speech includes activities which seek to "have prospects enter their stores and purchase Plaintiffs' products." *FF Cosmetics FL Inc. v. City of Miami Beach, Florida* (S.D. Fla. 2015) 129 F. Supp. 3d 1316, 1321. Product demonstrations are commercial speech because they are "essentially an advertisement" of products and the motivation for engaging in the speech is purely economic. *Am. Future Sys., Inc. v. Pennsylvania State Univ.* (3d Cir. 1984) 752 F.2d 854, 857; *Bd. of Trustees of State University of New York v. Fox* (1989) 492 U.S. 469. A protected commercial pitch is anything that "draw[s] the public's attention to something to promote its sale ...." *Vinny's Landscaping, Inc. v. United Auto Credit Corp.* (E.D. Mich. 2016) 207 F. Supp. 3d 746, 749 (citing *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.* (6th Cir. 2015) 788 F3d 218.) California courts have long recognized that "[o]bviously, the use of samples is for the purpose of encouraging the sale of the product." (*Tonkin Distributing Co. v. Collins* (1942) 50 Cal.App.2d 790, 795.)

The regulation of commercial speech is subject to the *Central Hudson* analysis. Under this analysis if (1) the speech concerns lawful activity and is not misleading, then the government must (2) identify a substantial governmental interest, (3) show that the regulation directly advances that interest, and (4) show that the regulation is not more extensive than necessary. (*Central Hudson*, *supra*, at p. 566.) This is the County's burden, not Defendants'. California Courts have already decided that sampling is commercial speech. Accordingly, the burden shifts to the County to prove by clear and convincing evidence that there is a legitimate government interest. (*Tonkin Distributing Co. v. Collins* (1942) 50 Cal.App.2d 790, 795.)

Here, Napa County has not attempted to make this showing and, until it does so, any injunction without meeting the *Central Hudson* test would be unconstitutional. "Protecting agriculture" without much more does not immunize a law from unconstitutionality. (*Alexis Bailly Vineyard, Inc. v. Harrington* (D. Minn. 2020) 483 F.Supp.3d 820, 824.) Unlimited customers are allowed to come to this commercial property, so attempting to regulate "why" they buy wine is merely regulation of speech by another name. It bears remembering that the County welcomes this conduct at other wineries, and recognizes it is as valuable to the market – both to the individual winery, and the overall Napa economy. (Exh. E [Ord. 947, § 4].).) Accordingly, by prohibiting some but not others to engage in this critical speech, the County is endorsing certain companies over others, and choosing the winners and losers of the industry. It is not about environmental impact, as unlimited customers are already allowed, and no nexus to septic was actually drawn beyond conjecture. The County has not explained how "tasting," "sampling," or "consumption" impacts infrastructure any differently than unlimited retail customers. This is their burden. They have not met it. It may not be regulated.

### ii.    The Right to Operate A Business.

The injunctions are also against public policy. The County acknowledges the activities it seeks to prohibit are important winery functions, and yet, nevertheless denies them to Defendants. (General Plan amendment 3.11; Exh. E [Ord. 947].) Other wineries operate accessory uses without a use permit, so this cannot be it: all wineries prior to any conditional use permit operate without a use permit, and with accessory uses granted, at that time, by right. The NCC also

BUCHALTER
A PROFESSIONAL CORPORATION
ST. HELENA

**OPPOSITION TO PLAINTIFFS' REQUESTED EQUITABLE RELIEF (INJUNCTION)**

1 expressly recognizes "accessory uses" at SWE without a use permit. (Exh. C [NCC §

2 18.08.040(H)(2)].) Yet, Napa County seeks to enjoin Hoopes from all accessory uses.  Federal

3 Courts faced with similar ad hoc restrictions have struck them down as substantive due process

4 violations because they unreasonably interfere with a lawful business. (*See*, e.g., *Sanderson v.*

5 *Village of Greenhills* (6th Cir. 1984) 726 F.2d 284; *Chalmers v. City of Los Angeles* (9th Cir.

6 1985) 762 F.2d 753; *United States v. Tropiano* (2d Cir. 1969) 418 F.2d 1069, 1076 ("The right to

7 pursue a lawful business ... has long been recognized as a property right within the protection of

8 the Fifth and Fourteenth Amendments of the Constitution."); *Small v. United States* (3d Cir.

9 1964) 333 F.2d 702, 704 ("The right to pursue a lawful business or occupation is a right of

10 property which the law protects against intentional and unjustifiable interference."). The proposed

11 restrictions appear to restrict all viable revenue for the business, not to advance a legitimate

12 government purpose. Thus, the injunctions should not enter.

13 **V.    CONCLUSION**

14        This Court issued the SOD and found Hoopes in violation of the NCC, but not for the

15 reasons put forth by Napa County.  In so doing, this Court created a new definition of the term

16 "public" which will impact hundreds of Napa County wineries, and could disrupt the industry

17 entirely and has injected additional notice concerns into this case as to Defendants and these other

18 wineries.  The harm to these wineries will be immediate and substantial. The wineries have not

19 been given opportunity to defend their property rights, or for the Court to evaluate and understand

20 the impact.  This Court should stay any decision on an injunction unless and until the County

21 meets the burden to have a constitutional and extraordinary remedy imposed as to all wineries not

22 now before this Court.  It has not done so, and has exposed ulterior motive by way of this

23 excessive request.

24 DATED:  January 24, 2025                 BUCHALTER
                                          A Professional Corporation
25

26
                                          By: _____
27
                                              KATHARINE H. FALACE
28                                            Attorneys for Defendants and Cross-
                                              Complainants