IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPES VINEYARD LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NAPA,<br><br>Defendant. | Case No. 24-cv-06256-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiffs Hoopes Vineyard LLC, Summit Lake Vineyards & Winery LLC, and Cooks Flat Associates dba Smith-Madrone bring this lawsuit to challenge various Napa County land-use regulations. Plaintiffs allege that the county regulations at issue—which (among other things) limit whether Plaintiffs can offer on-premises tours or wine tastings or host certain events on their property—are preempted by federal and California law, violate the First Amendment, violate the Dormant Commerce Clause, are void for vagueness, violate the non-delegation doctrine, take property without compensation, and deny Plaintiffs the equal protection of the law.

This federal lawsuit does not arise in a vacuum, however. Several years ago the County initiated an enforcement action in state court against Hoopes for its violations of these county regulations. That prevents this federal case from going forward. The pending state enforcement action provides Hoopes a forum to raise all of its claims, so the Court must abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971). And Summit Lake and Smith-Madrone are so similarly situated to Hoopes that Younger abstention is appropriate as to them too. The Court therefore **GRANTS** the County's motion, **DISMISSES** Plaintiffs' claims for injunctive and declaratory relief, and **STAYS** Plaintiffs' claims for

damages (except for Summit Lake and Smith-Madrone's claim alleging First Amendment retaliation, which the Court **DISMISSES** for failure to state a claim).

## I. BACKGROUND

### A. Napa County Regulation of Wineries

Napa County closely regulates agriculture and wineries. As relevant here, Napa County has established Agricultural Preserve and Agricultural Watershed zoning districts, which it collectively refers to as the Agricultural Districts. Napa County Code §§ 18.16.010–040, 18.20.010–040. The County allows various land uses in the Agricultural Districts—some requiring a use permit, others not. Id. §§ 18.16.020–030, 18.20.020–030. Wineries normally require a permit, id. §§ 18.16.030(F), 18.20.030(H), but certain wineries operating under historically issued permits and exemptions may continue operating pursuant to those permits and exemptions, id. §§ 18.16.020(G)–(I), 18.20.020(H)–(J). One type of historically recognized winery is a "small winery," which "does not conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." Id. §§ 18.16.020(H), 18.20.020(I), 18.08.600.

In the Agricultural Districts, the County allows the "[s]ale of agricultural products grown, raised or produced on the premises" without a permit. Id. §§ 18.16.020(A), 18.20.020(A), 18.08.040(E). Small wineries with a valid permit exception are also allowed, without a permit, to use their property for "[m]arketing, sales, and other accessory uses that are related, incidental and subordinate to the main agricultural processing use." Id. § 18.08.040(H)(2).

The County requires a permit for the following activities related to wineries:

- The "[r]etail sale of (1) wine fermented and bottled at the winery … and (2) wine produced by or for the winery from grapes grown in Napa County." Id. §§ 18.16.030(G)(5)(c), 18.20.030(I)(5)(c).
- The "[m]arketing of wine," which encompasses "any activity of a winery which is conducted at the winery on a prearranged basis for the education and development of customers and potential customers with respect to wine which

can be sold at the winery on a retail basis." Id. §§ 18.16.030(G)(5)(b), 18.20.060(I)(5)(b), 18.08.370. This includes "cultural and social events" and "[b]usiness events" as long as those events "are clearly incidental, related and subordinate to the primary use of the winery." Id. § 18.08.370.

- "Tours and tastings," which must be "limited to persons who have made unsolicited prior appointments for tours or tastings" and "may include food and wine pairings." Id. §§ 18.16.030(H)(1), 18.20.030(J)(1), 18.08.620.

Any land use not specifically allowed is prohibited. See id. § 18.12.060(C).

### B. The Parties

Plaintiffs Hoopes, Summit Lake, and Smith-Madrone are three companies that operate wineries in Napa County. FAC (dkt. 43) ¶¶ 7–9. Hoopes and Summit Lake operate small wineries pursuant to use permit exceptions, while Smith-Madrone operates a winery pursuant to a use permit. Id. ¶¶ 31, 80, 131–32. All three are located in Agricultural Districts. Id. ¶¶ 30, 81, 130.

Hoopes. Hoopes's predecessor in interest obtained its small winery exception in 1984, meaning Hoopes falls within the regulatory exception for historical small wineries. Id. ¶ 31; Hoopes SWE (dkt. 43-1); NCC § 18.20.020(H). The permit exception indicates that no visitors are expected and specifically states that there will be no tours or public tastings. Hoopes SWE at 2. Rather, the permit exception provides only for the following uses: crushing, fermentation, storage, aging, bottling, packaging, and shipping. Id.

Summit Lake. Summit Lake's predecessor in interest obtained its small winery exception in 1984 as well, so it falls in the same regulatory exception as Hoopes does. FAC ¶ 80; Summit Lake SWE (dkt. 43-12); NCC § 18.16.020(H). Its permit exception is almost identical to Hoopes's—including that it specifically states that there will be no tours or public tastings. Summit Lake SWE at 2. The application for the exception also included a letter promising that "[t]he winery will not conduct public tours, and will not attract the public by offering wine tasting etc." Id. at 9.

3

1    <u>Smith-Madrone</u>.  Smith-Madrone, unlike Hoopes and Summit Lake, operates its
2    winery under a use permit that was issued in 1973.  FAC ¶¶ 131–32; Smith-Madrone
3    Permit (dkt. 43-19).  Thus, Smith-Madrone is subject to a different exception—one which
4    allows it to operate consistent with the use permit but with "no expansion of uses or
5    structures beyond those which were authorized by [the] use permit."  NCC § 18.16.020(J).
6    Smith-Madrone's use permit provides: "The winery will not provide public tasting
7    facilities.  Private arrangements will be required to visit the winery. … Any consideration
8    of public tasting facilities shall require submission of a written request for modification of
9    this condition."  Smith-Madrone Permit at 3.

### C.  Procedural History

In February 2020 Napa County issued Hoopes a notice of apparent violation in which it asserted that Hoopes was not allowed to engage in tours, tastings, or marketing on its property.  FAC ¶ 53.  The County issued a second notice of apparent violation in April 2021.  <u>Id.</u> ¶ 63.  Then, in October 2022, the County sued Hoopes, alleging that Hoopes's operations were a public nuisance and that Hoopes had engaged in unlawful business practices.  <u>Id.</u> ¶ 65.  Hoopes has filed a cross-complaint, though its counterclaims have been stayed until the County's claims, which are still pending, are resolved.  <u>Id.</u> ¶¶ 70–72.  Summit Lake and Smith-Madrone sought to intervene in the County's lawsuit against Hoopes, but they were unsuccessful.  <u>Id.</u> ¶¶ 110–18, 158–63.

Hoopes, Summit Lake, and Smit-Madrone then filed this action in federal court.  <u>See</u> Compl. (dkt. 1).  Napa County moved to dismiss, <u>see</u> MTD (dkt. 30), and Plaintiffs amended their complaint in response, <u>see</u> FAC.  Napa County again moves to dismiss or, in the alternative, for the Court to abstain while the state-court proceedings are ongoing.  <u>See</u> MTD FAC (dkt. 53).

## II.  LEGAL STANDARD

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction.  <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).  Yet there are instances where the demands of our federal system require federal courts not to

4

exercise their jurisdiction in order to avoid unnecessary conflict with the states. Younger v. Harris, 401 U.S. 37, 43–45 (1971); Doran v. Salem Inn, Inc., 422 U.S. 922, 928 (1975). Abstention is a commonsense way to accommodate multiple sovereigns faced with addressing the same problems.

Still, abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 813 (citation omitted). There are limited contexts where it is proper for a district court to abstain from exercising its jurisdiction, one of which is central to this matter. Under Younger v. Harris, abstention is appropriate if a state criminal action or civil enforcement action (1) is ongoing, (2) implicates important state interests, (3) and provides an adequate opportunity to raise constitutional challenges, as long as (4) "the federal action would have the practical effect of enjoining the state proceedings." Herrera v. City of Palmdale, 918 F.3d 1037, 1043–44 (9th Cir. 2019) (citation omitted).[1]

## III. DISCUSSION

Napa County argues that the Court should abstain from exercising its jurisdiction in this case because of its pending enforcement action against Hoopes in California state court. The County asserts that each of the four requirements of Younger abstention is met. First, the state proceedings are ongoing. Second, they implicate important state interests—namely, nuisance abatement and land use. Third, Hoopes can (and to some extent did) raise the same claims from this case in the state action, either as defenses or counterclaims. Fourth, Plaintiffs' requested relief, which includes injunctive and declaratory relief, would effectively enjoin the state-court proceedings. MTD FAC at 9–10.

Plaintiffs appear to concede that Napa County's lawsuit against Hoopes in state court qualifies as the kind of civil enforcement action that implicates the Younger doctrine. They also seem to concede the first and second requirements for Younger abstention. Not

---

[1] Napa County proposes that abstention would also be proper under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), or Colorado River, 424 U.S. 800. Because the Court finds that abstention under Younger is appropriate, the Court declines to address the County's alternative arguments for abstention.

that any of this is reasonably subject to dispute. "The Supreme Court has … recognized that a state nuisance proceeding may warrant Younger abstention." Herrera, 918 F.3d at 1044 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 607 (1975)). The state proceedings are ongoing. FAC ¶ 70. And it is well established that the state has an important interest in abating nuisances, see Herrera, 918 F.3d at 1045, and in enforcing land-use ordinances, see Citizens for Free Speech, LLC v. County of Alameda, 953 F.3d 655, 658 (9th Cir. 2020).

Plaintiffs argue, however, that the state proceedings and this case "raise substantially different issues," by which they mean that they could not raise their claims in state court and that moving forward with this federal case would not effectively enjoin the state proceedings. Separately, Plaintiffs assert that Younger abstention is inappropriate as to Summit Lake and Smith-Madrone, who are not parties to the state-court enforcement action. Opp. (dkt. 57) at 2–7.

### A.  Adequate Opportunity to Raise Claims

Despite Plaintiffs' repeated assertions to the contrary, the first relevant question is whether the federal plaintiff has "an opportunity to raise his constitutional claims" in the state proceedings, not whether those claims were actually raised. Younger, 401 U.S. at 49 (emphasis added). Plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." Juidice v. Vail, 430 U.S. 327, 337 (1977) (citation omitted); see also Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n, 196 F.3d 1011, 1020 (9th Cir. 1999) ("The 'adequate opportunity' prong of Younger … requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings."). And "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of its claims.'" Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987) (cleaned up) (citation omitted).

Plaintiffs argue that the Court needs to conduct a claim-by-claim analysis of their federal complaint to determine which claims could have been raised in state court. See Opp. at 5. That is true as far as it goes—which is not very far. All that means is that when

6

1  a complaint has multiple claims, some may be procedurally barred in state court while
2  others may not be.  See, e.g., Ballard v. Wilson, 856 F.2d 1568, 1571–72 (5th Cir. 1988)
3  (Younger abstention inappropriate as to claims for damages where the state court could not
4  provide monetary relief).  It does not, however, mean that the Court must compare
5  Plaintiffs' state-court complaint with their federal complaint to look for overlap.  The
6  effort that Plaintiffs expend contrasting their federal complaint with Hoopes's state-court
7  filings thus misses the point.  What matters is whether Hoopes had the opportunity—
8  whether or not Hoopes took advantage of it—to raise the claims Plaintiffs assert here in
9  state court.  See Juidice, 430 U.S. at 337.  Plaintiffs fail to identify any procedural bar that
10 would have prevented Hoopes from asserting any of their federal claims in state court.

Plaintiffs suggest that Hoopes did not have the opportunity to raise their federal claims in state court because Napa County amended its state-court complaint just one month before trial.  But there is no reason Hoopes could not have asserted its claims before the amendment.  To the contrary, California law permits any "party against whom a cause of action has been asserted in a complaint" to "file a cross-complaint setting forth any cause of action he has against any of the parties who filed the complaint."  Herrera, 918 F.3d at 1046 (cleaned up) (emphasis added) (quoting Cal. Civ. Proc. Code § 428.10).  Once the County filed its state lawsuit, Hoopes could have immediately countersued for the claims that Plaintiffs now bring in federal court.  That satisfies Younger.[2]

### B.     Effect of Enjoining State Proceedings

Plaintiffs ask the Court to (1) declare certain Napa County ordinances unlawful, (2) enjoin the County and its officials from enforcing those ordinances, and (3) award damages.  FAC ¶¶ 480, 492, 501, 519, 579, 588, 618, 627, 660, 672, 695, 754, 797.  The County contends that Plaintiffs' requested relief would effectively enjoin the state

---

[2] Plaintiffs' citation to Maldonado v. Harris, misunderstands the nature of that case, this one, or perhaps both.  Maldonado involved the doctrine of claim preclusion, which ordinarily bars a party from re-raising issues that have already been addressed in an earlier case.  370 F.3d 945, 952 (9th Cir. 2004).  The Younger doctrine, by contrast, concerns federal court interference with ongoing state proceedings.  401 U.S. at 43.  Maldonado and its teachings on claim preclusion are of no import to the Younger analysis in this case.

1 proceedings, which involve the same ordinances that Plaintiffs challenge.

2     Plaintiffs respond by invoking a handful of cases where courts have declined to
3 abstain under Younger because the federal lawsuit would not have the effect of enjoining
4 the state-court proceedings. In Habich v. City of Dearborn, the plaintiff sued the city for
5 padlocking her house, which she asserted was a due process violation. 331 F.3d 524, 530–
6 31 (6th Cir. 2003). The state proceedings, meanwhile, focused on whether the plaintiff had
7 rented out her home—the conduct that ultimately led the city to lock her out of her house.
8 Id. Because the issues raised in the federal suit were "collateral" to the state proceedings,
9 Younger abstention was not warranted. Id. Likewise in Rynearson v. Ferguson: the
10 plaintiff filed a federal suit challenging California's cyberstalking statute while facing state
11 proceedings involving a protective order against him based on allegations of stalking and
12 cyberstalking. 903 F.3d 920, 927–28 (9th Cir. 2018). Because the restraining order was
13 based on conduct beyond the purview of the cyberstalking statute, success in the federal
14 suit would not have necessarily affected the state proceeding, and abstention was not
15 proper. Id.; see also Lebbos v. Judges of Superior Court, 883 F.2d 810, 817 (9th Cir.
16 1989) (abstention not appropriate when state and federal proceedings are "wholly
17 unrelated").

18     Plaintiffs' cases do not support their position that abstention is inappropriate here.
19 The ordinances that Plaintiffs challenge are the very ordinances that the state court has
20 before it and, indeed, has already found that Hoopes violated. See Phase I Statement of
21 Decision (dkt. 54 Ex. C) at 12, 14–15, 18 (finding that Hoopes violated Napa County Code
22 section 18.08.600). Plaintiffs challenge these ordinances, rather than challenging collateral
23 issues (like the padlocking of a home) or wholly unrelated statutes (like the cyberstalking
24 statute in Rynearson). Hoopes's First Amendment retaliation claim, which admittedly is a
25 challenge to the County's actions and not the ordinances themselves, also "go[es] to the
26 heart of" the state proceedings "such that a federal court's decision on the merits … would
27 have the same practical effect on the state proceeding as an injunction." Gilbertson v.
28 Albright, 381 F.3d 965, 982 (9th Cir. 2004) (en banc).

Indeed, while it goes without saying that Plaintiffs' request for injunctive relief would actually enjoin the state proceedings, Plaintiffs' other requests—for declaratory relief and damages—have the same effect in practice. The Supreme Court has explained that there is "no relevant difference" between declaratory relief and injunctive relief for purposes of Younger abstention. Samuels v. Mackell, 401 U.S. 66, 72 (1971). As for Plaintiffs' request for damages, that too would effectively enjoin state proceedings "because a federal court would necessarily have to determine whether the federal plaintiff's constitutional rights were violated, and any such determination would have the same practical effect on the state proceedings as the injunctive relief condemned in Younger and the declaratory relief constrained in Samuels." Gilbertson, 381 F.3d at 984.[3] Because Plaintiffs' federal suit would effectively enjoin the state proceedings, Younger abstention is appropriate.

### C.   Exceptions to Younger

Plaintiffs assert that two exceptions to Younger abstention require the Court to exercise its jurisdiction even if the prongs of Younger are all met. First, Plaintiffs argue that the County has acted in bad faith by "retaliat[ing] against Hoopes for exercising its First Amendment rights." Opp. at 7. Second, Plaintiffs argue that the County's ordinances are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply [them]." Id. (quoting Younger, 401 U.S. at 53–54). Both exceptions are "narrow" and rarely warrant federal intervention in state proceedings. Huffman, 420 U.S. at 602; see also Kugler v. Helfant, 421 U.S. 117, 125 (1975) (requiring "an extraordinarily pressing need for immediate federal equitable relief"); Wright & Miller, Federal Practice and Procedure § 4255 (3d ed.) (collecting cases applying the Younger exceptions).

---

[3] Plaintiffs cite ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund for the principle that "the mere possibility of inconsistent federal and state court judgments" does not alone justify abstention. Opp. at 2 (quoting 754 F.3d 754, 759 (9th Cir. 2014)). But ReadyLink, which found abstention inappropriate where there was no state criminal or civil enforcement proceeding, is not instructive here, where there clearly is a state civil enforcement proceeding against Hoopes. See ReadyLink, 754 F.3d at 759–60.

1  The bad faith exception applies "if the very existence of a state proceeding violates the [Constitution,]" but Plaintiffs "do not contend that it is never permissible" for the County to file a public nuisance suit to address what it sees as land-use violations. See Milchtein v. Chisholm, 880 F.3d 895, 899 (7th Cir. 2018) (emphasis in original) (abstaining under Younger). Moreover, the state-court judge in this case has already found in favor of the County, indicating that at least some of the County's claims against Hoopes in state court have merit. See Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994) (for bad faith exception to apply, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome"); cf. Krahm v. Graham, 461 F.2d 703, 705 (9th Cir. 1972) (bad faith found when city pursued over 90 criminal suits under an anti-obscenity statute despite 11 acquittals under the same statute). Plaintiffs' core argument—that the ordinances underlying the enforcement action against them are unconstitutional—"is one reserved by the Younger doctrine to the state judiciary, with review (if appropriate) by the Supreme Court of the United States." Milchtein, 880 F.3d at 899.

As for Plaintiffs' other exception, it applies only in "extraordinary circumstances, where the danger of irreparable loss is both great and immediate." Bristol-Myers Squibb Co. v. Connors, 979 F.3d 732, 738 (9th Cir. 2020) (quoting Younger, 401 U.S. at 45). Plaintiffs do not identify any "great and immediate" harm that they have suffered or will suffer. Nor do they meet the high bar of showing that any County ordinance is so patently violative of express constitutional prohibitions that it cannot ever be validly enforced. See Worldwide Church of God, Inc. v. California, 623 F.2d 613, 616 (9th Cir. 1980) (per curiam) (abstaining under Younger where California statute was not entirely invalid).[4]

Thus, neither exception applies, and Younger abstention remains appropriate.

---

[4] Plaintiffs argue that two County regulations patently violate express constitutional prohibitions: (1) the County's alleged content-based speech restrictions (which regulate certain events hosted at wineries, FAC ¶¶ 508–16) and (2) the County's grape-source requirements (which Plaintiffs allege violate the dormant Commerce Clause, id. ¶¶ 592–97). Opp. at 7. As to the former, Plaintiffs challenge regulations that on their face regulate non-expressive conduct, not speech, so the regulations are not invalid wholesale. See B&L Prods., Inc. v. Newsom, 104 F.4th 108, 114 (9th Cir. 2024). As to the latter, the dormant Commerce Clause—as its name suggests—is not an "express constitutional prohibition."

### D. Summit Lake and Smith-Madrone

Plaintiffs argue that, even if Younger abstention is appropriate as to Hoopes, the Court cannot abstain as to Summit Lake and Smith-Madrone because neither is a party to the state proceedings. The County responds that Summit Lake and Smith-Madrone are sufficiently related to Hoopes to justify abstention as to all three Plaintiffs.

Ordinarily Younger abstention "applies only where the federal plaintiffs are also defendants in the ongoing state proceeding." Herrera, 918 F.3d at 1046. But there are "circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them." Id. (quoting Doran, 422 U.S. at 928). Thus, "parties with 'a sufficiently close relationship or sufficiently intertwined interests' may be 'treated similarly for purposes of Younger abstention.'" Id. (citation omitted).[5]

When abstention is based on federal co-plaintiffs' intertwined interests, the key question is whether "direct interference with the state court proceeding is inevitable" such that the "same comity considerations apply." Id. at 1046–47; Hicks v. Miranda, 422 U.S. 332, 337–38 (1975). Several factors are important to answering this question.

First, "the legal analysis of the plaintiffs' claims [must be] unavoidably intertwined and inseparable." Spargo v. N.Y. State Comm'n on Jud. Conduct, 351 F.3d 65, 84 (2d Cir. 2003). In Spargo, for example, a state-court judge and two of his political supporters sued in federal court to challenge certain rules of judicial conduct. Id. at 67. The Second Circuit ordered abstention as to all three plaintiffs in part on the ground that the legal issues they asserted were identical to one another. Id. In another case, the Fifth Circuit ordered affirmed a district court's decision to abstain when the federal case (brought by a state-court litigant and several state-court nonparties) "involve[d] only a single question."

---

[5] Plaintiffs repeatedly argue that abstention is proper as to nonparties to the state-court action only if they are under common ownership, control, or management with the state-court defendant. See Opp. at 3–4; Supp. Resp. (dkt. 67) at 3–4, 7. That is not the law. The Ninth Circuit and other circuit courts have repeatedly explained that abstention may be warranted when a state-court defendant has "sufficiently intertwined interests" with federal co-plaintiffs. E.g., Herrera, 918 F.3d at 1046.

11

Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n, 685 F.2d 974, 982 (5th Cir. 1982).[6]

Second, the state-court defendant must "adequately represent plaintiffs' interests in the state [] proceeding." Spargo, 351 F.3d at 85. This explains why courts rarely abstain as to third parties when state proceedings against a defendant are criminal in nature—criminal proceedings "provide no procedural mechanism which would enable nonparties to intervene to protect their interests." Casa Marie, Inc. v. Superior Court, 988 F.2d 252, 267 (1st Cir. 1993); see, e.g., Doran, 422 U.S. at 925 (criminal proceedings against bar owners); We Are America/Somos America, Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors, 594 F. Supp. 2d 1104, 1106 (D. Ariz. 2009) (criminal proceedings against undocumented immigrants), rev'd, 386 F. App'x 726 (9th Cir. 2010). That said, it is not a prerequisite for Younger that federal plaintiffs have actually intervened in state litigation—only that their interests will be adequately represented there. Spargo, 351 F.3d at 85 n.21.[7]

Third, the federal plaintiffs must "seek to directly interfere with the pending [state] proceeding." Id. at 85. In Herrera, for instance, the Ninth Circuit emphasized that "all the federal plaintiffs"—including nonparties to the state proceedings—"seek the same relief from the state court proceedings," and their federal claims therefore "present the same risk of interference" in those proceedings. 918 F.3d at 1047. And in Hicks, the Supreme Court made a similar observation when reversing the lower court's refusal to abstain under Younger. 422 U.S. at 349 ("[A]s we have pointed out, the federal action sought to interfere with the pending state prosecution."). As the Fifth Circuit put it in Women's Community Health, "Younger cannot be avoided simply by joining nonparties to the state

---

[6] The Ninth Circuit in Herrera cited both Spargo and Women's Community Health with approval. 918 F.3d at 1047.

[7] Plaintiffs citation in their supplemental brief to General Auto Service Station LLC v. City of Chicago is misplaced. In that case, the Seventh Circuit found that the state court's denial of the federal plaintiff's motion for intervention effectively meant that the federal plaintiff "was not entitled to adjudication of its constitutional theories" in state court. 319 F.3d 902, 905 (7th Cir. 2003). General Auto says nothing about the impact of a failed effort to intervene where, as here, the state court expressly found that the federal plaintiffs' theories would be adequately advanced by a state-court litigant (and federal co-plaintiff).

12

court proceeding in order to procure injunctive and declaratory relief against that proceeding." 685 F.2d at 982.

Plaintiffs assert in their supplemental brief that there is a fourth factor that is equally dispositive as to whether abstention is appropriate—that the federal plaintiffs who are not parties to the state proceedings assert only claims that are "derivative" of the state-court defendant's rights. See Supp. Resp. at 3–7. This argument is not properly before the Court, as Plaintiffs raised it at the eleventh hour,[8] but the Court considers it anyway.

Plaintiffs are correct that several courts have discussed the derivative nature of federal plaintiffs' claims as a reason for abstention. See, e.g., Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 44 (1st Cir. 2012); Spargo, 351 F.3d at 83–84. But Plaintiffs overstate the importance of this factor. Unlike the three factors above, no court—and certainly no court whose decisions are binding on this Court—has suggested that state nonparties' claims must be derivative of a state defendant's claims for Younger abstention to be proper. Plaintiffs cite National Institute for Family & Life Advocates v. James for this principle, but the crux of that case is actually that the federal plaintiffs "[did] not seek to enjoin" or stay the state-court proceedings. 746 F. Supp. 3d 100, 115 (W.D.N.Y. 2024). To the extent that NIFLA discusses the importance of derivative claims, that discussion (and the similar discussions in Spargo and Coakley) is dicta. See id.; see also Spargo, 351 F.3d at 85 (abstention proper "[b]ecause plaintiffs' legal claims are inextricably intertwined, and the federal suit seeks to directly interfere with the pending state []

---

[8] At oral argument, Plaintiff cited Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33 (1st Cir. 2012), for the first time. Although arguments not made in briefing and raised for the first time at oral argument are ordinarily deemed waived, Kissner v. Loma Prieta Joint Union Sch. Dist., No. 22-cv-949-CRB, 2023 WL 5836974, at *12 (N.D. Cal. Sept. 8, 2023), the Court accepted Plaintiffs' argument based on Coakley and invited Napa County to respond to Plaintiffs' invocation of that specific case. At Plaintiffs' request, the Court also allowed Plaintiffs the opportunity to address the County's supplemental brief. In Plaintiffs' eleven-page response brief to the County's six-page supplemental brief, Plaintiffs went far beyond Coakley. They cited sixteen brand-new cases and articulated their brand-new "derivative claims" argument. Plaintiffs' and-one-more-thing tactics clog the docket, delay litigation, and deny Napa County a meaningful opportunity to respond. For these reasons, Plaintiffs' belated development of new arguments and citations to new authority are procedurally improper.

13

proceeding"); Coakley, 671 F.3d at 47 (abstention improper because "[n]othing in the [federal plaintiff's] requested relief would interfere with" the state-court proceedings).

Not only do Plaintiffs fail to identify any case requiring state nonparties' claims to be derivative of state defendants' claims in order to abstain under Younger; several cases prove the opposite to be true. In Hicks, for example, the state-court defendants were theater employees who had been criminally charged under state obscenity laws. 422 U.S. at 335. The theater owners then sued in federal court, seeking to enjoin enforcement of the state laws at issue. Id. at 335 n.2, 337. Though the theater owners' claims rested on similar, if not identical, constitutional bases as the employees' claims the owners' claims were not derivative of the employees' claims.[9] Similarly, in Women's Community Health, the Fifth Circuit found that abstention was proper as to all the federal plaintiffs—including nonparties to the state proceedings—even though "the general rights of [the nonparties] are legally distinct from any rights [the state defendant] may assert." 685 F.2d at 982. Plaintiffs' proposed rule cannot stand under Hicks, and were it the law Women's Community Health would be wrongly decided. The better reading of the entire body of case law is that whether some federal plaintiffs' claims are derivative of others' may be relevant to the Younger analysis, but it is not dispositive.

Returning to the three required factors above—(1) that the legal claims be unavoidably intertwined and inseparable, (2) that the interests of nonparties to the state proceedings be adequately represented therein, and (3) that the federal plaintiffs seek to directly interfere with the state proceedings—all three motivate in favor of abstaining in this case. First, with one exception discussed below, Summit Lake and Smith-Madrone bring essentially identical claims to Hoopes. Any factual differences between the parties

---

[9] Plaintiffs, relying on language from NIFLA, appear to conflate the Supreme Court's holding in Hicks that the owners' and employees' claims were "intertwined" with the notion that their claims were derivative. Supp. Resp. at 5 (citing NIFLA, 746 F. Supp. 3d at 116). Nowhere did the Supreme Court say that the owners' claims were derivative of their employees' claims, nor would that make sense. The theater owners were surely capable of asserting their own rights under the First Amendment; the problem for Younger purposes was that these rights were identical to, not derivative of, their employees' rights.

14

1   (such as whether they historically operated pursuant to small winery exceptions or permits)
2   does not have legal significance in this action. The legal analysis is thus inextricably
3   intertwined. <u>Second</u>, there is no question that Hoopes can and will adequately represent
4   Summit Lake and Smith-Madrone's interests in the state-court litigation—indeed, the state
5   court has already so held. <u>See</u> Intervention Order (dkt. 43-17) at 2.[10] <u>Third</u>, Summit Lake
6   and Smith-Madrone seek relief that would interfere with the state-court proceedings
7   against Hoopes: an injunction that would prevent Napa County from enforcing the very
8   ordinances at issue in the state-court proceeding. <u>Cf.</u> <u>Coakley</u>, 671 F.3d at 35–39, 47 (no
9   abstention where federal plaintiffs sought to restrain the state attorney general from
10  enforcing state laws and parallel state litigation consisted entirely of lawsuits brought by
11  private plaintiffs). Any declaratory or monetary relief sought is subsumed within their
12  request for injunctive relief. <u>See</u> <u>Samuels</u>, 401 U.S. at 72; <u>Gilbertson</u>, 381 F.3d at 984.

13  That leaves only the question of whether Summit Lake and Smith-Madrone assert
14  claims of their own or claims that are merely derivative of Hoopes's. Though they do not
15  appear to be derivative, the presence of the three other factors leaves the Court convinced
16  that abstention remains appropriate here. Summit Lake and Smith-Madrone's claims
17  would necessarily require this Court to wade into Napa County's ongoing enforcement of
18  its ordinances regulating wineries, would tangibly and imminently disrupt ongoing state
19  proceedings, and would do so even though a state-court judge has already held that Hoopes
20  will adequately represent Summit Lake and Smith-Madrone's interests. Abstaining in this
21  action secures the balance of federalism recognized by <u>Younger</u>; permitting this action to
22  proceed, even just with respect to Summit Lake and Smith-Madrone, would jeopardize that
23  balance. As the Supreme Court stated in <u>Hicks</u>: "Plainly, 'the same comity considerations
24  apply' where the interference is sought by some, such as [Summit Lake and Smith-

---

[10] Napa County's opposition to Summit Lake and Smith-Madrone's motions to intervene in the state proceedings does not bar the County from seeking abstention here. Opp. at 4. The standards for intervention and <u>Younger</u> abstention are not one and the same, <u>see</u> <u>Spargo</u>, 351 F.3d at 85 n.21, and the County's opposition to the former in state court does not preclude it from seeking the latter in federal court.

15

Madrone], not parties to the state case." 422 U.S. at 349 (citation omitted) (cleaned up). Younger abstention is thus appropriate as to Summit Lake and Smith-Madrone's claims.

### E. Summit Lake and Smith-Madrone's Retaliation Claim

As mentioned above, one of Summit Lake and Smith-Madrone's case is not inextricably intertwined with Hoopes's claims—their First Amendment retaliation claim. The gist of this claim is that Napa County retaliated against Summit Lake and Smith-Madrone for attempting to intervene in Hoopes's state-court litigation by posing as a potential customer and sending emails to Summit Lake and Smith-Madrone asking if they could host events at their wineries. FAC ¶¶ 777–82. Summit Lake and Smith-Madrone seek only damages for this claim, id. ¶ 791, and although Hoopes also asserted a First Amendment retaliation claim, id. ¶¶ 763–70, the factual bases are sufficiently distinct that their claims are not inextricably intertwined.[11] The Court therefore does not abstain as to Summit Lake and Smith-Madrone's First Amendment retaliation claim.

That said, the claim fails on the merits. To make out a retaliation claim, a plaintiff must allege that the defendant's actions deterred the plaintiff's speech (or would have deterred a person of ordinary firmness), and that this deterrence was a motivating factor of the defendant's actions. See Lacey v. Maricopa County, 693 F.3d 896, 916 (9th Cir. 2012). Summit Lake and Smith-Madrone fail to allege any facts that would link the defendant's enforcement actions to their own efforts to intervene alongside Hoopes. Rather, they allege that Napa County had been ramping up its enforcement efforts for some time in advance of sending these "undercover" emails, strongly suggesting that the County's actions were motivated by some policy of stricter enforcement and not targeted animus. See Kolstad v. County of Amador, No. CIV 13-1279 WBS, 2013 WL 6065315, at

---

[11] In fact, the plaintiff-specific allegations with respect to the First Amendment retaliation claim highlight just how intertwined Plaintiffs' other claims are. In Plaintiffs' nondelegation claim, for example, the First Amended Complaint does not differentiate between Plaintiffs at all. See, e.g., FAC ¶ 587 ("This policy and practice of Napa County is unconstitutional both facially and as applied to Plaintiffs as Plaintiffs either have been subject to such delegation or have refrained from applying for permits and modifications due to the delegation of authority to third parties.").

16

*6 (E.D. Cal. Nov. 14, 2013) ("Plaintiffs' allegations cannot support an inference that, but for their protected activity, defendants would not have threatened enforcement, because plaintiffs allege that defendants took the same actions before and after the protected activity."); Smith v. County of Santa Cruz, No. 20-cv-647-BLF, 2020 WL 6318705, at *11 (N.D. Cal. Oct. 28, 2020) (same, noting that the plaintiff had failed to allege any facts that would establish retaliatory animus).  Summit Lake and Smith-Madrone's bare allegations of retaliatory intent are insufficient, even at the pleading stage, to make out a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 680–81 (2009) (bare allegations of intent "not entitled to the assumption of truth").  Without factual support establishing animus, which the contents of the County's "undercover" emails do not provide, Plaintiffs fail to state a claim.

## IV.　CONCLUSION

For the foregoing reasons, the Court abstains from exercising jurisdiction in this case except as to Summit Lake and Smith-Madrone's First Amendment retaliation claim, which the Court **DISMISSES** on the merits without prejudice.  Plaintiffs have 30 days from the issuance of this order to amend only this count of the First Amended Complaint, and only with respect to Summit Lake and Smith-Madrone, to remedy the deficiencies noted above.

The Court **STAYS** all other counts in which Plaintiffs seek damages.  The Court also **DISMISSES** all counts in which Plaintiffs seek injunctive or declaratory relief.

**IT IS SO ORDERED.**

Dated: March 28, 2025

CHARLES R. BREYER
United States District Judge