SHERYL L. BRATTON, County Counsel (SBN 144209)
JASON M. DOOLEY, Chief Deputy (SBN 258570)
jason.dooley@countyofnapa.org
NAPA COUNTY COUNSEL'S OFFICE
1195 Third Street, Suite 301
Napa, California 94559
Telephone: (707) 253-4521
Facsimile: (707) 259-8220

ARTHUR A. HARTINGER (SBN 121521)
ahartinger@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

Attorneys for Defendant
COUNTY OF NAPA

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NAPA,<br><br>Defendant. | Case No. 3:24-cv-06256-CRB<br><br>**NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Charles R. Breyer<br>Hearing Date: October 23, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Zoom Videoconference<br><br>Action Filed: September 5, 2024 |

# TABLE OF CONTENTS


Page

TABLE OF CONTENTS ..... i

NOTICE OF MOTION AND MOTION TO DISMISS ..... ix

ISSUES TO BE DECIDED ..... x

SUMMARY OF THE ARGUMENT ..... xi

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 1

A. Napa County's Agricultural Districts and Land Use Regulations Related to Wineries ..... 1

B. Plaintiffs' Authorizing Land Use Documents and Associated Entitlements ..... 3

1. Summit Lake ..... 3

2. Smith-Madrone ..... 4

C. Allegations in the SAC ..... 4

D. Procedural Background ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 6

A. Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law ..... 6

1. Plaintiffs' State-Law Preemption Claim Is Time-Barred ..... 6

2. Plaintiffs' State-Law Preemption Claim Fails as a Matter of Law ..... 7

3. Plaintiffs Fail to State a Plausible Federal Preemption Claim ..... 8

B. Plaintiffs Cannot Premise *Monell* Liability on "Interpretations" by County Employees Who Are Not Policymakers ..... 8

C. Plaintiffs' Facial and As-applied First Amendment Claims Fail as a Matter of Law ..... 9

1. The Land Use Regulations at Issue Regulate Non-Expressive Conduct ..... 10

2. The County's Ordinances Pass Muster Under *Central Hudson* ..... 11

a. Misleading Speech About Unlawful Activity Is Not Protected ..... 11

b. The County's Use Permitting Scheme Is Appropriately Tailored to Directly Advancing Substantial Government Interests....12

3. The County Code Does Not Infringe Plaintiffs' Right to Petition ....13

4. Smith-Madrone Fails to State a Plausible First Amendment Claim....14

D. Plaintiffs' Prior Restraint Claim Fails as a Matter of Law ....15

1. The County Code Provisions at Issue Are Laws of General Application Not Aimed at Expressive Conduct....15

2. The County's Permitting Scheme Is Not an Unlawful Prior Restraint....16

E. Plaintiffs Fail to State a Plausible Vagueness Claim....16

F. Plaintiffs' Fail to State a Plausible Non-Delegation Doctrine Claim ....18

G. Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law....18

1. The County's Regulations Do Not Discriminate Against Commerce....19

2. The County Does Not Unconstitutionally Burden Commerce ....20

H. Plaintiffs' Facial Takings, Substantive Due Process, and Equal Protection Claims Are Time-Barred....22

I. Summit Lake's As-Applied Due Process, Takings, and Equal Protection Claim Fail as a Matter of Law ....23

1. Summit Lake Fails to State a Plausible Arbitrary Enforcement Claim ....23

2. Summit Lake Fails to Allege a Plausible As-Applied Takings Claims....24

a. Summit Lake Fails to State a Plausible *Nollan/Dolan* Takings Claim....24

b. Summit Lake Fails to State a Plausible Regulatory Takings Claim....26

3. Summit Lake Fails to State a Plausible Equal Protection Claim....28

J. Smith-Madrone's As-Applied Due Process, Takings, and Equal Protection Claim Fail as a Matter of Law ....29

K. Plaintiffs Fourteenth Claim for Injunctive Relief Does Not State a Claim ....30

V. CONCLUSION....30


RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007) ....6, 22, 23

*Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F. App'x 680 (9th Cir. 2014) ....30

*Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301 (9th Cir. 2020) ....28

*Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal.App.5th 574 (2016) ....14

*American Canine Foundation v. Sun*, No. C-06-4713 MMC, 2007 WL 4208358 (N.D. Cal. Nov. 27, 2007) ....18

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) ....10

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ....23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....6, 26

*Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785 (1976) ....28

*B&L Productions, Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) ....10

*Barancik v. Cnty. of Marin*, 872 F.2d 834 (9th Cir. 1988) ....23

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ....9

*Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139 (2006) ....7

*Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408 (1989) (Stevens, J.) ....12

*Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610 (9th Cir. 2020) ....27

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Bronco Wine Co. v. Jolly*,
129 Cal.App.4th 988 (2005) ....................2, 11, 20, 22

*Cal. Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*,
No. 120CV01294ADASAB, 2023 WL 1869010 (E.D. Cal. Feb. 9, 2023)....................23

*Canatella v. Van De Camp*,
486 F.3d 1128 (9th Cir. 2007) ....................22

*Central Hudson v. Public Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980)....................9, 11, 12, 13

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ....................19

*Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*,
896 F.2d 1221 (9th Cir. 1990) ....................22, 29

*City of Los Altos v. Barnes*,
3 Cal.App.4th 1193 (1992) ....................17

*Colony Cove Props., LLC v. City of Carson*,
888 F.3d 445 (9th Cir. 2018) ....................27, 28, 30

*Columbia Basin Apartment Ass'n v. City of Pasco*,
268 F.3d 791 (9ht Cir. 2001) ....................12

*De Anza Props. X, Ltd. v. County of Santa Cruz*,
936 F.2d 1084 (9th Cir. 1991) ....................22

*Diamond S.J. Enter., Inc. v. City of San Jose*,
100 F.4th 1059 (9th Cir. 2024) ....................16

*Dolan v. City of Tigard*,
512 U.S. 374 (1994)....................24

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008) ....................22

*Floresta, Inc. v. City Council of San Leandro*,
190 Cal. App. 2d 599 (1961) ....................7

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) ....................19, 20, 21

*Glennon v. Zoning Hearing Bd. of Lower Milford Twp.*,
529 A.2d 1171 (1987)....................26

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) ....................6

*Granholm v. Heald*,
544 U.S. 460 (2005)....20

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)....20

*Helicopters for Agric. v. Cnty. of Napa*,
384 F. Supp. 3d 1035 (N.D. Cal. 2019)....8

*Heller v. Doe by Doe*,
509 U.S. 312 (1993)....28

*HomeAway.com v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019)....10, 11

*Horn v. County of Ventura*,
24 Cal.3d 605 (1979)....18

*Konarski v. City of Tucson*,
716 F. App'x 609 (9th Cir. 2017)....29

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013)....25, 26, 29

*Korean Am. Legal Advocacy Found. v. City of Los Angeles*,
23 Cal.App.4th 376 (1994)....8

*Levald v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993)....23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....6

*Metro Lights, L.L.C. v. City of Los Angeles*,
551 F.3d 898 (9th Cir. 2009)....13

*Mobilize the Message, LLC v. Bonta*,
50 F.4th 928 (9th Cir. 2022)....13

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....19

*Newberg Crestview, LLC v. City of Newberg*,
No. 3:22-CV-1289-AR, 2023 WL 8372167 (D. Or. Dec. 4, 2023)....26

*Nollan v. California Coastal Commission*,
483 U.S. 825 (1987)....24

*Olympus Spa v. Armstrong*,
169 F.4th 817 (9th Cir. 2026)....11

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Penn Central Transportation Co. v. New York City*,
438 U.S. 104 (1978)........................................................................................... *passim*

*Petterson v. City of Naperville*,
9 Ill. 2d 233, 137 N.E.2d 371 (1956)............................................................................26

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
153 F.4th 795 (9th Cir. 2025)....................................................................................12, 13

*Phillip Morris USA, Inc. v. City and County of San Francisco*,
345 F. App'x 276 (9th Cir. 2009)..................................................................................11

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)..........................................................................................20, 21, 22

*Retail Digital Network, LLC v. Prieto*,
861 F.3d 839 (9th Cir. 2017)......................................................................................11, 13

*Rosenblatt v. City of Santa Monica*,
940 F.3d 439 (9th Cir. 2019)......................................................................................19, 21

*Scheer v. Kelly*
817 F.3d 1183, 1187 (9th Cir. 2016)..............................................................................23

*Schmid v. County of Sonoma*,
2024 WL 743774 (9th Cir. Feb. 23, 2024)......................................................................9

*Schulz v. Milne*,
849 F. Supp. 708 (N.D. Cal. 1994)................................................................................18

*Sheetz v. Cnty. of El Dorado, Cal.*,
601 U.S. 267 (2024).........................................................................................................25

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
882 F.2d 1398 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*,
75 F.3d 1311 (9th Cir. 1996)............................................................................................23

*Spirit of Aloha v. Cnty. of Maui*,
49 F.4th 1180 (9th Cir. 2022)..........................................................................................15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)............................................................................................18

*Talk of the Town v. Department of Finance and Business Services ex rel. City of Las Vegas*,
343 F.3d 1063 (9th Cir. 2003)......................................................................................10, 15

*Temple of 1001 Buddhas v. City of Fremont*,
588 F. Supp. 3d 1010 (N.D. Cal. 2022)........................................................................9, 18

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Tobe v. City of Santa Ana*,
9 Cal. 4th 1069 (1995) ....................17

*Travis v. Cnty. of Santa Cruz*,
33 Cal. 4th 757 (2004) ....................7

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir.1999) ....................27

*Uber Techs., Inc. v. City of Seattle*,
168 F.4th 1202 (9th Cir. 2026) ....................10, 17, 18

*Vanguard Outdoor, LLC v. City of Los Angeles*,
648 F.3d 737 (9th Cir. 2011) ....................13

*Village of Hoffman Estates v. Flipside*,
455 U.S. 489 (1982)....................11

*Young v. Cnty. of San Mateo*,
No. C 03-05801 CRB, 2005 WL 3454106 (N.D. Cal. Dec. 16, 2005) ....................17

**Statutes**

Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code §§ 23200 et seq.)....................6

Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code § 23358(e)) ....................8

Alcoholic Beverage Control Act section 23790 ....................8

Cal. Bus. & Prof. Code § 23356.1 (last amended by Stats.2007, c. 246 (S.B.108), § 1) ....................7

Cal. Civ. Proc. Code § 338 ....................7

Cal. Code Civ. P. § 335.1....................22

Cal. Code Civ. Proc. § 1094.5 ....................16

Cal. Code Regs. tit. 14, § 1270.05(a)....................24

Cal. Code Regs. tit. 24, § 1.1.8 ....................8

Cal. Gov. Code § 65905....................2

Cal. Pub. Res. Code §§ 21000 et seq. ....................2

California Environmental Quality Act (“CEQA”)....................2,13

Napa County Code Sections 18.20.020(I) and 18.08.600....................30

Napa County Code § 8.20.030(H)-(J)....................2



RENNE PUBLIC LAW GROUP
Attorneys at Law

Napa County Code § 18.08.020 ........ 2, 12, 17

Napa County Code § 18.16.010 ........ 1

Napa County Code § 18.20.010 ........ 1, 17

Napa County Code § 18.20.020(H)-(J) ........ 2

Napa County Code § 18.104.250 ........ 19, 20, 22

Napa County Code § 18.104.250(B) ........ 19

Napa County Code section 18.124.010 ........ 12, 25

Napa County Code section 18.124.010 et seq. ........ 12

United States Code 42 U.S.C. § 1983 ........ 9, 22

Winery Definition Ordinance ........ 2

**Other Authorities**

Sen. Comm. on Gov'tal Org., Bill Analysis, Assem. B. 2004, 2007–2008 Reg. Sess. 2 (Cal. 2008) ........ 8

Assem. B. 2004, 2007–2008 Reg. Sess. § 1 (Cal. 2008) (as amended June 24, 2008) ........ 8

Napa County Ordinance No. 186 (1995) ........ 23

Napa County Ordinance No. 274 (1968) ........ 22

Napa County Ordinance No. 628 (1980) ........ 22

Napa County Ordinance No. 629 (1980) ........ 2, 3, 28

Napa County Ordinance No. 947 (1990) ........ 2, 23

Napa County Ordinance No. 947 § 1 ........ 20

Napa County Ordinance No. 947, § 6(b) ........ 21

Napa County Ordinance No. 1340 (2010) ........ 23

Rule 12(b)(6) ........ 6

RENNE PUBLIC LAW GROUP
Attorneys at Law

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 23, 2026, at 10:00 a.m., via zoom videoconferencing or—if the Court orders, in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102—Defendant Napa County (the "County" or "Defendant") will and hereby does move to dismiss the First through Twelfth and Fourteenth Claims asserted in Plaintiffs' Second Amended Complaint ("SAC").[1]

The motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(6), Local Rule 7-1, and this Court's Order dated August 12, 2026 (*see* Dkt. 98) on the grounds that Plaintiffs assert claims that are time-barred and fail to state a cause of action.

This motion is based on this notice of motion and motion, on the accompanying memorandum of points and authorities in support of the motion, the request for judicial notice, Defendant's anticipated reply brief, and on any oral argument entertained by the Court in connection with this motion. This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection.

Dated: August 26, 2026

RENNE PUBLIC LAW GROUP

By: */s/ Ryan P. McGinley-Stempel*
Ryan P. McGinley-Stempel

Attorneys for Defendant
NAPA COUNTY

[1] Unless otherwise designated, "Plaintiffs" refers to Summit Lake Vineyards & Winery LLC ("Summit Lake") and Cook's Flat Associates, a California Limited Partnership dba Smith-Madrone ("Smith-Madrone") collectively, but not Hoopes Vineyard LLC, whose non-retaliation claims are stayed.

## ISSUES TO BE DECIDED

1. Whether Plaintiffs' state-law preemption claim is time-barred.
2. Whether Plaintiffs state a state-law preemption claim.
3. Whether Plaintiffs state a federal-law preemption claim.
4. Whether Plaintiffs state a claim under *Monell*.
5. Whether Plaintiffs state a facial claim under the First Amendment.
6. Whether Plaintiffs state a content-based speech restriction claim under the First Amendment.
7. Whether Plaintiffs state a prior restraint claim under the First Amendment.
8. Whether Summit Lake states an as-applied claim under the First Amendment.
9. Whether Smith Madrone states an as-applied claim under the First Amendment.
10. Whether Plaintiffs state a vagueness claim under the Fourteenth Amendment.
11. Whether Plaintiffs state a non-delegation claim under the Fourteenth Amendment.
12. Whether Plaintiffs state a claim under the Dormant Commerce Clause.
13. Whether Plaintiffs' facial takings claims are time-barred.
14. Whether Plaintiffs' facial substantive due process claims are time-barred.
15. Whether Plaintiffs' facial equal protection claims are time-barred.
16. Whether Summit Lake states an as-applied takings claim under the Fifth Amendment.
17. Whether Summit Lake states an as-applied substantive due process claim under the Fourteenth Amendment.
18. Whether Summit Lake states an as-applied equal protection claim under the Fourteenth Amendment.
19. Whether Smith-Madrone states an as-applied takings claim under the Fifth Amendment
20. Whether Smith-Madrone states an as-applied substantive due process claim under the Fourteenth Amendment
21. Whether Smith-Madrone states an as-applied equal protection claim under the Fourteenth Amendment.
22. Whether Plaintiffs state a derivative claim for injunctive relief.

RENNE PUBLIC LAW GROUP
Attorneys at Law

## SUMMARY OF THE ARGUMENT

***Preemption Claim.*** Plaintiffs' state-law preemption claim is time-barred. A challenge to a local ordinance as preempted by a subsequently enacted state statute is governed by the three-year period of California Code of Civil Procedure section 338 and accrues when the state law takes effect. Cal. Civ. Proc. Code § 338; *Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004). Every state law Plaintiffs invoke to support their preemption claim was enacted outside the limitations period. Plaintiffs' preemption claim also fails on the merits. The County's zoning law is a geographic land-use restriction, not a regulation of the sale of liquor, and both the Alcoholic Beverage Control Act and the California Building Code expressly preserve local authority to restrict privileges through land use regulation and conditional use permit schemes. *See Floresta, Inc. v. City Council of San Leandro*, 190 Cal.App.2d 599, 604–07 (1961); *Korean Am. Legal Advocacy Found. v. City of Los Angeles*, 23 Cal.App.4th 376, 393 (1994). Plaintiffs' federal preemption theory identifies no federal statute and cannot state a claim against a traditional land use regulation.

***Monell.*** Plaintiffs' as-applied Section 1983 claims rest on interpretations of the County Code by individual County employees. Those employees are not final policymakers and have not been delegated final policymaking authority, so their conduct cannot support municipal liability. *See Schmid v. County of Sonoma*, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024); *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1026 n.11 (N.D. Cal. 2022).

***First Amendment Claims.*** The regulations Plaintiffs challenge under the First Amendment are traditional land use regulations governing the nature and intensity of physical uses at wineries, not expression, and they do not directly or inevitably single out expressive activity because consummating a business transaction is nonexpressive conduct. *Uber Techs., Inc. v. City of Seattle*, 168 F.4th 1202, 1211–14 (9th Cir. 2026); *B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 112–14 (9th Cir. 2024). Even if the First Amendment applied, the speech at issue promotes unlawful activity and is unprotected under *Central Hudson*. *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017); *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 686 (9th Cir. 2019). Furthermore, the County's restrictions are tailored to its substantial interest in preserving the agricultural character of its districts. *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 826–28 (9th Cir. 2025). The permit-indemnity

provision does not infringe the right to petition, because it reaches only third-party suits attacking an applicant's own permit. *See Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal.App.5th 574, 600 (2016).

Smith-Madrone separately fails to identify any ordinance, policy, or interpretation that actually restricts its speech under its historical use permit.

***Prior Restraint Claims***. Plaintiffs' prior restraint claim fails because the Code is a law of general application not aimed at expression, and the conditional use-permit scheme supplies narrow, definite standards, written findings, a public hearing, and administrative and judicial review rather than unbridled discretion. *See Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1065–68 (9th Cir. 2024).

***Due Process – Vagueness Claim.*** The County Code is not unconstitutionally vague. It supplies extensive definitional and operative guidance, and its terms are sufficiently clear to a person of ordinary intelligence when read in the context of the regulatory scheme and the stated purpose of the agricultural districts. A municipal ordinance need not define every word. *See Uber Techs., Inc.*, 168 F.4th at 1219; *Young v. Cnty. of San Mateo*, No. C 03-05801 CRB, 2005 WL 3454106, at *5 (N.D. Cal. Dec. 16, 2005).

***Due Process – Non-Delegation Claim.*** The County does not, by rule or practice, condition issuance or modification of a use permit on the approval of third parties. Plaintiffs identify no ordinance, policy, or specific instance of such a delegation and vaguely allude to public participation in the permit process, which state law and neighboring owners' due process rights require. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (The Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

***Dormant Commerce Clause Claims.*** The requirement that wineries in the agricultural districts use at least 75% Napa-grown grapes for wine produced as a result of any expansion beyond their existing winery development area does not discriminate against interstate commerce because it regulates in-county land use and places no restriction on the purchase, sale, or shipment of out-of-county grapes or wine. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015). Under *Pike*, Plaintiffs plead only conclusory burdens, and any incidental burden is clearly outweighed by the County's legitimate interest in agricultural preservation. *See Flynt v. Bonta*, 131 F.4th 918, 926–32 (9th Cir. 2025).

***Facial Takings, Due Process, and Equal Protection Claims.*** To the extent Plaintiffs assert facial takings, due process and equal protection challenges to the County's zoning ordinances, those claims are time-barred. Section 1983 claims borrow California's two-year personal-injury limitations period, and facial takings, substantive due process, and equal protection challenges based on alleged injuries to property rights accrue on the date the ordinance is enacted. *See Action Apartment Ass'n v. Santa Monica Rent Control Opinion Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007); *Barancik v. Cnty. of Marin*, 872 F.2d 834, 836 (9th Cir. 1988). The challenged ordinances were all enacted more than two years before this action was filed.

***Summit Lake's As-Applied Substantive Due Process Claim.*** To state an as-applied claim, Summit Lake must plausibly allege that the County's action was clearly arbitrary and unreasonable, with no substantial relation to public health, safety, or welfare. Summit Lake's conclusory allegations that the County applies its Road and Street Standards in an arbitrary and capricious manner are not sufficient to state a claim. The Road and Street Standards are generally applicable minimum standards triggered by neutral, enumerated activities such as a use-permit application that increases average daily trips. A regulatory framework of this kind is the antithesis of arbitrary action.

***Summit Lake's Nollan/Dolan Takings Claim.*** Summit Lake's *Nollan/Dolan* claim fails because the road condition is not an exaction. Summit Lake was required to bring the private road serving its property up to minimum safety standards, not to dedicate land, pay money to the County, or fund public improvements. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 602 (2013); *Sheetz v. Cnty. of El Dorado, Cal.*, 601 U.S. 267, 272 (2024). Furthermore, requiring compliance with road-safety standards is a valid exercise of the police power. *Glennon v. Zoning Hearing Bd. of Lower Milford Twp.*, 529 A.2d 1171, 1174 (1987) ("We agree that the Township, under its police power to protect the health, safety and welfare of its residents, may set standards relating to the layout, design and grade of access streets as a condition of developing land in the Township"); *Petterson v. City of Naperville*, 9 Ill. 2d 233, 247, 137 N.E.2d 371, 379 (1956) ("The privilege of the individual to use his property as he pleases is subject always to a legitimate exercise of the police power under which new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare demands."). Summit Lake also pleads no facts showing the required improvements are not roughly proportional to its

proposed use. *See Newberg Crestview, LLC v. City of Newberg*, No. 3:22-CV-1289-AR, 2023 WL 8372167, at *6 (D. Or. Dec. 4, 2023) ("The court does not credit [plaintiff's] legal conclusion that the required improvements "exceed the roughly proportional impact of [plaintiff's development]." [Citation]. To state a land-use exaction takings claim, [plaintiff] must allege sufficient facts to allow the court reasonably to draw that inference.").

***Summit Lake's As-Applied Regulatory Takings Claim.*** The *Penn Central* claim is time-barred, having accrued more than two years before this action in 2019, if not before. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999) (as-applied claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action"). That claim also fails on the merits because Summit Lake never held a legal right to the uses it claims were taken. Its entitlements have not changed, and it can show no economic impact or reasonable investment-backed expectations. *See Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018).

***Summit Lake's As-Applied Equal Protection Claim.*** The County Code's separate definition of "small winery" is subject to rational-basis review and is rationally related to the County's legitimate interests in health, safety, and welfare. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Smaller wineries were reasonably exempted from more extensive review, but a winery seeking to expand is properly subject to the same permitting process as all wineries. Plaintiffs' conclusory allegation does not state a claim. *See Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301, 304–05 (9th Cir. 2020) (affirming the dismissal of equal protection claim because property owner's allegations were wholly conclusory and did not sufficiently show differential treatment).

***Smith-Madrone's As-Applied Due Process, Takings, and Equal Protection Claims.*** These claims assume restrictions that do not apply to Smith-Madrone, which is not a small winery and does not operate under a Small Winery Exemption. Its pre-WDO use permit allows private, invitational tastings and related accessory uses, and the Code sections that Plaintiffs challenge do not restrict these uses. Smith-Madrone has never sought a determination of its historical entitlements, never applied for a permit, and faced no enforcement action, so it pleads no arbitrary enforcement, its *Nollan/Dolan* claim lacks the required permit application, and its *Penn Central* claim lacks any plausible allegations of economic impact or reasonable investment backed expectations. Its equal protection claim fails for the

same reasons as Summit Lake's, and it identifies no similarly situated pre-WDO winery.

***Injunctive Relief Claim.*** Plaintiffs' Fourteenth Claim does not state an independent claim, because injunctive and declaratory relief are remedies, not causes of action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Napa County became one of the world's premier winegrowing regions because the County chose, decades ago, to protect its agricultural land. The County's Agricultural Watershed district and the entitlement system built around it preserve this land for farming and grape cultivation. More intensive industrial and commercial uses are subject to a permitting process. Summit Lake and Smith-Madrone have operated within this system for decades. Summit Lake has held a Small Winery Exemption ("SWE") from the use permit requirement since 1984; Smith-Madrone a use permit since 1973. Neither has completed the permitting process required to modify their allowed uses beyond what those entitlements authorize. Summit Lake began that process, then walked away rather than comply with the required road-safety conditions. Smith-Madrone has never applied at all. Having declined the process the County's laws provide, Plaintiffs ask this Court to declare the laws unconstitutional.

The Second Amended Complaint ("SAC") is a sweeping attack on the County's zoning regulations. Although the asserted theories are numerous, they lack merit. Many of Plaintiffs' claims are time-barred, aimed at ordinances and conduct years, in most cases decades, outside the limitations period. Plaintiffs' preemption challenges misinterpret state law, and their First Amendment and Dormant Commerce Clause claims mischaracterize quintessential local land-use regulations as unconstitutional restraints. Plaintiffs' due process, takings, and equal protection claims are supported by conclusory statements and sparse factual allegations. The law does not permit this baseless attack on longstanding local land use regulations that protect the agricultural character of Napa County and the health, safety, and welfare of its residents. Accordingly, the County respectfully requests that the Court dismiss Plaintiffs' First through Twelfth and Fourteenth Claims without leave to amend.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Napa County's Agricultural Districts and Land Use Regulations Related to Wineries

Plaintiffs' properties are located in the County's Agricultural Watershed ("AW") zoning district. *See* Napa County Code ("NCC" or the "Code") §§ 18.20 et seq. This zoning district was created to encourage agriculture as the highest and best land use in the fertile areas of the Napa Valley and to protect its watershed. *See id.* § 18.20.010. Napa Valley has become one of the world's premier wine-

RENNE PUBLIC LAW GROUP
Attorneys at Law

making regions since the creation of its agricultural districts.[2] *See Bronco Wine Co. v. Jolly*, 129 Cal.App.4th 988, 1008 & n.12 (2005).

Under the County's permissive zoning code, any use of the land that is not specifically allowed is prohibited. *See* NCC § 18.12.080(A), (C). When a use permit is sought, California law and local ordinances require a public hearing and extensive administrative consideration of the impacts of the proposed use, including review under the California Environmental Quality Act ("CEQA"). *See* Cal. Pub. Res. Code §§ 21000 et seq. This is to ensure that the property is an appropriate place for a proposed use that could possibly have substantial impacts on the health, safety, and welfare of the community. *See* Cal. Gov. Code § 65905; NCC §§ 18.124.040 & 060–070.

In 1990, the County overhauled its winery regulations by enacting the Winery Definition Ordinance ("WDO"). Dkt. 70-26, Ord. No. 947 (1990). The WDO prospectively redefined and clarified the uses allowed in association with all wineries operating in the AW. *See id*. §§ 9–14. Wineries are an allowed use in the AW, "but only upon grant of a use permit." NCC § 18.20.030(H). A "winery" is defined as an "agricultural processing facility" used to produce wine, and it may sell the wine it produces at the winery on-site. *Id*. §§ 18.08.040(e), 18.20.020(A). The Code allows certain limited uses "in connection with" and "accessory" to permitted wineries, including offering tours and tastings. *Id*. § 18.20.030(H)–(J); *see also id*. § 18.08.620 ("Tours and tastings"). The allowed accessory uses for a winery are those enumerated in the zoning regulations, all of which require a use permit. *Id*. § 18.08.020.

The WDO allowed certain pre-existing wineries to continue operating without further approval, but only as to their previously authorized uses. Dkt. 70-26, § 10, 13; NCC § 18.20.020(H)–(J). A "small winery" with a SWE can continue its operations "in conformance with the applicable certificate of exemption" for that winery. NCC § 18.20.020(I). They are limited to a maximum production capacity of 20,000 gallons per year and may not "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." NCC §§ 18.08.600, 18.20.020(I); *see also* Dkt. 70-24, Ord. No. 629 (1980) at 2. A winery that had been authorized by use permit prior to the WDO could continue operating without an additional permit "provided, that no expansion of uses or structures beyond those

[2] The County also has an Agricultural Preserve ("AP") zoning district. *See* NCC §§ 18.16 et seq. The two districts are referred to herein collectively as the County's "agricultural districts."

which were authorized by a use permit or modification of a use permit issued prior to the effective date of [the WDO (01/23/1990)]." *See* NCC § 18.20.020(J). To obtain additional entitlements, pre-WDO wineries must obtain or modify a use permit subject to the current requirements of the County Code.

**B. Plaintiffs' Authorizing Land Use Documents and Associated Entitlements**

**1. Summit Lake**

Throughout the SAC, Summit Lake refers to "existing entitlements" that are inconsistent with the County Code and the entitlements established by its authorizing land use documents attached and incorporated into the SAC. Summit Lake operates a winery pursuant to a SWE obtained in 1984 by its predecessor in interest, Robert J. Brakesman. SAC ¶¶ 80–81; *see* Dkt. 70-12 at 2. Summit Lake is not permitted, and has never been permitted, to "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." *See* Dkt. 70-24,Ord. No. 629 (1980) at 2; NCC § 18.08.600. Summit Lake's SWE indicates that the predecessor in interest anticipated two visitors per week. *See* Dkt. 70-12 at 2. Summit Lake's SWE application includes a letter from the predecessor in interest, dated February 23, 1984, which states, "The winery will not conduct public tours, and will not attract the public by offering wine tasting etc. There should be little impact on the area and only a small increase in traffic for deliveries etc." *Id*. at 9. Pursuant to this SWE's list of "Operating Features," Summit Lake is permitted to operate a small winery, which includes the "crushing," "fermentation," "storage/aging," "bottling/packaging," and "shipping" of grapes and wine. *Id*. at 2. Summit Lake may sell the wine it produces on the premises. NCC §§ 18.20.020(A), 18.08.040(E). The sale of any other products or services on the property, including tastings and tours, is not "in conformance with the applicable certificate of exemption," and thus, not a use allowed without a permit. *See id*. § 18.20.020(I).

In 2019, Summit Lake applied for a use permit modification to expand wine production and other uses through the County's Code Compliance program. The application indicated an anticipated increase in customers visiting the property. SAC ¶¶ 88–91, 96. The County confirmed, pursuant to Summit Lake's existing SWE, it was not currently permitted to conduct public tours, provide wine tastings, sell wine-related items, or hold social events of a public nature at the Summit Lake property. *See id*. ¶ 91.

Summit Lake's application for a use permit proposed a cumulative traffic demand along the



RENNE PUBLIC LAW GROUP
Attorneys at Law

roadway greater than forty Average Daily Traffic,[3] triggering application of the County's Road and Street Standards ("RSS"). *See* Dkt. 70-50 at 7 (Section 2 subdivision (b)). As a condition of the permit, Summit Lake would be required to bring the winery's access road to the nearest public roadway serving the winery into compliance with the RSS. *See* SAC¶ 95. The road that Summit Lake was required to bring up to standard is a private road. *See* RJN, Ex. A, Deed to Summit Lake Property. The private road, which provides access to several properties, has a private easement for non-exclusive right of way shared between property owners. *Id*. The easement does not include the County or the general public. *Id*. Summit Lake did not agree to bring the private road into compliance with the County's RSS and did not obtain a use permit to expand wine production and other uses at its property.

**2. Smith-Madrone**

Smith-Madrone operates a winery pursuant to a use permit issued by the County on October 24, 1973, not a SWE. SAC ¶¶ 130–132; *see* Dkt. 70-19. The use permit lists as a condition of approval: "Wine tasting be limited to a private, invitational only, basis. Any consideration of public tasting facilities shall require submission of a written request for modification of this condition." Dkt. 70-19 at 4, ¶ 7. The use permit also provides as a finding that "[t]he winery will not provide public tasting facilities. Private arrangements will be required to visit the winery." *Id*. at 3, ¶ 6. Smith-Madrone is permitted to operate its winery and "related accessory uses" without an additional permit "provided, that no expansion of uses or structures beyond those which were authorized by a use permit or modification of a use permit issued prior to the effective date of [the WDO]." *See* NCC § 18.20.020(J).

Smith-Madrone concedes that this limitation exists in its use permit. SAC ¶ 134. Smith-Madrone also concedes that it has not sought determination of the scope of its historical entitlements by the County or applied for additional uses beyond its historical entitlements. SAC ¶¶ 150, 648–54. Nor has the County brought any enforcement actions against Smith-Madrone related to its winery entitlements.

**C. Allegations in the SAC**

Plaintiffs' First through Fourth Claims ("First Amendment Claims") assert facial and as-applied challenges alleging the County's land use regulations prohibit and restrict expressive and commercial

[3] Napa County Road and Street Standards define Average Daily Traffic as "[t]he average 24-hour traffic volume, both in-bound and outbound, at a given location during peak season." Dkt. 70-50 at 10.

speech, including their ability to host events, in violation of the First Amendment. SAC ¶¶ 442, 459, 463–71, 481–501, 502–19. The Fifth and Sixth Claims ("Due Process Claims") assert facial and as-applied due process challenges alleging the County Code is vague, arbitrarily enforced, and that the process for modifying use permits is excessively expensive, time-consuming, and violates the non-delegation doctrine. *Id.* ¶¶ 525, 533, 552, 580–88. The Seventh and Eighth Claims ("Dormant Commerce Clause Claims") allege that the County's requirement that wineries in the agricultural districts produce wine using at least 75% grapes grown within the County violates the Dormant Commerce Clause ("DCC"). *Id.* ¶¶ 589–627. The Ninth and Tenth Claims ("Takings Claims") assert regulatory takings claims under *Nollan*/*Dolan* and *Penn Central*. *Id.* ¶¶ 628–72. The Eleventh Claim alleges the County's zoning regulations violate equal protection by differentiating between a "winery," "small winery," and "micro-winery." *Id.* ¶¶ 673–95. The Twelfth Claim asserts that the County Code is preempted by state and federal law. *Id.* ¶¶ 696–754. Finally, the Fourteenth Claim lays out Plaintiffs' case for injunctive relief without alleging additional causes of action or facts. *Id.* ¶ 792.[4]

**D. Procedural Background**

On March 28, 2025, the Court granted the County's Motion to Dismiss Plaintiffs' First Amended Complaint, abstaining under *Younger v. Harris* based on the pending state enforcement action against Hoopes. *See* Dkt. 69. The Court separately dismissed Summit Lake and Smith-Madrone's First Amendment retaliation claims for failing to state a claim with leave to amend that count only. *Id.*

On April 24, 2025, Summit Lake and Smith-Madrone filed the SAC (Dkt. 70), which the County again moved to dismiss, arguing they again failed to state a plausible First Amendment retaliation claim (Dkt. 74). On June 18, 2025, the Court granted the County's motion to dismiss with prejudice. *See* Dkt. 82. Plaintiffs appealed both orders granting the County's motions to dismiss. *See* Dkt. 71; Dkt. 84.

The Ninth Circuit consolidated the appeals, heard argument on March 10, 2026, and issued a memorandum of disposition on April 13, 2026, affirming in part, reversing in part, and remanding. *See* Dkt 86. The panel affirmed the application of *Younger* abstention as to Hoopes's non-retaliation claims.

[4] Plaintiffs' Thirteenth Claim, which is not challenged in this motion, alleges that the County has issued citations and engaged in "undercover entrapment operations" in retaliation for the Plaintiffs' litigation against the County. SAC ¶¶ 755–91. The County does not concede the sufficiency or merits of this claim and expressly reserves its right to challenge the claim in a subsequent dispositive motion.

*Id*. at 3. However, the Circuit Court reversed the abstention ruling as to Summit Lake and Smith-Madrone, holding they were not so closely related to Hoopes as to be subject to the same *Younger* considerations. *Id*. at 5. Additionally, the Ninth Circuit concluded that "[a]t this stage of the litigation, Summit Lake and Smith-Madrone have demonstrated that…they have standing to bring their pre-enforcement First Amendment, Dormant Commerce Clause, due process, equal protection, permit taking, and regulatory taking claims." *Id*. "The district court, however, retains its authority to revisit Summit Lake and Smith-Madrone's standing and other justiciability issues as the case progresses." *Id*.[5]

## III. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) when it lacks a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

## IV. ARGUMENT

### A. Plaintiffs' State and Federal Preemption Claim Fails as a Matter of Law[6]

Plaintiffs' Twelfth Claim alleges that NCC §§ 18.08.600 et seq. conflict with provisions of the Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code §§ 23200 et seq.) allowing licensed winegrowers to serve food, wine, and beer for on-premises consumption without appointments. SAC ¶¶ 722, 725. Additionally, Plaintiffs assert that the California Building Code uniform occupancy load requirements preempt the County's restrictions on the number of visitors a winery may host. *Id*. ¶¶ 737–42. Finally, Plaintiffs allege that "[f]ederal law" preempts Napa County regulations without identifying any federal statutes or conflicting County regulations. *See id*. ¶¶ 743–44. Each of these claims fails.

#### 1. Plaintiffs' State-Law Preemption Claim Is Time-Barred

Claims that local ordinances are preempted by later enacted state statutes are subject to a three-

[5] The court also reversed as to the First Amendment retaliation claims, holding Hoopes's retaliation claim sufficiently separable from the state case, and that Summit Lake and Smith-Madrone stated a claim. Dkt 86 at 4, 6. The County has answered those claims. Dkt. 97.

[6] The County addresses the preemption claim first because many of Plaintiffs' remaining claims are premised on their misapprehension of state law.



RENNE PUBLIC LAW GROUP
Attorneys at Law

year limitations period. Cal. Civ. Proc. Code § 338; *Travis v. Cnty. of Santa Cruz*, 33 Cal. 4th 757, 772 (2004) ("challenge to the Ordinance, to the extent it is based on preemption by later enacted state statutes [] is subject to the three-year limit of Code of Civil Procedure section 338"). The court in *Travis* expressly rejected the theory of continuous accrual, under which the limitations period would restart with each subsequent enforcement of the local ordinance, holding that "[i]f, as claimed, the County has, and is violating, a duty to repeal or amend the Ordinance to avoid a conflict with the state law, it had, and violated, that duty as of the day the state law came into effect." *Id.* at 773–74. Thus, under Code of Civil Procedure section 338, plaintiffs have three years from that date to bring a preemption challenge. *Id.*

Here, all state laws at issue (*see* SAC ¶¶ 699-741) were enacted before September 5, 2021. *See e.g.*, Cal. Bus. & Prof. Code § 23356.1 (last amended by Stats.2007, c. 246 (S.B.108), § 1); *id.* § 23386 (last amended by Stats.1998, c. 248 (A.B.2285), § 1.); *id.* § 23358(a)-(c) (subdivision a–c added by Stats.2008, c. 127 (A.B.2004), § 1). Thus, Plaintiffs' state law preemption claim is time-barred.

**2. Plaintiffs' State-Law Preemption Claim Fails as a Matter of Law**

Even if Plaintiffs' preemption claims were timely, Plaintiffs' allegations that the County's regulations eliminate privileges and conflict with the ABC "confuses the function of zoning with that of the control of the sale of liquor." *See Floresta, Inc. v. City Council of San Leandro*, 190 Cal. App. 2d 599, 604–07 (1961) (zoning regulations are simply a "geographic restriction … not an invasion of the state's general regulation and limitation of the consumption of liquors as such").

Here, as in *Floresta*, the County's zoning regulations are geographic restrictions that do not eliminate privileges afforded by Type 02 licenses. Plaintiffs are not prohibited from obtaining a permit for additional uses. *See id.* § 18.20.030(J)(1) and (4). The regulations at issue are permissible land-use restrictions, not the elimination of a privilege in conflict with state statute or a limitation on the consumption of liquor. Furthermore, "when local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, California courts will presume, *absent a clear indication of preemptive intent from the Legislature*, that such regulation is not preempted." *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006) (as modified Aug. 20, 2006) (emphasis added). Here, the following language was added to the Alcoholic Beverage Control Act (Cal. Bus. & Prof. Code § 23358(e)) at Napa County's behest during the legislative process:

RENNE PUBLIC LAW GROUP
Attorneys at Law

> Nothing in this section or in Section 23390 is intended to alter, diminish, replace, or eliminate the authority of a county, city, or city and county from exercising land use regulatory authority by law to the extent the authority may restrict, but not eliminate, privileges afforded by these sections.

*See* RJN, Ex. B, Sen. Comm. on Gov'tal Org., Bill Analysis, Assem. B. 2004, 2007–2008 Reg. Sess. 2 (Cal. 2008), Ex. C, Assem. B. 2004, 2007–2008 Reg. Sess. § 1 (Cal. 2008) (as amended June 24, 2008). Additionally, section 23790 of the Alcoholic Beverage Control Act provides that "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city." *See also id.* § 23790.5(a) ("It is the intent of the Legislature in enacting this section to ensure that local government shall not be preempted in the valid exercise of its land use authority pursuant to Section 23790, including, but not limited to, enacting an ordinance requiring a conditional use permit."). The Act's plain language shows that the Legislature did not intend to preempt local zoning ordinances. *See also Korean Am. Legal Advocacy Found. v. City of Los Angeles*, 23 Cal.App.4th 376, 393 (1994) ("it is clear the Legislature did not intend for the state legislation to preempt local zoning regulations").

Similarly, conditioning use permits with limits on the volume of visitors does not conflict with the Building Code, which permits local governments "to establish more restrictive and reasonably necessary differences." Cal. Code Regs. tit. 24, § 1.1.8. Building occupancy limits set a maximum threshold to ensure safe egress from a structure in emergencies. *See id.* §§ 1.1.2, 1004.1. In contrast, the County's regulations address impacts resulting from the intensity of use, such as the impacts on roads and septic systems. *See* NCC §§ 18.20.010, 18.124.060(A).

**3. Plaintiffs Fail to State a Plausible Federal Preemption Claim**

Plaintiffs' vague allegations regarding "federal law," which fail to cite any specific federal statutes or conflicting County regulations, are insufficient to state a claim, particularly one involving a "traditional land use regulation." *See Helicopters for Agric. v. Cnty. of Napa*, 384 F. Supp. 3d 1035, 1040-43 (N.D. Cal. 2019). For the reasons stated above, Plaintiffs' Twelfth Claim should be dismissed.

**B. Plaintiffs Cannot Premise *Monell* Liability on "Interpretations" by County Employees Who Are Not Policymakers**

The County may only be held liable under section 1983 for constitutional violations resulting



RENNE PUBLIC LAW GROUP
Attorneys at Law

from official county policy or custom. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). Plaintiffs' facial claims, based on the plain language of the County Code, do not implicate *Monell*. However, Plaintiffs also allege as-applied claims based on certain employees' "interpretations" of the Code. Plaintiffs allege that until the County's state enforcement action against Hoopes, they were unaware of these "interpretations" made by certain county employees, specifically, code enforcement officer Akenya Robinson-Webb, a County Planner (Kelli Cahill), and unnamed "[o]ther code enforcement officers." SAC ¶¶ 1-3, 6, 79, 87, 127, 155, 261-62, 352, 480, 492, 515, 541-545, 749, 754.

Plaintiffs cannot premise *Monell* liability on these employees' alleged "interpretations" of the County Code because they fail to plausibly allege that these employees are final policymakers or have been delegated final policymaking authority under state law. *See Schmid v. County of Sonoma*, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024) (rejecting *Monell* because "[t]he amended complaint does not point to any state law that vests [the County's Director of Permit and Resource Management Department] with final policymaking authority over Sonoma County's land use policies"); *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1026 n.11 (N.D. Cal. 2022) (plaintiff failed to establish that city code enforcement officer was final policymaker). Plaintiffs' as-applied claims premised on County employees' "interpretations" of the County Code fail as a matter of law under *Monell*.

**C. Plaintiffs' Facial and As-applied First Amendment Claims[7] Fail as a Matter of Law**

Plaintiffs' First, Second, and Fourth Claims for Relief under the First Amendment fail as a matter of law for several reasons. First, the conduct restricted by the County's traditional land-use regulations is not expressive. Second, Plaintiffs' First Amendment claims fail under *Central Hudson* because the claims rest on the erroneous assertion that state law preempts the County's zoning and land-use restrictions and because the County's use permit restrictions are appropriately tailored to directly advance the County's substantial interest in preserving its agricultural districts. Third, the County Code's requirement that permit applicants indemnify the County against third-party actions challenging their permits does not infringe Plaintiffs' right to petition. Finally, Plaintiffs' allegations challenging the

[7] This motion challenges the sufficiency of Plaintiffs' First through Fourth First Amendment claims for relief. SAC ¶¶ 438–519. Accordingly, "First Amendment claims" as used in this motion does not refer to Plaintiffs' Thirteenth claim for relief for retaliation.

RENNE PUBLIC LAW GROUP
Attorneys at Law

County's ordinance under the First Amendment do not apply to Smith-Madrone's factual circumstances.

**1. The Land Use Regulations at Issue Regulate Non-Expressive Conduct**

Plaintiffs "'bear[] the burden to demonstrate that the First Amendment even applies'" by demonstrating their "conduct includes a 'significant expressive element that drew the legal remedy in the first place.'" *Uber Techs., Inc. v. City of Seattle*, 168 F.4th 1202, 1211 (9th Cir. 2026) (quoting *B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 112 (9th Cir. 2024); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986)). "When determining whether a law regulates sufficiently expressive conduct, a court may consider both the 'inevitable effect of a [law] on its face' and the law's 'stated purpose.'" *Uber Techs., Inc.*, 168 F.4th at 1211 (quoting *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019)).

Here, because Plaintiffs cannot demonstrate that the ordinances regulate conduct with "a significant expressive element," they do not implicate the First Amendment. *Uber Techs., Inc.*, 168 F.4th at 1211. The County Code provisions at issue are traditional land use regulations that address the nature and intensity of physical land uses at wineries in rural agricultural areas, limit them to approved uses, and address their potentially adverse environmental effects (e.g., on traffic, noise, pollution, fire risks, sensitive receptors). Unauthorized commercial services, such as selling tours and tastings without a permit, draw the legal remedy. These acts are not "conduct with a significant expressive element" because "consummating a business transaction is nonexpressive conduct unprotected by the First Amendment." *B& L Productions*, 104 F.4th at 113–14 (statutes prohibiting "contracting for the sale of any firearm or ammunition" on state property did not trigger First Amendment scrutiny); *Uber Techs., Inc.*, 168 F.4th at 1211 (ordinance prohibiting companies from "unwarranted deactivations" of app-based workers' accounts was "not subject to First Amendment scrutiny" since "the conduct that draws the remedy is the unwarranted deactivation of worker accounts" and such conduct was "nonexpressive"); *Talk of the Town v. Department of Finance and Business Services ex rel. City of Las Vegas*, 343 F.3d 1063, 1069–70 (9th Cir. 2003) ("[T]he section of the Las Vegas Municipal Code that bars the consumption of alcohol in establishments that lack valid liquor licenses … in no way can be said to regulate conduct containing an element of protected expression."); *Olympus Spa v. Armstrong*, 169 F.4th



RENNE PUBLIC LAW GROUP
Attorneys at Law

817, 831 (9th Cir. 2026) (state non-discrimination law regulating spa admissions policy regulated "conduct, not speech"); *HomeAway.com*, 918 F.3d at 680, 685 (ordinance restricting short-term rentals was "plainly a housing and rental regulation" whose "inevitable effect" was to "regulate nonexpressive conduct—namely, booking transactions—not speech"); *Phillip Morris USA, Inc. v. City and County of San Francisco*, 345 F. App'x 276 (9th Cir. 2009) ("Selling cigarettes isn't [protected expressive activity], because it doesn't involve conduct with a 'significant expressive element.'").

**2. The County's Ordinances Pass Muster Under *Central Hudson***

Even if the conduct at issue was protected by the First Amendment, Plaintiffs would still fail to state a claim under *Central Hudson v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980).

**a. Misleading Speech About Unlawful Activity Is Not Protected**

For starters, the purported speech at issue is "misleading" and does not "concern lawful activity." *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017). "[S]peech proposing an illegal transaction … may [be] regulate[d] or ban[ned] entirely." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 496 (1982); *see also Homeaway.com*, 918 F.3d at 686 ("[T]o the extent that the speech chilled advertises unlawful rentals, [a]ny First Amendment interest … is altogether absent." (quotation omitted)); *Bronco Wine Co.*, 129 Cal.App.4th at 1013 ("We find no constitutional impediment to regulation. Because inherently misleading speech is unprotected speech").

To avoid the clear precedent that unlawful or misleading speech is not protected by the First Amendment, Plaintiffs premise their First Amendment claims on the erroneous premise that tours and tastings are authorized regardless of whether Plaintiffs operate their wineries pursuant to a SWE or any other use permit. First, Plaintiffs argue that tours and tastings are authorized by state law, which preempts the County's zoning regulations requiring a permit to conduct such activities within the AW district. As shown above, the County's zoning and land use regulations do not conflict with state law, which explicitly allows local regulations (such as conditional use permit requirements) that restrict but do not eliminate state privileges. *See supra*, Section IV(A)(2).

Plaintiffs also, in direct contradiction to their preemption arguments, make the erroneous legal assertion that the County Code allows them to engage in tours, tasting, and the sale of wine-related products. SAC ¶¶ 250-51. Plaintiffs also incorrectly assert that "each Plaintiff winery may engage in

RENNE PUBLIC LAW GROUP
Attorneys at Law

'Marketing of Wine' as defined by NCC Section 18.08.370." *Id.* ¶ 245. Neither of these assertions about the County Code is accurate. Tours, tastings, the sale of wine-related products, and "Marketing of Wine" as defined by NCC Section 18.08.370 are uses permitted in the agricultural districts "*only upon grant of a use permit* pursuant to Section 18.124.010." NCC §§ 18.20.030(I)(5) & (J)(1), (J)(4) (emphasis added); *see also id.* § 18.08.020. Plaintiffs concede that they have not been granted use permits pursuant to County Code section 18.124.010. *See* SAC ¶¶ 31, 80, 132. The uses permitted under these provisions are not applicable to Summit Lake or Smith-Madrone.

Under the County Code, Plaintiffs may market and sell wines produced on the premises (*see* NCC § 18.08.040(E), (H)(1)-(2)), and in the case of Smith-Madrone, allowed uses include "related accessory uses" "which were authorized by a use permit or modification of a use permit issued prior to the effective date of [the WDO]" (*see id.* § 18.20.020(J)), but that does not include, as Plaintiffs assert, the uses specifically allowed for wineries that have been granted a permit pursuant to County Code section 18.124.010 et seq. Plaintiffs cannot contend that the County's restrictions impinge on protected commercial speech when the purported speech seeks to promote unlawful activity that exceeds their use authorization and misleadingly suggests it is lawful.

**b. The County's Use Permitting Scheme Is Appropriately Tailored to Directly Advancing Substantial Government Interests**

Plaintiffs cannot state a claim under *Central Hudson* for the additional reason that the County's use permit scheme "directly advance[s] a substantial government interest" and "the means chosen [are] not … more extensive than necessary." *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 826 (9th Cir. 2025). The County has a substantial interest in protecting its "agriculture, watersheds and floodplain tributaries from fire, pollution and erosion," and its "general health, safety and welfare." NCC §§ 18.16.010, 18.20.010; *see Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801 (9th Cir. 2001) ("the City has a strong interest in its land-use ordinance"); *Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408, 446 (1989) (Stevens, J.) (noting that "the county has a substantial interest in regulating land use in the open area-and in particular in protecting 'the county's valuable agricultural land'"); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 901 & n.2, 904 (9th Cir. 2009) ("It is well-established that traffic safety and aesthetics constitute substantial government

interests").

The County's use permit scheme directly advances these substantial interests by asking whether specific conditions are necessary regarding "[i]ngress and egress to the property … with particular reference to … safety and convenience, traffic flow and control and access in case of fire or catastrophe" and "[m]itigation of adverse environmental effects if any, such as, adverse effects on groundwater resources, noise, glare, dust, smoke, odor or other effects of the proposed use in relation to adjoining property and property generally in the vicinity." NCC § 18.124.060(A), (C). It further requires written findings that the "grant of the use permit, as conditioned, will not adversely affect the public health, safety or welfare of the county" and the "proposed use complies with the applicable provisions of" the County Code and is "consistent with the policies and standards of the general plan." NCC § 18.124.070. The fact that wineries that were licensed before the adoption of this comprehensive use permitting scheme with limited or no CEQA review (e.g., wineries with SWEs like Summit Lake and wineries with pre-WDO use permits like Smith-Madrone) may operate within the limited scope of their prior entitlements does not prevent the County from requiring those wineries to obtain a conditional use permit if they wish to expand their entitlements. *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 745 (9th Cir. 2011) ("The City is certainly entitled to treat signs permitted before the offsite and supergraphic sign bans differently than other signs both because preserving legally nonconforming billboards still furthers the City's significant interest in reducing blight and increasing traffic safety").

Because there is a "reasonable fit" between the purpose of the use restrictions in the AW and the means chosen for fulfilling that purpose (the use permitting scheme), the ordinances pass muster under *Central Hudson*. *See Pharm. Res.*, 153 F.4th at 828; *Metro Lights, L.L.C.*, 551 F.3d at 911-12 ("If a complete prohibition would be sufficiently narrowly tailored, then a partial one must also be").[8]

### 3. The County Code Does Not Infringe Plaintiffs' Right to Petition

Plaintiffs assert that NCC § 1.30.030(A), which requires permit applicants to indemnify the

[8] Plaintiffs also assert that the County's regulations of marketing events at wineries are content- and viewpoint-based. *See* SAC ¶¶ 508–10, 515. But that does not alter the *Central Hudson* analysis, *see Retail Digital Network, LLC*, 861 F.3d at 847–50 & n.9, or change the fact that the County's land use laws "regulate[] economic activity rather than speech," *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935 (9th Cir. 2022) (quotation omitted).



RENNE PUBLIC LAW GROUP
Attorneys at Law

"county from any claim, action, or proceeding brought against the county to attack, set aside, void or annul the approval based on the county's failure to comply with the requirements of any federal state or local law," "violates Plaintiffs' First Amendment right to petition the courts by attempting to chill meritorious litigation under threat of costs and attorney's fees." SAC ¶¶ 471-72. Not so.

Section 1.30.030(A) only applies when an action has been brought by a third party "against the county to attack, set aside, void or annul the approval" of an applicant's own permit. *See also* NCC § 1.30.010(B) (purpose and findings). That is not remotely the case where (as here) a would-be permit applicant seeks to avoid the permit application process altogether and ignores the important public policy behind the ordinance. The ordinance—which mirrors those used by countless other jurisdictions—protects the public from incurring costs to defend a private party's project or property rights. Plaintiffs also overlook basic principles of indemnification, which generally "allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties." *Alki Partners, LP v. DB Fund Services, LLC*, 4 Cal.App.5th 574, 600 (2016).

**4. Smith-Madrone Fails to State a Plausible First Amendment Claim**

Smith-Madrone's First Amendment claims should be dismissed for yet another reason. The gravamen of Plaintiffs' First Amendment claims is that Plaintiffs want to host customers at their wineries to conduct wine tastings, tours, events, and otherwise advertise and promote those products and services to customers who visit their wineries, and that the County Code allegedly prevents them from doing so. *See* SAC ¶¶ 458–465. However, the County Code regulations challenged in the SAC apply to wineries operating pursuant to a SWE or post-WDO use permit, neither of which describes the circumstances alleged by Smith-Madrone.

Smith-Madrone alleges that it "receives requests from customers, both formally and informally, for tastings, wine by the glass, retail sales, tours, marketing events, and other common services provided by wineries" and "[b]ecause of the restrictions placed upon it by Napa County, [it] is not able to freely grant these requests." SAC ¶ 154. However, the SAC does not identify what these "restrictions" applicable to Smith-Madrone actually are, given it operates pursuant to a historical use permit, not a SWE or post-WDO use permit, and that the County has not brought an enforcement action against it. Furthermore, it is uncontested that Smith-Madrone is allowed to provide wine tastings and "related

RENNE PUBLIC LAW GROUP
Attorneys at Law

accessory uses" within the constraints of its historical use permit. *See* NCC § 18.20.020(J); SAC ¶¶ 130–32; Dkt. 70-19. Smith-Madrone also alleges "Napa County ordinance, policies and ordinance interpretations have also prevented Smith-Madrone from advertising and marketing its winery." SAC ¶ 155. But these vague and conclusory allegations again fail to identify which "County ordinance, policies and ordinance interpretations" are applicable to Smith-Madrone and its historical use permit. Contradictorily, Smith-Madrone concedes that it has not sought a determination of the scope of its historical entitlements from the County. SAC ¶¶ 150. The SAC fails to identify any County ordinance, policy, or "interpretation" that restricts Smith-Madrone's speech. A claim for relief under the First Amendment cannot be established on these allegations.

### D. Plaintiffs' Prior Restraint Claim Fails as a Matter of Law

#### 1. The County Code Provisions at Issue Are Laws of General Application Not Aimed at Expressive Conduct

Plaintiffs' Third Claim alleging a facial prior restraint challenge fails as a matter of law because such challenges are "disallowed against laws of general application not aimed at conduct commonly associated with expression." *Spirit of Aloha v. Cnty. of Maui*, 49 F.4th 1180, 1188 (9th Cir. 2022); *Talk of the Town*, 343 F.3d at 1072 ("burdening of expressive conduct" was "incidental result of the City's clear authority to enforce its generally applicable liquor license requirement").

Without identifying any specific laws, Plaintiffs assert that "to have a cultural, business, or social event at a winery, Plaintiffs are required to obtain approval from Napa County regarding the purpose and intent of the event, by way of submission of a 'marketing plan,' before 'marketing events' can take place." SAC ¶ 497. This misreads the County Code, which defines "marketing of wine" in non-expressive terms: "any activity of a winery which is conducted at the winery on a prearranged basis for the education and development of customers and potential customers with respect to wine which can be sold at the winery on a retail basis pursuant to Chapters 18.16 and 18.20." NCC § 18.08.370.

Moreover, section 18.08.370 is not a use-permitting scheme that requires governmental approval to engage in temporary events commonly associated with expressive activities. *Cf.* NCC § 5.36.010 et seq. Rather, section 18.08.370 defines "marketing of wine" in a way that prohibits business events unless "they are directly related to the education and development of customers and potential customers

RENNE PUBLIC LAW GROUP
Attorneys at Law

of the winery and are part of a marketing plan *approved as part of the winery's use permit*." *Id.* § 18.08.370 (emphasis added). Because this type of agricultural land use regulation does not implicate expressive activity, Plaintiffs' facial prior restraint challenge may not proceed.

**2. The County's Permitting Scheme Is Not an Unlawful Prior Restraint**

Even if Plaintiffs could proceed with their "disfavored" facial prior restraint challenge, they would have to show that the County's permitting scheme fails to "provide 'narrowly drawn, reasonable and definite standards' for granting, revoking, or suspending a license" and "place[s] unbridled discretion in the hands of" the County. *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024) (quotations omitted). In *Diamond*, the Ninth Circuit rejected a prior restraint challenge to laws "preclud[ing] public entertainment businesses from operating in a way that causes a public nuisance." *See id.* at 1065–68. The court concluded that these nuisance provisions did "not confer unbridled discretion on the City's Chief of Police" because the phrase "public nuisance" was adequately defined and "the challenged provisions require the Chief of Police to state all grounds upon which a denial, suspension, or revocation is based and provide for an administrative hearing and both administrative and judicial review." *Id.* at 1067–68.

Here, just like the licensing scheme in *Diamond*, the County's use permit scheme (which regulates agricultural land use, not expressive activity) does not confer unbridled discretion on County officials. Use permits may be conditioned on a variety of enumerated factors. *See supra*, Section IV(C)(2)(b). A use permit cannot issue unless the planning commission or board of supervisors makes "written findings" (*id.* § 18.124.070), and a public hearing must be held before a use permit is issued or denied (*id.* § 18.124.040). Once a use permit is issued, the standards for revoking (*id.* § 18.124.120(C)) or modifying (*id.* § 18.124.130(C)) the permit are "narrow, objective, and definite," *Diamond*, 100 F.4th at 1068, and any revocation is appealable and subject to judicial review. *See* NCC §§ 18.124.120(E), 2.88.010 et seq.; Cal. Code Civ. Proc. § 1094.5. For these reasons, Plaintiffs have not stated a viable prior restraint claim under the First Amendment.

**E. Plaintiffs Fail to State a Plausible Vagueness Claim**

Plaintiffs' Fifth Claim asserts that certain terms in the County Code applicable to wineries are not defined or are vague, leaving them unable to "identify what conduct is permitted or prohibited conduct





RENNE PUBLIC LAW GROUP
Attorneys at Law

due to lack of operative or even definitional guidance." SAC ¶ 237, 261–92, 529, 533–34, 542. However, "economic regulation … is subject to a less strict vagueness test … because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Uber Techs., Inc.*, 168 F.4th at 1218.

Contrary to Plaintiffs' assertions, the County Code offers extensive contextual and definitional guidance. *See* NCC §§ 18.08.020 ("accessory use"), 18.08.040 ("agriculture"), 18.08.370 ("marketing wine"), 18.08.600 ("small winery"), 18.08.640 ("winery"), 18.20.030(I) (list of uses in connection with a winery permitted upon grant of a permit), 18.20.030(J) (list of uses accessory to a winery permitted upon grant of a permit). The Code articulates sufficiently clear regulations to provide notice of permitted uses without defining every word. "The law does not require a municipal ordinance to include definitions. The question is whether those terms, as used in [the ordinance], are sufficiently clear that a person of ordinary intelligence would know what is prohibited." *Young v. Cnty. of San Mateo*, No. C 03-05801 CRB, 2005 WL 3454106, at *5 (N.D. Cal. Dec. 16, 2005).

What uses are permitted or prohibited are especially clear when viewed in the context of the entire regulatory scheme and legislative purpose behind establishing the agricultural districts. *See Gospel Missions of America*, 419 F.3d 1042, 1047 (9th Cir. 2005) (context may provide guidance on undefined terms); *City of Los Altos v. Barnes*, 3 Cal.App.4th 1193, 1202 (1992) (in interpreting zoning ordinances, courts may refer to legislative history or purpose). Section 18.20.010 provides:

> The AW district classification is intended to be applied in those areas of the county where the predominant use is agriculturally oriented, where watershed areas, reservoirs and floodplain tributaries are located, where development would adversely impact on all such uses, and where the protection of agriculture, watersheds and floodplain tributaries from fire, pollution and erosion is essential to the general health, safety and welfare.

The terms and their application are clear "when the purpose clause of the ordinance is considered and the terms are read in that context as they should be." *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1107 (1995). Plaintiffs may engage in "agricultural" activity as defined in NCC § 18.08.040 and operate their wineries, which are defined by NCC § 18.08.640 as "an agricultural processing facility used for: [t]he fermenting and processing of grape juice into wine; or [t]he refermenting of still wine into sparkling wine." None of the provisions of the County Code are impermissibly vague under the Due Process



RENNE PUBLIC LAW GROUP
Attorneys at Law

Clause. *See Uber Techs., Inc.*, 168 F.4th at 1219 (rejecting argument that "reasonable" was impermissibly vague where express "limitations help to make clear what is and is not permitted under the law"); *American Canine Foundation v. Sun*, No. C-06-4713 MMC, 2007 WL 4208358, at *11 (N.D. Cal. Nov. 27, 2007) ("[T]he Ordinance clearly sets forth the requirements for obtaining an unaltered dog license, the grounds for denying or revoking such license, and the penalties for violations.").[9]

**F. Plaintiffs' Fail to State a Plausible Non-Delegation Doctrine Claim**

Plaintiffs' Fifth Claim asserting violation of the Non-Delegation Doctrine fails as a matter of law. Under the Due Process Clause, "the state may not constitutionally abdicate or surrender its power to regulate land-use to private individuals without supplying standards to govern the use of private discretion." *Schulz v. Milne*, 849 F. Supp. 708, 712 (N.D. Cal. 1994) (quotations omitted).

Here, Napa County does not, by rule or practice, condition the issuance of a use permit on the approval of third parties. The Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs do not identify under what ordinance or policy the County allegedly delegates its authority to third parties, who the alleged third parties are, who the parties applying for the permits were, or when any of this allegedly occurred. Instead, Plaintiffs only vaguely reference the inclusion of members of the public in the use permit process, which is required by state law and by the due process rights of neighboring property owners. *See Horn v. County of Ventura*, 24 Cal.3d 605, 614–16 (1979). Plaintiffs' vague and conclusory allegations are insufficient to support a reasonable inference that the County has a policy or practice of conditioning issuance of use permits on third-party approval. *See Temple of 1001 Buddhas*, 588 F. Supp. 3d at 1024–25.

**G. Plaintiffs' Dormant Commerce Clause Claims Fail as a Matter of Law**

Plaintiffs' Seventh and Eighth Claims for Relief asserting Dormant Commerce Clause challenges also fail as a matter of law. These claims challenge NCC § 18.104.250(B–C), which requires for certain wineries located or operating on parcels zoned in the AW district that "at least seventy-five percent of the

[9] In the case of Smith-Madrone, there is some ambiguity as to the scope of its permitted uses. However, this ambiguity resides in the language of its historical use permit, for which it has never sought a determination from the County (SAC ¶ 150), not the County Code.

grapes used to make the winery's still wine, or the still wine used by the winery to make sparkling wine, shall be grown within the county of Napa." *See* SAC ¶¶ 595–97.

"'[E]xtreme caution' is warranted before a court deploys' its 'implied authority' to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023)). To succeed on a facial challenge, Plaintiffs must "establish that no set of circumstances exists under which the [Ordinance] would be valid. … Because of this high burden, [courts] construe the Ordinance narrowly and resolve any ambiguities in favor of the interpretation that most clearly supports constitutionality." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) (quotation omitted).

The Ninth Circuit follows a two-tiered approach when reviewing challenges under the DCC:

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Id.* The Supreme Court recently added a gloss to the first prong, "specifically reject[ing] an 'almost *per se* rule forbidding enforcement of state laws that have the practical effect of controlling commerce outside the State, even when those laws do not purposely discriminate against out-of-state economic interests.'" *Flynt*, 131 F.4th at 929 (quoting *Nat'l Pork Producers*, 598 U.S. at 371).

**1. The County's Regulations Do Not Discriminate Against Commerce**

Section 18.104.250's structure and purpose are rooted in the preservation of agricultural land without an intent to harm or exclude out-of-state economic interests. Section 18.104.250 only applies to wineries within the County and does not regulate any extraterritorial activity. *See* NCC § 18.104.250(B). Laws that only regulate in-state conduct generally are not per se invalid. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) ("[E]ven when state law has significant extraterritorial effects, it passes Commerce Clause muster when, as here, those effects result from the regulation of in-state conduct."). Additionally, statutes struck down for directly discriminating against interstate commerce generally regulate commercial activity such as pricing, sales, or the shipment of retail goods and involve an impermissible discriminatory purpose. *See Healy v. Beer Inst., Inc.*, 491 U.S.

324, 326 (1989) (price affirmation); *Granholm v. Heald*, 544 U.S. 460, 473–74 (2005) (direct shipment); *see also Flynt*, 131 F.4th at 929 (discussing *Healy*). In contrast, Section 18.104.250 regulates the use of land, tying the production of wine in the agricultural districts to the amount of agricultural produce "grown" in the County. It applies equally to wineries owned by in-state and out-of-state interests and does not place any restrictions on the "sale and shipment" of grapes or wine. *See Bronco Wine Co.*, 129 Cal.App.4th at 1022. Indeed, Section 18.104.250 places no limitations on the purchase, sale, or shipment of out-of-County grapes, it simply creates a limitation on the amount of out-of-county grapes that can be processed at wineries within the County's agricultural districts.

Additionally, Section 18.104.250 is not intended to benefit in-state commercial interests at the expense of out-of-state interests. Its legislative findings provide that "the County areas suitable for quality vineyards are limited and irreplaceable… The interspersing of non-agricultural structures and activities through agricultural areas in excess of what already exists will result in a significant increase in the problems and costs of maintaining vineyards and discourage the continued use of the land for agricultural purposes." *See* Dkt. 70-26, Ord. No. 947 § 1. Section 18.104.250 preserves the County's agricultural districts by ensuring wineries in the districts do not operate primarily as processing facilities. Without such a limitation, a winery's ancillary use of its agricultural property—to process grapes—could overwhelm the primary agricultural use of growing crops. This is a legitimate land use concern, not economic protectionism, and does not directly regulate or discriminate against interstate commerce.

**2. The County Does Not Unconstitutionally Burden Commerce**

Under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), "Plaintiffs here face a heavy burden: the Supreme Court has not invalidated a law under *Pike* in more than 30 years." *Flynt*, 131 F.4th at 931 (quotations omitted). "[P]laintiffs must first show that the challenged laws impose a substantial burden on interstate commerce; if so, [the court] determine[s] whether that burden is *clearly excessive* in relation to the law's putative local benefits." *Id.* (quotations omitted) (emphasis added). "*Pike* balancing is required *only* if the challenged law has a discriminatory effect on interstate commerce." *Rosenblatt*, 940 F.3d at 452 (quotation omitted). "[C]onclusory allegations of disparate impact are not sufficient; to survive [a] motion to dismiss, the plaintiffs needed to plead specific facts to support a plausible claim that the ordinance has a discriminatory effect on interstate commerce." *Id.* (quotation omitted).

RENNE PUBLIC LAW GROUP
Attorneys at Law

Here, Plaintiffs allege in conclusory fashion that the County Code "places an excessive burden on interstate commerce in excess of the putative benefit to Napa County . . . by favoring, and mandating in-County products and persons over out-of-County products and persons." SAC ¶ 620. Plaintiffs also allege that "[t]he production capacity of Napa Wineries far exceeds Napa grape production" and limiting Napa wineries to the local agricultural supply "burdens small wineries like Plaintiffs." SAC ¶¶ 622–23. This is woefully insufficient to plausibly allege an excessive burden on interstate commerce.

First, Plaintiffs' allegations demonstrate the legitimate interest served by the 75 percent rule. Section 18.104.250 was enacted "to protect agriculture and open space as the primary land use in Napa County." Dkt. 70-26, Ord. No. 947, § 6(b). If the production capacity of Napa wineries is not tied to the local agricultural supply, and instead the wineries within the agricultural districts are allowed to process grapes grown outside the County without any limitation, the wineries' ancillary use of processing grapes would overwhelm the primary agricultural use of growing crops. While this regulation does restrict wineries *within* the agricultural districts that want to use their processing facilities to process grapes grown outside the County, that local land use regulation does not burden interstate commerce. *See Rosenblatt*, 940 F.3d at 453 ("Because [plaintiff] fails to show a high burden on interstate commerce—and, at most, suggests some negligible burden on the local economy of Santa Monica, the complaint cannot meet the standard established in *Pike*."); *Flynt*, 131 F.4th at 932 ("The challenged laws prevent only a small band of persons—those holding California cardroom licenses—from investing in gaming enterprises that are illegal under California law.").

Second, Section 18.105.250 only limits wineries within the County's agricultural districts. The SAC fails to establish that wine processing facilities elsewhere in the County are unable to accommodate the demand for out-of-county grapes. Furthermore, courts require specific allegations as to the "magnitude" of the burden, of which Plaintiffs provide none. *See Rosenblatt*, 940 F.3d at 453 ("But the complaint fails to allege the magnitude of this decrease, which we require."); *cf. Flynt*, 131 F.4th at 932 (noting that the Supreme Court rejected a *Pike* argument "even though California's required changes to pig-farming and pork-production practices throughout the United States will cost American farmers and pork producers hundreds of millions (if not billions) of dollars)" (quotation omitted)).

Finally, courts recognize that counties have a legitimate interest in preserving the welfare and

character of their neighborhoods. *See Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990). Preserving the County's vineyards not only sustains the local economy through tourism and wine production but also protects its rich agricultural heritage and scenic landscapes. Vineyard preservation promotes biodiversity, conserves water resources, and supports local jobs, making it both an economic and environmental asset. Section 18.104.250 ensures that Napa's valuable land is preserved for grape cultivation rather than for industrial wine processing, a benefit that clearly outweighs any incidental burden on interstate commerce, a burden that Plaintiffs have failed to plausibly allege. *See Bronco Wine Co.*, 129 Cal.App.4th at 1022–28.

### H. Plaintiffs' Facial Takings, Substantive Due Process, and Equal Protection Claims Are Time-Barred

To the extent Plaintiffs Fifth, Ninth, Tenth, and Eleventh Claims for Relief assert facial challenges to County ordinances, those claims are time-barred. Claims brought under section 1983 are subject to California's personal injury statute of limitations. *Canatella v. Van De Camp*, 486 F.3d 1128, 1132–33 (9th Cir. 2007). In California, personal injury claims which accrued prior to January 1, 2003 were subject to a one-year statute of limitations. *Id*. Claims which accrued after January 1, 2003 are subject to a two-year statute of limitations. *See* Cal. Code Civ. P. § 335.1; *Canatella*, 486 F.3d at 1132–33. For facial claims challenging zoning ordinances impacting property rights under the takings, due process, or equal protection clauses, the statute of limitations begins to run when the ordinance is enacted. *See Action Apartment Ass'n v. Santa Monica Rent Control Opinion Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007); *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1193 n.15 (9th Cir. 2008) (citing *De Anza Props. X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1085 (9th Cir. 1991)). Whether the applicable statute of limitations is one year or two, Plaintiffs' facial challenges are time-barred because the challenged zoning ordinances were all enacted more than two years before Plaintiffs filed this action (September 5, 2022). *See* Dkt. 70-23, Ord. No. 274 (1968); Dkt. 70-24, Ord. 628 (1980); Dkt. 70-26, Ord. No. 947 (1990); Dkt. 70-22, Ord. No. 186 (1995); Dkt. 70-48, Ord. No. 1340 (2010).

This accrual rule is applicable to Plaintiffs' facial challenges to the County's zoning ordinances whether brought under the takings clause, substantive due process, or equal protection. A facial takings challenge is "a single harm, measurable and compensable when the statute is passed." *Levald v. City of*

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Palm Desert*, 998 F.2d 680, 686–88 (9th Cir. 1993). Accordingly, "the cause of action accrues on the date that the challenged statute or ordinance went into effect." *Action Apartment*, 509 F.3d at 1027.

Where the same principle concerning the single harm underlying a takings claim extends to other constitutional claims involving property, courts recognize that it is "appropriate to apply the enactment accrual rule." *See Cal. Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *9 & n.8 (E.D. Cal. Feb. 9, 2023) (citing *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cit. 2016) and *Action Apartment*, 509 F.3d at 1026), *aff'd* No. 23-15975, 2024 WL 4688890 (9th Cir. Nov. 6, 2024). Accordingly, the limitations period for Plaintiffs' facial substantive due process and equal protection claims also accrued at the time of enactment. *See Action Apartment*, 509 F.3d at 1027 ("we see no reason to distinguish between facial takings claims and facial substantive due process claims…the logic for the accrual rules in the takings context applies with equal force in the substantive due process context."); *Barancik v. Cnty. of Marin*, 872 F.2d 834, 836 (9th Cir. 1988) (holding equal protection challenge to county zoning and a later code amendment accrued when the zoning and the amendment were adopted and that the claims were barred by the applicable statute of limitations).

**I. Summit Lake's As-Applied Due Process, Takings, and Equal Protection Claim Fail as a Matter of Law**

**1. Summit Lake Fails to State a Plausible Arbitrary Enforcement Claim**

In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977). Summit Lake must plausibly allege that the County's actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).

Summit Lake alleges that the County "applies its Road and Street Standards in an arbitrary and capricious manner specifically designed to violate the Due Process rights of wineries," and that the County "does not apply its Road and Street Standards uniformly and, upon information and belief, only applies its standards to some but not all wineries and also not to other types of property." SAC ¶¶ 559, 573–75. These conclusory allegations are not sufficient to state a claim.

RENNE PUBLIC LAW GROUP
Attorneys at Law

Furthermore, the RSS are generally applicable, prospective road-safety regulations triggered by neutral, defined activities. *See* Dkt. 70-50 at 6–7. The RSS "are not applicable retroactively to existing roads, streets and driveways or facilities" and "shall apply to all construction within the unincorporated portions of Napa County beginning on the date they are adopted by the Board of Supervisors." *Id*. at 7. They are triggered by neutral, enumerated activities, including "Application for a Use Permit or any modification thereto resulting in an increase in average daily trips (ADT)." *Id*. This regulatory framework is the antithesis of arbitrary action.

Plaintiffs also attempt to establish a due process violation based on the differing definitions in the County's Zoning Code and RSS. *See* SAC ¶¶ 562–69. However, each definition controls only within the regulatory scheme in which it appears. Thus, the fact that winery operations fall within the Zoning Code's definition of "agriculture" does not mean they must also fall within the RSS definition of an "agricultural road." This distinction exists because the RSS serve a different purpose and must "equal or exceed" the State Minimum Fire Safe Regulations or be superseded. *See* Cal. Code Regs. tit. 14, § 1270.05(a) ("Subchapter 2 [State Minimum Fire Safe Regulations] shall serve as the minimum Wildfire protection standards applied in SRA and VHFHSZ. However, Subchapter 2 does not supersede local regulations which equal or exceed the standards of this Subchapter."). That limitation does not alter the County's separate zoning authority or its definition of "agriculture" in the Zoning Code. Plaintiffs therefore identify, at most, a difference between two definitions serving different regulatory purposes, not a due process violation.

**2. Summit Lake Fails to Allege a Plausible As-Applied Takings Claims**

Courts recognize several distinct forms of regulatory takings claims under the Fifth Amendment. Here, Plaintiffs assert unconstitutional-conditions claims under *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), *and Dolan v. City of Tigard*, 512 U.S. 374 (1994) (collectively, "*Nollan/Dolan*"), as well as regulatory takings claims under *Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978). These claims, as applied to Summit Lake, fail for several reasons.

**a. Summit Lake Fails to State a Plausible *Nollan/Dolan* Takings Claim**

Summit Lake's Ninth Claim does not state a plausible *Nollan/Dolan* claim. First, Plaintiffs allege that the County requires small wineries to "give up all winery entitlements and submit to a new





RENNE PUBLIC LAW GROUP
Attorneys at Law

discretionary use permit" before it will consider issuing or amending any winery entitlements. SAC ¶ 645. This vague and conclusory allegation does not accurately reflect the requirements of the County Code. A small winery is not required to "give up" anything before applying for a use permit under the County Code. *See* NCC § 18.124.010. Nor have Plaintiffs alleged any facts specific to Summit Lake supporting that the County required it to "give up" any entitlements. Furthermore, Plaintiffs' allegations regarding these "interpretations" also fail to state a claim under *Monell*. *See supra*, Section IV(B).

Next, Plaintiffs allege that the County forces winery use permit applicants to pay "impermissible impact fees" and "exorbitant costs" to improve roadways in a disproportionate manner to the proposed use. SAC ¶¶ 644, 646. However, there are no specific allegations of any "impact fees" related to Summit Lake's use permit application. Summit Lake alleges that "[i]n October 2019, Napa County advised Summit Lake that in order to increase production, Summit Lake would need to repave a substantial portion of the road leading to its winery at a cost of over $1 million." SAC ¶ 95. This allegation omits that the road is the *private* road that provides access to its property, not a public road. *See* RJN, Ex. A. This is not an "impact fee" and does not qualify as an "exaction" under *Nollan/Dolan*.

The *Nollan/Dolan* test is applicable to land-use exactions in which government conditions approval of a land-use permit on either the landowner's payment of money to the government or expenditure of money on the government's behalf. In contrast, Summit Lake was not required here to make improvements to public land, as in *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 602 (2013), or to pay a traffic impact fee used to improve the public road system, as in *Sheetz v. Cnty. of El Dorado, Cal.*, 601 U.S. 267, 272 (2024). Summit Lake was required to bring the private road that provides access to its winery up to minimum standards, ensuring it is safe, provides adequate access for emergency vehicles, and complies with state and federal law. This is not an "exaction" that implicates the nexus and proportionality test of *Nollan/Dolan*.

Furthermore, the Supreme Court has emphasized that "[a] predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 570 U.S. at 612. Regulating roads and requiring that they be built and maintained to specified engineering and design standards necessary for the public safety is a routine, valid exercise of a county's police power. *Glennon v. Zoning*

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Hearing Bd. of Lower Milford Twp.*, 529 A.2d 1171, 1174 (1987) ("We agree that the Township, under its police power to protect the health, safety and welfare of its residents, may set standards relating to the layout, design and grade of access streets as a condition of developing land in the Township"); *Petterson v. City of Naperville*, 9 Ill. 2d 233, 247, 137 N.E.2d 371, 379 (1956) ("The privilege of the individual to use his property as he pleases is subject always to a legitimate exercise of the police power under which new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare demands."). Summit Lake does not allege an "exaction" implicating *Nollan/Dolan*.

Finally, Summit Lake does not allege sufficient facts to support its claim that the required road improvements are not roughly proportional to the impact of its proposed use permit. Summit Lake alleges that bringing the private road into compliance with the County's RSS would cost approximately $1 million. SAC ¶ 648. Summit Lake alleges the cost, but not what the actual requirements are to bring the road serving its property into compliance with minimum safety standards. Without those facts, the Court cannot assess whether the requirements are roughly proportional to the proposed permit. *Iqbal*, 556 U.S. at 663; *see Newberg Crestview, LLC v. City of Newberg*, No. 3:22-CV-1289-AR, 2023 WL 8372167, at *6 (D. Or. Dec. 4, 2023) ("The court does not credit [plaintiff's] legal conclusion that the required improvements "exceed the roughly proportional impact of [plaintiff's development]." [Citation]. To state a land-use exaction takings claim, [plaintiff] must allege sufficient facts to allow the court reasonably to draw that inference.").

**b. Summit Lake Fails to State a Plausible Regulatory Takings Claim**

Plaintiffs' Tenth Claim alleges a regulatory taking under *Penn Central*. Plaintiffs allege "Napa County has enacted a series of ordinances which deprive Plaintiffs of the full use of their property." SAC ¶ 662. This describes a facial claim, which is time-barred. *See supra*, Section IV(H). To the extent Summit Lake brings an as-applied regulatory takings claim, it fails as a matter of law.

First, Summit Lake's challenge to the County's determination of its entitlements is time-barred. In March of 2019, Summit Lake applied for a use permit modification to expand wine production and other uses through the County's Code Compliance program. SAC ¶¶ 89–90. The County confirmed that Summit Lake, a small winery operating in the AW district pursuant a SWE, is not permitted to "conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." *See*

RENNE PUBLIC LAW GROUP
Attorneys at Law

NCC §§ 18.08.600, 18.20.020(I); *see* SAC ¶¶ 80–81, 91, Dkt. 70-12. An as-applied claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). Although Summit Lake was aware of the limitations of its SWE in 2019, if not before, it did not file this action until September 5, 2024, well after the two-year statute of limitations had expired. Accordingly, Summit Lake's as-applied regulatory takings claim is time-barred.

If Summit Lake's regulatory takings claim was not time-barred, it still fails under the *Penn Central* factors: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent.*, 438 U.S. at 124. "The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2020).

Under the first factor, the "economic impact" of a government action "is determined by comparing the total value of the affected property before and after the government action." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). Summit Lake's regulatory takings claim is premised on the erroneous assertion that it is or was at some point permitted to offer tours and tastings as a commercial service on its properties. However, the plain language of the County Code and Summit Lake's SWE demonstrates that it has never had a legal right to these uses. *See supra*, Section II(B)(1). Nor are the County's zoning regulations preempted by state law. *See supra*, Section IV(A)(2). Summit Lake has never been entitled to the uses it alleges the County has taken away. There is no comparison to be made because the County has not taken an action affecting the value of its property.

Summit Lake also alleges that the County took away its rights when it revised its "Winery Database." SAC ¶ 666. Any changes to the Winery Database had no effect on Summit Lake's legal entitlements. The Winery Database, which explains on its face that "[t]here may be omissions or errors within [the] document," is simply a reference tool designed to aggregate data for the Planning Commission; it does not have the force of law. *See* Dkts. 70-5, 70-6, 70-13. Summit Lake has the same allowed uses it has always had under its SWE.

Summit Lake further alleges that "[h]istorically, Napa County allowed Summit Lake to have guests at its property to consume wine, picnic, and sample wine, and allowed Summit Lake to sell wine

at its property." SAC¶ 82. The County Code has explicitly prohibited these uses for small wineries since 1980, four years before Summit Lake obtained its SWE. *See* NCC § 18.08.600; Dkt. 70-24, Ord. No. 629 (1980) at 2. Whether Summit Lake has previously operated in violation of the law is immaterial because uses that do not comply with the law cannot form the basis for a vested right. *See Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 793 (1976). Summit Lake cannot plausibly allege any "economic impact" or that it had any "objectively reasonable" investment-backed expectations because its land use entitlements have not changed. *See Colony Cove Props.*, 888 F.3d at 452.

The final factor "instructs that [a] taking may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Colony Cove*, 888 F.3d at 454 (quotations and citation omitted). Plaintiffs do not allege a physical invasion. The County's regulations preserve critical "economic and aesthetic attributes and assets," its "agriculture, watersheds and floodplain tributaries from fire, pollution and erosion," and its "general health, safety and welfare." NCC §§ 18.16.010, 18.20.020. All three factors cut in the County's favor.

**3. Summit Lake Fails to State a Plausible Equal Protection Claim**

Summit Lake alleges the County violates equal protection by prescribing different uses for the categories of "winery" and "small winery" in the County Code. SAC ¶¶ 677–93. A classification that does not involve fundamental rights or historically discriminated-against groups violates equal protection only if it is not rationally related to the furtherance of a legitimate governmental interest. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Here, there is no question that the applicable test is rational.

Plaintiffs' conclusory allegation that the County has "no rational basis" for distinguishing between large and small wineries does not state a plausible claim. *See Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301, 304–05 (9th Cir. 2020) (affirming the dismissal of equal protection claim because property owner's allegations were wholly conclusory and did not sufficiently show differential treatment); *Konarski v. City of Tucson*, 716 F. App'x 609, 613 (9th Cir. 2017) (same). The County's zoning ordinances establish uniform class-based requirements for wineries of varying scales, which is rationally related to the County's legitimate interest in the health, safety, and welfare of its residents. *See Christian Gospel Church*, 896 F.2d at 1225 (rejecting equal protection claim because city

had legitimate interest in preserving welfare and character of its neighborhoods). Regarding the SWE specifically, the County recognized that smaller wineries posed a reduced impact and reasonably exempted them from the more extensive review required for larger operations. However, when a winery seeks to expand its operations, as Summit Lake has, it is appropriately subject to the same permitting process required of all wineries, ensuring they do not negatively impact the County.

### J. Smith-Madrone's As-Applied Due Process, Takings, and Equal Protection Claim Fail as a Matter of Law

Unlike Summit Lake's SWE, Smith-Madrone's pre-WDO use permit explicitly allows winetasting "limited to a private, invitational only, basis." SAC ¶ 134; Dkt. 70-19 at 4. It is uncontested that Smith-Madrone is allowed to provide wine tastings and other "related accessory uses" within the constraints of its historical use permit. *See* NCC § 18.20.020(J); SAC ¶¶ 130–32; Dkt. 70-19. Smith-Madrone concedes that it has not sought or received a determination of its pre-WDO entitlements from the County. SAC ¶ 150. Nor has Smith-Madrone alleged that it has applied for any permit to expand its uses or that the County has brought any enforcement action against Smith-Madrone. On these facts, Smith-Madrone fails to state an as-applied due process, takings, or equal protection claim.

Plaintiffs' Fifth Claim alleges the County arbitrarily enforces its regulations and unconstitutionally restricts wineries' entitlements. However, Smith-Madrone does not allege that the County has taken any enforcement action against it. Smith-Madrone's assertion that its uses are different than what is reflected in the County's Winery Database (SAC ¶¶ 144–148) is immaterial because changes to the Winery Database have no bearing on a winery's legal rights.

Plaintiffs' Ninth Claim under *Nollan*/*Dolan* is not applicable to Smith-Madrone because it has not applied for a use permit. *Koontz*, 570 U.S. at 604 (*Nollan/Dolan* "protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits").

Plaintiffs' Tenth Claim under *Penn Central* fails for the same reasons Summit Lake's claim fails. Furthermore, the regulations that Plaintiffs challenge do not currently restrict Smith-Madrone's uses. Smith-Madrone alleges that it is "informed that Napa County now has a policy that some wineries are prohibited from private tours and tastings by appointment, are prohibited from marketing wine, and are prohibited from allowing the purchase and consumption of wine on their premises," which is true, in part,

as to wineries operating solely pursuant to a SWE. *See* SAC ¶ 143. However, Smith-Madrone does not operate pursuant to a SWE, and is not restricted by Code Sections 18.20.020(I) and 18.08.600, which only apply to small wineries operating pursuant to a SWE.

Other challenged sections of the Code, such as Sections 18.20.030(I)(5)(b) and 18.08.370, only apply to post-WDO wineries and any expansion of uses beyond those which were authorized before the enactment of the WDO. Although Smith-Madrone alleges that it "wishes to expand its operations" (SAC ¶ 654), it has never sought to expand its prior authorized uses under its 1973 pre-WDO permit. It is impossible for Smith-Madrone to allege any "economic impact" or "objectively reasonable" investment-backed expectations arising from Code provisions governing expanded operations for which Smith-Madrone has not even sought a permit. *See Colony Cove Props.*, 888 F.3d at 452.

Plaintiffs' Eleventh Claim alleges the County violates equal protection by prescribing different uses for small wineries. Smith-Madrone's as-applied equal protection claim also fails for the same reasons as Summit Lake. Smith-Madrone also is not a small winery and has not identified any similarly situated wineries operating pursuant to a pre-WDO use permit.

The SAC simply does not contain facts sufficient to support Smith-Madrone's claims.

### K. Plaintiffs Fourteenth Claim for Injunctive Relief Does Not State a Claim

Plaintiffs' Fourteenth Claim for injunctive relief (SAC ¶¶ 796-801) is not a "case" or "controversy" because "[d]eclaratory and injunctive relief are remedies, not causes of action." *Ajetunmobi v. Calrion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014).

## V. CONCLUSION

For the reasons discussed above, the County requests that the Court grant this motion to dismiss the First through Twelfth and Fourteenth Claims of the SAC without leave to amend.

Dated: August 26, 2026

RENNE PUBLIC LAW GROUP

By: *Ryan P. McGinley-Stempel*
Ryan P. McGinley-Stempel

Attorneys for Defendant
NAPA COUNTY

RENNE PUBLIC LAW GROUP
Attorneys at Law

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed By RENNE PUBLIC LAW GROUP. My business address is 350 Sansome Street, Suite 300, San Francisco, California 94104. I am over the age of eighteen and not a party to this action.

On August 26, 2026, I electronically filed the foregoing NAPA COUNTY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, and served a copy on all counsel of record via the CM/ECF System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 26, 2026 at San Francisco, California.

*/s/ Ashley D. Eugene*
Ashley D. Eugene

RENNE PUBLIC LAW GROUP
Attorneys at Law