Joseph M. Infante (pro hac admission)
infante@millercanfield.com
Stephen M. Ragatzki (pro hac admission)
ragatzki@millercanfield.com
**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333 / Fax: (616) 776-6322

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
Angela Han (Bar No. 317137)
ahan@fennemorelaw.com
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
Attorneys for Plaintiffs Hoopes Vineyard LLC, Summit Lake Vineyard, and Cook's Flat Associates a California Limited Partnership

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,

Plaintiffs,

v.

COUNTY OF NAPA,

Defendant.

Case No. 3:24-cv-6256-CRB

**CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

| | |
|---|---|
| Judge: | Hon. Charles R. Breyer |
| Hearing Date: | October 23, 2026 |
| Hearing Time: | 10:00 a.m. |
| Location: | Zoom Videoconference |

## TABLE OF CONTENTS

Page


ISSUES TO BE DECIDED .......... XI

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. FACTUAL AND PROCEDURAL BACKGROUND .......... 1

II. LEGAL STANDARD .......... 1

III. ARGUMENT .......... 1

- A. Napa Repeatedly Relies on Alleged Facts Outside the Pleadings. .......... 1
- B. Plaintiffs' Claims are Timely. .......... 3
  - 1. Plaintiffs' Preemption Claim is Timely. .......... 3
    - a. The Claim Accrued When Napa Applied Its New Interpretation, and the Discovery Rule Postpones Accrual in Any Event. .......... 3
    - b. Any Limitations Period Should Be Equitably Tolled. .......... 4
  - 2. The Facial § 1983 Claims Are Timely. .......... 5
- C. Plaintiffs Stated a Claim for Preemption. .......... 7
  - 1. Plaintiffs Stated a Claim for Preemption. .......... 7
  - 2. Napa's Authority to Regulate Land Use is not Unlimited. .......... 8
- D. Defendant's Monell Argument is Misplaced. .......... 10
- E. First Amendment Claims. .......... 11
  - 1. Napa's Ordinances and Ordinance Interpretations Restrict Fully Protected Expression as Well as Commercial Speech. .......... 11
  - 2. Napa Improperly Regulates Commercial Speech. .......... 14
  - 3. Napa's Central Hudson Argument is Superficial and Incorrect. .......... 15
  - 4. Napa Engages in Multiple Unconstitutional Prior Restraints. .......... 18
  - 5. Plaintiffs Sufficiently Pled an Infringement of Their Right to Petition. .......... 19
  - 6. Smith-Madrone has Adequately Alleged Restrictions on its Speech. .......... 19
- F. Napa Engages in a Per Se Violation of the Dormant Commerce Clause. .......... 21
- G. Plaintiffs' As-Applied Claims Are Adequately Pleaded. .......... 23
  - 1. Plaintiffs Pled Valid Takings Claims. .......... 23
    - a. Plaintiffs Sufficiently Pled a Nollan/Dolan Exaction. .......... 23
    - b. Plaintiffs Sufficiently Pled a Penn Central Regulatory Taking. .......... 24
  - 2. Plaintiffs Sufficiently Pled Arbitrary Enforcement. .......... 25
  - 3. Plaintiffs Have Stated a Vagueness Claim. .......... 26
- H. Plaintiffs Sufficiently Plead a Non-Delegation Claim. .......... 28

## TABLE OF AUTHORITIES
(continued)

**Page**

I. Plaintiffs Sufficiently Pled an Equal Protection Claim. .......... 29
J. Smith-Madrone's Claims Do Not Fail for Lack of an Applicable Restriction. .......... 30
K. Injunctive relief .......... 30
IV. CONCLUSION .......... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996) .......... 15, 16

*Akshar Global Investments Corp. v. City of Los Angeles*,
817 F. App'x 301 (9th Cir. 2020) .......... 29

*Alexis Bailly Vineyard, Inc. v. Harrington*,
482 F. Supp. 3d 820 (D. Minn. 2020) .......... 21, 22

*Am. Future Sys., Inc. v. Pennsylvania State Univ.*,
752 F.2d 854 (3d Cir. 1984) .......... 14

*Aptive Environmental, LLC v. Village of East Rockway, New York*,
2019 WL 3206132 (E.D.N.Y. July 16, 2019) .......... 17

*Arcara v. Cloud Books, Inc.*,
478 U.S. 697 (1986) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Avco Community Developers v. South Coast Regional Commission*,
17 Cal. 3d 785 (1976) .......... 25

*B&L Productions, Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024) .......... 12, 13

*Bd. of Trustees of State University of New York v. Fox*,
492 U.S. 469 (1989) .......... 14, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1

*Bronco Wine Co. v. Jolly*,
129 Cal. App. 4th 988 (2005) .......... 22

*C & A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994) .......... 22

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
14 F.3d 429 (9th Cir. 1993) .......... 17

## TABLE OF AUTHORITIES
(continued)

**Page**

*California Apartment Ass'n. v. City of Fremont*,
97 Cal. App. 4th 693 (2002)........................................ 8

*California Association for Preservation of Gamefowl v. Stanislaus County*,
2023 WL 1869010 (E.D. Cal. Feb. 9, 2023)........................................ 6

*California League of Food Producers v. Bonta*,
No. 3:26-cv-01675, 2026 WL 2055589 (S.D. Cal. July 14, 2026)........................................ 16, 17

*Californians for Equal Rts. Found. v. Cnty. of Alameda*,
No. A167472, 2024 WL 1189087 (Cal. Ct. App. Mar. 20, 2024)........................................ 7

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)........................................ 15, 16, 17, 18

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015)........................................ 22

*Citizens United v. Federal Election Comm'n*,
558 U.S. 310 (2010)........................................ 11, 20

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988)........................................ 18, 19, 30

*City of Oakland v. Superior Court*,
45 Cal. App. 4th 740 (1996)........................................ 9

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988)........................................ 10

*Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*,
683 F.2d 1229 (N.D. Cal. 1982)........................................ 23

*Dean Milk Co. v. City of Madison*,
340 U.S. 349 (1951)........................................ 22

*Desertrain v. City of Los Angeles*,
754 F.3d 1147 (9th Cir. 2014) (1983 ordinance)........................................ 6

*Diamond S.J. Enterprises Inc. v. City of San Jose*,
100 F.4th 1059 (9th Cir. 2024)........................................ 11, 19, 20

*Dolan v. City of Tigard*,
512 U.S. 374 (1994)........................................ 23, 24

## TABLE OF AUTHORITIES
(continued)

**Page**

*Edenfield v. Fane*,
507 U.S. 761 (1993) .......... 14, 15, 17, 18

*Eubank v. City of Richmond*,
226 U.S. 137 (1912) .......... 28

*FF Cosmetics FL Inc. v. City of Miami Beach, Florida*,
129 F. Supp. 3d 1316 (S.D. Fla. 2015), *aff'd*, 866 F.3d 1290 (11th Cir. 2017) .......... 14, 15

*Flynt v. Shimazu*,
940 F.3d 457 (9th Cir. 2019) .......... 5, 22

*Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*,
504 U.S. 353 (1992) .......... 22

*Free Speech Coalition, Inc. v. Paxton*,
606 U.S. 461 (2025) .......... 13

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990) .......... 18

*Gammoh v. City of La Habra*,
395 F.3d 1114 (9th Cir. 2005) .......... 26

*In re Geneal Motors LLC CP4 Fule Pump Litigation*,
393 F.Supp.3d 871 (N.D. Cal. 2019) .......... 4

*Goss v. City of Little Rock*,
90 F.3d 306 (8th Cir. 1996) .......... 24

*Granholm v. Heald*,
544 U.S. 460 (2005) .......... 21, 22

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .......... 26, 27, 28

*Guillory v. Orange County*,
731 F.2d 1379 (9th Cir. 1984) .......... 10

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
494 F.3d 1203 (9th Cir. 2007) .......... 2

*AE ex rel. Hernandez v. County of Tulare*,
666 F.3d 631 (9th Cir. 2012) .......... 11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Holman v. Cnty. of Butte*,
68 Cal. App. 5th 189 (2021) .... 4

*Isaacson v. Brnovich*,
610 F. Supp. 3d 1243 (D. Ariz. 2022) .... 4

*Junior Sports Mags. Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) .... 17

*Kev, Inc. v. Kitsap Cty.*,
793 F.2d 1053 (9th Cir. 1986) .... 26, 28

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .... 1, 2, 24, 26

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) .... 23

*Lee v. Bank of Am.*,
27 Cal. App. 4th 197 (1994) .... 4

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .... 1

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) (1973 statute) .... 6

*Metro Lights, L.L.C. v. City of Los Angeles*,
551 F. 3d 898 (9th Cir. 2009) .... 16

*NAACP v. Button*,
371 U.S. 415 (1963) .... 14

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) .... 26

*Neighbors in Support of Appropriate Land Use v. County of Tuolumne*,
157 Cal. App. 4th 997 (2007) .... 29

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .... 21

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .... 6

## TABLE OF AUTHORITIES
(continued)

**Page**

*Nollan v. Cal. Coastal Comm'n*,
483 U.S. 825 (1987) .......... 23

*O'Connell v. City of Stockton*,
162 P.3d 583 (Cal. 2007) .......... 7

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) .......... 10, 11

*Riley v. National Fed. of the Blind of North Carolina, Inc.*,
487 U.S. 781 (1988) .......... 11, 20

*Rocky Patel Premium Cigars, Inc. v. Bonta*,
No. 8:25-cv-02244, 2025 WL 3903972 (C.D. Cal. Dec. 23, 2025) .......... 13

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) .......... 15

*Sacramentans for Fair Planning v. City of Sacramento*,
37 Cal. App. 5th 698 (2019) .......... 29

*Scheer*. *Barancik v. County of Marin*,
872 F.2d 834 (9th Cir. 1988) .......... 6

*Scheer v. Kelly*,
817 F.3d 1183 (9th Cir. 2016) .......... 4, 5, 6

*Schmid v. County of Sonoma*,
No. 22-16812, 2024 WL 743774 (9th Cir. Feb. 23, 2024) .......... 11

*Sheetz v. County of El Dorado*,
601 U.S. 267 (2024) .......... 23, 24

*Sherman v. Town of Chester*,
752 F.3d 554 (2d Cir. 2014) .......... 6

*Shuttlesworth v. City of Birmingham*,
394 U.S. 147 (1969) .......... 18

*Soranno's Gasco, Inc. v. Morgan*,
874 F.2d 1310 (9th Cir. 1989) .......... 23

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 15

## TABLE OF AUTHORITIES
(continued)

**Page**


*Spirit of Aloha v. County of Maui*,
49 F.4th 1180 (9th Cir. 2022)........................................................................................ 18

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)........................................................................................ 29

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995).................................................................................... 3, 24

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002) ........................................................................................................ 25

*Talk of the Town v. Department of Finance & Business Services ex rel. City of Las Vegas*,
343 F.3d 1063 (9th Cir. 2003)................................................................................. 13, 18

*Temple of 1001 Buddhas v. City of Fremont*,
588 F. Supp. 3d 1010 (N.D. Cal. 2022) ........................................................................ 11

*Thomas v. Chicago Park Dist.*,
534 U.S. 316 (2002) ........................................................................................................ 18

*Tonkin Distrib. Co. v. Collins*,
50 Cal. App. 2d 790 (1942)............................................................................................ 14

*Travis v. County of Santa Cruz*,
33 Cal. 4th 757 (2004) ...................................................................................................... 4

*Tryon v. DBS Enterprises, Inc.*,
2006 WL 234728 (Cal. Ct. App. Feb. 1, 2006) ............................................................... 8

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. 1999).................................................................................... 4, 24

*Uber Technologies, Inc. v. City of Seattle*,
168 F.4th 1202 (9th Cir. 2026)....................................................................................... 12

*Urban Habitat Program v. City of Pleasanton*,
164 Cal. App. 4th 1561 (2008).......................................................................................... 4

*Utah Licensed Beverage Ass'n v. Leavitt*,
256 F.3d 1061 (10th Cir. 2001)........................................................................ 16, 17, 18

*Valle Del Sol Inc. v. Whiting*,
709 F. 3d 808 (9th Cir. 2013)......................................................................................... 16

## TABLE OF AUTHORITIES
(continued)


Page

*Village of Euclid v. Ambler Realty Co.*,
272 U.S. 365 (1926) .......... 25

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) .......... 1, 3

*Watchtower Bible v. Village of Stratton*,
536 U.S. 150 (2002) .......... 16

*Williams v. Horvath*,
16 Cal. 3d 834 (1976) .......... 30

*Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*,
2024 WL 1152556 (W.D. Mich. Mar. 18, 2024) .......... 6

*Wineries of the Old Mission Peninsula Association v. Peninsula Township*,
2022 WL 2155097 (W.D. Mich. June 3, 2022) .......... 22

*Wiseman Park, LLC v. S. Glazer's Wine & Spirits, LLC*,
16 Cal. App. 5th 110 (2017) .......... 8

*Young v. City of Simi Valley*,
216 F.3d 807 (9th Cir. 2000) .......... 29

**Statutes**

BPC § 23356.1 .......... 7, 8, 9, 13

BPC § 23358 .......... 7, 8, 9

BPC § 23386 .......... *passim*

BPC § 23790 .......... 9

Cal. Civ. Proc. Code § 335.1 .......... 3

Cal. Civ. Proc. Code § 338 .......... 3, 4

Cal. Code Regs., Title 4, § 53 .......... *passim*

Cal. Gov. Code § 65852 .......... 8, 29

**Court Rules**

Fed. R. Civ. P. 12(d) .......... 1, 2, 3

## TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 56 .......... 2

**Other Authorities**

27 C.F.R. § 4.39 .......... 8

27 C.F.R. § 4.64 .......... 8

27 CFR § 24 .......... 8

Cal. Const. art. XI, § 7 .......... 7

Cal. Const. art. XX, § 22 .......... 8

## ISSUES TO BE DECIDED

1. Whether Napa County's Motion to Dismiss improperly relies on evidence outside of the pleadings.
2. Whether Plaintiffs' state-law preemption claim is time-barred.
3. Whether Plaintiffs state a state-law preemption claim.
4. Whether Plaintiffs state a federal-law preemption claim.
5. Whether Plaintiffs state a claim under *Monell*.
6. Whether Plaintiffs state a facial claim under the First Amendment.
7. Whether Plaintiffs state a content-based speech restriction claim under the First Amendment.
8. Whether Plaintiffs state a prior restraint claim under the First Amendment.
9. Whether Summit Lake states an as-applied claim under the First Amendment.
10. Whether Smith Madrone states an as-applied claim under the First Amendment.
11. Whether Plaintiffs state a vagueness claim under the Fourteenth Amendment.
12. Whether Plaintiffs state a non-delegation claim under the Fourteenth Amendment.
13. Whether Plaintiffs state a claim under the Dormant Commerce Clause.
14. Whether Plaintiffs' as-applied takings, due process, and equal protection claims are time-barred
15. Whether Summit Lake states an as-applied takings claim under the Fifth Amendment.
16. Whether Summit Lake states an as-applied substantive due process claim under the Fourteenth Amendment.
17. Whether Summit Lake states an as-applied equal protection claim under the Fourteenth Amendment.
18. Whether Smith-Madrone states an as-applied takings claim under the Fifth Amendment
19. Whether Smith-Madrone states an as-applied substantive due process claim under the Fourteenth Amendment
20. Whether Smith-Madrone states an as-applied equal protection claim under the Fourteenth Amendment.
21. Whether Plaintiffs Sufficiently Pled an Infringement of Their Right to Petition
22. Whether Plaintiffs state a derivative claim for injunctive relief.

## SUMMARY OF THE ARGUMENT

**Extrinsic Facts.** Under Rule 12(b)(6), the Court's review is confined to the Second Amened Complaint's ("SAC") allegations, incorporated documents, and matters subject to judicial notice, and a defendant may not supply disputed facts from extrinsic documents to defeat an adequately pleaded claim. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99, 1003 (9th Cir. 2018). Napa's Motion violates this rule repeatedly: it asserts a 40-ADT traffic threshold appearing nowhere in the SAC and contradicted by its allegation of "negligible" impact (SAC ¶¶ 95–97), characterizes Summit Lake's road as "purely private" based solely on a deed attached to its Request for Judicial Notice, and asserts Napa has never enforced against Smith-Madrone despite the SAC's allegations of undercover investigations. (SAC ¶¶ 423, 777–785.) The Court should disregard these facts or convert the Motion under Rule 12(d) and permit discovery under Rule 56(d).

**Timeliness.** A claim may be dismissed as time-barred only where the statute's running is "apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010). Napa's arguments mistake as-applied challenges for facial ones. An as-applied challenge accrues "when the plaintiff knows or has reason to know of the injury," not on the date of enactment, *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999), and Plaintiffs allege they did not learn the scope of Napa's reinterpretation until the *Hoopes* litigation revealed it between 2022 and 2024. (SAC ¶ 352.) *Action Apartment Ass'n v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2007), governs only facial challenges "premised on injuries to property rights," not the "ongoing harms" of an undefined, standardless scheme. *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016). Napa's continuing application of its ordinances including 2019 determinations, a 2021 road demand, and a 2023 "definitive position," is a continuing violation. *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*, 2024 WL 1152556, at *2 (W.D. Mich. Mar. 18, 2024).

**Preemption.** California law authorizes Type 02 licensees to sell wine for on-premises consumption, conduct tastings, and instruct consumers, Bus. & Prof. Code §§ 23358(a)(3), 23356.1, 23386, and permits local governments only to "restrict, but not eliminate" those privileges. § 23358(e). Napa's position that small wineries "can't have hospitality" (SAC ¶ 351) eliminates rather than restricts

those rights, and its suggested "cure," a permit process requiring surrender of existing entitlements at a cost of $2 million, is illusory. (SAC ¶¶ 93, 100, 101, 128, 645.)

***Monell.*** Napa concedes its Motion does not reach Plaintiffs' facial claims. (Dkt. 99 at 9.) The as-applied claims rest on a final policymaker's decision: the Board of Supervisors delegated authority to the Director of Planning to determine winery entitlements. (SAC ¶¶ 399, 406.) This is precisely the delegation *Schmid v. County of Sonoma*, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024), found lacking. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

**First Amendment.** Napa's contention that it regulates only "non-expressive conduct" fails because it prohibits fully protected expression, *Citizens United v. FEC*, 558 U.S. 310, 365–66 (2010), and because a winetasting is a statutorily defined presentation for consumer education, not incidental conduct. Cal. Code Regs. tit. 4, § 53. Napa singles out wineries and particular expressive activity, distinguishing *B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 115–16 (9th Cir. 2024), and prohibits solicitation, advertising, and consumer education which is commercial speech Napa cannot restrict without satisfying *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Napa cannot meet this burden as it has built no evidentiary record and permits unlimited retail visits while capping tastings. *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

**Prior Restraint.** Napa's marketing-event process requires officials to evaluate an event's "intent" and "non-wine-related content" before permitting it. NCC § 18.08.370. Unlike the content-neutral standard in *Diamond S.J. Enterprises, Inc. v. City of San Jose*, 100 F.4th 1059, 1067–68 (9th Cir. 2024), Napa's own officials admit the standard is applied inconsistently and can be reversed whenever the Board's composition changes. This is the "unbridled discretion"" *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988), forbids.

**Right to Petition.** NCC §§ 1.30.030(A) and 1.30.040 require indemnification against Napa's own unlawful conduct regardless of the applicant's consent, a non-waivable exaction lacking the "essential nexus" and "rough proportionality" *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987), requires.

**Smith-Madrone's Speech Claims.** Napa addresses only whether a numeric cap limits private tastings, ignoring Smith-Madrone's broader claims regarding compelled signage, marketing, and prohibited gatherings, none of which turns on its permit type. Having represented to this Court and the Ninth Circuit that Smith-Madrone is unrestricted, Napa may not simultaneously enforce the restrictions it disclaims. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

**Dormant Commerce Clause.** A law favoring in-state economic interests is facially discriminatory and "virtually per se invalid." *Granholm v. Heald*, 544 U.S. 460, 476 (2005). Napa's 75%-local-grape rule is indistinguishable from sourcing mandates federal courts have repeatedly struck down, *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 & n.4 (1951); *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*, 2022 WL 2155097, at *9 (W.D. Mich. June 3, 2022), and *Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988 (2005), a labeling case, is inapplicable.

**As-Applied Takings, Due Process, and Equal Protection.** Napa does not move against Plaintiffs' claim that their licenses and business goodwill are protected property, *see Dash, Inc. v. Alcoholic Beverage Control Appeals Board*, 683 F.2d 1229, 1233 (N.D. Cal. 1982), conceding that theory has been sufficiently pled. Summit Lake's exaction claim satisfies *Nollan* and *Dolan* because Napa's own records tie its road demand to third-party traffic, and the framework reaches monetary exactions regardless of the road's ownership. *Sheetz v. County of El Dorado*, 601 U.S. 267, 275–80 (2024). Summit Lake's regulatory-takings and arbitrary-enforcement claims survive because the SAC alleges recognized entitlements for decades before Napa's Winery Database silently stripped them, *see Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989), and Plaintiffs' equal protection claim rests on specific comparators, not conclusory allegations. *Akshar Global Investments Corp. v. City of Los Angeles*, 817 F. App'x 301 (9th Cir. 2020).

**Vagueness and Non-Delegation.** Napa cannot identify what "tasting," "visitor," or "marketing event" mean and its own records repeatedly admit as much. Napa separately violates the non-delegation doctrine by conditioning permit approval on third-party consent. *Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912).

**Injunctive Relief.** Plaintiffs do not oppose dismissal of this claim as a standalone cause of action, without prejudice to seeking injunctive relief as a remedy on the remaining claims.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Second Amended Complaint ("SAC") (Dkt. 70) encompasses 801 paragraphs and 54 exhibits. As this Court recognizes, "[t]his case involves serious constitutional and statutory questions." (Dkt. 48, p. 2.) Plaintiffs discuss specific allegations below where necessary.

## II. LEGAL STANDARD

A plaintiff need only to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This occurs when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). When a defendant invokes the statute of limitations, a claim may only be dismissed under Rule 12(b)(6) where the running of the statute is apparent on the face of the complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

## III. ARGUMENT

### A. Napa Repeatedly Relies on Alleged Facts Outside the Pleadings.

Rule 12(b)(6) confines review to the complaint's allegations, documents incorporated therein by reference, and matters subject to judicial notice. Judicial notice and characterizations of extrinsic documents should not "defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id*. at 999. Napa's Motion rests several of its central arguments on facts that appear nowhere in the SAC.

In one instance, Napa asserts that "Summit Lake's application for a use permit proposed a cumulative traffic demand along the roadway greater than forty Average Daily Traffic," citing Dkt. 70-50. (Dkt 99, at 19-20.) The SAC, however, states that Summit Lake's roadway impact is

"negligible," (SAC ¶¶ 95–97), and Napa's cited exhibit establishes only that the Road and Street Standards (the "RSS") are triggered by an application "resulting in an increase in average daily trips." (Dkt. 70-50 at 7.) The exhibit does not establish that Summit Lake's application crossed that threshold. Napa also asserts Summit Lake "walked away rather than comply" and that its 2019 application "indicated an anticipated increase in customers visiting the property" (Dkt. 99 at 17, 19 (citing SAC ¶¶ 88–91, 96)). The SAC states neither. It alleges a planned "wine production increase" (SAC ¶ 90), that the County deemed the road cost "prohibitive" and "threatened" to close the application (SAC ¶¶ 103, 105), and that Summit Lake offered to "abandon any requested increased production" while the County insisted on the road improvement, (SAC ¶ 101).

Napa's exaction defense relies on factual assertions drawn entirely from a deed attached to Defendant's Request for Judicial Notice: that the access road "is a private road," that it carries "a private easement for non-exclusive right of way shared between property owners," and that "[t]he easement does not include the County or the general public." (Dkt 99 at 20.) None of this appears in the SAC, which states that the road "serves numerous other properties and businesses" (SAC ¶ 96). The Court may take notice that the recorded deed exists, "[b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999. Napa also asserts that Summit Lake would need to improve "the winery's access road to the nearest public roadway" (Dkt 99 at 20 (purporting to cite SAC ¶ 95)), but Paragraph 95 states only that the County demanded that Summit Lake "repave a substantial portion of the road … at a cost of over $1 million." The proportionality of the demanded improvement is a contested fact.

Napa also asserts that it has not "brought any enforcement actions against Smith-Madrone." (Dkt 99 at 20.) But the SAC states that following Smith-Madrone's efforts to intervene in the state action, the County dispatched undercover agents to Smith-Madrone's property "seeking to 'find' ordinance violations." (SAC ¶¶ 423, 777–785.)

The Court should not consider these extrinsic and disputed facts. If it does, however, the Motion must be treated as one for summary judgment under Rule 56 with Plaintiffs given time for additional discovery and, then, with "[a]ll parties … given a reasonable opportunity to present all the material that is pertinent." Fed. R. Civ. P. 12(d); *Hamilton Materials, Inc. v. Dow Chem. Corp.*,

494 F.3d 1203, 1207 (9th Cir. 2007). Plaintiffs have already obtained some discovery on these issues, including discovery establishing the veracity of Plaintiffs' claims.

**B. Plaintiffs' Claims are Timely.**

A claim may be dismissed as time-barred only where "the running of the statute is apparent on the face of the complaint." *Von Saher*, 592 F.3d at 969. Because accrual and tolling often turn "on matters outside the pleadings," the issue "is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995).

Plaintiffs filed the complaint on September 5, 2024. Napa makes two limitations arguments. One is directed at the state-law preemption claim (Cal. Civ. Proc. Code § 338, three years) and the other is directed at the facial takings, due process, and equal protection claims (Cal. Civ. Proc. Code § 335.1, two years). Both fail for a common reason: Plaintiffs challenge Napa's recent application and interpretation of its Code, not the enactment of decades-old ordinances, and an as-applied challenge does not accrue at enactment. Each of Napa's arguments also fails on its own terms.

**1. Plaintiffs' Preemption Claim is Timely.**

This Court should reject Napa's timeliness argument because: (a) the restrictions at issue are not contained in any ordinance but are recent inventions of Napa County that did not accrue until Plaintiffs learned they were being applied them and (b) even if Plaintiffs' claims accrued more than three years ago, they should be equitably tolled.

**a. The Claim Accrued When Napa Applied Its New Interpretation, and the Discovery Rule Postpones Accrual in Any Event.**

Cal. Civ. Proc. Code § 338(a) sets a 3-year limitations period. But it was not until recently that Napa changed its historical interpretation of its ordinances to conflict with California law and applied that new interpretation to Plaintiffs. Plaintiffs' preemption claim challenges these non-codified restrictions. For example, Plaintiffs allege that "there is no Napa County ordinance which dictates" the number of customers a winery may see "per day, week or year," "[t]he number of employees," "[t]he number of 'visitors' allowed at a winery, or that defines what a visitor 'is,'" "[t]he number of 'marketing events,'" "[w]hat winery operations are allowed," or "[w]hat business meetings and events can take place…." (SAC ¶¶ 729–730.) A challenge to an uncodified restriction cannot "accrue" at "enactment," because there is no enactment. Napa relies on *Action Apartment*,

but that case "only applies to facial challenges" to an ordinance. *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016). *Travis v. County of Santa Cruz*, confined that rule to cases where defect is in the ordinance itself, not in the manner in which it is being applied. 33 Cal. 4th 757, 768 (2004).

Here, Plaintiffs' as-applied preemption challenge is timely. An as-applied challenge accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action," not on the date a definition was enacted. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Even an otherwise time-barred measure "can be challenged under new factual circumstances." *Urban Habitat Program v. City of Pleasanton*, 164 Cal. App. 4th 1561, 1577 (2008).

"It is well settled—perhaps because it is merely common sense—that a cause of action does not begin to 'accrue' until after some wrongful act is done." *Lee v. Bank of Am.*, 27 Cal. App. 4th 197, 205 (1994). "The discovery rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Holman v. Cnty. of Butte*, 68 Cal. App. 5th 189, 198 (2021). The discovery rule applies to Cal. Civ. Proc. Code § 338(a). *See id.* at 194. Plaintiffs have pled when they discovered the claim and that they could not have discovered the claims earlier because they were based on changing interpretations by Napa. Further, because definitional sections are not operative law, but instead only illustrate how to interpret the substantive provisions of operative law, *Isaacson v. Brnovich*, 610 F. Supp. 3d 1243, 1252 (D. Ariz. 2022), Plaintiffs could not have discovered their cause of action until Napa treated its definitions as operative law and applied them to Plaintiffs.

**b. Any Limitations Period Should Be Equitably Tolled.**

The limitations period should be equitably tolled regardless due to Napa's conduct. In order to "toll the statute of limitations through the discovery rule, a plaintiff must plead facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence in investigating." *In re Geneal Motors LLC CP4 Fule Pump Litigation*, 393 F.Supp.3d 871, 884 (N.D. Cal. 2019) (statute of limitations tolled where plaintiffs could not have discovered claims earlier.) Plaintiffs alleged that they "were not aware of the interpretation and enforcement by Napa County described above until, at the earliest, when Napa County filed the Napa County v. Hoopes Lawsuit on October 20, 2022; however, the scope of the new policies and

interpretations was not revealed until deposition and trial testimony conducted between June 2023 and February 2024." SAC ¶ 352; *see also*, *id*., ¶¶ 43, 67, 73, 86, 109, 129, 246-48, 261-62, 291, 300-309, 324-34, 351-52, 408, 411, 533, 539, 541, 615, 635, 670, 747-53. Plaintiffs also allege the "inability to have made earlier discovery despite reasonable diligence" and that Plaintiffs operated for decades without objection. *Id*., ¶¶ 42, 82-83, 141-42.

As an example, in the *Hoopes* lawsuit, Napa took the position that Plaintiffs had to obtain a permit from Napa to take advantage of California's "Picnic Bill." *Id*., ¶ 750. But a 2010 document stated that "no Modification would be necessary" where "on-site consumption is proposed to occur entirely within existing tasting room space." *Id*., ¶ 751; Dkt. 70-53. Therefore, before the *Hoopes* lawsuit there was no need for Plaintiffs to bring a preemption claim because permissions in the "Picnic Bill" were automatically applied to all wineries. *Id*., ¶ 753.

**2. The Facial § 1983 Claims Are Timely.**

Napa contends that, "[t]o the extent" Plaintiffs' Fifth, Ninth, Tenth, and Eleventh Claims "assert facial challenges to County ordinances," those claims accrued at enactment. (Dkt. 99 at 22.) Napa is wrong that all facial challenges accrue at enactment. *See Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) (discussing difference between enactment and accrual in facial challenges).

Napa overreads *Action Apartment*. The Ninth Circuit rejected the contention "that *Action Apartment's* holding applies to all facial challenges to statutes and ordinances, not just these premised on injuries to property rights." *Scheer*, 817 F.3d at 1187. The enactment-accrual rule applies only where "the basis of a facial challenge is that the very enactment of the statute," creating "a single harm, measurable and compensable when the statute is passed." *Id*. Plaintiffs do not allege that the ordinances, upon enactment, reduced their property values or transferred a property interest. They allege that the County administers an undefined, standardless scheme and enforces it in an arbitrary manner. Plaintiffs "were not aware of the interpretation and enforcement by Napa County described above until, at the earliest, when Napa County filed the Napa County v. Hoopes Lawsuit on October 20, 2022; however, the scope of the new policies and interpretations was not revealed until deposition and trial testimony conducted between June 2023 and February 2024." (SAC ¶ 352.) *Scheer* holds that such claims are not governed by the enactment-accrual rule: "[a]n

unconstitutionally vague statute, for instance, may pose 'ongoing harms' to those who are unsure if their actions fall within its ambit." 817 F.3d at 1187. That is precisely this case, where the County concedes it enforced undefined standards.

Napa's other authorities also do not survive *Scheer*. *Barancik v. County of Marin*, 872 F.2d 834 (9th Cir. 1988), predates *Scheer* by nearly three decades, and *Scheer* is the Ninth Circuit's authoritative statement that the enactment-accrual rule reaches only facial challenges "premised on injuries to property rights." 817 F.3d at 1187. And *California Association for Preservation of Gamefowl v. Stanislaus County*, 2023 WL 1869010 (E.D. Cal. Feb. 9, 2023), is an unpublished decision that, like *Action Apartment* itself, addresses the accrual of facial challenges premised on enactment; it does not reach as-applied claims. To the extent *Gamefowl* is read to extend enactment accrual beyond property-value harms, it cannot be reconciled with *Scheer*.

Napa's argument "also runs into a thicket of justiciability problems." *Scheer*, 817 F.3d at 1188. Many wineries did not exist within the ordinances' enactment. Under Napa's theory, "[t]heir cases would be time-barred before they could even be brought, an absurd result." *Id.* Yet the Ninth Circuit "regularly hears—and upholds—facial challenges to decades-old statutes, and has done so in the years since *Action Apartment*." *Id.*; *see also New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 11 (2022) (striking a law on the books "at least since the early 20th century"); *McCormack v. Herzog*, 788 F.3d 1017, 1029–30 (9th Cir. 2015) (1973 statute); *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1149 (9th Cir. 2014) (1983 ordinance).

Finally, the County's interpretations and enforcement form a continuing violation, and Plaintiffs' claims are timely so long as one act falls within the limitations period. A regulatory injury may be a "death by a thousand cuts," and "so long as one of those cuts occurred within [the limitations period], [the] claim is not time barred." *Sherman v. Town of Chester*, 752 F.3d 554, 566–67 (2d Cir. 2014). On facts closely analogous to these, a court held that decades-old winery ordinances operated "as a continuing violation." *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*, 2024 WL 1152556, at *2 (W.D. Mich. Mar. 18, 2024) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time

merely because no one challenges it within [the limitations period] of its enactment.")). *See also* *Californians for Equal Rts. Found. v. Cnty. of Alameda*, No. A167472, 2024 WL 1189087, at *4 (Cal. Ct. App. Mar. 20, 2024) (explaining state actors have an ongoing obligation to confirm their policies do not violate equal protection (citing *Fisher v. Univ. of Texas*, 579 U.S. 365, 388 (2016)). The County's continuing application of its ordinances to Plaintiffs, through the 2019 determinations, the 2021 road demand, the 2023 "definitive position," and the ongoing threat of enforcement independently renders their claims timely.

**C. Plaintiffs Stated a Claim for Preemption.**

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, § 7. An ordinance conflicting with a general state law is void. *O'Connell v. City of Stockton*, 162 P.3d 583, 587 (Cal. 2007). Napa's interpretations and enforcement contradicts state and federal law.

**1. Plaintiffs Stated a Claim for Preemption.**

Plaintiffs hold Type 02 licenses issued by California. Dkt. 70, ¶¶ 8-9. Holders may "[s]ell wine to consumers for consumption on the premises," BPC § 23358(a)(3), "conduct winetastings of wine produced or bottled by, or produced and packaged for, the licensee, either on or off the winegrower's premises," BPC § 23356.1, and give away samples of wine to consumers. BPC § 23386. Winetastings may be free or for a fee. Cal. Code Regs., Title 4, § 53(1)(a). Plaintiffs and their predecessors-in-interest have historically provided on-premises consumption. *Id.*, ¶¶ 82-83, 141-142. Yet Napa recently interpreted its ordinances to mean that "[small wineries] can't have hospitality. You can't have people onto the grounds, tasting wines, buying merchandise …." *Id.*, ¶ 351. Napa's recent interpretations are preempted.

*First*, Napa's ban on tastings, on-premises consumption, and hospitality at small wineries conflicts with BPC §§ 23358(a)(2), (3), BPC § 23356.1, Cal. Code Regs., Title 4, § 53(a)(1), and BPC § 23386(a) because it prohibits what state law allows.

*Second*, Napa's new interpretation of the term "tour" from NCC 18.08.600(C) precludes customers from "walking the grounds" at a winery, which means customers cannot walk into a winery, which conflicts with California law allowing various activities on a winery premises. *See*

BPC §§ 23358(a)(2), (3), BPC § 23356.1, Cal. Code Regs., Title 4, § 53(a)(1), BPC § 23386(a).

*Third*, Napa's food service ban conflicts with BPC §§ 23358(a)(4) and 23038, which allow California wineries to operate a bona fide eating place. (SAC ¶¶ 232, 727). Similarly, wineries may provide "small amounts of bread, crackers, cheeses or nuts to clear the taste buds of the participants between successive samples of wine during a winetasting." Cal. Code Regs., Title 4, § 53.

*Fourth*, while the NCC is silent on the number of daily visitors, cars, or marketing events allowed, (SAC ¶ 729), Napa's imposed daily-visitor limitation conflicts with Cal. Code Reg. § 1.1.8 *et seq*. and § 1004.1, which require uniformity in building codes and sets occupancy. It also conflicts with Cal. Gov. Code § 65852 which requires uniform zoning. Napa's imposes "unique requirements on individual establishments licensed to sell alcoholic beverages [which] contravene the goal of uniform administration and enforcement of the state's liquor laws." *Tryon v. DBS Enterprises, Inc.*, 2006 WL 234728, * 8 (Cal. Ct. App. Feb. 1, 2006) (unpublished). This also implicates California's decision to preempt the field of building standards. *California Apartment Ass'n. v. City of Fremont*, 97 Cal. App. 4th 693, 697 (2002).

*Fifth*, Napa regulates Plaintiffs' labeling, including the depiction of animals on wine labels. Dkt. 70, ¶¶ 743-744. However, wine labeling is governed by federal law, and 27 C.F.R. § 4.39 and 27 C.F.R. § 4.64 do not prohibit the use of animals on labels. Napa's regulation of wine production, storage, and non-taxpaid removal of wine are similarly preempted as federal law both occupies the field and directly preempts Napa from regulating in this area. *See* 27 C.F.R. Part 24, Subpart F (Production of Wine), Subpart L (Storage, Treatment and Finishing of Wine) and Subpart N (Removal, Return and Receipt of Wine).

**2. Napa's Authority to Regulate Land Use is not Unlimited.**

Napa argues that because it retains authority in the land-use context, it may regulate the sale of alcohol at the local level. (Dkt. 99 at 7-8). But "California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State…." Cal. Const. art. XX, § 22. Local zoning laws "may have some indirect impact on the sale of alcoholic beverages if they do not seek to control sales of alcohol." *Wiseman Park, LLC v. S.*

*Glazer's Wine & Spirits, LLC*, 16 Cal. App. 5th 110, 127 (2017). For example, an ordinance containing standards to abate criminal activity surrounding alcohol establishments was permissible because they were not targeted at how alcohol was sold or to whom, but at curtailing criminal activity after the sale. *City of Oakland v. Superior Court*, 45 Cal. App. 4th 740 (1996). By contrast, Napa regulates how and to whom alcohol may be sold, which is beyond its power.

For example, BPC § 23358(e) states that municipalities, in exercising land-use authority, "may restrict, but not eliminate, privileges afforded by these sections." That section authorizes a winegrower to sell wine for consumption on the premises with no restriction on how the wine is served. (§ 23358(a)(3)) It also permits a winery to operate a bona fide eating place and to serve wine at private events (§ 23358(a)(4), (b)). Napa prohibits what the statute authorizes: "[small wineries] can't have hospitality. You can't have people onto the grounds, tasting wines, buying merchandise …." Dkt. 70, ¶ 351.

Napa's rejoinder is that nothing is eliminated because Plaintiffs may apply for additional uses. (Dkt. 99 at 7.) But the permit "path" is illusory because to obtain a permit, Napa requires a small winery to "re-entitle as a winery," surrendering every existing entitlement, including unlimited retail sales and exemption from the 75% grape-source rule, to a new discretionary permit that "may or may not issue." (SAC ¶¶ 93, 100, 645.) Napa has also attached a prohibitive price to that path as was made clear when Summit Lake was required to spend $2 million on road improvements. (SAC ¶¶ 101, 128.) A permit process whose precondition is the forfeiture of rights and prohibitive costs does not "restrict" a state-licensed privilege—it eliminates it.

Finally, while Napa hangs its defense on the language in BPC § 23358(e) allowing restriction of just the permissions therein, Plaintiffs allege BPC § 23356.1, Cal. Code Regs., Title 4, § 53, and BPC § 23386 also preempt Napa's restrictions, and none of those sections permit local governments to impose their own restrictions. While Napa references BPC § 23790 which states that "[n]o retail license shall be issued … where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city," § 23790 by its terms defers only to a "valid zoning ordinance." An ordinance or interpretation that is preempted by state

law is not "valid." And Napa likely waived any objection when it did not object to the issuance of the permits when given the opportunity. (*See e.g.* SAC, ¶¶ 47-49, 56-60.)

**D. Defendant's *Monell* Argument is Misplaced.**

Plaintiffs base their claims "directly on alleged unconstitutional policies or customs of the local governmental entities and not on the doctrine of respondeat superior." *Guillory v. Orange County*, 731 F.2d 1379, 1381–82 (9th Cir. 1984). In *Guillory*, the plaintiff alleged that government employees acted under "policies and customs established by 'directive and/or practice' of the governmental entity defendants." *Id*. at 1382.The Ninth Circuit held these allegations "sufficient to give rise to a cause of action under the Civil Rights Act," and concluded the district "court erred in dismissing the local governmental entity defendants." *Id*.

Napa concedes that Plaintiffs' facial claims "do not implicate *Monell*." (Dkt. 99 at 25.) Napa's argument is therefore directed only at Plaintiffs' as-applied claims. Those claims, too, rest on official policy and the decisions of final policymakers. For example, Plaintiffs allege that the Napa County Board of Supervisors "adopted a policy wherein it vested authority, in its 'sole discretion,'" with the Director of Planning, Building and Environmental Services to determine the "extent of existing entitlements" for wineries, and that the County "utilized these … policies to strip wineries, like Plaintiffs, of uses, rights, and entitlements without due process." (SAC ¶¶ 399, 406.) The Director then exercised that delegated authority and directed the "multi-month" audit of the Winery Database that altered entitlements without notice (SAC ¶ 386), and articulated that small winery exemptions may not conduct tastings, marketing, or hospitality (SAC ¶¶ 91–93, 351). A department head who exercises final, delegated authority over the subject matter of the challenged decision is a policymaker whose acts are those of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("We have assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.") As the Supreme Court has noted, the official policymaker is not limited to the legislative board:

> [M]unicipalities often spread policymaking authority among various officers and

> official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances. To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is [not application of the theory of respondeat superior].

*Pembaur*, 475 U.S. at 483.

*Schmid* and *Temple of 1001 Buddhas* each turned on a complaint that identified only non-policymaking employees and failed to allege delegation of final policymaking authority. *See Schmid v. County of Sonoma*, No. 22-16812, 2024 WL 743774, at *2 (9th Cir. Feb. 23, 2024) (rejecting *Monell* liability because "[t]he amended complaint does not point to any state law that vests [the Director] with final policymaking authority over Sonoma County's land use policies"); *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1026 n.11 (N.D. Cal. 2022). Here, Plaintiffs allege the delegation those cases found missing. (SAC ¶ 399.)

Plaintiffs make detailed allegations of the County's ordinances, its Board-adopted Use Permit Compliance Program, the delegation of authority to the Director, the resulting Winery Database audit, and the County's systematic reinterpretation of winery entitlements, identifying specific policies and connecting them to Plaintiffs' injuries.[1] Those allegations, taken as true, are sufficient. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

### E. First Amendment Claims.

#### 1. Napa's Ordinances and Ordinance Interpretations Restrict Fully Protected Expression as Well as Commercial Speech.

Napa's contention that it only regulates "non-expressive conduct" fails at the outset. Napa prohibits "political, cultural, charitable, and other forms of events and gatherings." SAC ¶ 463. These are expressive speech and subject to First Amendment protection. *See, e.g., Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 365-64 (2010) (corporate political speech); *Riley v. National Fed. of the Blind of North Carolina, Inc.*, 487 U.S. 781, 789 (1988) (charitable fundraising); *Diamond S.J. Enterprises Inc. v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir.

---

[1] Plaintiffs allege many instances of County policy, practice, and custom, including the Board's adoption of the status-determination and Use Permit Compliance Program policies and delegation of authority to the Director (SAC ¶¶ 399–406); the Director's audit and revision of the Winery Database (SAC ¶¶ 386, 396–398); the County's concession that it is "unsure of the vested rights at each winery" (SAC ¶ 410); and the County's uniform reinterpretation of winery entitlements as applied to Plaintiffs and other wineries (SAC ¶¶ 91–94, 143, 351–352, 727–730).

2024) (music and entertainment). Even Napa has recognized that "events are protected under the First Amendment of the US Constitution." Dkt. 43-38, p. 3.

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) does not help Napa. In *Arcara*, the Court declined to apply First Amendment scrutiny to the closure of an adult bookstore used for prostitution because the triggering conduct, soliciting and engaging in sexual acts, "manifest[ed] absolutely no element of protected expression." *Id*. at 705. Here, Napa restricts inherently communicative conduct. A winetasting is not a secondary, non-expressive activity that merely happens to occur at a winery; it is a statutorily defined "presentation of samples … for the purpose of acquainting the tasters with the characteristics of the wine." Cal. Code Regs., tit. 4, § 53. And Napa does not restrict tastings, marketing events, and cultural gatherings because of some collateral harm untethered to their message; it restricts them because of what they communicate and to whom.

Nor does *Uber Technologies, Inc. v. City of Seattle*, 168 F.4th 1202 (9th Cir. 2026) aid Napa. *Uber* asks whether the regulated conduct "includes a significant expressive element that drew the legal remedy in the first place," considering both the ordinance's "inevitable effect" and its "stated purpose." *Id*. at 1211. The "legal remedy" Napa imposes is triggered by the marketing, advertising, tastings, and events themselves; expression the County caps through a "marketing plan approved as part of the winery's use permit." NCC § 18.08.370. The "inevitable effect" of limiting the number and type of "marketing events" a winery may host, and of prohibiting "political, cultural, [and] charitable" gatherings, is to restrict communication; and the "stated purpose" of those restrictions is directed at the content and character of the events, not at an incidental byproduct. Because the expressive element is precisely what "dr[ew] the legal remedy," the challenged ordinances are subject to First Amendment scrutiny under *Uber*.

*B&L Productions, Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024), does not stand for the proposition that commercial speech must also include an expressive element. *B&L* did not involve commercial speech, but the act of buying a gun. *Id*. at 113-14. *B&L* independently rested on the fact that the challenged statutes "apply to all vendors and, therefore, do not have the effect of 'singling out' those … participants who wish to engage in expressive activity." *Id*. at 115-16. Napa's ordinances do the opposite: they single out wineries, and single out particular expressive

events for restriction. Napa's reliance on *Talk of the Town v. Department of Finance & Business Services ex rel. City of Las Vegas*, 343 F.3d 1063 (9th Cir. 2003), is similarly misplaced as that case involved a business operating an illegal speakeasy. The ordinance did not restrict offers to sell alcohol or other forms of advertising. And, unlike in this case, the ordinance generally applied to "all businesses, whether they be bookstores or bars." *Id*. at 1070. It was because of this that the court determined the ordinance did not "place[] a disproportionate burden on those engaged in expressive conduct." *Id*. Finally, *Talk of the Town* focused much of its analysis on the fact that the bar did not have a valid liquor license, *id.* at 1070-71, which is not an issue here.

Here, as outlined below, Napa restricts commercial speech, including marketing and advertising, at only wineries. Further, while *B&L* was focused on the exchange of money as the prohibited conduct, Napa's restrictions preclude winetastings regardless of whether money changes hands. In California, it is lawful for Plaintiffs to conduct winetastings "without charge or for a fee" on their licensed premises. Cal. Code Regs., Title 4, § 53(1)(a). It does not matter that Napa's scheme may operate as a burden rather than a flat ban. As one court recently explained in rejecting the State's identical argument, "'the distinction between laws burdening and laws banning speech is but a matter of degree,'" and "attaching regulatory consequences creates a burden, even if minimal, on speech." *Rocky Patel Premium Cigars, Inc. v. Bonta*, No. 8:25-cv-02244, 2025 WL 3903972, at *8 (C.D. Cal. Dec. 23, 2025) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565–66 (2011) and *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 502 (2025) (Kagan, J., dissenting) ("The First Amendment prevents making speech hard, as well as banning it outright.").

California law also forecloses Napa's "conduct" argument. A winetasting is as "a presentation of samples of one or more wines … to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine or wines tasted." Cal. Code Regs., Title 4, § 53. Plaintiffs may "conduct winetastings … either on or off the winegrower's premises." BPC § 23356.1. These "may include, without limitation, the history, nature, values, and characteristics of the product, and the methods of presenting and serving the product." BPC § 23386. Even the Napa County Codes recognizes that marketing of wine includes activities to "educate consumers and the public about wine." NCC § 18.08.370.

California courts have also recognized that for wine, "[o]bviously, the use of samples is for the purpose of encouraging the sale of the product." *Tonkin Distrib. Co. v. Collins*, 50 Cal. App. 2d 790, 795 (1942). Activities which seek to "have prospects enter their stores and purchase Plaintiffs' products [are] commercial speech." *FF Cosmetics FL Inc. v. City of Miami Beach, Florida*, 129 F. Supp. 3d 1316, 1321 (S.D. Fla. 2015), *aff'd*, 866 F.3d 1290 (11th Cir. 2017). Product demonstrations are also commercial speech because they are "essentially an advertisement" of products and the motivation for engaging in the speech is purely economic. *Am. Future Sys., Inc. v. Pennsylvania State Univ.*, 752 F.2d 854, 857 (3d Cir. 1984); *Bd. of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989).

**2. Napa Improperly Regulates Commercial Speech.**

Napa allows "tours and tastings" if they are "limited to persons who have made unsolicited prior appointments." NCC § 18.08.620 (emphasis added). In other words, Napa prohibits wineries from soliciting customers for tastings. Napa's parallel definition confirms the point: a tasting loses its permitted status if it is "advertised" to the public. (SAC ¶¶ 727–730; NCC §§ 18.08.370, 18.08.620.) Napa thus makes the winery's own commercial speech—its solicitation and advertising—the act that triggers the "legal remedy." But commercial solicitation is protected because it "allows direct and spontaneous communication between buyer and seller" and reflects the seller's "strong financial incentive to educate the market and stimulate demand." *Edenfield v. Fane*, 507 U.S. 761, 766 (1993). A rule that permits Plaintiffs to receive a customer but forbids them to invite one restrains protected communication and cannot be recast as a regulation of conduct. The defect is only sharpened by the fact that the operative term is left undefined: the Code nowhere defines "unsolicited," and Napa has refused to admit that its Code "only prohibits 'tastings' without prior appointment," objecting that the term is "vague and ambiguous." (SAC ¶ 267; Dkt 70-30 (Resp. to RFA No. 32).) A restriction that fixes illegality at whether a winery "solicited" a guest, without saying what "solicited" means, regulates speech, and without the "narrow specificity" the First Amendment requires. *NAACP v. Button*, 371 U.S. 415, 433 (1963).

In addition to prohibiting soliciting customers, Napa also demands approval of nearly every channel through which Plaintiffs would promote their lawful products. Napa takes the position that

it is unlawful for Plaintiffs to distribute "marketing materials" "seeking to induce" potential customers to visit a winery "to taste and purchase wine." (SAC ¶¶ 40, 515.) Marketing that seeks to "have prospects enter their stores and purchase Plaintiffs' products" is quintessential commercial speech, *FF Cosmetics*, 129 F. Supp. 3d at 1321, and truthful advertising of a lawful product may not be banned. *Rubin*, 514 U.S. at 481–83. Napa also contends it is unlawful for Plaintiffs to "explain[] the background" of their wines to induce a purchase. (SAC ¶ 515.) But explaining a product's "history, nature, values, and characteristics" is authorized under state law, Bus. & Prof. Code § 23386, and describing a product to promote its sale is commercial speech. *Fox*, 492 U.S. at 473–74. Napa also restricts where and how Plaintiffs may speak about their wineries: using social media to market wine is a violation of the Code and a winery may not advertise activities or events conducted off-site. (SAC ¶¶ 515; Dkt. 70-36, Interrog. Resp. 11).) A prohibition on truthful promotional speech disseminated online, or concerning lawful off-premises activity, is a content-based restriction on commercial speech that the County cannot justify. *Sorrell*, 564 U.S. at 566–67.

Napa's restrictions hinder Plaintiffs' most effective form of advertising: one-on-one interactions at the wineries, which the Supreme Court has recognized "produces more personal interchange between buyer and seller" and "enables the seller to direct his proposals toward those consumers who he has a reason to believe would be most interested in what he has to sell." *Edenfield*, 507 U.S. at 766. Taken together, these restrictions reach the full spectrum of a winery's commercial expression: advertising, solicitation, consumer education and online and off-premises promotion, and Plaintiffs state a claim for challenging them.

### 3. Napa's *Central Hudson* Argument is Superficial and Incorrect.

Commercial-speech regulation must satisfy the four-part test from *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). Napa contends Plaintiffs speech is illegal, because Napa has deemed it illegal, so the Court need not consider the remainder of the test. But if Napa were correct, then every *Central Hudson* claim would fail because the point of the analysis is that a governmental body has made certain commercial speech unlawful. In *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), the Court struck down a law which made it illegal to advertise alcohol content. In *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996),

the Court struck down a prohibition on advertising the retail price of alcoholic beverages. In both instances while the government made the advertising illegal, for purposes of *Central Hudson* the question was whether the good being sold—alcohol—was legal. The Tenth Circuit rejected Napa's theory in another alcohol case, holding that a State "could not escape review of its legislation by asserting that the challenged conduct is unlawful under the very same legislation being reviewed." *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1066 (10th Cir. 2001).

Nor can Napa recharacterize Plaintiffs' truthful marketing as "misleading" and thereby remove it from First Amendment protection. Courts are "hesitant to determine … that the government's definition of a word compels the legal conclusion that non-conforming usage is inherently misleading," because treating a government-issued definition as dispositive "'would eviscerate *Central Hudson*, rendering all but the threshold question superfluous.'" *California League of Food Producers v. Bonta*, No. 3:26-cv-01675, 2026 WL 2055589, at *22 (S.D. Cal. July 14, 2026) (quoting *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017)).

"[I]n the context of advertising, one must ask whether the goods or services the party advertises are illegal." *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F. 3d 898, 904 n.7 (9th Cir. 2009). In *Valle Del Sol Inc. v. Whiting*, 709 F. 3d 808, 821-822 (9th Cir. 2013), Arizona argued that its law prohibiting day laborers from soliciting work was "permissible because they regulate speech only when associated with the unlawful activity of blocking or impeding traffic." The Ninth Circuit disagreed because the question was whether it was generally "legal to hire or be hired for day labor" which it was. *Id*. Here, selling wine in California with a Type 02 license is legal.

Napa also defends by arguing that Plaintiffs must obtain a permit before they may speak, but Plaintiffs are already zoned, licensed and permitted to operate wineries, and Napa does not issue "speech" permits. Regardless, courts routinely strike down ordinances that require a permit before a person may engage in commercial speech. *See Watchtower Bible v. Village of Stratton*, 536 U.S. 150 (2002). The fact that a licensing scheme exists for alcohol "does not change the analysis." *44 Liquormart,* 517 U.S. at 513. In *44 Liquormart*, the Court noted that Rhode Island's "power to ban the sale of liquor entirely does not include a power to censor all advertisements that contain accurate and nonmisleading information about the price of the product." *Id*.

As for the remainder of the *Central Hudson* test, Napa claims a substantial interest in preserving agriculture, but Napa's *Central Hudson* burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-71. Nor may the Court defer to Napa's legislative judgment that its restrictions serve that interest. *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 437 (9th Cir. 1993). Napa "must provide evidence establishing that the harms it recites are real and that its speech restriction will significantly alleviate those harms" to justify its restrictions. *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1117-18 (9th Cir. 2023); *see also California League of Food Producers*, 2026 WL 2055589, at *24 (enjoining a labeling law where the state relied on "common sense" rather than record evidence).

Napa ignores the last two prongs of *Central Hudson*: that the restrictions "directly advance" the stated interest; and that they are "not more extensive than is necessary to serve" a substantial government interest. *Central Hudson*, 447 U.S. at 564, 566. The fact that the ordinances do not apply to all sales of wine, *e.g.*, large wineries can sell wine without restriction, "strongly suggests that [on premises consumption] creates no inherent safety issue" and that the "stated interests are not advanced by the [o]rdinances." *Aptive Environmental, LLC v. Village of East Rockway, New York*, 2019 WL 3206132, *6 (E.D.N.Y. July 16, 2019). "'Entirely prohibiting one speech-based subset of an activity that is not inherently disruptive raises the question whether the municipality's actual motivation was to prevent speech having a particular content, rather than address an actual safety or welfare issue.'" *Id*. (quoting *Centro de la Comunidad Hispana v. Town of Oyster Bay*, 868 F.3d 104, 117 (2d Cir. 2017)).

The Tenth Circuit reached the same conclusion in *Utah Licensed Beverage Association* which enjoined restrictions on wine and liquor marketing that left comparable speech, such as beer marketing, unregulated. Such a scheme "distinguish[es] among the indistinct, permitting a variety of speech … that poses the same risks the Government purports to fear, while banning messages unlikely to cause any harm at all," and therefore fails the third prong. 256 F.3d at 1074. The government "bears the responsibility of building a record adequate to clearly articulate and justify"

its interests, "courts may not help" carry that burden, and the burden does not shift merely because of the case's procedural posture. *Id*. at 1070, 1073. Napa, which permits restaurants, bars, and large wineries to sell wine without restriction, has built no such record. A government that will not even articulate the interest its restriction serves, or the alternatives it weighed, cannot satisfy *Central Hudson*. *Edenfield*, 507 U.S. at 770–71.

The County's own concessions confirm that its asserted traffic and agricultural-character interests do not directly advance its restrictions. Plaintiffs allege that wineries may host an unlimited number of retail customers each day to purchase wine for off-site consumption. (SAC ¶¶ 68, 69, 98, 272; see also Dkt. 97 ¶ 98). If the County's genuine concern was vehicular traffic, it would have no reason to permit to-go visits while capping the very tastings and events that keep a visitor on-site longer. Minimally, Plaintiffs state a claim, accepting its allegations as true, and Napa has not satisfied its evidentiary burden under *Central Hudson* at the pleading stage.

**4. Napa Engages in Multiple Unconstitutional Prior Restraints.**

A law that places "unbridled discretion in the hands of a government official … constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 757 (1988). A licensing scheme must supply "narrowly drawn, reasonable and definite standards." *Thomas v. Chicago Park Dist*., 534 U.S. 316, 324 (2002). Otherwise, the decisionmaker could "in a calculated manner, censor certain viewpoints." *Lakewood*, 486 U.S. at 764. Napa has the burden here. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (plurality).

Napa concedes that a winery may not host an event unless it is "part of a marketing plan *approved as part of the winery's use permit*." NCC § 18.08.370 (emphasis in Dkt. 99 at 32). This is prior restraint, *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969), and "marketing of wine," defined as activity "for the education and development of customers," NCC § 18.08.370, is communication, not conduct.

Napa cites *Spirit of Aloha v. County of Maui*, 49 F.4th 1180, 1188 (9th Cir. 2022), and *Talk of the Town*, 343 F.3d at 1072, for the proposition that generally applicable laws survive prior restraint challenges. But Napa's restrictions are not generally applicable. *Talk of the Town* turned on the ordinance being applicable to "all businesses…." 343 F.3d at 1070. Here, Plaintiffs allege

Napa does not "regulate other businesses in the same way" it regulates wineries. (SAC ¶ 319.)

Napa also relies on *Diamond S.J. Enterprises* but there it was determined an ordinance was not a prior restraint because 1) its standard ("public nuisance") was content-neutral and "adequately defined," and 2) it afforded findings, a hearing, and review. 100 F.4th at 1067–68. Napa engages only the second half, reciting that a use permit requires "written findings," a "public hearing," and judicial review. (Dkt. 99 at 32.) Napa does not contend that the standard governing which events a winery may host is content-neutral. To the contrary, approval turns on "the intent of the event" and "the proportion of the business event's non-wine-related content." NCC § 18.08.370. A standard that considers the "intent" and "content" of an event is content-based on its face, and purported procedural safeguards do not cure a content-based licensing standard. *Lakewood*, 486 U.S. at 764.

Napa admits that "it has not always been clear whether business meetings and similar events qualify as marketing events," that its staff makes decisions "based on interpretations of code language," and that "an administrative interpretation can be reversed … whenever the composition of the Commission or the Board changes." (Dkt. 70-33 at 2–3.) Napa prohibited Hoopes from advertising by associating wine with animals because it did not consider farm animals "wine related," and barred off-premises event advertising based on its own subjective view that such advertising should not occur. (SAC ¶ 515.) A scheme administered by shifting, content-based judgments "place[s] unbridled discretion in the hands of" its officials. *Lakewood*, 486 U.S. at 757.

**5. Plaintiffs Sufficiently Pled an Infringement of Their Right to Petition.**

Napa argues that NCC § 1.30.030(A), which requires a permit applicant to indemnify Napa from any claim based on Napa's failure to follow the law, does not apply to Plaintiff's claims here. (Dkt. 99 at 29-30.) If this Court recognizes this stipulation, that claim is moot.

Regardless, Section 1.30.030(A) makes such indemnity a condition of the any land-use application. And § 1.30.040, which Napa ignores, imposes the identical obligation "even if the applicant fails or refuses to enter into the agreement." This indemnity is a non-waivable exaction. As discussed more fully below, Napa cannot meet its burden to defend these exactions because there no "essential nexus" and "rough proportionality" to the impact of the use.

**6. Smith-Madrone has Adequately Alleged Restrictions on its Speech.**

Napa contends that "the SAC fails to identify any County ordinance, policy, or 'interpretation' that restricts Smith-Madrone's speech," but its entire argument concerns a single subject: whether a numeric cap limits Smith-Madrone's private tastings. (Dkt. 99 at 30–31.) Smith-Madrone's First Amendment claim is broader and challenges the County's compelled-speech signage requirement, prior restraint on marketing, restrictions on advertising and solicitation, ban on political, cultural, charitable, and social gatherings, live music and entertainment, and the sale of wine-related merchandise. (SAC ¶¶ 458–465, 497, 154–155.) Napa ignores these issues.

Further, Napa's argument depends on the premise that the regulations reach only small winery exemptions and post-WDO permits, not Smith-Madrone's 1973 permit. (Dkt. 99 at 30.) But NCC § 18.116.060(B) compels every winery that was not "permitted to conduct public tours or tastings prior to February 22, 1990," which includes Smith-Madrone, to post at its entrance: "Tours and Tastings by Prior Appointment Only," and to submit its signage for County approval. This is compelled, content-based speech. The County's advertising and solicitation restrictions apply no differently: the "marketing of wine" definition (§ 18.08.370) and the "unsolicited prior appointment" limitation (§ 18.08.620) turn on the character of the speech, and Smith-Madrone alleges the County applies them to prevent it "from advertising and marketing its winery." (SAC ¶ 155.) Napa's assertion that these allegations are "vague" is answered by Napa's own ordinance.

The County restricts far more than commercial activity. It bars "political, cultural, charitable, and other forms of events and gatherings" (SAC ¶ 463), and it caps or prohibits live music and entertainment which is expression entitled to the highest First Amendment protection. *See Citizens United*, 558 U.S. at 340; *Riley*, 487 U.S. at 789; *Diamond*, 100 F.4th at 1066. None of these restrictions depends on whether Smith-Madrone holds an exemption, a post-WDO permit, or a 1973 permit, and Napa's answer that Smith-Madrone may conduct tastings is no answer at all to a winery told it may not host a political fundraiser, a charitable gathering, or a concert.

Napa also cannot have it both ways. Its motion rests on the premise that nothing in the County Code restricts Smith-Madrone, and that Smith-Madrone remains free to operate its winery as it wishes. If it is truly Napa's position that Smith-Madrone may host visitors, tastings, marketing events, cultural and social gatherings, live music, weddings, and engage in the retail sale of wine-

related merchandise, and may advertise those activities to the public, all without restriction, then Plaintiffs accept the concession, and Smith-Madrone is entitled to a declaration confirming as much. But if Napa is unwilling to concede that Smith-Madrone may do these things freely, as the SAC sets forth, then Napa's own premise is false, and its motion must be denied. Having represented to this Court, and to the Ninth Circuit, that Smith-Madrone is unrestricted, Napa may not simultaneously reserve the right to enforce the very restrictions it disclaims. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

Napa's fallback arguments are recycled standing objections the Ninth Circuit already rejected. Napa argues that it "has not brought an enforcement action" against Smith-Madrone and that Smith-Madrone "has not sought a determination" of its entitlements. (Dkt. 99 at 30.) The Ninth Circuit has already held that Smith-Madrone has standing to bring these claims.

Finally, Napa tells this Court it is "uncontested" that Smith-Madrone may conduct tastings. (Dkt. 99 at 30.) Yet for years Napa assigned and published numeric visitation limits for Smith-Madrone in its Winery Database; limits its 1973 permit does not contain. In the Ninth Circuit, Napa's counsel represented that it would not enforce those numeric limits against Smith-Madrone. Having been caught imposing uncodified limits, Napa cannot escape review by telling this Court there was nothing there at all. Its disavowal confirms the restriction and does not moot the claim.

**F. Napa Engages in a Per Se Violation of the Dormant Commerce Clause.**

NCC section 18.104.250 requires that "at least seventy-five percent of the grapes used … shall be grown within the county of Napa." Napa defends it by explaining that it "tie[s] the production of wine … to the amount of agricultural produce 'grown' in the County" and "creates a limitation on the amount of out-of-county grapes that can be processed." (Dkt. 99 at 19–20.) A facial geographic preference for local grapes that caps the use of grapes grown anywhere else, including out of state, violates the dormant Commerce Clause because a law that "expressly favors and benefits in-state economic interests … while disfavoring and burdening those same economic interests outside" the jurisdiction facially discriminates against interstate commerce. *Alexis Bailly Vineyard, Inc. v. Harrington*, 482 F. Supp. 3d 820, 827 (D. Minn. 2020). Such a law is "virtually per se invalid" absent meeting strict scrutiny. *Granholm v. Heald*, 544 U.S. 460, 476 (2005).

Napa argues its ordinance is valid because it regulates "in-state conduct" and "applies equally" to in- and out-of-County wineries. (Dkt. 99 at 19–20 (citing *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015).) But *Chinatown* upheld an evenhanded total ban that gave no preference to local product. Here, Napa favors local grapes. For seventy years, the Supreme Court repeatedly has ruled that practice is unconstitutional, regardless of whether the ban is across state or county lines. *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 & n.4 (1951); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 504 U.S. 353, 361 (1992); *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391 (1994).

Napa also conflates the two tiers of Commerce Clause analysis. It argues at length that Plaintiffs plead no *Pike* balancing, (Dkt. 99 at 20–22), but *Pike* applies only to laws that "regulate[] evenhandedly" with "incidental" effects; a facially discriminatory law is struck down "without further inquiry." *Granholm*, 544 U.S. at 476. Napa's *Pike* cases (*Rosenblatt*, *National Pork Producers Council*, and *Flynt*) do not address facial, local-sourcing discrimination. Napa's other authority, *Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988 (2005), is inapposite. *Bronco* upheld a labeling law tied to the federal appellation system and consumer deception. Napa's rule bars processing more than 25% non-Napa grapes no matter how the wine is labeled or where it is sold and is a naked sourcing mandate of the kind *Dean Milk*, *Fort Gratiot*, and *Carbone* condemn.

In the last six years, two federal courts have invalidated similar grape-source rules. *Alexis Bailly* invalidated a law requiring wine made from "a majority of the ingredients grown or produced in Minnesota," rejecting an agricultural-preservation defense. 482 F. Supp. 3d at 827–28. *Wineries of the Old Mission Peninsula Association v. Peninsula Township*, 2022 WL 2155097, at *9 (W.D. Mich. June 3, 2022), found a 85% local-grape requirement "per se invalid" and also rejected an agricultural-preservation justification. Whether the County's asserted interest can survive strict scrutiny, including whether nondiscriminatory alternatives exist, is a factual question unsuited to a motion to dismiss. *Alexis Bailly*, 482 F. Supp. 3d at 828. In any event, Napa's suggestion that Plaintiffs are not subject to the rule cannot be squared with its pleading in the *Hoopes* litigation that Plaintiffs may not use "non-Napa grapes in [their] production" (SAC ¶ 610; Dkt. 70-27 ¶¶ 22–23), and Plaintiffs allege the rule prevents their planned expansion (SAC ¶¶ 257–59, 601, 615–18).

**G. Plaintiffs' As-Applied Claims Are Adequately Pleaded.**

Napa attacks Summit Lake and Smith-Madrone's as-applied claims in separate sections (Dkt. 99 §§ I, J), but the governing frameworks are common. At the outset, two points narrow the dispute. First, Napa does not move against Plaintiffs' substantive-due-process claim insofar as it rests on the deprivation of their protected liberty interests in operating their licensed businesses, their Type 02 Winegrower licenses, which are "a valuable property right" under California law, *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*, 683 F.2d 1229, 1233 (N.D. Cal. 1982), and their business goodwill, which is "a property interest entitled to protection" under the Due Process Clause, *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Napa's failure to address that theory is reason alone to deny the Motion. Second, Napa's Motion nowhere disputes that its recent interpretations and enforcement are the source of Plaintiffs' injuries.

**1. Plaintiffs Pled Valid Takings Claims.**

**a. Plaintiffs Sufficiently Pled a *Nollan/Dolan* Exaction.**

An exaction claim arises when government either "approves a permit on the condition that the applicant turn over property or denies a permit because the applicant refuses to do so." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). That is what Summit Lake alleges: to obtain recognition of its existing uses, Napa demands that Summit Lake expend more than $2 million to rebuild a shared road into a "commercial driveway" running "to the nearest public roadway." (SAC ¶¶ 95, 645–648.) The condition must satisfy *Nollan's* "essential nexus" and *Dolan's* "rough proportionality." *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994).

Napa contends this is not an exaction because Summit Lake was required only to improve a "private road" and not convey land or money to Napa. (Dkt. 99 at 41 (citing RJN, Ex. A).) That argument is foreclosed because the *Nollan/Dolan* framework reaches monetary exactions imposed by legislation, *Sheetz v. County of El Dorado,* 601 U.S. 267, 275–80 (2024), and it reaches demands that an owner expended money. *Koontz*, 570 U.S. at 612–19. It is also unsupported because Napa's premise, that the road is "purely private," that "[t]he easement does not include the County or the general public," and that the demand imposes no public-facing burden is drawn entirely from a

deed submitted with Napa's RJN, not from the SAC. The Court may notice that the deed exists, but it may not draw the disputed inferences Napa requests. *Khoja*, 899 F.3d at 998–1003. The deed is a 1971 grant of "non-exclusive Right[s] of Way for road purposes" over 3 forty-foot strips, appurtenant to 13 grantees. (RJN, Ex. A.) That a list of private parties held easement rights in 1971 does not establish that Napa holds no interest in the road today or that the demanded "commercial driveway to the nearest public roadway" imposes no public-facing burden. Rather, the deed confirms that the road is a shared right of way serving more than a dozen parcels and Napa's ties its improvement demand to the "cumulative traffic demand along the roadway" and not to traffic Summit Lake generates. (SAC ¶¶ 95–97.) A condition triggered by third-party traffic bears no essential nexus to Summit Lake's use and impermissibly forces it "alone [to] bear public burdens which … should be borne by the public as a whole." *Dolan*, 512 U.S. at 384.

Finally, Napa's cited authorities that road-safety standards are a "routine, valid exercise of … police power" (Dkt. 99 at 41-42) do not survive *Sheetz*, which holds that a generally applicable, legislatively imposed condition is not exempt from nexus-and-proportionality review. 601 U.S. at 275–80. And Napa's contention that Summit Lake "alleges the cost, but not … the actual requirements" (Dkt. 99 at 42) is precisely the fact-bound inquiry that cannot be resolved on the pleadings: "the sparsity of the record does not permit an inquiry … into the existence of the required nexus or … rough proportionality." *Goss v. City of Little Rock*, 90 F.3d 306, 310 (8th Cir. 1996).

**b. Plaintiffs Sufficiently Pled a *Penn Central R*egulatory Taking.**

Napa argues Summit Lake's as-applied *Penn Central* claim accrued in 2019. (Dkt. 99 at 43.) But an as-applied claim accrues "when the plaintiff knows or has reason to know of the injury," *TwoRivers*, 174 F.3d at 991, and Plaintiffs allege they did not learn the scope of the County's interpretation until it was revealed in the *Hoopes* litigation between October 2022 and February 2024. (SAC ¶ 352). The County's application to Plaintiffs continued through its 2021 road demand and its October 31, 2023 "definitive position." (SAC ¶¶ 95, 128.) At a minimum, accrual is a fact question that cannot be resolved on the pleadings. *Supermail Cargo*, 68 F.3d at 1206.

Napa also contends Plaintiffs "never had a legal right" to tours and tastings, so there is nothing to take. (Dkt. 99 at 43.) But the SAC states the opposite: the County's General Plan defines

agriculture at wineries to include tours, tastings, and retail sales, Summit Lake's exemption prohibits only public tastings, the "2/week" figure is anticipated, not a maximum, Smith-Madrone's permit specifically allows private tastings and contains no limitation on number of customers, employees, or events, and Plaintiffs and their predecessors conducted tastings for decades. (SAC ¶¶ 28-29, 80, 82–83, 132-42, 222). Napa cites *Avco Community Developers v. South Coast Regional Commission*, 17 Cal. 3d 785 (1976), but that case simply held that a use clearly illegal cannot ground a vested right. Here the County's own General Plan, database, and decades of acquiescence reflect that the uses were permitted. Whether Plaintiffs held the entitlement is the central merits dispute, not a question resolvable on Napa's say-so at the pleading stage.

Napa further argues the database "does not have the force of law" and its revisions had "no effect" on entitlements. (Dkt. 99 at 43.) But the SAC states the opposite. Napa created and maintains the database (SAC ¶¶ 38–39), revised it between 2012 and 2016 to strip Plaintiffs' permissions without notice, (SAC ¶¶ 396–398), and uses the data in it for code enforcement, (SAC ¶ 404.)

A *Penn Central* analysis is an "essentially ad hoc, factual inquir[y]." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326 (2002). Plaintiffs allege the economic impact (lost sales, SAC ¶¶ 76–79, 125–27, 153–55), interference with investment-backed expectations (decades of operation), and the character of the County's action (a targeted reinterpretation stripping historic uses). Napa's reliance on *Colony Cove* and *Bridge Aina Le'a* is premature; those decisions resolved the factors on developed summary-judgment records.

**2. Plaintiffs Sufficiently Pled Arbitrary Enforcement.**

Summit Lake properly alleges County action "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926). The County first advised Summit Lake the RSS did not apply, then reversed course and demanded a multimillion-dollar rebuild after Summit Lake moved to intervene in *Hoopes*. (SAC ¶¶ 95, 559, 562–69, 573-75).

Napa's "neutral, prospective, generally applicable" defense refutes itself: it insists the RSS "are not applicable retroactively to existing roads" yet demands that Summit Lake rebuild an existing road to recognize an existing use that adds no new impact. And Napa's contention that the

RSS were "triggered" by Summit Lake's application rests on its assertion that the application "proposed a cumulative traffic demand along the roadway greater than forty Average Daily Traffic." (Dkt. 99 at 19-20, 40 (citing Dkt. 70-50).) As explained above, that assertion appears nowhere in the SAC, which alleges the opposite: that Summit Lake's impact is "negligible" and "not related to the requested 'upgrade' in wine production at all." (SAC ¶¶ 95–97.) Napa's cited exhibit establishes only the RSS threshold, not that Summit Lake's application crossed it. A defendant cannot defeat an arbitrary-enforcement claim by supplying, from outside the pleadings, the very predicate the complaint denies. *Khoja*, 899 F.3d at 999.

Finally, Napa does not dispute that the County Code defines wineries as "agriculture," NCC § 18.08.040(H), while the RSS exclude wineries from the definition of an "agricultural road" and subject them instead to the far more demanding "commercial" road standard. (SAC ¶¶ 559, 562–69.) Napa's only answer is that "each definition controls only within the regulatory scheme in which it appears." (Dkt. 99 at 40.) But that does not explain why a use the County's own zoning code deems agricultural is reclassified as commercial for road purposes, with no codified standard governing the reclassification. That the County can, at its discretion, treat the same state-licensed agricultural operation as "agricultural" for one purpose and "commercial" for another, to impose a prohibitive exaction, is the essence of standardless, arbitrary administration.

**3. Plaintiffs Have Stated a Vagueness Claim.**

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[L]aws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. "[W]here first amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required," *Kev, Inc. v. Kitsap Cty.*, 793 F.2d 1053, 1057 (9th Cir. 1986), and courts ask whether language is sufficiently murky that "speakers will be compelled to steer too far clear of any forbidden area[s.]" *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998) (internal quotation marks omitted). The vagueness doctrine demands that laws "provide explicit standards for those who apply them." *Grayned*, 408 U.S. at 108. Definitions of proscribed conduct that rest principally on subjective viewpoint are impermissible. *Gammoh v. City of La Habra*, 395

F.3d 1114, 1119–20 (9th Cir. 2005). Napa's scheme fails by Napa's own admissions.

Napa responds to Plaintiffs' vagueness claim by citing a list of defined terms ("winery," "agriculture," "accessory use") and asserting that the Code is "clear … when read in context" of the AW-district purpose clause. (Dkt. 99 at 32–33.) But Napa never states what the challenged terms permit or prohibit; it does not say how many visitors a winery may host, or who a "visitor" is; it does not say what distinguishes a "wine-related" activity from a "non-wine-related" one; it does not say what a "marketing event" is, or when a "tasting" occurs. That Napa cannot articulate the content of its own restrictions is itself the vagueness Plaintiffs allege. Indeed, Napa's concedes "there is some ambiguity as to the scope of [Smith-Madrone's] permitted uses." (Dkt. 99 at 34 n.9.)

In its General Plan, Napa admitted that "small wineries," "small quantity of wine," "small marketing events," and "mostly grown on site" are vague. (Dkt. 70-28).) In the *Hoopes* litigation, Napa objected to discovery requests using the terms "tasting," "retail," "consumption," "wine-related," and "visitor" on the ground that those terms were "vague and ambiguous." (Dkt. 70-30 at RFA Nos. 29, 31, 32, 42, 44, 45, 85; Dkt. 70-31 at Req. 2.) Napa's own officials could not agree on the meaning of "visitor," variously defining it to exclude "tours/tastings" and to mean only "business-related visitors (deliveries, sales people, etc.)." (Dkt. 70-32; Dkt. 70-33 at 69–71.) In 2015, Napa admitted there was "no workable distinction" between "wine-related" and "non-wine related," and no reasonable way to enforce one. (SAC ¶ 289.) And the County does not maintain any "[o]fficial definition or internal working definitions" of "visitor" or "visitation," or of the distinction between a "small winery exemption[]" and a "full blown winery." (Dkt. 70-34).) These admissions establish that the terms are not "clearly defined." *Grayned*, 408 U.S. at 108.

Napa has acknowledged that its ordinances "are imprecise in that they do not provide any specific means for quantifying either remoteness or production, and/or do not indicate how these criteria relate to marketing and visitation proposals," that "[t]he vague language does not provide clarity for staff or the Commission [and] creates uncertainty for … the applicant," and that "the guidelines do not provide any meaningful guidance [to] come to a decision on what level of visitation and marketing programs are in the public interest." (Dkt. 70-39).)

Napa's only response to Plaintiffs' arbitrary-enforcement allegations is confined to the RSS.

(Dkt. 99 at 39–40.) It never addresses the arbitrary and inconsistent enforcement of the undefined terms "tasting," "visitor," "wine-related," and "marketing event" that form the heart of Plaintiffs' vagueness claim. A scheme whose own drafters admit it supplies no "meaningful guidance" invites "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108–09. And a "standard" that consists of whatever meaning the enforcing official supplies, from no identified source, is the paradigm of a law that fails to give fair notice and "impermissibly delegates basic policy matters to policemen … for resolution on an ad hoc and subjective basis." *Id*.

California law provides an authoritative, published definition of the very term the County enforces: a "winetasting" is "a presentation of samples of one or more wines … to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine." Cal. Code Regs. tit. 4, § 53. Yet, while Napa does not define "winetasting," it is explicit that it does not follow the state definition. Napa cannot enforce a prohibition on "winetasting," disclaim the state's definition, and simultaneously maintain that the term is clear.

Finally, Napa's "economic regulation" and "read in context" arguments do not save it. Napa invokes the relaxed vagueness standard for economic regulation and argues the terms are clear when read against the AW-district purpose clause. Neither argument works here. The relaxed standard does not apply because the challenged restrictions burden First Amendment activity (tastings, marketing, and events) where "a greater degree of specificity" is required. *Kev*, 793 F.2d at 1057. And context cannot cure terms the County itself admits are undefined and unenforceable: a purpose clause announcing that the AW district is "agriculturally oriented" does not advise a winery how many "visitors" it may host or what a "marketing event" is. Where the County concedes its terms are "vague and ambiguous," that no "workable distinction" exists between permitted and prohibited activity, and that its guidelines supply "no meaningful guidance," reading those terms "in context" does not make them clear. At a minimum, this issue needs factual development.

### H. Plaintiffs Sufficiently Plead a Non-Delegation Claim.

Napa violates the non-delegation doctrine by allowing private parties to "virtually control and dispose of the property rights of others." *Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912). It is "unconstitutional for a local government to impose a procedural requirement that

delegates to certain favored private parties" the power to effectively veto a land-use decision. *Young v. City of Simi Valley*, 216 F.3d 807, 817 (9th Cir. 2000). Plaintiffs allege that: Napa "requires the consent of third parties as a condition precedent to granting or modifying a use permit." (SAC ¶¶ 581–585.) Napa asserts that it "does not, by rule or practice, condition the issuance of a use permit on the approval of third parties." (Dkt. 99 at 18.) But this assertion ignores the pleaded allegations.

Napa contends that Plaintiffs "only vaguely reference the inclusion of members of the public in the use permit process, which is required by state law." (Dkt. 99 at 34.) But Plaintiffs do not challenge public input; they challenge third-party veto. And Napa's demand that Plaintiffs identify the precise ordinance, third parties, and dates of each instance, (*id.*), improperly requires evidentiary detail at the pleading stage. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only plausibly suggest an entitlement to relief.") (internal quotation omitted.)

**I. Plaintiffs Sufficiently Pled an Equal Protection Claim.**

Napa attacks a "winery versus small winery" distinction under rational basis (Dkt. 99 at 44–45), but that is not the claim. Plaintiffs allege that the County applies its ordinances non-uniformly among similarly situated wineries, in violation of Equal Protection and California's uniform-zoning requirement, Gov. Code § 65852. That requirement applies to counties. *See Neighbors in Support of Appropriate Land Use v. County of Tuolumne*, 157 Cal. App. 4th 997, 1008–09 (2007). Napa's contrary authority, *Sacramentans for Fair Planning v. City of Sacramento*, 37 Cal. App. 5th 698 (2019), involved a charter city, to which § 65852 does not apply.

Non-uniformity is specifically pleaded. For example, one winery is allowed 12.6 marketing events per day while 151 wineries are allowed none (SAC ¶ 387); one winery is allowed more marketing-event visitors per year than 378 wineries combined (SAC ¶ 388); and wineries with similar building sizes and parking receive drastically different allowances (SAC ¶¶ 393–94). These are identifiable, quantified comparators, not the "wholly conclusory" allegations of *Akshar Global Investments Corp. v. City of Los Angeles*, 817 F. App'x 301 (9th Cir. 2020). And Napa's Tort

Claims Act objection fails because, under the Supremacy Clause, noncompliance with the state claims statute is not a bar to a § 1983 action. *Williams v. Horvath*, 16 Cal. 3d 834, 842 (1976).

**J. Smith-Madrone's Claims Do Not Fail for Lack of an Applicable Restriction.**

Napa contends Smith-Madrone states no claim because the challenged SWE-specific and post-WDO Code sections do not reach its 1973 permit, and because it has not sought a determination, applied for a permit, or faced enforcement. (Dkt. 99 § J.) That argument is addressed in full in connection with Plaintiffs' First Amendment claims (§ III(E)(6), *supra*), and the same answer defeats it here. Napa's premise, that nothing restricts Smith-Madrone, cannot be reconciled with the numeric visitation caps assigned to and enforced against it through the Winery Database (10 per week; 520 per year), which its 1973 permit does not contain. Napa disavowed enforcing the database caps against Smith-Madrone at the Ninth Circuit, confirming the restriction exists. Smith-Madrone's *Penn Central* and procedural-due-process claims rest on precisely that: the County's stripping of its uncapped entitlement through an unadopted database imposed without notice or hearing. And a plaintiff need not first "seek a determination" or submit to a standardless scheme to challenge it. *City of Lakewood*, 486 U.S. at 755–56.

**K. Injunctive relief**

Plaintiffs have no objection to this Claim being dismissed as a remedy and not a claim, but Plaintiffs do not waive their right to seek injunctive relief as a remedy on the remaining Claims.

**IV. CONCLUSION**

Napa's motion should be denied and discovery should continue.

Respectfully submitted,

Dated: September 9, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, admitted pro hac vice
Attorneys for Plaintiffs

Dated: September 9, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

51577922.5/162870.00001