Joseph M. Infante (pro hac admission)
infante@millercanfield.com
Stephen M. Ragatzki (pro hac admission)
ragatzki@millercanfield.com
**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333 / Fax: (616) 776-6322

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
Angela Han (Bar No. 317137)
ahan@fennemorelaw.com
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
Attorneys for Plaintiffs Hoopes Vineyard LLC, Summit Lake Vineyard, and Cook's Flat Associates a California Limited Partnership

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,

Plaintiffs,

v.

COUNTY OF NAPA,

Defendant.

Case No. 3:24-cv-6256-CRB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SUMMIT LAKE'S MOTION FOR PRELIMINARY INJUNCTION REGARDING ROAD EXACTION**

| | |
|---|---|
| Judge: | Hon. Charles R. Breyer |
| Hearing Date: | November 20, 2026 |
| Hearing Time: | 10:00 a.m. |
| Location: | San Francisco (ZOOM) |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION (ROAD EXACTION .......... IV
SUMMARY OF ARGUMENT .......... VI
I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 2
A. A Small Winery's Road is Supposed to be Treated Like a Single-Family Residence. .......... 2
B. The County's "Commercial Driveway" Demand was Triggered by Others' Traffic. .......... 2
C. The County Applies Its Own Nexus Standard, Except to Summit Lake. .......... 3
III. ARGUMENT .......... 4
A. Standard of Review .......... 4
B. The Requested Injunction Is Prohibitory and Preserves the Status Quo. .......... 4
C. Summit Lake Is Likely to Succeed on the Merits of Its Exaction Claim. .......... 5
D. Summit Lake Will Suffer Irreparable Harm Absent an Injunction. .......... 10
E. The Balance of Equities Favors an Injunction. .......... 11
F. An Injunction Serves the Public Interest. .......... 12
IV. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)........ 4

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985)........ 10

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018)........ 11

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988)........ 11

*Dolan v. City of Tigard*,
512 U.S. 374 (1994)........ 1, 5, 7

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012)........ 4

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000)........ 5

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)........ 10

*Idaho v. Coeur d'Alene Tribe*,
794 F.3d 1039 (9th Cir. 2015)........ 11

*Knick v. Township of Scott*,
588 U.S. 180 (2019)........ 10

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013)........ 1, 5, 9, 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)........ 5

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)........ 12

*Nken v. Holder*,
556 U.S. 418 (2009)........ 4

*Nollan v. Cal. Coastal Comm'n*,
483 U.S. 825 (1987)........ 1, 3, 5

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) .......... 10

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) .......... 11

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) .......... 6

*Sheetz v. County of El Dorado*, 601 U.S. 267 (2024) .......... 1, 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .......... 10

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......... 2, 4

**Statutes**

Assembly Bill No. 720 (Rogers), ch. 562, Stats. 2025 .......... 7

Cal. Bus. & Prof. Code § 23399.03 .......... 7, 8

**Other Authorities**

https://www.napacounty.gov/3966/Estate-Tasting-Event-Permit-AB-720 (last visited Sept. 16, 2026). .......... 8

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REGARDING ROAD EXACTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 20, 2026, at 10:00 a.m., via Zoom videoconferencing or—if the Court orders, in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102—Plaintiff Summit Lake Vineyards & Winery LLC ("Summit Lake") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction against Defendant County of Napa (the "County" or "Defendant").

Summit Lake will and hereby does move the Court for an order preliminarily enjoining Defendant, pending final judgment, from: (i) conditioning Summit Lake's continued operation of its existing, recognized winery uses on Summit Lake's funding or construction of the road improvement described in the County's May 12, 2021 memorandum; and (ii) commencing or continuing any enforcement action against Summit Lake's existing uses on the ground that Summit Lake has not funded or constructed that road improvement. This motion does not seek, and any order granting this motion should not require, the County to issue, process, reinstate, or approve any use permit or application.

The motion is brought on the grounds that Summit Lake is likely to succeed on the merits of its claim that Napa's demand that Summit Lake fund a road improvement exceeding $2 million bears no essential nexus or rough proportionality to any impact of Summit Lake's continued or future operations and is therefore an unconstitutional exaction; that Summit Lake will suffer irreparable harm absent relief; and that the balance of equities and the public interest favor an injunction.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities in support of the motion, the declaration of Heather Griffin and the exhibits

attached thereto, Defendant's anticipated opposition, and on any oral argument entertained by the Court in connection with this motion.

Respectfully submitted,

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, pro hac admission
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

**SUMMARY OF ARGUMENT**

For four decades, Plaintiff Summit Lake Vineyards & Winery has welcomed customers on its property for winetasting and events. Yet in 2019, when Summit Lake voluntarily submitted for a status determination, Napa County changed its tune on Summit Lake's permissions. Napa insisted that Summit Lake spend $2 million to upgrade the private road providing access not only to Summit Lake's tasting room but to other wineries as well. If Summit Lake refused to spend the money to benefit every other property owner—all while keeping its level of business the same—Napa said Summit Lake could no longer host guests on its property for tastings on site.

Summit Lake, therefore, requests a status quo injunction to maintain its historical level of operations while its claim regarding Napa's unconstitutional exaction of road improvements is adjudicated. Summit Lake is likely to succeed on the merits of its claim under *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987), *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994), *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 606, 612–19 (2013), and *Sheetz v. County of El Dorado*, 601 U.S. 267, 275–80 (2024). Napa's million-dollar road exaction bears no nexus or proportionality to Summit Lake's continued or future operations. It is, instead, an attempt by Napa to strongarm Summit Lake "alone [to] bear public burdens which … should be borne by the public as a whole." *Dolan*, 512 U.S. at 384.

The remaining injunction factors all favor Summit Lake. Without injunctive relief, Summit Lake faces the loss of customer goodwill and the potential closure of its business. Those reputational harms are irreparable because Summit Lake cannot unring the bell if forced to close. *E.g.*, *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). Next, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Last, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Taken together, every injunction factor favors Summit Lake, and Summit Lake respectfully requests preliminary injunctive relief to keep its business open and operating.

# I. INTRODUCTION

Napa County refuses to recognize Plaintiff Summit Lake's historical operations unless Summit Lake agrees to spend $2 million to rebuild a 1.5 mile shared private road. The County makes this demand despite conceding that Summit Lake's application results in "no physical changes and no increase of visitors." Instead, it demands Summit Lake improve the road because of the "cumulative" traffic of "over a dozen parcels" that share the road. Napa's demand has no essential nexus to any impact of Summit Lake's use and is grossly disproportionate to it. It is an unconstitutional exaction under *Nollan*, *Dolan*, *Koontz* and *Sheetz*.

Napa's recent discovery responses confirm the arbitrariness at the heart of the demand. The County admits it treats wine as an agricultural product, yet denies that wineries are an agricultural use for purposes of the very Road and Street Standards it invokes; it admits that other wineries have received permits without repaving all of their roads and that it grants "exceptions, waivers, variances, or alternative compliance" under those standards; and it admits that Summit Lake may sell unlimited bottled wine to go with no appointment while refusing to admit that such retail visits generate no fewer trips than the tastings it prohibits. (Exhibit 1; RFA 68, 109, 141-42, 167-68.) And within the last year, Napa County unveiled a new program which allows for tasting events for up to 49 people on vineyard properties, but not winery properties, without requiring road improvements, as Napa County explicitly determined it would treat those tastings as agricultural, rather than commercial, so as to not trigger the Road and Street Standards.

This motion does not ask the Court to order the County to issue or process any permit. It asks only that the County be restrained, pending final judgment, from two things: (i) conditioning Summit Lake's continued operation of its existing, recognized uses on Summit Lake funding or constructing the road improvement; and (ii) commencing or continuing enforcement against those existing uses on the ground that Summit Lake has not funded or improved the road. That relief is prohibitory, preserves the decades-long status quo, and leaves every genuine, content-neutral safety requirement intact.

Because the exaction demand is coercive and ongoing, because Summit Lake faces the imminent loss of a four-decades-old business if forced to choose between a prohibitive expenditure

and closure, and because the County has no legitimate interest in enforcing an unconstitutional condition, the *Winter* injunction factors favor relief.

## II. STATEMENT OF FACTS

### A. A Small Winery's Road is Supposed to be Treated Like a Single-Family Residence.

When the County enacted the small winery exemption program in 1980, it adopted, in Resolution No. 80-21, the following design criterion for a small winery's access road:

> Access road requirements for a small winery, when the winery is the only facility other than related residential structures served by the access road, shall be the same as for a single-family residence built on the same parcel.

(**Ex. 2;** NAPA_FED028149–028153.) The Planning Commission adopted that standard on the express finding that "a small winery would have the same traffic load as a single residence," and it deliberately eliminated left-turn-lane and paving requirements as an unwarranted "tremendous expense." (**Ex. 3**; NAPA_FED027687–027696.) A Public Works representative confirmed a small winery would have "no road requirements" beyond a short safety apron (**Ex. 4**; NAPA_FED027739-40), and the Commission Chairman candidly described a road-improvement condition as "an exaction … a tax." (**Ex. 5**; NAPA_FED027667–027668.) Consistent with that standard, the County historically imposed only a "14 ft. road requirement" on Plaintiff Smith-Madrone's winery on Spring Mountain Road, and granted neighboring small wineries deferred-improvement agreements rather than compelled construction. (**Ex. 6**; NAPA_FED027663; 027709–027710.)

### B. The County's "Commercial Driveway" Demand was Triggered by Others' Traffic.

In 2019, Summit Lake applied under the County's Use Permit Compliance Program to have its existing, decades-old uses recognized. The application sought no new construction and no increase in visitation. On May 12, 2021, the County's engineering staff issued a memorandum stating that the application's purpose is only to "[r]ecognize visitation, tours and tasting, marketing, and site improvements," yet it concludes:

> The <u>cumulative traffic demand</u> along the roadway is greater than forty (40) Average Daily Traffic (ADT) and, therefore, the project triggers the scope and application of the 2021 Napa County Road and Street Standards …. Please provide driveway plans to the nearest public road to bring the

> roadway serving the winery into compliance with the RSS requirements for a commercial driveway.

(**Ex. 7**; NAPA_FED027879 (emphasis added).) County engineering personnel confirmed that the requirement applied because of the "total or cumulative ADT for all uses served by the private drive," which "serves over a dozen parcels including multiple wineries." (**Ex. 8**; NAPA_FED026611–026626.) Summit Lake's consultant established, without contradiction, that the application "doesn't include one new car on the road" and reflects "zero increase to intensity or density." (*Id.*)[1] That figure will remain true regardless of any future increase in appointment-tasting visitation Summit Lake may separately seek through lawful solicitation as Napa already permits unlimited, appointment-free retail visitation on this same road without any comparable improvement condition. (Ex. 1; RFA 109.)

Regardless, Napa demanded Summit Lake solely foot the bill for a full commercial rebuild of the shared road "to the nearest public road," at a $2 million cost, that would require "rewriting the easement," "removing newly constructed fences," and "negotiating with four other property owners," and that is "very likely … simply infeasible to construct." (**Ex. 9**; NAPA_FED026893–026902.) The County has confirmed that the road improvement is the sole outstanding condition to approval. The improvement "remain[s] a requirement in order for PBES to support your project," and the County asked Summit Lake to "confirm your intent to comply with the NCRSS, which is necessary to enable the County to proceed." (*Id.*) If Summit Lake refused to comply, then it was required to "cease" its historical operations as they would not be recognized by the County. (**Ex. 10**; NAPA_FED026824.)

### C. The County Applies Its Own Nexus Standard, Except to Summit Lake.

Napa's own County Counsel has advised the Board of Supervisors that any "development exaction or condition" must satisfy "the nexus requirement set forth … by the U.S. Supreme Court in … *Nollan*," which is "merely [an] expression[] of the general constitutional requirement that a rational basis must exist for any development exaction or condition," and that conditions must be "site-specific … tailored … in each case." (**Ex. 11**; NAPA_FED028522–028524.) And the County

[1] Napa has admitted that Summit Lake may host an unlimited number of customers for sale of wine to go without any appointment. (**Ex 1**; at RFA 109).

in fact calibrates road exactions to real traffic impact. It required a left-turn lane of Grgich Hills, a 250,000-gallon Highway 29 winery authorized for approximately 600 persons per day. (**Ex. 12**; NAPA_FED029875.) But it withdrew a previously imposed left-turn-lane condition for Vineyard 29, a 48,500-gallon Highway 29 winery, on the express finding of "no changes to production, tours and tastings visitation, marketing activities." (**Ex. 13**; NAPA_FED029889.) The County also admits that wineries have received use permits without repaving all their roads and that it has granted "exceptions, waivers, variances, or alternative compliance" under the Road and Street Standards. (Ex. 1; RFA 167-68.) This evidence confirms that Napa's standards are not the neutral, mandatory safety requirement the County claims, but a discretionary demand it waives for some but enforces against Summit Lake.

## III. <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has also applied a "sliding scale" standard for preliminary injunctions, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this "alternate formulation of the *Winter* test," "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). Where, as here, the government is the party opposing the injunction, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### B. <u>The Requested Injunction Is Prohibitory and Preserves the Status Quo.</u>

The relief Summit Lake seeks is prohibitory, and the ordinary *Winter* standard governs. A prohibitory injunction "prohibits a party from taking action and preserves the status quo," whereas

a mandatory injunction orders a responsible party to take action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). The "status quo ante litem" is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Here, that status quo is Summit Lake's decades-long operation of its winery, including an unlimited number of customer visits to purchase wine to-go, the on-site tastings and visitations that Summit Lake conducted without objection for thirty-five years, free of any demand that it rebuild a shared private road. The County disrupted that status quo. An order restraining the County from enforcing that demand against Summit Lake's existing operations restores and preserves the last uncontested status; it does not disturb it.

### C. <u>Summit Lake Is Likely to Succeed on the Merits of Its Exaction Claim.</u>

The government may not condition approval of a land-use permit on the owner's relinquishment of constitutionally protected rights unless the condition bears an "essential nexus" and "rough proportionality" to the development's impact. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). That doctrine applies to monetary exactions and to permit denials; it is not limited to compelled dedications of land. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606, 612–19 (2013). A demand that a permittee spend money on road improvements as the price of a permit is squarely within *Koontz*. Under *Dolan*, the government, not the landowner, bears the burden of demonstrating the required nexus and proportionality. 512 U.S. at 391 n.8.

An exaction satisfies *Nollan* only if it is connected to an impact of the proposed development. 483 U.S. at 837. Here, the County's own engineer ties the road demand to the "cumulative" traffic of "over a dozen parcels" that share the road; not to any traffic generated by Summit Lake, whose application adds "not one new car." (**Ex. 7**; NAPA_FED027879; **Ex. 8;** 026611–026626.) The County has not denied the point in discovery. Instead, it admitted that Summit Lake is allowed unlimited retail visits without appointment (Ex. 1; RFA 109.) Requiring one small winery to rebuild a mile-and-a-half shared road because other parcels use it is the paradigm of a missing nexus. It forces Summit Lake "alone [to] bear public burdens which … should be borne by the public as a whole." *Dolan*, 512 U.S. at 384 (quoting *Armstrong v. United*

*States*, 364 U.S. 40, 49 (1960)). The proposed new road simply has no nexus to Summit Lake's ongoing operations.

Nor can Napa manufacture a nexus by pointing to the solicitation and advertising rights Plaintiffs seek to confirm in parallel proceedings concerning appointment tastings. Any lawful growth in appointment-tasting visitation that solicitation might someday produce is immaterial by comparison to the retail traffic Napa already permits on this same road without limit, without appointment, and without any road-improvement condition at all. (**Ex. 1**; RFA 109.) Napa cannot credibly argue that modest, appointment-based tasting traffic renders the road inadequate while simultaneously permitting unlimited, appointment-free retail traffic on the identical road with no comparable demand. If the road is adequate for the traffic Napa already allows without restriction, it is necessarily adequate for the substantially smaller traffic at issue here. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488–89 (1995) (a restriction that does not address the greater share of the conduct it purports to regulate cannot be said to directly and materially advance the government's asserted interest).

Napa has implied that the fact that Summit Lake sits on a private road, rather than a public road, somehow changes the analysis without ever explaining why. *See* Dkt. 99, p. 41. This lack of an explanation is likely because Napa's Road and Street Standards ("RSS") show that this distinction is not material. The RSS define "Roadway" to mean any surface used for vehicle travel that is "either publicly owned and maintained, or privately owned and maintained, but dedicated for public use." (**Ex. 14**; Road & Street Standards § 4 (Definitions).) And the RSS's dedicated section governing private roads confirms that private road developments are "subject to the same improvement requirements as public road requirements," with the only distinction being that "the roads will not be maintained by the County"; developers are "generally required to offer to dedicate roadways" precisely "to secure access rights for the public." *Id.* § 8 ("Private Road Developments"). Under the County's own Standards, then, a road's "private" character describes who bears maintenance responsibility, not whether the public retains access to it or whether the road is subject to the very Standards Napa invokes here. Having imposed the commercial-driveway condition on Summit Lake's shared access road under the authority of these Standards, and having

determined that private roads are dedicated for public use before they will be approved, Napa cannot now argue that the road's private ownership places the condition beyond constitutional scrutiny.

Even if a nexus exists, the condition must be "roughly proportional … both in nature and extent to the impact of the proposed development." *Dolan*, 512 U.S. at 391. A $2 million (and likely infeasible) commercial road rebuild, demanded in exchange for the recognition of existing uses that add zero new traffic, fails that test on its face. The County's own enacted standard confirms the disproportion—a small winery's road is to be "the same as for a single-family residence," and the County deliberately struck left-turn-lane and paving requirements from the small-winery standard as an unwarranted "tremendous expense." (**Ex. 2**; NAPA_FED028149–028153; **Ex. 3.** 027687–027696.) Yet Napa does not give Summit Lake that grace.

Napa's own admissions further underscore the arbitrariness. It admits it treats wine as an agricultural product and that its Code classifies wineries as agriculture, yet it denies that wineries are an agricultural use for purposes of the Road and Street Standards, reclassifying an admittedly agricultural use as "commercial" solely to trigger the more demanding road standard, with no codified basis for the switch. (**Ex. 1:** RFA 68, 141.) And it admits it grants road-standard waivers to other wineries. (*Id*. RFA 167–68). For instance, it imposes left-turn lanes on, and deletes them from, large Highway 29 wineries based on actual traffic. (**Ex. 12;** NAPA_FED029875; **Ex. 13** 029889.) Yet Napa demands Summit Lake commit a full commercial rebuild despite no actual impact.

The County's own recent conduct confirms that a road carrying fewer than forty Average Daily Trips ("ADT") is not, in the County's own estimation, inadequate to support wine-related visitation, which directly undermines any claim that the commercial-driveway exaction bears a rough proportionality to Summit Lake's use. Effective January 1, 2026, the California Legislature authorized winegrowers to obtain an "estate tasting event permit" allowing on-site and off-site sale and tasting privileges at qualifying vineyard parcels, subject only to local health, safety, and land-use review. Cal. Bus. & Prof. Code § 23399.03; Assembly Bill No. 720 (Rogers), ch. 562, Stats. 2025. In implementing that statute through its own pilot program, Napa County did not require

applicants to demonstrate compliance with anything resembling the "commercial driveway" standard the County seeks to impose on Summit Lake. Instead, the County adopted a single, objective traffic ceiling: an event qualifies so long as it "remain[s] below 40 Average Daily Trips (ADT)," a limit the County's own guidance explains is sufficient because it "maintains the road's designation as an 'agricultural road' under Napa County Road and Street Standards, intended for low-volume agricultural operations with limited public access." Napa County Fire Dep't, Estate Tasting Event Permit (AB 720), https://www.napacounty.gov/3966/Estate-Tasting-Event-Permit-AB-720 (last visited Sept. 16, 2026). (**Ex. 15**; Tasting Event Permit) The County has determined that agricultural roads serving vineyards are sufficient to handle on-site winetasting events for up to forty-nine visitors, thirty-six times a year, on a road carrying up to 40 ADT without requiring any road improvement, exaction, or discretionary review beyond a Fire Marshal safety sign-off. (**Ex.16**; Type 93 Permit Faq.)

Napa County cannot simultaneously maintain, on the one hand, that sub-40-ADT roads are adequate to support public wine-tasting events under its own newly adopted policy, and on the other, that Summit Lake's materially similar visitation cannot proceed without a commercial-grade road rebuild costing $2 million. Ironically, if Summit Lake owned or controlled the parcel immediately adjacent to its own winery, accessed by the very same road the County contends is inadequate to support Summit Lake's existing, decades-old visitation, Summit Lake could obtain a Type 93 permit for that adjacent parcel and thereafter host up to forty-nine visitors per event, thirty-six events per year, so long as that adjacent parcel lacks a winery production facility. Cal. Bus. & Prof. Code § 23399.03(a)(1); (**Ex.16**; Type 93 Permit Faq.)

The County has suggested that the road requirement is a generally applicable standard "rooted in the State's minimum Fire Safe Regulations," and therefore not subject to exaction scrutiny. (**Ex. 17**; NAPA_FED026984.) That argument is foreclosed. In *Sheetz v. County of El Dorado*, 601 U.S. 267, 275–80 (2024), the Supreme Court held unanimously that the *Nollan/Dolan* test applies regardless of whether a permit condition is imposed ad hoc or by generally-applicable legislation. A label of "general standard" does not exempt the demand from nexus-and-proportionality review. In any event, the standard is not the mandatory, even-handed rule the

County claims. Napa admits it grants "exceptions, waivers, variances, or alternative compliance" under the Road and Street Standards and has permitted other wineries without requiring them to repave all their roads. (**Ex. 1**; RFA 167-68.) Napa also does not apply it to Type 93 winetasting events. Instead, the trigger here is admittedly the *cumulative* traffic of a dozen parcels, so even a legitimate safety interest does not tie *this* burden to *this* applicant. Summit Lake proposes no increase in visitation or project-generated traffic, while the challenged condition was triggered by cumulative traffic from more than a dozen separately owned parcels. Napa may regulate impacts attributable to Summit Lake; it may not make Summit Lake rebuild the shared road because of impacts created by others.

The County's assertion that Summit Lake "walked away" does not defeat the claim; it confirms it. An exaction inflicts its constitutional injury when the unconstitutional demand is made, whether or not the owner accedes. As *Koontz* holds, the unconstitutional conditions doctrine "forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them," and applies "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right." 570 U.S. at 606–07. A landowner who refuses an unconstitutional condition, and is denied the benefit as a result, has suffered the very injury the doctrine addresses. *Id*. Summit Lake's decision not to fund an infeasible, million-dollar exaction it could not lawfully be required to build is thus not an abandonment of its rights; it is the predicate for its claim. And the demand remains operative—the County's "definitive position" is that Summit Lake may not operate its recognized uses without the road.

The County has conditioned both approval of Summit Lake's application and the continuation of its existing operations on Summit Lake's funding the road and surrendering its pre-WDO entitlements and, separately, on executing an indemnity against suing the County. (**Ex. 9**; NAPA_FED026893–026902; **Ex. 18;** 026065; Dkt 70-18.) Conditioning a government benefit on the surrender of constitutional rights, including the right to just compensation and the right to petition the courts, is an unconstitutional condition. *Koontz*, 570 U.S. at 604–06.

**D. <u>Summit Lake Will Suffer Irreparable Harm Absent an Injunction.</u>**

Summit Lake faces the imminent loss of a business it has operated for more than forty years. The County has not merely threatened to close Summit Lake's application. It has demanded that Summit Lake "immediately cease all unpermitted activities" which Napa claims includes on-site tastings and visitation that constitute the winery's core business unless Summit Lake makes "reasonable progress" toward the two million-dollar road improvement. (**Ex. 19**; NAPA_FED026681-82.) The choice the County imposes is therefore not the payment of a compensable fee. It is the choice between shuttering a four-decade-old business and funding an irreversible, prohibitively expensive, and likely "infeasible" public-road rebuild the County itself concedes is "prohibitive." (**Ex. 9**; NAPA_FED026893–026902; **Ex. 20**; 027450.) Either choice inflicts harm that money damages cannot repair.

The threatened loss of an ongoing business and its customer goodwill "constitutes irreparable harm" that damages cannot adequately redress. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *accord Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). If Summit Lake is forced to cease the tastings and visitation on which its business depends, it will lose customers, wine-club members, and goodwill built over forty years; losses that are notoriously "difficult to measure" and cannot be recovered after the fact. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (loss of business and goodwill supports irreparable harm); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

The availability of a takings damages remedy does not make this harm compensable. Napa may argue that, because a takings claim may be pursued for damages under *Knick v. Township of Scott*, 588 U.S. 180 (2019), any injury is redressable in money. That argument fails for two independent reasons. First, the injury Summit Lake seeks to enjoin is not the eventual payment of an exaction. It is the coerced choice the unconstitutional-conditions doctrine forbids. The demand is that Summit Lake either surrender its constitutional right to be free of an uncompensated exaction or lose its business. That injury occurs when the choice is imposed, and no later damages award

can undo a closure or an infeasible construction undertaken in the interim. *See Koontz*, 570 U.S. at 606–07. Second, Summit Lake cannot be made whole in damages for the compelled expenditure because the County has represented that the improvement may be "simply infeasible to construct" and would require "rewriting the easement," "removing newly constructed fences," and "negotiating with four other property owners" over whom Summit Lake has no control. (**Ex. 9**; NAPA_FED026893–026902.) A plaintiff faced with a demand it cannot lawfully or practically satisfy, on pain of losing its business, has no adequate remedy at law. *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (where sovereign immunity or other barriers may foreclose later monetary recovery, the threatened economic injury is irreparable); *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (harm is irreparable where damages are difficult to calculate and recovery uncertain).

Finally, the harm is imminent and ongoing, not speculative. The Ninth Circuit has already held that Summit Lake's claims are justiciable, and the County has taken its "definitive position" that it will not recognize Summit Lake's existing entitlements absent the road improvement. (**Ex. 20**; NAPA_FED027450.) The County continues to demand "reasonable progress" and has warned that the application will be deemed abandoned and enforcement will follow. The threat is present, the coercion is continuing, and each day the demand stands, Summit Lake must either curtail its lawful operations or expose itself to enforcement and penalties. That is the "immediate threatened injury" a preliminary injunction is designed to prevent. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

**E. <u>The Balance of Equities Favors an Injunction.</u>**

The balance tips sharply toward Summit Lake. On its side is the imminent loss of a four-decade-old business and the coerced expenditure of millions of dollars. On the County's side is nothing cognizable: a status quo injunction asks the County only to refrain, during the pendency of this action, from enforcing a road condition that is likely unconstitutional. The County "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The requested relief leaves every genuine, content-neutral health-

and-safety requirement intact; it restrains only the use of the road exaction as a lever to coerce Summit Lake and to close its operations pending judgment.

**F. <u>An Injunction Serves the Public Interest.</u>**

The public interest is not served by the enforcement of an unconstitutional exaction, and the government "does not have an interest in" enforcing an unconstitutional condition. The public interest lies in ensuring that land-use exactions bear the nexus and proportionality the Constitution requires, and in preventing the County from compelling a small agricultural business to fund public-facing infrastructure untethered to any impact it causes. Those interests favor relief. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

## IV. <u>CONCLUSION</u>

Summit Lake respectfully requests that the Court preliminarily enjoin Defendant, pending final judgment, from (i) conditioning Summit Lake's continued operation of its existing, recognized winery uses on Summit Lake's funding or construction of the road improvement described in the County's May 12, 2021, memorandum; and (ii) commencing or continuing any enforcement action against Summit Lake's existing uses on the ground that Summit Lake has not funded or constructed that road improvement. This motion does not seek, and any order should not require, the County to issue, process, reinstate, or approve any use permit or application.

Respectfully submitted,

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, pro hac admission
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

51568572.2/162870.00001