# Exhibit 4

NAPA COUNTY
CONSERVATION, DEVELOPMENT AND PLANNING COMMISSION
1121 First Street
Napa, California

MINUTES
August 15, 1979

The NAPA COUNTY CONSERVATION, DEVELOPMENT AND PLANNING COMMISSION met in regular session on August 15, 1979 at 10:08 A.M. in the Board of Supervisors' Meeting Room, Carither's Building, Napa, California, with the following members in attendance: W. Beckstoffer; V. Fershko; L. Hawkley; S. Snowden, Chairman. Ex-Officio and Advisory Members present: J. Hickey, P. Crundall, C. Lober, A. McClimans, T. Cave, J. Stewart, W. Selleck.

Commissioner Hawkley led the salute to the flag.

Minutes of the meeting of July 18, 1979 were approved as published.

NAPA NORTHEAST AREA REZONING PARCEL LIST

CDPC Tape #107980, Track #5

Napa Northeast Area Rezoning Parcel List - List of Parcels for purpose of public noticing.

A. McClimans presented a review of the list of parcels for public hearing on August 29, 1979 at Vichy School at 7:00 P.M. Hickey said Commission approval of the list of parcels would trigger notification to the individuals on the rezoning as discussed with the Board of Supervisors. The parcel listings will be sent to the Commissioners prior to August 29th.

McClimans described on the maps the proposal plus those changes that came about as a result of the joint meeting between the Commission and the Board of Supervisors. Maps used by McClimans in his narration were Proposed Zoning Map; Existing Zoning Map; General Land Use Map. When the Planning Department and the Board of Supervisors had their joint meeting on August 7th and looked at this proposal, they changed five parcels to agricultural watershed. (Benson, Goodwin, Schneider, Steiger, Brown) These parcels total approximately 300 acres. Since that time the Department has come to the conclusion that in order to avoid the necessity of an EIR on the entire rezoning, it is necessary to delete six parcels on the southwest corner of the rezoning area. These parcels are adjacent to the next area to be rezoned, the Coombsville area. There are three conditions that affect these parcels that do not affect other parcels in the area: 1) Subject to flooding 2) Difference in whether they can or cannot have animals presently. Hickey said the animal aspect is if it were RC, for example, they could put stables in and would require an EIR whereas as it is currently zoned R-1:A they can't have stables but can have animals. 3) Somewhere in the vicinity there is a supposed archaeological site. The archaeological issue will have to be resolved, a determination will have to be made as to the County's role in regard to archaeological sites triggered by the rezoning.

Hickey said in regard to the floodplain zoning they are told by the Corps of Engineers and Federal government that it has to be resolved by February 1st.

Action:

MOTION BY BECKSTOFFER, SECONDED BY HAWKLEY

that Commission direct the Department to proceed with the zoning changes as indicated on the Proposed Zoning Map, which will trigger notification going to individuals on the parcel list.

This motion carried on the following vote:

AYES: Beckstoffer, Fershko, Hawkley, Snowden
NOES: None
ABSTAIN: None
ABSENT: None

SMALL WINERY - USE PERMIT EXEMPTIONS

Public Hearing:
CDPC Tape #107980, Track #5

Proposed Ordinance Amendments to permit the construction of "small wineries" without use permit approval in all AP (Agricultural Preserve) and AW (Agricultural Watershed) Districts.

The Planning Director reviewed the Department Report and Recommendation.

Recommendation: That the Commission proceed with the hearing. The Department will have comments next meeting in regard to the environmental aspects of this proposal.

Speakers:

Richard A. Murray
1289 Thompson Avenue
Napa, California

Neil Sevangi

Oakville, California

Warren Bean
6020 Monticello Road
Napa, California

Public hearing opened at 10:29 A.M.

Richard A. Murray, 1289 Thompson Avenue, Napa, California, said his concern was the five-acre limitation. Someday he may want a small winery and his property is 4.9 acres. He said five acres was a bit large for 16,000 gallon winery. He would like to see something in the Ordinance that limits it to a plot plan for a person proposing something less than five acres. They could submit a detailed plot plan to show the buildings, required setbacks, sanitation facilities, etc. He said it could be done on a 2½ - 3 acre piece of property, in his opinion.

Snowden said it was important that the speaker understand that the effect of having 4.9 acres, even if this were adopted as is, would not be that you could not put a winery on it, but that you would have to get a use permit.

Beckstoffer said in regard to 16,000 gallons and 20-acre vineyard that computation is not realistic. You might have 10% waste. The average yield in Napa County is 3.2 tons per acre. Very few varieties in Napa County will yield 5.5 tons per acre.

Neil Sevangi, Oakville, California said the parcel he was concerned about is owned by his father-in-law. They have 17 acres off Money Lane in Oakville. There is an existing barn on the property. The rest is in grapes. There is a drainage ditch that is quite wide and divides the property. He asked if in two years from now would they be able to by-pass the use permit and convert the barn into a small winery. What is the reasoning behind the 200 ft. frontyard setback? This barn happens to be 100 ft. off Money Lane. If it were 200 ft. it would be in the middle of the ditch. When you start putting in a road on an old vineyard site it is difficult. You have to pack it down. The economics of going in 200 ft. would be that much more expense and work. Their particular place is the perfect setting for a small winery. Can this barn be converted to a winery, asked Sevangi? Money Lane is a public road off Oakville Cross Road.

Hickey said the concern which had been expressed by a number of individual agencies such as the City of St. Helena is that the County is creating a corridor of wineries up and down Highway 29 and Silverado Trail. The Board of Supervisors has been concerned about the numbers of wineries that are developing in the current setback, which is 90 ft. They felt additional setback was desirable and proposed 400 ft. from Silverado Trail and State

Highways and 200 ft. from minor roads. The potential economic impact of having to build additional driveway or access roads to those wineries was discussed. It was pointed out there is no magic in 200 and 400 ft. any more than there is in 90 ft. as far as solving problems are concerned, but general proposal by the Board was if there is to be exemption on the use permit provisions, that kind of setback was desirable.

Snowden said what we are talking about is not whether you will be able to put a winery in the barn, but whether you would be able to put a winery in the barn without obtaining use permit to do so. If the Board were to adopt the Ordinance just the way it is and the barn on the property did not fall within the conditions of that ordinance, you could still get a use permit to put a winery in cheaper than you could build that road. 40 to 50 wineries that have been built in the last five years have been built with use permit, so you would not be under any greater burden than those wineries.

Hickey explained the concept of use permit, saying it was not intended as a negative, punitive action but rather was a positive step and was intended to resolve questions such as Sevangi brought up. A use permit could be used to fit the conditions to a site as opposed to saying 200 ft. everywhere in the County.

Fershko said the County is losing more and more control in regard to creating a corridor of wineries by deleting use permit control. He was concerned with having more stringent landscaping requirements and would like to see some kind of standards other than just saying "the applicant shall submit a landscaping plan to be approved by Staff." He felt the owners of these wineries would be just as happy to put money into landscaping to screen it from the road than to build a paved road. Fershko said perhaps the Commission should consider coming out with a landscaping ordinance or policy or standards that may be written into this ordinance where they "may be exempt if they do the following in terms of landscaping."

Hickey said in the definition concept they have to be fairly precise - otherwise your definition is so undefined that it is impractical and unworkable. Therefore, if they start spelling out landscaping requirements you are putting every winery into the same box. You would get into the questions of administration. Other places have an ordinance that says "shall meet the landscaping requirements of the County." Fershko asked if they could incorporate that into an ordinance. Hickey said the Department would look into the matter and see what they could come up with that was more specific before the next meeting.

Sevangi said he felt that a grove or a landscape setting that would be perfect for a small winery would be preferable to having restrictions of 200 ft. setbacks. Fershko said what he was talking about would also apply to wineries that would require use permits, as well. Beckstoffer agreed with Fershko, but said he thought the setback was important. In the general situation where you are looking at the whole of Silverado Trail and Route 29, the setback is most important, as well as landscaping requirements. Hickey said the purpose of this is not to encourage wineries but to reduce the Commission and Staff work load.

Sevangi asked if "by appointment only" was considered a private tasting? Hickey said yes. Site improvement requirements are less for "appointment only" wineries.

Warren Bean, 6020 Monticello Road, Napa, California, asked what the significance of the word "declared" as a modifier of "annual production capacity" (in the definition of small winery) meant. Hickey said the applicant in filing an

application for his proposal would identify what the capacity of the winery was to be. The responsibility to identify the gallonage would be on the applicant, not on the County. Bean felt it was a weak provision. Administratively, how is the question of compatability with surrounding land use to be determined? If that is in connection with a building permit, added Bean, it seemed to him they were running the risk of making their building permit process discretionary and thereby potentially subject to CEQA. Without it you follow the rule of ministerial act on the part of the building inspector. Hickey said that is one of the environmental questions that needs to be resolved on this matter and is one of the reasons the Department does not have a specific recommendation today.

Hickey said if the Commission is satisfied in terms of the testimony they have had previously and what they have received today, he recommended they close the public hearing and agendize this matter for consideration and action at the September 5th meeting. The Department will have thee environmental recommendation prepared for that meeting. This matter has now been discussed at three Conservation, Development and Planning Commission meetings. Snowden suggested the public hearing be continued so the recommendation of the Department will be a part of the public hearing. Beckstoffer said he was not satisfied with the Ordinance as it is today and would like the opportunity to discuss that. He agreed with Fershko on the mature landscaping standard but would like to see two main points included. 1) Need to get into some definition of what a winery is, a definition that says a winery crushes grapes or other agricultural products...maybe the Commission won't go so far as to say grown in Napa County. If they don't at some point define what a winery is, anything that processes an agricultural product becomes a winery and becomes acceptable to the AP and AW. That is not the intent. So, he would like to see something about crushing grapes in the definition of winery. 2) Signing is important. We are trying to assist Staff in processing that legitimate agricultural processor. We are trying to exempt from use permit process that legitimate processor of agricultural products in Napa County (not the glass salesman, or the cheese salesman or the man who brings wine in in bottles who puts a sign up and has basically a retail store). He suggested in regard to the signing that signs be located only on the wineries.

Hickey said the Commission has to make the definition specific enough so they don't raise too many issues and get into question of CEQA. If there are discretionary aspects in the definition, then it is not exempt from use permit. It is the building permit which in essence is exempt from CEQA as a ministerial act but if attached to that building permit there are five or six discretionary decisions, then it is questionable. Landscaping standards could be set up in a different provision and cross referenced by definition. When you get into the question of what is a legitimate appointment scheduling, etc., he did not see how that could be determined or enforced. What works for one winery in terms of appointments and scheduling might not work for another winery. He did not think you could make that uniform. Hickey said if a winery is open 5 - 7 days a week for tasting, and it is advertised and a known fact, then it is a different category than a winery which basically is closed, except for tasting only by appointment.

Hickey agreed signing on the building only would be reasonable. He said the signing question could be resolved easier than the landscaping.

Road requirements were discussed. Fershko asked J. Stewart of Public Works, in terms of road requirements for "small winery" what will they be? Stewart said there would be no road requirements. Stewart said that was one of their concerns. In use permit process today they look at health, safety and welfare, as well as aesthetic considerations. Now that it is dropping into only building permit, they are still attaching aesthetic considerations. Fershko said a wide, paved road leading into a winery attracts the public more than a basic country road leading to a winery. Stewart said he thought that at a minimum as a safety consideration they would want to mention something about the first

20 or 30 feet of the driveway being wide enough to accept two cars so if one is turning out the other doesn't have to hang out in the traveling lanes. The rest of the road is no problem. It can remain gravel, dirt, dust, whatever. Safety is more important to the Department of Public Works than aesthetic considerations.

Snowden said the definition of a small winery should include "such wineries as are set back 200 or 400 ft. and which have a driveway which has 20 - 30 ft. of double lane access to the nearest public road," or something like that. Hickey said basically that is the approach being used. Beckstoffer felt they should have the same requirements as a residence. A residence does not have this double lane requirement. Hickey said a winery does have more traffic, does have deliveries, people coming and going. You could say it is no greater than a residence, but the assumption is it is a non-residential use. It is a business use.

Prospect of widening Silverado Trail and Highway 29 was briefly discussed. Commissioners agreed they did not want to see a widening program.

Commissioners decided September 5th Agenda was full and September 19th would be a better date.

CDPC Tape #107980, Track #6

Action:

CONTINUED

Chairman Snowden ordered this matter continued to September 19, 1979, morning session (10:00 A.M.) Public hearing remained open.

INDUSTRIAL BUILDING EXPANSION - USE PERMIT EXEMPTION

Public Hearing:
CDPC Tape #107980, Track #6

Proposed Ordinance Amendment to allow expansion of any industrial zoned industrial buildings up to 50% of the size of the existing building without use permit approval subject to certain criteria.

The Planning Director reviewed his memorandum to CDPC dated August 1, 1979 with the Commission.

Recommendation: That the Commission set August 15, 1979 at 10:00 A.M. as the time for a public hearing to consider the proposed amendment to Chapter 9, Section 12291 of the County Zoning Ordinance regarding the permitted expansion of approved buildings in an industrial zone.

Speakers: None

Public hearing opened at 11:20 A.M. No one in the audience wished to speak in regard to this matter.

Commission Discussion:

Snowden said as a permitted use, expansion of an existing industrial building is allowed under the proposal so long as the expanded use will in general conform to the conditions of approval of said use permit. He asked: 1)What does "in general" mean? 2) How is that determined? Does that raise the same kind of question about being discretionary in nature? Hickey replied it could. Obviously, the evaluation would have to take place at the Building Permit stage. When the applicant has submitted plans for a building permit, it requires that the Planning Department sign off the zoning. At that time the addition would be reviewed in relation to the existing building and