# Exhibit 5

Commissioners agreed this matter would be scheduled for 1:30 P.M. this afternoon for action.

Note: Brown said he did not want these properties that were considered today lumped in with his comments previously on the other property. Snowden said this will be a distinction he can make at the Board of Supervisors level and Commission records will show the distinction because they had to hold a separate public hearing on those.

A recess was taken at 10:06 A.M.

The meeting reconvened at 10:15 A.M.

SMALL WINERIES
PROPOSED ORDINANCE
AMENDMENTS

Public Hearing:
CEQC Tape, Track #4
Continued from: August 15, 1979, September 19, 1979 and October 17, 1979 by the Commission.

Proposed Ordinance Amendments to permit the construction of"small"wineries" without use permit approval of all AP (Agricultural Preserve) and AW (Agricultural Watershed) Districts. Environmental determination - to be determined.

The Planning Director said Harry Hamilton, the Director of Public Works and Kenneth Johanson of Public Works are present, as requested by the Commission at their last meeting.

Snowden explained to Hamilton that this came about when the Board of Supervisors indicated that deregulation of small wineries was desirable and an ordinance saying you didn't need a use permit to construct a small winery was prepared. It came to hearing and as the hearing procedure developed, said Snowden, it also developed that the implications of that ordinance unless some concise and clear delineations were imposed, would be considerable and might require an environmental impact report. The Staff prepared a detailed series of guidelines and development criteria of what a small winery might be considered to be under theordinance. Those guidelines were perceived by people sympathetic to concerns of small wineries as being as hard to deal with as the original use permit requirement. At the last meeting the Commission got into fairly long meeting regarding the problems with the proposed ordinance and the upshot of the meeting was in order to provide a blanket exemption for small wineries from use permit procedure, would be complicated andthe big problem faced by those building small wineries or setting them up was less regulation than the conditions attendant to the proposed use permit exemption. Use permit procedure in itself, while a source of irritation, was a lot less significant to the "small winery" developer than the cost of the conditions and particularly the cost of the road improvements. Therefore, the Commissioners felt they should talk with the Director of Public Works in regard to road improvement requirements. The Commission wanted Hamilton's feeling on two things: 1) How he read the Board of Supervisors currently on what they are looking for in terms of conditions on small wineries, and 2) his feeling as the Director of Public Works as to the minimum road improvement requirements.

Commissioner Beckstoffer was interested in

Hamilton's feelings as to implications of considering a small winery as being equivalent to a single-family dwelling, for road improvement purposes.

Hamilton said his perception of the Board's concern was mainly the time involved in going through the use permit process. They wanted to reduce the process. It has not come to him that the Board feels that the improvements should be reduced any more than they have already been reduced.

Hamilton said if it would be of any help he could give some recent examples of Board requirements and the Board's answers to appeals to improvement requirements. Yesterday, said Hamilton, they had an appeal on a road improvement requirement which involved two small wineries which would meet the criteria which is being discussed now - the Miner Winery and Cook's Flat Winery off of Spring Mountain Road. They made a presentation yesterday involving the Barrett Parcel split and the fact his Department had put road improvement requirements on as a condition of that split. Where it involved those small wineries is both of those small wineries had come in on use permits in the past and his department had put road improvement requirements on them all the way from the wineries out to the public road. Those were both 14 ft. road requirements. One of them had a deferred improvement agreement, said Hamilton. Their minimum two way road requirement now is 16 ft. They have recently varied some winery requirements to 11 feet. So, the 14 ft. requirements that came on those wineries were because at that time they had a topography standard that allowed 14 ft. two-way road. Some of those were constructed and looking at those and using those roads, it appeared that 14 ft. is too narrow for a two-way road and too wide for a one-way road. Consequently, their new standards have dropped the 14 ft. and gone to 16 ft. or 11 ft.

On the two wineries he was talking about, one was covered by a deferred improvement agreement (Miner Winery). Public Works gave Miner a Deferred Improvement Agreement on the rest of his road as there were some property splits on the other winery and they felt the two wineries would want to cooperate in construction of the road improvements. Everybody is waiting for somebody else to put improvement requirements in. The Board indicated yesterday that some sort of resolution should be worked out that called for those improvements now, and that they should be put in in cooperation with the improvements for the Barrett parcel split. The Board had indicated that they feel improved roads are necessary to serve wineries.

Hamilton mentioned the Cadman Winery off of Coombs - ville Road. They had a paved driveway to a residence. They were going to start a winery in a garage of 2500 gallon capacity. At that point Public Works required a 14 ft. paved roadway and that condition was appealed to the Board of Supervisors, saying they already had a 12 ft. paved driveway. The Board denied their appeal. They had to pave another 2 - 3 ft. of driveway in order to afford two-way access to the winery.

Hamilton said about the first time the Board did not require the two-way requirement was for Davies' winery - Schramsberg. They wanted to add an office to an existing winery. Public Works indicated

their two-way road requirement andJack Davies appealed that on the basis of topography and the fact he could not get a two-way road in there without significant earth work andthen Public Works looked at the road with him and determined that perhaps with some pullouts where you could see from one section of the road to another, it would be all right to go to one way sections in between. The Board went along with that.

Mr. Pecota came in to Public Works and indicated that he wanted a small winery and Public Works was requiring a two-way road and it was not fair just because he was on flat land to have to go to two-way road. Public Works looked at his proposal, and at the traffic. Pecota indicated he was going to be getting grapes on his property and there would be less traffic,so Public Works put that into their requirement that since he was getting grapes from his own property there would be that much less traffic on thisroadway and recommended the entrance way be dropped to 11 ft. surface road with a turn out with two-way capability at the public road and turnsouts every 500 ft., etc. Applicant accepted the condition but later on said he had been unreasonably restricted by the condition.

Since then they have been making that a standard requirement on small wineries. Definition on small winery has really not been set, said Hamilton.

Snowden said obviously, if you build a house in the hills it is desirable to have a good road to and from the house because if it starts to burn, fire equipment and trucks can get up there more easily, and so forth. They still draw a line somewhere above single family dwellings as being the point at which improvement requirements are imposed. He asked, qualitatively, for discussion sake, how bad wouldit be if the County's standard was that it is only after you go over 10,000 gallons a year that a winery would be treated as a winery as opposedto how a house is treated.

Hamilton asked how many of those would they have? Perhaps it would be favorable to require paved roads to single-family residences. However,that is not the point they are discussing. To compare a small winery with a residence there is probably not much more traffic, but then again, it would depend upon whose house and how many trips are made and how fast they drive on the driveway, whether or not they water or oil it. Hamilton said some of the concerns about unpaved roads are access for emergency vehicles - fire trucks, ambulances, police, etc. An all-weather road is best achieved by paving it in some fashion. Another concern is dust, said Hamilton. Even the vintners use air pollution, air quality as a guide to why they don't want more traffic up valley. That is a valid reason. Dust is an air pollutant. An all-weather road helps to eliminate that.

If somebody asked Public Works whether or not it should be required that they have apaved driveway, they would probably say it would be desirable. Somebody has got to make that decision whether or not you are going to start requiring it as a condition of a building permit. Are you going to require it as a condition of a use permit for single-family residences in

11-7-79

certain areas, or all areas of the County. As far as a winery goes, those are the main reasons and the Board's rationale is probably commercial use.

Johanson said a new lot for asingle family residence does require a 16 ft. roadway (one lot). Fershko said so if you create a parcel of 60 acres or less, you have to have a 16 ft. paved, all weather road. Johanson said that is the minimum. (to the lot). If you built your house on the far side of the lot you could have unpaved driveway leading to this paved required road serving the lot. Beckstoffer asked if you just create the lot and don't build anything on it, do you still need the 16 ft. road. Johanson said yes. He added Barrett was required to improve the existing dirt road to 24 ft. wide for one 20-acre parcel, for the reason it was serving many more parcels beyond. Therefore, it had to be improved to the appropriate standard.

Hamilton said another thing they might mention from yesterday is the telephone company appealed the paved road requirement for their facility off of Spanish Flat Loop Road. It is an existing station and they wantedto expand it. Public Works first indicated they install a 16 ft. paved roadway into their facility. They did not realize at the time that the telephone company had a 12 ft. right-of-way. Public Works looked at it. The telephone company appealed the decision. It appeared they probably wouldhave no more traffic to that facility than a small winery so Public Works changed their requirements to a one-way road with turnout capabilities. They were talking seal coat but at least a couple members of the Board suggested blacktop road. They will have to put a blacktop road to the facility as they at one time had a seal coat road and had not maintained it and it deteriorated. Board members were aware of it and felt hard surface roadway should be required. He did not know if that was an indication that Public Works should increase their seal coat requirements on small wineries to hard surface, or not, said Hamilton.

Hamilton said they did not want to get into the business of going out and inspecting improvements every year to be sure that they are maintained. A hard surface road requires less maintenance. Hamilton said double seal coat is really what they are requiring when he speaks of seal coat.

Hickey said on the requirements for design criteria for a small winery it simply provides a left turn lane with acceleration area be provided but Item 2-C says "installation of a 16 ft. wide, 30 ft. long paved entranceway with a 20-ft. radius return at the intersection of the access road with the public roadway. That doesn't even speak to the roadway in, said Hickey, and as is written doesn't require any kind of a roadway. It only requires that the first 30 ft. be paved, 16 ft. wide. Johanson said that is why they wrote their memo that asks for the road to be improved all the way in.

Lilleberg said that memo speaks to 11 ft. paved roadway with 4 ft. graded shoulder. Is the shoulder included in the roadway? Johanson said that is in addition to it, so that if two cars meet, one can pull off on the dirt and let the other go by. It is 4 ft. only on one side, he added.

Fershko said the primary objective of a 16 ft. wide road or any road is for access, emergency vehicles, dustproofing. He cited a 20-ft.road off Coombsville Road as an example. What may suffice perhaps could be argued that 12 ft. would suffice for emergency vehicles. There would be no dust as they are not talking about public tasting. If for some reason some time in the future, two cars happen to meet on this road, couldn't it then be argued that one car could move on the shoulder andnot have to improve it any further than 12 ft.? Johanson said today that road would not have had to be widened as they would have only required 11 ft. and they had 12 ft. to begin with. In 1975 they did not have an 11 ft. standard, added Johanson. Hamilton said perhaps you might be able to pull on to the shoulder in summertime, but in wintertime would not be able to get back on the road again from the shoulder.

Fershko cited the Kirkham proposal. There is a residence that has been used for years and a road that has been adequate for that many years. Certainly, Kirkhams are interested in getting to and from that house. The road is hard packed, etc. Certainly, it would seem that road is adequately prepared for any emergency that may come up. He wondered if they were overimproving these roads. He was not sure. Eleven feet is intended for just one car. He asked if a seal coat was the closest Public Works could come to what would accommodate cars all year around. Is there another way of preparing a road that requires less resource? Hamilton said they had required less than seal coat in some kind of a temporary facility. For instance, KVYN required monthly inspection. They did not require pavement on that road as it was only to be used very infrequently. There would not be people working there all the time. Snowden asked if that was for the antennae and Hamilton said yes. For some quarry operations they have indicated that they would maintain water trucks at the site and water that road to keep the dust down. They were using it generally in the summertime. From time to time Public Works observed their operations to insure they were keeping the dust down.

Hamilton said Public Works requirement for a permanent facility has been a standard clause in Planning Department's requirements for years that dust-free, all-weather surface parking spaces andaccess road be a requirement.

Hickey saidas he understands it, you have a residence and you have no requirements as far as a residence is concerned. Then you introduce an additional use, be it a small winery or not andyou are increasing thepotential use of the road and the additional requirement comes into play. The improvement requirement comes with the construction of the winery per se and that is the triggering mechanism.

Beckstoffer asked if there was any statute or safety regulation that would disallow the kind of policy that says a small winery(as yet undefined) would be treated for road requirements the same as a residence. If everyone on the Commission andBoard wanted to do it, could they do it? Hamilton said he did not know of any reason they couldn't. Johanson said the standard is less than what they require for a single-family residence, 11 ft. instead of 16. Hamilton said if you build a house on an existing lot you don't have the requirement, but to create a lot and

 11-7-79

then the residence there is even a stronger requirement (to get to the lot) Beckstoffer said, on the lot. Johanson said on the lot they do not yet have a requirement. Beckstoffer said, for example, take a lot that is on a paved road. If you built a home there would be no requirements? What if you did the same thing with a winery? He did not know that the small winery has any more requirements (emergency) in terms of life than a residence has. Probably the winery would be more fire resistent than the residence, for example. Hickey said the theory is the more intensified the use, the more potential for fire hazard, injury, etc. Hickey listed accidents that could happen ina winery. Hamilton said a lot of small wineries would put a paved roadway in for their own benefit.

Beckstoffer said what they are really talking about is you have the winery that is going to go in. Now Public Works comes up with a road requirement. If they have a paved road, what that does is puts the winery on the road rather than at the back of the parcel. That is what happens.

Hickey said the Commission was saying 200 to 400 feet setbacks as a regulation. Beckstoffer said once they get out of the use permit process, it seems one of the things the Commission is trying to accomplish is get these things right off the road (long setbacks). Nobody really objects to that long setback, except for the cost of the road to get back to it. Johanson said it does take some vineyard out of production, also. Beckstoffer said you could work it down an avenue, generally. Most people who are developing a small winery consistent with what the Commission wants to do (no tours and tasting, etc.) they would prefer to be back. The only reason they are not is the road requirements. They are going to build the winery. The question is whether it's going to be back or forward or what sort of money they are going to have to put in the winery rather than in the road. Beckstoffer felt that under the small winery ordinance it really is a small winery to the extent it stays a small winery that for environmental reasons (paving versus a dirt road) that the County could do with a residential requirement (no paved roads) for the small winery that would allow the small winery to go on the back of the lots. Once they become a bigger winery, once they go over the capacity and begin to expand and come back in for use permit process, you are talking about something different. For that initial phase, they would be better situated and get a better start, be better wineries and better capitalized if they did not have to put in that $50,000 road requirement. Small wineries assist agriculture in this County, said Beckstoffer. He did not see how the County's concern for public health and welfare would be hurt any more than it is hurt by putting in a private road to a private residence. You can protect the people in a small winery as well as you can protect the people in a residence, and the incidents of danger would be about the same.

Under that kind of approach, asked Snowden, would Beckstoffer envision that the requirements attendant to parcel splits would be changed, or stay the same. Beckstoffer said, the same.

Snowden said the reason he agreed with Beckstoffer is the attachment of conditions - you can differentiate between when you attach conditions according to what kind of economic transaction is occurring. What we really do in this society is tax economic conditions. An exaction of a road

requirement is a tax of sort. A parcel division is usually accompanied by a significant exchange of money, whereas the building of a house on a piece of property that you already own may not involve a significant exchange of money. Similarly, building a small winery may not do so.

Hickey said they were talking about comparable residential. Are they starting to categorize? If you have an existing residence on the property and you want to put in a winery, you don't need to make a road improvement as the road improvement is there for the residence. If you put a winery on a parcel where there is no access road at all, then it would have to meet what a new home would meet. If you create a parcel, said Beckstoffer, then creating the parcel is what requires the road. That doesn't change at all.

Snowden asked if the majority of the Commission thought this was a good approach, should they send a report to the Board of Supervisors saying they have been considering this small winery ordinance amendment for a lot of months and have input from a lot of people andit is the concensus of the Commission that the central problem faced by people building small wineries is the road requirements and the Commission recommends that County road requirements be amended to provide that a winery of less than 10,500 gallons be treated in the same fashion as a residence. Beckstoffer said if they did that they should go a little way toward defining a small winery. Just say for a small winery, so defined, away from the main road, annual production of so many gallons, road requirements would be...... At this point do not address other factors - just road requirements.

Snowden asked Hamilton if he saw some big problem with the Commission sending that kind of a recommendation to the Board of Supervisors. Hamilton said perhaps the thing to do is ask for a study session so the Commission can give the Board some of their individual reasons for such a recommendation. Johanson said they could see what the Department of Forestry has to say,also.

Lilleberg asked Hamilton about the dead end roads and left turn lanes, adding that it would be spoken to at such a study session. Hamilton agreed. She then asked Hamilton about the MTC Committee. Is he looking for planners to be on the Committee for the November 12th meeting, (Metropolitan Transportation Commission) regarding submitting ideas for highway projects? Hamilton said they were welcome to come. Snowden felt someone from the Planning Commission should be there. Review of capital improvement projects on an annual basis was discussed. Lilleberg was talking about State highways - Caltrans. Snowden had been talking about County projects. Prospect of two-lane bypass of St. Helena was brought up by Hamilton. Discussion followed.

Hamilton said they would discuss highway projects and try to come to some concensus among the assembled group as to what highway projects might be supported, then go to the individual elected bodies with this list indicating that these are the projects that were discussed at Staff level and that they thought these should be priority and see whether or not it is

supported by the cities and the County.

Fershko said the question came up before that the Commission had requested that there be some kind of review or input from the Commission on County road projects on a yearly basis. Is that possible? Hickey said the Commission had asked that Staff look into it and report back to them at next meeting. Hamilton said they send preliminary budgets out.

Note: The Director of Public Works left at 11:00 A.M.

Fershko asked Johanson about the 16 ft. requirement out to the parcel. For parcel split of 60 acres or less, is that deferred until the residence is built, or is that improvement immediately required? Johanson said it goes in one of two ways: 1) before the parcel map is recorded, which means before the parcel is created, or, 2) the developer has the option of entering into a bonded agreement with the Board of Supervisors to construct within 12 months of recordation of the map.

The possibility of a study session was discussed by the Commissioners. They agreed it was probably the best way to proceed.

Tours and tasting was discussed in regard to road improvements. Johanson said one of the things they have noticed is that some of the small wineries and some of the bigger wineries say "no tasting or tours" in the use permit condition. They actually end up having road improvements that probably could have accommodated tours, perhaps. It wasn't reviewed on that basis. He cited exemples. Johanson said there was a lot of activity going on there and even Greyhound buses there that probably wasn't anticipated at the time Public Works reviewed the permit. There are a number of smaller wineries where you truly have an individual who just wants to make some wine. That he envisions as the true small winery. There are other small wineries owned by out-of-County individuals and you get a lot of traffic to a little 10,000 gallon a year winery. It still might not be tours and tasting. Johanson said his point is you are liable to have more parties for small wineries than for single-family residences. Snowden said to some extent what Johanson is saying is that the no public tours or tasting is in some circles ludicrous. Hickey said tours and tasting leaves enforcement up to the individual winery owner. He understood you can buy lists that say which wineries have appointments and at what times. This represents a subterfuge. Snowden said most of the bigger "no tours and tasting" wineries, have tours and tasting. Hickey said the question is, where are we in this process? The intent was that in order to reduce work load, minimize processing time, the County would exempt small wineries from the use permit process. In taking that step and exempting them, the Commission is opening the door to all these problems, said Hickey. The direction from the Board was not to identify the problems, but to come up with a solution. One of them is going to have to be you dump the responsibility for the road improvements, in part, back on the owner of the winery. You can't have it both ways! Either you are going to allow small wineries but are going to have to do it in the fashion that solves the CEQA process, If you get too many decisions relative to this process, you are right back to triggering EIAs. Snowden said he was not too strong on wiping out use 12

permit control. He is receptive to the notion of softening the conditions (and particularly road conditions), but he does not particularly want to not have use permit procedure.

Beckstoffer said the last meeting had produced a lot of problems with the exemptions of small wineries from use permit control. It may just be you can't get to there from here in regard to environmental issues. He would like to suggest that the Commission get something going forward in whatever manner the Director suggests. Gallonage needs some looking at, in regard to the 40 acres. Then it says "for small wineries." The requirement with regard to road improvements will be what they have been talking about. This is basically that the road improvements for the small winery will be basically the same as for single-family residential. Beckstoffer said that is all the Commission says at this point and hopefully, that will go through and will be the first step in doing the exemption for small wineries from use permit.

Snowden said the thing he heard people saying at the last meeting is the big thing is the road requirements.

Snowden asked if it was now time to talk to the Board of Supervisors (Written report to Board). Should they work on this some more? Should they have a study session with the Board? Hickey felt a study session is more productive if you have something specific to present for discussion. If the Commission can put together a proposal they think is appropriate and review it with the Board, that would be well worth while. Or, forward that to the Board with whatever conditions or proviso the Commission wants to find for further study. Or, just forward it to them as such. What Beckstoffer has said, that we need a decision or this thing is going to go on and on is true in part. With the industrial amendment, the Commission simply concluded they "could not get there from here." (Industrial Building 50% expansion exemption.)

Hickey said Selleck's concern was that when you introduce a new condition such as small wineries will now meet the conditions for single-family residential, that, in itself, can trigger CEQA. It is a change in the previous standards, etc., that have been used by the Commission in regard to wineries.

Snowden said he would be much less concerned about EIR requirements if wineries were still subject to use permit control. Beckstoffer suggested a procedure. If Staff could prepare that policy statement - basically that simple policy statement he had talked about - defining a small winery and saying with regard to road requirements for small wineries they will be treated basically as single-family residential is treated. If that could be prepared he would like to review it briefly, get the industry review, come back to the Planning Commission with that. Perhaps in the interim someone else would have another way, he added. They could see if the Commission wants to recommend that statement as a policy statement to the Board or if they then want to have a study session with the Board regarding policy statement. Hickey said Beckstoffer was suggesting rather than going the ordinance amendment route they go the policy route.

 11-7-79

Snowden said the Commission had gone through 10 or 15 hours of discussion and are just starting to learn what they are talking about. It may not be the whole answer but a big part of what they are talking about is related to roads. Hickey said the Department would put it in policy foremat and bring it back to the Commission. Beckstoffer said he did not mean to foreclose the exemption of small wineries from use permit. He just sees this as something that is positive and a first step in getting there. The biggest problem is they are doing this for the County to reduce their workload and for the industry to reduce the time requirement. The industry has said to the Commission, "You can't get there."

Hickey said the industry has also said they wanted small wineries exempted from excessive costs and capitalization problems, etc., and the policy foremat the Commission wants to use incorporates the definition of small winery with a reference to only road improvement requirements. That is as far as you are talking at this time.

Lilleberg said she did not care for that at all. She would rather go ahead with this proposal of eliminating use permits for small wineries and on Number 2 where it says "access roads" have that part be what the Commission is talking about. Access roads should be no different in requirement than single-family dwellings. Then leave in the things about fire protection, parking, setbacks (with some modifications on setbacks perhaps). She would like to see architectural standards put in.

Snowden said the function of that ordinance was to reduce regulations and not increase them. That ordinance lessened the extent of the County's power to regulate small wineries. Lilleberg said that is what it was supposed to do, but with all the road requirements the small winery people are telling the Commission that the costs are prohibitive and it costs them more for the road than the whole property. Johanson said the road requirements are the same as they would have been with the use permit, or without it. There is no change.

Hickey said when you start modifying the conditions when you take the use permit requirement off, that is where we are getting into problems. The Department has tried to lay this thing out with the same traditional conditions that has been applied to small wineries in the past. Then you don't need use permit. That got use permit requirements off of everybody's agenda and that got the delays that everyone complains of as overbearing and burdening, etc., out of the way. Now the thought is, it is nice to get rid of the use permit, but let's get rid of the conditions, said Hickey. Snowden said the concern raised by winery builders was not with the regulation per se, but with conditions that accompany that regulation and those conditions wouldn't have been changed by deregulation.

Johanson said he was not opposed to calling requirements for a small winery the same as for a single-family residence, but getting there, what he keeps hearing is economics and if the Commission makes a decision to decrease or modify road improvement requirements purely on the basis of economics, without weighing that against safety,

health and welfare and what you are really trying to provide, he felt that was not the right way to look at the problem. He mentioned when they put in the Industrial Park at Berglund's or when they talked about Maher and Hess' little industrial park recently, if you formed a committee that represented industry, (Berglund's Industrial Park for instance), no way are they going to support a 44 ft. wide road with curbs and gutters and sidewalks.That costs money! If you talked to a residential developer who is going to build a subdivision, no way are they going to recommend curbs, gutters and 40 ft. street. They are going to talk about no curbs and gutters and talk about the absolute minimum requirements. Johanson said there is a balance that must be considered.

Beckstoffer said that was fair comment. He is seeking to review the policy statement with the winery people so they will understand what the Commission is recommending. Economics is involved. It is a question of whether the winery is on the front of the lot or in the back! Small wineries are also not going to have free standing signs, in it's definition. He felt they would accomplish the purposes of the General Plan. However, economics are involved.

Snowden said before the Commission ever takes any formal action on any proposed policy, they would want Public Works to look at it and let the Commission know if they think it is a question of the developers economic interest at the expense of the citizens, or what.

Lilleberg said when you think about the amount of profit from selling one caterpillar tractor or the amount of profit for a developer selling one house compared to the amount of profit for a small winery selling 1,000 gallons of wine, you are talking about huge differences in percentage and profit. She did not think it was the same thing.

Fershko said his concern was not only the economic system of wineries but the aesthetics. He could not support an exemption of small wineries from use permit unless he is sure that they are not going to dot the landscape, valley and highways with wineries, without any architectural review of some sort. That also goes for wineries that go through use permit process. He would like to see the Commission work on that issue, as well as landscaping and other improvements. If they are going to exempt small wineries from use permit he would like to be sure they have that worked into it. The use permit process gives them the opportunity to do that.

Snowden said that was how he was thinking. Fershko said safety is important but you can overdo it. He was sure there was some compromise. He understood Public Works' concern but said there was also another side that he is concerned with.

Johanson said that is why they got their road standards in 1971. There is a major compromise in their standards with the environmental concerns.

Fershko said things have changed. He mentioned the price of oil and seal coat.

Hickey said they would have to separate out what it is they are trying to accomplish. If it is economics, if the emphasis is to make it the least expensive kind of a project then you don't want 200 or 400 ft. setbacks. You don't want improved road requirements. You don't want architectural standards, or landscaping. Those could all be considered added cost factors.

Hickey said perhaps they are trying to do too many things in one package. On one hand they are trying to reduce regulation by getting out of the way and on the other hand they are trying to increase regulation to cover every possible adverse impact that getting out of the way may entail.

Beckstoffer said his intent is to address the road situation now because it is fairly well defined, and get that done as a prelude to all these issues. In other words, do this now as something that can be done while they continue to discuss all the other items and CEQA requirements and just what they can do about exempting small wineries from use permit process. Lilleberg asked what the advantage was. Beckstoffer said they have heard after many hours of testimony that they may not be able to accomplish this exemption for small wineries because of CEQA requirements and the possible actions down the road. They need to hear more testimony on that. Beckstoffer said everybody knows if you build a small winery as defined in this policy statement, it will include several things. It will include setbacks; it will be defined as 400 ft. off the road; it will be defined as something with no free standing signs. Then road requirements are the same as a residence. Once that is defined, it is a positive and useful step. We are not, by taking this step, eliminating or terminating the conversation on the small winery exemption from use permit.

Beckstoffer said from the Board's point of view the major thrust of this was to eliminate the time requirement for use permits. It was also an industry request. The second reason was the road requirements that were so onerous to the industry. Every time they get into a discussion, they hear the major problems are delay and the road conditions. Johanson said he could see this as a separate matter from this ordinance. The Commission could ask the Board to take a look at road improvement requirements for small wineries. Snowden said that is what Beckstoffer has suggested.

Hickey said the Commission is separating the time delay problem from the road improvement requirement which is identified as a major cost consideration.

Snowden said from what Mr. Davies and Mrs. McCrea and others said at the last meeting, his feeling is a substantial amount of political concern about the whole subject matter may evaporate at that point. He could be wrong, and when they get around to next year's construction season they could find it in their laps again. Johanson said it is the new people and not the existing winery people having the problem. Snowden said nobody ever needs more than one of these use permits. There are a few, but most of these people are people who own a piece of property and are doing it once.

Beckstoffer said within the next year or so the successful wineries will be back for expansion. That does not relate to the road requirement thing. Snowden said when they talk about small wineries they are talking about getting one guy once and that is part of why he is really not that worried about continuing use permit requirements. Hickey said again perhaps they were trying to do too much in responding to the Board's directive.

Snowden said he would support doing what Beckstoffer has suggested. That will carry out a purpose of the Board's directive.

Beckstoffer and the Staff will prepare a first working draft of the policy on small wineries regarding road improvements. Then Beckstoffer will meet with his Committee or with such other people as he thinks will provide useful input to him. He will then report back to the Commission when he is ready. At that point the Commission will discuss it andit is likely they will suggest to the Board of Supervisors a study session be held to discuss this matter and to explain to the Board why, when they said get rid of use permits for small wineries, what the Commission says is get rid of road requirements for those small wineries. Then take action to adopt it if the study session concensus indicates it is appropriate. Then, if it is further appropriate, take a further look at the use permit exemption question. It will come up at the discussion.

Hickey said why doesn't the Commission come right out and say that the prospect of eliminating use permits for small wineries is not workable and accompany it with the policy. If the Commission just forwards the policy with no responce to the directive, you leave the request unanswered. Snowden said that is why he proposes a study session.

Action:

CONTINUED

Commissioners agreed this matter would come back to the Commission on December 19th, 1979, 10:00 A.M.

ADJOURNMENT FOR EXECUTIVE SESSION

The meeting was adjourned at 11:40 for Executive Session.

The meeting reconvened at 1:53 P.M. All Commissioners were present.(though Hawkley was out of the room momentarily).

APPROVAL OF RECOMMENDED AGENDA

CEQC Tape, Track #4

The Planning Director said the following item listed on the General Agenda is recommended for approval. It has been reviewed by the Department andconsidered to be routine in nature. There will be no separate discussion of this item unless a member of the Commission or audience requests a separate hearing or discussion. If there is a request for separate discussion, the item will be considered in its normal sequence on the Agenda.

Alexis Bistro & Cheese Company Use Permit Request (#U-127980)

Public Hearing:

12. Request to construct a 160-square foot addition for storage to an existing restaurant and