# Exhibit 11

# INTER-OFFICE MEMO

DATE: January 11, 1990

TO: Board of Supervisors
FROM: Margaret L. Woodbury, Chief Deputy County Counsel
RE: Interim Measure for Winery Definition Ordinance

In the Environmentally-Superior Alternative, the FEIR consultants recommended adoption of an "interim Measure", limiting issuance of winery use permits to no more than 9 per year, to control environmental impacts until all of the "mitigation measures" not immediately adoptable by the Board in the DWDO could be adopted and/or implemented through separate study, ordinance, resolution, general or specific plan amendment, or other means. With such an interim measure, the consultants felt that the DWDO/Alt could be adopted with overriding considerations required only for 4-5 areas of unavoidable and unmitigatable impacts; without the interim measure, the consultants felt that adoption of overriding considerations would be required also for the impacts that they believed could be mitigated in the future upon completion and implementation of the delayed mitigation measures.

Our office has a concern with this recommendation for the following reasons:

1. The number "9" is not limited as to size of winery, location, or potential for impacts. It is therefore hard to see how a mere number limitation will fully mitigate the related impacts pending completion of final solutions. Nine large wineries on small parcels on Highway 29 could have disastrous impacts. If an interim measure is desired by the Board as opposed to merely adopting a more extensive statement of overriding considerations, it must be desired to be fair and have a rational relationship to solving the identified problems, utilizing unambiguous and objective performance standards. Otherwise, it will be subject to challenge as not consistent either with the interim zoning ordinance authorization set forth in Government Code section 65858, but also to various constitutional challenges based upon substantive and procedural due process and equal protection. See, in this regard, <u>Associated Home Builders</u> v. <u>City of Livermore</u> (1976) 18 Cal.3d 582; <u>Construction Industry Assoc. of Sonoma Co.</u> v. <u>City of Petaluma</u> (9th Cir, 1975, rehear.den.1976) 522 F.2d 897.

2. Most of the "mitigation measures" are in fact typical CEQA measures applied, or applicable only on a case-by-case basis to deal with the identified impacts for each site and must, to be truly effective, be tailored to the needs of each site. Other than Board recognition as part of the FEIR certification process of the general suitability of such measures for dealing with the general types of problems identified in the FEIR, there is little the Board can do now <u>or in the future</u> to "adopt" these measures, since actual application and use of the measures is in the hands of the Planning Commission when acting on use permits in its quasi-judicial capacity. At best, the Board

could adopt the measures by resolution as part of its CEQA Guidelines, but this is not necessary for the measures to be available for the Commission's use during the CEQA process. For this reason, our office sees no basis for adopting an "interim measure" to control use permit approval numbers pending adoption of such a resolution. It should also be noted that many of the measures pertaining to habitat and historical/archaelogical protection are mandated by state or federal law and no local Board action is needed to authorize the Commission to apply these to projects where relevant.

3. The "measures" recommended by the consultants which were essentially "studies", i.e., county-wide environmental sensitivity map updates, general historical surveys, etc., are not legally valid ways of fully mitigating environmental impacts, according to the court in the Sundstrom case. Refusing to issue a use permit solely on the basis that such a general study was not completed when the applicant could in fact show definitively that a full site-specific study had been completed would violate the nexus requirement set forth not only in the state planning statutes but also by the U.S. Supreme Court in the recent Nollan decision, all of which are merely expressions of the general constitutional requirement that a rational basis must exist for any development exaction or condition.

The Commission recognized the foregoing legal problems and deleted these general study "mitigation measures" from the FEIR which it is recommending the Board certify.

4. The fire impact fee recommendation will not support adoption of any interim controls since the Board has already initiated this process. To the extent that use permit approved prior to adoption of such a fee might actually cause an increased drain on the fire infrastructure, the Commission can fully mitigate the impact by simply requiring greater fire protection self-sufficiency from the winery (e.g., sprinklers, holding tanks and ponds, training of winery employees in fire suppression and the special techniques required when toxic chemicals are involved).

5. The proposed mitigation measure for sanitation impacts of increasing septage fees of the Napa Sanitation District is a measure which is outside of the jurisdiction of the Board of Supervisors. If an "interim measure" is required to deal with the septage problem, it can be dealt with by increasing discharge performance standards for the materials exiting a particular winery at the time of use permit approval or, if NSD capacity is inadequate, simply refusing to issue permits needing such capacity until it is provided, by whatever means that might be accomplished. That sort of "permit control" was acknowledged as appropriate in the Livermore case and the earlier New York Ramapo case which directly conditioned permit approval on completion of the directly related portions of local public infrastructure as reflected in an adopted capital facilities plan. The FEIR does not indicate that septage capacity of NSD is in fact a severe present problem, so it would be rather difficult to sustain such controls at this time.

6. The mitigation measures cited by the consultants as justifying adoption of an interim measures also include a number which relate to winery design review, for the purpose of mitigating visual blight and viewshed deterioration. The consultants suggest that the Board create a Design Review Board which in term would adopt Design Review Guidelines. While this could be done, it is legally unnecessary. The General Plan already contains language

requiring compliance with general aesthetic principles for wineries in particular. Since the Planning Commission can approve a use permit for a winery only if it can find that the permit will comply with the General Plan, the Commission already has legal authority to impose design controls independently of the CEQA process. It may also impose such controls as site-specific mitigation measures to protect against adverse physical changes to the environment, such as poor site location and building style which will permanently block desirable views of the public. The U.S. Supreme Court upheld that sort of case-by-case, rationally-related view protection control in the Nollan case when it suggested the sort of measures that should have been imposed to deal with the view loss impact.

7. The final area of impacts which the consultants felt were fully mitigatable if an interim measure controlling permits was adopted also relates to view deterioration along highways and roads which the County may in the future wish to place into the State Scenic Highways program. While the Board has already initated update and activation of the County's Scenic Highways Element, as far as wineries are concerned, the visual impacts on the program of winery approvals was used as a justification for the present moratorium. Government Code section 65858 only allows such moratoriums for a given study or proposal to last for a specified period of time and that time will expire on January 23, 1990. It cannot be renewed. To temporarily freeze or limit permits in these locations until permanent regulations are in effect, the Board would have to put a different proposal on the table after January 23 and apply the freeze or limit to all structural construction within the affected areas--houses, wineries, businesses, barns, wastewater berms, etc.

It is our opinion, however, that as far as visual impacts caused by future winery approvals are concerned, such a draconian measure is not necessary to prevent such approvals from conflicting with a future scenic highways program. The DWDO recommended by the Commission already includes setbacks consistent with such a program. The Commission discussed, in the context of a "mitigation measure", that the remaining impacts could be addressed by design controls (see above) on a case by case, or guidelines basis, and by a structure lateral separation requirement. We would suggest that such a lateral separation requirement simply be written into the DWDO immediately for the affected locations and that such be done in the same provision as presently contains the setbacks.

Based upon the foregoing, it is our opinion that the impacts which the consultants felt could be mitigated to levels of insignificance with an interim measure and future adoption of certain mitigation measures can instead by fully mitigated by a minor change to the DWDO (adding a separation requirement) and an acknowledgment of the case-specific mitigation measures as generally appropriate but best applied by the Commission where relevant during the CEQA and use permit/general plan consistency determination process. It is the opinion of our office that the Commission already possesses the legal authority to impose the necessary site-specific measures, tailored to ensure the rational basis required by Nollan exists in each case. We do not, therefore, believe that adoption of an interim measure is either necessary or, indeed, legally available to the extent suggested by the consultants.

[signature]