Joseph M. Infante (pro hac admission)
infante@millercanfield.com
Stephen M. Ragatzki (pro hac admission)
ragatzki@millercanfield.com
**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333 / Fax: (616) 776-6322

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
Angela Han (Bar No. 317137)
ahan@fennemorelaw.com
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
Attorneys for Plaintiffs Hoopes Vineyard LLC, Summit Lake Vineyard, and Cook's Flat Associates a California Limited Partnership

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

HOOPES VINEYARD LLC, a California limited liability company; SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,

Plaintiffs,

v.

COUNTY OF NAPA,

Defendant.

Case No. 3:24-cv-6256-CRB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS SUMMIT LAKE AND COOK'S FLAT ASSOCIATES MOTION FOR PRELIMINARY INJUNCTION REGARDING EVENTS**

| | |
|---|---|
| Judge: | Hon. Charles R. Breyer |
| Hearing Date: | November 20, 2026 |
| Hearing Time: | 10:00 a.m. |
| Location: | San Francisco (ZOOM) |

# TABLE OF CONTENTS


**Page**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REGARDING MARKETING EVENTS .......... IV

SUMMARY OF ARGUMENT .......... VI

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENT .......... 3

A. Standard of Review .......... 3

B. Plaintiffs Are Likely to Succeed on the Merits. .......... 3

1. Napa Has Misconstrued Its Own Marketing-of-Wine Ordinance. .......... 4

2. The Business-Event Regime Is a Content-Based Restriction Subject to Strict Scrutiny. .......... 8

3. Napa County Engages in an Unconstitutional Prior Restraint. .......... 10

4. At a Minimum, the County's Event Restrictions Fail Central Hudson. .......... 12

C. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction. .......... 13

D. The Balance of Equities Favors an Injunction. .......... 14

E. An Injunction Serves the Public Interest. .......... 15

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. United States*,
509 U.S. 544 (1993) .......... 10

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 3

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*,
*447 U.S. 557 (1980)* .......... 12, 13

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) .......... 10

*Edenfield v. Fane*,
507 U.S. 761 (1993) .......... 12

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 13, 15

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012) .......... 3

*G.K. Ltd. Travel v. City of Lake Oswego*,
436 F.3d 1064 (9th Cir. 2006) .......... 12

*Lamar Central Outdoor, LLC v. City of Perris*,
No. 5:25-cv-02557, 2025 WL 4058873 (C.D. Cal. Dec. 19, 2025) .......... 13

*Long Beach Area Peace Network v. City of Long Beach*,
574 F.3d 1011 (9th Cir. 2009) .......... 11

*McCutcheon v. Fed. Election Comm'n*,
572 U.S. 185 (2014) .......... 3, 9

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 15

*Napa County v. Hoopes Family Winery Partners, LP*,
No. 22CV001262, Superior Court of Napa County, .......... 2

*Naples Pride v. City of Naples*,
2026 WL 91486 (M.D. Fla. Jan. 13, 2026) .......... 11, 12

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 3, 15

*Otto v. City of Boca Raton, Florida*,
981 F.3d 854 (11th Cir. 2020) .......... 9

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 9

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) .......... 14

*Shuttlesworth v. City of Birmingham*,
394 U.S. 147 (1969) .......... 10

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) .......... 3

*Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 3, 15

*Ysursa v. Pocatello Educ. Ass'n*,
555 U.S. 353 (2009) .......... 9

**Statutes**

Cal. Bus. & Prof. Code § 23399.03 .......... 12

**Other Authorities**

NCC § 18.08.020 .......... 7, 15

NCC § 18.08.040(H) .......... 7, 8, 15

NCC § 18.08.370 .......... *passim*

NCC § 18.08.377(E) .......... 8

NCC § 18.16.020(G) .......... 7

NCC § 18.16.020(H) .......... 7

NCC § 18.20.020(I) .......... 7

NCC § 18.08.600(C) .......... 7

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REGARDING EVENTS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 20, 2026, at 10:00 a.m., via Zoom videoconferencing or—if the Court orders, in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102—Plaintiffs Summit Lake Vineyards & Winery LLC ("Summit Lake") and Cook's Flat Associates, a California Limited Partnership dba Smith-Madrone ("Smith-Madrone") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction against Defendant County of Napa (the "County" or "Defendant").

Plaintiffs will and hereby do move the Court for an order preliminarily enjoining Defendant from enforcing: (1) Napa's undifferentiated, content-based marketing-event approval regime against Plaintiffs' cultural and social event marketing under Napa County Code ("NCC") § 18.08.370; and (2) the content-based, standardless business-event approval regime described in the accompanying memorandum, pending final judgment in this action.

The motion is brought on the grounds that Plaintiffs are likely to succeed on the merits of their claims that Napa misconstrues NCC § 18.08.370, which entitles Smith-Madrone and Summit Lake to conduct cultural and social events without further permission given their small winery exemption and pre-1974 use permit, and that Napa's business-event approval regime is a content-based restriction and unbridled prior restraint that cannot survive constitutional scrutiny; that Plaintiffs will suffer irreparable harm absent relief; and that the balance of equities and the public interest favor an injunction.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities in support of the motion, the declarations of Stuart Smith and Heather

Griffin and the exhibits attached thereto, Defendant's anticipated opposition, and on any oral argument entertained by the Court in connection with this motion.

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, admitted pro hac vice
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

## SUMMARY OF ARGUMENT

Napa County's Code differentiates between cultural, social, and business events at wineries. Wineries may host cultural and social events by right, without a permit, when they are "incidental, related and subordinate to the primary use of the winery." NCC § 18.08.370. Business events, meanwhile, require pre-approval whereby Napa officials review "a marketing plan approved as part of the winery's use permit" and give "careful consideration ... to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan." *Id.* Despite the textual difference, Napa treats cultural, social, and business events the same. It forces wineries to receive prior approval regardless of the event type.

Smith-Madrone and Summit Lake request preliminary injunctive relief against Napa's enforcement of NCC § 18.08.370 for three reasons. <u>First</u>, Smith-Madrone and Summit Lake do not need approval to host cultural or social events, yet Napa requires it. Plaintiffs are therefore likely to succeed on the merits of their statutory interpretation argument. <u>Second</u>, business events (and cultural and social events, under Napa's current interpretation), require prior approval without meaningful, objective standards to guide the decision-making process. Plaintiffs are likely to succeed on the merits of their claim that the requirement for prior approval is an unlawful prior restraint. <u>Third</u>, all event types—social, cultural, and business—are forms of winetasting. Smith-Madrone and Summit Lake want visitors to come to their properties so they can try and, hopefully, buy wine. These product demonstrations are commercial speech, and Napa cannot meet its burden to prove that the restrictions directly advance a substantial governmental interest. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

The remaining injunction factors all favor Plaintiffs. Because Napa's enforcement burdens First Amendment rights, every deprivation irreparably harms Plaintiffs. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Next, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Last, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Taken together, every injunction factor favors Plaintiffs.

## I. INTRODUCTION

Napa ignores the clear text of its ordinance and forbids Summit Lake and Smith-Madrone (collectively "Plaintiffs")[1] from hosting events that its ordinance expressly allows. Section 18.08.370 of the Napa County Code allows wineries to conduct cultural and social events, and to offer food and wine pairings, so long as those activities are "incidental, related and subordinate to the primary use of the winery." Napa does not require Plaintiffs to have a use permit or marketing plan, nor does Napa undertake a content-based review for cultural or social events.

Section 18.08.370 also addresses a third, distinct category of events: business events. For business events, the Code requires that Plaintiffs obtain Napa's pre-approval, whereby Napa reviews "a marketing plan approved as part of the winery's use permit" and Napa gives "careful consideration ... to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan." *Id*.

Properly construed, the Code entitles Plaintiffs to conduct cultural and social event marketing without any County approval or review process. But Napa's regime for business events does not survive constitutional scrutiny. By conditioning approval of a business event on what will be said at the event—evaluating its "intent," its "non-wine-related content," and its "intensity"—Napa engages in content-based prior restraint that vests officials with unbridled discretion over who may speak and when. This regime is presumptively unconstitutional, and Napa cannot carry its burden of justifying it. Worse, in practice, Napa also imposes this regime on cultural and social events, with no support in its ordinances for doing so.

Summit Lake and Smith-Madrone respectfully move for a preliminary injunction barring enforcement of any restriction on hosting cultural/socials events, wine and food pairings or business events.

## II. STATEMENT OF FACTS

Smith-Madrone has operated a winery at 4022 Spring Mountain Road, St. Helena, since Napa County approved it to "build a winery" on October 24, 1973. It operates under a pre-WDO use permit which does not contain a prohibition on events. (Dkt. 70-19.) For decades, Smith-

[1] Hoopes is not moving for the preliminary injunctive relief sought herein.

Madrone hosted visitors, conducted tastings by appointment, and marketed its wines without objection. (Dkt. 70-20.) Contemporaneous invitations and mailing-list newsletters, spanning 1982 through 2019, confirm this practice was recurring for nearly the entire life of the 1973 permit: each open house invited existing customers, wine-club members, and industry contacts to a prearranged gathering — some requiring advance, non-refundable tickets purchased before the event, with no admission sold at the door — featuring tastings of current and library wines poured by the winery's owners. (**Ex. 1;** Smith-Madrone Open House Invitations and Newsletters, 1982, 1986, 1990, 1991, 1993, 1996, 1997, 1999, 2018, 2019.) Independent, contemporaneous press coverage confirms the same practice at least as early as 1984, when the San Francisco Chronicle reported that Smith-Madrone hosted and personally guided a tour and luncheon for members of a national political convention delegation, with winery owner Stuart Smith leading visitors through the vineyard and hosting a meal. (**Ex. 2;** (S.F. Chronicle, July 18, 1984).)

Summit Lake has operated a winery at 2000 Summit Lake Drive, Angwin, since it obtained a small winery use permit exemption on March 1, 1984. Like Smith-Madrone, Summit Lake's small winery exemption contains no prohibition on events. (Dkt. 70-12.) For nearly forty years, Summit Lake welcomed customers for on-site tastings and marketed its wines openly.

Napa's own historical records confirm that Smith-Madrone and Summit Lake were not prohibited from hosting events. Early versions of the County's Winery Database did not reflect any prohibition on events for any wineries, let alone Summit Lake or Smith-Madrone. (Dkt. 70-4, 70-5.) Without notice, explanation, or hearing, the County thereafter revised its Database to show that Summit Lake and Smith-Madrone were each allowed no "marketing events per year" and no "marketing event visitors." (Dkt. 70-6, Dkt. 70-13.)[2] Neither Summit Lake nor Smith-Madrone was aware of this reversal, any basis for it, or any prohibition on their marketing events, until the County's separate nuisance action against a different winery, *Napa County v. Hoopes Family Winery Partners, LP*, No. 22CV001262, Superior Court of Napa County, brought these new Database entries to light. The County confirmed the breadth of its new prohibition at trial in that

[2] The term "marketing event" does not appear in the Code outside of a recent reference related to micro-wineries which is a new category of wineries not at issue in this case.

action, telling the media in early 2024 that small wineries "can't have hospitality. You can't have people onto the grounds, tasting wines, buying merchandise…." (Dkt. 70-41.)

## III. ARGUMENT

### A. Standard of Review

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit applies a "sliding scale" for preliminary injunctions, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this "alternate formulation of the *Winter* test," "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (internal quotations and citations omitted).

Where, as here, the government is the defendant, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And where the challenged action burdens speech, the burden of justification rests with the government, even at the preliminary injunction stage. *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 210 (2014) (plurality).

### B. Plaintiffs Are Likely to Succeed on the Merits.

To obtain preliminary relief, Plaintiffs need not "prove [their] case in full." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). They need only demonstrate a likelihood of success on at least one claim. Napa has misconstrued its own ordinance, applying a single, undifferentiated, content-based test to categories of activity the Code treats differently. Properly construed, the ordinance entitles Plaintiffs to conduct cultural and social event marketing without further permission. And the business-event regime contains a content-based restriction that cannot survive strict scrutiny; indeed, it fails even under the intermediate scrutiny test for commercial speech.

1. Napa Has Misconstrued Its Own Marketing-of-Wine Ordinance.

Section 18.08.370 defines "marketing of wine" to include three distinct categories of activity. Notably, the section contains two distinct paragraphs delineating the permissions. Section 18.08.370 provides, in full:

> "Marketing of wine" means any activity of a winery which is conducted at the winery on a prearranged basis for the education and development of customers and potential customers with respect to wine which can be sold at the winery on a retail basis pursuant to Chapters 18.16 and 18.20. Marketing of wine may include **cultural and social events** directly related to the education and development of customers and potential customers provided such events are clearly incidental, related and subordinate to the primary use of the winery. Marketing of wine may include food service, including food and wine pairings, where all such food service is provided without charge except to the extent of cost recovery.
>
> **Business events** are similar to cultural and social events, in that they will only be considered as "marketing of wine" if they are directly related to the education and development of customers and potential customers of the winery and are part of a marketing plan approved as part of the winery's use permit. Marketing plans in their totality must remain "clearly incidental, related and subordinate to the primary operation of the winery as a production facility" (subsection (G)(5) of Sections 18.16.030 and subsection (I)(5) of 18.20.030). To be considered directly related to the education and development of customers or potential customers of the winery, business events must be conducted at no charge except to the extent of recovery of variable costs, and any business content unrelated to wine must be limited. Careful consideration shall be given to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan.

NCC § 18.08.370 (Emphasis added.) Notably, the limitation on "business events" requiring that they be approved as part of a use permit or marketing plan and that a review of the intent of the event and non-wine related content should be considered, are not contained within the first paragraph as applicable to "cultural and social" events or wine and food pairings.

In practice, however, Napa does not recognize this distinction. Instead, the County applies the business-event test to every winery gathering. The County admits that whether it allows an event "comes down to 'discretion,'" and that whether any of the three types of marketing event will be permitted "is based on the content of the event and who attends." (Dkt 70-11, p. 18.) Napa has issued guidance as to how it determines what is an allowed social, cultural, or business event. (Dkt. 70-48, p. 11-13) [3] The Guidance begins with the following:

---

[3] Napa may argue this Court should rely on its guidance, rather than its ordinance. But the guidance provides that "[t]he zoning ordinance shall control in the event of any conflict between the ordinance and this Resolution and/or Exhibit 'A,'" (Dkt 70-48, p. 10.)

> Since the adoption of the Winery Definition Ordinance in 1990, Napa County Code has allowed activities for the education and development of customers and potential customers at wineries under the definition of 'marketing of wine.' Cultural and social events that are unrelated to education and development are explicitly not permitted, while cultural and social events that are directly related to education and development have always been allowed. Business events are similar to cultural and social events, in that they are only permitted as part of 'marketing of wine' if they are directly related to the education and development of customers and potential customers of the winery and are part of an approved marketing plan that in its totality is 'clearly incidental, related and subordinate to the primary operation of the winery as a production facility.'

(*Id*. at p. 11.)

The Guidance then provides examples of cultural and social events which conflict with the plain language of Section 18.08.370. In assessing which cultural and social events are allowed, the County considers where the cultural or social event is "directly related to education and development of consumers," but then each "example describes the intent of the event, the wine-related content, and the non-wine related content" despite those restrictions not being contained within the Code. *Id*. The examples of cultural and social events are as follows:

> 1. A winery invites 250 members of their wine club to the winery for a special harvest musical event. Catered food is served, the previous year's vintage is tasted from the barrel, and a string quartet performs.
>
> 2. Every year on December 5, a winery throws a Repeal Party for 100 invited distributors, wine shop owners, restaurant owners, and wine writers. No presentations are made, winemaking is not formally discussed, no food is served, but copious amounts of wine are consumed.
>
> 3. On Arbor Day, a winery owner invites 15 of her closest friends (many, but not all, of whom are regular purchasers of her wine) to a special luncheon event. Guests assemble around a heritage oak, various smoked and wood-grilled foods are served; the event culminates in the opening of the winery's ultra rare Arbor Day Cuvee, a cabernet sauvignon that has been aged for three years in untoasted oak barrels.

(*Id*.) By the County's own description, each of these events is "directly related to education and development of consumers" that lawfully "fall[s] within the definition of 'marketing of wine.'" (*Id*.) Immediately following the examples, the Guidance states that "weddings, wedding rehearsals, anniversary parties, and similar events" are not permitted "where the education and development of consumers is subordinate to non-wine-related content." (*Id*.) But according to Supervising Planner Charlene Gallina, these types of events can be permissible. She gave the example of a birthday party which would be allowed so long as the winery goes through "the motion of

presenting [its] wines," because then the purpose of the event would be to educate attendees about winemaking and grape growing. (**Ex. 3**; Gallina Dep. Vol. I 188–191.)

The Guidance also gives "some examples of business events that the County considers directly related to education and development of consumers" and again "the example describes the intent of the event, the wine-related content and the non-wine related content." *Id*. The County's "business event" examples include:

> 1. A three hour (total) tour of the winery and private tasting event is provided for employees of a national bank. Half of the event is taken up by the regional bank manager delivering a speech addressing business prospects for the coming year.
>
> 2. The COO of a Rutherford winery leads a tour of the facility's state of the art energy efficiency and wastewater recycling programs and hosts a round table discussion about green house gas reduction efforts in the County which includes County staff, Sacramento lawmakers, and local business leaders. The afternoon ends with a wine and cheese reception featuring the winery's biodynamically certified wines.
>
> 3. A half-day corporate retreat for a San Rafael-based software firm's 35-member account management group. From 10 to 1 they enjoy a tour of the cellars, a tasting, and a winemaker-hosted blending lab. From 1 to 2 there is a buffet luncheon featuring estate-produced wines; over lunch the group discusses the technical aspects of the firm's new 3D rendering tool.

(Dkt. 70-48 at 12.)

The Guidance adds that "[e]xamples of business events that are not permitted include non-winery related staff meetings, conferences, shareholder meetings, and similar events where the education and development of consumers is subordinate to non-wine-related content."

While the Code contains different types of events with different permissions needed, in practice, Napa applies one catchall "marketing event" category. As noted above, its Winery Database contained only the catchall description "marketing events." And, recently, Napa County approved several status determinations which likewise made no differentiation between cultural and social events versus business events, but just used the catchall description "marketing events." (**Ex. 4**; NAPA_FED029875–029884, NAPA_FED026414, NAPA_FED027961). The only way for these documents to be consistent with the Code, particularly § 18.08.370, was for them to have different permissions for 1) social/cultural events, 2) food and wine pairings and 3) business events.

According to the Code, cultural and social events are simply accessory uses at wineries. Cultural and social events qualify as marketing of wine so long as they are "clearly incidental,

related and subordinate to the primary use of the winery," with no use permit, marketing plan, or content-based review of any kind required. NCC § 18.08.370. NCC § 18.08.020 defines an *accessory use* for every use in the County using the identical phrase: an accessory use "must be clearly incidental, related and subordinate to the main use." Cultural and social event marketing is simply an ordinary accessory use, not a special category subject to discretionary pre-approval.

And a plain reading of the Code confirms that Plaintiffs already hold the status necessary to take advantage of the accessory uses. NCC § 18.08.040(H) provides that agricultural marketing and accessory uses are permitted, without a use permit, upon any one of three textually equal conditions: (1) grant of a use permit; (2) previous issuance of a small winery certificate of exemption under NCC §§ 18.16.020(H)/18.20.020(I); or (3) legal existence as a winery prior to July 31, 1974, under NCC §§ 18.16.020(G)/18.20.020(H). Summit Lake's 1984 small winery exemption satisfies the second condition; Smith-Madrone's 1973 use permit and pre-1974 existence satisfy the first and third. Napa's own Code thus already treats an SWE certificate and pre-1974 status as equivalent to a use permit for hosting cultural and social events "related to education and development of consumers."

Napa may point to NCC § 18.08.600(C), which provides that a "small winery does not conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature," and argue that this provision prohibits Summit Lake from hosting the social events that § 18.08.040(H) otherwise confers on small winery exemption holders. The argument fails on the provision's own terms. First, the provision contains no prohibition on cultural or business events, only social events. But also, Section 18.08.600(C) does not bar all social events; it bars social events "of a public nature." By its plain language, the restriction thereby allows private social events which are the only kind of cultural and social event § 18.08.370 addresses given its direction that they be on a "prearranged basis"; i.e. "private."

Napa's own guidance confirms this reading. Every example of a compliant "cultural and social event" the guidance identifies is, on its face, a private, invitation-only gathering: a harvest event for "250 members of [a winery's] wine club"; a Repeal Party "for 100 invited distributors, wine shop owners, restaurant owners, and wine writers"; and an Arbor Day luncheon for "15 of

[the owner's] closest friends." (Dkt. 70-48 at 11.) None of these is a public event that any member of the public could attend.

Had Napa intended to prohibit marketing events at small wineries and small winery exemptions, it clearly knew how to do so given that for *micro* wineries the Code is explicitly states "[n]o marketing events as defined in Section 18.08.370, are conducted on site." NCC § 18.08.377(E). No similar language can be found in the Code for small wineries and small winery exemptions. When the Code is read based on its plain language, rather than Napa's evolving interpretation of what it wants the Code to say, it is clear that Smith-Madrone and Summit Lake, as well as every winery with a use permit, an SWE, or that was in existence prior to 1974, is allowed to host "prearranged" cultural and social events which are "related to the education and development of customers and potential customers" as well as hosting "food and wine pairings" so long as they only recover the cost of the food. Napa County should be enjoined from restricting these entitlements.

2. <u>The Business-Event Regime Is a Content-Based Restriction Subject to Strict Scrutiny.</u>[4]

Napa does not regulate the time, place, or manner of business events in a content-neutral way. It decides whether an event may occur based on what it thinks will be said. Under the Code, before approving a business event the County must give "careful consideration … to the intent of the event, the proportion of the business event's non-wine-related content, and the intensity of the overall marketing plan." NCC § 18.08.370. The County's guidance confirms that approval turns on the message, not on any physical or temporal characteristic of the gathering. The guidance identifies as a compliant business event a bank's three-hour tour and tasting at which "[h]alf the event is taken up by the regional bank manager delivering a speech addressing business prospects for the coming year," and a winery's hosting of a "round table discussion about green house gas reduction efforts in the County" among "County staff, Sacramento lawmakers, and local business leaders." (Dkt. 70-

[4] Even if the Court were to conclude that cultural and social events are not categorically exempt from Napa's approval process under §§ 18.08.370 and 18.08.040(H), the content-based and prior-restraint defects discussed in this section apply with equal force to that category. Napa's own guidance and enforcement practice apply the identical "intent," "content," and "intensity" criteria to cultural and social events as to business events, so the constitutional infirmities identified below would independently require the same relief regardless of which category a given event falls into.

48 at 11–12.) In each example, the Guidance instructs that approval depends on "the intent of the event, the wine-related content, and the non-wine related content," an inquiry into subject matter and message, not conduct. (*Id*.) This is the very definition of a content-based regulation.

A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Napa must "examine the content of the message that is conveyed" to decide whether the business event is allowed, which is the very inquiry *Reed* forbids without satisfying strict scrutiny. *Id*. at 165–66. Content-based restrictions are "presumptively unconstitutional." *Id*. at 163; *accord Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009). Where "enforcement authorities must examine the content of the message that is conveyed to know whether the law has been violated … [t]hat's about as content based as it gets." *Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 862 (11th Cir. 2020) (cleaned up).

The County's guidance supplies a further, self-illustrating example of exactly this vice. The Guidance approves a "half-day corporate retreat for a San Rafael-based software firm's 35-member account management group," during which the attendees tour the cellars and taste wine before spending an hour, over a catered lunch, discussing "the technical aspects of the firm's new 3D rendering tool." (Dkt. 70-48 at 12.) The identical physical activity, a business group touring a winery and eating lunch, is thus permitted or forbidden based solely on what the group discusses: a wine-education presentation is content the County will approve, a business retreat's ordinary agenda is content the County must evaluate and could reject. That is content-based regulation in its purest form, and the County's own Guidance supplies the admission.

Napa cannot rebut the presumption of unconstitutionality that attaches to a content-based restriction. Strict scrutiny requires the County to prove that its content-based approval regime is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 171. Because this restriction burdens speech, this burden rests on Napa, not on Plaintiffs, even at the preliminary-injunction stage. *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (plurality)). Napa has never identified a compelling interest served by screening the proportion of non-wine content or the intensity of the marketing message at a winery event, much less shown that conditioning speech on

those criteria is the least restrictive means of advancing it. An interest in preserving the agricultural character of the county, whatever its weight, is not served by favoring wine-education speech over other speech at the same event on the same premises. The regime therefore fails strict scrutiny, and Plaintiffs are likely to succeed on this claim.

3. Napa County Engages in an Unconstitutional Prior Restraint.

Plaintiffs are independently likely to succeed because NCC § 18.08.370 is a classic prior restraint: winery owners may not hold a business event until they first obtain the County's permission. A requirement of "government permission before speaking is an unlawful prior restraint," and such restraints bear "a heavy presumption against [their] constitutional validity." *Alexander v. United States*, 509 U.S. 544, 550 (1993); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

The presumption is fatal here for two reasons that the Court can resolve on the face of the ordinance. First, the ordinance vests County officials with unbridled discretion. A permitting scheme that governs speech must contain "narrow, objective, and definite standards to guide the licensing authority;" standardless discretion "to decide who may speak and who may not" is unconstitutional. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969); *Lakewood*, 486 U.S. at 757. The County's own records confirm the absence of standards. Staff acknowledges there are "no clear-cut answers for determining [the winery's] visitation and marketing numbers." (**Ex. 5**; NAPA_FED025602). And a County official has testified that whether an event will be approved or not approved "comes down to 'discretion,'" and "is based on the content of the event and who attends." (Dkt. 70-11, p. 18.) Indeed, the County's own planners have acknowledged that "it has not always been clear" which events qualify, and that whether a given gathering is permitted rests on shifting administrative "interpretation" that "can be reversed … whenever the composition of the Commission or the Board changes." (Dkt. 70-38.) In a September 2, 2015 Board Agenda Letter, sent on behalf of Director Morrison, it was determined that "the WDO guidelines as written are imprecise in that they do not provide any specific means for quantifying either remoteness or production, and/or do not indicate how these criteria relate to marketing and visitation proposals," that "[t]he vague language does not provide clarity for staff or the Commission in how to analyze

projects for consistency with the guidelines," that it "creates uncertainty for both the applicant and the public in giving any indication of what will be approved or denied," and that "the guidelines do not provide any meaningful guidance to the Planning Commission in how to weigh these factors." (Dkt. 70-39, p. 3)

Ninth Circuit authority confirms that Napa's criteria are impermissibly vague, and that objective, precise standards were readily available. In *Long Beach Area Peace Network v. City of Long Beach*, the Ninth Circuit upheld a permitting provision authorizing conditions only where "necessary to coordinate multiple uses of public property, assure preservation of public property and public places, prevent dangerous, unlawful or impermissible uses, protect the safety of persons and property and to control vehicular and pedestrian traffic," precisely because those "purposes specified … are objective and relatively precise, and have no discernable connection to the content of any particular message." 574 F.3d 1011, 1028 (9th Cir. 2009).

By contrast, the court struck down, as not being narrowly tailored, a companion provision permitting for "any other organized activity … which may require the provision of city public services," because that criterion supplied no meaningful limit and left the permitting decision to open-ended judgment. *Id*. at 1034–36. Napa's "intent of the event," "non-wine-related content," and "intensity of the … marketing plan" criteria fall on the invalid side of that line: unlike the objective, physically-verifiable purposes upheld in *Long Beach*, they require the decisionmaker to assess what an event is about and how much of it concerns wine which is the very evaluation of message and subject matter the Ninth Circuit's objective-standards requirement is designed to foreclose. *See also id*. at 1042 ("narrow tailoring" requires that a regulation "achieve its ends without restricting substantially more speech than necessary" and that no "obvious alternative" achieving the same objective with less restriction of speech go unused).

Another court considering similar permitting criteria just reached the same conclusion. In *Naples Pride v. City of Naples*, the court denied a motion to dismiss a facial unbridled-discretion challenge to a special-event permitting scheme where the decisionmaker was authorized to consider, among other factors, whether "[t]he event is generally compatible with the character of the city." 2026 WL 91486, at *11 (M.D. Fla. Jan. 13, 2026). The court held that this single factor,

among ten others that were unobjectionable, "sufficiently vests unguided discretion in the City Manager to pose a risk of chilling speech and violate the First Amendment's unbridled-discretion principles," because the decisionmaker "can (and indeed must) take into account the content and viewpoint of an event's message in assessing whether to grant a permit, without specific standards other than his or her own opinion." *Id.*

Recently, after Cal. Bus. & Prof. Code § 23399.03 was enacted, Napa began allowing "estate tasting events." For these events, Napa does not review the content or intent of the event. Instead, the permitting scheme is built entirely around neutral, numeric, and physical criteria that apply to all wineries equally: a maximum of forty-nine attendees, a cap of thirty-six events per year, daylight-hours-only operation, and a traffic ceiling of 40 average daily trips. (**Ex. 6**.; Type 93 Permit Faq.) The estate tasting permit procedures foreclose any argument that content-based review of Plaintiffs' marketing events is necessary because objective alternatives are unavailable or unworkable. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1084 (9th Cir. 2006) (objective standards must be unavailable before resorting to discretionary, content-based review).

4. <u>At a Minimum, the County's Event Restrictions Fail *Central Hudson*.</u>

Even if the Court were to treat the regulated marketing as commercial speech which warrants only intermediate scrutiny, Napa still cannot carry its burden. Commercial speech that "concern[s] lawful activity and [is] not … misleading" may be restricted only if the government proves a "substantial" interest, that the restriction "directly advances" that interest, and that it is "not more extensive than is necessary to serve" it. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York, 447 U.S. 557, 566 (1980)*. The government bears the burden on each prong, and that burden "is not satisfied by mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

There is no evidence that screening the content and "intensity" of cultural, social or business events "directly advances" any substantial governmental interest, and the "reasonable fit" *Central Hudson* demands is absent where the County allows *thousands* of marketing-event visitors at selected wineries while denying other wineries any events at all, based on interpretive criteria it has never reduced to objective standards. The County's own guidance confirms the criteria bear no

relationship to the interest they purportedly serve. The guidance identifies as compliant a "Repeal Party" attended by 100 industry guests at which "[n]o presentations are made, winemaking is not formally discussed, no food is served," and an employee "tour" at which "[h]alf the event" consists of a bank manager's business speech unrelated to wine. (Dkt. 70-48 at 11–12.) A screening standard that is satisfied by an event containing no wine education whatsoever, and by an event that is half business content, while simultaneously barring weddings and anniversary parties with an identical physical footprint, *id*., does not "directly advance" any interest in promoting wine education; it advances nothing beyond the County's own unstated preference for some gatherings over others. A restriction fails *Central Hudson's* second and third prongs where the government's "own course of conduct subverts" its proffered justification. *Lamar Central Outdoor, LLC v. City of Perris*, No. 5:25-cv-02557, 2025 WL 4058873, at *8 (C.D. Cal. Dec. 19, 2025) (enjoining an advertising restriction where the same activity was permitted on-site while banning only the off-site advertising thereof).

As discussed above, Napa recently approved an estate tasting event permit which authorizes any Type 02 winegrower to host on-site tasting events, for the purpose of presenting wine to guests and inducing sales, subject only to objective, content-neutral limits on attendance (49 persons), frequency (36 events per year), hours (daylight only), and traffic (40 ADT). Thus, the County has, for the same activity, already implemented the less-restrictive, content-neutral alternative *Central Hudson* requires. This forecloses any argument that its content-based marketing-event review is "not more extensive than is necessary" to serve whatever interest the County claims.

### C. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction.

Where a plaintiff establishes a likelihood of success on a First Amendment claim, the irreparable-harm requirement is met as a matter of course, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality).

That principle controls here. Every day Napa's event approval regime remains in force, Plaintiffs are barred from holding cultural, social and business events, *i.e*. from engaging in protected expression, unless and until the County grants permission under standardless, content-

sensitive criteria. This will cause irreparable harm to both Smith-Madrone and Summit Lake. (*See* **Ex. 7**; Smith Decl., **Ex. 8**; Griffin Decl.) In a 2009 internal memorandum addressing these cultural, social and business events, the County's own Planning, Building, and Environmental Services staff acknowledged in writing that "events are protected under the First Amendment of the U.S. Constitution." (Dkt. 70-38.) The injury is "the direct penalization, as opposed to incidental inhibition, of First Amendment rights," *id.*, and it recurs with every event the wineries forgo, cancel, or curtail for fear of enforcement.

That the threat of enforcement is concrete and imminent, not speculative, is confirmed by the County's own admission that it investigates wineries' compliance through undercover visits, and that it "exercises discretion" in deciding whether to enforce against any given winery. (**Ex. 9**; RFA 170, 171, 173.) And should enforcement result in a Notice of Apparent violation, Napa "does not have a hearing or appeal process" and it does not "have a hearing officer." (**Ex. 10**; Cahill trial testimony; Hoopes Trial Tr. Vol. 5 at 772-74.)

**D. <u>The Balance of Equities Favors an Injunction.</u>**

The balance of hardships tips sharply in Plaintiffs' favor. On one side of the scale is the continuing deprivation of Plaintiffs' constitutional rights and the concrete business consequences that flow from it. This includes events they cannot hold, customers they must turn away, and the goodwill they lose each season the regime remains in force. On the other side, Napa faces no cognizable hardship at all, because the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). A properly scoped injunction asks the County to do nothing more than refrain from enforcing an event-approval regime that violates the First Amendment.

Any hardship Napa might assert is further diminished by the narrow scope of the relief Plaintiffs seek. Plaintiffs do not ask this Court to enjoin the County's general land-use authority, its legitimate agricultural-preservation ordinances, or the ongoing state enforcement proceeding concerning public tastings. They ask only that Napa be enjoined from enforcing the *content-based, standardless event pre-approval regime* against them pending final judgment. An injunction that leaves the County free to enforce every content-neutral, generally applicable regulation imposes no

meaningful burden on legitimate governmental operations. When weighed against the loss of First Amendment freedoms, the balance is not close. *See Elrod*, 427 U.S. at 373.

**E. <u>An Injunction Serves the Public Interest.</u>**

The final factor merges with the balance of equities when the government is the opposing party, *Nken*, 556 U.S. at 435, and it likewise favors relief. It is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The public interest is not served by the continued enforcement of an unconstitutional restriction; to the contrary, although a locality has an interest in its underlying policy goals, "it does not have an interest in enforcing a law that violates the First Amendment."

That reasoning applies with full force here. Napa's asserted interests in agricultural preservation and orderly land use are legitimate in the abstract, but the County has no legitimate interest in advancing them through a regime that conditions protected expression on its content and vests officials with unbridled discretion over who may speak. The public's interest lies in the free flow of truthful information about lawful products, here, Napa Valley wine, and in ensuring that speech-licensing decisions are governed by objective standards rather than administrative preference. An injunction vindicates both interests.

**IV. <u>CONCLUSION</u>**

Napa misconstrues NCC § 18.08.370, which creates three categories of wine marketing, only one of which — business events — triggers the marketing-plan-and-permit requirement. Read together with NCC §§ 18.08.020 and 18.08.040(H), the ordinance entitles Summit Lake and Smith-Madrone to conduct cultural and social events without further permission given their small winery exemption and pre-1974 permit. The business event restriction also cannot survive scrutiny: it is a content-based restriction failing strict scrutiny, an unbridled prior restraint, and inadequate even under the commercial-speech standard. Because the remaining *Winter* factors favor relief, Plaintiffs request that the Court preliminarily enjoin Napa from enforcing (1) its undifferentiated, content-based approval regime against Plaintiffs' cultural and social events, and (2) the standardless business-event regime described above, pending final judgment.

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, admitted pro hac vice
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

51446726.5/162870.00001