# Exhibit 3

SUPERIOR COURT OF THE STATE CALIFORNIA

COUNTY OF NAPA

NAPA COUNTY and THE PEOPLE OF THE STATE OF CALIFORNIA ex. rel. THOMAS ZELENY, as Interim Napa County Counsel,

Plaintiffs,

vs. No. 22CV001262

HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC, LINDSAY BLAIR HOOPES, and DOES 1 through 10 inclusive,

Defendants.
_______________________________________/

HOOPES FAMILY WINERY PARTNERS, LP, a California limited partnership and HOOPES VINEYARD, LLC, a California limited liability company,

Cross-Complainants,

vs.

NAPA COUNTY, and ROES 1 through 10 inclusive,

Cross-Defendants.
_______________________________________/

DEPOSITION OF CHARLENE GALLINA

VOLUME 1 (Pages 1 through 237)

Monday, January 8, 2024

Reported By:

KATHLEEN M. SOLOAGA, CSR 6957, RPR

MS. FALACE: I agree. What I'm asking is, is that Ms. Gallina keeps being updated, and I'm trying to ask for an updated version.

I agree with you, Mr. Spellberg, we can access 2019. I can't find a way to access --

THE WITNESS: And what I don't --

MS. FALACE: -- anything after.

THE WITNESS: -- know why this one hasn't been updated, which I recall in discussions with -- through email correspondence. I thought we were gonna -- we were gonna provide a link to the public that gives us that active database which would show any changes beyond 2019.

BY MS. FALACE:

Q. So as of today, it doesn't look like anything beyond 2019 is accessible; is that correct?

A. That's correct, according to this exhibit.

Q. And our short search on the Internet, correct?

A. Yes.

Q. When you would make changes to the winery database, would you notify the winery owners of those changes?

A. No, we've never done that. We just take the letter, and because the conditions are so specific in terms of the first section of the conditions is the scope of the winery and then there's condition, I think it's



4.23, and 3 talks about the visitation and marketing. It's easy for someone to take that information and input it into the database; so we don't tell the applicant, "Here's the winery database and see if these numbers are correct."

Q. What about, though, if the -- if you made a change to a pre-WDO winery in the winery database, would you notify the prop -- the winery owner?

A. I would say no.

Q. Do you know one way or the other?

A. The -- I don't think we notify the applicants of any --

Q. Oh, not applicants.

A. -- changes or winery owners of any changes to the database.

Q. I just want to make sure my question is clear.

So, if you found -- for instance, the person that was working for you that you tasked to work --

A. Yes.

Q. -- for three to four hours that went through the winery database to correct any errors, those were wineries that had already completed the process, correct?

A. (Nodding head.)

Q. Yes?

A. Yes.



Q. So if a change was made to a winery, a pre-WDO winery whose entitlements had long since been established, would you notify that winery that you had changed something in the database?

A. No, because that change would have reflected what they had received in their entitlement. Somewhere somebody made an error, and so we're just correcting that error.

Q. But you are not notifying the winery that there was an error that you are correcting?

A. That's correct.

Q. What is a marketing event --

A. It's --

Q. -- defined in the code?

A. It's actually -- it's defined in the code, but there's also an interpretive guidance which was adopted by resolution.

Q. Which resolution is that?

A. Oh, gosh, it was the same time as 2010, that resolution you gave -- or the ordinance you gave me. Let's see, which one it was? I was gonna say something about it when we talked about it, that if you have that resolution --

MS. HOOPES: I think it's attached.

THE WITNESS: Is it attached?



MS. HOOPES: Mm-hmm.

THE WITNESS: Which document was that, do you recall? Let me just look.

I am looking for the 2010 ordinance.

MS. HOOPES: It was 1340.

THE WITNESS: Yes, that's -- there was a resolution that was also adopted.

MR. SPELLBERG: Seven?

THE WITNESS: Let's see, 7?

MS. HOOPES: 1340.

THE WITNESS: Yes, this resolution. It's Resolution 210-48.

MS. HOOPES: Which exhibit are you referring to?

THE WITNESS: This is 7, Exhibit 7.

BY MS. FALACE:

Q. Okay. So Ordinance Number 1340 refers to Resolution 2010-48?

A. (Nodding head.)

Q. Okay. So we were looking at Exhibit 7.

And Exhibit 7 -- oh, as part of Exhibit 7, the ordinance is what defines a marketing event; is that what you're saying?

A. Yes.

Q. And how is a marketing event defined?

A. So in the ordinance, marketing of wine is

defined in 18.08.370, and then the resolution created a guidance document on interpretation of a marketing event; so these -- staff was given this resolution, Exhibit A, events permitted as part of marketing of wine; and it talks about what is a marketing event and how do you distinguish this from a party or -- a birthday party, anniversary party, a business meeting; so it gave staff and the Planning Commission and the applicant guidance of how to do a marketing event and what is a marketing event.

Q. If somebody comes to the winery and it's their birthday, is that a marketing event?

A. No, it could be a tasting of -- just a tours and tasting and it's your birthday party and you bring a bunch of people with you and you get an appointment for ten people and you do a tasting and you might have a cake that you bring, but it's not a reserve activity as a marketing event.

So you can't reserve the whole winery for a birthday celebration, has to be -- the purpose of the marketing event is to educate the public on the process of making wine and agricultural, what is it, growing of grapes, so it has to be related to that. It can't be an anniversary party, a wedding, a birthday party, it has to be some activity.

190

We've told this to wineries 'cause we've received complaints about birthday celebrations and we told the winery owner, you can have a birthday party but it has to be part of your daily tours and tastings, and it's just one little activity, you know, somebody reserves a wine tasting for six people and you go through the motion of presenting your wines and then you might have a cake.

Q. What about a political fundraiser, is that a marketing event?

A. That is ruled by the temporary event ordinance that allows political fundraisers. There's special provisions in there that talks about that; and that, I don't recall off the top of my head of the specifics of the temp event.

Q. Can a pre-WDO winery have a political fundraiser?

MR. SPELLBERG: Objection, incomplete facts.

THE WITNESS: The pre-WDO wineries are not -- some of them are not really clear about what their marketing events are, and I have known them to have it in the past and we haven't said much about it because it's a pre-WDO winery. Usually we tell them, come in for the temporary event and process it as a temporary event and you will be safe.

191

BY MS. FALACE:

Q. What about a small winery use permit exemption, are they allowed to have a political fundraiser?

A. I don't -- so the definition of small winery ordinance has that provision about social events, not having them, so I would say no to that. And the question is whether or not a small winery exemption can come in and get a temporary event.

Q. And what's the answer to that?

A. To -- I -- ew, I don't know. I'd have to go back and do research on that. I would say no because they weren't allowed marketing activities, public access, you know, public tours and tastings or tastings.

MR. SPELLBERG: Visitors.

THE WITNESS: Or visitors, so I would say no.

MS. FALACE: Mr. Spellberg, you can't testify.

MR. SPELLBERG: I'm helping.

MS. FALACE: Clearly, I --

THE WITNESS: I would have drawn that conclusion eventually.

BY MS. FALACE:

Q. Well, I am curious, so the County's position is that a small winery use permit exemption cannot have a political event?

MR. SPELLBERG: That's not what she's testified

192

to.

BY MS. FALACE:

Q. Is that true?

MR. SPELLBERG: That's what she --

MS. FALACE: Please, Mr. Spellberg, please stop testifying.

MR. SPELLBERG: That's what she -- that's what she testified to.

THE WITNESS: I am saying the small winery exemption cannot have public tours, can't have tastings, and can't have social activities; so the conclusion would be drawn, they couldn't do a political activity even with a temporary event.

BY MS. FALACE:

Q. Can they have a private tour?

MR. SPELLBERG: Objection, incomplete facts.

THE WITNESS: I would say no, because it's still considered a public access to the winery.

BY MS. FALACE:

Q. Where does it say in the code no private tours?

A. It says no -- once again, it says no tasting -- it says no public tours, no tasting, and no social events.

Q. So let's look at --

A. Which exhibit was that, was that Exhibit 12?

193

# DEPOSITION OF CHARLENE GALLINA

respect the cut-off right now, but --

MR. SPELLBERG: I appreciate it, and I know we have a dispute on that and we'll discuss it with the Judge.

(Whereupon, at 6:02 p.m., the deposition was adjourned.)

--o0o--

234

--o0o--

I have read the foregoing deposition. The answers to the questions are true of my own knowledge. I declare under the penalty of perjury that the foregoing deposition is a true and correct transcription of my said testimony, except as I have corrected any answer in ink and initialed such correction, or as shown on the attached errata sheet.

____________________

Signature of witness

____________________

Date of signature

--o0o--

( ) The deponent failed to appear in order to approve or sign his/her deposition.

( ) The deponent refused to approve or sign his/her deposition for the following reason:_________________

___________________________________________________

( ) The deponent approved his/her deposition by the letter attached hereto and made a part of the deposition herein.

--o0o-

235

STATE OF CALIFORNIA )
) ss:
COUNTY OF NAPA )

I hereby certify that the witness in the foregoing deposition, named

CHARLENE GALLINA,

was duly sworn to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; pursuant to Section 2093 (b) CCP; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly licensed Certified Shorthand Reporter under the laws of the State of California, and a disinterested person, and was thereafter transcribed into typewriting under my direction.

And I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said caption.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of January 2024.

__________________________________

KATHLEEN M. SOLOAGA, CSR No. 6957
County of Napa
State of California

--o0o--

236

Charlene Gallina January 17, 2024
c/o Geoffrey Spellberg, ESQ.
350 Sansome Street, Suite 300
San Francisco, CA 94104

Re: Napa County vs Hoopes Family Vineyard
Case No. 22CV001262

The deposition you have rendered in the above-entitled matter has been transcribed into typewriting and is ready for your review.

If you wish to read, correct and sign your deposition, the deposition transcript will be available in our Napa offices during business hours for a period of 30 calendar days from the date of this letter before being forwarded in a sealed envelope as provided by law to the attorney who noticed your deposition.

You may come to our office to read and sign the original transcript, or you may contact your attorney or the attorney who arranged for you to be present at your deposition. It may be possible for you to review their copy and submit to us a letter setting forth any changes you choose to make. If you wish to come to our office to read your deposition, please call in advance and make an appointment.

If you have any questions regarding this letter, please contact your attorney or call our office.

Sincerely,

SIMS & SIMS

By: KATHLEEN M. SOLOAGA,
CSR No. 6957

cc: All counsel
Original
Date Taken: January 8, 2024

237