# Exhibit 10

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

HONORABLE MARK S. BOESSENECKER, JUDGE, PRESIDING, DEPARTMENT 5

---oOo---

| | |
|---|---|
| NAPA COUNTY and THE PEOPLE OF THE STATE OF CALIFORNIA ex. rel. THOMAS ZELENY, as Interim Napa County Counsel, | |
| Plaintiffs, | |
| vs. | No. 22CV001262 |
| HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC, LINDSAY BLAIR HOOPES, and DOES 1 through 10, inclusive, | VOLUME 5<br>PAGES 616-813 |
| Defendants. | |
| AND RELATED CROSS-ACTION. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Thursday, February 1, 2024

COURTHOUSE, NAPA, CALIFORNIA

Reported by: VALERIE PRINCE, CSR #7946, RPR, CRR, CRC

document as --
THE COURT: Are you asking if it -- if she recognizes, like, what kind of document this is --
MS. HOOPES: Yes.
THE COURT: -- versus a specific --
MS. HOOPES: Yes.
THE COURT: You follow me?
THE WITNESS: I do, but it's -- with that --
THE COURT: It still doesn't help.
THE WITNESS: -- it might represent another permit type within our department, so I'd like -- if the information is the same, I'd like to compare it to the floodplain permit that was introduced into evidence earlier.
THE COURT: All right. Next question.
Q. BY MS. HOOPES: If I could have you go to 1230, please.
A. Okay.
Q. And do you recognize this document?
A. It's an e-mail.
Q. And are you in -- are you one of the recipients in this particular e-mail?
A. Yes.
Q. And who does this e-mail appear to be from?
A. Scott Greenwood-Meinert.
Q. And the third paragraph -- well, what is the date of this e-mail?
A. July 23rd, 2020.
Q. And do you see in the third paragraph where

769

Mr. Greenwood-Meinert says, "My expectation is that this meeting would result in a written determination thereafter regarding the matter so that we might be able to appeal the determination if necessary"?
A. I see it.
Q. And it goes on to say, "I assume that appeal would be to the Board of Supervisors, but perhaps this can be clarified at the meeting." Do you see that?
A. I do.
Q. So was it your understanding at that point in time that you had a difference of opinion on the entitlements of the property from that of counsel?
A. I can't speak to what that third paragraph is referring to.
Q. Well, in other words, I believe you testified earlier today that counsel and the defendants agreed with your interpretation, and I'm asking you to look at this e-mail and identify whether or not this changes your opinion.
MR. SPELLBERG: Your Honor, we object; the question's incomprehensible; it hasn't identified the prior opinions.
THE COURT: The objection's overruled.
THE WITNESS: Can you repeat that?
Q. BY MS. HOOPES: Sure. I believe you testified earlier today that during your conversation on July 29th of 2020 that you understood the defendants to agree with your interpretation of the entitlements; is that correct?
A. Not agree. You just didn't disagree.
Q. And I guess what my question is is does this e-mail

770

refresh your recollection about what the defendants' position was with respect to their entitlements?
A. This -- that meeting occurred after this. No.
Q. But in other words, you and the defendants had a difference of opinion with respect to the entitlements; is that correct?
A. It -- may I read this?
Q. Sure.
A. There was a differing of opinions.
Q. I'm sorry?
A. There appears to be a differing of opinion.
Q. And you indicated in your deposition that you did not know if you created the screenshots from the social media posts or if that had been done by somebody else; is that correct?
A. I did some, but, yes, there could have been some produced by someone else in our division.
Q. And Patrick Ryan is not listed in any of these e-mail communications; is that correct?
A. Correct.
Q. And did Patrick Ryan actually review your notice of apparent violation?
A. No.
Q. And did Patrick Ryan confirm any of the alleged violations in your notice of apparent violation?
A. No.
THE COURT: Let's take a 10-minute break. Let's reconvene at 2:45.

771

MS. HOOPES: Thank you.
(Court recessed, 2:35 p.m.)
(Court comes to order, 2:46 p.m.)
THE COURT: Okay, we are back on the record. Both sides are present. The witness, Ms. Cahill, resumes on cross-exam.
Q. BY MS. HOOPES: And, Ms. Cahill, I'd like to move to Defendants' Exhibit 1235.
A. Okay.
Q. And do you recognize this document, Ms. Cahill?
A. It's an e-mail.
Q. And is this e-mail from you?
A. It is.
Q. And what is the date?
A. August 12th, 2020.
Q. And this is a communication after the floodplain response from August 10th was sent; is that correct? That's okay. This is August 12th. That's totally fine.
And do you see there where it says -- you wrote, "The County has issued a Notice of Apparent Code Violation, which does not have a hearing or appeal process at this stage. We believe that there is a violation of County Code as detailed in the Notice of Apparent Code Violation. We have conducted two meetings to discuss the violations. These are not hearings nor are they meant to be. The next step will be to provide the Planning Director and I with documentation that the winery is not conducting tours" -- "tastings, tours, or marketing events.

772

"In the event that a Citation is issued for violations of the County Code, it is at that stage you may request a hearing by filing an appeal. However, no Citation has been issued." Do you see that?
A. Yes.
Q. So no final determination had been made at this particular point in time.
A. There is no final determination. I mean, it was an open Code case.
Q. Were there any hearings offered to the defendants?
A. We were looking for resolution, voluntary resolutions. There are no hearings. We don't have a hearing officer, so it could just be communication between yourself and either myself or someone else from the County.
Q. But in this particular event, the defendants were not offered the opportunity to contest the issue with somebody outside of the Department; is that correct?
A. Like who?
Q. A hearing officer.
A. We don't have a hearing officer.
Q. But you told the defendants that they could not apply for the small winery ordinance permit based on this conversation; is that correct?
A. Not based on that conversation, based on information that was provided during, I believe, the Zoom meeting.
Q. So in other words, you determined that a violation occurred but did not provide the opportunity for a hearing; is that correct?



A. There is no hearing opportunity at that stage.
Q. And you didn't issue a final determination; is that correct?
A. The final determination was that there was still a violation.
Q. But there was nothing to appeal is my point.
A. No, that would have been as part of a citation.
Q. And then you indicated that you issued a second notice of apparent violation on May 12th, 2021. Do you recall that?
A. Yes.
Q. And we saw earlier today that the defendants responded 5 days later; is that correct?
A. I would have to look at the notes.
Q. Do you recall what was in that particular notice of apparent violation?
A. I'd have to review it.
Q. I believe it's Plaintiff's 41. It's gonna be in the white binders.
A. Okay.
Q. And do you see under paragraph 1 that that particular violation allegation says that yoga is not allowed in the Agricultural Preserve; is that correct?
A. No, I don't see that.
Q. And we're looking at the Second Information and Notice Regarding Apparent Code Violation.
A. Yes.
Q. And this is the second notice of apparent violation



that you issued; is that correct?
A. Yes.
Q. And under paragraph 1, you indicated that, "Yoga is a system of exercises more appropriately located at fitness centers"; is that correct?
A. Paragraph 1 of --
Q. I'm sorry, sub -- it's marked with the number 1.
A. Yes, I see that.
Q. And you indicated in your deposition that you did not know whether or not yoga had occurred at the property; is that correct?
A. There were advertising for yoga.
Q. But you didn't know if it had actually occurred.
A. Correct.
Q. And you didn't actually know whether or not the August -- or I should say April event that prompted this notice had actually occurred; is that correct?
A. I did not go on the property myself to confirm.
Q. So you did not verify that that took place; is that correct?
A. It was advertised.
Q. Understood but did you actually determine whether or not it had occurred?
A. I didn't get confirmation that it didn't.
Q. And under number 2, did you ever have any verification that food service was actually being conducted on the property?
A. There was food in the evidence that was gathered;



there was food photographed.
Q. But you did not have any confirmation that food service actually took place.
A. I did not receive any food.
Q. And you did not actually document dates of food service taking place at the property; is that correct?
A. I documented what was on social media at the time.
Q. And under paragraph 3, you actually did not have personal knowledge as to whether or not any of the produce was not from the property; is that correct?
A. That is correct.
Q. And under number 4, you did not have any personal knowledge that a retail store was at the property; is that correct?
A. I had evidence showing photographs of the inside with those items.
MS. HOOPES: And, Your Honor, we'd like to move 1235 into evidence, please.
MR. SPELLBERG: No objection.
THE COURT: 1235 will be received.
(Exhibit 1235 admitted into evidence.)
Q. BY MS. HOOPES: If I could have you refer back to your workflow, I believe when counsel was asking you about the second notice of apparent violation on direct examination, you indicated that you had not received a response, but on May 17th of 2021 you do list in your comment section that you did receive a response. Do you see that?
A. May 17th?

STATE OF CALIFORNIA )
COUNTY OF NAPA )

I, VALERIE PRINCE, Certified Shorthand Reporter, do hereby certify that as such I took down in stenotype all of the proceedings in the within-entitled matter, NAPA COUNTY, et al., Plaintiffs, versus HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC, LINDSAY BLAIR HOOPES, et al., Defendants, Superior Court Action Number 22CV001262, heard before the Honorable MARK S. BOESSENECKER, JUDGE, and that I thereafter transcribed my stenotype notes into typewriting through computer-assisted transcription, and that the foregoing transcript, pages 616 through 813, constitutes a full, true, and correct transcription of the proceedings held before me at the aforementioned time.

IN WITNESS WHEREOF, I have hereunto subscribed my name this day, 18th day of March, 2024.

___________________________

VALERIE PRINCE

Certified Shorthand Reporter #7946, RPR, CRR, CRC