Joseph M. Infante (pro hac admission)
infante@millercanfield.com
Stephen M. Ragatzki (pro hac admission)
ragatzki@millercanfield.com
**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333 / Fax: (616) 776-6322

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
Angela Han (Bar No. 317137)
ahan@fennemorelaw.com
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
Attorneys for Plaintiffs Hoopes Vineyard LLC, Summit Lake Vineyard, and Cook's Flat Associates a California Limited Partnership

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HOOPES VINEYARD LLC, a California limited liability company;<br>SUMMIT LAKE VINEYARDS & WINERY LLC, a California limited liability company; and COOK'S FLAT ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NAPA,<br><br>Defendant. | Case No. 3:24-cv-6256-CRB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS SUMMIT LAKE AND COOK'S FLAT ASSOCIATES MOTION FOR PRELIMINARY INJUNCTION REGARDING WINETASTINGS**<br><br>Judge: Hon. Charles R. Breyer<br>Hearing Date: November 20, 2026<br>Hearing Time: 10:00 a.m.<br>Location: San Francisco (ZOOM) |

# TABLE OF CONTENTS


Page

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REGARDING WINETASTINGS ..... V

SUMMARY OF ARGUMENT ..... VII

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. Tastings, Sales, Solicitation, and Consumer Education are Lawful. ..... 1

B. Napa Admits Smith-Madrone's Permit Authorizes Private Tastings. ..... 2

C. Summit Lake's Exemption Prohibits Only "Public" Tastings. ..... 2

III. ARGUMENT ..... 3

A. Standard of Review ..... 3

B. Plaintiffs Are Likely to Succeed on the Merits. ..... 3

1. Napa Concedes Smith-Madrone's Appointment Tastings Are Lawful. ..... 3

2. Summit Lake's Exemption Allows Private Tastings. ..... 4

3. NCC § 18.08.600(C) Does Not Override Summit Lake's Exemption. ..... 6

4. Napa's Enforcement of Undefined "Winetasting" Violates Due Process. ..... 7

5. Winetastings and Solicitation Are Protected by the First Amendment. ..... 8

a. A Winetasting Is Commercial Speech. ..... 8

b. Soliciting Winetastings Customers is Also Commercial Speech. ..... 9

6. Napa has the Burden to Meet the Central Hudson Factors. ..... 10

a. The Speech Concerns Lawful Activity and Is Not Misleading. ..... 11

b. Napa has not Identified a Substantial Governmental Interest. ..... 12

c. Napa Cannot Meet the Remaining Central Hudson Factors. ..... 13

C. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction. ..... 14

D. The Balance of Equities Favors an Injunction. ..... 14

E. An Injunction Serves the Public Interest. ..... 15

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Acad. of Pain Mgmt. v. Joseph*,
353 F.3d 1099 (9th Cir. 2004) ..... 11

*Am. Bev. Ass'n v. San Francisco*,
916 F.3d 749 (9th Cir. 2019) (en banc.) ..... 14

*Aptive Env't, LLC v. Village of East Rockaway*,
No. 18-CV-6907, 2019 WL 3206132 (E.D.N.Y. July 16, 2019) ..... 13

*Board of Trustees of the State University of New York v. Fox*,
492 U.S. 469 (1989) ..... 8, 9

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ..... 8

*California League of Food Producers v. Bonta*,
No. 3:26-CV-01675-WQH-BLM, 2026 WL 2055589 (S.D. Cal. July 14, 2026) ..... 11, 13

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980) ..... *passim*

*Centro De La Comunidad Hispana v. Town of Oyster Bay*,
128 F. Supp. 3d 597 (E.D.N.Y. 2015), aff'd, 868 F.3d 104 (2d Cir. 2017.) ..... 10

*Chalmers v. City of Los Angeles*,
762 F.2d 753 (9th Cir. 1985) ..... 6

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ..... 9

*Crazy Ely Western Village, LLC v City of Las Vegas*,
*618 Fed.Appx 904 (9th Cir. 2015)* ..... 13

*Discount Tobacco City & Lottery, Inc. v. United States*,
674 F.3d 509 (6th Cir. 2012) ..... 9

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ..... 15

*Edenfield v. Fane*,
507 U.S. 761 (1993) ..... 9, 12

*Elrod v. Burns*,
427 U.S. 347 (1976) ..... 14

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........ 6, 7, 8, 10

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*,
512 U.S. 136 (1994) ........ 11

*Junior Sports Mags. Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) ........ 13

*Lamar Central Outdoor, LLC v. City of Perris*,
No. 5:25-cv-02557, 2025 WL 4058873 (C.D. Cal. Dec. 19, 2025) ........ 13, 14, 15

*McCutcheon v. FEC*,
572 U.S. 185 (2014) ........ 3

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ........ 15

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........ 4

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 3

*Nordyke v. Santa Clara County*,
110 F.3d 707 (9th Cir. 1997) ........ 9

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*,
51 F. Supp. 2d 107 (D.R.I.), aff'd, 199 F.3d 26 (1st Cir. 1999) ........ 10

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ........ 15

*Rumsfeld v. FAIR*,
547 U.S. 47 (2006) ........ 10

*Sherman v. Town of Chester*,
752 F.3d 554 (2d Cir. 2014) ........ 6

*Smith v. Goguen*,
415 U.S. 566 (1974) ........ 8

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........ 10

*Thalheimer v. City of San Diego*,
645 F.3d 1109 (9th Cir. 2011.) ........ 11

*United States v. Williams*,
553 U.S. 285 (2008) ........ 8

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ........ 3

*Utah Licensed Beverage Ass'n v. Leavitt*,
256 F.3d 1061 (10th Cir. 2001) ........ 11

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
425 U.S. 748 (1976) ........ 9

*Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 3

**Statutes**

Cal. Bus. & Prof. Code § 23358 ........ 1

Cal. Bus. & Prof. Code § 23386 ........ 1, 9

Cal. Code Regs. tit. 4, § 53 ........ 1, 7, 9, 10

**Court Rules**

Fed. R. Civ. P. 36(b) ........ 4

**Other Authorities**

https://www.ca9.uscourts.gov/cases/streams-videos/archive?case=25-2715&hearingDate=2026-03-10 ........ 2

NCC § 18.08.600(C) ........ 6, 7

NCC § 18.16.020(H) ........ 6

NCC § 18.20.020(I) ........ 6

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REGARDING WINETASTINGS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 20, 2026, at 10:00 a.m., via Zoom videoconferencing or—if the Court orders, in Courtroom 6, 17th Floor, United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102—Plaintiffs Summit Lake Vineyards & Winery LLC ("Summit Lake") and Cook's Flat Associates, a California Limited Partnership dba Smith-Madrone ("Smith-Madrone") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction against Defendant County of Napa (the "County" or "Defendant").

Plaintiffs will and hereby do move the Court for an order preliminarily enjoining Defendant, pending final judgment: (1) as to Smith-Madrone, from prohibiting private, by-appointment tastings as authorized by its permit or imposing a visitor cap not stated in that permit; (2) as to Summit Lake, from prohibiting private, scheduled appointment tastings or enforcing the "2" visitors anticipated per week as a maximum; and (3) as to both Plaintiffs, from treating an otherwise lawful tasting or sale as prohibited solely because the winery truthfully advertised, invited, or solicited the visit. Alternatively, Plaintiffs request that the Court at minimum enjoin Napa from penalizing Summit Lake based on an undefined public/private distinction or the unstated two-visitor cap pending this action.

The motion is brought on the grounds that Plaintiffs are likely to succeed on the merits of their claims that Defendant's repeated litigation admissions establish Smith-Madrone's appointment tastings are lawful and uncapped, that Napa's enforcement of undefined restrictions on "public" and "private" tastings violates due process, and that Napa's restrictions on tastings and solicitation violate the First Amendment; that Plaintiffs will suffer irreparable harm absent relief; and that the balance of equities and the public interest favor an injunction.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities in support of the motion, the declarations of Stuart Smith and Heather Griffin and the exhibits attached thereto, Defendant's anticipated opposition, and on any oral argument entertained by the Court in connection with this motion.

Respectfully submitted,

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, pro hac admission
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

## SUMMARY OF ARGUMENT

Wine tasting is the best way to market wine. That's why the State of California allows licensed wineries to sell wine for consumption on the licensed premises, to offer tastings "for the purpose of acquainting the tasters with the characteristics of the wine," and to instruct consumers on the wine's "history, nature, values, and characteristics." Cal. Bus. & Prof. Code § 23358(a)(3); Cal. Code Regs. tit. 4, § 53; Cal. Bus. & Prof. Code § 23386.

Yet Napa County, the local government for the premiere wine producing region in North America, prohibits winetasting for certain wineries. It prohibits—after four decades of allowing it and despite prior representations to the contrary—Plaintiffs Smith-Madrone and Summit Lake from hosting guests for private tastings.[1] Plaintiffs therefore request preliminary injunctive relief to maintain the status quo of their historic operations while this case is pending.

Plaintiffs are likely to succeed on the merits on several independent grounds. As to Smith-Madrone, Napa's repeated litigation admissions—made to the Ninth Circuit, in sworn discovery responses, and in its motion to dismiss—concede that Smith-Madrone's private, by-appointment tastings are lawful and subject to no numerical cap; this Court should hold Napa to those admissions. As to Summit Lake, its 1984 small winery exemption prohibits only "public tastings," not the private, scheduled appointment tastings it has conducted for four decades, and Napa's contemporaneous practice, database, and permitting decisions confirm the same public/private distinction for every other winery in the County. Independently, Napa's enforcement scheme violates due process because Napa disclaims the only identified regulatory definition of "winetasting" and refuses to identify any substitute, leaving wineries to guess at its meaning.

Even if this Court does not resolve the case on those threshold grounds, both Plaintiffs are independently likely to succeed because winetasting, and soliciting a winetasting, are quintessential forms of product advertising and are therefore commercial speech protected by the First Amendment. Napa cannot meet its burden of heightened scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service. Commission of New York*, 447 U.S. 557, 566 (1980), to prove that

[1] Plaintiff Hoopes Vineyard LLC is not one of the "Plaintiffs" for purposes of this Motion.

its restrictions are justified. First, wine tasting is legal in California and at hundreds of locations within Napa County. Second, Napa has no substantial interest in undercutting the lifeblood of its economy. Third, Napa cannot prove that its restrictions advance any hypothetical interest it may have in prohibiting winetasting. And fourth, Napa cannot prove that it considered and rejected less restrictive means than an outright ban on private tastings at Smith-Madrone and Summit Lake.

Because Plaintiffs are likely to succeed on these independent grounds, the remaining injunction factors also favor injunctive relief, and Plaintiffs respectfully request that this Court allow them to continue their historic operations while this case is pending.

## I. INTRODUCTION

Visitors come to wineries to drink wine, and California law expressly permits that marketing. Napa nonetheless refuses to confirm that Smith-Madrone and Summit Lake may host visitors for winetastings. Despite representing to two federal courts, and admitting in an early request for admission, that Smith-Madrone could conduct by-appointment tastings without a customer cap, Napa recently claimed it "lacks sufficient information to identify the scope of" those permissions. This Court should hold Napa to its repeated admissions. Relief is independently warranted for Summit Lake because Napa enforces a "public tastings" prohibition while admitting neither “public” nor “private tasting” is ordinance-defined, and while treating a nonbinding "anticipated" visitor estimate as an unstated hard cap. These undefined distinctions supply no objective standard and chill commercial speech.

## II. STATEMENT OF FACTS

### A. Tastings, Sales, Solicitation, and Consumer Education are Lawful.

Both Summit Lake and Smith-Madrone hold Type 02 Winegrower licenses from the California Department of Alcoholic Beverage Control. (Dkt. 70, ¶¶ 8-9.) California law authorizes licensed winegrowers to “[s]ell wine to consumers for consumption on the premises.” Cal. Bus. & Prof. Code § 23358(a)(3). A “winetasting” is “a presentation of samples of … wines … to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine.” Cal. Code Regs. tit. 4, § 53. Type 02 licensees may conduct winetastings on or off premises and instruct consumers on the product’s “history, nature, values, and characteristics.” §23386. Local authority may “restrict, but not eliminate,” these privileges. § 23358(e).

The County admits it does not issue and cannot revoke Type 02 licenses and admits it does not regulate wine production under the Alcoholic Beverage Control Act. (**Ex. 1**; Resp. to RFA Nos. 163-166.) It admits it is permissible for Plaintiffs to explain the background and characteristics of their wines to induce a purchase, and that Plaintiffs may sell bottled wine to consumers with no appointment and no numerical limit. (*Id*. RFA Nos. 109, 124.) The issue, apparently, is customers tasting wine on site.

### B. Napa Admits Smith-Madrone's Permit Authorizes Private Tastings.

Smith-Madrone operates under a 1973 use permit whose Condition #7 provides that "wine tastings be limited to a private, invitation only, basis," and whose Finding #6 states that "private arrangements will be required to visit the winery." (**Ex. 2**; Smith Decl. ¶ 2.) Napa admits that Smith-Madrone "is allowed tours and tastings by appointment" and that its permit "does not contain a limit on the number of daily, weekly, or monthly visitors." (**Ex. 3**; Resp. to RFAs, Set One, Nos. 7, 28.) During the Ninth Circuit oral argument, Napa represented that it "has no intention of bringing enforcement proceedings against Smith-Madrone for conducting tastings by appointment, which its permit permits."[2] Later, Napa told this Court that it is "uncontested that Smith-Madrone is allowed to provide wine tastings and 'related accessory uses' within the constraints of its historical use permit." (Dkt. 99 at 29–30.) Five days later, Napa retreated. Asked to admit that "Smith-Madrone is allowed tours and tastings by appointment," Napa responded that it "lacks sufficient information to identify the scope of those legally established uses prior to the enactment of the Winery Definition Ordinance." (**Ex. 1**; Resp. to RFAs, Set Two, No. 178.) Asked to admit that "Smith-Madrone's use permit contains no limit on daily, weekly, or monthly visitors," Napa again answered that it "lacks sufficient information to identify the scope of those legally established uses." (*Id.*, No. 179.) Over less than twenty months, Napa has told two federal courts that Smith-Madrone's appointment tastings are lawful, only to retreat within days. Napa now professes that it cannot identify the scope of uses for pre-WDO wineries.

### C. Summit Lake's Exemption Prohibits Only "Public" Tastings.

Summit Lake operates under a 1984 small winery use permit exemption which states "(NO)" as to "PUBLIC TASTINGS." (Dkt. 70-12, **Ex. 4**; Griffin Decl. ¶ 2.) The document does not use the phrase "private tastings," and contains no defined standard delineating public from private activity. (**Ex. 1**, Nos. 49-52, 93-95.) Napa nevertheless denies that private tastings fall outside the stated prohibition on public tastings. (*Id.*, No. 94.) The document also asks for the number of visitors "ANTICIPATED," leaves the "PER DAY" space blank, and records "2" next to

[2] https://www.ca9.uscourts.gov/cases/streams-videos/archive?case=25-2715&hearingDate=2026-03-10 at 26:40.

"PER WEEK"; Napa admits the document uses "anticipated" and nowhere says "maximum visitors," yet treats that estimate as a hard cap. (*Id.*, Nos. 96-99.) Summit Lake conducted approximately fifteen private appointment tastings per week for forty years before Napa's recent enforcement position. (**Ex. 5**; Hoopes Trial Tr. Vol. 8 at 1325, 1332-33; **Ex.4** ; Griffin Decl. ¶ 3.) Napa's own Winery Database identified Summit Lake as "TST APPT," meaning tasting by appointment, in both the 2012 and 2015 versions; Napa now calls those entries erroneous, but admits that wineries received no individualized notice before the 2015-2016 Database changes. (**Ex. 3**; Resp. to RFAs Nos. 8, 11; **Ex. 1**; Resp. to RFAs Nos. 143-144; **Ex. 4**; Griffin Decl. ¶ 4.)

## III. <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the government opposes the injunction, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And where the challenged action burdens speech, the burden of justification rests with the government even at the preliminary-injunction stage. *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (plurality).

### B. <u>Plaintiffs Are Likely to Succeed on the Merits.</u>

To obtain preliminary relief, Plaintiffs need not "prove [their] case in full." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs are likely to succeed on two independent bases. First, as to Smith-Madrone, Napa's litigation admissions establish that Smith-Madrone's appointment tastings are lawful, entitling it to an injunction holding Napa to that position. Second, as to both Plaintiffs, Napa's restrictions violate the First Amendment.

#### 1. <u>Napa Concedes Smith-Madrone's Appointment Tastings Are Lawful.</u>

Napa has repeatedly conceded (at the Ninth Circuit, in its own 2024 discovery responses, and in its motion to dismiss) that Smith-Madrone's by-appointment tastings are lawful and uncapped. Only in its most recent discovery responses does Napa retreat with vague professions of ignorance. This Court should hold Napa to its admissions.

In response to Plaintiffs' Requests for Admission, Napa admitted that Smith-Madrone "is allowed tours and tastings by appointment" and that its 1973 use permit "does not contain a limit on the number of daily, weekly, or monthly visitors." (**Ex. 3**; Resp. to RFAs, Set One, Nos. 7, 28.) A matter admitted in response to a request for admission "is conclusively established unless the court on motion permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Napa repeated the same concession to the Ninth Circuit on March 10, 2026, which again binds Napa, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), and once again on August 26, 2026, in its motion to dismiss the Second Amended Complaint here. (Dkt. 99 at 29–30.)

Napa's position continues to evolve. Napa now argues that Smith-Madrone must seek a status determination to ascertain the scope of its rights before the claim is ripe, even while maintaining that the historical permit controls existing entitlements. (Dkt. 104 at 4–5, 12; Dkt. 106 at 12–14.) But requiring an ad hoc status determination to supply a visitor cap absent from the controlling permit presents a due process problem, not a finality problem; an injunction here merely holds Napa to what it has already conceded on three occasions and maintains the status quo.

2. <u>Summit Lake's Exemption Allows Private Tastings.</u>

During an August 15, 1979, Board of Supervisors meeting on the small winery exemption ordinance, it was noted that a tasting made "by appointment only" was considered a "private tasting" rather than public, and that "public tastings" would not be allowed at exempt wineries while private tastings would be allowed. (**Ex. 6**; at NAPA_FED027738.) Consistent with that history, Summit Lake's small winery exemption, issued five years later, identifies only "NO" "PUBLIC TASTINGS" on its face. (Dkt. 70-12.) The document does <u>not</u> say "NO TASTINGS," "NO PRIVATE TASTINGS," or "NO APPOINTMENT TASTINGS." (**Ex. 1**; RFA No. 93, 95.) Napa nonetheless enforces a prohibition on *every* tasting, effectively reading "public" out of the document and denying that private tastings fall outside the stated prohibition. (*Id*., No. 94.)

Napa has never defined the words on which its prohibition depends. The County admits the Code has never contained an ordinance-based definition of "public tasting" or "private tasting," relying instead on their "ordinary and commonly understood meaning, as informed by the context." (**Ex. 1**; RFAs Nos. 49-52; **Ex. 7**; Resp. to Interrog. No. 1.) Ordinary meaning cuts against Napa:

the word "public" must distinguish the prohibited tasting from some other category of tasting, or it performs no work at all. Former PBES Director David Morrison confirmed as much, testifying that "tasting" is "not defined in the code," that a public tasting is an open tasting room where customers may "wander in and out at their discretion," while a private tasting is "set up as an appointment," and that he was aware of no minimum period by which an appointment must precede arrival. (**Ex. 8**; Morrison Dep. Vol. I at 52:13-22, 54; Vol. II at 189:6-17.)

Napa's Winery Database and its own individual permitting decisions confirm the same public/private line applied consistently across the County for years. The Database's "Tours & tastings arrangement" field assigns each winery a code, including "PUB" for wineries such as Alpha Omega and Hess Collection, and "APPT" or "TST APPT" for wineries such as Acacia Winery and Aetna Spring Cellars, each with its own visitor-count. (**Ex. 9**; NAPA_FED025592-95.) So do Napa's status determinations: one allotted a winery separate numerical allotments for "public visitors" and visitors "by appointment," (**Ex. 10**; NAPA_FED026414); another distinguished "Public" visitors attending "without prior appointment" from a "private tours and tastings" group, (**Ex. 11**); and a third recognized "an existing entitlement … for private visitation" as its own category, (**Ex. 12**;NAPAFED027009). Napa cannot maintain that it applied this distinction to every other winery in the County for over a decade while insisting the identical distinction in Summit Lake's own exemption is incapable of interpretation.

In 2025, the Napa County Civil Grand Jury recognized the inconsistent and changing interpretations by Napa. A seven-month investigation found that "winery owners have expressed confusion about whether trade visits count as winery tastings as defined by their permits," that permit "[c]onditions vary almost on a winery-by-winery basis so there is little consistency," and that owners are "hesitant to inquire about their permit conditions for fear that they will discover previously unknown restrictions." (**Ex. 13**; Napa County Civil Grand Jury Report.) The Grand Jury found that "County officials say they will not enforce visitation limits unless a complaint is received. Under this policy, any visitor limits in a permit become nearly meaningless." *Id.* at 7.

Napa's shifting interpretations are not the isolated conduct of individual employees: County officials have been warned for at least two decades, in 2009, 2015, and again in 2025, that the

definitions governing winery events and tastings were unclear and that administrative interpretations of them could be "reversed or re-interpreted" and "considered arbitrary," (Dkt. 70-38 at 3–4; Dkt. 70-39 at 3–5; Ex. 13 at 7), yet the County continued enforcing them, renewing the injury with each new interpretation. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 758–60 (9th Cir. 1985); *Sherman v. Town of Chester*, 752 F.3d 554, 566–67 (2d Cir. 2014).

Napa's refusal to apply its own well-established practice to Summit Lake only compounds the due process problem. Summit Lake seeks to continue the same private, scheduled appointment tastings it hosted for decades, (**Ex. 4**; Griffin Decl. ¶¶ 3, 6), yet Napa now contends the exemption forbids them, while refusing to identify any objective standard distinguishing a prohibited "public tasting" from a permitted private one. A rule exposing Summit Lake to enforcement and escalating penalties without any ascertainable standard fails to give fair notice and invites arbitrary enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). At minimum, Napa may not enforce the "public tastings" prohibition, absent a published, objectively ascertainable standard establishing that Summit Lake's proposed tastings fall within it.

Napa's asserted two-visitor weekly cap suffers from the identical defect. The exemption application asks only for visitors "anticipated," leaves the daily field blank, and nowhere uses "maximum," "limit," or "cap." (**Ex. 1**; RFAs 96-99.) A projection of expected visitation from the early 1980s is not an enforceable ceiling, and Napa's interpretation impermissibly substitutes the word "maximum" for the word the document actually uses.

3. <u>NCC § 18.08.600(C) Does Not Override Summit Lake's Exemption.</u>

Napa may point to NCC § 18.08.600(C), which defines a "small winery" as one that, among other conditions, "does not conduct public tours, provide wine tastings, sell wine-related items or hold social events of a public nature." But Napa has admitted this section merely "provides an ordinance-based definition for the term 'small winery,' which governs the construction of Section 18.20.020(I)," and is not an independent, operative prohibition. (**Ex. 1**; Resp. to RFAs, Set Two, No. 65.) The operative requirement is only that a small winery "operate[] in conformance with the applicable certificate of exemption." NCC §§ 18.16.020(H), 18.20.020(I).

Napa may point to language in Summit Lake's application stating that the winery "will not

attract the public by offering wine tasting etc." (**Ex. 1**; Resp. to RFA No. 95.) Read in context, that statement addresses public-facing tastings and is consistent with the "(NO) PUBLIC TASTING" designation in its exemption and the "public" qualifier that runs throughout the 1979 legislative history. Napa's own contemporaneous practice confirms as much: multiple small winery exemption applications from Summit Lake's era, including one approved the same year (1984), checked the identical "(NO) PUBLIC TASTING" box while expressly disclosing ongoing private, appointment-only visitation, and Napa approved each without objection. (**Ex. 14**.) Napa's code enforcement officer likewise testified that some small winery exemptions are allowed to have tastings without a permit modification based on historical operations. (**Ex. 15**; Cahill Dep. at 51-53.) That is irreconcilable with Napa's Ninth Circuit brief, which characterized § 18.08.600(C) as an absolute bar on "all" tastings at exemption wineries regardless of historical operations (**Ex. 16**; Answering Br. at 21.). Summit Lake's application/exemption also discloses "2" visitors "ANTICIPATED" "PER WEEK" which would be inconsistent with a complete prohibition on all tastings. (*Id.*, Nos. 96-99). While Napa also cannot argue "anticipated" means a hard cap as other exemptions actually used the term "maximum." (*See* **Ex. 14**; Silver Oak Exemption.)

4. <u>Napa's Enforcement of Undefined "Winetasting" Violates Due Process.</u>

Napa's enforcement scheme independently violates due process because Napa cannot say what a "winetasting" is. A law is "void for vagueness if its prohibitions are not clearly defined," and must give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited" while supplying "explicit standards for those who apply" it, to avoid "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The term "winetasting" is the operative word triggering both Smith-Madrone's permit condition and Summit Lake's exemption, yet Napa admits it has no fixed meaning for that word at all.

California's Code of Regulations supplies the only identified regulatory definition: a "winetasting" is "a presentation of samples of … wines … to a group of consumers for the purpose of acquainting the tasters with the characteristics of the wine." Cal. Code Regs. tit. 4, § 53. Asked whether it uses that definition, Napa admitted it has "not adopted or incorporated" it into any County ordinance, resolution, policy, or regulation. (**Ex. 7**; Rog. No. 6.) Asked what definition it

uses instead, Napa identified none, stating only that it relies on the "ordinary and commonly understood meaning, as informed by the context in which it is used." (*Id.*) Napa identifies no dictionary, ordinance, regulation, or guidance document as the source of that "ordinary meaning."

A regulated party cannot conform its conduct to the one term on which its entire enforcement position depends when the government disclaims the only published definition of that term and refuses to identify any substitute, retaining unbounded discretion to supply whatever meaning fits its enforcement position in a given case. That is precisely the arbitrary enforcement *Grayned* forbids. *See United States v. Williams*, 553 U.S. 285, 304 (2008) (a law is impermissibly vague where it is "so standardless that it authorizes or encourages seriously discriminatory enforcement"); *Smith v. Goguen*, 415 U.S. 566, 575 (1974) (officials remain "free to decide, without any legally fixed standards, what is prohibited.") At minimum, Napa may not enforce a prohibition keyed to the word "winetasting" against Summit Lake or Smith-Madrone absent a published, objectively ascertainable definition of that term.

5. Winetastings and Solicitation Are Protected by the First Amendment.

Even if this Court does not hold Napa to its admissions regarding Smith-Madrone, or construe Summit Lake's exemption as prohibiting only public tastings, both Plaintiffs are still likely to succeed because Napa's restrictions on private, appointment tastings, and on soliciting such tastings, regulate commercial speech, and Napa cannot meet its burden under *Central Hudson*.

a. A Winetasting Is Commercial Speech.

The First Amendment extends to commercial speech, defined as speech that "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65-66 (1983) (identifying, as relevant but non-exclusive factors, whether the speech is an advertisement, references a product, and reflects an economic motive). The Supreme Court has held that product demonstrations are commercial speech. In *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469 (1989), the Court treated in-home demonstrations of housewares as commercial speech subject to First Amendment protection. *Id.* at 473–74. California law defines a winetasting as a "presentation … for the purpose of acquainting the tasters with the characteristics of the wine" and authorizes the winery to "instruct" consumers on the product's "history, nature, values, and

characteristics." Cal. Code Regs. tit. 4, § 53; Cal. Bus. & Prof. Code § 23386. Thus, winetastings are a product demonstration: the winery presents its product, invites the consumer to sample it, and explains its qualities to promote a sale. That is "speech that proposes a commercial transaction," and it is protected. *Fox*, 492 U.S. at 482.

Napa may contend that pouring and sampling wine is conduct. That argument has already been rejected: a ban on distributing free product samples regulates the 'communicative impact' of the activity, not the activity itself," because a free sample "convey[s]" a promotional message regarding the product's qualities and the manufacturer's brand. *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 539 (6th Cir. 2012). So too, here: an "offer to sell" a product is protected commercial speech, *Nordyke v. Santa Clara County*, 110 F.3d 707, 710 (9th Cir. 1997), and Napa's sworn account of an undercover visit to Hoopes Vineyard confirms that the server described each wine's history and origin before the visit culminated in a sale. (Dkt. 70-47.) This is, verbatim, the winetasting which California law protects. Cal. Code Regs. tit. 4, §53; Cal. Bus. & Prof. Code §23386. It is the essence of a "product demonstration" combined with explanatory speech that *Fox* protects, 492 U.S. at 473-74, and it is precisely the kind of information "of interest ... to the public" that the commercial-speech doctrine safeguards. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 763–65 (1976). "Commercial speech serves to inform the public of the availability, nature, and prices of products and services." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993).

b. <u>Soliciting Winetastings Customers is Also Commercial Speech.</u>

Napa permits an appointment tasting only where the guest made an "unsolicited" appointment. NCC § 18.08.620. The operative line thus turns on whether the winery solicited the visit: a tasting for a guest who books on her own initiative is permitted, but the identical tasting for the same guest is a violation if the winery solicited the appointment. Napa thus makes the winery's commercial speech—its solicitation and advertising—the act that triggers the prohibition. But the Supreme Court has recognized that "[i]n the commercial context, solicitation may have considerable value." *Edenfield v. Fane*, 507 U.S. 761, 766 (1993) (explaining that solicitation "allows direct and spontaneous communication between buyer and seller" and lets the buyer

"explore in detail" how a product compares to its alternatives). It is not surprising that the phrase "solicitation of business is a form of commercial speech" is not controversial. *See Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 51 F. Supp. 2d 107, 113 (D.R.I.), aff'd, 199 F.3d 26 (1st Cir. 1999); *Centro De La Comunidad Hispana v. Town of Oyster Bay*, 128 F. Supp. 3d 597, 611, 613 (E.D.N.Y. 2015), aff'd, 868 F.3d 104 (2d Cir. 2017.)

Napa may argue this restriction merely regulates land-use intensity, not speech, but the Supreme Court has rejected that relabeling where a restriction is triggered by communication rather than the underlying transaction. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (rejecting a similar "mere conduct" characterization because the law imposed "content- and speaker-based burdens" on communication). Napa's ordinance caps no visitor count, duration, or quantity of wine poured beyond the State's own limit, Cal. Code Regs. tit. 4, § 53; the identical visit is lawful or unlawful based solely on whether the winery communicated an invitation. NCC §§ 18.08.620, 18.08.370. That distinguishes this case from *Rumsfeld v. FAIR*, 547 U.S. 47, 60 (2006), which upheld a law that "neither limit[ed] what law schools may say nor require[d] them to say anything"; here, the winery's speech is the trigger for illegality.

The same lack of objective standard defeats Napa's solicitation-based trigger for both Plaintiffs. Napa has never defined "unsolicited," "appointment only," "private arrangement," or "advertising," admitting only that no "specific ordinance-based" definition exists. (**Ex. 1**; Resp. to RFAs 155, 182-184.) Napa's 1979 Planning Director acknowledged that the operative distinction is simply whether a winery is "advertised" and open (**Ex. 6;** at NAPA_FED027739), and Napa's trial counsel told a state court that tastings became impermissibly "solicited" because a winery had a "robust social media campaign." (**Ex. 17**; Trial Tr. Vol. 2 at 133-34.) Napa's standard turns civil and administrative liability on whether a communication was sufficiently "solicited" or "advertised," without defining either term, fails to provide fair notice, and chills protected speech. *Grayned*, 408 U.S. at 109.

6. <u>Napa has the Burden to Meet the *Central Hudson Factors.*</u>

For regulation of commercial speech to be constitutional, it must satisfy the four-part test from *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S.

557, 566 (1980). "The State's burden is not slight; the 'free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful.'" *Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct*., 512 U.S. 136, 143 (1994) (quoting *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 646 (1985)).

"In the context of a preliminary injunction seeking to enjoin enforcement of a law based on a First Amendment challenge, a plaintiff bears the 'general burden of establishing the elements necessary to obtain injunctive relief,' and the government 'has the burden of justifying the restriction on speech.'" *California League of Food Producers v. Bonta*, No. 3:26-CV-01675-WQH-BLM, 2026 WL 2055589, at *21 (S.D. Cal. July 14, 2026) (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009)); *accord Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011.) Napa County cannot meet its burden under any of the *Central Hudson* factors.

a. <u>The Speech Concerns Lawful Activity and Is Not Misleading.</u>

The first *Central* Hudson prong asks whether the speech "concern[s] lawful activity" and is not misleading. 447 U.S. at 566. Speech that is merely "potentially misleading" remains protected, subject to the remaining three factors. *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106–07 (9th Cir. 2004).

Napa has argued that Plaintiffs' speech is unlawful because "Plaintiffs [] have not been granted use permits" which Napa requires before they may speak. (Dkt 99 at 27-28.) Napa cannot "escape review of its legislation by asserting that the challenged conduct is unlawful under the very same legislation being reviewed." *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1066 (10th Cir. 2001). And Courts are "hesitant to determine … that the government's definition of a word compels the legal conclusion that non-conforming usage is inherently misleading," because treating a government-issued definition as dispositive "would eviscerate *Central Hudson*, rendering all but the threshold question superfluous." *California League of Food Producers v. Bonta*, No. 3:26-cv-01675, 2026 WL 2055589, at *22 (S.D. Cal. July 14, 2026) (quoting *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017)).

Selling wine in California with a Type 02 license is legal. And Napa concedes the lawfulness of private tastings, solicitation, and winery advertising by granting this permission to some, but not all, wineries. (**Ex. 1**; RFA 124, RFA 109.) Napa simply picks who it thinks should get to engage in commercial speech. That does not make the remaining speech illegal; it makes Napa's conduct unconstitutional.

b. Napa has not Identified a Substantial Governmental Interest.

The second prong requires the government to identify a "substantial" interest that may justify speech regulation. 447 U.S. at 566. "Unlike rational-basis review, the *Central Hudson* standard does not permit [a court] to supplant the precise interests put forward by the [s]tate with other suppositions." *Edenfield*, 507 U.S. at 768. The Court must "identify with care the interests the [government] itself asserts." *Id*.

Asked in discovery to identify the governmental interest it seeks to advance, and any less restrictive means it considered, Napa refused to answer. (**Ex. 7**; ROG 11.) And, while the County has produced historical documents related to its ordinances, as best Plaintiffs can glean the only possible interest Napa might put forth is agricultural preservation. Under *Central Hudson*, Napa must prove a substantial interest, directly advanced, by a means no more extensive than necessary. 447 U.S. at 566. A claimed interest in preserving agriculture is simply a statement without evidentiary support. Napa's burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-71.

Napa does not have a reasoned interest in limiting the number of visitors at wineries. Its Board has admitted that "[n]one of the other major wine-producing counties in California regulate the number of visitors on a daily, weekly, monthly, or annual basis." (Dkt. 70-39 at 4.) And other types of businesses, like restaurants and hotels, are not limited to a fixed number of daily customers, and "there are no parallel[s] that can be readily adapted for use in developing a visitation matrix for wineries." (*Id*.) Nor may the Court simply defer to Napa's legislative judgment that its restrictions serve any interest, because "the First Amendment requires more than fact-free inferences to justify

governmental infringement on speech." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1117-18 (9th Cir. 2023); *see also California League of Food Producers*, 2026 WL 2055589, at *24 (enjoining law where the State relied on "common sense" rather than record evidence).

c. Napa Cannot Meet the Remaining *Central Hudson* Factors.

Napa's ordinances do not apply to all sales of wine (restaurants, bars, and large wineries may sell without restriction), which "strongly suggests that [winetasting] creates no inherent safety issue" and that the County's "stated interests are not advanced by the [o]rdinances." *Aptive Env't, LLC v. Village of East Rockaway*, No. 18-CV-6907, 2019 WL 3206132, at *6 (E.D.N.Y. July 16, 2019) (citing *Centro de la Comunidad Hispana v. Town of Oyster Bay*, 868 F.3d 104, 117 (2d Cir. 2017)). The Ninth Circuit has applied this framework to a materially indistinguishable alcohol-advertising restriction, holding that a City had not carried its burden where its ordinance "restrict[ed] the speech of only certain liquor sellers" without considering conduct-based alternatives. *Crazy Ely Western Village, LLC v City of Las Vegas, 618 Fed.Appx 904, 905-07 (9th Cir. 2015)*; *accord Lamar Central Outdoor, LLC v. City of Perris*, No. 5:25-cv-02557, 2025 WL 4058873, at *8 (C.D. Cal. Dec. 19, 2025) (government's "own course of conduct subverts" its claimed interest when it permits the same activity elsewhere).

The County's concessions confirm that any asserted traffic and "agricultural character" interests would be contradicted by the challenged restrictions. Napa admits that wineries may host an unlimited number of retail customers each day to purchase wine for off-site consumption. (*See* Dkt. 97 ¶ 98.) If the County's genuine concern was vehicular traffic, it would have no reason to allow unlimited, high-turnover retail visits while capping the tastings and events that keep a visitor on site longer. The County has it backward: it leaves unregulated the activity generating the most trips and restricts the activity generating the fewest.

Last, Napa cannot show its restriction is "not more extensive than is necessary." Its own staff identified, and never adopted, multiple objective, content-neutral alternatives to a numerical visitor cap. The 2015 Board Agenda Letter proposed a menu of neutral, physical alternatives, including "the hours of operation," "parking area," and "the size of tasting rooms and other hospitality areas" to regulate wineries and visitation levels. (Dkt. 70-39 at 5.) Those less restrictive

options prove that Napa had alternative ways to satisfy its hypothetical interests.

**C. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Lamar Central Outdoor, LLC v. City of Perris*, 2025 WL 4058873, *10 (C.D. Cal. Dec. 19, 2025) ("[i]rreparable harm is relatively easy to establish in a First Amendment case"). Because Plaintiffs are likely to succeed on their claims, irreparable harm follows as a matter of law. Every day the restrictions remain in force, Plaintiffs are barred from presenting their product to guests, inviting the public, and educating consumers about their wine.

The harm is not speculative. The County issues Notices of Violation to wineries, ordering them to cease "all visitation not allowed" and "all marketing events," and subjects violators to administrative penalties of $100, $200, and $500 and civil penalties of up to $1,000 per day. (**Ex. 18**; NAPAFED029816; 027905.) The notices do not have an appeal process or even a hearing officer. (**Ex. 19**; Hoopes Trial Tr. Vol. 5 at 772-74.)

Faced with that credible threat, Summit Lake has curtailed the private appointment tastings it conducted for decades, forgoing opportunities to present its wines, educate consumers, and form customer relationships that cannot be recreated after the relevant visit or vintage has passed. (**Ex. 4**; Griffin Decl. ¶¶ 6, 8.) The uncertainty itself compounds the harm: Napa provides no objective definition separating a prohibited "public tasting" from a private appointment tasting, yet reserves enforcement discretion, reviews winery social-media postings, and may impose escalating penalties. (**Ex. 1**; Resp. to RFAs, Set Two, Nos. 49-52, 170-173.) As to Smith-Madrone, the County's ever-changing position, even during this litigation, shows the harm is very real as Smith-Madrone does not know how to conduct its marketing, advertising, and public-visitation activities to stay within the bounds of the law. (**Ex. 2**; Smith Decl. ¶¶ 6, 8.)

**D. The Balance of Equities Favors an Injunction.**

"The fact that the [Plaintiff] has raised serious First Amendment questions compels a finding that ... the balance of hardships tips sharply in [Plaintiff's] favor." *Am. Bev. Ass'n v. San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc.) Plaintiffs face the continuing loss of

constitutional rights and concrete business injury; Napa faces none, because the government cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

### E. An Injunction Serves the Public Interest.

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (citation modified). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). As recognized in an analogous case permitting cannabis businesses to advertise, "the public would want to be informed when making decisions on where to visit, conduct business, or reside," and ordinances that suppress truthful information "prevent[] the free flow of information that accurately reflects the characteristics of the City." *Lamar Central Outdoor, LLC v. City of Perris*, 2025 WL 4058873, at *11 (C.D. Cal. Dec. 19, 2025). So too, here: the public has an interest in the free flow of truthful information about a lawful product, Napa Valley wine, and consumers have a protected interest in receiving that information directly from the producer. Napa does not have an interest in enforcing a law that violates the First Amendment. The final factor favors relief.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily enjoin Defendant, pending final judgment: (1) as to Smith-Madrone, from prohibiting private, by-appointment tastings authorized by its permit or imposing a visitor cap not stated in that permit; (2) as to Summit Lake, from prohibiting private, scheduled appointment tastings or enforcing the "2" visitors anticipated per week as a maximum; and (3) as to both Plaintiffs, from treating an otherwise lawful tasting or sale as prohibited solely because the winery truthfully advertised, invited, or solicited a customer to schedule the visit. Alternatively, the Court should enjoin Napa from imposing penalties against Summit Lake based on an undefined public/private distinction or the unstated two-visitor cap while this action proceeds. Nothing in this relief would prevent Napa from enforcing neutral, generally applicable health, safety, fire, parking, or noise requirements.

Respectfully submitted,

Dated: September 30, 2026

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Joseph M. Infante*
Joseph M. Infante, pro hac admission
Attorneys for Plaintiffs

Dated: September 30, 2026

FENNEMORE LLP

By: */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Plaintiffs

51715603.6/162870.00001