# Exhibit 11

A Tradition of Stewardship
A Commitment to Service

NAPA COUNTY
PLANNING, BUILDING, AND ENVIRONMENTAL SERVICES
1195 Third Street, Suite 210, Napa, California, 94559 • (707) 253-4417

# APPLICATION FOR STATUS DETERMINATION

FOR OFFICE USE ONLY

ZONING DISTRICT: ______________________ Date Submitted: ____________
TYPE OF APPLICATION: ______________________ Date Published: ____________
REQUEST: ______________________ Date Complete: ____________

TO BE COMPLETED BY APPLICANT
(Please type or print legibly)

PROJECT NAME: Robert Sinskey Vineyards

Assessor's Parcel #: 031-230-017 Existing Parcel Size: 11.82 ac.

Site Address/Location: 6320 Silverado Trail (No. Street) Napa (City) CA (State) 94558 (Zip)

Property Owner's Name: Sinskey Vineyards, Inc.

Mailing Address: 6320 Silverado Trail (No. Street) Napa (City) CA (State) 94558 (Zip)

Telephone #:(____) 944 - 9090 Fax #: (____)_____-________ E-Mail: pinot@robertsinskey.com

Applicant's Name: Robert Sinskey

Mailing Address: 6320 Silverado Trail (No. Street) Napa (City) CA (State) 94558 (Zip)

Telephone #:(____) 944 - 9090 Fax #: (____)_____-________ E-Mail: pinot@robertsinskey.com

Status of Applicant's Interest in property: shareholder

Representative Name: Katherine Philippakis, Farella Braun + Martel

Mailing Address: 899 Adams, Suite G (No. Street) St. Helena (City) CA (State) 94574 (Zip)

Telephone # (____) 967-4000 Fax #: (____) ____________ E-Mail: kp@fbm.com

I certify that all the information contained in this application is complete and accurate to the best of my knowledge. I hereby authorize such investigations including access to County Assessor's Records as are deemed necessary by the County Planning Division for preparation of reports related to this application, including the right of access to the property involved.

[signature] 3/27/19
Signature of Property Owner Date
Robert Sinskey Jr
Print Name

[signature] 3/27/19
Signature of Applicant Date
Robert Sinskey Jr
Print Name

TO BE COMPLETED BY PLANNING, BUILDING, AND ENVIRONMENTAL SERVICES
Application Fee $__________ Receipt No. __________ Received by: __________ Date: __________

# STATUS DETERMINATION

## APPLICATION CHECKLIST

1. _X_ Completed and **signed** application

2. _X_ All available Use Permit, Use Permit Modification, or other Approval documents available to the applicant.

3. _X_ Documentation showing that the use/structure was legal at the time of the establishment of the use (i.e. approval of Use Permit and Modifications, and other issued permits).

4. _X_ Copies of the complete Assessor's Record for the subject property.

5. _X_ **Digital copies**-Submit digital copies (Adobe PDF format) of all submitted information, including all forms, reports, plans, elevations, and/or photos. ***Digital copies must also be submitted with any and all revisions or re-submittals.***

6. _X_ Application fee. Please bring a check *payable to the County of Napa.*

**Status Determination**
Robert Sinskey Vineyards
6320 Silverado Trail
(APN 031-230-017)

On August 4, 2010, Robert Sinskey Vineyards obtained a major modification (P09-00480-MOD) to its use permit. The permit covered a wide range of activities from a production increase, to a physical expansion of the facility, to modified visitation and marketing plans. The issue that forms the basis for this status determination request has to do with the permitted level of visitation. Essentially, the question is this: does P09-00480-MOD allow for 132 public drop-in and 75 by-appointment visitors per day, for a total of 207 visitors per day, as we believe to be the case? Or does it allow for 132 public visitors, of which 75 may make private appointments, for a total of 132 visitors per day? Or does it allow for 132 public drop-in visitors per day (of which 75 may participate in tastings with food), as well as 75 by-appointment visitors per day, for a total of 207 visitors per day?[1]

The permit history is somewhat unclear on this question, which is the reason we are filing this status determination request. The most recent very minor modification was issued in 2011 (P11-00441-VMM) to define the construction phasing for the project. As part of the conditions of approval for that very minor mod, the conditions of approval reiterated the conditions of approval of the 2010 permit. These conditions contain a number of statements that are relevant to our question (with the relevant statements underlined):

-- (at condition 1): Modify the existing marketing plan to increase the average number of food and wine seminar attendees from 30 to 36, <u>allow up to 75 visitors/day for private tours and tastings with food pairings;</u>

-- (at condition 3(a)): <u>Public tours and tastings (without prior appointment) shall be limited to a maximum of 132 visitors per day and no more than ___ visitors per week with food service</u> provided in accordance with Ordinance No. 1340 (BOS approved May 11, 2010) and as approved by the Department of Environmental Management, as previously approved in Use Permit # 94099; [Blank space occurs in original conditions of approval]

-- (at condition 3(b)): <u>Of the maximum 132 visitors per day above, up to 75 visitors per day may participate in private tours and tastings with food pairings</u> consisting of hors do'oeuvres and appetizers.

---

[1] Note that in each case, the winery already had an existing entitlement for 50 visitors/day for private visitation. Thus, elsewhere in the application materials the totals are referred to as including this number. Accordingly, the application stated that there were 132 public and 50 private visitors existing, and 132 public and 125 (50 + 75) private visitors proposed. To keep the calculations simpler here, we have not noted the 50 pre-existing private visitors in the formation of the three questions.

It is condition 3(b) that is causing concern to the owners of the winery, as it appears to contradict their understanding of their application and of their approval.

It should be noted that the application itself was very clear that the applicant wished to document public visitation at a level of 132 people per day, and also wished to request an additional 75 by-appointment visitors for tours and tastings. And from a practical perspective this makes sense: if a winery already had drop-in visitors and food service (both of which Sinskey already had), there would have been no need to ask the County's permission in order to ask some of the visitors to make an appointment for their tasting experience. In other words, if the winery received more visitors at once than it could reasonably accommodate for tours and tastings, it was free to request that some visitors book their appointments in advance; this would not have required County approval. The only reason to seek County approval was to request additional visitation, which the applicant did -- to the tune of an additional 75 visitors per day.

Briefly, the application form (on page 8 of the Information Sheet) listed the following:

| Maximum Number of Visitors | Existing | Proposed |
|---|---|---|
| busiest day | 132/day (public)<br>50/day (private) | No change (public)<br>125/day (private) |

Thus, the request was to increase the maximum level of visitation from the previously permitted 182/day (132/day drop-in visitors, and 50/day private) to 257/day (132/day drop-in visitors, 50/day private, and 75/day for private tastings with food). Had the applicant wished to include the 75 visitors in the 132 total, there would have been no change in the numbers from the existing entitlement – and no need to modify the permit. Clearly, this was not the intent of the application.

In addition, all of the application materials assume an increase of 75 visitors per day in their analysis. The clearest example is the traffic report by George Nickelson dated October 27, 2009, which states, at p.2:

> In addition to a production increase (from 65,000 gallons to 143,000 gallons), the winery would have increased visitors. Public visitation would be unchanged, but seminars could experience an average increase of 6 persons per day, and new private tours/tastings could average 55 persons. The maximum daily attendance for the private tours/tastings would be 75 persons, and this level has been used to provide a "worst case" conservative analysis of the visitor program's overall traffic effects. (Emphasis added.)

To the best recollection of the applicant and the development team, there was no discussion at the hearing for this project that would have revised the 75 private visitor request downward or incorporated it into the public visitation. Thus, we are at a loss to explain where the language in condition 3(b) came from. The winery has been operating in reliance on what it believed to be its total visitation numbers, and thus it must ask for this status determination in order to clarify the situation.

Enclosed herewith are copies of the assessor's records for the property, as well as the permit files. We also enclose a check in the amount of $1,500 for the filing fee. Please let us know if there is any further information you would like. We look forward to working with you on this application.