# Exhibit 13

A Tradition of Stewardship
A Commitment to Service

# NAPA COUNTY GRAND JURY 2024-2025
## May 29, 2025
## FINAL REPORT

# Behind the Curtain: Napa County Use Permit Process

# Summary

In recent years, the Planning Department and Planning Commission of Napa County have faced criticism, largely due to lawsuits filed by wineries over their use permits. These legal disputes have spotlighted issues surrounding the transparency and accessibility of the permitting process, raising questions about the approval procedures for winery permits.

Given these concerns, the Napa County Civil Grand Jury conducted a seven-month investigation into the permitting procedures and practices in the county. The investigation centered on the organization, efficiency, and transparency of the department's operations, along with the clarity and accessibility of the permitting process to the public.

This report highlights facts and five key findings and recommendations related to the structure, effectiveness, efficiency, and public accessibility of the county permitting system.

- The use permit application process in Napa County may extend over multiple years, particularly for complex cases that involve appeals or challenges.

- Pre-application review meetings are optional and come with a fee, which may discourage applicants from using this helpful resource. The Civil Grand Jury recommends that the Napa County Board of Supervisors make pre-application meetings mandatory, eliminate upfront costs, and fold costs into the full permit fee for those who proceed.

- The County's 80% cost recovery fee model creates added burdens for applicants, with more challenges expected with the planned shift to 100% cost recovery. The Civil Grand Jury recommends the Napa County Board of Supervisors implement a standardized fee structure for all applications based on project complexity whenever possible, to ensure fairness and greater transparency.

- The winery database is outdated and inaccurate, limiting its usefulness as a reliable permitting resource. The Civil Grand Jury recommends the Napa County Board of Supervisors update and maintain the winery database as the authoritative and trusted reference for permits in the County.

- There is no current process for conducting random audits to ensure winery permit compliance. The Civil Grand Jury recommends the Napa County Board of Supervisors establish a funded audit program to monitor winery compliance.

- The Planning, Building & Environmental Services Department faces structural inefficiencies, including a high supervisor-to-staff ratio and a lack of effective management structure. The Civil Grand Jury recommends the Napa County

Board of Supervisors review the department's management structure to create a more effective organization

The investigation found the Planning Department to be generally composed of skilled, capable, and reliable professionals. However, the Civil Grand Jury identified several areas for improvement.

## Background

The process for issuing and enforcing permits in Napa County has been the focus of numerous disputes over the years, several of which have been controversial. These conflicts often draw significant media coverage and have resulted in multiple legal challenges against the county. As a result, the Civil Grand Jury decided to pursue this investigation into the County permitting procedures and practices, focusing on the organization, efficiency, and transparency of the department's operations. This report focuses on Napa County and not the City of Napa, as each has its own planning department.

The 2014-2015 Civil Grand Jury issued a report titled "Are Napa County Wineries Following the Rules" that looked at the permitting and compliance of Napa County wineries. This current review is not intended to focus only on wineries, but because of the importance of wineries to the County, some of the same issues from the 2015 report are still relevant today.

## Methodology

The Civil Grand Jury conducted a series of interviews with members of the Planning Commission and the Napa County Planning Department across multiple divisions. Interviews were held with representatives of local non-profit organizations to understand how the environmental community views the work of the Planning Department. Representatives of wine business interest groups were interviewed to get their impressions of the permitting process for founding and operating a winery in Napa County.

The Civil Grand Jury reviewed online articles from numerous sources discussing planning issues and relevant court challenges over the last several years. Additionally reviewed were the Planning Department website, resources available for permit applicants, and the available online databases of current proposed projects. The Civil Grand Jury also reviewed documents such as the General Plan and Napa County Ordinances.

# Discussion

The Napa County Planning, Building, and Environmental Services Department (PBES) manages the County's permitting process, ensuring that development aligns with local regulations in unincorporated areas of Napa County. According to its mission, PBES works with the community to promote public health, safety, and sustainability while balancing agricultural, environmental, and economic priorities. Roughly 100 employees work within the department.

Napa County Planning, Building, and Environmental Services Department




The Planning Department assists applicants throughout the permitting process by providing guidance, reviewing applications, and ensuring compliance with County regulations. Their evaluations are expected to be fact-based, objective, and impartial.

Application forms are found on the County of Napa Planning website at https://www.countyofnapa.org/1826/Planning-Documents. Once an application is complete it is sent to the Napa County Planning Commission for a final decision. The Planning Commission is composed of five appointed officials, each representing a specific district and serving under an assigned county supervisor. The commission is responsible for reviewing and approving development proposals. Additional information about the Planning Commission can be found online on the County of Napa Planning Commission website at https://www.countyofnapa.org/1449/Planning-Commission. Decisions made by the Planning Commission can be appealed to the Board of Supervisors, which has the authority to uphold, modify, or overturn the ruling.

# Permitting Process

The Napa County Planning Department outlines the building permitting process on its website, describing it as a series of six key steps listed below. Detailed charts can be viewed in the Appendix. There are currently around 140 PBES applications open according to the county's Current Project Explorer. It is important to recognize the wide range of permit applications the department manages. While most permits are administrative and approved quickly, this Civil Grand Jury report focuses on the lengthier, more complex permits required for major modifications and winery use permits.

1. Determining the Location and Project Type: Identifying the project location and understanding which specific type of permit is required.
2. Using the Supplied Checklist: Gathering all necessary documentation according to the project type, ensuring that all requirements are met.
3. Submitting the Application: Completing and submitting the application through the county's online permit application center.
4. Application Review: The relevant divisions within the Planning Department review the application to ensure compliance with regulations and standards.
5. Permit Issuance: Once approved, the permit is formally issued, allowing the project to proceed.
6. Inspections: Necessary inspections are conducted throughout the project to ensure it complies with the approved plans and local codes.

A common complaint heard by the Civil Grand Jury was that the permitting process can be long, causing delays to the proposed project timeline. In most cases though, the process seems to function fairly smoothly. The assigned staff planner generally reviews the application for completeness within 30 days of application filing and issues a completeness review letter. The duration of the permitting process is influenced by multiple factors, including the level of involvement of county and government agencies, regulatory reviews, and procedural requirements. A significant portion of the timeline can also be attributed to delays on the applicant's side, as applications often remain in their possession while they gather necessary information or fulfill requirements. However, these delays are not always visible to the public, leading to a perception that the process is solely prolonged by the Planning Department. Greater transparency in tracking application progress could help clarify these distinctions.

The permitting process can be complex, and depending on the project, may involve navigating a variety of regulations and requirements. While the Planning and Conservation Divisions offer virtual or in-office pre-application meetings to help applicants understand the process, these meetings are not mandatory. Moreover, applicants are required to pay for these consultations, even if they choose not to proceed with their application. This fee structure may deter applicants from using this potentially valuable resource, particularly smaller developers or individual applicants who might be reluctant to take on extra expense.

Both the applicants and the County could benefit from fostering a clearer, more collaborative approach to the permitting process from the outset. Ensuring that applicants are fully aware of the necessary documentation, review timelines, and potential challenges would help streamline the process, particularly for large-scale or high-profile projects. The Civil Grand Jury finds that charging for initial permit application consultations may discourage applicants from seeking the guidance they need, potentially leading to a more cumbersome process overall.

Community input in the permitting process in Napa County does not officially occur until the application reaches the Planning Commission. For large and complex projects, this is often very late in the project planning process, making it difficult for applicants to adequately address concerns or modify their plans in response. This late engagement by the public limits the applicant's ability to be responsive to community feedback, particularly for larger or controversial projects that might generate significant public interest or opposition.

# Fees and Cost Recovery

One of the most frequent complaints heard by the Civil Grand Jury was that the cost of permitting in Napa County was excessive. For small, common, well-defined projects, there is a set fee schedule found on the Planning Department website at https://www.countyofnapa.org/DocumentCenter/View/35640/PBESPWFire-Fee-Schedules---Effective-01-06-2025. For larger projects, PBES operates under a cost recovery approach, setting fees with a goal of recovering 80% of the County's costs incurred in the review process. The County Board of Supervisors approved a fee update (https://www.countyofnapa.org/3296/Example-Fees-For-Common-PBES-Projects) in November 2024 for several government services, which went in effect in January 2025. This Order established a new goal of recovering 100% cost recovery to planning and public works fees.

The goal of reducing the burden on taxpayers for the permitting process is a worthy one, but it can cause several unintended consequences. When the County is being fully reimbursed for the time expended on a permit application, it could influence the sense of urgency to complete the process in an efficient manner. The resolution approving the fee increase acknowledged this issue, noting that: *"PBES staff is responsible for ensuring that costs charged to the project are reasonable and appropriate. Staff has an obligation to work efficiently and avoid unnecessary charges. Likewise, staff must ensure that all time devoted to an Hourly project is recorded accurately."* In addition, because the permit fees are based on cost recovery, there is effectively no upper limit to how much the permit application process can cost. Napa County has posted a chart of example fees (https://www.countyofnapa.org/1726/Fees-Payments) to help guide applicants but that is only a general guide.  There is no way for an applicant to confidently estimate what the final cost of their permit application will be. This can make project planning, budgeting, and financing very difficult. The Civil Grand Jury recommends that a standardized fee structure for all applications be implemented

whenever possible. By using the historical average costs for similar projects to set the fees, the overall goal of cost recovery could still be met. For exceptionally complicated or unusual projects, the County should be willing to commit to a maximum amount that any permit will cost. This maximum could also be based on historical data to achieve cost recovery goals.

# Winery Permits and the Winery Database

Since 1990, the Winery Definition Ordinance (WDO) has governed how wineries can operate in the unincorporated areas of Napa County. Although some wineries have been "grandfathered in", the ordinance provides a permitting framework for most wineries, specifying such things as the scale of production, which events can be held, number of daily visitors, and other operational details. The WDO does allow for wineries to sell and market wine, not just produce it, but such marketing activity must be "accessory" and subordinate to production. And all accessory uses must be contained in less than 40% of the winery's footprint. The WDO also includes restrictions on grape sourcing. The 2008 Napa County General Plan included an action item, Action Item AG/LU-10.1: "Maintain a data base of all wineries including their production capacity, marketing events and other characteristics that could influence analysis of cumulative effects or the winery's effect on neighbors." In response, the current Napa County Winery database was established. The data is online and available to the public.

The database shows that there are over 500 wineries in Napa County. The Civil Grand Jury was informed by representatives of the wine industry that many wineries do not know what the current permit conditions are for their operating permits. Conditions vary almost on a winery-by-winery basis so there is little consistency. Moreover, winery representatives stated that they are hesitant to inquire about their permit conditions for fear that they will discover previously unknown restrictions on their operations. When they look at the information in the winery database, many see that the permit information is not up to date, making the database not as useful or reliable as it could be.

Issues continue to arise related to winery permit expectations. Recently, winery owners have expressed confusion about whether trade visits count as winery tastings as defined by their permits. They have been conducting these types of trade visits for many years believing they are part of operating a winery. County officials have stated they believe the visits are limited by their operating permit, meaning many wineries are operating out of compliance.

The Civil Grand Jury recognizes that the database was established as a planning tool and was not necessarily intended to be used to determine all the current permit conditions for wineries in the County. Nevertheless, the database is frequently used for that purpose. This creates confusion and uncertainty and has resulted in at least one lawsuit. The Civil Grand Jury believes that the current database would be more effective if it were updated to accurately reflect the current operating conditions for each winery

listed. This update would be particularly valuable in minimizing potential misunderstandings during property sales or transfers. This is likely to be a time-consuming exercise and may involve substantial discussions with some of the affected wineries. However, in the long run, it would reduce misunderstandings and legal challenges, especially when existing wineries are purchased.

## Compliance and Inspections

Currently, Napa County does not have a routine program for compliance-based audits of permit holders. Instead, audits are conducted only in response to complaints received by the department. The five-person code enforcement team is fully occupied with inspections triggered by public complaints. Given the uncertainty about winery permit operational requirements, and the absence of any compliance audit program, winery owners know that they are unlikely to be challenged about operational changes. For example, County officials say they will not enforce visitation limits unless a complaint is received. Under this policy, any visitor limits in a permit become nearly meaningless.

Much of the focus of the Civil Grand Jury report from 2015, “Are Napa County Wineries Following the Rules”, centered around compliance and inspections of wineries. The report states that the Planning Commissioners directed the Planning Department to initiate an annual "spot" audit of winery production in 2005. An audit program was established which reviewed approximately 20 wineries per year. The 2015 report notes that 30% of one inspector’s time was devoted to winery compliance audit program. The 2015 report indicates that these audits found wineries to be noncompliant on one or more issues between 29% and 40% of the time. However, the audits did not assess water usage or wastewater treatment, allowing the possibility that the actual rate of violations might have been higher.

The 2015 report recommended that the Planning Department increase the number of yearly winery code enforcement audits so that every winery would be audited at least once every five years. The Board of Supervisors agreed with this recommendation. This would have resulted in an inspection rate of about 100 audits per year.

At this time, there is no permit compliance audit program in Napa County as the audit program was suspended in 2015. Reinstating winery audits would help ensure compliance with permit requirements and reinforce confidence in the regulatory process. In addition, fines collected for violations observed could partially fund the inspection program, resulting in a low net cost to the County.

# Management

This Civil Grand Jury investigation was not initiated to evaluate the management or the organizational structure of the Napa County Planning, Building & Environmental Services Department. However, during the investigation, multiple interviewees from outside the department voiced some concerns including allegations of questionable practices such as favoritism towards some wineries and vindictiveness towards others. Some interviewees suggested that the current hiring process lacks fairness, with family members and friends allegedly receiving preferential treatment and often working together in the same department.

With the Civil Grand Jury investigation focused on permit enforcement, management issues within the Napa County Planning, Building & Environmental Services Department became evident. The Enforcement Department consists of six technical staff, including two supervisors, and an Office Assistant. The Code Compliance Manager has only one direct report, the Code Compliance Supervisor, while four Compliance Officers report to the Supervisor. This results in a supervisor-to-staff ratio of 1 to 2. In contrast, the Federal Government typically operates with a 1 to 12 supervisor/non-supervisor ratio.[1] Additionally, the recent turnover rate has also been high. In the past year, two of the four code compliance officers resigned, and the Code Compliance Manager was recently dismissed after less than a year in the role for unclear reasons. This represents a 50% turnover rate, far exceeding the generally acceptable level of 10-15%.[2] This high turnover rate often signals problems in management, culture issues, or a negative work atmosphere.

Although the Civil Grand Jury did not investigate all management-related allegations, the department's organizational structure itself appears top-heavy. Such structures are often associated with higher costs, slower response times, and less effective decision-making.

---

[1] U.S. Department of Interior, Office of Human Resources, “Position Management and Position Classification Policy Handbook”, https://www.doi.gov/sites/doi.gov/files/elips/documents/position_management_and_position_classification_handbook_5_15_18_0.pdf

[2] Greg Lewis, “Industries with the Highest (and Lowest) Turnover Rates, https://www.linkedin.com/business/talent/blog/talent-strategy/industries-with-the-highest-turnover-rates

# Findings

The Civil Grand Jury finds:

F1: Pre-application review meetings are optional and come with a fee, which may discourage applicants from using this, reported as helpful, resource.

F2: The County's 80% cost recovery fee model creates added burdens for applicants, with more challenges expected with the planned shift to 100% cost recovery.

F3: The winery database is outdated and inaccurate, limiting its usefulness as a reliable permitting resource

F4: There is no process in place for conducting random audits to ensure winery permit compliance in the County.

F5: The Napa County Planning, Building & Environmental Services Department faces structural inefficiencies, including a high supervisor-to-staff ratio and a lack of effective management structure.

# Recommendations

The Civil Grand Jury recommends:

R1: The Napa County Board of Supervisors make pre-application meetings mandatory, eliminate upfront costs, and fold costs into the full permit fee for those who proceed, and to do so by July 2026.

R2: The Napa County Board of Supervisors implement a structured fee system based on project complexity whenever possible to ensure fairness and greater transparency, and to do so by July 2026.

R3: The Napa County Board of Supervisors update and maintain the winery database as the authoritative and trusted reference for permits in the County, and to do so by July 2027.

R4: The Napa County Board of Supervisors establish a funded audit program to monitor winery compliance, and to do so by July 2026.

R5: The Napa County Board of Supervisors evaluate alternative management structures for the Napa County Planning, Building & Environmental Services Department to establish a flatter, more effective organization, and to do so by July 2026

.

## Required Responses

Pursuant to Penal Code section 933.05, the Napa County Board of Supervisors is required to respond to F1-F5 and R1-R5 within 90 days of receipt of this report.

# Appendix

Napa County Permitting Process Flow Charts

Source: Napa County Planning Department.

A Tradition of Stewardship
A Commitment to Service

# PLANNING, BUILDING & ENVIRONMENTAL SERVICES

## PLANNING APPLICATION SUBMITTAL

## PLANNING COMMISSION PUBLIC REVIEW PROCESS

### APPLICATION REVIEW
- Review conducted by assigned Project Planner, PBES Divisions, other County Departments, & outside agencies
- Project posted on Current Project Website
- Courtesy Notice Sent (1000' Radius & Others)
- Encourage Applicant Outreach to Neighbors
- 30 Day Completeness Determination
- Letter Sent to Applicant

↓

### APPLICATION RE-SUBMITTAL (IF DEEMED INCOMPLETE)
- Applicant Response to Comments within 180 Days or Application may be Abandoned if not received
- Re-Review Conducted
- 30 Day Completeness Determination

↓

### INITIAL APPLICATION OR APPLICATION RE-SUBMITTAL
- Deemed Complete

↓

### CEQA REVIEW & FINAL PROJECT ASSESSMENT
- Proposed CEQA Determination
- Commence Tribal Consultation – Minimum 30-Day review if Initial Study is required to be prepared
- Prepare & Complete CEQA Document
- Final Project Assessment (Commence Preparation of Staff Report)
- Public Hearing Notice Distributed & Mailed to Property Owners (1000' radius), Others & Interested Parties List, & Closest City
  - Categorical Exemption - 10 Days
  - Negative or Mitigated Negative Declaration - 20 or 30 Days (State Clearinghouse)
  - Environmental Impact Report - 45 Days (State Clearinghouse)
- CEQA Document and Staff report published on County Website

↓

### PROJECT DECISION
- Planning Commission (Public Hearing Held)
  - Agenda Distributed Friday prior to Hearing
  - Additional Public Correspondence distributed prior to Hearing
- Project Action & Final Approval/Denial Letter Sent
- Copy of Approval Letter sent to GIS, On-Base, Assessor's Office staff & posted on PMC

↓

**Initiate Application for Building/Grading/Environmental Health Permit Processing for the Approved Project**

A Tradition of Stewardship
A Commitment to Service

# PLANNING, BUILDING & ENVIRONMENTAL SERVICES

## PLANNING APPLICATION SUBMITTAL

## ZONING ADMINISTRATOR PUBLIC REVIEW PROCESS

### APPLICATION REVIEW

- Review conducted by assigned Project Planner, PBES Divisions, other County Departments, & outside agencies
- Project posted on Current Project Website
- Courtesy Notice Sent (1000′ Radius & Others)
- Encourage Applicant Outreach to Neighbors
- 30 Day Completeness Determination
- Letter Sent to Applicant

### APPLICATION RE-SUBMITTAL (IF DEEMED INCOMPLETE)

- Applicant Response to Comments within 180 Days or Application may be Abandoned if not received
- Re-Review Conducted
- 30 Day Completeness Determination

### INITIAL APPLICATION OR APPLICATION RE-SUBMITTAL

- Deemed Complete

### CEQA REVIEW & FINAL PROJECT ASSESSMENT

- Proposed CEQA Determination
- Prepare & Complete CEQA Document
- Final Project Assessment (Commence Preparation of Staff Report)
- Public Hearing Notice Distributed & Mailed to Property Owners (1000′ Radius), Others & Interested Parties List, & Closest City
  - Categorical Exemption - 10 Days
  - Negative or Mitigated Negative Declaration - 20 or 30 Days (State Clearinghouse)
  - Environmental Impact Report - 45 Days (State Clearinghouse)
- CEQA Document and Staff report published on County Website

### PROJECT DECISION

- Zoning Administrator (Public Hearing Held)
  - Staff Report Distributed Friday prior to Hearing
  - Additional Public Correspondence distributed prior to Hearing
- Project Action & Final Approval/Denial Letter Sent
- Copy of Approval Letter sent to GIS, On-Base, Assessor's Office staff & posted on PMC

Initiate Application for Building/Grading/Environmental Health Permit Processing for the Approved Project

A Tradition of Stewardship
A Commitment to Service

# PLANNING, BUILDING & ENVIRONMENTAL SERVICES

## PLANNING APPLICATION SUBMITTAL

## REVIEW PROCESS FOR MINOR MODIFICATION PERMITS (WINERY & NON-WINERY) & VERY MINOR MODIFICATION (NON-WINERY)

### APPLICATION REVIEW

- Review conducted by assigned Project Planner, PBES Divisions, other County Departments, & outside agencies
- Project posted on Current Project Website
- Courtesy Notice Sent (1000′ Radius & Others)
- Encourage Applicant Outreach to Neighbors
- 30 Day Completeness Determination
- Letter Sent to Applicant

### APPLICATION RE-SUBMITTAL (IF DEEMED INCOMPLETE)

- Applicant Response to Comments within 180 Days or Application may be Abandoned if not received
- Re-Review Conducted
- 30 Day Completeness Determination

### APPLICATION RE-SUBMITTAL (IF DEEMED COMPLETE)

- Project Deemed Complete
- Commence Tribal Consultation – Minimum 30-Day review if Initial Study is required to be prepared

### CEQA REVIEW & FINAL PROJECT ASSESSMENT

- Proposed CEQA Determination Prepared & Completed
- Final Project Assessment

### PROJECT DECISION FOR MINOR MODIFICATION

- Notice of Intent - CEQA Document, Draft COAs, Project Application and Supporting Documents Posted on County Website
- Notice of Intent Distributed & Mailed to Property Owners (1000′ Radius), Others & Interested Parties List, & Closest City
  - Addendum – 10 Days
  - Categorical Exemption - 10 Days
  - Negative or Mitigated Negative Declaration - 20 or 30 Days (State Clearinghouse)
- A Non-Winery Minor Modification Application May Include a Request for a Public Hearing with the Zoning Administrator (See ZA Process)
- Notice of Decision/Final Approval/Denial Letter Sent to Applicant & Distributed, Mailed & Posted on County Website
- Copy of Letter Sent to GIS, On-BASE, Assessor's Office staff, & posted on PMC.

### PROJECT DECISION FOR VERY MINOR MODIFICATION

- Final Approval with Conditions of Approval/Denial Letter Sent to Applicant
- Copy of Letter Sent to GIS, On-BASE, Assessor's Office staff, & posted on PMC.

### Initiate Application for Building/Grading/Environmental Health Permit Processing for the Approved Project

A Tradition of Stewardship
A Commitment to Service

# PLANNING, BUILDING & ENVIRONMENTAL SERVICES

## PLANNING APPLICATION SUBMITTAL

## WINERY ADMINISTRATIVE PERMIT PROCESS

**APPLICATION REVIEW**

- Review conducted by assigned Project Planner, PBES Divisions, other County Departments, & outside agencies
- Check compliance with Section 18.126.065 (Items 1-5)
- Check for Special Notes on Plans to meet COAs
- 30 Day Completeness Determination
- Letter Sent to Applicant

**APPLICATION RE-SUBMITTAL (IF DEEMED INCOMPLETE)**

- Applicant Response to Comments within 180 Days or Application may be Abandoned if not received
- Re-Review Conducted
- 30 Day Completeness Determination

**INITIAL APPLICATION OR APPLICATION RE-SUBMITTAL**

- Deemed Complete

**CEQA REVIEW & FINAL PROJECT ASSESSMENT**

- Meets CEQA Ministerial Test 18.126.065 (Item 5)
- Final Project Assessment (Commence Preparation of Final Letter)
- No Conditions of Approval are Prepared for WADM Permits
- Ensure notes have been provided on Project Plans
- Include any requests for Building, Environmental Health, Grading Permits, etc. are in the body of letter)
- Note in letter which Subsection Applicant is requesting authorization

**PROJECT DECISION**

- Project Action & Final Approval/Denial Letter Sent to Applicant
- Copy of Letter Sent to GIS, On-BASE, Assessor's Office staff, & posted on PMC.

**Initiate Application for Building/Grading/Environmental Health Permit Processing for the Approved Project**