# Exhibit 19

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

HONORABLE MARK S. BOESSENECKER, JUDGE, PRESIDING, DEPARTMENT 5

---oOo---

| | | |
|---|---|---|
| NAPA COUNTY and THE PEOPLE OF THE STATE OF CALIFORNIA ex. rel. THOMAS ZELENY, as Interim Napa County Counsel, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 22CV001262 |
| HOOPES FAMILY WINERY PARTNERS, LP, HOOPES VINEYARD, LLC, LINDSAY BLAIR HOOPES, and DOES 1 through 10, inclusive, | ) | VOLUME 5<br>PAGES 616-813 |
| Defendants. | ) | |
| AND RELATED CROSS-ACTION. | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Thursday, February 1, 2024

COURTHOUSE, NAPA, CALIFORNIA

Reported by: VALERIE PRINCE, CSR #7946, RPR, CRR, CRC

document as --

THE COURT: Are you asking if it -- if she recognizes, like, what kind of document this is --

MS. HOOPES: Yes.

THE COURT: -- versus a specific --

MS. HOOPES: Yes.

THE COURT: You follow me?

THE WITNESS: I do, but it's -- with that --

THE COURT: It still doesn't help.

THE WITNESS: -- it might represent another permit type within our department, so I'd like -- if the information is the same, I'd like to compare it to the floodplain permit that was introduced into evidence earlier.

THE COURT: All right. Next question.

Q. BY MS. HOOPES: If I could have you go to 1230, please.

A. Okay.

Q. And do you recognize this document?

A. It's an e-mail.

Q. And are you in -- are you one of the recipients in this particular e-mail?

A. Yes.

Q. And who does this e-mail appear to be from?

A. Scott Greenwood-Meinert.

Q. And the third paragraph -- well, what is the date of this e-mail?

A. July 23rd, 2020.

Q. And do you see in the third paragraph where

769

Mr. Greenwood-Meinert says, "My expectation is that this meeting would result in a written determination thereafter regarding the matter so that we might be able to appeal the determination if necessary"?

A. I see it.

Q. And it goes on to say, "I assume that appeal would be to the Board of Supervisors, but perhaps this can be clarified at the meeting." Do you see that?

A. I do.

Q. So was it your understanding at that point in time that you had a difference of opinion on the entitlements of the property from that of counsel?

A. I can't speak to what that third paragraph is referring to.

Q. Well, in other words, I believe you testified earlier today that counsel and the defendants agreed with your interpretation, and I'm asking you to look at this e-mail and identify whether or not this changes your opinion.

MR. SPELLBERG: Your Honor, we object; the question's incomprehensible; it hasn't identified the prior opinions.

THE COURT: The objection's overruled.

THE WITNESS: Can you repeat that?

Q. BY MS. HOOPES: Sure. I believe you testified earlier today that during your conversation on July 29th of 2020 that you understood the defendants to agree with your interpretation of the entitlements; is that correct?

A. Not agree. You just didn't disagree.

Q. And I guess what my question is is does this e-mail

770

refresh your recollection about what the defendants' position was with respect to their entitlements?

A. This -- that meeting occurred after this. No.

Q. But in other words, you and the defendants had a difference of opinion with respect to the entitlements; is that correct?

A. It -- may I read this?

Q. Sure.

A. There was a differing of opinions.

Q. I'm sorry?

A. There appears to be a differing of opinion.

Q. And you indicated in your deposition that you did not know if you created the screenshots from the social media posts or if that had been done by somebody else; is that correct?

A. I did some, but, yes, there could have been some produced by someone else in our division.

Q. And Patrick Ryan is not listed in any of these e-mail communications; is that correct?

A. Correct.

Q. And did Patrick Ryan actually review your notice of apparent violation?

A. No.

Q. And did Patrick Ryan confirm any of the alleged violations in your notice of apparent violation?

A. No.

THE COURT: Let's take a 10-minute break. Let's reconvene at 2:45.

771

MS. HOOPES: Thank you.

(Court recessed, 2:35 p.m.)

(Court comes to order, 2:46 p.m.)

THE COURT: Okay, we are back on the record. Both sides are present. The witness, Ms. Cahill, resumes on cross-exam.

Q. BY MS. HOOPES: And, Ms. Cahill, I'd like to move to Defendants' Exhibit 1235.

A. Okay.

Q. And do you recognize this document, Ms. Cahill?

A. It's an e-mail.

Q. And is this e-mail from you?

A. It is.

Q. And what is the date?

A. August 12th, 2020.

Q. And this is a communication after the floodplain response from August 10th was sent; is that correct? That's okay. This is August 12th. That's totally fine.

And do you see there where it says -- you wrote, "The County has issued a Notice of Apparent Code Violation, which does not have a hearing or appeal process at this stage. We believe that there is a violation of County Code as detailed in the Notice of Apparent Code Violation. We have conducted two meetings to discuss the violations. These are not hearings nor are they meant to be. The next step will be to provide the Planning Director and I with documentation that the winery is not conducting tours" -- "tastings, tours, or marketing events.

772

"In the event that a Citation is issued for violations of the County Code, it is at that stage you may request a hearing by filing an appeal. However, no Citation has been issued." Do you see that?
A. Yes.
Q. So no final determination had been made at this particular point in time.
A. There is no final determination. I mean, it was an open Code case.
Q. Were there any hearings offered to the defendants?
A. We were looking for resolution, voluntary resolutions. There are no hearings. We don't have a hearing officer, so it could just be communication between yourself and either myself or someone else from the County.
Q. But in this particular event, the defendants were not offered the opportunity to contest the issue with somebody outside of the Department; is that correct?
A. Like who?
Q. A hearing officer.
A. We don't have a hearing officer.
Q. But you told the defendants that they could not apply for the small winery ordinance permit based on this conversation; is that correct?
A. Not based on that conversation, based on information that was provided during, I believe, the Zoom meeting.
Q. So in other words, you determined that a violation occurred but did not provide the opportunity for a hearing; is that correct?

773

A. There is no hearing opportunity at that stage.
Q. And you didn't issue a final determination; is that correct?
A. The final determination was that there was still a violation.
Q. But there was nothing to appeal is my point.
A. No, that would have been as part of a citation.
Q. And then you indicated that you issued a second notice of apparent violation on May 12th, 2021. Do you recall that?
A. Yes.
Q. And we saw earlier today that the defendants responded 5 days later; is that correct?
A. I would have to look at the notes.
Q. Do you recall what was in that particular notice of apparent violation?
A. I'd have to review it.
Q. I believe it's Plaintiff's 41. It's gonna be in the white binders.
A. Okay.
Q. And do you see under paragraph 1 that that particular violation allegation says that yoga is not allowed in the Agricultural Preserve; is that correct?
A. No, I don't see that.
Q. And we're looking at the Second Information and Notice Regarding Apparent Code Violation.
A. Yes.
Q. And this is the second notice of apparent violation

774

that you issued; is that correct?
A. Yes.
Q. And under paragraph 1, you indicated that, "Yoga is a system of exercises more appropriately located at fitness centers"; is that correct?
A. Paragraph 1 of --
Q. I'm sorry, sub -- it's marked with the number 1.
A. Yes, I see that.
Q. And you indicated in your deposition that you did not know whether or not yoga had occurred at the property; is that correct?
A. There were advertising for yoga.
Q. But you didn't know if it had actually occurred.
A. Correct.
Q. And you didn't actually know whether or not the August -- or I should say April event that prompted this notice had actually occurred; is that correct?
A. I did not go on the property myself to confirm.
Q. So you did not verify that that took place; is that correct?
A. It was advertised.
Q. Understood but did you actually determine whether or not it had occurred?
A. I didn't get confirmation that it didn't.
Q. And under number 2, did you ever have any verification that food service was actually being conducted on the property?
A. There was food in the evidence that was gathered;

775

there was food photographed.
Q. But you did not have any confirmation that food service actually took place.
A. I did not receive any food.
Q. And you did not actually document dates of food service taking place at the property; is that correct?
A. I documented what was on social media at the time.
Q. And under paragraph 3, you actually did not have personal knowledge as to whether or not any of the produce was not from the property; is that correct?
A. That is correct.
Q. And under number 4, you did not have any personal knowledge that a retail store was at the property; is that correct?
A. I had evidence showing photographs of the inside with those items.
MS. HOOPES: And, Your Honor, we'd like to move 1235 into evidence, please.
MR. SPELLBERG: No objection.
THE COURT: 1235 will be received.
(Exhibit 1235 admitted into evidence.)
Q. BY MS. HOOPES: If I could have you refer back to your workflow, I believe when counsel was asking you about the second notice of apparent violation on direct examination, you indicated that you had not received a response, but on May 17th of 2021 you do list in your comment section that you did receive a response. Do you see that?
A. May 17th?

776

MR. SPELLBERG: Which it is.
THE COURT: So it just ...
MR. SPELLBERG: I mean, that's the point of 1271, Your Honor. I mean, there's often a dispute about whether, you know, the statement in the 1271 admission is accurate, you know, there's -- frequently that happens with these sort of records, but that's what 1271 --
THE COURT: But are you offering -- are you offering 31 and 41 to prove that they did these things?
MR. SPELLBERG: In part, yes, because it's based on the testimony that underpins the notice of violation. So yes, to that extent.
THE COURT: All right. Is the matter submitted?
MR. SPELLBERG: I'd like to add a couple things, Your Honor.
THE COURT: All right.
MR. SPELLBERG: I mean, the -- it's always going to be submitted, but it's gone into evidence under 1271 because we meet the criterion here. Whether the Court ultimately decides the County was correct and Ms. Cahill was correct in saying yes, there's a violation, it's called a notice of apparent violation and so it appeared apparently in an apparent fashion to the County that there was a violation of these code sections. That's the truth of the matter that's being submitted, that it's an apparent violation of our code sections.
And to parse that down I don't think is an appropriate analysis of 1271. It goes in for what it is, and

809

we don't disagree that the other side can dispute it, and the Court will ultimately make that decision whether there was a violation, but it doesn't affect the status of the document as coming in under a hearsay exception. And so we submit that the original rulings on the two allowing them into evidence is correct.
THE COURT: Ms. Hoopes?
MS. HOOPES: Your Honor, during Mr. Ryan's testimony, counsel used the dates of the violations as the, quote, triggering date for civil fines and suggested that it's since this date that all of these things have been occurring and yet we don't have any actual observation of any specific violations, so for the purposes of the truth of the matter, I think this is absolutely no different than a police report or any other report and particularly because the person observing it has not even been identified.
So we don't know the date, we don't know what was seen, and we don't actually know which parts of the violations were observed versus which ones were speculative or through social media. That was something that counsel did not get in through Ms. Cahill as to what actual evidence formed the basis of her opinion or even identification of dates, facts, and violations.
So I do not think that under 1271(d), unlike potentially an autopsy, that this would be anywhere close to indicia of trustworthiness.
MR. SPELLBERG: So, Your Honor, there's a couple issues running round there. The first that shows the problem

810

with doing this in the middle of trial, we have a witness who's coming on later who went out from the County and visited and had tastings and so forth, so the idea that we have no firsthand knowledge doesn't even come in yet.
THE COURT: So I think you're both straying from what 1217 is all about, so what I'm gonna do -- so whether -- you know, I'm not gonna consider -- whether I admit it for the truth of the matter asserted or not, I'm not considering these letters as proof that something in particular happened other than the County gave notice to the defense of what their concerns were, what they thought the violations were.
I've heard other evidence today for the basis of those allegations, but ultimately, I think the point is well taken, and so I'm -- you can if you want to submit briefing on this issue later in the trial for me to reevaluate this, but ultimately, I don't think it really makes anybody's castle in this case, but I'm going to modify my decision admitting 31 and 41.
I'm admitting it for the fact of the notice given to the defendant of the alleged violations. I'm not gonna offer -- I'm not gonna admit it for proof that the -- independent proof that the violations occurred, and if you want to address this later with a briefing, I'll certainly reconsider.
(Exhibits 31 and 41 admitted into evidence.)
MS. HOOPES: And, Your Honor, in support of the record, based on the Court's ruling under 1040, we would request Exhibit 1391 and 1261 to be admitted just for the

811

record.
1391 --
THE COURT: Okay.
MS. HOOPES: We can do it tomorrow.
THE COURT: We'll do this first thing tomorrow morning.
MS. HOOPES: No problem. Sorry, Your Honor, thanks.
(Court recessed, 3:53 p.m.)
---oOo---

812